**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | Civil Docket No.1:07-mc-00489 PLF |
| | MDL 1869 |
| This Document Relates to: | |
| ALL INDIRECT PURCHASER ACTIONS | |

**MOTION TO APPOINT INTERIM CO-LEAD**
**CLASS COUNSEL FOR INDIRECT PURCHASER PLAINTIFFS**

The undersigned law firms and counsel respectfully move this Court for an order appointing them as Interim Co-Lead Class Counsel for the putative Indirect Purchaser Class in these consolidated actions.

This motion is brought pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. The grounds for this motion are that this complex case will benefit from the appointment of Interim Class Counsel for the putative Indirect Purchaser Plaintiffs, and that the undersigned firms and counsel are well qualified for the position due to their extensive experience in antitrust class action litigation and trials, and other complex litigation.

This motion is based on this motion, the supporting memorandum of law, the Declaration of Imtiaz A. Siddiqui and supporting exhibits submitted herewith. A proposed form of order is also submitted herewith.

Dated: February 15, 2008

LOVELL STEWART HALEBIAN LLP


/s/Christopher Lovell

Christopher Lovell
Gary Jacobson
Imtiaz A. Siddiqui
500 Fifth Avenue
New York, NY 10110
T: (212) 609-1900
F: (212) 719-4775

THE MASON LAW FIRM, LLP
Gary E. Mason
Donna F. Solen
1225 19th Street NW, Suite 500
Washington, DC 20038
T: (202) 429-2290
F: (202) 429-2294

STAMELL & SCHAGER, LLP
Jared Stamell
One Liberty Plaza, 35th Floor
New York, NY 10006
T: (212) 566-4047
F: (212) 566-4061

*Proposed Co-Lead Interim Indirect
Purchaser Plaintiff Class Counsel*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE: RAIL FREIGHT FUEL
SURCHARGE ANTITRUST LITIGATION
_____

This Document Relates to:

ALL INDIRECT PURCHASER ACTIONS

Civil Docket No.1:07-mc-00489 PLF

MDL 1869

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT INTERIM**
**CO-LEAD CLASS COUNSEL FOR INDIRECT PURCHASER PLAINTIFFS**


LOVELL STEWART HALEBIAN LLP
500 Fifth Avenue
New York, NY 10110
T: (212) 609-1900
F: (212) 719-4775

THE MASON LAW FIRM, LLP
1225 19th Street NW, Suite 500
Washington, DC 20038
T: (202) 429-2290
F: (202) 429-2294

STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, NY 10006
T: (212) 566-4047
F: (212) 566-4061

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND AND PROCEDURAL HISTORY ......................................... 2

III.  ARGUMENT ...................................................................................................... 3

   A.   The Appointment Of Interim Indirect Purchaser Class Counsel Is Necessary
      To Fairly and Adequately Represent The Interests Of The Putative Indirect
      Purchaser Class. ........................................................................................... 4

     1.   There Is A Need For Separate Representation For
        Indirect Purchaser Plaintiffs. .......................................................... 4

     2.   Complex Factual and Legal Issues Exist With Respect
        To The Indirect Purchaser Plaintiff Class. ..................................... 5

   B.   Proposed Interim Class Counsel Have Done Considerable Work
      To Identify and Investigate The Potential Claims In This Action. ............... 6

   C.   Proposed Interim Indirect Purchaser Class Counsel Possess The Experience, The
      Knowledge, And The Resources To Fairly And Adequately Represent The Interests
      Of The Indirect Purchaser Plaintiff Class. ................................................... 7

     1.   Lovell ............................................................................................... 7

     2.   Mason ............................................................................................ 11

     3.   Stamell ........................................................................................... 13

IV.  CONCLUSION ................................................................................................ 13

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*In re Air Cargo Shipping Services Antitrust Litig.*, No. 06 MD 1775 (JG) (VVP) (E.D.N.Y.)...6, 9

*Billings v. Credit Suisse First Boston Ltd., et al.*, 127 S.Ct. 2383 (June 18, 2007).......................9

*Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64 (M.D. Tenn. 2004)......................3

*Coopersmith v. Lehman Bros., Inc.*, 344 F.Supp.2d 783 (D.Mass. 2004) ....................................7

*Donaldson v. Pharmacia Pension Plan*, 2006 WL 1308582 (S.D. Ill. May 10, 2006) ..................3

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
     No. M 02-1486(PJH) (MDL 1486).............................................................................................5

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968)..................................4

*In re Hydrogen Peroxide Antitrust Litig.,* No. 05-666 (MDL 1682) (E.D. Pa.) .............................5

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) .........................................................................4

*In re OSB Antitrust Litig.*, No. 06-cv-826-PD (E.D. Pa.) ...............................................................5

*In re Publication Paper Anitrust Litig.*, No. 3:04 MD 1631 (SRU) (D. Conn.).............................5

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D.Mass. 2004) .....................................................5

*In re Sumitomo Copper Litig.,* 74 F.Supp.2d 393 (S.D.N.Y. 1999) .............................................10

*In re Vitamin C Antitrust Litig.*, No. MDL 06-1738 (DGT) (JO) (E.D.N.Y.) ................................5

## <u>Federal Statutes</u>

15 U.S.C. § 1 *et seq.*........................................................................................................................8

## <u>Federal Rules</u>

Fed.R.Civ.P. 23 *et seq.*..............................................................................................................1, 3, 4

## <u>Other Authorities</u>

Herr, David F., <u>Manual for Complex Litigation</u> (West, 4th ed.) ......................................................3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | Civil Docket No.1:07-mc-00489 PLF |
| | MDL 1869 |
| This Document Relates to: | |
| ALL INDIRECT PURCHASER ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT INTERIM**
**CO-LEAD CLASS COUNSEL FOR INDIRECT PURCHASER PLAINTIFFS**

## I.    INTRODUCTION

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the law firms of Lovell Stewart Halebian LLP ("Lovell"), The Mason Law Firm, LLP ("Mason"), and Stamell & Schager LLP ("Stamell") seek appointment as Interim Co-Lead Class Counsel for the putative Indirect Purchaser class in this consolidated multidistrict litigation ("MDL") proceeding.  There is no known opposition to this motion. Lovell, Mason, and Stamell (collectively, "Proposed Interim Indirect Purchaser Plaintiff Class Counsel") represent all of the plaintiffs in the three known indirect purchaser actions in this MDL.[1]

The appointment of Interim Counsel for the Indirect Purchaser Plaintiff Class will assist in streamlining this complex litigation and will ensure that the Indirect Purchaser Plaintiffs will have appropriate representation during the prosecution of this action, including, but not limited

---

[1]    Lovell, Mason and Stamell represent indirect purchaser plaintiffs Maroon Incorporated ("Maroon"), Fayus Enterprises ("Fayus"), and Agway Liquidating Trust ("Agway"), respectively, all of whom filed class action complaints in the District of New Jersey.  The Maroon, Fayus and Agway actions were first consolidated into the action of plaintiff Dust Pro, Inc. and then consolidated and transferred to this Court on November 14, 2007 as part of the Dust Pro, Inc. action.

to, any necessary discussions with defendants as this case moves forward. Proposed Interim Indirect Purchaser Plaintiff Class Counsel will fairly and adequately represent the interests of the Indirect Purchaser Plaintiff Class. Proposed Interim Indirect Purchaser Plaintiff Class Counsel have extensive experience, including leadership roles, in complex class action litigation and trials, including antitrust class actions with price fixing allegations, such as the ones present here. Moreover, these firms' substantial experience in other large antitrust class actions as well as other complex litigation is set forth in the firm resumes attached as Exhibits A through C to the Declaration of Imtiaz A. Siddiqui ("Siddiqui Decl."). The resources Proposed Interim Indirect Purchaser Plaintiff Class Counsel will commit to representing the class and the efforts they have already expended in identifying and investigating potential claims in these actions are and have been substantial.

For reasons more fully set forth below, appointment of Proposed Interim Indirect Purchaser Plaintiff Class Counsel is appropriate.

## II.    BACKGROUND AND PROCEDURAL HISTORY

This MDL arises from the alleged price fixing of rail freight fuel charges for rail freight transportation services pursuant to private contracts and other means exempt from federal state regulation.

In May 2007, the first complaint was filed on behalf of a direct purchaser plaintiff. Subsequently, other direct purchaser plaintiffs have filed similar actions.

On August 1, 2007, recognizing that, despite the many direct purchaser actions filed, no action had been commenced on behalf of the putative members of the Indirect Purchaser Plaintiff Class, who represent a substantial amount of commerce, arguably greater than that of the direct purchaser plaintiff class, Lovell filed the first Indirect Purchaser Plaintiff action. Soon after,

Stamell and Mason filed similar class action complaints on behalf of other Indirect Purchaser Plaintiffs.

On November 14, 2007, the Judicial Panel on Multidistrict Litigation centralized this litigation and transferred it to this Court.  Subsequently, on January 14, 2008, a Joint Motion for the Entry of a Pretrial Order No. 1 was filed on behalf of all parties to this action.  On January, 31, 2008, this Court entered the Initial Practice and Procedure Order ("PPO"), which set forth a briefing schedule for any motions for appointment as Interim Class Counsel on behalf of the proposed class of direct purchasers in this action.[2]  Proposed Interim Indirect Purchaser Plaintiff Class Counsel now moves for appointment in an effort to coordinate the indirect purchaser litigation with the direct purchaser litigation to the extent possible.

**III.    ARGUMENT**

Rule 23(g) provides that a court "may designate Interim Class Counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  Fed.R.Civ.P. 23(g)(2)(A).  The objective of the court when considering a motion for appointment of Interim Class Counsel is to determine who will best represent the interests of the class, and who will be able to accomplish the goals of efficiency and economy in doing so.  *Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 100 (M.D. Tenn. 2004); *see also Manual for Complex Litigation, Fourth*, § 10.221.    Where, as here, there are competing class actions pending, "the appointment of class counsel is necessary to protect the interests of class members."  *Donaldson v. Pharmacia Pension Plan*, 2006 WL 1308582, at *1 (S.D.Ill. May 10, 2006).

---

[2] Specifically, the PPO stated that "on or before February 15, 2008, plaintiffs' counsel seeking appointment as Interim Class Counsel (including "Lead Counsel" and/or "Liaison Counsel" designations) on behalf of the proposed class of direct purchasers in this action shall file affidavits and memoranda of law in support of their appointment."

Rule 23(g) sets forth four factors that a court must consider when appointing class counsel:

(1) the work counsel has done in identifying or investigating potential claims in the action;

(2) counsel's experience in class actions, other complex litigation, and claims of the type asserted in the action;

(3) counsel's knowledge of the applicable law; and

(4) the resources counsel will commit to representing the class.

Fed.R.Civ.P. 23(g)(1)(C)(i). No single factor is determinative in a given case; all pertinent factors should be weighed. Fed.R.Civ.P. 23 advisory committee notes (2003 amendments). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(C)(ii).

**A.     The Appointment Of Interim Indirect Purchaser Class Counsel Is Necessary To Fairly and Adequately Represent The Interests Of The Putative Indirect Purchaser Class.**

**1.     There Is A Need For Separate Representation For Indirect Purchaser Plaintiffs.**

Separate representation for Direct and Indirect Purchaser Plaintiffs is necessary in order to avoid potential conflicts of interest between the two classes and to ensure that the interests of the Indirect Purchaser Plaintiffs in this action are afforded adequate protection.

Under the Sherman Act, a direct purchaser is entitled to recover the entire overcharge attributable to an price fixing violation, regardless of whether that direct purchaser passed on the overcharge downstream to one or more indirect purchasers. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Proof of overcharge pass-on is strictly prohibited in a direct purchaser antitrust class action. *Free v. Abbott Labs.*, 982 F.Supp.1211, 1216 (M.D.La. 1997). Contrariwise, under various state

antitrust laws, the indirect purchaser is entitled to prove injury by way of pass on of overcharges by the direct purchaser. Therefore, an important issue in this litigation will be the amount of overcharge passed on by the direct purchasers to the indirect purchasers. Since the Indirect Purchaser Plaintiffs in this action will have to demonstrate that the overcharges have been passed on to them, Indirect Purchaser Plaintiffs' claims will "present an entirely separate level of evidence and proof" not found in the claims of the direct purchaser plaintiffs. *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 281 (D.Mass. 2004) (citation omitted). Due to the potential conflicts that might arise as a result, Indirect Purchaser Plaintiffs require separate counsel to fairly and adequately represent their interests in this litigation.

Although case law dealing with this issue is limited, nearly all courts which have considered the issue have required separate complaints – one for direct purchasers and one for indirect purchasers, each group represented by separate counsel. *See e.g., In re OSB Antitrust Litig.*, No. 06-cv-826-PD (E.D.Pa.); *In re Publication Paper Antitrust Litig.*, No. 3:04 MD 1631 (SRU) (D.Conn.); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, No. 06-md-1768 (D.Conn.); *In re Hydrogen Peroxide Antitrust Litig.*, No. 05-666 (MDL 1682) (E.D.Pa.); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH (MDL 1486); *In re Vitamin C Antitrust Litig.*, No. MDL 06-1738 (DGT) (JO) (E.D.N.Y.) (Copies of orders are attached to the Siddiqui Decl. as Exhibits D – I).

### 2.    Complex Factual and Legal Issues Exist With Respect To The Indirect Purchaser Plaintiff Class.

It cannot be disputed that there exist complex factual and legal issues in this litigation, especially with respect to the claims of the Indirect Purchaser Plaintiffs. For example, the Indirect Purchaser Plaintiff actions include state law claims of 23 states, which involve diverse and complex issues not present in the direct purchaser plaintiffs action.

Furthermore, the Indirect Purchaser Plaintiff class may be substantially larger than that of the direct purchaser plaintiffs, not only in terms of total numbers, but also with respect to the volume of commerce represented. The Indirect Purchaser Plaintiff Class Counsel will also have to address issues of pass through, which, among other things, may require discovery from third parties. Because of the number and complexity of these issues, the number of co-lead counsel proposed here (three) is reasonable for a case of this complexity. Recently, a court appointed four co-lead counsel, including Lovell, to represent the interests of a U.S. Indirect Purchaser Class alleging the fixing of prices of fuel surcharges with respect to air cargo shipping services. *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06 MD 1775 (JG) (VVP) (E.D.N.Y.) (Copy of order appointing U.S. Indirect Purchaser Counsel is attached as Ex. J to Siddiqui Decl.)

**B.      Proposed Interim Class Counsel Have Done Considerable Work To Identify and Investigate The Potential Claims In This Action.**

Proposed Interim Class Counsel have expended significant effort identifying and investigating potential claims for the Indirect Purchaser Plaintiffs in this action prior to the filing of their original complaints, have continued to do so as this litigation has progressed, and are ready, willing and able to continue to vigorously prosecute the claims of the putative Indirect Purchaser Plaintiff class. For example, Lovell filed the first class action complaint in this MDL on behalf of a class of indirect purchaser plaintiffs, has coordinated with counsel for direct purchaser plaintiffs with respect to the argument before the JPML and, upon transfer of this MDL, has had several discussions with defense counsel as to the submission of a pretrial order to govern the Indirect Purchaser Plaintiff actions. Also, Proposed Indirect Purchaser Plaintiff Class Counsel have met in person and have had numerous telephone conversations to discuss the claims of the putative Indirect Purchaser Plaintiff Class and related litigation strategy. Furthermore, Proposed Interim Indirect Purchaser Plaintiff Class Counsel have extensively

researched and analyzed issues relating to the claims of the Indirect Purchaser Plaintiff Class, including plausibility pleading requirements, preemption, the application of state law antitrust and consumer protections claims, and the potential addition of consumer fraud claims.

C. **Proposed Interim Indirect Purchaser Class Counsel Possess The Experience, The Knowledge, And The Resources To Fairly And Adequately Represent The Interests Of The Indirect Purchaser Plaintiff Class.**

As set forth in greater detail below, Proposed Interim Indirect Purchaser Class Counsel possess the experience handling class actions, other complex litigation and antitrust and consumer protection claims asserted in this action, have the knowledge of the applicable state antitrust and consumer protection laws, and have the resources to fairly and adequately represent the interests of the Indirect Purchaser Plaintiff Class. *See Coopersmith v. Lehman Bros., Inc.*, 344 F.Supp. 2d 783, 793 (D.Mass. 2004) (designating law firms as co-lead counsel because "[i]t is clear that these firms have extensive experience in cases such as this and are well situated to pursue this action on behalf of the class").

1. **Lovell**

Lovell (twelve attorneys), its Seattle, Washington affiliate, Lovell Mitchell & Barth LLP (six attorneys), and their predecessors (collectively the referred to herein in as "Lovell") have obtained, as sole lead counsel[3] or co-lead counsel,[4] what were at the times of the

---

[3] *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("The recovery is the largest class action recovery in the 75 plus year history of the Commodity Exchange Act"; $134.6 million recovery provided each claiming class member with more than 100¢ on the dollar of each investor's losses on a purchase-sale differential basis).

[4] *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 471 (S.D.N.Y. 1998) ("*Nasdaq*") (Lovell filed the first case and was appointed one of four co-lead counsel along with attorneys for Lerach Coughlin, in these claims for price-fixing; according to plaintiffs' experts this settlement produced a pay-out to class members, after deducting all attorneys' fees and costs, that equaled their single (non-trebled) damages; "this all-cash [$1.027 billion] settlement, achieved through 'four years of hard-fought litigation,' apparently is [at that time] the largest

settlements the largest class action recoveries in the history of three separate federal statutes: the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, and the Investment Company Act, 15 U.S.C. 80a-1 *et seq.*

More importantly, each of these three settlements as well as other class action settlements[5] achieved by Lovell,  provided claiming class members with a net recovery, after deducting for all attorneys fees and costs, of 100¢ on the dollar of their losses (exclusive of prejudgment interest).  In addition to the *Nasdaq* case and its largest class action recovery in the then 107-year history of the Sherman Act, Lovell has extensive additional experience in prosecuting antitrust claims.

