# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE RAIL FUEL SURCHARGE ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) |

MDL Docket No. 1869
Misc. No. 07–489 (PLF)

This document relates to:  ALL CASES

## SUBMISSION BY *PLAINTIFF*
## *COMPLETE TRANSPORTATION SYSTEMS, INC.* AND HIS COUNSEL REGARDING THE TWO COMPETING "MOTIONS" FOR APPOINTMENT OF INTERIM LEAD CLASS COUNSEL AND A PROPOSAL FOR THE CREATION OF A MORE REPRESENTIVE EXECUTIVE COMMITTEE TO BE APPOINTED BY THE COURT.

## I.    INTRODUCTION

The three plaintiffs law firms currently seeking appointment (in two competing motions) for interim class counsel appointment are, beyond dispute, well qualified to serve as lead counsel in these consolidated cases. Based on each of the three firm's respective qualification, background, work on the cases so far and importantly, geographic proximity to the Court and the Defendants, the Court should seriously consider appointing all three as co-lead class counsel in this MDL. While Plaintiff Complete Transportation and his counsel believe that, in most cases, only one or two lead counsel should be appointed, it also appears that each of the three firm's bring a unique perspective and skill to the case, warranting their appointment as co-lead class counsel.

As noted below, however, the other proposal of the Cohen and Quinn firms (hereinafter, the "Cohen Group") for the appointment of a self selected group of firms for the important Executive Committee is one that warrants further scrutiny by this Court. The Cohen Group's recommendation and proposed Executive Committee appears to be an effort to 'reward' supporters to the exclusion of other, worthy candidates. Indeed, the Cohen Group's proposal fails to include the entire 'mosaic' of clients and their respective counsel from the entire process. Accordingly, the Plaintiff Complete Transportation System and his counsel respectfully recommends that this Court appoint an Executive Committee that is fully representative of all the cases and prevent firms with one or two filed cases to totally dominate the plaintiffs leadership structure before this Court.

## II.    ARGUMENT

### A.    The *Manual For Complex Litigation* Makes Clear That So-Called "Private Ordering" – As Suggested by the Cohen Group - Is Not Appropriate In This Case.

Assuming the Court appoints a three way lead counsel (or not), the Court should not simply also approve of the Cohen Groups suggestion for a limited, self selected appointment of

certain firms to the extremely important Plaintiffs Executive Committee (hereinafter, the "EC"). While members of the Cohn Group have apparently decided, amongst themselves, as to who should serve on the EC (and other undisclosed 'committees'), such recommendations, even if all counsel agree, are not automatic assurances of appointment to such a position by a Court. As the *Manual for Complex Litigation (Fourth)*, a *Third Circuit Task Force Report,* and logic make clear, private "ordering" should only be adopted when <u>unanimous</u> consent emerges among all the plaintiffs' firms. *Manual for Complex Litigation, Fourth,* § 21.272 (private ordering is appropriate when "the lawyers agree who should be lead class counsel," but when the lawyers "are unable to agree on a lead counsel . . . [the court should choose the lawyers] best able to represent the class's interests"); *accord* Third Circuit Task Force Report: *Selection of Class Counsel,* 208 F.R.D. 340, 345 (3rd Cir. 2002) ("Much of the time they work out among themselves a voluntary plan to allocate responsibility, often referred to as 'private ordering.' In other cases, however, judges must decide who should speak for the plaintiffs and serve as lead counsel.") Indeed, as the Task Force Report cautioned:

> [V]oluntary agreements among lawyers may create cartel-like groupings that favor some lawyers and disfavor others on the basis of factors that have little to do with ability or fees, and such agreements may also result in overstaffing and padded hours. In order to reach a "deal", lead counsel may have to "cut in" so many lawyers that the representation of the class becomes inefficient and the ultimate fee request becomes inflated."

*Id.,* at 348.

While a broad base of support may indicate confidence in a particular group, and this may be a factor to be considered by the Court, the significance of such support should not overshadow the ultimate question of the ultimate leadership appointment by a Court considering such an application. *See, e.g., In re Air Cargo Shipping Services Antitrust Litigation,* 240 F.R.D.

56, 58 (E.D.N.Y. 2006) (although support from other attorneys may serve as "some measure of the respect [candidates] command," the "appointment is not supposed to be a popularity contest"). Adding up "raw numbers" can be more than a little misleading, and in some instances, inappropriate.

In this case, in fact, the proposed EC is not actually the result of a supra majority vote and essentially appears to 'reward' certain firms with the EC appointments (and undisclosed committee positions) in exchange for a firm's support of the Cohen Group's motion for lead counsel.

