**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL Docket No. 1869 Misc. No. 07-489 (PLF) |
| This document relates to: ALL CASES | |

**REPORT CONCERNING PLAINTIFFS' PROPOSED
<u>EXECUTIVE COMMITTEE</u>**

Pursuant to this Court's Memorandum Opinion and Order, dated March 11, 2008 (the "March 11 Opinion and Order"), Interim Co-Lead Class Counsel for the Direct Purchaser Plaintiffs respectfully submit this report to advise the Court of their position regarding which firms should serve on the Executive Committee. Also pursuant to that March 11 Opinion and Order, Interim Co-Lead Counsel are submitting herewith a proposed form of order.

Having considered the requests of Whatley Drake & Kallas and Audet & Partners, LLP to be appointed to the executive committee, and having consulted with other counsel representing plaintiffs in these consolidated actions, Interim Co-Lead Class Counsel respectfully submit that the most appropriate slate of executive committee members is the five firms originally proposed to this Court: Freed Kanner London & Millen LLC ("Freed Kanner"); Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"); Heins Mills & Olson, P.L.C. ("Heins Mills"); Gold Bennett Cera & Sidener LLP ("Gold Bennett"); and Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein ("Carella Byrne").

Based on both their contributions to this litigation and their broad experience in antitrust and class action litigation, these five firms have the support of both Interim Co-Lead Class

Counsel and all of the twenty-two plaintiffs and fifty law firms involved in this litigation – with the sole exception of Whatley Drake, Roger Adelman and Audet & Partners (and the two other firm[s] that joined their motion papers).

We understand that none of the firms supporting the proposed executive committee believes that the interests of the class would be served by adding either Whatley Drake or Audet & Partners to the executive committee. The addition of a sixth, and possibly seventh, firm to the executive committee would risk rendering the committee unwieldy. *Cf. In re Baan Co. Securities Lit.*, 186 F.R.D. 214, 230-231 & n.27 (D.D.C. 1999) (complicated leadership structures sometimes lead to inefficiency). Moreover, were a conclusion to be reached that the executive committee should be expanded, there is no reason on the merits why Whatley Drake or Audet & Partners should be given any additional slots. A number of firms with equal or greater national class action and antitrust litigation experience, who were also involved in the development of the claims and advancement of the litigation here to an equal or greter extent that either Whatley Drake or Audet & Partners all chose themselves not to pursue executive committee seats based on the broad consensus that the five firms proposed for the executive committee merited that appointment. The firms that supported the proposed leadership, and did not themselves pursue executive committee positions, would now effectively be punished for having done so, were Whatley Drake and/or Audet & Partners to be placed on the executive committee based on having challenged the leadership supported by every other firm.

Following the Court's March 11 Opinion and Order, Interim Co-Lead Class Counsel, in discussions with Joe Whatley, proposed to give Whatley Drake a significant role in this litigation – for example, to serve as chairman of discovery of the plaintiffs by defendants. Mr. Whatley unfortunately advised that he had no interest in discussing any position other than the executive

committee, thereby foreclosing the opportunity to discuss other alternatives that would have secured Whatley Drake an important role in the case. Interim Co-Lead Class Counsel remain committed to ensuring that the class benefit from the talents of the many capable and experienced firms involved in this litigation, including Whatley Drake and Audet & Partners.

### Statement of Facts

Approximately twenty-four plaintiffs have filed complaints that are now consolidated in this Court. Over the course of several months, counsel for those many plaintiffs negotiated in an effort to agree on a proposed leadership structure. Initially, following a November 2007 meeting to which all counsel were invited in Washington, D.C., plaintiffs were considering a leadership structure with four co-lead counsel and no executive committee, but no consensus could be reached on that structure. When negotiations among plaintiffs' counsel resumed in earnest in January 2008, a consensus developed that the leadership structure should include additional firms that had made significant contributions to the litigation and that had broad experience in national class actions and antitrust litigation. The structure ultimately supported by virtually all firms and plaintiffs called for two co-lead firms, and a five member executive committee. It was also contemplated that, were the Court to approve this leadership structure, other firms could be assigned roles on committees focused on discovery, briefing, class certification, experts and possibly other areas. This overall approach would permit the class to benefit from the talents, experience and resources of many firms, while simultaneously permitting efficient and effective management and execution.

Discussions of the appropriate leadership structure for prosecuting the proposed class's claims extended over several months. A number of law firms had been involved in the litigation from a very early stage and made significant contributions to the investigation. In the end,

however, an almost unanimous consensus emerged that the best interests of the class would be served with Quinn Emanuel and Cohen Milstein as interim co-lead class counsel, and an executive committee including Freed Kanner from Illinois, Kaplan Fox from New York, Heins Mills from Minnesota, Gold Bennett from California and Carella Byrne from New Jersey. The consensus on the executive committee reflected not only that each of these firms brought broad relevant experience and resources, but also that each of these firms had made significant contributions in the investigation and development of these particular cases.

For example, as detailed below, the Freed Kanner firm worked with Cohen Milstein since May 2007 to investigate the alleged antitrust violations here. Freed Kanner conducted a thorough factual investigation of the claims at issue, including identifying and speaking with potential fact witnesses, identifying and retaining a consulting transportation economist; identifying and retaining an industry expert; and reviewing voluminous public records and materials. As a result of this investigation, Freed Kanner, in cooperation with their experts and Interim Co-Lead Counsel, has helped shape Plaintiffs' theory of the case, identify key players in the alleged conspiracy (which included naming the Association of American Railroads ) and develop a preliminary damage analysis. Freed Kanner's efforts are reflected in important factual allegations contained in the original and amended complaint filed on behalf of its client in this matter. Freed Kanner's lawyers have many years of experience in leadership roles in some of the most significant and successful antitrust class actions.

The Kaplan Fox firm filed the second of all of these cases in May 2007 on behalf of Isaac Industries, and also subsequently filed a case on behalf of Lancaster Foundry Supply Co. Since that time, Kaplan Fox has been actively engaged in the matter. The firm's contributions have included, among other things, assisting Quinn Emanuel in the drafting and filing of an Amended

Complaint in New Jersey, the negotiation in June and July 2007 of a document preservation stipulation that was so ordered by the Court in New Jersey, the drafting and service of document preservation subpoenas on four non-parties, as well as other tasks.  Kaplan Fox is frequently at the forefront of significant private antitrust actions and has been appointed by courts as lead counsel for plaintiffs in some of the largest and most significant antitrust cases throughout the country.

The Carella Byrne firm was instrumental in the initiation of the first of the complaints filed in this matter on behalf of Dust Pro, Inc. in New Jersey in May 2007, and also played a key role in advancing the litigation through such efforts as the negotiation and entry of a document preservation stipulation, the consolidation of the New Jersey cases and subsequent filing of an amended complaint, and the preparation and service of third party subpoenas.  In addition, the Carella Byrne firm, including such former federal prosecutors as James Cecchi, brings to the executive committee significant experience in the investigation of alleged violations of federal law.

Heins Mills and Gold Bennett, based respectively Minnesota and California, have long and comprehensive experience in antitrust class actions, and have each served as lead counsel or executive committee members in many significant antitrust matters.  Each of these firms has assisted in and supported the investigation and development of these cases from the early stages, and has provided key insights and advice to support the management of the cases to date.

