UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE RAIL FUEL SURCHARGE ANTITRUST LITIGATION )<br>)<br>)<br>)<br>This document relates to: ALL CASES )<br>) | MDL Docket No. 1869<br>Misc. No. 07-489 (PLF) |

**OBJECTION TO SUBMISSION OF CO-LEAD COUNSEL
REGARDING EXECUTIVE COMMITTEE APPOINTMENTS**

Whatley Drake & Kallas, LLC, respectfully submits this Objection to the Submission of Co-Lead Counsel regarding the composition of the Executive Committee and requests the Court to expand the Executive Committee as proposed by Interim Co-Lead Counsel to include Whatley Drake & Kallas (hereinafter "WDK"). WDK submits herewith the affidavit of Joe R. Whatley, Jr. attached hereto as Exhibit A, and the affidavit of Richard P. Rouco, attached hereto as Exhibit B, with respect to the factual matters asserted herein.

On March 7, 2008, this Court heard arguments on submissions from various Plaintiff Counsel regarding the appointment of Interim Lead Counsel, Liaison Counsel, and a Plaintiff Executive Committee. On March 11, 2008 after consideration of those arguments and the underlying pleadings, the Court Ordered that Cohen Milstein and Quinn Emanuel be appointed Interim Co-Lead Counsel. (Docket No. 70). However, the March 11 Order also provided Co-Lead Counsel the opportunity to confer about the final composition of the Executive Committee following the assertions at the hearing that WDK and William Audet would be willing to serve on the Executive Committee. *Id*. On March 18, 2008, Interim Co-Lead Counsel submitted the Court a proposal seeking that

1

the same five firms which they originally supported be appointed as the sole members of the Executive Committee. (Docket No. 74). Therefore, WDK respectfully submits this Objection.

### A. THE LEADERSHIP STRUCTURE CONTINUES TO SUFFER FROM THE SAME LACK OF BREADTH

WDK continues to believe that the leadership structure below the co-leads should be inclusive of all plaintiffs' counsel, meaning that *all counsel* in the litigation should be considered for appointments to any plaintiffs' committees. In contrast, Interim Co-Lead Counsel asks the Court to approve the same limited group of firms to serve on a Plaintiffs Executive Committee as they have sought from the beginning. Specifically the Cohen Group requests that the Plaintiffs Executive Committee consist of the following five firms: Freed Kanner London & Millen LLC; Kaplan Fox & Kilsheimer, LLP; Heins Mills & Olson, P.L.C.; Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein; and Gold Bennett Cera & Sidener LLP.

The previous submission by Plaintiff Complete Transportation Systems, Inc., (hereinafter "CTS") regarding the competing motions for the appointment of Interim Lead Class Counsel (Docket No. 65) demonstrates why the Court should not approve the structure as proposed by Co-Lead Counsel as there are serious concerns about how the group was selected and the fact that it is not representative of the cases or the class. "Private ordering" of the Plaintiffs Executive Committee is only appropriate when *all* counsel agree on who should serve as lead counsel. *See* Manual for Complex Litigation (Fourth), § 21.272 (private ordering is appropriate when "the lawyers agree who should be lead class counsel," but when the lawyers "are unable to agree on lead counsel … [the court should choose the lawyers] best able to represent the class's interests"). It is

unsurprising that each member of the proposed Plaintiffs Executive Committee supported the appointment of Cohen Milstein and Quinn Emanuel as Interim Co-Lead Class Counsel, and it appears that the makeup of the proposed Plaintiffs Executive Committee may have been the result of an explicit or implicit *quid pro quo* agreement as suggested by counsel for CTS. Therefore, Court should act to ensure that the leadership of this case is broad and representative of all cases and plaintiffs and not just those who supported Co-Lead Counsel's appointment.