For example, Lovell's senior partner, Christopher Lovell, successfully tried an antitrust price fixing claim in 1983[6] and, last March, presented to the United States Supreme Court the respondents' entire thirty minute argument on whether the federal antitrust laws were pre-empted by the federal securities laws on the facts of *Billings v. Credit Suisse First Boston Ltd.,*

---

recovery (class action or otherwise) in the hundred year history of the state and federal antitrust laws.");

*Blatt v. Merrill Lynch Fenner & Smith Inc.*, 94 Civ. 2348 (JAG) (D.N.J.) ($76.5 million recovery in 1997 on impermissible investment and related claims under the Investment Company Act, 15 U.S.C. Section 80a-1 *et seq.*, constituted "by far the largest settlement" of class action claims under the Investment Company Act, *Securities Class Action Alert* letter dated August 17, 2000; such settlement provided one hundred cents on the dollar, exclusive of interest, on plaintiffs' purchase-sale differential losses).

[5] *E.g., In re Soybeans Futures Litig.,* 89 Civ. 7009 (CRN) (N.D.Ill.)  (Lovell served as Chairman of Co-Lead Counsel in this class action which provided claiming class members, after all attorneys' fees and costs had been paid, with all losses due under plaintiffs' expert's formula (exclusive of prejudgment interest)).

[6] *Strobl v. New York Mercantile Exch.*, 582 F. Supp. 770 (S.D.N.Y. 1984) *aff'd*, 708 F.2d 22 (2d Cir. 1985) (after the Department of Justice decided not to bring price-fixing claims under the federal antitrust laws and after the Commodity Futures Trading Commission lost a trial seeking to prove manipulation, Christopher Lovell tried and won claims for price-fixing and manipulation in a three week jury trial before the Honorable Lloyd F. MaMahon).

*et al.*, No. 01 Civ. 2014 (WHP) (S.D.N.Y.), 287 F.Supp.2d 497, *vacated and remanded*, 426 F.3d 130 (2d Cir. 2005) ("epic Wall Street conspiracy"); *petition for certiorari granted* December 7, 2006, *reversed*, 127 S.Ct. 2383 (June 18, 2007). *See* http://www.supremecourtus.gov/oral_arguments/argument_transcripts/05-1157.pdf; s*ee also* "J.P. Morgan Agrees To Settle IPO Case," *The Wall Street Journal*, April 12, 2006, at C-4 (announcing signing of Memorandum of Understanding to settle this action and numerous related securities law actions against one of the twelve defendants for $425,000,000).

Attorneys from Lovell have also served as lead counsel, co-lead counsel or executive committee or interim class counsel in numerous additional class actions involving indirect purchaser claims.[7] *See* Lovell Resume, Siddiqui Decl., Ex. A.

Lovell also has extensive other experience representing direct purchasers on claims under the federal antitrust laws.[8] In this regard, the self-same attorneys at Lovell Stewart who

---

[7] *E.g., Leider v. Ralfe*, No. 01 Civ. 3137 (S.D.N.Y., transferred to D.N.J.) (Lovell filed the first action alleging price fixing and monopolization by DeBeers harming consumers in the diamond market in violation of the antitrust laws; Lovell prosecuted the case through the conclusion of an evidentiary hearing before settlement was reached, and serves as one of the consolidated class counsel; there is a proposed monetary settlement for $250,000,000 and, equally important, extensive injunctive relief (that is already in effect) was obtained in respect of these claims);

*In re Air Cargo Shipping Services Antitrust Litig.*, (JG) (VVP) (E.D.N.Y.) 06 MD 1775 (on March 6, 2007, Lovell was appointed U.S. indirect purchaser counsel on claims alleging price fixing in violation of antitrust and consumer protection laws; so far, one of the thirty-seven defendants has agreed to settle the claims here for $85,000,000);

*Dennison v. BP Products North America, Inc.*, No. 06 C 3541 (N.D.Ill.) (Lovell was appointed chairman of co-lead counsel on behalf of indirect purchaser plaintiffs alleging manipulation and price-fixing in violation of antitrust and consumer protection laws).

[8] *See* e*.g., In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897 (N.D.Ill.) (attorneys from Lovell served on the Executive Committee and performed extensive work on claims alleging price fixing in violation of antitrust laws and resulting in settlement of $696,667,000 in cash, together with additional benefits, which constituted the second largest class action settlement to that point in the history of the federal antitrust laws );

have more than one hundred years of experience in antitrust cases and who have achieved the Lovell's antitrust successes in *Nasdaq*, *Strobl*, *IPO Antitrust* and other cases collected in the previous footnotes will be personally handling this litigation. They will be available to try this case and otherwise appear here.

Specifically, if Lovell is appointed to a leadership position, then Christopher Lovell, who has been prosecuting or defending antitrust actions for almost thirty years, will personally represent plaintiffs in this action along with Gary Jacobson, who has been prosecuting or defending antitrust action for twenty-five years. Such attorneys' performance was praised in various class actions over the last twenty-five years. This includes by the Honorable Milton H. Pollack, a former class action lawyer who had been on the bench for more than thirty-five years in the Southern District of New York, when he made the following comments:

> The **unprecedented** effort of Counsel exhibited in this case led to their successful settlement efforts and its vast results. Settlement posed a saga in and of itself and required enormous time, skill and persistence. Much of that phase of the case came within the direct knowledge and appreciation of the Court itself. Suffice it to say, the Plaintiffs' counsel did not have an easy path and their services in this regard are best measured in the enormous recoveries that were achieved under trying circumstances in the face of virtually overwhelming resistance. [Emphasis supplied].

*In re Sumitomo Copper Litigation*, 74 F. Supp. 2d *supra* at 396.

---

*In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648 (LAK) (S.D.N.Y.) (as interim co-lead counsel, Lovell prepared the successful class motion and reply papers, obtaining certification of price-fixing claims in violation of the antitrust laws; these claims later resulted, under other counsel's leadership after an attorneys' fee auction, in a settlement of $512,000,000);

*In re Dynamic Random Access Memory Antitrust Litig.*, MDL No. 1486 (N.D.Cal.) (Lovell was appointed to the Executive Committee in these class action claims alleging price-fixing of computer memory in violation of the federal antitrust laws which have resulted, so far, in settlements in excess of $313,000,000);

*In re Microsoft Corp. Antitrust Litig.*, MDL No. 1332 (D.Md.) (Lovell was appointed co-lead counsel in this extremely complex antitrust litigation which resulted in a partial settlement of the federal claims and many partial settlements of the state antitrust claims.).

Finally, Lovell has the ability (and is committed) to provide the financial resources needed to prosecute this class action. For example, the Lovell has (so far) advanced more than $3,200,000 in costs in the *IPO* cases. Lovell is financially in a position and prepared to do so here as well.

### 2. **Mason**

The Mason Law Firm (four lawyers) limits its practice to class actions and complex litigation on behalf of plaintiffs. Mason is presently litigating several class actions in this Court:

- Mason represents more than 300 plaintiffs in a mass tort before Judge Huvelle arising from a plume of petroleum underneath hundreds of homes located in the Washington, DC, community of Riggs Park.[9] A settlement of $6.15 million was recently reached in this action.

- Mason is seeking to represent a class of veterans who suffered pecuniary or emotional damages as a result of the Veteran's Administrations loss of a laptop which contained data on millions of veterans. The case is presently pending before Judge Robertson.[10]

- Mason seeks to represent a class of consumers who were unable to obtain promised rebates from InPhonics, Inc. The case is presently pending before Judge Huvelle.[11]

Mason also represents plaintiffs in other complex litigations pending in this Court:

- Mason is co-counsel on behalf of shareholder's of the Federal National Mortgage Association ("Fannie Mae"), presently pending before Judge Friedman. *Arthur v. Fannie Mae*, 1:07-cv-02130-PLF.

- Mason represents the Penobscot Indian Tribe and Global Direct Sales in litigation against the Department of Housing and Urban Development. *Penobscot Indian tribe, et al v. United States Department of Housing and Urban Development*, No. 1:07-cv-1282-PLF. The Court granted plaintiffs' motion for preliminary injunctive relief on November 30, 2007, and has taken plaintiffs' motion for a summary judgment under advisement.

---

[9] *Nnadili, et al. v. Chevron U.S.A., Inc*, No. 02-cv-1620 (ESH).

[10] *In re Department of Veterans Affairs (VA) Data Theft Litigation*, No. 06-0506 (JR).

[11] *In re Inphonic, Inc. Wireless Phone Rebate Litigation,* 1:06-mc-507.

Mason is also prosecuting class actions in federal courts throughout the country.  These cases include:

- *In re General Motors Corp. Speedometer Products Liability Litigation*, MDL 1896 (W.D. Wash.).  Mason serves as one of four lead counsel.

- *In re Human Tissue Products Litigation,* MDL 1763 (D.N.J.). Mason is a court-appointed member of the Executive Committee.

- *In re National Security Agency Telecommunication Records Litigation*, MDL 1791 (N.D. Cal.).  Mason has been appointed by the Court to serve as Lead Counsel for the class actions pending against Defendant Sprint.

- *In re Southeastern Milk Antitrust Litigation*, MDL No, 1899 (E.D. Tenn.)  Mason seeks to represent a class of independent dairy farmers who have suffered economic harm as a result of defendants monopolization of the market for raw milk.

- *Adams v. Federal Materials,* No. 5:05-CV-90TBR (W.D. Ky.). Mason represents more than 300 properties in litigation pending in state and federal court arising from allegedly defective concrete.

- *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.,* No. 5:06-CV-160-D1 (E.D.N.C.). Mason seeks to represent a class of purchasers of allegedly defective silage bags.

- *Stickrath v., Globalstar, Inc,* No. 07-CV-01941-TEH (N.D.Cal.).  Mason seeks to represent a class of subscribes to Globalstar, Inc.'s satellite telecommunications services. Judge Henderson recently denied defendant's second motion to dismiss.

- *Kendrick, et al  v Progressive Direct Co., et al.*, No. 2:06-cv-00146-DLB (E.D. Kty.). Mason represents a certified class against Safe Auto Insurance Company and seeks to represent classes against other insurance companies in litigation on behalf of insureds who were improperly charged taxes on their insurance premiums.  Judge Bunning recently granted final approval of a $2.5 million settlement with Safe Auto, one of 20 defendants in this litigation.

Mason has served as co-counsel on several significant class actions resolved in federal courts: *Turner v. General Electric Company,* No. 2:05-CV-186 (M.D. Fl. 2007) (settlement of claims arising from defective refrigerators); *Galanti v. Goodyear Tire & Rubber Company*, No. 03-209 (D.N.J. 2003) (creation of $330 million settlement fund for payment of claims arising from defective radiant heating systems); and *In re Swanson Creek Oil Spill Litigation*, No. 00-

1429 (D. Md. 2002) (Lead Counsel; $2.25 million settlement fund to resolve litigation arising from largest oil spill in history of State of Maryland).

Mason has also successfully resolved numerous class actions in state courts across the country, including: *Lubitz v. Daimler Chrysler Corp.* (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey in 2007) and *Posey, et al v Dryvit Systems, Inc*., Case No. 17,715-IV (Tn. Cir. Ct) (Co-Lead Counsel; national class action settlement providing cash and repairs to more than 7,000 owners of homes clad with synthetic stucco).

Mason's extensive experience and history of success in plaintiffs' class actions qualifies the appointment of the firm and its founding partner, Gary E. Mason, as co-lead counsel for the Indirect Purchasers Class. Mr. Mason began his class action practice as an associate on numerous antitrust price fixing cases, including *In re Catfish Antitrust Litig.,* Master File No. 2:92CV073-D-O, MDL No. 928 (D. Miss.), and *In re Carbon Dioxide Antitrust Litig.,* Case No. 92-MD-940-CIV-ORL-3L23, MDL Docket No. 940 (M.D. Fl.). The firm is prepared to commit its full complement of four attorneys and two paralegals to this case. As the firm is located in Washington, DC, Mason believes he will be able to assist the Court and Co-Lead Counsel in litigating this matter efficiently and economically.

### 3.    Stamell

One of the Stamell Firm's founding partners, Jared Stamell, first started working on antitrust matters when he worked at the Department of Justice over 30 years ago. He has since prosecuted several antitrust class actions, including *In re Industrial Diamonds Lit.*, Case No. MDL-948 (WCC) (S.D.N.Y.); *ANCO Industrial Diamond Corp. v. DB Investments, et al.,* Case

No. 01-cv-4463 (D.N.J.); *British Diamond Import Co. v. Central Holdings Ltd., et al.*, Case No. 04-cv-04098; *Angela Tese-Milner v. Diamond Trading Co., Ltd.*, Case No. 04-CV-5203 (KMW) (KNF).  *See* Stamell Resume, Siddiqui Decl., Ex C.  In addition, the Stamell Firm has also made significant contributions to complex, nationwide class action cases in both antitrust and non-antitrust contexts such as *In re Monosodium Glutamate Lit.,* Case No. MDL 00-1328 (PAM/JGL) (D. Minn.); *In re New Motor Vehicles Canadian Export Antitrust Lit.*, Case No. MDL 1532 (D.Me.); *In re MetLife Demutualization*, Case No. CV 00-2258 (TCP)(AKT) (E.D.N.Y.); *In re Energy Transfer Partners Natural Gas Lit.*, Case No. 4:07-cv-03349 (S.D.TX.) and *In re Initial Public Offering Securities Lit.* No. 21 MC 92 (SAS) (S.D.N.Y.).  *See* Stamell Resume, Siddiqui Decl., Ex C.

## IV.    **CONCLUSION**

For all of the foregoing reasons, Lovell, Mason and Stamell respectfully request appointment as Interim Co-Lead Class Counsel for the Indirect Purchaser Plaintiffs for these consolidated class actions.

Dated: February 15, 2008                          LOVELL STEWART HALEBIAN LLP

                                                  /s/Christopher Lovell

                                                  Christopher Lovell
                                                  Gary Jacobson
                                                  Imtiaz A. Siddiqui
                                                  500 Fifth Avenue
                                                  New York, NY 10110
                                                  T: (212) 609-1900
                                                  F: (212) 719-4775

THE MASON LAW FIRM, LLP
Gary E. Mason
Donna F. Solen
1225 19th Street NW, Suite 500
Washington, DC 20038
T: (202) 429-2290
F: (202) 429-2294

STAMELL & SCHAGER, LLP
Jared Stamell
One Liberty Plaza, 35th Floor
New York, NY 10006
T: (212) 566-4047
F: (212) 566-4061

*Proposed Interim Co-Lead Indirect
Purchaser Plaintiff Class Counsel*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE: RAIL FREIGHT FUEL
SURCHARGE ANTITRUST LITIGATION
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

This Document Relates to:

ALL INDIRECT PURCHASER ACTIONS

Civil Docket No.1:07-mc-00489 PLF

MDL 1869

**DECLARATION OF IMTIAZ A. SIDDIQUI**
**IN SUPPORT OF MOTION TO APPOINT INTERIM CO-LEAD**
**CLASS COUNSEL FOR INDIRECT PURCHASER PLAINTIFFS**

I, Imtiaz A. Siddiqui, submit this declaration pursuant to 28 U.S.C. § 1746 and declare as

follows:

1.   I am an attorney with the law firm of Lovell Stewart Halebian LLP and submit this

declaration in support of the instant Motion for Appointment of Interim Co-Lead Class Counsel

for Indirect Purchaser Plaintiffs.  I am familiar with the facts set forth in this declaration based

upon personal knowledge.

2.     Attached hereto as Exhibit A is a true and correct copy of the current firm résumé

of Lovell Stewart Halebian LLP.

3.     Attached hereto as Exhibit B is a true and correct copy of the current firm résumé

of The Mason Law Firm, LLP.

4.     Attached hereto as Exhibit C is a true and correct copy of the current firm résumé

of Stamell & Schager, LLP.

5.      Attached hereto as Exhibit D is a true and correct copy of the order relating to indirect purchaser plaintiffs in *In re OSB Antitrust Litig.*, No. 06-cv-826-PD (E.D.Pa.).

6.      Attached hereto as Exhibit E is a true and correct copy of the order relating to indirect purchaser plaintiffs in *In re Publication Paper Antitrust Litig.*, No. 3:04 MD 1631 (SRU) (D.Conn.).

7.      Attached hereto as Exhibit F is a true and correct copy of the order relating to indirect purchaser plaintiffs in *In re Methyl Methacrylate (MMA) Antitrust Litig.*, No. No. 06-md-1768 (D.Conn.).

8.      Attached hereto as Exhibit G is a true and correct copy of the order relating to indirect purchaser plaintiffs in *In re Hydrogen Peroxide Antitrust Litig.*, No. 05-666 (MDL 1682) (E.D.Pa.).

9.      Attached hereto as Exhibit H is a true and correct copy of the order relating to indirect purchaser plaintiffs in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH (MDL 1486) (N.D.Ca.).

10.      Attached hereto as Exhibit I is a true and correct copy of the order relating to indirect purchaser plaintiffs in *In re Vitamin C Antitrust Litig.*, No. MDL 06-1738 (DGT) (JO) (E.D.N.Y.)

11.      Attached hereto as Exhibit J is a true and correct copy of the order appointing U.S. Indirect Purchaser Counsel in *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06 MD 1775 (JG) (VVP) (E.D.N.Y.).

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, NY
        February 15, 2008

                                     /s/Imtiaz A. Siddiqui
                                     Imtiaz A. Siddiqui

# Exhibit A

**LOVELL STEWART HALEBIAN LLP**

Lovell Stewart Halebian LLP and its predecessors (collectively the "Firm") have focused on class actions under the antitrust laws, the securities laws, and the Commodity Exchange Act.