The cases also make clear that improper procedural devices (such as duplicative filings and/or more than two firms listed on one complaint) should not be rewarded by a Court. *See In re Cendant Corp. Securities Litigation*, 404 F.3d 173, 181 (3rd Cir. 2005) (explaining that because duplicative complaints do not confer a benefit upon a class, "[t]here is no reason to compensate such piling on, much less create an economic incentive to repeat it."); *In re Auction Houses Antitrust Litig.* 2001 WL 210697, at *4 (S.D.N.Y. 2001) ("[t]he filing of scores of duplicative class action complaints served no useful purpose. It simply multiplied the number of individual plaintiffs and their respective individual lawyers without benefiting the class.").

In the present case, if the Court accepts the proposed co-lead applications, the Court should allow *all* clients with filed cases to have an opportunity to be represented on the Executive Committee and otherwise be allowed an equal ability to contribute to the prosecution of these consolidated cases.

**B.    The Executive Committee In This Case Should Be Reflective of the Cases and Complaints Filed and Exclude Any Firms With "Double" Representation in The Proposed Leadership Structure.**

As the *Manual* notes, any "arrangements" between counsel should be part of the Court's overall analysis of any leadership proposals. As the *Manual* points out, the Court should

"assess" among other factors "whether there has been full disclosure of all agreements and understandings among counsel." *Manual for Complex Litigation (Fourth)*, § 10.224. The concern expressed by the *Manual* is the fact that such undisclosed agreements could potentially impact the proposed leaders counsel's ability to in fact serve as lead attorney for all the cases and all attorneys with filed cases. Indeed, without Court examination of such agreements (and other factors) undisclosed agreements: "invites problems down the road if designated counsel turn out to be unwilling or unable to discharge their responsibilities satisfactorily or if they incur expensive costs." *Manual* , § 10.224. *See also Manual for Complex Litigation, Fourth,* § 22.62 (the Court "must be satisfied that counsel can perform the assigned roles and that they have not entered into improper arrangements to secure such positions"). As the *Manual* points out: "While it may be appropriate and possibly beneficial for several firms to divide work among themselves, such an arrangement should be necessary, not simply the result of a bargaining among the attorneys." *Id.*

In this case, it appears that the EC proposed to this Court by the Cohen Group may be the result of a number of 'quid pro quos', (i.e., implicit or explicit exchange of 'support' in exchange for position on the Executive Committee or other assignments). Indeed, according to its *own* submission, the Cohen Group already has plans to appoint its supporters to EC positions and as "co-chairs of major substantive committees...." (Cohen Group Memorandum at page 16).

In light of this potential problem, the Court should seriously consider an alternative structure for the EC – one unfettered by any 'deals' or promises of work in exchange for support (or undisclosed 'chair' positions). Instead, the Plaintiff before this Court suggest that the composition of the EC in fact be democratic and allow for broader representation in the litigation as a whole. As it stands now, the Cohen Group's EC, combined would the proposed leads, only

represent a limited number of cases filed, to the exclusion of other firms, including the

undersigned counsel and other similarly situated well qualified plaintiffs firms. A number of the

complaints now before this Court list multiple firms – and the one case has more than one

representative in the leadership structure already vis-à-vis the lead counsel position. If the EC

proposed by the Cohen Group is appointed, a number of cases will be overrepresented by

plaintiffs firms to the total exclusion of unrepresented cases in the leadership structure.

For example, the Dakota Granite case lists four plaintiffs firms. Of these firms, two seek

leadership appointment – one lead (Cohen) and another on the EC (Heins Mills). Similarly, the

Dust Pro cases list three plaintiffs firms. Of these firms, two seek leadership appointment – one

lead (Cohen) and another on the EC (Carella). Thus, with just a limited number of clients, a

limited number of firms will purport to represent the entire breadth of cases filed. The only

equitable solution is to allow for "one case, one vote" and for each case filed, with only one firm

from each complaint able to serve in the leadership structure appointed by the Court in this case.

No group of firms will be able to 'double dip' or to obtain two leadership appointments with one

joint client. With the limited number of cases – and the fact that a number of firms with filed

cases may not wish to serve on the EC – this proposal would ensure fair and equitable

representation for all clients.

### C.    Any Group's (And Any Firm's) Purported "Contributions" Are Significantly Overstated And All Named Plaintiffs Should Have A Representative In The Leadership Structure, Including CTS Plaintiff.