In contrast to the proposed executive committee members above, Whatley Drake and Audet & Partners did not assist in the investigation or development of this case.  Their

complaints contain no substantive factual allegation that did not first appear in a Quinn Emanuel or Cohen Milstein complaint.[1]

As reflected in accompanying declarations, including those of Mary Jane Fait, Gerald Rodos, Eugene Spector, Bruce Simon, Michael Boni and Donald Perelman (attached hereto as Exhibits 1-6), there are a number of other highly experienced firms that made very important contributions to this litigation, but that have chosen nonetheless to support the proposed executive committee. These firms, and the plaintiffs they represent, concluded that the proposed executive committee would be in the best interests of the class, and on that basis these firms did not themselves seek appointment either as co-lead counsel or as executive committee members.[2] It would effectively punish these firms for having done so, however, were Whatley Drake and/or Audet & Partners – firms that have garnered no support for appointment to the executive committee – now to be appointed after having unilaterally filed motions challenging the leadership structure to which virtually all other firms and plaintiffs agreed. These firms believe that they would be more deserving, than either Whatley Drake or Audet & Partners, of

---

[1/]    Indeed, it appears that Whatley Drake merely converted the Dust Pro complaint from an Adobe PDF document (the form in which it appears on PACER) into a word processing version, inserted the West Alabama Sand & Gravel plaintiff information, and filed it without correcting numerous typographical errors that occurred during the conversion. For example, when citing the United States Code, Whatley Drake's complaint sometimes reads "V.S.C." instead of "U.S.C." as a "U" in the Dust Pro complaint was apparently mistaken for a "V" during the conversion process. Such errors commonly occur during Adobe Acrobat's conversion process, which uses Optical Character Recognition to turn images into the most approximate text characters that the program can readily recognize. *See, e.g.,* West Alabama Sand & Gravel Complaint at ¶¶ 16-18.

[2/]    The most common means of selecting class counsel is the "private ordering" approach. *See* Manual For Complex Litigation Fourth (2007) § 21.272. "The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests." *Id.* Efforts of plaintiffs' counsel to coordinate their activities among themselves are to be encouraged. *Id.* at § 10.22.

appointment to an executive committee position, in the event the executive committee would be expanded beyond its current five proposed members.

The many firms supporting the proposed executive committee, and that have offered there resources in support of the alleged class, come from all regions of the country. Interim Co-Lead Counsel intend to utilize these resources to ensure efficient coverage of fact development and discovery in the north, south, east and west. While Audet & Partners is located in California, interim co-lead Quinn Emanuel has well over two hundred lawyers in California, with offices in Los Angeles (the firm's founding office), San Francisco and Silicon Valley. Interim Co-Lead Cohen Milstein also has an office in California, and proposed executive committee member Gold Bennett is based in California. While Whatley Drake has offices in Montgomery, Alabama, Mr. Whatley himself is based at least frequently in the firm's New York City office. None of the defendants is based in Alabama. And other law firms supporting the proposed executive committee include firms based in each of Kansas and Florida, as well as other states (and the District of Columbia) within very short commute of the southeastern region.

<u>Argument</u>

**I.    THE PROPOSED EXECUTIVE COMMITTEE MEMBERS HAVE RELEVANT AND SIGNIFICANT EXPERIENCE, OFFER VALUABLE RESOURCES, AND HAVE SUBSTANTIALLY CONTRIBUTED TO DEVELOPING AND ADVANCING THIS LITIGATION.**

Interim Co-Lead Counsel, after consultation with other counsel, have determined that the five proposed executive committee members – Freed Kanner, Kaplan Fox, Heins Mills, Gold Bennett and Carella Byrne – can most effectively support and assist Interim Co-Lead Counsel in their important responsibilities on behalf of the alleged class. These firms are highly experienced in leading national antitrust class actions; offer key resources across the country and

have played important roles to date in investigating and developing the proposed class's claims here and otherwise advancing this litigation.

### A.    __Freed Kanner__

Freed Kanner has worked with Cohen Milstein since May 2007 in investigating the alleged antitrust violations here. Specifically and among other things, Freed Kanner conducted a thorough factual investigation of the claims at issue, including identifying and speaking with potential fact witnesses, identifying and retaining a consulting transportation economist; identifying and retaining an industry expert; and reviewing voluminous public records and materials. As a result of this investigation, Freed Kanner, in cooperation with their experts and Interim Co-Lead Counsel, has helped shape Plaintiffs' theory of the case, identify key players in the alleged conspiracy (which included naming the Association of American Railroads ) and develop a preliminary damage analysis.

Freed Kanner attorneys are among the most experienced attorneys in the country in the prosecution of complex antitrust class actions, having served as co-lead counsel or other key leadership positions in some of the hardest-fought, most successful direct purchaser antitrust class actions, including:

- *In re Brand Name Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.) – With Freed Kanner attorneys serving as co-lead counsel, settlements totaling approximately $715 million were recovered on behalf of the plaintiff class.

- *In re High Fructose Corn Syrup Antitrust Litigation*, MDL 1087 (N.D. Ill.) – With Freed Kanner attorneys serving as co-lead counsel, a settlement for $531 million was achieved for the class.

- *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL 1486 (N.D. Cal.) Freed Kanner attorneys serve as co-chairs of discovery in this nationwide antitrust price-fixing action which generated a recovery of over $320 million for class members.

- *In re Vitamins Antitrust Litigation*, MDL 1285 (D.D.C.) –Freed Kanner attorneys served as co-chairs of discovery in the action in this District resulting in over $1.3 billion in settlements.

- *In re Rubber Chemicals Antitrust Litigation*, MDL 1648 (N.D. Cal.) – With Freed Kanner attorneys serving on the plaintiffs' Executive Committee, the case resulted in settlements of over $300 million for class members.

Freed Kanner currently serves as co-lead counsel in: *In re Methyl Methacrylate (MMA) Antitrust Litigation*, MDL 1768 (E.D. Pa.); *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.); *In re Cotton Yarn Antitrust Litigation*, MDL 1622 (M.D.N.C.); and *In re Urethane Chemicals Antitrust Litigation*, MDL 1616 (D. Kan.).   The firm was also appointed as a member of the plaintiffs' executive committee in *In re Static Random Access Memory (SRAM) Antitrust Litigation* (N.D. Cal., MDL No. 1819).

The legal profession's respected authority on industry, firm and attorney intelligence, *Chambers and Partner*, recently ranked Freed Kanner among Illinois's finest law firms:

> This boutique firm is the new face of Much Shelist's much-feared antitrust team.  Everything that made Much Shelist the force it was in the antitrust arena – personnel, clients and vision – has been retained during the transition; the team, led by the redoubtable Mike Freed, is set to maintain its reputation as a leader on the plaintiff side – doing "*much of the best class action work*."

(available at http://www.allbusiness.com/legal/legal-services-litigation/5256244-1.html).

Freed Kanner has the financial and attorney resources to ensure that the class receives the highest possible level of representation and is dedicated to investing all necessary resources to ensure that the class receives the highest level of representation.  By way of example, in *In re Dynamic Random Access (DRAM) Antitrust Litigation*, MDL No. 1486 (N.D. Cal.), Freed Kanner attorneys, as co-chairs of discovery, expended thousands of hours litigating the case, at times traveling half-way around the world to take depositions of foreign executives.  In other cases,

Freed Kanner attorneys have made substantial commitments and devoted the necessary time and resources to achieve the stellar results that have made it a top-tier, class action firm.