In fact, the initial conduct of Co-Lead Counsel led all Plaintiff Counsel to believe that they would attempt to reach a broad consensus on leadership issues and appointments. Shortly after the Judicial Panel on Multidistrict Litigation transferred this case to the District of Columbia, plaintiffs' counsel met at Cohen Milstein's offices in an effort to reach a private ordering of leadership. Rouco Aff. at ¶ 2. At this meeting, plaintiffs' counsel expressed a desire for a four co-lead structure without an executive committee. *Id.* As has been previously submitted to this court, this proposal also consisted of other committees directly below the Co-Leads. *Id.* at ¶ 3. Now instead, the Co-Lead group is seeking to have a very limited Executive Committee of their choosing for reasons that do not appear to be limited to only their ability to contribute to the litigation, and to relegate all other counsel to vague roles in some vast third tier of committees and roles. It is for this reason that WDK was unable to reach an agreement to support the proposal of the Co-Leads and is filing this objection. The Executive Committee should reflect the breadth of this litigation, the firms involved, and their plaintiffs, and should consist of at least WDK and Audet in addition to the slate before the Court.

Lastly, the Co-Lead group incorrectly asserts that it has the support of all firms involved in this litigation with the exception of WDK, Roger Adelman and Audet & Partners. However, Co-Lead counsel also grossly overstates its broad support for its proposed Executive Committee appointments. In addition to having the support of Roger Adelman and Audet & Partners which represents Complete Transportations Systems, Inc., Whatley Drake is supported in this objection by Horn Aylward & Bandy, LLC, Peterson & Associates, PC, and Walters, Bender, Strohbehn & Vaughn, PC (collectively "the KC Group"). The KC Group represents Sterling Steel Company, the largest plaintiff represented in this litigation. *See Sterling Steel Company, LLC v. Union Pacific Railroad Company et al*, No. 4:08-CV-00122-JTM (W.D. Mo.). In addition, Whatley Drake is also supported by Schlichter Bogard & Denton and Ashcraft and Gerel. Thus, the Co-Lead's claim that it has the support of all firms is overblown as significant players in this litigation believe that the Executive Committee should be more inclusive.

**B. AS HAS BEEN DEMONSTRATED WDK IS QUALIFED AND HAS BEEN ACTIVELY INVOLVED IN THIS AND SIMILAR LITIGATION FROM THE START**

There does not appear to be a dispute that WDK is a capable and qualified firm. This point was conceded by Co-Lead Counsel in the conversations between Mr. Housefeld and Mr. Whatley following the Court's March 11 Order. Whatley Aff. at p. 1-2. Despite this, the Co-Lead Group continues to suggest that WDK has not been active in this and similar litigation which is simply not true. It is undeniable that Co-Lead Counsel have been extensively involved in investigating the claims in this litigation, but none of the parties has engaged in any significant formal discovery and these cases have only recently been sent to this Court via an order of the Judicial Panel on Multidistrict

4

Litigation. As such, the Co-Lead Counsel Group's argument that their slate for the Executive Committee are significantly more advanced in identifying facts to support the plaintiffs' claims is without merit. As has been previously established for the Court, WDK has been involved in this and similar litigation from the start. Mr. Rouco has represented plaintiff in several antitrust cases challenging fuel surcharge practices including the International Air Transportation Surcharge Antitrust Litigation, the Air Cargo Services Antitrust Litigation, the Less than Truckload Shipping Services Antitrust Litigation, and the Household Goods Movers Antitrust Litigation. *See* Ex. B to Reply to Response of Cohen Milstein and Quinn Emanuel to the Motion of WDK (Docket No. 68), Rouco Aff. at ¶¶ 3-6. In fact, Mr. Rouco serves on the Executive Committee in the Less than Truckload Shipping Services Antitrust Litigation, and the Household Goods Movers Antitrust Litigation. *Id.* at ¶¶ 5-6. WDK has been investigating and pursuing the claims alleged in this litigation from its early stages.