The Firm is the only firm of which we know that has obtained, as sole lead counsel or co-lead counsel, what were at the times, the largest class action settlements in the history of each of the foregoing federal statutes. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 471 (S.D.N.Y. 1998) ("this all-cash settlement [for $1,027,000,000], achieved through 'four years of hard-fought litigation,' apparently is the largest recovery (class action or otherwise) in the hundred year history of the state and federal antitrust laws."); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("The recovery is the largest class action recovery in the 75 plus year history of the Commodity Exchange Act"); *Blatt v. Merrill Lynch Fenner & Smith Inc.*, 94 Civ. 2348 (JAG) (D.N.J.) ("by far the largest settlement" of class action claims under the Investment Company Act, *Securities Class Action Alert* letter dated August 17, 2000).

More important, in each of the foregoing settlements, as well as other class action settlements achieved by the Firm,[1] claiming class members received, after payment of all attorneys' fees and costs had been deducted, 100 cents on the dollar for their single (non-trebled) damages exclusive of prejudgment interest.

With regard to antitrust experience, the Firm has prosecuted the following notable cases.

(1)  The Firm is one of the very few firms to try and to win a verdict on claims for price-fixing in violation of the antitrust laws in a federal court in New York. *Strobl v. New York Mercantile Exchange*, 582 F. Supp. 770 (S.D.N.Y. 1984), *aff'd*, 768 F.2d 22 (2d Cir. 1985)

---

[1]  *E.g., In re Soybeans Futures Litig.*, 89 Civ. 7009 (CRN) (N.D.Ill.)  (the Firm served as Chairman of Co-Lead Counsel in this class action which provided claiming class members, after all attorneys' fees and costs had been paid, with all losses due under plaintiffs' expert's formula (exclusive of prejudgment interest)).

"*Strobl*"). In *Strobl*, after the Department of Justice decided not to bring price-fixing claims under the federal antitrust laws, and after the Commodity Futures Trading Commission lost a trial seeking to prove commodity manipulation, the Firm tried and won claims for price-fixing and manipulation in a three week jury trial before the Honorable Lloyd F. MacMahon. *Id.*

(2) Christopher Lovell recently presented Respondents' entire thirty minute argument to the United States Supreme Court in *Billing v. Credit Suisse First Boston Ltd., et al.*, No. 01 Civ. 2014 (WHP) (S.D.N.Y.) In this case, the Firm was appointed Chairman of co-lead counsel to prosecute claims for price-fixing in the securities markets in alleged violation of the antitrust laws. *See Billing v. Credit Suisse First Boston Ltd.*, 287 F.Supp.2d 497 (S.D.N.Y. 2003) (dismissing complaint), vacated, 426 F.3d 130 (2d Cir. 2005) (vacating dismissal and remanding for further proceedings), reversed, 127 S.Ct. 2383 (2007); *see also* "J.P. Morgan Agrees To Settle IPO Case," *The Wall Street Journal*, April 12, 2006, at C-4 (announcing signing of Memorandum of Understanding to settle this action and numerous related actions against one of the twelve defendants for $425,000,000).

Although there are many other law firms that have done plaintiffs' work in antitrust cases, there are very few (if any) class action firms, besides this Firm, that have tried and won a price fixing case in a New York federal court, and relatively few class action firms that have argued an appeal to the United States Supreme Court in an antitrust case.

(3) In *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 471 (S.D.N.Y. 1998), the Firm filed the first case and was appointed one of four co-lead counsel on claims for price-fixing. The class counsel obtained the largest class action settlement (up to that time) in the history of the antitrust laws, $1,027,000,000. According to plaintiffs' experts and due to the absence of any reversionary terms in the settlement agreements, this settlement produced a pay-

out to class members, after deducting all attorneys' fees and costs, that equaled their single (non-trebled) damages.

(4)  *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897 (N.D.Ill.). Attorneys in the firm served on the Executive Committee and performed extensive work on claims alleging price fixing in violation of antitrust laws and resulting in settlement of $696,667,000 in cash, together with additional benefits.  This constituted the second largest class action settlement to that point in the history of the federal antitrust laws.

(5)  *In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648 (LAK) (S.D.N.Y.).   As interim co-lead counsel, the Firm prepared the consolidated complaint and the successful class motion and reply papers, winning certification of price-fixing claims in violation of the antitrust laws.  Without further pleading or contested litigation, and after an attorneys fee auction resulted in the appointment of a new class counsel, the class certified by this Firm's efforts obtained a settlement of $512,000,000.

(6)   *In re Dynamic Random Access Memory ("DRAM") Antitrust Litigation*, MDL No. 1486 (N.D.Cal.).  The Firm was appointed to the Executive Committee on these class action claims alleging price-fixing of computer memory in violation of the federal antitrust laws. The claims have resulted in settlements of $313,000,000.

(7)  *Leider v. Ralfe*, No. 01 Civ. 3137 (S.D.N.Y., transferred to D.N.J.)  The Firm filed the first action alleging price fixing and monopolization by DeBeers injuring consumers in the diamond market in violation of the antitrust laws.  The Firm prosecuted the case through the conclusion of an evidentiary hearing on injunctive relief before the settlement was reached.   The Firm serves as one of the class counsel for the proposed settlement for $250,000,000 of these

claims, along with proposed extensive injunctive relief (that is already in effect pending final approval of the proposed class settlement).

(8) *In re Air Cargo Shipping Services Antitrust Litig.*, (CBA) (E.D.N.Y.) 06 MD 1775. The Firm was appointed U.S. indirect purchaser counsel on claims alleging price fixing in violation of antitrust and consumer protection laws. So far, one of the thirty-seven defendants has agreed to settle for $85,000,000 the claims alleged here.

(9) *Dennison v. BP Products North America, Inc.* ("Propane Antitrust"), No. 06 C 3541 (N.D.Ill.). The Firm has been appointed chairman of indirect purchaser co-lead counsel on these claims alleging manipulation and price-fixing in violation of the antitrust laws.

(10) *In re Digital Music Antitrust Litig.*, 06 MD 1780 (LAP) (S.D.N.Y.). The Firm was appointed interim co-lead counsel on claims alleging price fixing in violation of antitrust and consumer protection laws.

(11) *In re Microsoft Corp. Antitrust Litigation*, MDL No. 1332 (D.Md.). The Firm was appointed co-lead counsel in this extremely complex antitrust litigation which resulted in a partial settlement of the federal claims and many partial settlements of the state antitrust claims. The Firm persistently represented the class and the interests of prospective class members for seven years, including extensive involvement in discovery and preparation for trial (a settlement averted trial) and acting as sole appeal counsel for one prospective class member in two separate appeals to the Court of Appeals for the Fourth Circuit. *Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006); *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322 (4th Cir. 2004).

The Firm has handled numerous other antitrust cases, as well as cases that primarily involved claims other than under the antitrust laws but which also included or were amended to include antitrust claims, *e.g.*, *In re Sumitomo Copper Litigation*, 74 F.Supp.2d 393, 395

4

(S.D.N.Y. 1999) ("*Sumitomo*").  In *Sumitomo*, the Firm was sole lead counsel and Chairman of the Executive Committee in these actions which produced in excess of $149 million in settlements.  Plaintiffs ultimately alleged price-fixing in violation of the federal antirust laws but the claims were primarily prosecuted for manipulation in violation of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*

I.        **Christopher Lovell**, the Firm's senior attorney, has tried more than fifty cases and:

    A.    was first appointed by a Court as class action or derivative action counsel in 1981, and has since then been personally appointed or led this Firm's efforts as class or derivative action counsel in more than fifty cases, including

- Co-Lead Counsel in *In re NASDAQ Market-Makers Antitrust Litigation*, M.D.L. No. 123 (U.S.D.C. S.D.N.Y.) ($1,027,000,000 settlement);

- Lead Counsel and Chairman of Executive Committee in several different class actions consolidated in In re Sumitomo Copper Litigation, 96 Civ. 4584 (MP) ($149,350,000 settlement);

- Co-Lead Counsel in *Blatt v. Merrill Lynch Fenner & Smith Inc., et al.*, 94 Civ. 2348 (JAG) ($76,500,000 settlement providing claiming class members, after all attorneys fees and costs had been paid, with a positive return on their investment (exclusive of prejudgment interest));

- Coordinating Chairman of the Executive Committee and argued the appeal before the United States Supreme Court on March 27, 2007, in *IPO Antitrust Litigation*, 426 F.3d 130 (2d Cir. 2005) *petition for certiorari granted on December 7, 2006; see also* Randall Smith & Robin Sidel, *JP Morgan [one of the defendants in the case] Agrees to Settle IPO Case for $425 Million*, the Wall Street Journal, April 21, 2006 at C4;

- Interim Class Counsel in *In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648 (LAK) (S.D.N.Y.) (as interim co-lead counsel, Lovell Stewart prepared the successful class motion and reply papers, obtaining certification of price-fixing claims in violation of the antitrust laws; these claims later resulted, under other counsel's leadership after an attorneys' fee auction, in a settlement of $512,000,000);

- Chairman of Executive Committee, Lead Counsel, Co-Lead Counsel, Executive Committee Member or class counsel in other successful

antitrust class actions. *E.g., Leider v. Ralfe*, 01 Civ. 3137 (S.D.N.Y.) (HB) (injunction against De Beers regarding its conduct in the diamond markets, and $250 million proposed class action settlement); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig. MDL*, No. 1486 (N.D. Cal.) (settlements of $313,000,000); and

- Co-Lead Counsel in *In re Natural Gas Commodity Litigation*, Index No. 03 CV 6186 (VM) (AJP) (U.S.D.C., S.D.N.Y.) ("*Natural Gas*") (alleging manipulation under Commodity Exchange Act) ($100,850,000 in recoveries so far);

- has tried various price fixing, *Strobl*, 768 F.2d 22 *supra*, and manipulation claims. *E.g.*, *Black v. Finantra*, 418 F. 3d 203 (2d Cir. 2005) (re-instating plaintiffs' jury verdict finding manipulation);

- was Chairman of Co-Lead Counsel in *In re Soybean Futures Litigation*, 89 Civ. 7009 (U.S.D.C. N.D.Ill.) (CRN) (class action settlement provides claiming class members/soybean futures traders, after all attorneys fees and costs had been paid, with all of each class members' damages due under plaintiffs' expert's formula (exclusive of prejudgment interest));

B.    graduated from New York University School of Law in 1976, receiving the Vanderbilt Award, and was associated with Beekman & Bogue from 1976 until 1980; and

C.    has maintained a private law practice since June 1980 including while being employed as Vice-President and General Counsel of a *Fortune* 500 company, American Bakeries Company, from 1981 until 1983, and has an "AV" rating from Martindale Hubbel.

The other senior attorneys of the Firm are set forth below.

II.    **Gary S. Jacobson**:

A.    was named Valedictorian of John Randolph Tucker High School, Class of 1968;

B.    is a 1972 graduate of Yale (with Honors), and a 1976 graduate of the University of Virginia Law School (Law Review 1974-76);

C.    has been litigating antitrust cases since 1976, has tried more than twenty-five cases, and has an "AV" rating from Martindale-Hubbell; and

D.    has extensive experience in prosecuting antitrust and commodity futures manipulation class actions including arguing the motion to dismiss in *Sumitomo* (*see* fn 1) and preparing the Class Certification Brief, the Reply Brief on Class Certification, and the Second Circuit Brief in Opposition to the Petition for

6

Review of plaintiffs' successful class motion in *Natural Gas supra*, 231 F.R.D. 171 (S.D.N.Y. 2005), *petition for review denied*, (2d Cir. August 1, 2006).

III.     **Victor E. Stewart**:

    A.     was named Valedictorian of St. Marks School Class of 1968;

    B.     is a 1972 graduate of Yale, B.A., a 1975 graduate of Harvard Business School, M.B.A., and a 1979 graduate of the University of Virginia Law School, J.D.; and

    C.     has extensive experience in prosecuting securities and commodity futures manipulation claims. This includes second chairing the *Strobl* trial conducting many depositions in Sumitomo, (*see* fn 1 *supra*), and serving as one of three supervising attorneys in charge of document and deposition discovery in *In re IPO Sec. Litig.*, 21 MC 92 (S.D.N.Y.) (SAS) ("*IPO Securities*") (alleging securities manipulation).

IV.     **Peggy J. Wedgworth**:

    A.     was named Valedictorian of Trinity Episcopal Day School, Class of 1979; is a 1986 graduate of the University of Alabama School of Law; and placed second in the National Moot Court Competition conducted by the Association of the Bar of the City of New York;

    B.     tried more than twenty-five criminal cases as an Assistant District Attorney in Brooklyn, New York from 1986 to 1989;

    C.     has litigated class actions since 1989 including extensive experience with this firm in commodity manipulation and price fixing class actions; and

    D.     has repeatedly conducted or defended expert discovery in commodity futures manipulation and antitrust class actions.

V.     **Jody Krisiloff**:

    A.     is a 1976 graduate of Mount Holyoke College, B.A., *summa cum laude*;

    B.     is a 1979 graduate of Columbia University School of Law, J.D.;

    C.     has more than twenty-five years' experience with commercial and securities litigation, including litigating primarily class actions since 1991; and

    D.     has acted as Chairperson of Co-Lead Counsel for the Firm in *Fiala v. Metropolitan Life Ins. Co.*, 6 A.D.3d 320, 776 N.Y.S.2d 29 (1st Dep't 2004) ("*MetLife*") (challenging what was at the time the largest demutualization of a mutual insurance company).

VI.          **John Halebian:**

    A.          graduated from Georgetown University (A.B., 1984) and Villanova Law School (J.D. 1977) where he served on the *Law Review* (1975-77) as a Case and comments Editor and as Editor-in-chief of The Docket, the law school newspaper;

    B.          since graduating from law school in 1977, has specialized in federal and state corporate and commercial litigation with an emphasis on class actions and securities litigation;

    C.          was appointed to the Executive Committee in *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (three settlements totaling $320 million);

    D.          served as lead or co-lead counsel or as a member of an executive or steering committee in many other class action shareholder litigations around the country that have been successfully prosecuted to conclusion; and

    E.          prosecuted, defended and tried to conclusion several complex commercial and securities fraud litigations on behalf of individual claimants and companies before the New York Stock Exchange, the National Association of Securities Dealers and the American Arbitration Association.  These actions generally involved brokerage customer claims of churning or unsuitable investments, and corporate wrongdoing.

The remaining attorneys in the firm are:

VII.          **Adam C. Mayes:**

    A.          is a graduate of Yale University, *cum laude*, B.A. 1985, and of the University of California, Berkeley, M.A. (Asian Studies) and J.D. 1993;

    B.          studied at Chiang Mai University, Thailand, and was Legislative Assistant to Members of the Hong Kong Legislative Council, 1993-1997;

    C.          admitted to practice in California and New York; and

    D.          has been associated with this Firm since 2005, working primarily on securities disclosure and derivative actions.

VIII.          **Ian T. Stoll:**

    A.          graduated from the University of California at Berkeley, A.B., in 1987 and the State University of New York, Buffalo School of Law, J.D., in 1996;

8

B.      is admitted to practice in New York and before the United States District Courts for the Southern and Eastern Districts of New York; and

C.      has been associated with this firm since 1997.

IX.      **Craig M. Essenmacher:**

A.      is a 1997 graduate of Michigan State University - DCL *summa cum laude*; and in 1994 and 1989 a PhD of Philosophy in Chemistry and a B.S. in Chemistry, respectively, from Michigan State University, the recipient of the Jurisprudence Award, King Scholarship Program, Alumni Scholarship Award, natural Resources Scholarship Award;

B.      admitted to practice in the State of Michigan, before the United States District Court for the Eastern District of Michigan, and before the United States Court of Appeals for the Sixth Circuit; and

C.      has been associated with this Firm since 2005.

X.      **Keith Essenmacher:**

A.      is a graduate of Michigan State University, B.S. in Physiology/Pre-Med, 1995;

B.      is a graduate of Michigan State University Law, J.D. 2000;

C.      was admitted to practice in the State of Michigan in 2000, and before the United States District Court for the Eastern District of Michigan in February 2001; and

D.      has conducted electronic and other document discovery in class actions, and prosecuted and tried various individual actions.

XI.      **Imtiaz A. Siddiqui:**

A.      is a graduate of Tulane Law School, J.D., 2003, *cum laude*, where he was Editor in Chief of the Tulane Journal of Technology and Intellectual Property and Student Attorney for the Tulane Civil Litigation Law Clinic;

B.      was admitted to practice in the State of New York in 2004, and before the United States District Courts for the Southern and Eastern Districts of New York in 2005; and

C.      has been associated with this Firm since 2006, working primarily on briefing in various securities and antitrust class actions.

XII.        **Christopher M. McGrath:**

    A.        is a 2001 graduate of the University at Missouri, B.A. (with Honors);

    B.        is a 2004 graduate of the University of Missouri, J.D.;

    C.        was admitted to practice in New York in 2005; and

    D.        has worked with this Firm since 2005 almost exclusively on commodity futures manipulation cases (*Natural Gas* and *Pimco*) and *MetLife*.

# Exhibit B

# THE MASON LAW FIRM, LLP

**The Mason Law Firm, L.L.P.**
**1225 19th Street Northwest, Suite 500**
**Washington, D.C. 20036**
**Telephone: 202-429-2290**
**Fax: 202-429-2294**

## FIRM PROFILE

The Mason Law Firm is a civil litigation firm dedicated to representing plaintiffs in class action lawsuits against corporations and others who cause widespread injuries to large numbers of innocent persons. We represent various groups suffering injury, including those harmed by consumer fraud, price fixing and other anti-competitive conspiracies, environmental disasters, toxic torts, and defective products.

## ATTORNEY PROFILES

### Gary E. Mason

Gary E. Mason specializes in consumer class actions and mass torts. In the 12 years he has represented plaintiffs, Mr. Mason has recovered more than $1.3 billion for the persons he represents. He received national recognition for his work on litigation over defective polybutylene pipe, ultimately resulting in an unprecedented $950 million settlement. He was also recognized by Washingtonian Magazine as one of the top forty lawyers in Washington, D.C. under the age of 40.