In reality, this case is in its infancy stage. Any claim that one group or set of firms is

further advanced than any other group or firm is utterly without merit. As such, this Court could

appoint any firm to a leadership position that is qualified and the case would not be delayed or

hampered in any manner whatsoever. No significant discovery has been exchanged, the cases

have only recently been sent to this Court by the MDL Panel and the submissions to this Court so

SUBMISSION BY CTS PLAINTIFF REGARDING APPOINTMENT OF INTERIM LEAD CLASS COUNSEL.

6

far have in fact been the result of cooperation amongst the attorneys who are interested in working on the cases.

In view of this undisputable fact, Plaintiff Complete Transportation Systems requests that its counsel of record, William M. Audet, of Audet & Partners, llp., serve as a representative member of the EC. See Ex. A (attached hereto). As the attached CV and the firm resume of Audet & Partners, llp. reveals, Mr. Audet and his firm have been appointed to significant lead positions in dozens of class action cases, including many antitrust cases. Mr. Audet has a JD and an LLM, and had the honor and privilege of serving as law clerk to the Honorable Fern M. Smith and Alphonso Zirpoli, as well as a clerk for the Ninth Circuit Court of Appeals. Mr. Audet's firm is based in San Francisco, California, and Mr. Audet has served as lead counsel through-out the United States in state and federal court. Among other accomplishments, Mr. Audet is also the co-author of a well respected book on discovery, entitled "Handling Federal Discovery (James Publishing, 1995-2007)(with special comments by the Honorable Fern M. Smith). His firm is comprised of a number of well respected members of the plaintiffs bar. If appointed, Mr. Audet will personally commit to work on the case – not just hand the case off to another attorney in his firm.

III.    **CONCLUSION**

In light of their geographic location and proximity to the Courthouse and their respective qualifications, the two 'competing' motions by the Cohen Group and the Whatley Group should be granted. These three firms appear to represent the "best of the best" for this case.

Nonetheless, the undersigned counsel respectfully requests that a more democratically selected group of attorneys and plaintiffs firms be appointed by this Court to serve on the EC. If

the Court agrees with this reasonable suggestion for a more equitable leadership structure overall, then counsel for each of the named plaintiffs with filed cases to date should be allowed the opportunity to serve on the Plaintiffs Executive Committee in these consolidated cases. Under this scenario, Plaintiff Complete Transportation Systems– as well as other named plaintiffs with filed cases – would serve in a representative capacity before this Honorable Court. An Executive Committee of this size (and even bigger) has been approved by courts in the past, and in this case, provides a fair and equitable solution to the leadership issue.

Dated:  March 2, 2008

Respectfully Submitted,

AUDET & PARTNERS, LLP

William M. Audet
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556

*On Behalf of Complete Transportation Systems, Inc*
*and all others similarly situated*

# EXHIBIT A

# WILLIAM M. AUDET, J.D., L.L.M.

Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, California 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556
E-Mail: waudet@audetlaw.com
Website: www.audetlaw.com

William M. Audet is the founding partner of Audet & Partners, LLP, a law firm recognized for its aggressive prosecution of mass torts, class action, and individual cases involving defective pharmaceutical drugs and devices, product defect, construction defect, toxic tort, business fraud, and antitrust claims.

Mr. Audet graduated (with highest honors) and earned a J.D. from Golden Gate University School of Law in 1983. In 1987, Mr. Audet earned an L.L.M. from the University of Wisconsin School of Law, where he was a Clinical Instructor and Staff Attorney at the University of Wisconsin (Legal Assistance to Institutionalized Persons Program). In 1987, Mr. Audet served as a staff attorney at the Ninth Circuit Court of Appeals. Subsequently, Mr. Audet had the honor to serve as a Law Clerk to the Honorable Fern M. Smith (Judge of the United States District Court for the Northern District of California), and as a Law Clerk to the Honorable Alfonso J. Zirpoli (Judge of the United States District Court for the Northern District of California). After his two clerkships, Mr. Audet was employed at Lieff, Cabraser, Heimann & Bernstein, where he became a partner in 1996. In 1996, Mr. Audet joined with Richard Alexander and Amanda Hawes and formed Alexander, Hawes & Audet, LLP.  In 2007 Mr. Audet founded Audet & Partners, LLP.

Mr. Audet is currently a member of the California and Wisconsin bars, and has been admitted to practice before dozens of federal and state courts throughout the United States.

Mr. Audet is a coauthor of a book on federal discovery: *Handling Federal Discovery,* Jakab, Audet & Fanady (James Publishing) (now in its 9th edition).