      **B.**    **Kaplan Fox**

In May 2007, Kaplan Fox filed in New Jersey on behalf of Isaac Industries, Inc., the second case filed in this litigation.  Kaplan Fox also filed a case on behalf of  Lancaster Foundry Supply Co.  Since that filing Kaplan Fox has worked closely with the Quinn Emanuel firm. These efforts included the filing of an Amended Complaint in New Jersey, the negotiation of a document preservation order, the drafting and service of document preservation subpoenas on four non-parties, and preparing the initial schedule requested by this Court, as well as other tasks.

Kaplan Fox is frequently at the forefront of significant private antitrust actions and has been appointed by courts as lead counsel for plaintiffs in some of the largest and most significant antitrust cases throughout the country, including *In re High Fructose Corn Syrup Antitrust Litigation* and *In re Flat Glass Antitrust Litigation* – cases that resulted in landmark court of appeals court rulings, and that yielded settlements within sight of trial of $531 million and $122 million, respectively.  Over the years, Kaplan Fox has recovered more than $2 billion for its clients. Kaplan Fox's representation of the class will be led by Robert N. Kaplan, an attorney with nearly 40 years experience in antitrust litigation, including experience at the Antitrust Division of the United States Department of Justice.  The firm resume of Kaplan Fox is included as Exhibit 2 hereto.

Kaplan Fox is one of the nation's preeminent plaintiffs' class action firms, with offices in New York, San Francisco, Los Angeles and Chicago.  The Kaplan Fox attorneys described hereafter have in total more than 100 years of experience in plaintiffs' antitrust class action and other complex litigation, including significant expertise in economic analysis.  Because of its

widely recognized expertise, Kaplan Fox played substantial roles in some of the largest and most successful antitrust class actions in the country. The firm served as co-lead counsel in two of the most complex, and ultimately most successful, antitrust class actions ever litigation – *Flat Glass* and *High Fructuose Corn Syrup,* which resulted in settlements over $122 million and $530 million, respectively. Each produced key appellate rulings argued by Kaplan Fox lawyers – Gregory Arenson in *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir. 2002), and Robert Kaplan in *In re Flat Glass Antitrust Litigation*, 385 F.3d 350 (3d Cir. 2004). Kaplan Fox attorneys also have served as members of plaintiffs' Executive Committee in *Brand Name Prescription Drugs Antitrust Litig.,* MDL No. 997 (N.D. Ill. Sep. 9, 1999), where recovery for the class exceeded $700 million.

Kaplan Fox attorneys are currently a co-lead counsel representing direct purchasers in the following complex antitrust litigations, among others: *In re Air Cargo Shipping Services Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y. Dec. 4, 2006) (one of four co-lead counsel); *In re Plastics Additives Antitrust Litig.*, MDL No. 1684 (E.D.Pa. Sept. 3, 2003) (one of four co-lead counsel); *In re Hydrogen Peroxide Antitrust Litig.,* MDL No. 1682 (E.D. Pa. Aug. 15, 2005) (one of four co-lead counsel); *In re Nifedipine Antitrust Litig.*, MDL No. 1515 (D.D.C. June 30, 2003) (one of three co-lead counsel); *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, 06-CV-52 (D. Del. Mar. 29, 2007) (GMS) (one of three co-lead counsel)*; In re Plavix Direct Purchaser Antitrust Litig.*, 06-CV-202 (S.D. Ohio Mar. 8, 2007) (MHW) (one of two co-lead counsel); and *In re DDAVP Antitrust Litig.*, No. 05 Civ. 2987 (CLB) (S.D.N.Y. Feb. 27, 2007) (one of three co-leads). Currently, in various antitrust cases, Kaplan Fox is representing very substantial companies such as Publix Supermarkets, Meijer, Inc., SuperValu Inc., Raley's,

Wakefern Food Corporation, Kaiser Foundation Health Plan Inc., Kaiser Foundation Hospitals, and The Guardian Life Insurance Company of America.

Few other litigation firms offer the breadth and depth of experience that Kaplan Fox offers, which will be extremely beneficial to the proposed class. The firm's lawyers have served as lead counsel in numerous antitrust class actions and have shown leadership, persistence and excellence in the cases they have litigated. They have tried antitrust cases. They have settled major antitrust cases. They have been involved in litigating significant, complex, and on occasion novel antitrust cases from inception to conclusion.

### C.    Heins Mills

Heins Mills & Olson filed the first complaint in this District on behalf of Dakota Granite Company and was the first to name as a defendant the Association of American Railroads ("AAR"). Heins Mills & Olson, along with the other D.C. Plaintiffs, successfully moved the MDL Panel for transfer to this District and continued to investigate this action and to work cooperatively with defendants' counsel while the Panel transfer motion was pending. At the same time, Heins Mills & Olson, along with the other D.C. Plaintiffs, continued to develop and investigate the facts and legal theories that would best support the class's case. As a result of this investigation, Heins Mills & Olson, along with the other D.C. Plaintiffs, filed amended class action complaints on September 25, 2007.

Heins Mills is a well respected member of the plaintiffs' bar, having led numerous antitrust class cases throughout the country involving price-fixing, vertical trade restraints, and monopolization. Heins Mills has been recognized by numerous federal courts for its extraordinary abilities and successes in complex antitrust litigation. For example, the firm served as co-lead counsel in *In re Monosodium Glutamate Antitrust Litigation*, representing a class of

business purchasers alleging conspiracy by the producers of the food flavor enhancer monosodium glutamate to fix prices and illegally allocate customers and markets. The efforts of Heins Mills and its co-counsel resulted in settlements totaling over $123.4 million – a recovery for the class of *more than* 100% of the estimated untrebled damages. The presiding judge, Hon. Paul A. Magnuson, stated of Heins Mills: "I'll make no bones about this, I think this is as fine a job of plaintiff lawyering as I've ever seen, … I particularly take my hat off to the plaintiffs' counsel here." MDL 00-1328 (D. Minn.).

Heins Mills's skill managing large complex class actions was recently demonstrated with its success in *AOL Time Warner Securities Litigation*. In the order approving Heins Mills' landmark $2.65 billion settlement in the *AOL Time Warner Securities Litigation* the Honorable Shirley Wohl Kram, remarked: "Indeed, Lead Plaintiff's Counsel, Heins Mills, is a respected class action litigator, with considerable experience in major securities and antitrust class action lawsuits. Lead Plaintiff's Counsel has garnered judicial praise for its representation in previous actions, and has continued to show its client commitment and exceptional lawyering in this case." *The Legal 500 US,* a publication ranking "the best of the best" law firms in the U.S., placed Heins Mills on its list of five leading firms practicing in the area of antitrust class action litigation.

In a case against Comcast Corp. alleging monopolistic practices, Heins Mills obtained a significant decision striking the class action bans imposed by arbitration clauses and invalidating provisions in Comcast's arbitration clauses that prohibit consumers from recovering treble damages and attorney's fees and costs under federal antitrust statutes. *See Kristian v. Comcast Corp. and Rogers v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006). The ruling was described by commentators as "the most important decision on arbitration law" in 2006, one which "could

change the policy landscape surrounding class actions in arbitration, " Justin Kelly, *Circuit Invalidates Class Arbitration Waiver in Anti-Trust Case*, ADRWorld.com, April 28, 2006 and lauded as "the first to recognize that [class action] bans deprive plaintiffs of the ability to exercise their statutory rights under federal antitrust law." Peter Geier, *1st Circuit Rejects a Class Action Ban*, The National Law Journal, May 16, 2006.