## **CONCLUSION**

For the forgoing reasons, the undersigned counsel respectfully request that this Court modify and expand the proposal submitted by Interim Co-Lead Counsel on March 18, 2008, by appointing WDK as a member of the executive committee, as well as the law firms of Audet & Partners and Walters, Bender, Strohbehn & Vaughn, PC.

Dated: March 25, 2008

                                           Respectfully Submitted,

                                           /s/ Joe R. Whatley, Jr.
                                           Joe R. Whatley, Jr.
                                           WHATLEY DRAKE & KALLAS, LLC
                                           1540 Broadway, 37th Floor
                                           New York, NY 10036
                                           Tel: 212.447.7070, Fax: 212.447.7077

Richard P. Rouco
G. Douglas Jones
Othni J. Lathram
WHATLEY DRAKE & KALLAS, LLC
2001 Park Place North, Suite 1000
P.O. Box 10647
Birmingham, AL 35203
Tel: 205.328.9576
Fax: 205.328.9669

Roger M. Adelman
THE LAW OFFICE OF ROGER M. ADELMAN
1100 Connecticut Avenue, N.W.
Suite 730
Washington, D.C. 20036
Tel: 202.822.0600
Fax: 202.822.6722
Local Counsel

*Counsel for Plaintiff West Alabama Sand & Gravel, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document, filed through the ECF system, will be served electronically through the ECF System on the email-registered participants as identified on the Notice of Electronic Filing ("NEF") on March 25, 2008.

/s/ Joe R. Whatley, Jr.
OF COUNSEL

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE RAIL FUEL SURCHARGE  )<br>ANTITRUST LITIGATION  )<br>  )<br>  )<br>This document relates to: ALL CASES  )<br>  ) | MDL Docket No. 1869<br>Misc. No. 07-489 (PLF) |

### AFFIDAVIT OF JOE R. WHATLEY, JR.

I am Joe R. Whatley Jr. of the law firm of Whatley Drake & Kallas, LLC. I have previously submitted an affidavit in this matter and appeared before the Court.

After receiving this Court's Order denying our motion to be appointed as an additional co-lead counsel but allowing us to be considered for the Executive Committee, I promptly sent the attached email to Mr. Hausfeld, his partner Mr. Brown, and Mr. Neuwirth. In that email, I invited them to have communications with me about my firm's involvement in this litigation and addition to the Executive Committee. Despite the comments about our firm in their Response, they never made any effort to obtain any such information from me.

I had three telephone conversations with Mr. Hausfeld, one on Wednesday, March 12, 2008, one on Friday, March 14, 2008, and one on Monday, March 17, 2008. In other circumstances, I would not submit a description of those conversations to the Court, but since Mr. Hausfeld has already described them in part, I will describe them in more detail so that the record will be complete. In those conversations, Mr. Hausfeld never questioned the work, ability or resources of our firm. To the contrary, he stated that our firm was capable and experienced. In those discussions, I inquired why there was opposition to our becoming an additional member of the Executive Committee, and he

gave two reasons. First, he said that he objected to having our firm become a member of the Executive Committee because it would encourage firms in other cases to hold out in discussions with co-counsel and then to file with the Court if they did not get positions they desired, but he acknowledged that our firm has not engaged in the practice he wants to discourage. Second, he said that the agreement that had been reached would unravel if he agreed for our firm to become an additional member of the Executive Committee; he specifically said that if he agreed for our firm to be on the Executive Committee, Kaplan Fox would then file a motion to be appointed co-lead. Of course, I pointed out that the time had expired for them to file any such motion, and he agreed.