He has served as Lead Counsel or Co-Counsel in numerous class actions, including In re the Exxon Valdez, In re Synthetic Stucco (EIFS) Products Liability Litigation, In re Diet Drugs Products Liability Litigation, In re Swanson Creek Oil Spill Litigation, and numerous consumer protection and product liability class action suits. Over the course of his career, he has represented consumers in class actions involving a wide range of products, including, fire retardant plywood, polybutylene pipe, high-temperature plastic venting, hardboard siding, synthetic stucco, pharmaceutical products, consumer electronics and automobiles.

Mr. Mason was formerly a Partner at Cohen, Milstein, Hausfeld & Toll, P.L.L.C., one of the largest plaintiffs law firms in the country, where he was the Chair of the Products Liability and Consumer Protection Practice Group. Prior to joining Cohen Milstein in 1990, Mr. Mason was a litigation associate at Skadden, Arps, Slate, Meagher & Flom in Washington, D.C. Mr. Mason left Cohen Milstein and opened The Mason Law Firm in June, 2002.

He is a recipient of a Public Justice Achievement Award for his work on the polybutylene pipe product liability litigation. The Washingtonian Magazine has recognized him as one of forty lawyers under forty "who are making names for themselves" in Washington, D.C. Mr. Mason is listed in Who's Who in American Law. Mr. Mason graduated from Brown University in 1984 (B.A., magna cum laude, Phi Beta Kappa) and received his law degree from Duke University Law School in 1987. Mr. Mason then clerked for the Honorable Andrew J. Kleinfeld, U.S. District Court Judge in Anchorage, Alaska. He has been admitted to practice in Washington, D.C., New York and Maryland

DC Office: 1225 19th Street, N.W. | Suite 500 | Washington, DC 20036 PHONE: 202.429.2290 FAX: 202.429.2294
NY Office: 1120 Avenue of the Americas | Suite 4019 | New York, NY 10036 PHONE: 212.362.5770 FAX: 917.591.5227
www.masonlawdc.com

# THE MASON LAW FIRM, LLP

## Donna F. Solen

Donna F. Solen joined the Mason Law Firm as a partner in 2006.  She specializes in complex litigation and class actions involving violations of the antitrust, consumer protection, environmental and products liability laws.  Prior to joining The Mason Law Firm, Ms. Solen was a senior associate at Cohen Milstein Hausfeld & Toll, P.L.L.C., one of the largest plaintiffs' law firms in the country.  Ms. Solen is currently involved in litigation against Globalstar Inc., for allegedly violating California's consumer protection statutes when it failed to disclose material defects in its satellite telephone service.  She is also working on a variety of antitrust cases such as *In re Rail Freight Fuel Surcharge Antitrust Litigation* (D.D.C), and other consumer protection and product liability actions such as Vioxx and *In re Bausch and Lomb Contacts Lens Solution Products Liability Litigation*.  Ms. Solen served as counsel in many successful consumer actions including, among other things, *Nunez v. Westfield Homes of Florida, Inc.*, Case No. 04-06062 (Circuit Court, Hillsborough County, FL) (confidential resolution of claims by homeowners alleging violations of building codes applicable to stucco application); (*In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.) ($150 million class action settlement of claims that the manufacturer artificially inflated the price of Lupron, which is primarily used for the treatment of prostate cancer); and *Strugano v. Nextel Communications, Inc., et al.*, (Superior Court, Los Angeles County, CA) ($11-$53 million California class action settlement of claims that Nextel failed to provide adequate or reasonable notice of unilateral changes to subscriber agreements).

Ms. Solen graduated from the Florida State University (B.S. magna cum laude, 1994) and obtained her law degree from the University of Florida College of Law (J.D. with honors, 1997).  While at the University of Florida, Ms. Solen served as editor-in-chief of the Florida Journal of International Law and was the author of a note entitled "ISO 14000: Emerging International Environmental Law" 10 Fla. J. Int'l L. 275 (1995) and a comment entitled "Forum Non Conveniens and the International Plaintiff" 9 Fla. J. Int'l L. (1994).

Ms. Solen is admitted to practice in Florida and the District of Columbia.

## Nicholas A. Migliaccio

Nicholas Migliaccio joined the Mason Law Firm as an associate in 2003. Prior to joining the Mason Law Firm, Mr. Migliaccio was an associate at Environmental Protection International, a firm specializing in environmental matters. He received his BA cum laude from the State University of New York at Binghamton in 1997, and received his law degree from Georgetown University Law Center in 2001, where he was an Editor of the Georgetown International Environmental Law Review.

Mr. Migliaccio is admitted to practice in New York and the District of Columbia.

## Khushi K. Desai

Ms. Desai joined the Mason Law Firm as an associate in 2007 shortly after graduating from the University of Maryland School of Law where she was inducted into the Order of

DC Office:  1225 19th Street, N.W. | Suite 500 | Washington, DC 20036 PHONE:  202.429.2290 FAX: 202.429.2294
NY Office:  1120 Avenue of the Americas | Suite 4019 | New York, NY 10036 PHONE:  212.362.5770  FAX: 917.591.5227
www.masonlawdc.com

# THE MASON LAW FIRM, LLP

Barristers and earned a certificate in Environmental Law.  In 2004, Ms. Desai graduated Phi Beta Kappa from the University of Maryland, College Park with High Honors in Environmental Science and Policy and obtained a citation in Environmental Studies from the University Scholars Program.  She is admitted to practice in Maryland.

**NOTABLE CASES**

*Nichols v. Progressive Direct Insurance Co., et al.*, No. 2:06cv146 (E.D. Ky., 2008) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund).

*Lubitz v. Daimler Chrysler Corp.* (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey in 2007).

*Turner v. General Electric* (national settlement for repairs or replacement of defective refrigerators).

*Galanti v. Goodyear Tire & Rubber Co.* (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems).

*Posey, et al v Dryvit Systems, Inc.*, Case No. 17,715-IV (Tn. Cir. Ct) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants).

*In re Swanson Creek Oil Spill Litigation*, No. 00-1429 (D. Md.) (Lead Counsel; $2.25 million Settlement of litigation arising from largest oil spill in history of State of Maryland).

*In re Synthetic Stucco Litigation*, Civ. Action No. 5:96-CV-287-BR(2)(E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

DC Office:  1225 19th Street, N.W. | Suite 500 | Washington, DC 20036 PHONE:  202.429.2290 FAX: 202.429.2294
NY Office:  1120 Avenue of the Americas | Suite 4019 | New York, NY 10036 PHONE:  212.362.5770  FAX: 917.591.5227
www.masonlawdc.com

# Exhibit C

## EXHIBIT A

The New York City law firm Stamell & Schager, LLP was formed in 1989 under the name Stamell, Tabacco & Schager. The firm represents clients in business litigation, including antitrust, securities and other complex litigation.

## Jared B. Stamell

Mr. Stamell's practice consists principally of a trial and appellate practice on behalf of individuals and small businesses with claims for damages arising from violations of federal regulatory laws, such as antitrust and securities laws, as well as breach of contract, fraud and other commercial law claims. He has been counsel in dozens of class actions, and served as lead or co-lead counsel in *In re MetLife Demutualization Litigation,* S.D.N.Y. 00 CV 2258; *In re Industrial Diamonds Antitrust Litigation*, S.D.N.Y. Master File No. MDL-948; and *In re Towers Financial Corporation Noteholders Litigation*, S.D.N.Y. 93 Civ. 0810.

Mr. Stamell is admitted to practice in New Jersey, New York, Massachusetts and the District of Columbia, as well as the United States Supreme Court and numerous federal district and appellate courts. He received a J.D. *cum laude* from Harvard Law School in 1971, where he was awarded a Frank Knox Fellowship to attend the London School of Economics. He received a Master of Science degree in Economics from the London School of Economics in 1972. He subsequently was an attorney in the United States Department of Justice's Policy and Evaluation Section of the Antitrust Division, and assistant counsel and then counsel to the Antitrust Subcommittee of the Committee on the Judiciary of the United States House of Representatives between 1973 and 1975 where his work included investigations into the conduct of the Honorable Richard M. Nixon and into the qualifications of the Honorable Nelson A. Rockefeller to be Vice President of the United States. In 1975, he began practicing law in New York.

## John C. Crow

Mr. Crow is an expert in bankruptcy, creditors' rights and commercial litigation. He began to practice law at Milbank, Tweed, Hadley & McCloy, focusing on complex financial and creditors' rights litigation. His work included domestic and overseas investigation and litigation of multinational corporate fraud and wrongdoing on behalf of the bankruptcy estate in *In re Maxwell Communications Corporation* and liquidation of the bankruptcy estate of a major law firm in *In re Finley Kumble*, obtaining recoveries against former insiders on behalf of the estate. More recently, Mr. Crow has represented bankruptcy estate fiduciaries in pursuing both complex commercial and anti-trust claims in *In re Agway* (N.D.N.Y.) and *In re W.B. David and Co.* (S.D.N.Y.), and has had extensive experience in litigating complex class actions, such as *In re MetLife Demutualization Litigation* (E.D.N.Y.), *In re Canadian Car Antitrust Litigation* (MDL D.Me.), and *In re Energy Transfer Partners Natural Gas Litigation* (S.D. Tx.).

Mr. Crow graduated from the University of Texas School of Law in 1990, Order of the Coif. He also holds a Bachelor of Arts degree in Latin and Classical Studies, *cum laude*, from Brown University. In 1998 he served as Law Clerk to the Hon. Adlai S. Hardin, Jr., Bankruptcy

Judge for the Southern District of New York. From 1999 to 2003, Mr. Crow was an Adjunct Professor at Pace University School of Law, teaching bankruptcy and creditors' rights. He is admitted to practice in New York, including the Southern, Eastern and Northern Districts of New York, and is also admitted in the Southern District of Texas.

### Richard J. Schager, Jr.

Mr. Schager's expertise is in insurance, securities and corporate law and related litigation. For over 15 years until its withdrawal from the U.S., he was U.S. general counsel to a foreign insurance and brokerage company. He has acted as counsel to several corporations and limited partnerships in securities offerings, both public and private, and in compliance with reporting requirements under the Securities Exchange Act of 1934.

Mr. Schager is admitted to practice before the courts of the States of New York and Ohio, the Southern and Eastern Districts of the State of New York, and the Second Circuit Court of Appeals. His current or recent cases include a negligent claims administration claim on behalf of one of the largest U.S. property and casualty insurers against a third party administrator, a claim for wrongful denial of coverage against a stop-loss insurer, and an auditing malpractice claim on behalf of a not-for-profit organization against a major accounting firm. Mr. Schager was lead counsel in *Ackerman v. Price Waterhouse*, a case unique in certifying a class action for accounting malpractice. Decisions are reported at 198 A.D.2d 1, 604 N.Y.S.2d 721 (1st Dep't 1993), 84 N.Y.2d 58, 620 N.Y.S.2d (Ct. App. 1994); 216 A.D.2d 123, 629 N.Y.S.2d 5 (1st Dep't 1995), and 252 A.D.2d 179, 683 N.Y.S.2d 179 (1st Dep't 1998).

A significant part of Mr. Schager's work in the past has involved disputes among equity holders of business entities and business and litigation advice to limited partners in troubled partnerships. He also has provided advice in connection with proxy solicitations by management and dissidents.

From 1985 to 1987, at the invitation of the Shanghai (China) Bureau of Justice, Mr. Schager was a visiting law lecturer in the Commercial Law Department of the Shanghai Institute of Foreign Trade. During this time he presented courses in contract law, the U.N. Convention on International Sales Contracts, corporate law, international trade law and the GATT. Mr. Schager is a 1978 graduate of the Case Western Reserve Law School, where he was associate editor and managing editor of the *Case Western Reserve Law Review*.

### Eric H. Newman

Mr. Newman's expertise is in commercial and securities litigation and general corporate representation. Prior to joining Stamell & Schager, he worked in a Pacific Basin practice at Hill Betts & Nash and Hughes, Hubbard & Reed. During that time he worked on major international transactions, including a joint venture between Yamato Kogyo and Nucor Steel to manufacture steel in the U.S., an investment by Mitsubishi Petrochemical (a medical diagnostics company) and financing of the leveraged buyout of Charter Medical. He also spent a year at Nishimura & Partners, one of Japan's largest international law firms.

Mr. Newman is admitted in the Southern and Eastern Districts of New York.  He received his B.A. *magna cum laude* from Tufts University and his J.D. from Columbia Law School.

# Exhibit D

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE OSB ANTITRUST LITIGATION | : | Master File No. 06-826 (PSD) |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | : | |

## CASE MANAGEMENT ORDER NO. 2

WHEREAS this litigation presently consists of the following twelve actions:

- *Sawbell Lumber Co. v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-826-PD;

- *Columbare Inc. v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-857-PD;

- *Norwood Sash & Door Mfg. Co. v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-899-PD;

- *Frontier Lumber Co., Inc. v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-920-PD;

- *West Lumber Co. v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-924-PD;

- *New Deal Lumber & Millwork Co., Inc. v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-971-PD;

- *Grubb Lumber Co. Inc. v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-1019-PD;

- *S.M. Roberts Construction, et al. v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-1271-PD;

- *Mazerolle v. Ainsworth Lumber Co., Ltd., et al.*, Civil Action No. 06-CV-1321-PD;

- *Padlicki v. Georgia-Pacific Corp., et al.*, Civil Action No. 06-CV-1509-PD;

- *Lang v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-1515-PD; and

- *Reining, et al. v. Louisiana-Pacific Corp., et al.*, Civil Action No. 06-CV-2076-PD;

WHEREAS all twelve actions are based on an alleged conspiracy among the defendants to reduce capacity and fix prices for oriented strand board ("OSB");

WHEREAS seven of the actions (*Sawbell Lumber*, *Columbare*, *Norwood Sash & Door*, *Frontier Lumber*, *West Lumber*, *New Deal Lumber*, and *Grubb Lumber* (collectively, the "Direct Purchaser Actions")) were filed by and on behalf of alleged direct purchasers of OSB;

WHEREAS five of the actions (*S.M. Roberts*, *Mazerolle*, *Padlicki*, *Lang* and *Reining* (collectively, the "Indirect Purchaser Actions")) were filed by and on behalf of alleged indirect purchasers of OSB;

WHEREAS an eighth direct purchaser action, *Pierson Building Ctr., Inc. v. Ainsworth Lumber Co., Ltd.*, was filed in the United States District Court for the Northern District of California as Civil Action No. C-06-03066 EDL; and, on May 24, 2006, the parties stipulated to a transfer of that action to this Court pursuant to 28 U.S.C. § 1404(a); and, the stipulation also provides (1) that the plaintiff in *Pierson* will join in the direct purchasers' Consolidated Amended Complaint and be bound by any case management or scheduling orders issued by the Court in this litigation, and (2) that the defendants will have no obligation to answer or otherwise respond to the *Pierson* complaint;

WHEREAS counsel for all parties have conferred and recommend to the Court that the following procedures and schedule be established in order to avoid duplication, to promote judicial economy, and to provide for the efficient and coordinated prosecution of this litigation; and

WHEREAS the Court, having reviewed the recommendations of counsel, and finding the proposed procedures and schedule appropriate;

IT IS HEREBY ORDERED that Case Management Order No. 1 is VACATED.  It is further ORDERED as follows:

## I.    MASTER DOCKET, MASTER FILE AND SEPARATE ACTION DOCKETS

1.    A Master Docket and a Master File (under the number 06-CV-826-PD) have been established for these related cases and any other related cases subsequently filed in or transferred to this Court.  Entries in said Master Docket shall be applicable to each of the cases in this litigation as more fully set forth below.  Separate dockets shall also be maintained for each related case currently pending, subsequently filed in or transferred to this Court, and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order or a future order of this Court.

2.    When a pleading or other court paper is filed and the caption, pursuant to paragraph 9, infra, shows that it is applicable to "All Actions," to "All Direct Purchaser Actions," or to "All Indirect Purchaser Actions," the Clerk shall file such pleading or other court paper in the Master File and enter such filing in the Master Docket, with a notation to reflect that the filing relates to "All Actions," to "All Direct Purchaser Actions," or to "All Indirect Purchaser Actions," as appropriate.  No further copies need be filed nor docket entries made.

3.    When a pleading or other court paper is filed and the caption, pursuant to paragraph 9, infra, shows that it is applicable only to specified actions, the Clerk need file such pleading or other court paper only in the Master File, but nonetheless shall enter such filing in both the Master Docket and in the docket of each such action.

## II.     NEWLY FILED OR TRANSFERRED ACTIONS

4.     When a case which relates to the subject matter of this litigation is hereafter filed in this Court or transferred here from another court, the Clerk of this Court shall:

       a.     Make an appropriate entry in the Master Docket;

       b.     Place a copy of this Order in the separate file for such action; and

       c.     Mail a copy of this Order to the attorneys for the plaintiffs in the newly filed or transferred case and to the attorneys for any new defendants in the newly filed or transferred case.

5.     This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case which might properly be consolidated or coordinated with the cases in this litigation.

6.     This Order shall apply to each related case subsequently filed in this Court or transferred to this Court unless a party objecting to the coordination or consolidation of such case or to any other provision of this Order shall, within twenty-one (21) days after the date upon which a copy of this Order is mailed to counsel for such party, file an application for relief from this Order or any provision herein and this Court deems it appropriate to grant such application.

7.     The Clerk of this Court shall close for statistical purposes *Padlicki*, *Lang*, *Reining*, and any other related case subsequently filed in or transferred to this Court. *Columbare*, *Norwood Sash & Door*, *Frontier Lumber*, *West Lumber*, *New Deal Lumber*, *Grubb Lumber*, *S.M. Roberts*, and *Mazerolle* have already been closed for statistical purposes.