The partners and associates at Mr. Audet's firm have collectively filed and prosecuted hundreds of personal injury and commercial business cases. Mr. Audet has been appointed to leadership roles in dozens of class actions and mass tort cases in state and federal court, including, but not limited to: *In re Baycol Products Liability Litigation,* D. Minn., MDL No. 1431 (Executive Committee); *In re: Metabolife Products Liability Litigation,* JCCP 4360(Executive Committee); *In re PRK/Lasik Consumer Litigation,* Santa Clara Superior Court, Master File No. CV772894 (Lead Counsel); *In re Ancure/Guidant Litigation,* N.D. Cal. (San Jose), Master File No. 09-02797-JF (Lead Counsel).

Mr. Audet has spoken at a number of conferences on issues relating to mass torts and class actions, and he has sponsored and/or served on the panel of a number of Plaintiff "attorney-only" tutorial conferences relating to Vioxx, Bextra and other defective pharmaceutical drugs and devices. Mr. Audet was recently named as the 2005 Champion of Justice by the San Francisco Bar Association (legal foundation) for his contribution to the legal community and his *pro bono* activities.

---

*Curriculum Vitae of William M. Audet, J.D., L.L.M.*

# Audet & Partners, LLP

Attorneys – at – Law

221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone 415.568.2555
Facsimile 415.568.2556
www.audetlaw.com

*Audet & Partners, LLP,* is a nationally recognized trial firm with offices in San Francisco and New York, and affiliated offices throughout the United States. The attorneys at Audet & Partners, LLP, have concentrated their practice on the prosecution of complex individual, mass tort and class action cases. The firm represents individuals, governmental entities, small businesses and institutional shareholders in product liability, tort, negligence, consumer, construction defect, investment fraud, securities, insider trading, antitrust, environmental, whistle blower, aviation and employment cases. In recognition of their commitment to the legal profession and outstanding abilities to get results for their clients, the firm and its members have served as Court-appointed Plaintiffs Counsel in dozens of federal and state cases throughout the United States. Below is a sampling of our cases:

## *Product Defect and Mass Tort Litigation*

*In Zyprexa Litigation,* MDL 1596, United States District Court, Eastern District of New York. The firm represents over 300 clients who developed diabetes after ingesting Zyprexa. William M. Audet, the firm's principal partner, has been appointed a member of the Plaintiffs Executive Committee.

*In Baycol Litigation,* MDL 1431, United States District Court, Minnesota. William M. Audet serves as Court appointed member of the Plaintiffs Executive Committee relating to the defective drug Baycol.

*In re Metabolife Litigation,* JCCP 4360 (California). William M. Audet serves as a court-appointed member of the State Steering Committee.

*In Vioxx Litigation,* MDL 1657, New Jersey State Court. The firm and its affiliated counsel have filed in excess of 300 cases against Defendants Merck & Company arising out of injuries associated with the defective drug Vioxx.

*In re Bextra Litigation,* MDL No. 1699, United States District Court, Northern District of California. William M. Audet serves as a Court appointed member of the Plaintiffs Steering Committee.

*In re Intergel Litigation,* Florida State Court. William M. Audet and Susanne Scovern filed dozen of cases on behalf of women injured using a Johnson & Johnson product called Intergel. The firm and its co-counsel have recovered tens of millions of dollars for their clients in a confidential settlement with the company.

*In re Defective Ancure Products Liability Litigation,* United States District Court, Northern District of California and Santa Clara County Superior Court. The firm

AUDET & PARTNERS, LLP                                                          Page 2

represents dozens of individuals who were implanted with a defective device.

*Galanti v. Goodyear Tire & Rubber Company,* No. 03-209, United States District Court, District of New Jersey. William M. Audet and Michael McShane served as Court-appointed Class Counsel with pending $300 million settlement involving a defective radiant heating system.

*Williams v. Weyerhaeuser,* San Francisco County Superior Court, California, No. 995787, and *Chambers, et al., v. Weyerhaeuser,* King County Superior Court, Washington, No. 98-2-21084-2 KNT. The firm members served as one of three counsel in a class action involving allegations of defective siding manufactured by Weyerhaeuser.

*Roy v. Cemwood Corporation,* Contra Costa County Superior Court, California, No.: MSC99-00499. The firm serves as one of four co-lead counsel in a national class action involving allegations of defective roofing products.

*Table Bluff Reservation (Wiyot Tribe), et al., v. Philip Morris, et al.,* United States District Court for the Northern District of California, San Francisco Division, No. C 99-02621 MHP. The firm represented Native American Tribes challenging the $200 billion plus state tobacco agreement on the grounds that it violates their civil rights.