Heins Mills not only brings the experience and legal acumen necessary to lead large antitrust class actions but also the resources and skills required to conduct discovery in this age of complex electronically-stored information ("ESI"), having managed discovery efforts encompassing millions of pages of electronic documents.

### D.    Gold Bennett

In June 2007, Gold Bennett Cera & Sidener LLP ("Gold Bennett") filed a case in New Jersey on behalf of Bar-Ale, Inc. Since its initial filing in June 2007, Gold Bennett has provided important support to both Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") and Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel"). For example, while the cases were pending in New Jersey, Gold Bennett worked with Quinn Emanuel in connection with the filing of an Amended Complaint in New Jersey.

In addition to these joint efforts, Gold Bennett has conducted significant independent factual and legal investigations relating to the rail freight industry and the allegations in this litigation, including business models, the history of rail freights, private contracts and related issues. Gold Bennett also extensively interviewed participants in the rail transportation industry and studied multiple articles published by railroad industry publications.

Gold Bennett possesses a wealth of experience and the resources necessary to effectively serve on the Executive Committee. They have represented plaintiffs for over thirty years in

complex business, antitrust and trade regulation cases, among others.  Gold Bennett is an AV-rated firm by Martindale-Hubbell and they have recovered hundreds of millions of dollars on behalf of clients in antitrust cases.

Gold Bennett has served as co-lead counsel in some of the nation's largest and most significant direct purchaser antitrust cases during the last few years, including:

- *In re Rubber Chemicals Antitrust Litigation*, MDL No. 1648 (N.D. Cal.) ($320 million);

- *In re Methionine Antitrust Litigation*, MDL No. 1311 (N.D. Cal.)     ($107 million);

- *In re EPDM Antitrust Litigation*, MDL No. 1542 (D. Conn.)  ($81 million) (partial);

- *In re CR Antitrust Litigation*, MDL No. 1642 (D. Conn.) ($62 million);

- *In re Organic Peroxides Antitrust Litigation* (D.D.C.) ($37 million);

- *In re NBR Antitrust Litigation* ($35 million) (W.D. Pa.) ($35 million);

- *In re Plastics Additives Antitrust Litigation*, MDL No. 1684 (E.D. Pa.) ($30.4 million) (partial);

- *In re Polyester Staple Antitrust Litigation*, MDL No. 1516 (W.D.N.C.) ($30.5 million) (partial); and

- *In re MCAA Antitrust Litigation* (D.D.C.) ($15.6 million).

Gold Bennett's qualifications to serve as an effective member of the Executive Committee in antitrust cases was recently confirmed by Judge Jenkins in *In re Rubber Chemicals Antitrust Litigation.*  That class action case arose from an international price fixing scheme involving rubber chemicals used to treat and cure finished rubber products, such as tires.  The class action resulted in a recovery of nearly $320 million.  In his Order certifying a class in that case, Judge Jenkins observed the following:

> In the instant lawsuit, it is undisputed that the counsel selected by the named plaintiffs – Gold Bennett and Cohen Milstein – have extensive experience and expertise in antitrust and other class actions, as well as other complex litigation, and have successfully prosecuted such cases in courts across the country. Gold Bennett and Cohen Milstein, Co-Chairs of the Plaintiffs' Executive Committee, have worked together to identify, investigate, and prosecute the claims alleged here. They have reviewed documents produced in discovery, worked with economists to analyze impact and damage methodologies, analyzed comprehensive transactional data, briefed legal issues, and engaged in negotiations with opposing counsel. Gold Bennett and Cohen Milstein have also devoted considerable attorney resources to this case and have associated with other counsel, experienced in class actions, who have assisted in the matter as members of the Plaintiffs' Executive Committee. There is every indication that Gold Bennett and Cohen Milstein are well equipped to fairly and adequately represent the interests of the Class.

*In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal. 2006). Clearly, Gold Bennett has the broad expertise, qualifications and resources to serve as a member of the Executive Committee in this case.

### E.    Carella Byrne

As noted above, Carella Byrne was instrumental in the filing and initiation of the first of all of these complaints in May 2007, and also played a key role in advancing the litigation through such efforts as the negotiation and entry of a document preservation stipulation, the consolidation of the New Jersey cases and subsequent filing of an amended complaint, and the preparation and service of third party subpoenas. Carella Byrne also undertook important factual research. The firm has worked hand in hand with Quinn Emanuel and Cohen Milstein to move the case forward in an organized and consensual fashion.

Carella Byrne was founded over 30 years ago and has offices in Roseland, New Jersey. Carella Byrne has extensive experience in complex litigations, including class actions involving a broad and varied range of issues including federal securities law, breach of contract, ERISA, antitrust and consumer fraud.

Significant class actions where Carella, Byrne served as either co-counsel, liaison counsel or States' Counsel include: *John E. McCormac v. AOL Time Warner Inc.,* Superior Court of New Jersey, Law Division, Mercer County, Docket No. MER-L-1349-03 (securities fraud action to compensate the New Jersey pension fund for losses sustained as a result of the merger between Time Warner and AOL.). *Allapattah Services, Inc. v. Exxon Corporation,* Civil Action No. 91-0986 (appointed by District Court to represent 34 States in post-judgment settlement claims procedure); *Marvin Simon v. KPMG LLP*, United States District Court, District of New Jersey, Civil Action No. 05-3189 (DMC) (co-counsel for the class in connection with fraudulent tax shelters marketed by KPMG); *In re Merck & Co. Vioxx Securities Litigation*, MDL 1658 (co-liaison counsel for the class); *Waudby v. Verizon Wireless Services*, LLC, Civil Action No. 07-470 (Co-Lead Counsel for the Class); *In Re: Virgin Mobile USA IPO Litigation*, Civil Action No. 07-5619 (Co-Lead Counsel for the class).

Carella Byrne is also currently actively engaged in the representation of numerous publicly traded pharmaceutical companies in sophisticated patent infringement cases, some of which involve drug sales in the multi-billion dollar range. Representative clients in the patent litigation field include: (1) Apotex, Inc.; (2) Barr Laboraties; (3) Watson Pharmaceuticals; (4) Lupin Pharmaceuticals; (5) Sonofi-Aventis; (6) Aurobindo; and (7) Ivax Corp.

Carella Byrne attorneys have also advised and represented clients with respect to numerous antitrust issues relating to restraint of trade, price fixing and monopolization, both in court and in connection with FTC investigations. Those cases include: *Biovail Corporation International v. Hoechst AG*, 49 F. Supp.2d 750 (D.N.J. 1999); *Grace Consulting, Inc. v. Geac Computer Systems, Inc. et al.*, Civil Action No. 02-1252 (KSH) (D.N.J.); and *Golden Bridge Technologies v. Nokia, et al.*, Docket No. 2:05-CV-170 (E.D. Tex).