      As Mr. Hausfeld acknowledged in our first conversation, we did not participate in the process that led to the leadership structure he has proposed. As my partner Richard Rouco and I described more generally in our initial submission, we were invited to a meeting in November of 2007 in Mr. Hausfeld's office to discuss a leadership structure for the case. Mr. Hausfeld selected the date and time for the meeting. Since I was taking the lead role in a fairness hearing on a major settlement in the Southern District of Florida (where our firm is co-lead counsel), I could not attend, but my partners Mr. Jones, Mr. Rouco and Mr. Lathram attended. It is my understanding that a consensus was reached at that meeting to have four co-lead counsel with no executive committee. There was even a vote taken at that meeting for such a structure. I had discussions with Mr. Neuwirth before and after that meeting about the leadership structure of the case and our desire to play a major role in the leadership of the case. In the conversation we had after that meeting, Mr. Neuwirth stated that he would involve me in any future conversations about the leadership of the case. I heard nothing more about that matter until one of my

2

partners, Doug Jones, who served as United States for the Northern District of Alabama under President Clinton, received a message that Mr. Hausfeld wanted to schedule a call with us. I was on the call with Mr. Hausfeld and Mr. Brown. Mr. Hausfeld stated that a consensus had been reached for their firm and Mr. Neuwirth's firm to be co-leads and five firms to be on the Executive Committee. I asked who the five firms were, and he named the five firms they are now proposing to the Court. A week later, I received a call from Mr. Neuwirth and Mr. Brown, who told me that they had just reached agreement on the structure they have proposed to the Court. I asked how that was different than the one that Mr. Hausfeld had described to me a week earlier, and there was no difference. I was not pleased with a structure had been developed without any opportunity for us to have any in-put until after the structure was developed and the firms filling all of the top positions, especially after we had attended a meeting where consensus was reached on a different structure and where thereafter, Mr. Neuwirth had committed to involve me in any leadership discussions that followed but did not. In those conversations, I told them that since we had not been invited to participate in the discussions that led to the leadership structure, we would seek a leadership role from the Court, and we have done so. I have since learned that other lawyers for plaintiffs were likewise excluded form the process, as indicated by Mr. Audet's motion.

  At the end of my last discussion with Mr. Hausfeld, I reminded him that I had invited discussions about what our firm would bring to the Executive Committee and that we were still ready, willing and able to have those discussions. He expressed no interest in having any such discussion. I have not heard anything from Mr. Neuwirth.

3

I should also note that since I appeared before this Court, I appeared before the United States District Court for the Central District of California, and the Court appointed our firm to be co-lead counsel in the Mattel Lead Toy Litigation. We then set up a process where every firm who had filed a case was informed that they could apply to be on the Executive Committee, with a description of why they should be selected. Such a process is obviously much more fair and inclusive than one like Mr. Hausfeld and Mr. Neuwirth followed when they selected the members of the Executive Committee before even informing firms like ours that there would be one. Of course, the process they followed allowed them to select firms that had filed cases with them on behalf of the same clients rather than opening the process to a fair comparison of the strengths of the firms who have filed cases. It also allowed them to eliminate other co-lead counsel applications like the one Mr. Hausfeld said would be filed by Kaplan Fox if our firm were added to the Executive Committee. Incidentally, Kaplan Fox is one of the firms that has applied to be on the Executive Committee in the Mattel case.

I certify under penalty of perjury that the foregoing is true and correct. Executed on this the 25th day of March, 2008.

/s/ Joe R. Whatley, Jr.

5

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document, filed through the ECF system, will be served electronically through the ECF System on the email-registered participants as identified on the Notice of Electronic Filing ("NEF") on March 25, 2008.

                                              /s/ Joe R. Whatley, Jr.
                                              OF COUNSEL

| | |
|---|---|
| **From:** | Joe R. Whatley Jr. |
| **Sent:** | Tuesday, March 11, 2008 5:49 PM |
| **To:** | 'Stephen Neuwirth'; 'Hausfeld, Michael'; 'Ben Brown (bbrown@cmht.com)' |
| **Cc:** | Richard P. Rouco; Doug Jones; Othni J. Lathram |
| **Subject:** | Rail Freight Fuel Surcharge Antitrust Litigation |
| **Contacts:** | Stephen Neuwirth |

Gentlemen

Congratulations on the orders Judge Friedman entered today. As we told Judge Friedman and as he stated in his Order, we are very much interested in serving on the Executive Committee. If you need any further information about our qualifications, resources, commitment to the case or anything else related to our serving on the Executive Committee, we will be more than happy to talk with you.