### III.    CAPTION OF CASES

8.    Every pleading filed in this proceeding, or in any separate action included herein, shall bear a caption in substantially the following form:

| IN RE OSB ANTITRUST LITIGATION | Master File No. 06-CV-00826 (PD) |
|---|---|
| THIS DOCUMENT RELATES TO: | Honorable Paul S. Diamond |

9.    When a pleading or other court paper is intended to be applicable to all actions, the words "All Actions" shall appear immediately after the words "THIS DOCUMENT RELATES TO:" in the caption set out above.  When a pleading or other court paper is intended to be applicable to each of the Direct Purchaser Actions, but not to the Indirect Purchaser Actions, the words "All Direct Purchaser Actions" shall appear immediately after the words "THIS DOCUMENT RELATES TO:" in the caption set out above.  When a pleading or other court paper is intended to be applicable to each of the Indirect Purchaser Actions, but not to the Direct Purchaser Actions, the words "All Indirect Purchaser Actions" shall appear immediately after the words "THIS DOCUMENT RELATES TO:" in the caption set out above.  When a pleading or other court paper is otherwise intended to be applicable only to one, or some, but not all of the actions, the party filing the document shall indicate the action(s) to which the document is intended to be applicable by indicating the last name of the named plaintiff(s) and the docket number(s).

## IV. ORGANIZATION OF PLAINTIFFS' COUNSEL

10. The Court has designated Spector, Roseman & Kodroff, P.C. as Lead Counsel, and Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as Co-Lead Counsel, for the plaintiffs in the Direct Purchaser Actions, with responsibilities hereinafter described.

11. The Court has designated Gilman and Pastor LLP as Lead Counsel, and Straus & Boies, LLP; Trump, Alioto, Trump & Prescott; and Schubert & Reed LLP as Co-Lead Counsel, for the plaintiffs in the Indirect Purchaser Actions, with responsibilities hereinafter described.

12. Lead Counsel in the Direct Purchaser Actions shall be responsible for ensuring that pleadings and orders of the Court are served on all plaintiffs' counsel in the Direct Purchaser Actions; for communicating with the Court on behalf of all plaintiffs' counsel in the Direct Purchaser Actions as to scheduling and organizational matters; and for maintaining a master service list of all plaintiffs and their respective counsel in the Direct Purchaser Actions.

13. Lead Counsel in the Indirect Purchaser Actions shall be responsible for ensuring that pleadings and orders of the Court are served on all plaintiffs' counsel in the Indirect Purchaser Actions; for communicating with the Court on behalf of all plaintiffs' counsel in the Indirect Purchaser Actions as to scheduling and organizational matters; and for maintaining a master service list of all plaintiffs and their respective counsel in the Indirect Purchaser Actions.

14. Lead and Co-Lead Counsel shall have the authority and responsibility for selecting and appointing plaintiffs' counsel committees to assist with the duties and responsibilities of Lead and Co-Lead Counsel so as to most efficiently and expeditiously manage and prosecute this action.

15.    Lead and Co-Lead Counsel shall have the authority and responsibility for the day-to-day management of the interests of their respective plaintiffs in the litigation, and shall call meetings and otherwise manage the work among all plaintiffs' counsel.

16.    Lead and Co-Lead Counsel shall have sole authority over the following matters on behalf of their respective plaintiffs:  (a) the initiation, response, scheduling, briefing and argument of all motions; (b) the scope, order and conduct of all discovery proceedings; (c) such work assignments to other plaintiffs' counsel as they may deem appropriate; (d) the retention of experts; (e) designation of which attorneys may appear at hearings and conferences with the Court; (f) the timing and substance of any settlement negotiations with defendants; and (g) other matters concerning the prosecution or resolution of their respective cases.  Lead and Co-Lead Counsel in the Direct Purchaser Actions and Lead and Co-Lead Counsel in the Indirect Purchaser Actions shall coordinate their actions to the extent possible.  Lead and Co-Lead Counsel shall have responsibility for major decisions on behalf of their respective plaintiffs regarding the overall prosecution of the litigation and shall be responsible for the establishment of working committees for the efficient prosecution of the litigation and the appointment of chair persons and members of such committees.

17.    No motion shall be initiated or filed on behalf of any plaintiff except through Lead and/or Co-Lead Counsel.

18.    Lead and Co-Lead Counsel in the Direct Purchaser Actions shall have sole authority to communicate with defendants' counsel and the Court on behalf of all plaintiffs in the Direct Purchaser Actions, unless that authority is expressly delegated to other counsel with notice to defendants' counsel.  Defendants' counsel may rely on all agreements made with such

Lead or Co-Lead Counsel, and such agreements shall be binding on all other plaintiffs' counsel in the Direct Purchaser Actions.

19.     Lead and Co-Lead Counsel in the Indirect Purchaser Actions shall have sole authority to communicate with defendants' counsel and the Court on behalf of all plaintiffs in the Indirect Purchaser Actions, unless such authority is expressly delegated to other counsel with notice to defendants' counsel.  Defendants' counsel may rely on all agreements made with such Lead or Co-Lead Counsel, and such agreements shall be binding on all other plaintiffs' counsel in the Indirect Purchaser Actions.

## V.     ORGANIZATION OF DEFENDANTS' COUNSEL

20.     The Court has designated Dechert LLP as Lead Counsel for the defendants.  Lead Counsel shall be responsible for ensuring that orders of the Court are served on all defendants' counsel; for communicating with the Court on behalf of all defendants' counsel as to scheduling and organizational matters; and for maintaining a master service list of all defendants and their respective counsel.  Lead Counsel shall coordinate its actions and the actions of the other defendants to the extent possible.

## VI.     SERVICE

21.     Defendants shall effect service of papers on plaintiffs by serving such papers on each Lead and Co-Lead Counsel.  Each Lead Counsel shall effect service on all other plaintiffs' counsel by electronic mail or first class United States mail.  Plaintiffs shall effect service of papers on defendants by serving such papers on counsel for each defendant.

**VI.     ADMISSION OF ATTORNEYS**

22.     Each attorney not a member of the Bar of this Court who is acting as counsel for a

plaintiff or defendant herein and who is in good standing in any district court of the United

States shall be deemed admitted *pro hac vice* to practice before this Court in connection with this

action upon payment of the appropriate filing fee.


Dated: June 2, 2006.                         SO ORDERED:


                                             _____

                                             Paul S. Diamond, J.

Exhibit E

# UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| IN RE PUBLICATION PAPER ANTITRUST LITIGATION | : | Docket No. 3:04 MD 1631 (SRU) |
|  | : |  |
| THIS DOCUMENT RELATES TO: | : |  |
|  | : | Docket Nos. 3:05CV01267 (SRU) |
|  | : | 3:05VC01339 (SRU) |
|  | : | 3:05CV01358 (SRU) |
|  | : | 3:05CV01381 (SRU) |
|  | : |  |

## COORDINATION ORDER FOR THE INDIRECT PURCHASER PUBLICATION PAPER CASE

Whereas, the parties to the above-captioned actions (the "Indirect Purchaser Publication Paper Case") have jointly moved that the Court order the coordination of the Indirect Purchaser Publication Paper Case with the federal direct purchaser class actions already pending as part of this proceeding (the "Direct Purchaser Action"); and

Whereas, the Court has reviewed the parties' Motion for Entry of Coordination Order ("Motion") filed by the parties to the Indirect Purchaser Publication Paper Case; and

Whereas, the Court agrees that the relief set forth in the Motion is appropriate;

Now, Therefore, the Court hereby orders the following:

**I.     Prior Orders:**

The Court's Protective Order and Practice and Procedure Orders, unless otherwise directed by the Court, shall govern the Indirect Purchaser Publication Paper Case so long as it remains pending before this Court.

**II.     Pleadings:**

Plaintiffs in the Indirect Purchaser Publication Paper Case ("Plaintiffs") have filed a Consolidated Indirect Purchaser Class Action Complaint consolidating the various indirect Purchaser

actions transferred to this Court. Additional plaintiffs from various states who have sought to file an action in this MDL have also joined the Consolidated Complaint.

**III.     Discovery:**

A.       Defendants will make available to Plaintiffs any documents that they produce in the Direct Purchaser Action. Such documents will be made available for a reasonable period of time for inspection by Plaintiffs at the office of outside counsel where those documents are located or at another reasonable location. If Plaintiffs would prefer to have a set of the documents, Plaintiffs agree to pay reasonable costs of reproducing and shipping such documents.

For the period from the inception of the Direct Purchaser Action until the conclusion of the Direct Purchaser Action as defined in Section IV below, Defendants will serve on Plaintiffs' designated counsel copies of all document indices (if any) and privilege logs that were or are produced to plaintiffs in the Direct Purchaser Action.

From the date of entry of this Order, each Defendant will serve on Plaintiffs' designated counsel copies of: (1) all written discovery, including any document requests, interrogatories, requests for admissions, deposition notices and subpoenas generated by or against that Defendant in the Direct Purchaser Action; (2) all responses and objections to the discovery described in (1) above; and (3) all motions and supporting papers filed or served in the Direct Purchaser Action concerning motions to compel discovery, for protective orders, or otherwise affecting the scope of the discovery described in (1) above that are not electronically filed via the Court's CM/ECF system. Plaintiffs in the Indirect Purchaser Publication Paper Case are not entitled to participate in any negotiations or object to any motions filed by the defendants in the Direct Purchaser Action concerning motions to compel discovery, for protective orders, or otherwise affecting the scope of discovery.

However, Plaintiffs are not waiving their rights and may revisit such discovery issues once the Direct Purchaser Action is resolved.

The written discovery, including any document requests, interrogatories, requests for admissions, deposition notices and subpoenas served on the Defendants by plaintiffs in the Direct Purchaser Action will be treated as if propounded and responded to in the Indirect Purchaser Publication Paper Case.

B.     All depositions taken in the Direct Purchaser Action shall be deemed taken in the Indirect Purchaser Publication Paper Case. All objections made at the depositions in the Direct Purchaser Action shall be preserved in the Indirect Purchaser Publication Paper Case. Plaintiffs may attend the depositions of witnesses deposed in the Direct Purchaser Action and, after completion of examination by counsel for the parties to the Direct Purchaser Action, may examine the witness on any issue relevant to the Indirect Purchaser Publication Paper Case, subject to the Federal Rules of Civil Procedure and local rules of the District of Connecticut. Any Defendant's counsel that serves or receives a notice of deposition in the Direct Purchaser Action shall simultaneously serve Plaintiffs' designated counsel in the Indirect Purchaser Publication Paper Case. Plaintiffs in the Indirect Purchaser Publication Paper Case are responsible for obtaining transcripts of the depositions taken in the Direct Purchaser Action at their expense.

C.     No former or current officer, director, or employee of any Defendant named in the Direct Purchaser Action who is deposed in the Direct Purchaser Action shall be deposed again in the Indirect Purchaser Publication Paper Case, absent an application to this Court and a showing of good cause. Failure to attend a deposition in the Direct Purchaser Action as to which Plaintiff has had adequate notice shall not, by itself, constitute good cause. Subject

to paragraphs D & E below, the parties shall be free to take the deposition of individuals not noticed in the Direct Purchaser Action, provided that any party shall be free to object and/or seek protective orders with regard to such depositions, including on grounds that such depositions unreasonably duplicate discovery taken in the Direct Purchaser Action.

      D.    The parties shall be provided a period of time, dates to be determined at a future case management conference, that shall be scheduled in accordance with Section IV below, to conduct discovery specific to the Indirect Purchaser Publication Paper Case related to indirect purchaser and/or state specific issues, as permitted by the Court.  Plaintiffs shall not serve any Defendant with requests for the production of documents that relate to the conspiracy alleged in the Direct Purchaser Action if said defendant either:  1) obtained dismissal of, or final judgment in, the Direct Purchaser Action against it on the ground that there was insufficient evidence that it participated in a conspiracy, or 2) produced or made available documents in the Direct Purchaser Action pursuant to a request for conspiracy-related documents.

      E.    In the Indirect Purchaser Publication Paper Case, no party shall propound any discovery, take depositions, or brief class certification issues until after the case management conference that shall be scheduled in accordance with Section IV, below.  In addition, Defendants need not respond to the Consolidated Complaint until after the date set during the case management conference that shall be scheduled in accordance with Section IV, below. Notwithstanding the foregoing, the parties may serve third-party subpoenas for document production and may participate in discovery in the Direct Purchaser Action as provided in paragraphs A & B, above.

**IV.  Further Discovery and Case Management Conference:**

Defendants shall promptly serve Plaintiffs with any order that represents the final judgment concluding the Direct Purchaser Action. Within thirty days of such service, Plaintiffs will ask the Court to set a further case management conference to determine a schedule for discovery in accordance with paragraph III D, above, and briefing of issues in the Indirect Purchaser Publication Paper Case. Prior to such case management conference, Plaintiffs in the Indirect Purchaser Publication Paper Case shall not propound any discovery against any party without first meeting and conferring with the defendants and: 1) obtaining the consent of the defendants, or 2) by order of the Court for good cause shown.

Plaintiffs and/or Defendants may at any time request a case management conference and/or seek to modify or amend this Order upon a showing of good cause. However, the parties must first meet and confer ten days prior to moving the Court for a case management conference and/or to modify or amend the Order.

**V.  Applicability to Add-On and Consolidated Cases:**

This Order shall also apply to any cases brought on behalf of indirect purchasers of publication paper transferred to this Court by the Judicial Panel on Multidistrict Litigation, originally filed in this Court, or removed to this Court. Any such case shall be treated the same as the Indirect Purchaser Publication Paper Case for purposes of this Order.

Plaintiffs shall not contest the application of this Order to any subsequently served defendants in the Indirect Purchaser Publication Paper Case as now constituted, as constituted in any amended complaint, or as constituted in any add-on or consolidated cases.

**VI.    Prejudice:**

This Order shall be without prejudice to any defenses that any Defendant may raise in the Indirect Purchaser Publication Paper Case, including the defense of lack of personal jurisdiction.

**VII.    Continuing Jurisdiction:**

This Court reserves jurisdiction to modify or amend this Order as it deems necessary or appropriate under the developing circumstances of the litigation.

So ordered at Bridgeport, Connecticut this 16th day of February, 2006.

_/s/ Stefan R. Underhill_____
Stefan R. Underhill
United States District Judge

Exhibit F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                                    |     |              |
| -------------------------------------------------- | --- | ------------ |
|                                                    | :   |              |
| IN RE:                                             | :   |              |
| **METHYL METHACRYLATE (MMA)**                      | :   |              |
| **ANTITRUST LITIGATION**                           | :   | **10-md-1768** |
|                                                    | :   |              |
| _____                        | :   |              |
| **THIS DOCUMENT RELATES TO:**                      | :   |              |
| **ALL INDIRECT PURCHASER**                         | :   |              |
| **ACTIONS**                                        | :   |              |

## ORDER

**AND NOW**, this 21st day of August, 2006, upon consideration of the Indirect-Purchaser Plaintiffs' Revised Motion to Appoint Interim Co-Lead Counsel (filed in Civil Action 06-469 as Document No. 27), and after a pretrial conference, it is **ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED**, pursuant to FED. R. CIV. P. 23(g)(2)(A), as follows:

1.       Krishna Narine, Esquire, of the Law Office of Krishna B. Narine and Gordon Ball, Esquire, of Ball & Scott are appointed **Interim Lead Counsel** for plaintiffs in the Indirect Purchaser Actions.

2.       Interim Lead Counsel shall be responsible for the overall conduct of the pretrial proceedings on behalf of the Indirect Purchaser Plaintiffs and shall:

   a.       brief and argue motions and file opposing briefs in proceedings;

   b.       initiate and conduct discovery proceedings consistent with the requirements of the Federal Rules of Civil Procedure;

   c.       act as spokespersons for Indirect Purchaser Plaintiffs at pretrial conferences;

   d.       negotiate and enter stipulations with defense counsel with respect to

all matters involved in this litigation, including discovery and settlement;

      e.      request approval of settlements and fee awards;

      f.      convene meetings of counsel for Indirect Purchaser Plaintiffs;

      g.      delegate tasks to counsel for plaintiffs in the Direct Purchaser Actions to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

      h.      consult with and employ experts;

      i.      coordinate and communicate with Interim Lead Counsel for the Direct Purchaser Plaintiffs with respect to all matters involving this litigation;

      j.      coordinate and communicate with defense counsel with respect to all matters involving this litigation;

      k.      transmit all communications with the court to all counsel; and,

      l.      perform such other duties and undertake such other responsibilities as they deem necessary or desirable to the proper coordination of Indirect Purchaser Plaintiffs' pretrial activities.

      3.      Counsel for Indirect Purchaser Plaintiffs who disagree with Interim Lead Counsel or who have individual or divergent positions may present written and oral arguments, conduct examinations of deponents, and otherwise act separately on behalf of their clients as appropriate, provided that in doing so they do not repeat arguments, questions, or actions of Interim Lead Counsel.

      4.      No motion, discovery request, or other pretrial proceeding in this litigation shall be initiated or filed by any Indirect Purchaser Plaintiff except through Interim Lead Counsel.

5.    All work performed by any plaintiffs' counsel in the Indirect Purchaser Actions must be authorized in advance by Interim Lead Counsel.

6.    All Indirect Purchaser Plaintiffs' counsel shall submit to Indirect Purchaser Plaintiffs' Interim Lead Counsel's designee a record of the time expended to date in the form set forth by Indirect Purchaser Plaintiffs' Interim Lead Counsel no later than **September 1, 2006**, and thereafter on a monthly basis.  Failure to maintain and timely submit such records shall be considered in any fee allocation and may constitute grounds for denying court-awarded attorneys' fees.

7.    Krishna Narine, Esquire, of the Law Office of Krishna B. Narine, is designated **Liaison Counsel** for Indirect Purchaser Plaintiffs.