*In re Stucco Litigation (Ruff v. Parex)* County of New Hanover, North Carolina, No. 96-CVS-0059. The firm's principal partner William M. Audet, serves on the Court-appointed Plaintiffs Steering Committee. The case was filed on behalf of homeowners who had defective synthetic stucco installed in their homes.

*"Fen-Phen" Product Liability Litigation,* MDL 1203. The firm successfully filed a medical monitoring and punitive damage claim on behalf of California residents.

*Stuart Hanlon, et al., v. Chrysler Corporation,* United States District Court, Northern District of California, No. C-95-2010 CAL. The Firm's attorneys worked on a case seeking correction of defective rear hatch door lock failures in nominal impacts for 3,300,000 owners of Chrysler minivans.

*Smith v. Hewlett-Packard,* Santa Clara County Superior Court, CV 776794. The firm serves as Plaintiffs' Liaison Counsel. Contrary to HP's representations, the Recorders could only consistently and reliably record less user data than the industry standard. When attempting to record more, error messages appeared, previously recorded data was lost and the CD became useless.

### Consumer Litigation

*Roberts v. Bausch & Lomb,* United States District Court, Northern District of Alabama, No. CV-94-C-1144-W. William M. Audet, the firms principal partner, served on the Plaintiffs' Committee in this nationwide consumer class action. A settlement against Bausch & Lomb was approved by the Court on August 1, 1996. Under the settlement, Bausch & Lomb agreed to $68 million in cash and products to 1.5 million buyers of the Company's disposable contact lenses.

*Hilla v. TCI Cablevision,* Santa Clara County Superior Court, No. CV-769105. The firm represented California residents involving illegal overcharges by the cable company for late fees.

*Plotkin v. General Electric,* United States District Court, Northern District of California, Action No. C-92-4447. The firm filed a class action against General Electric for defrauding the American public in the sale of Energy Choice Light Bulbs, which were claimed to be energy efficient, required less electricity and would preserve the environment. General Electric subsequently settled this national class action.

*Afanador v. H&R Block Tax Services, Inc.,* Santa Clara County Superior Court, California, No. CV-767677. The Firm's attorneys, along with other Plaintiffs' counsel, successfully represents consumers in claims against H&R Block arising out of its "Rapid Refund" program.

*Sears Automotive Center Consumer Litigation,* United States District Court, Northern District of California, No. C-92-2227. The firm filed a class action on behalf of consumers defrauded by Sears' Auto Centers. The case was successfully concluded in August 1992. William M. Audet was appointed to the Plaintiffs' Steering Committee.

*Chamberlain v. Flashcom,* Orange County Superior Court, Case No. 00 CC 04212. In this class action, William M. Audet, principal partner, along with other counsel successfully a remedy against Defendant's unlawful, unfair, and fraudulent business conduct.

*Providian Credit Card Cases,* San Francisco County Superior Court, JCCP No. 4085. Through television commercials, direct mail and the internet, the Providian Defendants purported to facilitate the issuance of credit cards to people with damaged credit histories. William M. Audet served as Class Counsel.

*In re Google Litigation,* Northern District of California, San Jose Division. The firm members represent advertisers on Google's web pages who claim to have been overcharged for advertising through a complicated monthly charge program.

*In re Kia Litigation,* Orange County Superior Court. William M. Audet served as class counsel in a number of jurisdictions in a case involving claims by Kia regarding its automotive products. The case was settled with a significant monetary and non-monetary recovery for the class.

## Insurance/Healthcare Litigation

*In re Unum Provident Litigation,* United States District Court, Eastern District of Tennessee, MDL No. 1552. William M. Audet and Michael McShane serve as Court-appointed Lead Counsel in a pending class action on behalf of Plaintiffs alleging the wrongful denial of benefits under long term disability policies.

*In re Industrial Life Insurance Litigation,* United States District Court, Eastern District of Louisiana., MDL Nos. 1371, 1382, 1390, 1391, and 1395. William M. Audet of the firm serves on the Court-appointed Plaintiffs' Steering Committee. The class cases involve claims that insurance companies overcharge African-Americans for life and health insurance.

*In re Life of Georgia Insurance Litigation,* Thirteenth Judicial District, Shelby County, Memphis, Tennessee. Reached nationwide class settlement in 2002 on behalf of class of insureds discriminated against in the issuance of life insurance. William M. Audet was Lead Counsel.