## II. INTERIM CO-LEAD COUNSEL CAN MOST EFFECTIVELY AND EFFICIENTLY PROSECUTE THIS CASE WITH THE PROPOSED EXECUTIVE COMMITTEE MEMBERS.

In its March 11 "Order Appointing Interim Co-Lead Class Counsel For Direct Purchaser Plaintiffs," this Court ordered that Cohen Milstein and Quinn Emanuel "[s]upervise all pretrial, trial, and post-trial proceedings on behalf of plaintiffs; . . . [c]oordinate the activities of plaintiffs' counsel and implement procedures to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; . . . [and d]elegate tasks to counsel for plaintiffs and otherwise coordinate the work of all plaintiffs' counsel, and perform such other duties as the Interim Co-Lead Class Counsel deem necessary."  This Court thus conveyed a responsibility upon Interim Co-Lead Counsel to make work assignments that will best facilitate the effective, orderly and efficient prosecution of this case.  Such delegations of authority to co-lead counsel are common, indeed recommended, in large class actions.  *See* Manual For Complex Litigation Fourth (2007), §§10.222.[3]  In light of the strong qualifications and meaningful contributions of the proposed executive committee member firms, the positions of the declarants attached hereto, and all of the other factors discussed above, Interim Co-Lead Counsel respectfully submit that the executive committee proposed herein will best permit the effective and efficient prosecution of this case.

---

[3/]      Authorizing lead or co-lead counsel to assign work among all non-lead firms in complex class litigation is common.  *See, e.g., In re Telesphere Intern. Securities Litigation*, No. 89 C 1875, 1989 WL 24124 (N.D. Ill., March 08, 1989); *Fairchild v. Otto*, No. C-95-4009-CW, 1996 WL 22628, (N.D. Cal. Jan. 18, 1996)*; In re Milestone Scientific Securities Litigation*, 187 F.R.D. 165 (D.N.J. 1999); *Mohanty v. BigBand Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250, (N.D. Cal. Feb. 14, 2008); *In re AXA Wage and Hour Litigation*, No. C 06-04291 JSW, 2007 WL 4145116 (N.D.Cal. Nov. 19, 2007); *Miller v. Beazer Homes USA, Inc.*, No. CIVA 107CV-00952-RWS, 2007 WL 3005332 (N.D. Ga. Oct. 11, 2007); *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. April 16, 2007); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006); *Tarica v. McDermott Intern., Inc.*, No. CIV.A.99-38312000, 2000 WL 377817 (E.D. La. April 13, 2000).

## <u>CONCLUSION</u>

For the reasons set forth above, the undersigned respectfully report to the Court their determination that the direct purchaser plaintiffs' executive committee in this case should include the firms Freed Kanner, Kaplan Fox, Heins Mills, Gold Bennett and Carella Byrne.

Dated: March 18, 2008

Respectfully submitted:

| | |
|---|---|
| /s/ Stephen R. Neuwirth | /s/ Michael D. Hausfeld |
| Stephen R. Neuwirth | Michael D. Hausfeld (D.C. Bar #153742) |
| Daniel Brockett | Benjamin D. Brown (D.C. Bar #495836) |
| Sami H. Rashid | COHEN, MILSTEIN, HAUSFELD |
| QUINN EMANUEL URQUHART |     & TOLL, P.L.L.C. |
|     OLIVER & HEDGES, LLP | 1100 New York Avenue NW |
| 51 Madison Avenue, 22nd Floor | Suite 500, West Tower |
| New York, New York 10010 | Washington, DC 20005 |
| Telephone: (212) 849-7000 | Telephone: (202) 408-4600 |
| Facsimile: (212) 849-7100 | Facsimile: (202) 408-4699 |
| Email: stephenneuwirth@quinnemanuel.com | Email: mhausfeld@cmht.com |

*Direct Purchaser Plaintiffs' Interim Co-Lead Class Counsel*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL CASES | MDL Docket No. 1869<br>Misc. No. 07-489 (PLF) |

**[PROPOSED] ORDER APPOINTING THE EXECUTIVE COMMITTEE OF COUNSEL**

Pursuant to this Court's Memorandum Opinion and Order, dated March 11, 2008, the

Court hereby designates the following firms to serve as an Executive Committee of Counsel,

under the direction of interim class counsel, to assist interim class counsel in the fulfillment of

their responsibilities:

Freed Kanner London & Millen LLC;

Heins Mills & Olson, P.L.C.;

Kaplan Fox & Kilsheimer LLP;

Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein; and

Gold Bennett Cera & Sidener LLP.

//

//

//

//

//

Having reviewed all relevant memoranda and supporting materials, the Court finds that the aforementioned firms are best positioned to assist Cohen Milstein and Quinn Emanuel in the fulfillment of the responsibilities enumerated in the Court's March 11, 2008 Order Appointing Interim Co-Lead Class Counsel for the Direct Purchaser Plaintiffs.

It is **SO ORDERED**:

Dated: _____, 2008

_____
PAUL L. FRIEDMAN
United States District Judge

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | ) ) ) ) **MDL Docket No: 1869** ) **Misc. No: 07-489 (PLF)** |
| This document relates to: | ) ) |
| ALL CASES | ) ) ) |

## DECLARATION OF MARY JANE FAIT, ESQ.

I, Mary Jane Fait, state:

1.     I am the managing partner of the Chicago office of Wolf Haldenstein Adler Freeman & Herz LLC ("Wolf Haldenstein").  Wolf Haldenstein has its principal office at 270 Madison Avenue, New York, New York, as well as offices in San Diego, California and West Palm Beach, Florida.  I have practiced antitrust law for over 27 years and I direct the Antitrust Practice Group at Wolf Haldenstein.  A copy of our firm resume containing my firm's expertise in prosecuting nationwide antitrust class actions is attached.

2.     On June 11, 2007, we filed a class action in the Northern District of Illinois entitled Zinifex-Taylor Chemical, Inc, (now known as Nyrstar) v. CSX Transportation, Inc. et al, (1:07cv-3274).  Nyrstar is the world's largest producer of zinc and a leading producer of lead, as well as other valuable metal-processing by products including silver, sulphuric acid, gold and indium.  Nyrstar has plants throughout the world, including an operation in Clarksville, Tennessee.  Nyrstar is a significant purchaser of railcar transportation and thus has a significant monetary claim in this litigation.  This case has been transferred to this Court for coordinated pretrial proceedings.

3.     Due to the large interest of Nyrstar and our expertise in the antitrust area, Wolf

Haldenstein could have chosen to file its own motion for Appointment as Lead Interim Class Counsel and/or could have warranted a position on the proposed Executive Committee. However, we agreed not to pursue competing applications in the recognition of the fact that Quinn Emanual and Cohen Milstein would protect the class' interests. We also agreed to step back from requesting an Executive Committee position with the assurance of proposed Lead Counsel that we would still be able to make a significant contribution to this case.

4.      We have supported the leadership structure proposed by Quinn Emanual and Cohen Milstein and do not believe it would be fair or equitable for other possibly equal or less qualified firms who have entered the case at a much later date to be appointed to the proposed Executive Committee, particularly in light of our prior cooperation with proposed Lead Counsel to advance the case and the important contribution Nyrstar's cooperation will provide to the Class as a whole.

The foregoing is true and correct to the best of my knowledge, information and belief.