Joe

3/21/2008

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE RAIL FUEL SURCHARGE ) <br> ANTITRUST LITIGATION ) <br> ) <br> ) <br> This document relates to: ALL CASES ) <br> ) | MDL Docket No. 1869 <br> Misc. No. 07-489 (PLF) |

**AFFIDAVIT OF RICHARD P. ROUCO**

1. My name is Richard P. Rouco. I am counsel to West Alabama Sand & Gravel. I have personal knowledge of the matters set forth in this affidavit.

2. Along with my partners Doug Jones and Othni Lathram, I attended a meeting of plaintiffs' counsel in November 2007 at the offices of Cohen Milstein. As noted in a prior affidavit, at this meeting, plaintiffs' counsel collectively agreed to a four co-lead structure with no executive committee. To my recollection, no one at the meeting dissented.

3. Once there was an agreement on four co-leads with no executive committee, we took up the issue of identifying the firms interested in one of four co-leads. It is my recollection that approximately six firms indicated interest in a co-lead position. Three of the six firms are either co-leads or on the executive committee. One firm withdrew from consideration and is no longer actively participating in the case. The remaining firms Whatley Drake & Kallas and Spector Roseman & Kodroff simply have different views about the composition of the leadership structure. The important point is that Whatley Drake & Kallas from the first meeting indicated an interest in serving in a leadership capacity. Additionally, at the November 2007 meeting, I indicated that our

firm would accept the chair of a committee rather than seek a co-lead position. Because there would be no executive committee, the committee chairs would work directly with co-leads in prosecution of the case. We left this meeting with an understanding that there would be four co-leads and that our firm would serve as the chair of a committee.

4.     After the November 2007 meeting, there was no follow-up meeting to discuss leadership structure that involved Whatley Drake & Kallas. We learned about the decision to push for an executive committee and two co-leads after the firms proposed for such position had already been selected.

5.     The declaration from Wolf Haldenstein implies that Whatley Drake & Kallas "entered the case at a much later date" and that appointing Whatley Drake & Kallas to the executive committee would not be fair or equitable. Whatley Drake & Kallas filed a complaint on behalf of West Alabama Sand and Gravel on June 22, 2007 and prior to the first MDL petition which was filed on June 25, 2007. Indeed, West Alabama Sand & Gravel was listed as one of the cases on the MDL transfer list. The first case filed in this litigation was on May 14, 2007 in District of New Jersey. The first case filed in the District of Columbia was on June 15, 2007. Though Whatley Drake & Kallas did not file the first case, it is not accurate to state that West Alabama Sand & Gravel filed at a much later date than other filings.

6.     The declarations from other firms set forth qualifications that they argue would support their claim for a position on the executive committee. They state that they deliberately made a decision to step aside and not push for a co-lead or executive committee position. Apparently, they were consulted about the structure of an executive committee prior to the proposal to appoint the five firms currently under consideration.

2

Whatley Drake & Kallas, however, was not informed of the decision to create an executive committee nor allowed a voice on the composition of such committee. Given Whatley Drake & Kallas' involvement in the earlier discussions it is difficult to understand this oversight. The argument that it would be unfair to appoint another firm to the executive committee assumes that there was an open discussion about the composition of the committee.

7. I certify under penalty of perjury that the forgoing is true and correct. Executed on this the 25th day of March, 2008.

/s/ Richard P. Rouco
Richard P. Rouco

4

**CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the above document, filed through the ECF system, will be served electronically through the ECF System on the email-registered participants as identified on the Notice of Electronic Filing ("NEF") on March 25, 2008.

/s/ Richard P. Rouco
OF COUNSEL

4