8.    Liaison Counsel shall:

(a)    maintain and distribute to counsel and the Court an up-to-date service list;

(b)    receive and distribute Court orders, notices and transmittals from other counsel to counsel for the Indirect Purchaser Plaintiffs;

(c)    maintain and make available to counsel for the Indirect Purchaser Plaintiffs at reasonable hours a complete file of all documents served by or upon each party;

(d)    establish and maintain a document depository; and

(e)    call meetings of counsel for the Indirect Purchaser Plaintiffs for the purposes of coordinating discovery, presentations at pretrial conferences, and other pretrial activities.

_s/ Timothy J. Savage_____
TIMOTHY J. SAVAGE, J.

# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                    |   |                           |
|------------------------------------|---|---------------------------|
|                                    | : | CIVIL ACTION NO. 05-666   |
| IN RE: HYDROGEN PEROXIDE           | : |                           |
| ANTITRUST LITIGATION               | : |                           |
|                                    | : |                           |
|                                    | : |                           |
| This Document Relates To:          | : | MDL DOCKET NO. 1682       |
|                                    | : |                           |
| INDIRECT-PURCHASER ACTION          | : |                           |
| RESIDUAL-PURCHASER ACTION          | : |                           |

ORDER

AND NOW, this 12th day of October, 2005, upon
consideration of plaintiffs' response to order to show cause
(Civ. No. 05-666, docket entry # 95) and notice of voluntary
dismissal of <u>Jimmy F. Hux et al. v. Atofina Chemicals, Inc. et
al.</u>, Civ. No. 05-2392 (E.D. Pa.) (Civ. No. 05-666, docket entry #
94), it is hereby ORDERED that:

1.    Our August 29, 2005 Order is AMENDED as follows;

a.    The Residual-Purchaser Action is DISMISSED;

b.    This matter shall PROCEED as one Indirect-
Purchaser Action on behalf of those who indirectly bought
hydrogen peroxide; and

c.    Plaintiffs are GRANTED LEAVE to file the
consolidated amended class action complaint attached to their
response as Exhibit B, and they shall do so by October 14, 2005;

2.    Our September 13, 2005 Order is VACATED;

1

   3.    We APPOINT Francis O. Scarpulla of the Law Offices
of Francis O. Scarpulla and Gordon Ball of Ball & Scott as
Interim Co-Lead Counsel for private (i.e., non-governmental)
plaintiffs in the Indirect-Purchaser Action;

   4.    Scarpulla and Ball shall DIRECT this litigation on
behalf of private plaintiffs who indirectly purchased hydrogen
peroxide (defined to include downstream products sodium perborate
and sodium percarbonate);

   5.    Scarpulla and Ball shall UNDERTAKE the following
responsibilities with respect to the prosecution of this
litigation:

      a.    To brief and argue motions and file opposing
briefs in proceedings initiated by other parties;

      b.    To initiate and conduct discovery
proceedings;

      c.    To speak at pretrial conferences;

      d.    To negotiate with defense counsel with
respect to settlement and other matters;

      e.    To request that the Court approve settlements
and fee awards;

      f.    To call meetings of counsel for plaintiffs in
the Indirect-Purchaser Action;

      g.    To delegate all work assignments to counsel
for private plaintiffs in the Indirect-Purchaser Action;

2

      h.   To conduct trial and post-trial proceedings;

      i.   To consult with and employ experts;

      j.   To perform such other duties and undertake such other responsibilities as they deem necessary or desirable;

      k.   To coordinate and communicate with counsel in related individual cases with respect to matters addressed in this paragraph;

      l.   To coordinate and communicate with plaintiffs' counsel in the Direct-Purchaser Action; and

      m.   To coordinate and communicate with defense counsel with respect to matters addressed in this paragraph;

      5.   Scarpulla and Ball shall SUBMIT all motions, discovery requests, and other documents in the Indirect-Purchaser Action;

      6.   Scarpulla and Ball must AUTHORIZE in advance all work performed by an attorney on behalf of a private indirect purchaser;

      7.   All counsel for private plaintiffs in the Indirect-Purchaser Action shall SUBMIT every month to Scarpulla's and Ball's designee a record of the time expended to date in the form the two set forth, and we may consider any failure to maintain and submit such records (on a timely basis) as grounds for denying court-awarded attorneys' fees (if the occasion arises for consideration of such an award);

3

       8.   We APPOINT William H. Parish of Parish & Small, PC as Interim Lead Counsel for public (*i.e.*, governmental) plaintiffs in the Indirect-Purchaser Action;

       9.   Parish shall DIRECT this litigation on behalf of public buyers of hydrogen peroxide;

       10.  Parish shall UNDERTAKE the following responsibilities with respect to the prosecution of this litigation:

          a.   To brief and argue motions and file opposing briefs in proceedings initiated by other parties;

          b.   To initiate and conduct discovery proceedings;

          c.   To speak at pretrial conferences;

          d.   To negotiate with defense counsel with respect to settlement and other matters;

          e.   To request that the Court approve settlements and fee awards;

          f.   To call meetings of counsel for plaintiffs in the Indirect-Purchaser Action;

          g.   To delegate all work assignments to counsel for public plaintiffs in the Indirect-Purchaser Action;

          h.   To conduct trial and post-trial proceedings;

          i.   To consult with and employ experts;

          j.   To perform such other duties and undertake

4

such other responsibilities as he deems necessary or desirable;

        k.   To coordinate and communicate with counsel in related individual cases with respect to matters addressed in this paragraph;

        l.   To coordinate and communicate with plaintiffs' counsel in the Direct-Purchaser Action and Indirect-Purchaser Action; and

        m.   To coordinate and communicate with defense counsel with respect to matters addressed in this paragraph;

      11.   Parish shall SUBMIT all motions, discovery requests, and other documents on behalf of public plaintiffs in the Indirect-Purchaser Action;

      12.   Parish must AUTHORIZE in advance all work performed by any attorney on behalf of a public plaintiff in the Indirect-Purchaser Action; and

      13.   All plaintiffs' counsel in the Indirect-Purchaser Action shall SUBMIT every month to Parish's designee a record of the time expended to date in the form he sets forth, and we may consider any failure to maintain and submit such records (on a timely basis) as grounds for denying court-awarded attorneys' fees (if the occasion arises for consideration of such an award).

BY THE COURT:

/s/ Stewart Dalzell, J.

# Exhibit H

1
2
3                    UNITED STATES DISTRICT COURT
4                    NORTHERN DISTRICT OF CALIFORNIA
5
6
7   In re: DYNAMIC RANDOM ACCESS              No. M 02-1486 PJH
    MEMORY (DRAM) ANTITRUST
8   LITIGATION                                **FURTHER CASE MANAGEMENT ORDER**
9   _____/

10          All parties appeared before this court for a further case management conference (sixth)
11   on July 14, 2005.
12   **Pretrial Order No. 1**
13          The court granted the request of all indirect purchasers for relief from Pretrial Order No.
14   1, to the extent that this group of plaintiffs shall have its own consolidated complaint and
15   leadership structure separate from those of the direct purchaser group. Thus, this matter will
16   proceed with two distinct groups comprised of direct purchasers and indirect purchasers. The
17   court defers any decision on whether a third group comprised of direct purchasers making
18   purchases outside of the United States, requires yet a third leadership structure or whether
19   Centerprise shall simply join the existing group of direct purchasers. Direct purchasers shall
20   meet and confer before the next case management conference and advise the court in their
21   case management statements whether a third leadership structure will be required. Indirect
22   purchasers shall meet and confer about their leadership structure and if unable to agree upon
23   one structure, shall submit separate proposals by July 21, 2005. The court will simply select
24   the proposal that appears the most reasonable.
25   **Discovery**
26          All discovery is now open subject only to the limitations contained in the stipulated
27   protective order entered into by the parties and the Department of Justice. Although it is not
28   clear to the court that the indirect purchasers took part in the negotiations concerning this

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  protective order, they are nonetheless bound by it. The discovery schedule submitted by the

2  direct purchasers and the defendants was adopted by the court. The direct purchasers and

3  the defendants shall meet and confer with the indirect purchasers in an attempt to arrive at a

4  similar proposal for discovery with an eye towards avoiding the duplication of discovery

5  events. If a joint stipulation is not possible, any party may submit a proposal concerning

6  discovery procedures for the court's consideration no later than August 12, 2005. To the

7  extent possible, these proposals should also include the parties' suggestions concerning the

8  necessity for any accommodations for the Centerprise plaintiffs. The court expects to revisit

9  Centerprise-related matters at the next case management conference. The court is

10 encouraged by the progress that the parties made in their meetings held before the case

11 management conference and expects the parties to proceed in a similarly cooperative fashion

12 in the future.

13 **Pretrial Schedule**

14       The pretrial schedule included in the sixth joint case management statement submitted

15 by the direct purchasers and the defendants, was adopted by the court and shall control the

16 pretrial proceedings and trial as between those parties unless modified by a subsequent

17 order. The parties shall meet and confer about the pretrial schedule for the indirect

18 purchasers and shall submit a stipulation or separate proposals in conjunction with their case

19 management statements prior to the next conference.

20 **Motions**

21       All pending motions for remand filed in the indirect purchaser cases will be heard on

22 September 14, 2005 at 9:00 a.m. There are two options for briefing. The court would prefer,

23 but does not order, that a consolidated brief be filed covering all indirect purchasers currently

24 before the court who wish to move for remand back to their respective states, and a

25 consolidated opposition from all defendants. If consolidated briefs are filed, the parties may

26 agree to a briefing schedule as long as it affords the court **at least** two full weeks between the

27 filing date of the reply brief and the hearing date. If the parties for some reason cannot file

28

1   consolidated briefs, the parties shall submit paper copies of all papers already filed in

2   connection with the pending motions to remand no later than July 29, 2005, because the court

3   does not have hard copies of the papers actually filed before the transferor courts.

4   Additionally, if consolidated briefs are not filed plaintiffs may submit supplemental briefs not

5   exceeding 10 pages, no later than August 19, 2005, and defendants may submit

6   supplemental oppositions not exceeding 10 pages no later than August 26, 2005.

7          The court also orders the parties to meet and confer and thereafter to clarify the status

8   of the pending motions to remand.  There appears to be some inconsistency in the parties'

9   papers concerning in which cases remand has been requested.  For the parties' reference,

10  the court's files show that motions to remand have been filed in the following cases: Elias,

11  Kongkham, Kinkade, Greene, Kaplan, and Microprocessor Designs.  The court has also been

12  apprised to expect motions to remand in Maher, McKinnon, and Smith, if the cases are

13  consolidated and transferred by the JPML.  At the CMC, however, the parties indicated that to

14  the best of their knowledge, the only pending motions for remand were in Kongkham,

15  Kinkade, Greene, and Kaplan.  The court requests an update on the status of the remand

16  motions in Elias and Microprocessor Designs (if any were in fact filed), and requests that, if

17  possible, the parties work with the plaintiffs in Maher, McKinnon, and Smith so that if those

18  cases are transferred to this court, additional motions to remand can be disposed of in an

19  expeditious manner.  The parties shall inform the court as to these matters in a letter to be

20  filed no later than July 29, 2005.

21         The hearing on the pending motions to dismiss, currently scheduled for September 14,

22  2005, is VACATED.  The hearing will be rescheduled, if necessary, following resolution of the

23  motions to remand.

24  //

25  //

26  //

27  //

28

**United States District Court**
For the Northern District of California

3

**Further CMC**

       The next (seventh) case management conference in this matter will be held on November 3, 2005 at 2:30 p.m.  A joint case management statement shall be filed at least 7 calendar days before the conference, along with the separate proposals referred to above.

       **IT IS SO ORDERED.**

Dated: July 19, 2005

                    PHYLLIS J. HAMILTON
                    United States District Judge

**United States District Court**
For the Northern District of California

4

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA

10                                     )
      In Re DYNAMIC RANDOM ACCESS      )    MASTER FILE NO.:  M-02-1486 PJH
11    MEMORY (DRAM) ANTITRUST          )
      LITIGATION                       )    [PROPOSED] PRETRIAL
12                                     )    ORDER NO. 2
                                       )
13    This Document Relates To All Actions  )
                                       )
14

15          WHEREAS, various actions by direct purchasers of dynamic random access memory
16    ("DRAM") were either filed in or transferred to this court by the Judicial Panel On
17    Multidistrict Litigation (collectively the "Direct Purchaser Actions"); and
18          WHEREAS, the Court by order dated January 30, 2003, entered Pretrial Order No. 1
19    governing case management and the organization of plaintiffs' counsel in the Direct
20    Purchaser Actions; and
21          WHEREAS, the Court by order filed May 2, 2003, adopted an amended Pretrial Order
22    No. 1 governing case management and the organization of plaintiffs' counsel in the Direct
23    Purchaser Actions; and
24          WHEREAS, various actions by indirect purchasers of DRAM were either filed in or
25    transferred to this court by the Judicial Panel On Multidistrict Litigation (collectively the
26    "Indirect Purchaser Actions"); and
27          WHEREAS, Plaintiffs in certain of the Indirect Purchaser Actions filed Applications
28    for Relief from Amended Pretrial Order No. 1 of May 2, 2003 ("PTO 1"), and for

                                        -1-
      [Master File No.:  M-02-1486 PJH], [PROPOSED] PRETRIAL ORDER NO. 2

1

2

3                    UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5

6

7    In re: DYNAMIC RANDOM ACCESS          No. M 02-1486 PJH
     MEMORY (DRAM) ANTITRUST
8    LITIGATION                             **FURTHER CASE MANAGEMENT ORDER**
                                    /
9

10          All parties appeared before this court for a further case management conference (sixth)

11   on July 14, 2005.

12   **Pretrial Order No. 1**

13          The court granted the request of all indirect purchasers for relief from Pretrial Order No.

14   1, to the extent that this group of plaintiffs shall have its own consolidated complaint and

15   leadership structure separate from those of the direct purchaser group. Thus, this matter will

16   proceed with two distinct groups comprised of direct purchasers and indirect purchasers. The

17   court defers any decision on whether a third group comprised of direct purchasers making

18   purchases outside of the United States, requires yet a third leadership structure or whether

19   Centerprise shall simply join the existing group of direct purchasers. Direct purchasers shall

20   meet and confer before the next case management conference and advise the court in their

21   case management statements whether a third leadership structure will be required. Indirect

22   purchasers shall meet and confer about their leadership structure and if unable to agree upon

23   one structure, shall submit separate proposals by July 21, 2005. The court will simply select

24   the proposal that appears the most reasonable.

25   **Discovery**

26          All discovery is now open subject only to the limitations contained in the stipulated

27   protective order entered into by the parties and the Department of Justice. Although it is not

28   clear to the court that the indirect purchasers took part in the negotiations concerning this

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   protective order, they are nonetheless bound by it. The discovery schedule submitted by the

2   direct purchasers and the defendants was adopted by the court. The direct purchasers and

3   the defendants shall meet and confer with the indirect purchasers in an attempt to arrive at a

4   similar proposal for discovery with an eye towards avoiding the duplication of discovery

5   events. If a joint stipulation is not possible, any party may submit a proposal concerning

6   discovery procedures for the court's consideration no later than August 12, 2005. To the

7   extent possible, these proposals should also include the parties' suggestions concerning the

8   necessity for any accommodations for the Centerprise plaintiffs. The court expects to revisit

9   Centerprise-related matters at the next case management conference. The court is

10  encouraged by the progress that the parties made in their meetings held before the case

11  management conference and expects the parties to proceed in a similarly cooperative fashion

12  in the future.

13  **Pretrial Schedule**

14          The pretrial schedule included in the sixth joint case management statement submitted

15  by the direct purchasers and the defendants, was adopted by the court and shall control the

16  pretrial proceedings and trial as between those parties unless modified by a subsequent

17  order. The parties shall meet and confer about the pretrial schedule for the indirect

18  purchasers and shall submit a stipulation or separate proposals in conjunction with their case

19  management statements prior to the next conference.

20  **Motions**

21          All pending motions for remand filed in the indirect purchaser cases will be heard on

22  September 14, 2005 at 9:00 a.m. There are two options for briefing. The court would prefer,

23  but does not order, that a consolidated brief be filed covering all indirect purchasers currently

24  before the court who wish to move for remand back to their respective states, and a

25  consolidated opposition from all defendants. If consolidated briefs are filed, the parties may

26  agree to a briefing schedule as long as it affords the court **at least** two full weeks between the

27  filing date of the reply brief and the hearing date. If the parties for some reason cannot file

28

2

1  consolidated briefs, the parties shall submit paper copies of all papers already filed in

2  connection with the pending motions to remand no later than July 29, 2005, because the court

3  does not have hard copies of the papers actually filed before the transferor courts.

4  Additionally, if consolidated briefs are not filed plaintiffs may submit supplemental briefs not

5  exceeding 10 pages, no later than August 19, 2005, and defendants may submit

6  supplemental oppositions not exceeding 10 pages no later than August 26, 2005.

7  　　　The court also orders the parties to meet and confer and thereafter to clarify the status

8  of the pending motions to remand.  There appears to be some inconsistency in the parties'

9  papers concerning in which cases remand has been requested.  For the parties' reference,

10  the court's files show that motions to remand have been filed in the following cases: Elias,

11  Kongkham, Kinkade, Greene, Kaplan, and Microprocessor Designs.  The court has also been

12  apprised to expect motions to remand in Maher, McKinnon, and Smith, if the cases are

13  consolidated and transferred by the JPML.  At the CMC, however, the parties indicated that to

14  the best of their knowledge, the only pending motions for remand were in Kongkham,

15  Kinkade, Greene, and Kaplan.  The court requests an update on the status of the remand

16  motions in Elias and Microprocessor Designs (if any were in fact filed), and requests that, if

17  possible, the parties work with the plaintiffs in Maher, McKinnon, and Smith so that if those

18  cases are transferred to this court, additional motions to remand can be disposed of in an

19  expeditious manner.  The parties shall inform the court as to these matters in a letter to be

20  filed no later than July 29, 2005.