*Thorn v. Jefferson Pilot Insurance Co.,* United States District Court, South Carolina. Nationwide class on behalf of purchasers of life insurance. Michael McShane of the firm represents the proposed Plaintiffs class alleging racial discrimination in the issuance of life insurance policies

*In re Average Wholesale Price Litigation,* MDL Docket No. 1456. William M. Audet and Michael McShane of the firm serve as Court appointed members of the Executive Committee, representing Plaintiffs in a nation-wide class action allegedly the manipulation of pricing for prescription drugs.

*In re Tenet Healthcare Litigation,* Los Angeles County, Superior Court, California. Numerous actions coordinated in 2002 by the Judicial Council. William M. Audet of the firm is one of three Court appointed lead counsel on behalf of nationwide class of individuals who were allegedly overcharged directly, or through their health insurance for medical services, products and medication.

*Lawson, et al., v. Liberty Life,* Birmingham, Alabama, No. 96-1119. William M. Audet of the firm, along with four other Plaintiffs' Counsel, represents a proposed class of life insurance policy holders of Liberty Life Corporation who were subjected to unlawful life insurance policy "churning" by Liberty Life.

AUDET & PARTNERS, LLP                                                      Page 5

### Antitrust

*In re PRK/Lasik, Laser Surgery Overcharges Litigation,* Santa Clara County Superior Court, California, Master File No. CV772894. William M. Audet and Joseph Russell served as Court-appointed Liaison Counsel in a nationwide class action case alleging antitrust violations again Visx, Inc. And Summit, Inc.

*Flat Glass Antitrust Litigation,* United States District Court, Western District of Pennsylvania, MDL No. 1200 (and related cases). Mr. Audet of the firm serves as one of five Court-appointed Discovery Committee members and as Plaintiffs' Counsel in a national class action antitrust case pending against the manufacturers of flat glass.

*Toys "R" Us Antitrust Litigation,* United States District, Northern District of California, No. C-97-3931-TEM. The firm filed a national class action antitrust complaint on behalf of toy consumers.

*Los Angeles Milk Antitrust Litigation,* Los Angeles County Superior Court, California, No. BC 070661. William M Audet and other members of the firm, along with other Plaintiffs' Counsel, represents consumers arising out of claims of antitrust violations against Los Angeles supermarkets due to alleged price fixing of milk.

*California Indirect Purchaser Auction House Cases,* San Francisco County Superior Court, No. 310313. In this case against Christie's, Sotheby's and others, Defendants are charged with conspiring to fix commissions for the sale at auction of art and other items in California.

*Pharmaceutical Antitrust Cases,* San Francisco County Superior Court, California, Judicial Council Coordination Proceeding, No. 2969. The firm members worked on a case for independent pharmacies pursuing claims against major drug manufacturers for violation of California's price fixing statutes.

*In re Vitamin Antitrust Litigation,* California, North Carolina, Tennessee and Maine. William M. Audet serves as lead counsel in three states and on the Plaintiffs' Executive Committee in one state in claims involving alleged price fixing by the manufacturers of vitamin products.

*In re Methionine Antitrust Litigation,* MDL Docket No. 1311. William M. Audet serves as class counsel in a case involving allegations of price fixing in the Methionine industry.

*In re Bromine Antitrust Litigation,* Docket No. 1310. The firm serves as class counsel in a case involving allegations of antitrust violations in the Bromine industry.

AUDET & PARTNERS, LLP                                          Page 6

*In re Carbon Fiber Antitrust Litigation*, C.D. Cal., C 99-11475 RJK.  Manufacturers, sellers, and distributors of carbon fibers were sued by makers of airplanes, spacecraft parts, industrial and sporting equipment for conspiring to maintain an artificially inflated price for their product.  The firm members served as one of Plaintiffs' counsel.

*In re: Terazosin Hydrochloride Antitrust Litigation*, S.D.Fla. MDL 1317.  In this lawsuit Plaintiffs allege a conspiracy to create a monopoly and fix prices of this widely used prescription drug as well as preventing the sale of any generic bioequivalent to Hytrin.  The firm members served as one of Plaintiffs' counsel.

*In re Dram Antitrust*, MDL 1486, Northern District of California.  William M. Audet of the firm serves as class counsel in a class action case to recover money for class members due to antitrust activity in the DRAM industry.

*In re Copper Tubbings Litigation*, United States District Court, District of Tennessee. William M. Audet of the firm was appointed as Co-lead Class Counsel in a case involving an alleged worldwide conspiracy to overcharge customers in the copper tubing industry.

## *Securities & Insider-Trading*

*In re CNET Derivative Litigation*, William M. Audet and Michael McShane of the firm filed a case against the corporate Defendants for insider trading and back dating of options.  The case is pending in San Francisco Superior Court, California.