Date:   March 18, 2008

_____
Mary Jane Fait
**Wolf Haldenstein Adler**
**Freeman & Herz LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Tel:  (312) 984-0000
Fax:  (312) 981-0001

12280

Exhibit 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| IN RE: RAIL FREIGHT FUEL SURCHARGE | : | MDL DOCKET NO. 1869 |
| ANTITRUST LITIGATION | : | Misc. No. 07-489 (PLF) |
| | : | |

## AFFIDAVIT OF GERALD J. RODOS
## ON BEHALF OF BARRACK, RODOS & BACINE

COMMONWEALTH OF PENNSYLVANIA          :
                                                                        :     ss.
COUNTY OF PHILADELPHIA                          :

I, Gerald J. Rodos, Esquire, being duly sworn according to law, hereby depose and say:

1.      I am a partner in the law firm of Barrack, Rodos & Bacine, counsel for plaintiff

Cedar Farms Co., Inc. in this multidistrict litigation.

2.      My firm investigated the factual and legal background of the claims in this

litigation before filing a complaint on behalf of our client.  After analyzing the underlying facts

of the litigation, my firm filed its action on June 21, 2007 in the Middle District of Florida which

is the headquarters of CSX, one of the principal defendants in the litigation.

3.      Since that time and more specifically, since the Multidistrict Panel transferred

these actions to the District of Columbia, my firm has been conferring with Interim Lead

Counsel as to the facts of the ongoing investigation of the class's claim, which investigation has

been led by Interim Lead Counsel, Cohen Milstein Hausfeld & Toll, P.L.L.C. ("Cohen

Milstein") and Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel").

4.      My firm has extensive experience and success in litigating complex class action

litigation in general and antitrust class actions in particular.  We have been most recently lead

counsel or members of the Executive Committee prosecuting, *inter alia*, the following antitrust

actions: *In re Automotive Refinishing Paint Antitrust Litigation*; *In re Publication Paper*

*Antitrust Litigation;* and *Brookshire Brothers, Ltd., et al. v. Chiquita Brands International, et al.*

My firm as lead counsel also recently recovered in excess of $6 billion for the shareholders of

WorldCom in the *In re WorldCom, Inc. Securities Litigation*. And in January, 2008, my firm

was trial counsel in the *In re Apollo Group, Inc. Securities Litigation*, where it obtained a jury

verdict valued at approximately $200 million in what I believe is the largest jury verdict for

plaintiffs in a securities class action lawsuit since the passage of the Private Securities Litigation

Reform Act in 1995.

  5.  Accordingly, my firm is eminently qualified to be an interim lead counsel or

member of the executive committee in this litigation. However, early on in this litigation, in

light of the extensive work performed by Cohen Milstein and Quinn Emanuel, our belief that

they would be exceptional lead counsel in this litigation and the fact that virtually all counsel in

the case supported those two firms, we concluded that we would not seek to be a lead counsel

here but be supportive of Cohen Milstein and Quinn Emanuel.

  6.  My firm also considered carefully the position of member of a proposed

Executive Committee. We have been involved in this case for the past nine months, we wish to

have a significant role in the litigation, and we certainly believe that we have the experience,

resources and ability to be on the Executive Committee. But not every firm can be on the

Executive Committee. Co-lead counsel and the proposed Executive Committee members have

assured us that our participation in the litigation is welcomed and sought as is the participation of

many other firms who have backed-off from seeking representation on the Executive Committee.

After these discussions with co-lead counsel, members of the proposed Executive Committee of

five firms and other counsel in the case, who like my firm were certainly well-qualified to be members of the Executive Committee, we concluded that the best way to proceed was to support the proposed five member Executive Committee so that counsel could present a united front to the Court and defendants. We made this decision on the understanding that these five firms and no additional firms would be proposed for the Executive Committee.

7.      We believe the Court should seriously consider the Executive Committee which has been proposed by virtually every plaintiff and every plaintiffs' counsel in the litigation. If the Executive Committee were to be opened up for additional members at this time, I believe that this can only cause disruption and confusion among the plaintiffs and their counsel. Under such circumstances, I believe that my firm and, frankly, a number of other firms, who believe they would be appropriate members of an Executive Committee and who agreed to step back from seeking positions on the Executive Committee, should be considered for inclusion in the Executive Committee.

Gerald J. Rodos

Sworn to and Subscribed
Before Me this ____ day
of March, 2008.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Marianna Bonatara, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Apr. 26, 2009
Member, Pennsylvania Association of Notaries

3

Exhibit 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

## DECLARATION OF EUGENE A. SPECTOR

I, Eugene A. Spector, declare as follows:

1.     I am a member of the law firm of Spector, Roseman & Kodroff, P.C. ("SRK"),

counsel for Plaintiff Quality Refractories Installation, Inc. d/b/a American Refractory Products,

in the above-captioned litigation.

2.     Along with other attorneys at SRK, I have had significant involvement in this

litigation for over nine months.

3.     In mid 2007, SRK began investigating the legal and factual background regarding

the fuel surcharge practices of defendants in this litigation.

4.     On June 25, 2007, following our research, SRK filed a class action complaint on

behalf of Quality Refractories in the Eastern District of Pennsylvania.

5.     Since the filing of the complaint and especially following transfer of the cases to

this Court by the Judicial Panel on Multidistrict Litigation, SRK has conferred with Cohen

Milstein Hausfeld & Toll ("Cohen Milstein") and Quinn Emanuel Urquhart Lover & Hedges

("Quinn Emanuel") concerning the facts of the ongoing investigation.

6.     SRK currently serves as lead or co-lead counsel in multiple class action cases,

including antitrust class actions.  Currently, we are the lead counsel in the following antitrust

cases:  *In re: OSB Antitrust Litigation*, No. 06-CV-00826(PSD)), which is pending in the Eastern

District of Pennsylvania; co-lead counsel in the *K-Dur Antitrust Litigation* , MDL No. 1419,

pending in the District of New Jersey; co-lead counsel in *In re: Mercedes Benz Antitrust*

*Litigation* (No. 99-4311) pending in the District of New Jersey; and co-lead counsel in *McDonough v. Toys'R Us, et al.,* (No. 06-CV-0242 (AB))in the Eastern District of Pennsylvania.

      7.      In light of my experience and the experience of other attorneys at my firm, and our willingness to commit our resources to this case, I believe that SRK is well-qualified to serve in a leadership position in this case. However, in recognition of the extensive work performed by Cohen Milstein and Quinn Emanuel, our belief that they would be exceptional lead counsel in this litigation and the fact that virtually all counsel in the case supported those two firms, we concluded that we would not seek to be a lead counsel here, but would be supportive of Cohen Milstein and Quinn Emanuel.

      8.      SRK has also chosen not to seek appointment to the executive committee. The firms proposed for the executive committee are well-qualified to serve in this capacity and will effectively represent Plaintiffs and the putative class in this litigation. The make-up of the executive committee reflects a consensus reached among Plaintiffs' counsel concerning which firms should serve on that committee.

      9.      We believe the Court should seriously consider the Executive Committee which has been proposed by virtually every plaintiff and every plaintiff's counsel in the litigation. If the Executive Committee were to be opened up for additional members at this time, I believe that this can only cause disruption and confusion among the plaintiffs and their counsel. Under such circumstances, I believe that my firm, and frankly, a number of other firms, who believe they would be appropriate members of an Executive Committee and who agreed to step back from seeking positions on the Executive Committee, should also now be considered for inclusion in the Executive Committee.