21  　　　The hearing on the pending motions to dismiss, currently scheduled for September 14,

22  2005, is VACATED.  The hearing will be rescheduled, if necessary, following resolution of the

23  motions to remand.

24  //

25  //

26  //

27  //

28

1  **Further CMC**

2          The next (seventh) case management conference in this matter will be held on

3  November 3, 2005 at 2:30 p.m.  A joint case management statement shall be filed at least 7

4  calendar days before the conference, along with the separate proposals referred to above.

5          **IT IS SO ORDERED.**

6  Dated: July 19, 2005

7                                              PHYLLIS J. HAMILTON
                                              United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

10   |                                              )
     In Re DYNAMIC RANDOM ACCESS           )    **MASTER FILE NO.:  M-02-1486 PJH**
11   MEMORY (DRAM) ANTITRUST               )
     LITIGATION                            )    [PROPOSED] **PRETRIAL**
12                                         )    **ORDER NO. 2**
                                           )
13   This Document Relates To All Actions  )
                                           )
14

15       WHEREAS, various actions by direct purchasers of dynamic random access memory

16   ("DRAM") were either filed in or transferred to this court by the Judicial Panel On

17   Multidistrict Litigation (collectively the "Direct Purchaser Actions"); and

18       WHEREAS, the Court by order dated January 30, 2003, entered Pretrial Order No. 1

19   governing case management and the organization of plaintiffs' counsel in the Direct

20   Purchaser Actions; and

21       WHEREAS, the Court by order filed May 2, 2003, adopted an amended Pretrial Order

22   No. 1 governing case management and the organization of plaintiffs' counsel in the Direct

23   Purchaser Actions; and

24       WHEREAS, various actions by indirect purchasers of DRAM were either filed in or

25   transferred to this court by the Judicial Panel On Multidistrict Litigation (collectively the

26   "Indirect Purchaser Actions"); and

27       WHEREAS, Plaintiffs in certain of the Indirect Purchaser Actions filed Applications

28   for Relief from Amended Pretrial Order No. 1 of May 2, 2003 ("PTO 1"), and for

-1-

1   appointment of lead counsel in the Indirect Purchaser Actions separate from the co-lead

2   counsel appointed in the Direct Purchaser Actions; and

3       WHEREAS, this Court's July 19, 2005 Case Management Order granted these

4   requests for relief from PTO 1 and determined that the indirect purchaser plaintiffs "shall

5   have . . . [their] own . . . leadership structure separate from . . . the direct purchaser group;"

6   and

7       WHEREAS, certain indirect purchaser plaintiffs submitted alternative proposed

8   organizational structures to the Court and the Court issued its August 16, 2005 Order re

9   Indirect Purchaser Plaintiffs, which, *inter alia*, directed the parties to prepare a proposed

10  Pretrial Order No. 2 which incorporates the provisions of amended Pretrial Order No. 1

11  regarding the Direct Purchaser Plaintiffs, as well as a proposed organization of the Indirect

12  Purchaser Plaintiffs in accordance the August 16, 2005 Order;

13      NOW, THEREFORE, it is hereby **ORDERED** that:

14      <u>**CONSOLIDATION OF RELATED ACTIONS**</u>

15      1.    The clerk shall establish and maintain a Master Docket and Master File for this

16  proceeding under the caption "*In re Dynamic Random Access Memory (DRAM) Antitrust*

17  *Litigation*," Master File No. M-02-1486 PJH.   All orders, pleadings, motions and other

18  documents should, when filed and docketed in the Master File, be deemed filed and docketed

19  in each individual case.

20      2.    The terms of this Order shall apply to actions later instituted in, removed to, or

21  transferred to this Court that involve the same or substantially similar issues of law and fact

22  (collectively, "the Consolidated Actions"), subject to the following procedures:

23      a.    When such a case is filed in, removed to, or transferred to this Court,

24      the Clerk of the Court shall:

25      (i)    place a copy of this Order in the separate file for such action;

26      (ii)    mail a copy of this Order to counsel for plaintiff(s) in the newly

27      filed or transferred action and to any defendant(s) in the newly

28      filed or transferred action; and

-2-

1  appointment of lead counsel in the Indirect Purchaser Actions separate from the co-lead
2  counsel appointed in the Direct Purchaser Actions; and

3       WHEREAS, this Court's July 19, 2005 Case Management Order granted these
4  requests for relief from PTO 1 and determined that the indirect purchaser plaintiffs "shall
5  have . . . [their] own . . . leadership structure separate from . . . the direct purchaser group;"
6  and

7       WHEREAS, certain indirect purchaser plaintiffs submitted alternative proposed
8  organizational structures to the Court and the Court issued its August 16, 2005 Order re
9  Indirect Purchaser Plaintiffs, which, *inter alia*, directed the parties to prepare a proposed
10 Pretrial Order No. 2 which incorporates the provisions of amended Pretrial Order No. 1
11 regarding the Direct Purchaser Plaintiffs, as well as a proposed organization of the Indirect
12 Purchaser Plaintiffs in accordance the August 16, 2005 Order;

13      NOW, THEREFORE, it is hereby **ORDERED** that:

14      **<u>CONSOLIDATION OF RELATED ACTIONS</u>**

15    1.   The clerk shall establish and maintain a Master Docket and Master File for this
16 proceeding under the caption "*In re Dynamic Random Access Memory (DRAM) Antitrust
17 Litigation*," Master File No. M-02-1486 PJH. All orders, pleadings, motions and other
18 documents should, when filed and docketed in the Master File, be deemed filed and docketed
19 in each individual case.

20    2.   The terms of this Order shall apply to actions later instituted in, removed to, or
21 transferred to this Court that involve the same or substantially similar issues of law and fact
22 (collectively, "the Consolidated Actions"), subject to the following procedures:

23      a.   When such a case is filed in, removed to, or transferred to this Court,
24        the Clerk of the Court shall:

25        (i)   place a copy of this Order in the separate file for such action;
26        (ii)   mail a copy of this Order to counsel for plaintiff(s) in the newly
27           filed or transferred action and to any defendant(s) in the newly
28           filed or transferred action; and

-2-
[Master File No.: M-02-1486 PJH], [PROPOSED] PRETRIAL ORDER NO. 2

1            (iii)     make an appropriate entry on the Master Docket for the

2                    Consolidated Action.

3        b.     Each new case that arises out of the subject matter of the Consolidated

4              Actions, which is filed in this Court or transferred to this Court, shall

5              be consolidated with the Consolidated Actions and this Order shall

6              apply to that action, unless a party in such newly-filed or transferred

7              action objects to consolidation, in the manner provided for, or any

8              provision of this Order, within ten (10) days after the date upon which a

9              copy of this Order is served on counsel for such party, by filing an

10            application for relief, and this Court deems it appropriate to grant such

11            application.

12    3.     Counsel shall call to the attention of the Court and the Clerk the filing or

13 transfer of any case which might properly be consolidated with the Consolidated Actions.

14 Mailing or other delivery of a copy of this Order by Defendants' counsel or Plaintiffs'

15 counsel, as appropriate, to the counsel in any newly filed or transferred actions shall constitute

16 valid notice for purposes of establishing its applicability to such action in accordance with this

17 Order.

18                             **FILING AND DOCKETING PROCEDURES**

19    4.     Every pleading hereafter filed in the Consolidation Action shall bear the

20 following caption:

21

| | |
|---|---|
| UNITED STATES DISTRICT COURT )<br>NORTHERN DISTRICT OF CALIFORNIA ) | **MASTER FILE NO.:**<br>**M-02-1486 PJH** |
| ) | |
| In Re DYNAMIC RANDOM ACCESS MEMORY )<br>(DRAM) ANTITRUST LITIGATION ) | |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| [FILL IN AS APPROPRIATE] ) | |

22

23

24

25

26

27

28

[Master File No.:  M-02-1486 PJH], [PROPOSED] PRETRIAL ORDER NO. 2

1        5.      When a pleading or paper is intended to be applicable to all actions to which

2  this Order is applicable, the words "All Actions" shall appear immediately after the words

3  "This Document Relates To:" in the caption set out above.   When a pleading or paper is

4  intended to be applicable only to all Direct Purchaser Actions, the words "All Direct

5  Purchaser Actions" shall appear immediately after the words "This Document Relates To:" in

6  the caption set out above.   When a pleading or paper is intended to be applicable only to all

7  Indirect Purchaser Actions, the words "All Indirect Purchaser Actions" shall appear

8  immediately after the words "This Document Relates To:" in the caption set out above.   When

9  a pleading or paper is intended to be applicable only to some, but not all, of the Consolidated

10  Actions, the Direct Purchaser Actions or the Indirect Purchaser Actions, this Court's docket

11  number for each action to which the pleading or paper is intended to be applicable and the last

12  name of the first named plaintiff(s) in said action shall appear immediately after the words

13  "This Document Relates To:" in the caption described above, i.e., "Civil Action

14  No. _____, [Name of plaintiff(s)]."

15        6.      When a pleading or paper is filed and the caption, pursuant to ¶4, shows that it

16  is to be applicable to "All Actions," to "All Direct Purchaser Actions" or to "All Indirect

17  Purchaser Actions," the Clerk shall file such pleading or paper in the Master File and note

18  such filing in the Master Docket, with an entry to reflect that the filing relates to "All

19  Actions," "All Direct Purchaser Actions" or "All Indirect Purchaser Actions."   No further

20  copies need be filed or other docket entries made.

21        7.      When a pleading or paper is filed and the caption, pursuant to ¶4, shows that it

22  is applicable to fewer than All Actions, All Direct Purchaser Actions or All Indirect Purchaser

23  Actions, the Clerk shall file such pleading or other paper only in the Master File but

24  nonetheless shall note such filing in both the Master Docket and in the docket of each such

25  action.

26        8.      At the time of filing of original papers with the Clerk's Office, the parties will

27  submit ONE additional conformed copy of each document designated "PJH Chambers Copy."

28

-4-

## ORGANIZATION OF DIRECT PURCHASER PLAINTIFFS' COUNSEL

9. The organizational structure of the Direct Purchaser Plaintiffs' counsel previously established by Amended Pretrial Order No. 1 and reaffirmed by this Order shall bind the Direct Purchaser Plaintiffs' counsel in the Consolidated Direct Purchaser Actions, including any action subsequently governed by this Order.

10. The following law firms are designated as Co-Lead Counsel for the Direct Purchaser Plaintiffs: Saveri & Saveri, Inc.; Wolf Haldenstein Adler Freeman & Herz, LLC; and Hagens Berman LLP.

11. The firm of Berman DeValerio Pease Tabacco Burt & Pucillo is designated as the Direct Purchaser Plaintiffs' Liaison Counsel.

12. The law firms of Berman DeValerio Pease Tabacco Burt & Pucillo; Cotchett, Pitre, Simon & McCarthy; Lovell & Stewart LLP; Milberg Weiss Bershad Hynes & Lerach, LLP; Much Shelist Freed Denenberg Ament & Rubenstein, P.C.; and Spector Roseman & Kodroff. P.C. are hereby designated as members of the Direct Purchaser Plaintiffs' Executive Committee.

13. The Direct Purchaser Plaintiffs' Co-Lead Counsel shall assume and exercise the following powers and responsibilities:

    a. To determine and present in motions, briefs, oral argument or such other fashion as may be appropriate, to present (by a designee) to the Court and opposing parties, the position of all of the Direct Purchaser Plaintiffs as to all matters arising during all pretrial and trial proceedings;

    b. To designate attorneys to act as spokespersons at pretrial conferences;

    c. To conduct or coordinate discovery on behalf of the Direct Purchaser Plaintiffs consistent with the requirements of the Federal Rules of Civil Procedure, including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions;

-5-

1      d.    To designate an attorney to enter into stipulations with opposing

2             counsel necessary for the conduct of the litigation;

3      e.    To monitor the activities of co-counsel and to implement procedures to

4             ensure that schedules are met and unnecessary expenditures of time and

5             funds by counsel are to be avoided;

6      f.    To sign any consolidated complaint, motions, briefs, discovery requests

7             or objections, subpoenas or notices on behalf of all Direct Purchaser

8             Plaintiffs or those Direct Purchaser Plaintiffs filing the particular

9             papers;

10     g.    To conduct all pre-trial, trial and post-trial proceedings on behalf of the

11            Direct Purchaser Plaintiffs;

12     h.    To employ and consult with experts;

13     i.    To call meetings of the Direct Purchaser Plaintiffs' counsel when

14            deemed appropriate;

15     j.    To conduct settlement negotiations with defense counsel on behalf of

16            the Direct Purchaser Plaintiffs and the putative class;

17     k.    To assure that all the Direct Purchaser Plaintiffs' counsel are kept

18            informed of the progress of this litigation as necessary;

19     l.    To otherwise coordinate the work of all the Direct Purchaser Plaintiffs'

20            counsel, and perform such other duties as necessary or as authorized by

21            further order of the Court; and

22     m.    To make all work assignments, including the organization and

23            formation of committees of the Direct Purchaser Plaintiffs' counsel, in

24            such a manner as to promote the orderly and efficient conduct of this

25            litigation and to avoid unnecessary duplication and unproductive efforts

26            for all parties.

27

28

-6-

1    14.    The Direct Purchaser Plaintiffs' Executive Committee shall be consulted by

2  Direct Purchaser Plaintiffs' Co-Lead Counsel on substantive issues to assist in the responsible

3  and efficient prosecution of the litigation.

4    15.    The Direct Purchaser Plaintiffs' Co-Lead Counsel and Executive Committee

5  shall together select working groups or committees to further the efficient prosecution of the

6  litigation as is deemed necessary based on their collective judgment and consideration.

7    16.    The Direct Purchaser Plaintiffs' Liaison Counsel shall be the contact between

8  the Direct Purchaser Plaintiffs' counsel and the Court.   The Direct Purchaser Plaintiffs'

9  Liaison Counsel shall forward any notices from the Court and report upon any

10  communications from the Court to the Direct Purchaser Plaintiffs' Co-Lead Counsel.

11    **ORGANIZATION OF INDIRECT PURCHASER PLAINTIFFS' COUNSEL**

12    17.    The organizational structure of the Indirect Purchaser Plaintiffs' counsel

13  established by this Order shall bind the Indirect Purchaser Plaintiffs' counsel in the

14  Consolidated Actions, including any action subsequently governed by this Order.

15    18.    The following law firms are designated as Indirect Purchaser Plaintiffs' Co-

16  Lead Counsel to manage jointly the Indirect Purchaser Actions:  Josef D. Cooper and the firm

17  of  Cooper & Kirkham, P.C.; David Boies and the firm of Straus & Boies, LLP; Daniel R.

18  Gustafson and the firm of Gustafson Gluek, PLLC; and Daniel J. Mogin and The Mogin Law

19  Firm, P.C.

20    19.    Francis O. Scarpulla and the firm of The Law Offices of Francis O. Scarpulla

21  is designated as Indirect Purchaser Plaintiffs' Liaison Counsel.

22    20.    The law firms of:  (1) Gross & Belsky LLP; (2) Zelle Hofmann Voelbel Mason

23  & Gette LLP; (3) The Furth Firm LLP; (4) Green Welling LLP; (5) Trump, Alioto, Trump &

24  Prescott LLP; (6) Finkelstein Thompson & Loughran; (7) Bramson Plutzik Mahler &

25  Birkhaeuser LLP; (8) DurretteBradshaw PLC; (9) Guerrieri, Edmond, Clayman & Bartos, PC;

26  (10) Hulett Harper Stewart, LLP; (11) Bonnett, Fairbourn, Friedman & Balint, PC; (12)

27  LaFollette Godfrey & Kahn, SC; (13) Freedman Boyd Daniels Hollander & Goldberg, PA;

28  (14) Frankovitch, Anetakis, Colantonio & Simon; (15) Steyer Lowenthal Boodrookas Alvarez

-7-

1    & Smith, LLP; (16) Krause Kalfayan Benink & Slavens; (17) Gilman & Pastor, LLP; and (18)

2    ~~HALLISEY AND JOHNSON~~ _____ are hereby designated as members of the

3    Indirect Purchaser Plaintiffs' Executive Committee.

4        21.      Indirect Purchaser Plaintiffs' Co-Lead Counsel shall assume and exercise

5    jointly the following powers and responsibilities:

6         a.       To determine and to present in motions, briefs, oral argument or such

7                  other fashion as may be appropriate, to present (either personally or by

8                  designee) to the Court and opposing parties, the position of all of the

9                  Indirect Purchaser Plaintiffs as to all matters arising during all pretrial

10                and trial proceedings;

11        b.       To designate attorneys to act as spokespersons at pretrial conferences;

12        c.       To conduct or coordinate discovery on behalf of the Indirect Purchaser

13                Plaintiffs consistent with the Federal Rules of Civil Procedure,

14                including the preparation of joint interrogatories and requests for

15                production of documents and the examination of witnesses in

16                depositions;

17        d.       To designate an attorney to enter into stipulations with opposing

18                counsel necessary for the conduct of the litigation;

19        e.       To monitor the activities of co-counsel and to implement procedures to

20                ensure that schedules are met and unnecessary expenditures of time and

21                funds by counsel are to be avoided;

22        f.       To sign any consolidated complaint, motions, briefs, discovery requests

23                or objections, subpoenas or notices on behalf of all Indirect Purchaser

24                Plaintiffs or those plaintiffs filing the particular papers;

25        g.       To conduct all pre-trial, trial and post-trial proceedings on behalf of all

26                Indirect Purchaser Plaintiffs;

27        h.       To employ and consult with experts;

28

-8-

| | | |
|---|---|---|
| 1 | i. | To call meetings of Indirect Purchaser Plaintiffs' counsel when |
| 2 | | appropriate; |
| 3 | j. | To conduct settlement discussions with defense counsel on behalf of |
| 4 | | the Indirect Purchaser Plaintiffs and the putative class; |
| 5 | k. | To assure that all Indirect Purchaser Plaintiffs' counsel are kept |
| 6 | | informed of the progress of this litigation as necessary; |
| 7 | l. | To make all work assignments to Indirect Purchaser Plaintiffs' counsel, |
| 8 | | including the organization and formation of, and the appointment of |
| 9 | | one or more counsel to chair, all committees of Indirect Purchaser |
| 10 | | Plaintiffs' counsel, in such a manner as to promote the orderly and |
| 11 | | efficient prosecution of this litigation and to avoid unnecessary |
| 12 | | duplication and unproductive efforts for all parties; |
| 13 | m. | To ensure that work assignments to all Indirect Purchaser Plaintiffs' |
| 14 | | Counsel are made in the best interests of the Indirect Purchaser |
| 15 | | Plaintiffs and the proposed class and are made on the basis of the |
| 16 | | qualifications and expertise of the persons assigned particular tasks or |
| 17 | | responsibilities, counsel's knowledge of the law, facts and issues, |
| 18 | | efficiency and cost-effectiveness; |
| 19 | n. | To assess Indirect Purchaser Plaintiffs' Counsel common litigation |
| 20 | | costs and to collect all assessments on a regular basis; |
| 21 | o. | To collect time, lodestar and expense reports from each Indirect |
| 22 | | Purchaser Plaintiffs' Counsel, including paralegals and any other staff |
| 23 | | members whose time is expected to be included in any fee petition; |
| 24 | p. | To ensure that work assignments are not given to any Indirect |
| 25 | | Purchaser Plaintiffs' Counsel firm that has not promptly submitted its |
| 26 | | time and expense records or paid its assessments; |
| 27 | q. | To coordinate and communicate with Defense Counsel; |
| 28 | | |

-9-

1              r.        To coordinate and communicate with Direct Purchaser Plaintiffs' Co-

2                    Lead Counsel in the Direct Purchaser Actions;

3              s.        To coordinate and communicate with Plaintiffs' Counsel in Indirect

4                    Purchaser Actions which remain in state courts as to discovery and

5                    other related issues; and

6              t.        To otherwise coordinate the work of all Indirect Purchaser Plaintiffs'

7                    counsel, and perform such other duties as necessary or as authorized by

8                    further order of the Court.