*Adaptec Derivative Litigation*, Santa Clara County Superior Court, California, Master File No. CV 772590.  The firm serves as Liaison Counsel in a derivative action filed on behalf of shareholders of Adaptec, Inc.

*In re Genesis Securities Litigation*, Northern District Court of California.  William M. Audet serves as class counsel on a case filed against Genesis.  After the case was dismissed by the District Court, the firm filed an appeal and ultimately settled the case for $1.5 million.

*Informix Derivative Securities Litigation*, San Mateo Superior Court, California, Case No. 402254.  The firm served as one of the Plaintiffs' Derivative Counsel in a shareholder lawsuit alleging derivative claims on behalf of Informix.

*Solv-Ex Securities Litigation*, Second Judicial District Court, County of Bernalillo, New Mexico, No. CV-96-09869.  The firm serves as Plaintiffs' Class Counsel in a suit alleging securities fraud against Solv-Ex Corporation and other insider defendants.

*Imp, Inc., Securities Litigation,* Santa Clara County Superior Court, California, No. CV762109. The firm represents shareholders of Imp, Inc. in an action against certain insiders of Imp, Inc., for alleged insider trading of the Company's stock.

*CBT Group Derivative Litigation,* San Mateo County Superior Court, California, No. 406767. The Firm's founder, William M. Audet served as one of two plaintiffs' counsel representing shareholders of CBT Group, PLC, in a derivative action against officers and directors of the Company.

*Oakley Technology Derivative Litigation,* Santa Clara County Superior Court, California, No. CV75829. The Firm's members served as one of three Co-lead Counsel in a derivative securities case brought on behalf of shareholders of Oakley Technology, Inc., brought against certain Officers and Directors of the Company.

*Horizon Securities Litigation,* United States District Court for New Mexico, No. 96-0442 BB/LCS. William M. Audet of the firm serves as one of the Plaintiffs' Class Counsel in a securities case filed against New Mexico-based Horizon Corporation for alleged violation of federal securities laws.

*Bay Networks Securities Litigation* (*Garnier v. Bay Networks,* CV764357; *Greeneway v. Bay Networks,* CV765564), Santa Clara County Superior Court, California. The firm members served as one of four-plaintiffs' counsel representing shareholders of Bay Networks for alleged securities violations.

*Unison Healthcare Corporation Litigation,* United States District Court of Arizona, Case No. Civ. 97-0583-PHX. The firm members served as one of the Plaintiffs' Class Counsel representing investors in Unison Healthcare.

*S3 Derivative Litigation,* Santa Clara County Superior Court, California, No. CV770254. The firm members served as one of the Plaintiffs' Lead Counsel in a derivative action filed on behalf of shareholders of S-3, Inc.

*In re Networks Associates Derivative Litigation,* Santa Clara County Superior Court, Consolidated Case No. CV-781854. In this case, shareholders sued officers and directors of this leading manufacturer of anti-virus and protocol analyzer software who sold over 800,000 shares of their personal stock for more than $33 million by misleading the public regarding its value. William M. Audet of the firm served as Liaison Counsel.

*In re Oak Technology Derivative Action,* Santa Clara County Superior Court, No. CV758629. Shareholders sued directors and officers to recover more than $100 million Defendants made by artificially inflating the company's stock, representing that exceptional demand for the company's products existed. In fact, the company's shipments of CD-ROM controllers far exceeded what the market

could absorb.    Three related derivative cases were filed and subsequently
consolidated. William M. Audet of the firm serves as Lead Counsel in this lawsuit.

*In re Sybase Derivative Litigation*, N.D.Cal., No. C-98-0252-CAL. The Firm's
members served as Plaintiffs' Counsel in this stockholder's derivative action brought
on behalf of Sybase against certain of the Company's present and former officers
and/or directors for insider trading. Founded in 1984, Sybase makes computer
database    management    systems.        Clients    include    financial    service,
telecommunication,    energy,    government,    retail,    manufacturing,    media,
entertainment and healthcare providers.