2

I declare under penalty of perjury that the foregoing is true and correct. Executed this

_18th_ day of March, 2008.

By:_____

Eugene A. Spector

Exhibit 4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL Docket No. 1869<br>Misc. No. 07-489 (PLF) |
| This Document Relates to:<br><br>ALL CASES | |

## AFFIDAVIT OF BRUCE L. SIMON

I, Bruce L. Simon, declare as follows:

1.    I am a partner with the firm of Pearson, Simon, Soter, Warshaw & Penny, LLP, attorneys of record for plaintiff Donnelly Commodities Incorporated in this multidistrict litigation.

2.    My firm specializes in complex litigation, including federal multidistrict litigation. The attorneys in my firm have extensive experience in national class actions that present cutting edge issues in both substantive and procedural areas. My firm and I are currently serving as interim co-lead counsel for the direct purchaser plaintiffs in *In re TFT-LCD (Flat Panel) Antitrust Litigation* (MDL No. 1827) and *In re Flash Memory Antitrust Litigation* (Case No. C07-0086 SBA).

3.    I am a past chair of the California State Bar's Antitrust and Unfair Competition Section and the Business Torts Section of the American Trial Lawyers Association. I am the co-author of the Matthew Bender Practice Guide: California Unfair Competition and Business Torts (2004), which provides in-depth and practical coverage of the state's Unfair Competition Law, as well as antitrust law and other commonly prosecuted business torts.

4.      My firm, together with the law firms of Paulson & Nace and Girardi Keese,

filed a complaint on behalf of Donnelly Commodities Incorporated on August 24, 2007.

Donnelly Commodities Incorporated is a freight consolidator that purchased unregulated rail

freight transportation services directly from the defendants.  The complaint we filed is the

product of independent factual and legal investigation.  After we filed that complaint, my

firm submitted a brief to the Judicial Panel on Multidistrict Litigation supporting transfer of

these related cases to this Court.  Since then, we have also been cooperating with other

plaintiffs' counsel to streamline the litigation and implement an organizational structure that

protects the interests of the proposed class and promotes efficiency for the Court and all

parties.

5.      Based on my firm's extensive experience in antitrust class actions similar to

this proceeding, I believe we are well qualified to serve as interim lead counsel, or as a

member of the executive committee, in this litigation.  Early on however, my firm decided to

support the organizational structure endorsed by virtually all plaintiffs and their counsel.  I

believe that the proposed five-member executive committee is an efficient and fair

organizational structure given the needs of the litigation.  I believe the appointment of any

additional firms to the executive committee would penalize qualified firms, like mine, that

chose to accept a supporting position in the interest of presenting a consensus organizational

structure to the Court.  Accordingly, my firm respectfully joins in the request to appoint the

five-member executive committee supported by a majority of the plaintiffs, and is prepared

to work on the case pursuant to the assignments made by interim lead class counsel and the

executive committee.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March _18_, 2008, at San Francisco, California.

_____
Bruce L. Simon

Exhibit 5

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In re RAIL FREIGHT FUEL SURCHARGE
ANTITRUST LITIGATION

MDL Docket No. 1869
Misc. No. 07-489 (PLF)

This document relates to:          .

ALL CASES

## DECLARATION OF MICHAEL J. BONI

I, Michael J. Boni, declare as follows:

1.    I am a founding partner in the law firm of Boni & Zack, LLC ("Boni & Zack"),

counsel for Plaintiff Strates Shows, Inc. in the above-captioned litigation.

2.    Along with other attorneys at Boni & Zack, I have had significant involvement in

this litigation for over nine months.

3.    In May 2007, Boni & Zack began conducting legal research and factual

investigation concerning the fuel surcharge practices of defendants in this litigation.

4.    On June 25, 2007, following intensive investigation and research, Boni & Zack

filed, along with Cohen Milstein Hausfeld & Toll, P.L.L.C. ("Cohen Milstein"), a class action

complaint on behalf of Strates Shows, Inc. ("Strates Shows"). *See Strates Shows, Inc. v.*

*Association of Am. Railroads, et al.*, D.D.C. Civ. A. No. 1:07-cv-01127-PLF (Docket No. 1).

5.    Boni & Zack's research and investigation has been ongoing since the filing of the

Strates Shows complaint.  In collaboration with Cohen Milstein and other co-counsel, Boni & Zack

investigated historical information concerning fuel surcharges in the rail freight industry and

defendants' public statements related to their fuel surcharge programs.  The information Boni &

Zack obtained during this investigation, and counsel's analysis of this information, contributed to the supplemental allegations supporting Plaintiffs' claims included in the Amended Class Action Complaints filed on behalf of Strates Shows, Inc. and other Plaintiffs in September 2007. *See* Dakota Granite Co. Amended Class Action Complaint, 1:07-cv-1078-PLF (Docket No. 6); McIntyre Group, Ltd. Amended Class Action Complaint, 1:07-cv-1101-PLF(Docket No. 8); GVL Pipe & Demolition, Inc. Amended Class Action Complaint, 1:07-cv-1119-PLF (Docket No. 7); Ferraro Foods of N.C. Amended Class Action Complaint, 1:07-cv-1121-PLF (Docket No. 7); Sublette Coop., Inc. Amended Class Action Complaint, 1:07-cv-1126-PLF(Docket No. 9); Strates Shows, Inc. Amended Class Action Complaint, 1:07-cv-1127-PLF (Docket No. 8). Since the filing of the Amended Class Action Complaints, Boni & Zack has continued to work closely with Cohen Milstein in connection with this litigation.

6.      Boni & Zack currently serves as lead or co-lead counsel in multiple class action cases, and I have served as lead counsel in a number of complex matters, including antitrust class actions. A copy of the firm's *curriculum vitae* is attached as Exhibit A.

7.      In light of my experience and the experience of other attorneys at the firm, the resources the firm is willing to commit to this litigation, and the extensive work performed by Boni & Zack in this matter, I firmly believe that Boni & Zack is well-qualified to serve on the executive committee in this litigation.

8.      Notwithstanding this belief, Boni & Zack is not seeking appointment to the executive committee. It is my belief that the firms proposed for appointment to the executive committee based on the "private ordering" of the majority of Plaintiffs' counsel are well-qualified to serve in this capacity and will effectively represent Plaintiffs and the putative class in this litigation. It is my further belief that Plaintiffs and the putative class will benefit from

representation by an executive committee that reflects the consensus reached among Plaintiffs'
counsel concerning which firms should serve on that committee.

9.      I understand that the law firm of Whatley Drake & Kallas, LLC intends to seek the
Court's appointment to the executive committee this litigation, and in so doing will disregard the
consensus reached among Plaintiffs' counsel concerning which firms should serve on that
committee.  In my view, Boni & Zack is at least as qualified as Whatley Drake to serve in a
leadership position in this case, and the appointment of Whatley Drake would be grossly unfair to
Boni & Zack and other well-qualified firms that have abided by the private ordering in this
litigation.  It is also my belief that appointing Whatley Drake to a leadership position in this
litigation may create an incentive for firms to ignore the consensus reached among plaintiffs'
counsel in other cases, which is a result that is potentially at odds with the goal of encouraging the
effective prosecution of class actions.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 18th
day of March, 2008.