9      22.      The Indirect Purchaser Plaintiffs' Executive Committee shall be consulted by

10 the Indirect Purchaser Plaintiffs' Co-Lead Counsel and assist Co-Lead Counsel in the

11 responsible and efficient prosecution of the indirect purchaser litigation.

12      23.      Indirect Purchaser Plaintiffs' Liaison Counsel shall be the contact between

13 Indirect Purchaser Plaintiffs' Counsel and the Court. Indirect Purchaser Plaintiffs' Liaison

14 Counsel shall forward any notices from the Court and report upon any communications from

15 the Court to Indirect Purchaser Plaintiffs' Co-Lead Counsel.

16                    **MISCELANEOUS HOUSEKEEPING PROVISIONS**

17      24.      Defendants shall effect service of papers on the Direct and Indirect Purchaser

18 Plaintiffs' Co-Lead Counsel, both Liaison Counsel and the members of both the Direct and

19 Indirect Purchaser Plaintiffs' Executive Committees, by:  (i) e-mail; (ii) overnight mail

20 service or comparable delivery; (iii) telecopier or (iv) hand delivery.  Plaintiffs in the

21 Consolidated Action shall effect service of papers on defendants by serving a copy of same on

22 each defendants' counsel by:  (i) e-mail; (ii) overnight mail service or comparable delivery;

23 (iii) telecopier or (iv) hand delivery.  When service is accomplished by e-mail or telecopier,

24 copies of the served papers shall also be delivered by regular mail.  The provisions of this

25 paragraph shall not apply to any papers filed with the Court and subject to the Northern

26 District of California's CM-ECF policies and procedures.

27

28

[Master File No.: M-02-1486 PJH], [PROPOSED] PRETRIAL ORDER NO. 2

1    25.    Any attorney representing a Plaintiff in this action, who is a member in good

2  standing of the bar of the highest court of any state, territory or the District of Columbia and

3  who is not a member of the bar of this Court, is admitted *pro hac vice* in the Action.

4    26.    This Pretrial Order No. 2 supersedes Amended Pretrial Order No. 1 of May 2,

5  2003.

6    Dated: September 20 , 2005

7

8    _____

9    Hon. Phyllis J. Hamilton
    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-

# Exhibit I

Case 1:06-md-01738-DGT-JO   Document 24   Filed 06/07/2006   Page 1 of 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE
VITAMIN C ANTITRUST LITIGATION                    **PRETRIAL ORDER 2**

This document refers to: ALL ACTIONS              MDL 06-1738 (DGT) (JO)
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

I.      **DEADLINES AND COURT APPEARANCES**

| | |
|---|---|
| Deadline for joinder of additional parties and amendment of pleadings: | November 1, 2006 |
| Certification motion process started by: | December 15, 2006 |
| Fact discovery relevant solely to merits commences: | April 30, 2007 |
| Fact discovery relevant solely to merits to be completed by: | October 30, 2007 |
| Expert discovery, including depositions, to be completed by: | May 21, 2008 |
| Dispositive motion process started by: | June 17, 2008 |
| Joint pretrial order due by: | July 1, 2008 |
| Pretrial Conference: | July 15, 2008, at 9:30 a.m. |

All other deadlines included in the plaintiffs' proposed scheduling order, Docket Entry 17-2, are incorporated by reference into this order.

II.     **DISCOVERY IN GENERAL**

a.      **Stays of discovery.** Discovery is not automatically stayed by the pendency of a dispositive motion, settlement discussions between the parties, a referral to mediation, or an agreement among the parties to suspend discovery. A party seeking a stay of discovery must seek a court order and must show good cause why such relief should be granted.

b.      **Written discovery.** Unless otherwise agreed to by the parties or so ordered by the court, responses to any request for written discovery pursuant to Rules 33, 34, and 36 of the

Federal Rules of Civil Procedure is due no later than 30 days after service of the request. All such requests and responses must conform to Local Civil Rules 26.3 (uniform definitions in discovery requests), 26.5 (cooperation among counsel in discovery), 26.6 (regarding attorney review of form discovery requests), and 26.7 (discovery requests to be read reasonably).

      c.     **Depositions.** Pursuant to Local Civil Rule 26.5, counsel are expected to cooperate with each other, consistent with the legitimate interests of their clients, in scheduling depositions. If counsel cannot agree on a schedule for a given deposition, the deponent must appear at the date, time, and place set forth in a notice properly served pursuant to Federal Rule of Civil Procedure 30 unless excused by the party that served the notice or by the court.

      d.     **Expert discovery.** Unless specific deadlines for expert discovery are set forth above, the deadline for completing all discovery includes the production of all expert reports, including any rebuttal reports. The parties must ensure that they have completed underlying fact discovery, and that they have produced initial expert reports, in sufficient time for any rebuttal reports to have been served by the deadline. Unless otherwise ordered, or unless the parties agree to proceed otherwise, expert depositions may take place at any time before trial.

      e.     **Compliance with deadlines.** To be timely, a request for written discovery, deposition notice, or subpoena must be served in sufficient time for compliance to occur before the relevant deadline. I may decide not to enforce an untimely request, notice, or subpoena.

      f.     **Discovery disputes.**

          i.     While parties must attempt in good faith to resolve discovery disputes in good faith before seeking judicial intervention, they must also ensure that any unresolved dispute is brought to my attention in sufficient time for the dispute to be resolved and discovery to be completed according to the deadlines in this schedule.

          ii.     A motion to resolve a discovery dispute must be litigated pursuant to Local Civil Rules 37.3 and 6.4 and in accordance with my individual rules, which can be found at http://www.nyed.uscourts.gov/pub/rules/JO-MLR.pdf. Motions that do not comply with all such requirements may not be accepted. Failure to submit a timely opposition in compliance with applicable rules may result in a motion being granted as unopposed.

## III.   STATUS CONFERENCE

     As discussed at the initial conference, a status conference will be held approximately every eight weeks. **Three business days before each status conference, the parties are directed to file a letter** either reporting that discovery is proceeding on schedule and that there are no pending disputes requiring court intervention, or alternatively briefly describing the issues to be discussed at the conference. If warranted, I will cancel or adjourn the conference.

## IV.    DISPOSITIVE MOTIONS DEADLINE

The deadline for commencing dispositive motions is the date by which the **first** action must be taken to commence such a motion pursuant to the individual practices of the district judge to whom this case is assigned. As specified in the individual practice rules of the assigned district judge, that action will be either (a) submitting a letter requesting a pre-motion conference, (b) requesting an oral argument date from the district judge, (c) initiating the exchange of statements pursuant to Local Civil Rule 56.1, or (d) filing the notice of motion together with supporting papers . Each judge's individual rules can be found at www.nyed.uscourts.gov.

## V.    SETTLEMENT TO BE DISCUSSED AT PRETRIAL CONFERENCE

**No less than two business days before the pretrial conference,** each party must submit by mail or fax (not by ECF) a one-page, *ex parte* statement of its settlement position. The statement must specify the terms on which the party is willing to settle the case, whether those terms are negotiable, and an explanation of that position. These statements will be treated as confidential, and will not be docketed, and should therefore include a realistic statement of the party's settlement position. Meaningful settlement discussions will occur at this conference; clients or other persons with full settlement authority must be present or immediately available by telephone.

## VI.    MODIFICATIONS TO THE SCHEDULE

a.    While the parties are encouraged to cooperate with each other in conducting discovery, they should not agree among themselves to any extensions that will render them unable to meet any deadline set forth above. **The deadlines in this order will be enforced, and will be modified only upon a timely showing of good cause.** The fact that a party intends to seek summary judgment, standing alone, will not be considered good cause to alter or suspend the deadline for filing a joint pretrial order (if one is required pursuant to the individual rules of the assigned district judge) or to postpone a discussion of settlement at the pretrial conference.

b.    A request for an extension of any deadline submitted less than 30 days before that deadline will be considered untimely and will not be granted absent extraordinary circumstances.

c.    A request for modification of any deadline in this scheduling order must be in writing, and submitted in accordance with Rule II.A of my individual practice rules.

## VII.    ELECTRONIC FILING AND CONTACT INFORMATION:

All filings must be submitted electronically pursuant to Administrative Order 2004-08. The lead attorney for each party must be registered with the Court's ECF system and must file a notice of appearance in this action so that he or she will be personally notified of all filings. The parties are under a continuing obligation to keep the Court apprised of any changes in their

3

contact information, including mailing addresses, e-mail addresses, and daytime telephone numbers.

## VIII.  ORGANIZATION OF PLAINTIFFS' COUNSEL

Pursuant to Rule 23(g), and in the absence of objection from any party, I appoint the following firms as Co-Lead Counsel on behalf of the putative Federal Class: Boies, Schiller & Flexner LLP, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., and Susman Godfrey L.L.P. Boies, Schiller & Flexner LLP is also appointed as Liaison Counsel for the putative Federal Class. With respect to the putative State Class, the following firms are appointed Co-Lead Counsel: Straus & Boies, L.L.P., Saveri & Saveri, Inc., and Gustafson Gluek P.L.L.C. Straus & Boies, L.L.P. is also appointed as Liaison Counsel for the putative State Class.

The plaintiffs' proposed Pretrial Order 2, DE 20, which outlines the responsibilities of Co-Lead and Liaison Counsel, is incorporated by reference into this order.

**SO ORDERED:**

Dated: Brooklyn, New York
       June 7, 2006

/s/ James Orenstein
JAMES ORENSTEIN
United States Magistrate Judge

4

# Exhibit J

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
IN RE

                             **06-MD-1775**

AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION                  **ALL CASES**

M.D.L. No. 1775
-------------------------------------------------------x

## PRACTICE AND PROCEDURE ORDER NUMBER 4

Upon the application of the Plaintiffs, and no opposition having been received, Practice and Procedure Order Number 2 is hereby modified as follows:

A.    **U.S. Indirect Purchaser Counsel**: The Court appoints Michael P. Lehmann of Furth Lehmann & Grant, LLP, Steven N. Williams of Cotchett, Pitre & McCarthy, W. Joseph Bruckner of Lockridge Grindal Nauen PLLP, and Christopher Lovell of Lovell Stewart Halebian LLP as U.S. Indirect Purchaser Counsel.

B.    **Role of U.S. Indirect Purchaser Counsel**: U.S. Indirect Purchaser Counsel shall independently have the same responsibilities and obligations with respect to the representation of the interests of U.S. indirect purchasers, including any subclass of U.S. indirect purchasers, concerning matters pertinent to their claims as those held by Co-Lead Counsel under Practice and Procedure Order Number 2.

C.    **Foreign Purchaser Co-Lead Counsel**: Cohen, Milstein, Hausfeld & Toll, PLLC. shall be the Co-Lead Counsel principally responsible for the prosecution of all foreign purchaser claims, including those by any subclass of foreign purchasers.

D.    **Liaison Counsel**: The designation of Cohen, Milstein, Hausfeld & Toll, PLLC as Liaison Counsel for all Plaintiffs, and the responsibilities of Liaison Counsel as set out in Practice and Procedure Order Number 3, shall continue undisturbed by this Order.

**E.** **Coordination of Counsel**: Co-Lead Counsel, U.S. Indirect Purchaser Counsel, and Foreign Purchaser Co-Lead Counsel shall, at all times, coordinate their respective responsibilities and duties.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:   Brooklyn, New York
            March 6, 2007

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

IN RE: RAIL FREIGHT FUEL
SURCHARGE ANTITRUST LITIGATION

_____

This Document Relates to:

ALL INDIRECT PURCHASER ACTIONS

Civil Docket No.1:07-mc-00489 PLF

MDL 1869

## [PROPOSED] ORDER APPOINTING INTERIM CO-LEAD
## CLASS COUNSEL FOR INDIRECT PURCHASER PLAINTIFFS

Having carefully considered the Motion to Appoint Interim Co-Lead Class Counsel for

Indirect Purchaser Plaintiffs by Lovell Stewart Halebian LLP, The Mason Law Firm, LLP, and

Stamell & Schager LLP filed on February 15, 2008, the Court hereby **GRANTS** the motion.  It is

hereby ORDERED that:

1.     Pursuant to Rule 23(g)(2)(A) of the Federal Rules of Civil Procedure, the

following firms are appointed as Interim Class Counsel for the indirect purchaser

plaintiff class:

   a.     Lovell Stewart Halebian LLP;

   b.     The Mason Law Firm, LLP; and

   c.     Stamell & Schager, LLP.

2.     Interim Class Counsel shall be responsible for the overall conduct of the litigation

on behalf of the indirect purchaser plaintiffs class as follows:

a.   To promote the orderly and efficient conduct of this litigation and
to avoid unnecessary duplication and unproductive efforts of all
parties;

b.   To conduct all pretrial, trial and post-trial proceedings on behalf of
indirect purchaser plaintiffs;

c.   To sign any pleadings, motions, briefs, discovery requests or
objections, subpoenas, or notice on behalf of indirect purchaser
plaintiffs;

d.   To determine and present in motions, briefs, oral argument or such
other fashion as may be appropriate, the position of all of the
indirect purchaser plaintiffs as to all matters arising during pretrial
and trial proceedings;

e.   To designate attorneys to act as spokespersons at pretrial
conferences;

f.   To designate liaison counsel for the indirect purchaser plaintiff
class, and upon doing so, to promptly notify the Court of their
selection;

g.   To conduct or coordinate discovery on behalf of plaintiffs
consistent with the requirements of the Federal Rules of Civil
Procedure, including the preparation of joint interrogatories,
requests for production of documents, requests for admissions and
the examination of witnesses in depositions;

h.     To designate attorneys to enter into stipulations necessary for the conduct of the litigation with opposing counsel;

i.     To make all work assignments;

j.     To monitor the activities of indirect purchaser plaintiffs' counsel and to implement procedures to ensure that schedules are met and unnecessary expenditures of time and funds are avoided;

k.     To collect time, lodestar and expense reports from each firm representing the indirect purchaser plaintiffs in the consolidated action, including paralegals and any other staff members whose time is expected to be included in any fee petition;

l.     To employ and consult with experts;

m.     To call meetings of indirect purchaser plaintiffs' counsel when deemed appropriate;

n.     To conduct settlement negotiations with defense counsel on behalf of indirect purchaser plaintiffs and the putative indirect purchaser class;

o.     To ensure that all indirect purchaser plaintiffs' counsel are kept informed of the progress of this litigation as necessary; and

p.     To otherwise coordinate the work of all indirect purchaser plaintiffs' counsel, and perform such other duties as the Interim Class Counsel for indirect purchaser plaintiffs deems necessary or as authorized by further order of the Court.

3.      The Court directs Interim Class Counsel for indirect purchaser plaintiffs to select from among themselves one liaison counsel who shall be responsible for coordination between the direct and indirect actions.  The liaison counsel shall also serve as a liaison between the indirect purchaser class and the Court.

4.      The Interim Class Counsel for indirect purchaser plaintiffs are hereby designated as the counsel for indirect purchaser plaintiffs in the consolidated actions upon whom all notices, orders, pleadings, motions, discovery, and memoranda relating to the consolidated actions shall be served, and defendants shall effect service of papers on the indirect purchaser plaintiffs in the consolidated actions by serving each of the Interim Class Counsel above.  An agreement reached between defendant(s) and Interim Class Counsel for indirect purchaser plaintiffs or their designee(s), shall be binding on all other plaintiffs' counsel in the indirect purchaser consolidated actions.

5.      All counsel shall keep a daily record of their time spent and expenses incurred in connection with this litigation, indicating with specificity the hours, and particular activity.  Further, all counsel shall endeavor to keep attorneys' fees reasonable and to choose the most appropriate level of staffing for the tasks requires in this litigation.

Dated: _____          _____
                                        Honorable Paul L. Friedman
                                        UNITED STATES DISTRICT COURT