### About the Attorneys at the Firm

*William M. Audet* earned a B.A. from the University of California at Davis in 1981, a Juris Doctor
from Golden Gate University School of Law in 1984, where he was the Editor of the Golden Gate
University Law Review. He completed his formal legal education with a Masters of Law from the
University of Wisconsin School of Law in 1987. After clerking for the Ninth Circuit Court of
Appelas, Mr. Audet clerked for The Honorable Alfonso J. Zirpoli, United States District Judge for
the Northern District of California and The Honorable Fern M. Smith, United States District Judge
for the Northern District of California. While obtaining his Masters Degree in Law at the University
of Wisconsin, Mr. Audet was also a clinical instructor at the faculty of the University of Wisconsin
School of Law.   Mr. Audet's practice focuses on complex litigation, including class and non-class
action claims involving mass torts, product liability, antitrust and consumer class actions. Mr Audet
is a frequent speaker on a variety of topics and is a co-author of *Handling Federal Discovery* (9th
Ed.)(James Publishing Company). In 2005, Mr. Audet was awarded the Justice Award from the San
Francisco Bar Foundations for his financial contribution to the legal community and for his firm's
pro bono work over the years.   Over the years, Mr. Audet has been appointed to leadership
positions in a number of important and groundbreaking cases.

*Michael McShane* earned his B.A. in Philosophy from the University of California at Santa Barbara,
before earning his law degree from the University of Oregon in 1986, where he was the Articles
Editor for the Journal of Environmental Law and Litigation. Since his admission to the California
Bar, Mr. McShane's practice has been devoted exclusively to prosecuting complex class action
litigation throughout the United States. His areas of practice include products liability, consumer
claims, antitrust litigation, insurance fraud and medical/pharmaceutical overcharge cases.

*Joseph E. Russell* earned a B.S. in mathematics from Fresno State College in 1963. Mr. Russell
earned his J.D. in 1969. During his law school, Mr. Russell was appointed Editor of Golden Gate's
law review, Cal Law, Trends & Developments, and received the San Francisco Bar Association's
award as Bay Area Scholar of the Year. In 1970, he received a Masters of Law from Southern
Methodist University School of Law. Mr. Russell has tried dozens of cases, focusing on cases
involving technical and scientific matters, including anti-trust, unfair business competition,

construction and aviation cases. He is a member of the Association of Trial Lawyers of America and Consumer Attorneys of California. Mr. Russell serves as senior Trial Counsel at the firm.

*Susanne N. Scovern*, received a B.A. with highest honors and distinction in Russian/East European Studies and Political Philosophy from the University of Michigan in 1985. In 1990, Ms. Scovern was awarded a Juris Doctorate from the University of Iowa where she was a member of the *University of Iowa Law Review*. Over the years, she has practiced a broad range of product liability, mass tort, class action, employment and commercial litigation. Ms. Scovern is a member of the American Bar Association, the California Bar Association and the San Francisco Bar Association. She is active in the Science & Technology and Labor and Employment Sections of the ABA and State Bar. She is also a member of the Association of Trial Lawyers of America and the San Francisco Trial Lawyers Association. She is admitted to practice in California and the District of Columbia. Ms. Scovern focuses her work at the firm on defective medical devices and drugs, and is currently heavily involved in the prosecution of the Firm's Vioxx cases.

*Kevin L. Thomason* earned a B.A. in Interdisciplinary Studies from California State University at Dominguez Hill in 1991 and a Juris Doctor from the University of California, Hastings College of the Law in 1994. Kevin has extensive experience in internet and computer technology and has taught MCLE classes on the internet throughout California. He has written extensively for the legal press on these topics. His practice focuses on complex litigation and class actions. Kevin also handles the firm's internet marketing.

*Joshua C. Ezrin* received a B.A. with honors in Sociology from the University of California at Santa Cruz in 1995, and a Juris Doctor from the University of San Francisco School of Law in 2001. Mr. Ezrin has focused his practice on complex litigation and toxic torts and is currently working on a number of cases, including the Bextra, Vioxx and Zyprexa pharmaceutical litigation for the firm.

*Adel Nadji* earned a B.A. in English from the University of California at Berkeley in 1999, and a Juris Doctor from the University of San Francisco School of Law in 2004. While in law school, he was a member of the *Maritime Law Journal*, and the Vice President of the Public Interest Law Foundation. Mr. Nadji published an article titled, *A Decade in the Development of NAFTA Chapter 11*, in the USF Graduate Business Journal. Mr. Nadji is currently focusing his work at the firm on the Zyprexa and Vioxx ligation.

*Saviz Sebghati* attended the University of California at Berkeley from 1979 through 1983, graduating with a B.A. in economics before earning his Jurisprudence Doctorate from Boston University School of Law in 1986. Saviz has over fifteen years experience in litigation and general corporate law, including securities, banking, and real estate. Saviz has represented manufacturers, institutions, internet providers as well as organizations providing entertainment. Saviz holds membership on several State Bar of California committees: Business Law, Intellectual Property Law, International Law, Labor and Employment, Law Practice Management and Technology, Litigation and Real Property Law. (Of Counsel)