By: _____
Michael J. Boni

3

# EXHIBIT A

# EXHIBIT A

## BONI & ZACK, LLC

Boni & Zack, LLC, in Bala Cynwyd, Pennsylvania, was founded in March 2007. Boni & Zack focuses on class action and complex litigation under antitrust, intellectual property and consumer statutes.

Boni & Zack currently serves as lead or co-lead counsel in the following cases: *In re: Western States Wholesale Natural Gas Antitrust Litigation*, MDL No. 1566, (D. Nev.); *In re: Freelance Works in Literary Databases Copyright Litigation*, MDL No. 1379 (S.D.N.Y); *The Authors Guild, et al. v. Google Inc.*, No. 05-CV-8136 (S.D.N.Y.); *In re: Yahoo Litigation*, No. 06-2737-CAS (C.D. Cal).

In addition, Boni & Zack is currently representing plaintiffs in the following actions, among others: *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* MDL No. 1720; *In re: OSB Antitrust Litigation*, E.D. Pa. Civ. A. No. 06-826; *In re: Pressure Sensitive Labelstock Antitrust Litigation*, MDL No. 1556.

Michael J. Boni founded Boni & Zack LLC in March 2007 after practicing complex commercial litigation at Kohn, Swift & Graf, P.C. for 14 years. He specializes in antitrust, copyright, consumer and class action litigation.

Mr. Boni has served as lead counsel in a number of complex matters, including *In re Literary Works in Electronic Databases Copyright Litigation*, MDL No. 1379 (S.D.N.Y.) ($18 million settlement approved and on appeal; largest copyright class action settlement in history); *Random House, Inc. v. Rosetta Books*, LLC, et al., No. 01-Civ-1728 (S.D.N.Y.) (successful defense against copyright infringement claims brought by Random House against e-book publisher Rosetta Books); *Authors Guild, et al. v. Google Inc.*, No. 05-CV-8136-JES (S.D.N.Y.) (copyright infringement class action pending); *In re Pillar Point Partners Antitrust & Patent Litigation*, MDL No. 1202 (D. Ariz.) ($50 million antitrust class action settlement); *In re Western States Wholesale Natural Gas Antitrust Litigation, MDL No. 1566* (D. Nev.) (antitrust class action pending; $11 million

partial settlement pending final court approval); *Mikhail, et al. v. Toshiba America Information Systems, Inc.*, No. BC 278163 (Superior Ct. Cal.) ($32 million consumer class action settlement); *In re Yahoo! Litigation*, CV06-2737-CAS (C.D. Cal.) (pending class action on behalf of Yahoo's advertising customers for alleged unfair business practices); *Next Proteins International v. Radonsky, et al.*, No. BC 304799 (Superior Ct. Cal.) (consumer class action settled); *In re RF Tags Antitrust Litigation*, No. 02-CV-3730 (D.N.J.) ($4.6 million antitrust class action settlement); *Pilkington, et al. v. U.S.Search.com*, No. BC 234858 (Superior Ct. Cal.) ($1 million consumer class action settlement); *True Communication, Inc., d/b/a Metrodate.com v. The Gator Corporation*, No. CIV 430620 (Superior Ct. Cal.) (unfair competition class action settled); *Miller v. Pep Boys, Inc., et al.*, No. 0201-41489 (C.C.P. Phila. Cy.) (consumer class action settled); *Kleeman v. Verizon Communications Inc.*, et al. ($24 million consumer class action settled); *In re Rio Hair Naturalizer Products Liability Litigation*, MDL No. 1055 (E.D. Mich.) ($4.5 million product liability class action settlement); *In re AMC Shareholder Derivative Litigation*, No. 12855 (Del. Chancery) ($2.2 million settlement); *Winigrad v. Franklin Electronics*, (Superior Ct. N.J.) (consumer class action settled); *Pacillo v. Philips Electronics*, (Superior Ct. N.J.) (consumer class action settled).

# Exhibit 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In re RAIL FREIGHT FUEL SURCHARGE
ANTITRUST LITIGATION

MDL Docket No. 1869
Misc. No. 07-489 (PLF)

This document relates to:

ALL CASES

## DECLARATION OF DONALD PERELMAN

I, Donald Perelman, declare as follows:

1.      I am a member in the law firm of Fine Kaplan & Black ("Fine Kaplan"), counsel for Plaintiff GVL Pipe and Demolition, Inc. in the above-captioned litigation.

2.      Along with other attorneys at Fine Kaplan, I have had significant involvement in this litigation for over nine months.

3.      In mid 2007, Fine Kaplan began conducting legal research and factual investigation concerning the fuel surcharge practices of defendants in this litigation.

4.      On June 21, 2007, following intensive investigation and research, Fine Kaplan filed a class action complaint on behalf of GVL Pipe and Demolition Inc. *See GVL Pipe and Demolition, Inc. v. Association of Am. Railroads, et al.*, D.D.C. 1:07-cv-01119.

5.      Since the filing of the complaint, Fine Kaplan has worked with Cohen Milstein Hausfeld & Toll ("Cohen Milstein") and other co-counsel in the investigation of this case.   The information obtained during this investigation, and counsel's analysis of this information, contributed to the supplemental allegations supporting Plaintiffs' claims included in the Amended Class Action Complaints filed in September 2007.  Since the filing of the Amended Class Action

Complaints, Fine Kaplan has continued to work closely with Interim Lead Counsel, Cohen Milstein and Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel").

6.    Fine Kaplan currently serves as lead or co-lead counsel in multiple class action cases, including antitrust class actions.  Currently, we are the lead counsel in the Polyether Polyols antitrust litigation, which is pending in the District Court in Kansas. *In re Urethane Antitrust Litigation*, No. 04-MD-1616-JWL

7.    In light of my experience and the experience of other attorneys at the firm, the resources the firm is willing to commit to this litigation, and the extensive work performed by Fine Kaplan in this matter, I firmly believe that Fine Kaplan is well-qualified to serve in a leadership position in this case.  However, early on in this litigation, in light of the extensive work performed by Cohen Milstein and Quinn Emanuel, our belief that they would be exceptional lead counsel in this litigation and the fact that virtually all counsel in the case supported those two firms, we concluded that we would not seek to be a lead counsel here but be supportive of Cohen Milstein and Quinn Emanuel.

8.    Further, Fine Kaplan is not seeking appointment to the executive committee.  It is my belief that the firms proposed for appointment to the executive committee are well-qualified to serve in this capacity and will effectively represent Plaintiffs and the putative class in this litigation. It is my further belief that Plaintiffs and the putative class will benefit from representation by an executive committee that reflects the consensus reached among Plaintiffs' counsel concerning which firms should serve on that committee.

9.    We believe the Court should seriously consider the Executive Committee which has been proposed by virtually every plaintiff and every plaintiffs' counsel in the litigation.  If the Executive Committee were to be opened up for additional members at this time, I believe that this

can only cause disruption and confusion among the plaintiffs and their counsel.  Under such

circumstances, I believe that my firm and, frankly, a number of other firms, who believe they

would be appropriate members of an Executive Committee and who agreed to step back from

seeking positions on the Executive Committee, should also now be considered for inclusion in the

Executive Committee.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 18th

day of March, 2008.

By: _____

Donald Perelman