**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL Docket No. 1869 Misc. No. 07-489 (PLF) |
| This document relates to: ALL CASES | |

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants BNSF Railway Company, CSX Transportation, Inc., Norfolk Southern Railway Company, and Union Pacific Railroad Company (collectively, "defendants") respectfully move this Court for the entry of a protective order to defer discovery — including but not limited to production of documents in response to direct purchaser plaintiffs' First Request for Production of Documents (attached as Exhibit 1) — during the pendency of defendants' motions to dismiss under Rule 12(b)(6) to be filed pursuant to the Court's scheduling order. Defendants also request that their obligation under Rule 34 to serve objections and responses to the Document Requests also be deferred until such time as the Court rules that discovery may commence. Defendants submit this memorandum of law in support of their motion.

## INTRODUCTION

When a complaint is subject to a motion to dismiss that may dispose of the entire case, and plaintiffs have no need for discovery to oppose the dismissal motion and will suffer no prejudice as a consequence, a court should stay discovery until the motion is resolved. *See*, *e.g.*,

*Chavous v. D.C. Financial Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 4-5 (D.D.C. 2001).  The wisdom of that approach in a Sherman Act Section 1 case such as this one has become even more apparent in the wake of the Supreme Court's recent decision in *Twombly v. Bell Atlantic Corp.*, 127 S. Ct. 1955 (2007).  There, in the course of holding that a Section 1 claim cannot survive a Rule 12(b)(6) motion unless it provides "enough factual matter (taken as true) to suggest that an agreement was made," *id*. at 1965, the Court identified the avoidance of unnecessary discovery as a reason for "'insist[ing] upon some specificity in pleading.'"  *Id*. at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

Here, all the factors that support a discovery stay are present.  *First*, as the Court is aware, defendants will soon file motions under Rule 12(b)(6) to dismiss the Direct Purchaser Complaint (DPC) and the Indirect Purchaser Complaint (IPC) in their entirety, on the ground that plaintiffs have not satisfied the pleading standard for Section 1 cases established in *Twombly*.  Distilled to their essence, the complaints purport to allege that defendants adopted parallel fuel surcharges, but because the complaints fail to adequately allege factual material that "raises a suggestion of a preceding agreement" to do so (*id*. at 1966), plaintiffs cannot "nudge[] their claims across the line from conceivable to plausible."  *Id*. at 1974.  While defendants firmly believe that their arguments ultimately will be successful, by any measure the motions will be serious ones that merit careful consideration upon full briefing and argument.  Accordingly, defendants satisfy the first basis for granting a stay of discovery.

*Second*, as the Court observed at the March 7 Status Conference (*see* Transcript ("Tr."), attached as Exhibit 2, at 34:24-35:1), discovery is unnecessary in connection with a Rule 12(b)(6) motion, which is limited to testing the legal sufficiency of the allegations in the

complaint.  Plaintiffs conceded as much at the Status Conference, stating that they have no need for discovery to improve their complaint. Ex. 2, Tr. at 37:16-17.  To be sure, plaintiffs have claimed that they want discovery now to prevent the case from getting "stale while motions are pending," *id*. at 37:18-19, but they cannot identify any substantive or procedural interest served by obtaining documents during this time.  Any concern that initial motion practice will cause the case to drag on for a lengthy period of time is misplaced, as the motions to dismiss will be fully briefed by August 7 and (we anticipate) argued by mid-September.  Likewise, preservation of documents is not an issue, as defendants are subject to a preservation order originally entered in New Jersey that remains in effect in this Court.[1]  If the case is allowed to proceed, discovery can commence in due course.  Thus, plaintiffs will not be prejudiced in the least by a stay of discovery.  Defendants easily satisfy the second basis for granting a stay.

Plaintiffs undoubtedly will argue that they have served a narrowly tailored document request that would impose only minimal burden on defendants.  But even if that were an accurate characterization of the request, the degree of burden is not an appropriate test for commencing discovery that is otherwise premature and unnecessary.  Whether the document requests would require defendants to copy a single CD or produce a truckload of paper, the absence of any need or risk of prejudice renders a "lack of burden" argument beside the point.  As one district court observed in a post-*Twombly* ruling, even where there is a minimal burden associated with compliance, "adjudicating the motions to dismiss will shed light on the best course for discovery."  *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at * 5 (N.D.

---

[1]  *See* Initial Practice and Procedure Order, Jan. 31, 2008, Dkt. #34, ¶ 11 ("Any orders, including protective orders, previously entered by any transferor district court shall remain in full force and effect unless modified by this Court upon application.").  The New Jersey preservation order was tendered to the Court during the March 7 status conference, and was filed on April 29, 2008 (Dkt. # 101).

Cal. July 24, 2007) (granting stay of discovery).  That was especially true where the plaintiffs had "no urgent need for immediate discovery."  *Id.*[2]

In short, given the imminence of defendants' dismissal motions and the lack of any need for discovery to adjudicate them, this Court would act squarely within established precedent in deciding now to defer all discovery until the motions to dismiss are resolved.  Alternatively, the Court could defer a ruling on the motion for a protective order until briefing of the motions to dismiss is completed and the Court has an opportunity to consider those motions on a full record.[3]  Particularly after *Twombly*, "[t]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome."  *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis in original) (quoted favorably in *Twombly*, 127 S. Ct. at 1966).

## BACKGROUND

Plaintiff Dust Pro, Inc. filed the first complaint alleging a conspiracy to fix rail fuel surcharges, in the District of New Jersey, on May 14, 2007.  During the next several months, additional complaints raising similar allegations were filed by direct and indirect purchaser plaintiffs in various district courts around the country.  On November 6, 2007, the Judicial Panel

---

[2]  The document requests seek material produced in conjunction with a New Jersey investigation of rail fuel surcharges whose existence may — as defense counsel noted at the March 7 Status Conference and plaintiffs' counsel did not controvert, *see* Ex. 2, Tr. at 41-42 — be traced to plaintiffs themselves.  Unlike the typical pattern where private complaints are filed in the aftermath of a government investigation, here the private complaints preceded the New Jersey investigation.  It is ironic, to say the least, for plaintiffs to claim at this stage of the proceeding that they are entitled to documents arising from an investigation they may have instigated.  In these circumstances, a stay of interim discovery that seeks in large part to piggyback on that investigation is an entirely proper outcome.  Plaintiffs also ask for documents provided to the Surface Transportation Board that are publicly available on the STB's website.

[3]  In that connection, defendants further suggest — should it suit the Court's convenience — that oral argument on both the motions to dismiss and for a protective order could be scheduled at the same time.

on Multidistrict Litigation entered an order consolidating all the pending rail fuel surcharge cases and transferring them to this Court for coordinated pretrial proceedings.  The Court issued an Initial Practice and Procedure Order on January 31, 2008 (Dkt. # 34), held an initial status conference on March 7, and appointed interim co-lead counsel for both sets of plaintiffs shortly thereafter.

The direct and indirect purchasers submitted their amended consolidated complaints on April 15.  *See* Dkt. ## 91, 93.  The complaints, which in substance are largely identical, allege that the defendant freight railroads "conspired to use rail fuel surcharges, which were added to customers' bills, as a means to fix, raise, maintain, and/or stabilize prices of rail freight transportation services sold in the United States," in violation of Section 1 of the Sherman Act and/or various state laws.  DPC ¶ 2; *see also* IPC ¶ 2.

At their core, the complaints purport to allege parallel conduct supplemented with generic allegations of "agreement."  Thus, the conspiracy is alleged to have started in mid-2003, when defendants BNSF and UP "agreed to implement the same fuel surcharge program, resulting in the exact same fuel surcharges."  DPC ¶ 7.  Later, plaintiffs allege, CSX and NS also implemented fuel surcharge programs that were identical to each others' (although different from the programs of BNSF and UP), and that all defendants applied their surcharges in the same way, that is, as a percentage of the base freight rate.  *Id.* ¶¶ 12, 13.  Plaintiffs' overarching theory appears to be summed up in paragraph 83 of the Direct Purchaser Complaint and paragraph 89 of the Indirect Purchaser Complaint:  "The fact that Defendants moved in uniform lockstep for a period of nearly 38 months indicates that Defendants were coordinating their behavior and conspired to fix prices for Rail Fuel Surcharges."[4]

---

[4]  The complaints purport to provide additional factual context suggesting that the parallel action resulted from agreement, but the effort is, as we will explain in detail in our motions to dismiss,

(cont'd)

At the status conference on March 7, counsel on behalf of the railroads made it clear that the defendants would file motions to dismiss under Rule 12(b)(6) on the authority of the *Twombly* decision. Ex. 2, Tr. at 38. The Court asked the parties to confer on a schedule for briefing and oral argument on the motions, suggesting that argument could take place during September. The parties submitted a stipulated amended schedule on April 8, 2008, which has defendants' opening briefs due May 30, plaintiffs' opposition brief due July 8, defendants' reply briefs due August 7, and proposes several dates in early to mid-September for argument. *See* Dkt. # 90.

Despite the certainty that defendants would file fully dispositive motions to dismiss, plaintiffs served document requests on March 15. Plaintiffs seek two general categories of documents:

- All documents provided by defendants to the New Jersey Office of the Attorney General in connection with a grand jury investigation of rail fuel surcharges, and any documents provided by defendants to any other state or federal law enforcement agency in connection with an investigation related to rail fuel surcharges; and

- All documents concerning rail fuel surcharges provided by defendants to the Surface Transportation Board during a specified three-year period.

---

entirely unavailing. For example, plaintiffs assert that the railroads "conspired" to cause their trade association, the Association of American Railroads (AAR), to publish a new cost escalation index in January 2004 that differed from another of AAR's longstanding indices in that it excluded fuel as a component. DPC ¶ 66. This allegedly enabled the railroads to "begin assessing separate, stand-alone Rail Fuel Surcharges." DPC ¶ 67. There are many reasons why this allegation fails, not least of which is that publication of the new index came *after* the railroads already had announced purportedly parallel fuel surcharges, *see* DPC ¶¶ 57, 59, and thus it does not show that the railroads' decisions to announce surcharges resulted from agreement rather than lawful independent action.

Plaintiffs made clear that they did not need this discovery "for the purpose of getting information to put into the complaint." Ex. 2, Tr. at 37:16-17. Nor did they ask for the discovery in order to litigate the motion to dismiss; indeed, as the Court observed, discovery is generally unnecessary in the context of a Rule 12(b)(6) motion. *Id*. at 34:24-35:1. Rather, plaintiffs stated that discovery should occur for the vague purpose of "allow[ing] at least something to move forward given that these cases have now been pending for almost a year," *id*. at 36:22-23 — even though, as noted above, the Court has indicated that argument on the motions could take place in September, the operative complaints in this proceeding were filed on April 15, 2008, and those amended consolidated complaints differed in material respects from prior individual complaints.

The parties' agreed schedule submitted on April 8 (Dkt. # 90) also provides that defendants' date for serving responses to the discovery was extended until April 30. Defendants now seek a protective order to prevent plaintiffs from taking any discovery until after the motions to dismiss are decided, and to defer defendants' obligation under Rule 34 to respond or object to the specific document requests until such time as the Court may permit discovery to commence.

## **ARGUMENT**

### A.     **A Stay Of Discovery Is Appropriate When A Substantial Dispositive Motion Is Filed And There Is No Need For The Discovery To Adjudicate The Motion**

Rule 26(c) of the Federal Rules of Civil Procedure empowers district courts to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In accordance with this rule, courts have broad discretion to manage discovery. *See United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1382 (D.C. Cir. 1984) (stay of discovery pending disposition of a motion to dismiss was not an abuse of discretion). *See also*

*Herbert v. Lando*, 441 U.S. 153, 177 (1979) (judges should "exercise appropriate control over the discovery process").

Judicial management of discovery is particularly warranted when a plaintiff seeks to commence discovery in the face of a defense motion that may result in dismissal of the entire case. Thus, courts in this district have deemed it to be "well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." *Anderson v. U.S. Attorneys Office*, 1992 WL 159186, at *1 (D.D.C. June 19, 1992). *See also Chavous*, 201 F.R.D. at 2 (quoting *Anderson* with approval); *Maljack Prod., Inc. v. Motion Picture Ass'n of Am.*, 1990 WL 157900, at * 1 (D.D.C. Oct. 3, 1990) ("avoidance of potentially unnecessary discovery is warranted" where a motion to dismiss is pending and plaintiff would not be prejudiced by a stay of discovery pending determination of the motion to dismiss); *Capital Eng'g & Mfg. Co. v. Weinberger*, 1988 WL 13272, at *1 (D.D.C. Feb. 5, 1988) ("courts have not hesitated to stay discovery as to the merits of an action pending initial consideration of preliminary, and potentially dispositive, motions"); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 & n.4 (N.D. Ill. 2005) (stays pending a dispositive motion "are granted with substantial frequency") (providing extensive citations); 8 Wright & Miller, *Federal Practice & Procedure* § 2040, at 521-22 (2d ed. 1994) ("a court may decide that in a particular case it would be wise to stay discovery on the merits until [certain challenges] have been resolved").

As explained in *Chavous*, postponing discovery pending resolution of a dispositive motion "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." 201 F.R.D. at 2 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979)). In any event, in

determining whether the filing of a motion to dismiss warrants a stay of discovery, a court should have an opportunity to analyze the issues raised in the motion to determine whether the defendant has a substantial argument for dismissal. *Sulfuric Acid*, 231 F.R.D. at 338 n.7.

The absence of any need for discovery to adjudicate the dispositive motion also weighs in favor of a stay. *See Chavous*, 201 F.R.D. at 5 (granting stay where plaintiff had moved for summary judgment and defendants had moved to dismiss, and therefore plaintiff had no need for discovery); *Sulfuric Acid*, 231 F.R.D. at 338 (plaintiff has no need for discovery to respond to a Rule 12(b)(6) motion, and therefore a stay is appropriate). The court "must balance the harm produced by a delay in discovery against the possibility that [a dispositive] motion will be granted and entirely eliminate the need for such discovery," *Chavous*, 201 F.R.D. at 3 (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)), but when there is no need for discovery, and there is no concern about the ultimate availability of relevant documents, there is no likelihood of prejudice from an interim stay.

**B.    A Stay Of Discovery Is Particularly Appropriate Here, Where Defendants Will File Substantial And Dispositive Motions To Dismiss**

There is a particularly compelling reason to grant a stay of discovery in this case. Defendants' motions to dismiss will rely on the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), which held that a Section 1 complaint cannot rest only upon allegedly parallel conduct, but instead must provide "plausible grounds to infer an agreement" respecting the conduct at issue. *Id.* at 1965. This pleading standard, moreover, was explicitly designed to ensure that flaws in the complaint are "exposed at the point of minimum expenditure of time and money by the parties and the court" (*id.* at 1966, internal quotation marks omitted) — in other words, before discovery commences. *Id.* at 1967. In view of the similarities between the complaints in *Twombly* and this proceeding, as well as *Twombly*'s

explicit recognition of a link between the pleading standard and the availability of discovery in complex antitrust cases, this is precisely the kind of case in which discovery should be stayed pending a decision on the motions to dismiss.

In *Twombly,* the plaintiffs brought a class action alleging that incumbent local telephone companies (the former "Baby Bells") conspired to prevent new entry by "upstart" competitors and agreed to refrain from competing against one another outside their traditional territories. 127 S. Ct. at 1962. The issue before the Court was, quite simply, "what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act." *Id*. at 1964.

After observing that Federal Rule of Civil Procedure 8(a)(2) generally requires factual allegations sufficient to "raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, the Court considered how this principle applies in the context of a claim of horizontal conspiracy. As a matter of substantive antitrust law, antitrust claims cannot be based on ambiguous conduct that is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Id*. at 1964. It follows that "lawful parallel conduct fails to bespeak unlawful agreement." *Id*. at 1966. To state a claim under § 1, where the existence of an agreement is the touchstone, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Id*. at 1965. And "when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that would just as well be independent action." *Id*. at 1966. A close review of the complaint revealed that the lengthy pleading ultimately was focused on parallel behavior or otherwise ambiguous behavior that was equally consistent with independent decisionmaking,

notwithstanding extensive conclusory allegations that the defendants' actions were so anomalous that conspiracy was the only possible explanation. *Id*. at 1970-73.

Since *Twombly* was decided, courts have carefully scrutinized complaints that allege a conspiracy in violation of Section 1, and in many cases (though, we acknowledge, not all) have granted motions to dismiss in whole or in part. *See*, *e.g.*, *In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 2008 WL 899228 (D. Conn. March 12, 2008); *Southeast Missouri Hosp. v. C.R. Bard, Inc.*, 2008 U.S. Dist. LEXIS 4480 (E.D. Mo. Jan. 22, 2008); *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556 (S.D.N.Y. 2007); *Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research, Inc.*, 516 F. Supp. 2d 270 (S.D.N.Y. 2007); *In re Insurance Brokerage Antitrust Litig.*, 2007 WL 2533989 (D.N.J. Aug. 31, 2007); *Schafer v. State Farm & Cas. Co.*, 507 F. Supp. 2d 587 (E.D. La. 2007); *In re Travel Agent Comm'n Antitrust Litig.*, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953 (N.D. Cal. 2007); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007); *Shames v. Hertz Corp.*, No. 07-CV-2174-H-BLM (S.D. Cal. Apr. 8, 2008) (attached as Ex. 3).

Defendants will explain in detail in their motions to dismiss why the complaints in this action cannot pass muster under *Twombly*. Suffice it to say that even a cursory look at the complaints reveals that they are rife with allegations of conduct that can as easily be explained by independent firms responding to dramatically increasing fuel prices as by conspiracy. Given the direct applicability of *Twombly* to a complaint of this sort, defendants' motions will, by any reasonable measure, be the kind of substantial dispositive motions that warrant postponing discovery.

Not only does a review of the complaints show that defendants' motions to dismiss will be substantial enough to warrant a stay under pre-*Twombly* practice in this and other courts, *Twombly* itself suggests that it is appropriate to determine whether the plaintiff satisfies the applicable pleading standard before allowing the parties to launch into discovery. Alluding to the "practical significance" of its interpretation of Rule 8 in the context of pleading a Section 1 claim, the Court stated that in antitrust cases, as in other types of complex litigation, a pleading standard that demands "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement" (127 S. Ct. at 1965) ensures that parties are not launched into what ultimately might be unnecessary and wasteful discovery. *Id.*

Other courts have been quick to acknowledge *Twombly*'s emphasis on the importance of examining a complaint's sufficiency before discovery moves forward in an antitrust case. In *Graphics Processing Units*, the court recognized that "to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*, at least when the discovery would be burdensome." 2007 WL 2127577, at *4. And even where "discovery would not be so burdensome," the court observed, the "question call[s] for the exercise of discretion and the balancing of competing factors." *Id.* Noting that the plaintiffs had "no urgent need for immediate discovery" because there was no request for provisional relief and no need to preserve the testimony of an ill witness, the court decided that "adjudicating the motions to dismiss will shed light on the best course for discovery." *Id.* at *5.[5] *See also In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) (interpreting *Twombly* as recognizing "that staying

---

[5] The court in *Graphics Processing* contrasted the complaint before it with a complaint that is "almost certain" to be viable, such as one filed after guilty pleas have already been entered in a parallel criminal case. 2007 WL 2127577, at *5. Here, of course, there are no guilty pleas, and the initial complaints were filed before the commencement of the New Jersey investigation. *See supra* at 4 n.2.

discovery may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming and expensive"). Indeed, in two post-*Twombly* decisions, courts confronted with complaints alleging collusion in the adoption of similar fuel surcharges in other industries have granted stays of discovery. *See* Order of July 26, 2007 (Dkt. # 530), *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775-JG (E.D.N.Y.) (attached as Ex. 4); Order of April 22, 2008 (Dkt. # 224), *In re LTL Shipping Servs. Antitrust Litig.*, No. 08-MD-1895-WSD (N.D. Ga.) (attached as Ex. 5).

Similarly, the Second Circuit has emphasized the prudence of closely examining complaints before proceeding with discovery on the merits in an antitrust action. In *In re Elevator Antitrust Litigation*, that court affirmed a district court's dismissal of a complaint because the complaint did not "contain 'enough factual matter (taken as true) to suggest that an agreement [to engage in anticompetitive conduct] was made.'" 502 F.3d at 50 (quoting *Twombly*, 127 S. Ct. at 1965). The court also noted that the discovery costs entailed in antitrust litigation particularly heightened the importance of examining the merits of complaints before permitting discovery. *Id.* at 50 n.4.

*Twombly* thus reinforces longstanding precedent encouraging district courts to scrutinize the validity of a complaint in a complex antitrust action before permitting the case to proceed to the discovery stage, especially where there is no pressing need for the discovery to respond to a dispositive motion. *See* 127 S. Ct. at 1967 (emphasizing that district courts should fully enforce the appropriate pleading standards at the motion to dismiss stage "before allowing a potentially massive factual controversy to proceed" to the discovery stage). Indeed, in the face of what the plaintiffs there characterized as limited discovery requests, District Judge Lynch, for reasons similar to those advanced by defendants herein, granted a stay of discovery in *Twombly* while the

Rule 12(b)(6) motion was briefed. *See* Tr. of May 29, 2003 Hearing in *Twombly v. Bell Atlantic Corp.*, No. CV-02-10220 (GEL) (S.D.N.Y.), at 6 (attached as Ex. 6) (observing that where the defendants' motion to dismiss was "sufficiently substantial" and was "on a relatively fast track to decision," and plaintiffs had no immediate need for any discovery, plaintiffs' request to commence discovery would be denied). The advisability of that action, of course, was confirmed by the Supreme Court's subsequent emphasis on the importance of testing an antitrust complaint before discovery begins.

**C.     Plaintiffs Have No Need For Discovery At This Stage, And Therefore A Stay Will Result In No Prejudice**

Staying discovery while the Court considers the dismissal motion also will work no hardship on plaintiffs, because plaintiffs have no need for defendants' documents to respond to the motion. *See Chavous*, 201 F.R.D. at 5 (recognizing the propriety of staying discovery pending resolution of a dispositive motion where "the party who seeks discovery would not be prejudiced by a stay" and discovery is not needed to oppose the motion); *Maljack*, 1990 WL 157900, at *1 (holding that "avoidance of potentially unnecessary discovery is warranted" pending resolution of a motion to dismiss where the plaintiff would not be prejudiced by the stay).

As the Court observed at the March 7 Status Conference, a Rule 12(b)(6) motion "rises or falls on the four corners of the complaint." Ex. 2, Tr. at 34:24-35:1. Discovery certainly will not be needed to contest the motions to dismiss, which will take all well-pleaded factual allegations as true, and test only the legal sufficiency of those allegations. Plaintiffs themselves conceded at the recent Status Conference that they have no need for the discovery in connection with the motions to dismiss. *Id.* at 37:16-17.

The only reason plaintiffs have articulated for starting discovery is what might be described as housekeeping: "to keep the case moving forward" so that "this case isn't allowed to get stale." Ex. 2, Tr. at 36:22, 37:18. However, this consideration — whatever its abstract appeal — is not part of the established standard governing the discretionary exercise of a district court's management of discovery during the pendency of a dismissal motion. And it is doubly insufficient in view of *Twombly*'s concern about prematurely launching parties into discovery in Section 1 cases before the pleading has been judged adequate.

Plaintiffs do not, in any event, have any legitimate claim that the case will get "stale" while the motions are pending. The operative complaints herein were filed just over two weeks ago, and the motions to dismiss will, by agreement of the parties, be fully briefed by August 7 and argued in September. Should the motions to dismiss be denied, discovery can proceed thereafter with plaintiffs having suffered no intervening prejudice. Even where briefing proceeded at what the court termed a "leisurely" pace, a district court rejected an attempt to justify premature discovery as a means of speeding up the case. *See Graphics Processing Units*, 2007 WL 2127577, at *5. In addition, this is also not a situation in which preliminary discovery is necessary to preserve information; as plaintiffs well know, the stipulated preservation order originally entered in the District of New Jersey remains in effect here (*see* Dkt. #34, ¶ 11, Dkt. # 101), so the modest discovery delay sought by this motion does not present a risk of lost information. In short, this case falls comfortably within the class of cases in which it is proper to stay discovery pending resolution of a dispositive motion to dismiss.

**D.    A Stay Should Be Granted Notwithstanding The Amount of Discovery Sought By Plaintiffs**

Perhaps recognizing the compelling logic and precedent warranting a stay of discovery until resolution of motions to dismiss in this action, plaintiffs have tendered a discovery request

which they characterize as not imposing any "new" burden on defendants. Ex. 2, Tr. at 37:4. Plaintiffs seem to be proceeding under the misguided notion that arguably limiting defendants' production burden and expense allows them to circumvent recognized discovery management policies requiring a need for the requested materials at this stage of the proceedings. That plaintiffs have asked for less discovery than they might otherwise have demanded, however, does not make their discovery requests any less premature or unwarranted.

As is aptly illustrated by the excerpt from Judge Lynch's comments in *Twombly* (*supra* at 13), plaintiffs' premise that less expense or burden than some imaginary threshold of "too much" expense or burden redeems their discovery requests is fatally flawed. Here, *any* expense or burden is unwarranted in the absence of demonstrated need or prejudice. That is the governing rule. As Judge Lynch observed, in the face of a substantial motion to dismiss, defendants are under no requirement to even copy documents that have already been produced in other identified or unidentified proceedings. Ex. 6.[6]

Plaintiffs' own acknowledgement that they have no present need for discovery (Ex. 2, Tr. at 37:16-17) undermines any contention that the quantum of discovery is relevant. A similar attempt to subvert the principles espoused by this Court in *Chavous* and the Supreme Court in *Twombly* was recently rejected in the *Graphics Processing Units* litigation. There, the plaintiffs sought "the same discovery already gathered, assembled, and produced to the government" in connection with a Department of Justice investigation, meaning that "the incremental cost to produce a duplicate set to plaintiffs' counsel would be minor in the overall picture." 2007 WL 2127577, at *5. Notwithstanding this arguably diminished burden on the defendants, the court

---

[6] Here, plaintiffs seek all documents produced to the Surface Transportation Board "or to any other governmental authority" in connection with fuel surcharges. We have previously noted the inappropriateness of requiring defendants to produce at this time materials provided to investigators in the state of New Jersey. *See supra* at 4 n.2.

held that it was advisable to stay discovery because it remained to be seen whether the complaint was viable and the plaintiffs had no persuasive need for immediate discovery.  *Id.*  As the court concluded, "the compelled act of turning records over to the government pursuant to [a] subpoena does not mean that everyone else has an equal right to rummage through the same records."  *Id.*  While a defendant's right to the confidentiality of its records "may eventually have to yield to civil discovery interests . . ., whether and the extent to which this should occur will be best decided after ruling on the Rule 12 motion[]."  *Id.*

This Court should follow the same approach.  Indeed, plaintiffs' inability to specify a good reason for seeking the confidential business documents produced by defendants to New Jersey (or any other authority, for that matter), aside from an asserted desire to "get started" pending resolution of the motions to dismiss, should give this Court pause.  Plaintiffs filed their consolidated amended complaints only two weeks ago.  The parties have submitted an agreed briefing schedule, and the Court has indicated that argument will occur by mid-September.  Permitting plaintiffs' discovery to go forward in the circumstances presented here would serve no substantial purpose and would risk encouraging future plaintiffs to use the discovery process as a device to bolster baseless, speculative complaints — a result discouraged by the rules governing discovery.  *See* 4 Moore's Federal Practice ¶ 26.56[1] at 26-95 n.3 ("[D]iscovery cannot be used as a vehicle for discovering a right of action."); *Edwards v. Gordon & Co.*, 94 F.R.D. 584, 586 (D.D.C. 1982) ("Discovery . . . should be confined to developing facts underlying a plaintiff's claim or claims and not used as a 'fishing expedition' to discover what else may be amiss or to develop wholly new claims unrelated to what is averred in the complaint.").  While plaintiffs have disclaimed such a motive, they also have failed to

demonstrate any need for imposing discovery — of whatever scope — on defendants prior to the resolution of potentially dispositive motions.

## CONCLUSION

For the foregoing reasons, defendants respectfully submit that the Court should grant their motion for a protective order at this time, or, alternatively, defer a ruling on the motion for a protective order until briefing of the motions to dismiss is completed and the Court has an opportunity to consider those motions on a full record.  In addition, any obligation by defendants to respond or object to the document requests served by plaintiffs on March 15, 2008 should be deferred until such time as the Court may permit discovery to commence.

Dated: April 30, 2008                                    Respectfully submitted,


                                                         /s/ Gary A. Winters_____
                                                         Richard J. Favretto (D.C. Bar #156588)
                                                         Mark W. Ryan (D.C. Bar #359098)
                                                         Gary A. Winters (D.C. Bar #439376)
                                                         MAYER BROWN LLP
                                                         1909 K Street, N.W.
                                                         Washington, D.C. 20006
                                                         (202) 263-3000

                                                         *Attorneys for Defendant BNSF Railway Company*

                                                         Richard McMillan, Jr.
                                                         Kent A. Gardiner
                                                         Kathryn D. Kirmayer
                                                         CROWELL & MORING LLP
                                                         1101 Pennsylvania Avenue, N.W.
                                                         Washington, D.C. 20004
                                                         (202) 628-5116

                                                         *Attorneys for Defendant CSX Transportation, Inc.*

Alan M. Wiseman
Joseph A. Ostoyich
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

Tyrone R. Childress
David G. Meyer
HOWREY LLP
550 South Hope Street, Suite 110
Los Angeles, CA 90071
(213) 892-1800

*Attorneys for Defendant Union Pacific*
*Railroad Company*

John M. Nannes
Tara Reinhart
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

*Attorneys for Defendant Norfolk Southern*
*Railway Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Gary A. Winters, an attorney, certify that on April 30, 2008, I caused true and correct copies of the foregoing Defendants' Motion for Protective Order and Memorandum of Law in Support to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to co-lead counsel for all plaintiffs.

/s/ Gary Winters_____

EXHIBIT  1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL Docket No. 1869 Misc. No. 07-489 (PLF) |
| This document relates to: | |
| ALL CASES | |

**DIRECT PURCHASER PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO
DEFENDANT BNSF RAILWAY COMPANY**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, interim class counsel for the proposed class of direct purchaser plaintiffs requests that Defendant BNSF Railway Company ("BNSF") answer the following requests for production. Responses to these requests should be served on a rolling basis and no later than April 25, 2008.

**DEFINITIONS AND INSTRUCTIONS**

These Requests For Production are subject to and incorporate the following definitions and instructions as used herein:

1.    "BNSF", "you" or "Defendant" means BNSF Railway Company, and any of its corporate parents, subsidiaries, affiliates, divisions, departments, predecessors or successors, and any of its present or former officers, directors, employees, members, representatives or any others acting on its behalf.

2.    "Rail fuel surcharge" means a separately-identified component of the total rate charged for rail freight transportation, purportedly to recoup increases in the rail carrier's fuel costs.

3.     "Document" means without limitation, the original and all non-identical copies of all items subject to discovery under Rule 34 of the Federal Rules of Civil Procedure.  This definition includes, without limitation, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, summaries, records of telephone conversations, telegrams, facsimile transmissions and receipts, notes, reports, compilations, notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, audiotapes, film and sound reproductions, sales, advertising and promotional literature, agreements, stored recordings, minutes or other records of meetings, all written or graphic records or representations of any kind, and mechanical representations of any kind.

4.     "Electronically stored information" includes, without limitation, the following:

a.     information that is generated, received, processed, and recorded by computers and other electronic devices;

b.     internal or external web sites;

c.     output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger™ (or similar program) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

d.     activity listings of electronic mail receipts and/or transmittals; and

e.     any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or in any other vehicle for digital data storage or

transmittal, such as, but not limited to, a personal digital assistant, *e.g.*, Palm Pilot, Blackberry, or similar device, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

5. "Regarding" or "evidencing" means concerning, containing, describing, discussing, embodying, commenting upon, identifying, incorporating, referring to, relating to, summarizing, constituting, comprising or otherwise pertinent to the matter or any aspect thereof.

6. The terms "all" and "each" shall be construed as "all and each."

7. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8. The use of the singular form of any word includes the plural and vice versa.

9. Plaintiffs request that documents or electronically stored information be produced in the same manner that they were provided to the New Jersey Office of the Attorney General, Surface Transportation Board, or any other government agency. In the alternative, Plaintiffs request that documents or electronically stored information be produced in the same file or other organizational environment in which they are maintained in the ordinary course of business. For example, a document that is part of a file, docket, or other grouping should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original. Additionally, each document should be produced stapled, clipped, or otherwise bound or connected in the same manner as the original.

10. Color copies of documents are to be produced where color is necessary to interpret or understand the contents.

11.    If no documents or electronically stored information exist that are responsive to a particular request, that fact should be stated in each of Defendant's responses to such requests.

12.    Separately with respect to each piece of information called for by these requests which is withheld under a claim of privilege or otherwise, provide an explanation of the claim being asserted and a description of the information withheld in accordance with Fed. R. Civ. P. 26(b)(5).

13.    If a document or group of documents or electronically stored information responsive to these requests once existed, but has been destroyed or discarded, for each such document or group of documents or electronically stored information, identify the document or group of documents or electronically stored information, state when the document or group of documents or electronically stored information was destroyed or discarded, state why the document or group of documents or electronically stored information was destroyed or discarded, and identify the persons most knowledgeable about the contents of the document or group of documents or electronically stored information and the circumstances under which the document or group of documents or electronically stored information was destroyed or discarded.

14.    Unless otherwise indicated in a particular request, the requests are not date or time limited.

15.    The obligation to provide the information sought by these requests for production is continuing within the requirement of Fed. R. Civ. P. 26(e).

## REQUESTS FOR PRODUCTION AND DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1

All documents or electronically stored information provided by Defendant to the New Jersey Office of the Attorney General in connection with a grand jury investigation of rail fuel surcharges, or to any other state or federal law enforcement agency in connection with an investigation or inquiry related to rail fuel surcharges.

### REQUEST FOR PRODUCTION NO. 2

All documents or electronically stored information, concerning rail fuel surcharges, provided by Defendant between May 1, 2003 and May 1, 2006 (inclusive) to the Surface Transportation Board.

DATED:      March 14, 2008

| By: /s/ Stephen Neuwirth | By: /s/ Michael D. Hausfeld |
|---|---|
| Stephen Neuwirth<br>Daniel Brockett<br>Sami H. Rashid<br>QUINN EMANUEL URQUHART OLIVER<br>& HEDGES, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>(212) 849-7000 | Michael D. Hausfeld (D.C. Bar #153742)<br>Benjamin D. Brown (D.C. Bar #495836)<br>COHEN, MILSTEIN, HAUSFELD & TOLL,<br>P.L.L.C.<br>1100 New York Avenue NW<br>Suite 500, West Tower<br>Washington, DC 20005<br>(202) 408-4600 |
| *Interim Co-Lead Class Counsel<br>for the proposed direct purchaser class* | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 14th day of March, 2008, a copy of the foregoing document requests was served on counsel for the Defendant via e-mail and Federal Express.

/s/ Sami H. Rashid
Sami H. Rashid

EXHIBIT 2

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
     IN RE: RAIL FREIGHT FUEL      . Docket No. Misc. 07-489
 3   SURCHARGE ANTITRUST           .
     LITIGATION - MDS 1869         .
 4                                 .
                                   .
 5                                 . Washington, D.C.
                                   . March 7, 2008
 6   . . . . . . . . . . . . . . . . . 10:00 a.m.

 7                   TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE PAUL L. FRIEDMAN
 8                    UNITED STATES DISTRICT JUDGE
     APPEARANCES:
 9   For the Plaintiffs:       Roger M. Adelman, Esquire
                               Michael D. Hausfeld, Esquire
10                             Paul M. Donovan, Esquire
                               Joe R. Whatley, Jr., Esquire
11                             Richard P. Rouco, Esquire
                               William M. Audet, Esquire
12                             Gary E. Mason, Esquire
                               Matthew H. Armstrong, Esquire
13                             Stephen R. Neuwirth, Esquire
                               Christopher Lovell, Esquire
14                             John Crow, Esquire
                               Reginald Terrell, Esquire
15                             Daniel Brocket, Esquire

16   For the Defendants:       Gary A. Winters, Esquire
                               Richard J. Favretto, Esquire
17                             Alan M. Wiseman, Esquire
                               Tyrone R. Childress, Esquire
18                             David Gelfand, Esquire
                               John M. Nannes, Esquire
19                             Kent A. Gardiner, Esquire
                               Michael S. Gugig, Esquire
20
     Also Present:            Thomas V. Bender, Esquire
21                            David M. Peterson, Esquire

22   Court Reporter:          Linda L. Russo, RPR
                              Official Court Reporter
23                            Room 6403, U.S. Courthouse
                              Washington, D.C. 20001
24                            202.354.3244

25   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription
```

1    motion invoking, among other things, the Supreme Court's recent

2    decision in the co-called Twombly case.

3            We believe that the complaints that have been

4    developed to date already include sufficient allegations to be

5    able to overcome the Twombly motion.  We know that the

6    defendants will have a different view about that, but this is

7    not a situation that has come up in some cases where the

8    plaintiffs are saying to the Court, give us discovery so that

9    we can file a better amended complaint to survive that

10   anticipated motion.

11           We believe that the complaints that we filed talk

12   about very specific meetings in December of 2003, and that

13   period that the defendants had at the Association of American

14   Railroads where they made a very express decision that we talk

15   about in great detail to remove fuel from an index that had

16   been used for price increases.  And we believe that the facts

17   of that and other facts in the complaint will make it very

18   possible for Your Honor to deny a Twombly motion.

19           There's at least one case where a Federal court in

20   California said that it doesn't make sense to have discovery

21   for the purpose of creating a complaint, but that's not what

22   we're asking.  To the extent that Your Honor is interested in

23   hearing about discovery now, I can address it.

24           THE COURT:  If what they are planning is a 12(b)(6)

25   motion, then it rises or falls on the four corners of the

1    complaint.  And so the argument is, neither side needs

2    discovery to do that, but you're anxious to get started and

3    they're anxious to not spend time and money if they're going to

4    win their motion.

5              MR. NEUWIRTH:  Correct.  And I think that it's

6    important to note that there are courts, to the extent courts

7    have looked at this since the Twombly case, there's been a

8    consensus among courts that have ruled there should be

9    discovery or that there shouldn't, that Twombly did nothing to

10   change the principles in the Federal Rules that discovery is

11   not automatically stayed merely because there is a motion to

12   dismiss.  At least one of those cases is the Flash Memory

13   Antitrust Litigation.

14             THE COURT:  Say it again?

15             MR. NEUWIRTH:  I'm sorry, it's called In Re: Flash

16   Memory Antitrust Litigation, from the Northern District of

17   California in 2008, which held at -- it's a slip opinion, where

18   the defendants argued that because they were making a Twombly

19   motion there should be no discovery.  The Court said to the

20   extent that the defendants are relying on the Supreme Court's

21   opinion in Twombly to support such a position, it must be

22   rejected, this Court concurs with the statement in Graphics

23   Processing, another antitrust case, that Twombly does not

24   "erect an automatic blanket prohibition on any and all

25   discovery before an antitrust plaintiff's complaint survives a

1    motion to dismiss."

2           That was one of the cases which held you can't have

3    discovery to amend your complaint, but there are other cases

4    that have permitted limited discovery post-Twombly.   And

5    Justice Souter in Twombly said one of the problems with

6    discovery can be, it can impose a huge burden on defendants in

7    a case which doesn't have merit to proceed.   And we believe

8    this is a case that you will determine has merit to proceed,

9    but even putting that aside, this is also a situation where the

10   defendants have disclosed in their S.E.C. filings that they

11   have been subject of at least one State Attorney General grand

12   jury investigation related to the fuel surcharges that are at

13   issue in this case.   We believe that that was a New Jersey

14   investigation that commenced in July of 2007.

15          And the most recent disclosures by one defendant,

16   Kansas City Southern, references that investigation and says

17   "Kansas City Southern Railroad is cooperating with the New

18   Jersey Attorney General's request for information."   The other

19   defendants have all disclosed this.

20          And so we believe that one step the Court can take in

21   discovery that would not impose a burden on defendants but that

22   would allow at least something to move forward given that these

23   cases have now been pending for almost a year, would be to

24   order that the defendants produce to the plaintiffs anything

25   that they have assembled and produced to the New Jersey State

1    Attorney General or any other government authority that is

2    investigating the very subject matter of the lawsuits that are

3    now consolidated before Your Honor.

4           That avoids any new burden on the defendants, because

5    presumably they're already assembling that information.  It's a

6    way to keep the case moving forward, because the reality is

7    that it would probably be as much as six months before your

8    Court would have an opportunity to resolve any motion to

9    dismiss.  It might be less.

10          THE COURT:  It's going to be 45 days before you file

11   the consolidated compliant.

12          MR. NEUWIRTH:  Right, and it may be even longer than

13   that with briefing and what's likely to be an extended briefing

14   schedule on the many issues that we would anticipate the

15   railroads will be raising in defense.

16          So just to be clear, this is not for the purpose of

17   getting information to put into the complaint.  This is for the

18   purpose of ensuring that this case isn't allowed to get stale

19   while motions are pending.  And we believe that the meetings of

20   the AAR in December of 2003 are just among the many facts that

21   we have.

22          In Twombly, the Court said the problem was that the

23   plaintiffs there had simply alleged parallel conduct without

24   alleging any evidence of when the defendants supposedly agreed

25   that they were going to work together.

1          Our complaints include very significant detail about

2    exactly when that agreement was made, how it was made, and when

3    it was implemented by the defendants.  We are not in any way

4    suggesting that the Court shouldn't give this serious

5    consideration, but we do believe that this is not a case where

6    it's a foregone conclusion that the case is going to be

7    dismissed on those grounds.

8          THE COURT:  Thank you.  Who is up on the defendants'

9    side?  Mr. Favretto?

10         MR. FAVRETTO:  Thank you, Your Honor.  This is not an

11   issue from our perspective of seeking a stay of discovery.

12   It's only an issue of arriving at a logical sequence in the

13   preliminary stage of the litigation.  There is no question here

14   that there will be a substantial 12(b)(6) motion.  We have no

15   consolidated amended complaint yet.  That's the number one

16   thing.  But based on the complaints that have been filed to

17   date, this is a cause of action, an alleged cause of action

18   based upon allegations of parallel conduct accompanied by

19   conclusory assertions of agreement.  No question about that.

20         That's Twombly.  That's the Twombly strike zone.  And

21   that will be the basis for, the primary basis for our motions

22   to dismiss, which will be filed promptly according to Your

23   Honor's schedule as set out in your initial order.

24         Burden is one thing.  Expense is another thing.  But

25   I would like to sort of underscore that Twombly doesn't just go

41

1    New Jersey investigation, because it's sort of a back door way

2    of getting around Twombly, which basically relies on burden.

3         By the way, we are not saying that Twombly lays down

4    an absolute bar of discovery pre-12(b)(6).  Because there are

5    cases, and there are cases.  If they had a case with guilty

6    pleas and people admitting liability, and they were here on the

7    basis of that kind of case, that would be a different case from

8    a case that's based upon parallel conduct.  That is absolutely

9    explainable in the terms of the complaint itself by a historic

10   period of volatility and increase in fuel costs.  No doubt

11   about that.

12        And Twombly, in that kind of case Twombly suggests,

13   more than suggests, holds, that it's just sound judicial

14   administration to allow the complaint to be tested before we

15   start the firing gun, sound the starting alarm on discovery.

16        Now, the New Jersey investigation.  The first case

17   was filed in New Jersey.  There was no investigation, none, by

18   the State of New Jersey at that point.  Unlike the normal

19   situation where DOJ Antitrust Division starts an investigation,

20   it's reported in the press, and then we have a bunch of class

21   actions riding the coattails of the DOJ investigation, then

22   ultimately whatever results from that investigation.

23        The New Jersey investigation did not exist.  It is

24   our understanding that the plaintiffs contacted the New Jersey

25   Attorney General's Office.  The investigation was then started,

42

1   it was started back in July.  We have been cooperating with it.

2   We have disclosed it.  We are completely confident that it will

3   be resolved in a favorable fashion in our favor.

4          We've made the disclosures, but the point here, Your

5   Honor, is plaintiffs ought not to be permitted to indirectly

6   achieve discovery by relying on an investigation which post

7   dated their complaint and is still ongoing, and is confidential

8   and subject to grand jury secrecy in the state of New Jersey,

9   an investigation with which we are completely cooperating and

10  completely confident of a favorable outcome.

11         So in substance, in substance, there's no need,

12  there's no prejudice, and there's no -- it will be a legal

13  motion addressed to the face of the pleading.

14         Now, illustrative.  This is precisely the argument

15  that was made to Judge Lynch in the District Court in the

16  Southern District of New York in the Twombly case.  Whatever

17  they've turned over to investigators against the telephone

18  companies, whatever they've turned over to investigators, just

19  have them give it to us.  No big deal.

20         Judge Lynch stayed discovery in that case in June of

21  2003.  He then addressed the dismissal motion, granted the

22  dismissal, and we all know what the Supreme Court thinks of the

23  wisdom of Judge Lynch's actions in that case.

24         That is the paradigm, that is exactly this case, and

25  it would be a miscarriage here to allow the defendants to

Linda L. Russo, RPR
Official Court Reporter

EXHIBIT 3

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11  MICHAEL SHAMES; GARY              CASE NO. 07-CV-2174 H
    GRAMKOW, on behalf of themselves  (BLM)
12  and on behalf of all persons similarly
    situated,                         ORDER GRANTING
13                                    DEFENDANTS' MOTIONS TO
                          Plaintiffs, DISMISS AND DENYING
14                                    WITHOUT PREJUDICE
        vs.                           MOTION FOR PRELIMINARY
15                                    INJUNCTION

16  THE HERTZ CORPORATION, a          [Doc. Nos. 10, 34, 48, 50.]
    Delaware corporation; DOLLAR
17  THRIFTY AUTOMOTIVE GROUP,
    INC., a Delaware corporation; AVIS
18  BUDGET GROUP, INC., a Delaware
    corporation; VANGUARD CAR
19  RENTAL USA, INC., an Oklahoma
    corporation; ENTERPRISE RENT-A-
20  CAR COMPANY, a Missouri
    corporation; FOX RENT A CAR,
21  INC., a California corporation;
    COAST LEASING CORP., a Texas
22  corporation; THE CALIFORNIA
    TRAVEL AND TOURISM
23  COMMISSION; and CAROLINE
    BETETA,
24
                          Defendants.
25

26      On November 14, 2007, plaintiffs Michael Shames and Gary Gramkow

27  ("Plaintiffs") filed a putative class action complaint against several passenger rental car

28  companies ("the rental car defendants") operating at certain California airports, the

    California Travel and Tourism Commission ("CTTC"), and  Caroline Beteta, the

                                    - 1 -                          07cv2174

1   Executive Director of the CTTC. (Doc. No. 1.) Plaintiffs seek a preliminary injunction

2   against the CTTC. (Doc. No. 10.) Defendants have brought three motions to dismiss

3   Plaintiffs' complaint: one by the rental car defendants, one by the CTTC, and one by

4   Caroline Beteta. (Doc. Nos. 34, 48, 50.) The rental car defendants also filed a related

5   request for judicial notice. (Doc. No. 36.) On March 25, 2008, following full briefing

6   on all of the pending motions, the Court the submitted all the motions without oral

7   argument pursuant to its discretion under Local Civil Rule 7.1(d)(1). (Doc. No. 78.)

8   On March 27, 2008, the CTTC filed an objection to a declaration accompanying

9   Plaintiffs reply brief regarding the motion for preliminary injunction. (Doc. No. 79.)

10   On April 1, 2008, Plaintiffs responded to the objection. (Doc. No. 81.) These filings

11   were not authorized by the Local Rules, were filed after the motion was submitted, and

12   were filed without leave of the Court. In the future, the parties should request leave

13   prior to any supplemental briefing. For the reasons discussed below, the Court grants

14   the motions to dismiss, denies the motion for preliminary injunction, and grants 30 days

15   leave to amend the complaint in a manner consistent with this order.

16                          **Background**

17      Plaintiffs' complaint asserts three causes of action: price fixing in violation of the

18   Sherman Act, 15 U.S.C. § 1; unfair competition in violation of Cal. Bus. & Prof. Code

19   § 17200 et seq.; and violations of California's Bagley-Keene Open Meeting Act, Cal.

20   Govt. Code § 11120 et seq. Plaintiffs assert the first two claims against all defendants

21   and the third only against the CTTC and defendant Beteta.

22      Plaintiffs' complaint alleges that the rental car defendants have committed a per

23   se violation of federal antitrust law by entering into a horizontal price-fixing agreement

24   to raise and fix the prices charged to consumers for the rental of automobiles at certain

25   California airports. (Compl. ¶ 1.) The alleged agreement has two components. First,

26   the rental car defendants purportedly agreed to impose on consumers a surcharge of

27   2.5% of the price of a car rental and not to compete with each other with respect to that

28   surcharge. (Id.) The rental car defendants allegedly misrepresent that consumers owe

the 2.5% surcharge to the CTTC, when it is actually owed by the car companies. (Id.)

1      Second, the rental car defendants allegedly agreed to raise and fix prices by

2 passing on to consumers an Airport Concession Fee[1] of approximately 9%. (Id.) Prior

3 to 2007, this fee was included in the advertised base rate pursuant to California law

4 mandating that the advertised rate include all charges to be billed (except for taxes, a

5 customer facility charge, and a mileage charge). (See Compl. ¶ 31.) In January, 2007,

6 the California legislature changed this rule to permit rental car companies to "unbundle"

7 the Airport Concession Fee from the base rate and separately itemize it on the bill.

8 (Compl. ¶ 1.) Plaintiffs allege that the rental car defendants took this opportunity to

9 collectively increase prices, agreeing to maintain the level of the previously bundled

10 base rates while passing the Airport Concession Fee on to consumers as a separate fee.

11 (Id.)

12      Plaintiffs also assert that the CTTC and defendant Beteta facilitated these

13 allegedly illegal antitrust activities. The California Tourism Marketing Act ("CTMA"),

14 Cal. Govt. Code § 13995 et seq., created the CTTC in 1995. (Compl. ¶ 25.) The CTTC

15 is a California nonprofit mutual benefit corporation. (Id. ¶ 26.) As defined by the

16 CTMA, the CTTC would be funded by contributions from industry and the state general

17 fund. (Id. ¶ 25.) The CTTC, which is chaired by the Secretary of the California

18 Business, Transportation and Housing Agency, consists of 37 members who serve both

19 as commissioners and as directors of the CTTC. (Id. ¶ 26.) The Governor appoints

20 twelve of the CTTC's members. (Id. ¶ 27.) Five segments of the tourism industry, one

21 of which is the "passenger car rental industry," elect the remaining members without

22 the involvement of public officials. The CTTC Executive Director is a tourism industry

23 professional recommended by the CTTC and approved by the Governor. (Id.)

24      As relevant here, the first significant function of the CTTC is to set industry

25 assessment levels for its budget. (Id. ¶ 28.) Every two years, the CTTC proposes

26 assessment levels for various segments of the travel and tourism industry. (Id.) Those

27

28     [1]"'Airport concession fee' means a charge collected by a rental company from a renter that is the renter's proportionate share of the amount paid by the rental company to the owner or operator of an airport for the right or privilege of conducting a vehicle rental business on the airport's premises." Cal. Civ. Code § 1936.01(a)(1).

1 industry segments then vote on the specific assessment level proposals. The levels that
2 receive the most weighted votes become effective and enforceable, and must be paid by
3 all those conducting business over a minimum level in each of the respective tourism-
4 related segments. (<u>Id.</u>)

5     Second, the CTTC develops a marketing plan for the expenditure of the assessed
6 funds. (<u>Id.</u> ¶ 29.) The CTTC's plans regarding operations and spending are subject to
7 approval by the Secretary of the Business, Transportation and Housing Agency, in her
8 capacity as chair of the CTTC. (<u>Id.</u>) However, a three fifths vote of the CTTC
9 members will override any disapproval by the chair. (<u>Id.</u>) As a result, Plaintiffs assert
10 that the 24 industry-selected CTTC members exercise final, controlling decision-
11 making power within the CTTC. (<u>Id.</u>) In summary, Plaintiffs state that the CTTC,
12 while privately chosen, exercises "state-unchecked" power in the assessment of monies
13 under state authority, the enforcement of that collection on business, and the
14 expenditure of those funds. (<u>Id.</u> ¶ 30.)

15     Plaintiffs' complaint alleges that in 2006 a state bill (AB 2592) was enacted that
16 amended California Civil Code § 1936.01 to make two significant changes with respect
17 to the rental car defendants. (Compl. ¶ 32.) First, it created airport rental car firms as
18 an industry sector included in the CTTC. (<u>Id.</u>) The bill allegedly provided for a
19 referendum to be held among the rental car defendants to approve a contribution to the
20 CTTC's budget. (<u>Id.</u>) This contribution would increase the CTTC's budget and relieve
21 the state general fund of almost all of its current and future contributions. (<u>Id.</u>)
22 Plaintiffs allege that, because industry segment representation on the CTTC is
23 proportional to the assessments paid by that segment, the rental car industry became
24 entitled to six seats on the CTTC. (<u>Id.</u>)

25     Second, Plaintiffs allege that AB 2592 included a provision allowing the rental
26 car defendants to unbundle the Airport Concession Fee in the manner discussed above.
27 (<u>Id.</u> ¶ 33.) The complaint states that AB 2592 provided that this "disaggregation
28 provision" would become effective only if the rental car industry assessed upon itself
new rates that would increase the CTTC's funding. (<u>Id.</u> ¶ 34.) To that end, the rental

07cv2174

1 car defendants agreed to a "self-assessment" of 2.5%. (Id.) Plaintiffs allege that the
2 rental car defendants further agreed, in violation of the antitrust laws, to pass that
3 assessment on to consumers and not absorb it or otherwise compete with each other on
4 that portion of the price charged to consumers. (Id. ¶ 35.)

5 Plaintiffs allege that the rental car defendants offered the state legislature a quid
6 pro quo of industry contribution to the CTTC budget and general fund relief in return
7 for the change in consumer billing format permitted by AB 2592. (Id. ¶ 36.) Plaintiffs
8 allege that, although that statute did not authorize any price level change, beginning in
9 January 2007 when the statute took effect, the rental car defendants agreed and
10 combined to fix prices approximately 9% higher by charging the Airport Concession
11 fee as a separate and additional charge. (Id.) Although AB 2592 permitted a change
12 in billing format, Plaintiffs allege that the price increase related to the Airport
13 Concession Fee as a separate charge was neither explicitly authorized by, nor a
14 necessary consequence of, AB 2592. (Id. ¶ 37.) Rather, Plaintiffs allege, the increase
15 was the result of independent price-fixing agreements by the rental car defendants. (Id.)
16 Plaintiffs assert that the CTTC, and defendant Beteta in her capacity as CTTC's
17 executive director, participated in this alleged conspiracy by coordinating
18 communications and facilitating the price fixing agreements. (Id.)

19 **Discussion**

20 **I.    Motion to Dismiss - Legal Standard**

21 Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a
22 claim either where that claim lacks a cognizable legal theory, or where insufficient facts
23 are alleged to support plaintiff's theory. See Balistreri v. Pacifica Police Dept., 901 F.2d
24 696, 699 (9th Cir. 1990). In resolving a Rule 12(b)(6) motion, the court construes the
25 complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual
26 allegations as true. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir.
27 1996).

28 The Supreme Court recently addressed the question of "what a plaintiff must
plead in order to state a claim under § 1 of the Sherman Act." Bell Atlantic Corp. v.

07cv2174

1  Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007). "While a complaint attacked by
2  a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's
3  obligation to provide the grounds of his entitlement to relief requires more than labels
4  and conclusions, and a formulaic recitation of the elements of a cause of action will not
5  do." Id. at 1965-1966. "Factual allegations must be enough to raise a right to relief
6  above the speculative level on the assumption that all the allegations in the complaint
7  are true (even if doubtful in fact). Id. at 1965. Applying "these general standards" to
8  a claim under the Sherman Act, the Supreme Court held that stating a claim under
9  section 1 of that Act "requires a complaint with enough factual matter (taken as true)
10  to suggest that an agreement was made." Id. "[A]n allegation of parallel conduct and
11  a bare assertion of conspiracy will not suffice." Id.

12  **II.    Plaintiffs' Antitrust Claim**

13      Section 1 of the Sherman Act prohibits a "contract, combination . . . , or
14  conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. "The crucial question
15  is whether the challenged anticompetitive conduct stems from independent decision or
16  from an agreement." Twombly, 127 S.Ct. at 1964.  To state a section 1 claim, a
17  plaintiff "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts
18  which, if true, will prove: (1) a contract, combination or conspiracy among two or more
19  persons or distinct business entities; (2) by which the persons or entities intended to
20  harm or restrain trade or commerce . . . ; (3) which actually injures competition."
21  Kendall v. Visa U.S.A., Inc., ___ F.3d ___, 2008 WL 613924 at *3 (9th Cir. March 7,
22  2008).  For the following reasons, the Court concludes that Plaintiffs' complaint fails
23  to satisfy this standard with respect to all defendants.

24      **A.    Defendant Beteta**

25      The Court concludes that Plaintiffs' complaint fails to state a claim against
26  defendant Beteta for a violation of section 1 of the Sherman Act.  Plaintiffs' complaint
27  contains only conclusory assertions and general allegations that Ms. Beteta had
28  knowledge of, facilitated, and participated in a conspiracy by the rental car defendants
   to fix prices.  (E.g., Compl. ¶¶ 43, 44.)  The complaint fails to set forth factual

1 allegations supporting these assertions. Although Ms. Beteta may have met with rental

2 car industry members, that fact alone is insufficient to raise Plaintiffs' right to relief

3 against Ms. Beteta "above the speculative level." Twombly, 127 S.Ct. at 1965.

**B.    The CTTC**

5 Similarly, the Court concludes that the allegations of Plaintiffs' complaint are

6 insufficient to state a claim against the CTTC on Plaintiff's antitrust claim.   The

7 complaint is devoid of factual allegations regarding any actual agreement between the

8 CTTC and the rental car defendants. The only factual assertions regarding the CTTC

9 are that the CTTC held meetings that California law requires it to hold and allegedly

10 violated certain provisions of the Bagley-Keene Act regarding notice of those meetings.

11 Like the allegations regarding defendant Beteta, the complaint's allegation of an

12 agreement and/or conspiracy to which the CTTC was a party is stated by Plaintiffs'

13 conclusory assertions that the CTTC had knowledge of, facilitated, and participated in

14 the rental car defendants' alleged conspiracy to fix prices. (See Compl. ¶¶ 43-44.)

15 The rental car companies' purportedly agreed to pass the 2.5% "self-assessment"

16 on to consumers. (See Compl. ¶¶ 34-35.) However, the complaint does not allege facts

17 making it "plausible," see Twombly, 127 S.Ct. at 1965, that the CTTC agreed or

18 conspired with the rental car defendants to pass this price along to consumers. In fact,

19 the California Tourism Marketing Act expressly permits "an assessed business [to] pass

20 on some or all of the assessment to customers."   Cal. Govt. Code § 13995.65(f).

21 Similarly, the complaint does not allege facts making it plausible that the CTTC agreed

22 or conspired with the rental car companies to pass the Airport Concession Fee of

23 approximately 9% on to consumers.

24 Moreover, even if Plaintiffs alleged that the CTTC engaged in parallel conduct

25 with the rental car companies, the Supreme Court has emphasized that "[w]ithout more,

26 parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement

27 at some unidentified point does not supply facts adequate to show illegality."

28 Twombly, 127 S.Ct. at 1966. Here, the Court concludes that Plaintiffs' complaint fails

to plead "enough factual matter (taken as true) to suggest that an agreement was made"

07cv2174

1    between the CTTC and the rental car defendants. Id. at 1965.

2       Since the Court has concluded that Plaintiffs' complaint fails to state a claim

3    upon which relief may be granted against the CTTC or defendant Beteta for a violation

4    of section 1 of the Sherman Act, the Court need not address those defendants'

5    arguments regarding immunity from antitrust liability.

6       **C.**    **The Rental Car Defendants**

7       Next, the Court concludes that the allegations of Plaintiffs' complaint are

8    insufficient to state a claim under section 1 of the Sherman Act against the rental car

9    defendants. The gravamen of Plaintiffs' complaint is that, beginning when AB 2592

10    took effect in January of 2007, the rental car defendants simultaneously increased their

11    prices by approximately 9% and imposed a uniform 2.5% fee on consumers. Plaintiffs

12    acknowledge that AB 2592 permitted these actions. Plaintiffs argue, however, that

13    since AB 2592 did not expressly require passing the costs at issue through to

14    consumers, the allegations sufficiently support the existence of an agreement by the

15    rental car defendants to raise and fix prices. The Court disagrees.

16       Although Plaintiffs allege parallel conduct by the rental car defendants, the Court

17    concludes that Plaintiffs fail to place those allegations "in a context that raises a

18    suggestion of a preceding agreement, not merely parallel conduct that could just as well

19    be independent action." Twombly, 127 S.Ct. at 1966. The Supreme Court in Twombly

20    emphasized "[t]he need at the pleading stage for allegations plausibly suggesting (not

21    merely consistent with) agreement." Id. at 1966. Here, Plaintiffs allege certain facts

22    and circumstances consistent with an agreement to raise and fix prices. Without

23    additional factual allegations, however, the Court concludes that Plaintiffs' assertions

24    are equally consistent with "a wide swath of rational and competitive business strategy

25    unilaterally prompted by common perceptions of the market." Id. at 1964.

26       As alleged in Plaintiffs' complaint, the rental car defendants responded to the

27    passage of AB 2592 by simultaneously changing their billing practices and price levels

28    in certain ways that, prior to AB 2592, were not allowed. Plaintiffs are correct that the

   change in law did not require price increases. However, in light of the complaint's very

   07cv2174

1 general allegations, _e.g._, Compl. ¶¶ 35, 44(a), 46, the Court concludes that Plaintiffs

2 have not alleged sufficient facts to make the existence of a conspiracy plausible.  It is

3 equally plausible that the rental car defendants' actions constituted "identical,

4 independent action" motivated by economic self-interest.  _Id._ at 1961; see Brooke

5 Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 227 (1993) (common

6 reaction of firms in a concentrated market that recognize their shared economic interests

7 not in itself unlawful).  The general allegations of Plaintiffs' complaint, see Compl. ¶¶

8 35, 44, 46, provide "no reason to infer that the companies had agreed among themselves

9 to do what was only natural anyway." Twombly, 127 S.Ct. at 1971.

10 **D.    Leave to Amend**

11 If a complaint is found to fail to state a claim, courts generally grant leave to

12 amend unless the pleading could not possibly be cured by the allegation of other facts.

13 See Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995)  As a result, the Court will

14 provide Plaintiffs with an opportunity to amend their pleadings.

15 **III.   Plaintiffs' State Law Claims**

16 Plaintiffs assert that the Court has pendent jurisdiction over the state law claims,

17 a concept codified in 28 U.S.C. § 1367.  (Compl. ¶ 5.)  A district court may decline to

18 exercise supplemental for reasons including that the claim "raises a novel or complex

19 issue of State law," or that the court "has dismissed all claims over which it has original

20 jurisdiction."  28 U.S.C. § 1367(c).  Here, the Court has already dismissed the only

21 federal question claim.  Furthermore, the state law claims may implicate novel or

22 complex questions of state law, including questions related to interpretation of the

23 CTMA and the Bagley-Keene Open Meeting Act.  Therefore, the Court declines to

24 exercise supplemental jurisdiction at this time, dismisses without prejudice the

25 remaining state law claims, and denies without prejudice any motion for preliminary

26 injunction.  If Plaintiffs successfully assert an antitrust cause of action in an amended

27 pleading, the Court will reconsider whether to exercise supplemental jurisdiction in

28 light of all the circumstances of this litigation.

Plaintiffs also allege jurisdiction under the Class Action Fairness Act of 2005

07cv2174

1 ("CAFA"), 28 U.S.C. § 1332(d)(2) and (6). (Compl. ¶ 4.) It does not appear from the

2 complaint or the parties' briefing, however, that Plaintiffs argue that CAFA provides

3 subject matter jurisdiction over the state law claims, standing alone.

4 **IV.    Defendants' Request for Judicial Notice**

5       The rental car defendants ask the Court to take judicial notice of facts in three

6 areas: (1) alleged legislative history of Cal. Civil Code § 1936.01, (2) California Senate

7 Bill 1057, 2007-08 session, and (3) Plaintiffs' rental agreements with Alamo and

8 Enterprise Rent-A-Car Company of San Francisco. Plaintiffs do not object to judicial

9 notice of the rental agreements and certain portions of the legislative history, and the

10 Court takes judicial notice of those documents not subject to dispute. Plaintiffs object

11 to the introduction of the Senate bill and two aspects of the alleged legislative history:

12 (1) a letter from Robert C. Fellmeth to the Honorable Mark Leno concerning AB 2592,

13 and (2) a Senate floor analysis of AB 2592. The Court concludes that it may take notice

14 of these documents, which are matter of public record related to legislation at issue

15 here.

16 **Conclusion**

17       The Court GRANTS Defendants motions to dismiss and DENIES Plaintiffs

18 request for a preliminary injunction without prejudice. Plaintiffs may file an amended

19 complaint within 30 days of the date this order is entered in the docket.

20       IT IS SO ORDERED.

21 DATED:  April 8, 2008

22

23                    MARILYN L. HUFF, District Judge
                   UNITED STATES DISTRICT COURT

24 COPIES TO:

25 All Parties of Record

26

27

28

07cv2174

EXHIBIT 4

| BEFORE: | VIKTOR V. POHORELSKY | DATE: | 7/26/07 |
|---------|----------------------|-------|---------|
| | U.S. MAGISTRATE JUDGE | START TIME: | 2:30 p.m. |
| | | END TIME: | 4:15 p.m. |

| DOCKET NO. | MD–06-1775 | JUDGE: | JG |
|------------|------------|--------|-----|

CASE NAME:    In re Air Cargo Shipping Services Antitrust Litigation

### CIVIL CONFERENCE

PURPOSE OF CONFERENCE:    Hearing on Motion to Stay Discovery and Premotion Conference

APPEARANCES:    Plaintiff    See Separate Schedules

Defendant    See Separate Schedules

Court Reporter   Allan Sherman

SCHEDULING AND RULINGS:

1.    The defendants' motion to stay merits discovery is granted in part for reasons set forth on the record; the motion will be reconsidered by the court once the briefing of the motions to dismiss has been completed.

2.    The defendants' motion to stay jurisdictional discovery is granted pending consideration of the motions to dismiss on jurisdictional grounds.  If jurisdictional discovery is needed to resolve jurisdictional issues, the court will address the scope of discovery to be provided.

3.    The defendants may move to postpone consideration of the plaintiffs' motion for preliminary approval of the proposed Lufthansa settlement, but given the court's substantial concerns about the defendants' standing to make such a motion, the motion should be made expeditiously because the court will not delay consideration of the preliminary approval motion pending the filing of the defendants' motion to postpone given that the court's ruling on the motion for preliminary approval will be made in the form of a report and recommendation.

4.    The parties are nearing completion of their efforts to reach stipulations concerning confidentiality and electronically stored documents.

EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

IN RE: LTL SHIPPING SERVICES
ANTITRUST LITIGATION

MDL DOCKET NO. 1895
ALL CASES

1:08-MD-1895-WSD

## ORDER

This matter is before the Court on consideration of the schedule for the
processing of this action. The Court has reviewed the parties' April 9, 2008 Joint
Submission Regarding the Court's April 15, 2008 Agenda Items and the
presentation and the matters presented by counsel at the April 15, 2008 Initial
Conference in this action.

Based on representations made to the Court at the April 15, 2008 Initial
Conference (the "Initial Conference"), the Court understands that the 53 individual
cases in this MDL litigation will be consolidated into single action in this Court.
The action will center on the Clayton Act and Sherman Act allegations of price
fixing for fuel surcharges.[1]  A consolidated amended complaint will simplify and

---

[1]  The Plaintiffs in the MDL actions are evaluating whether to include the
claims asserted under various laws of the state in which several of these actions
were filed. That is, consideration is being given to a consolidated complaint that
asserts only federal antitrust allegations.

focus this case.

The Court was advised at the Initial Conference by counsel for the Defendants that, based on the complaints filed in the individual actions in this MDL case and allegations they expect to be included in the consolidated complaint, the Defendants will move to dismiss the consolidated complaint on the grounds that the pleadings do not sufficiently allege an actionable antitrust conspiracy. Thus, the first engagement in this matter will focus on the antitrust price fixing conspiracy allegations in the consolidated amended complaint and Defendants' challenge to the legal sufficiency of these claims.

In light of the matters discussed at the Initial Conference and having further considered the management of this litigation, the Court agrees with counsel that it is appropriate now only to set a schedule to address the filing of the consolidated amended complaint and the Defendants' response to this filing. The Court later will, if necessary, address a schedule for the processing of fact and expert discovery, including specific protocol for components of the discovery process, and the further conduct of the litigation.

Having evaluated counsel's comments regarding the time requested for preparation of the consolidated complaint, the stated scope of Defendants'

anticipated motion to dismiss, the requirement of counsel to coordinate among the lawyers representing Plaintiffs and Defendants in this matter, and the Court's commitment to efficiently and fairly manage this litigation,

**IT IS HEREBY ORDERED** that the Court sets the following schedule for the initial matters in this case:

1. The Plaintiffs shall, on or before May 16, 2008, file and serve their consolidated amended complaint in this action.

2. Defendants shall, on or before June 18, 2008, file and serve a single, consolidated answer or a single, consolidated motion to dismiss the consolidated amended complaint. A consolidated motion to dismiss shall not exceed thirty (30) pages and otherwise shall meet the pleading requirements of the Court's local rules.

3. If a consolidated motion to dismiss is filed by the Defendants, Plaintiffs shall, on or before July 23, 2008, file and serve their response to the motion. This filing shall not exceed forty (40) pages and otherwise shall meet the requirements of the Court's local rules.

4. Defendants shall, on or before August 15, 2008, file and serve their reply to Plaintiffs' response to the motion. This filing shall not exceed twenty (20) pages

3

and otherwise shall meet the pleading requirements of the Court's local rules.

5.  All filings shall be served electronically and shall be deemed received on

the date of electronic service.

**SO ORDERED** this 22nd day of April 2008.


_____

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

4

EXHIBIT 6

```
 1              UNITED STATES DISTRICT COURT
 2            SOUTHERN DISTRICT OF NEW YORK

 3   ---------------------------------------x
 4   WILLIAM TWOMBLY,
 5
 6              Plaintiff
 7                                    DOCKET NO.: CV-02-10220 (GEL)
 8              -vs-                  New York, New York
 9                                    May 29, 2003
10   BELL ATLANTIC CORPORATION,
11   et al.,
12
13              Defendants
14   ---------------------------------------x

15         TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE

16      BEFORE THE HONORABLE GERARD E. LYNCH
17            UNITED STATES DISTRICT JUDGE

18   A P P E A R A N C E S :

19   For the Plaintiff:          J. DOUGLAS RICHARDS, ESQ.
20                               MICHAEL BUCHMAN, ESQ.
21                               Milberg Weiss Bershad Hynes
22                                  & Lerach LLP
23                               One Pennsylvania Plaza
24                               New York, NY  10019

25   For the Defendants

26   For Quest:                  WILLIAM KOLASKY, ESQ.
27                               Wilmer Cutler & Pickering
28                               399 Park Avenue
29                               New York, NY  10022

30   Audio Operator:             No Audio Operator

31         Proceedings Recorded by Electronic Sound Recording
32         Transcript Produced by Transcription Service
33
34                  KRISTIN M RUSIN
35             328 Flatbush Avenue, Suite 251
36               Brooklyn, New York 11238
37                   (718) 789-0620
```

```
 1   ADDITIONAL APPEARANCES

 2   For the Defendants

 3   For SBC:                    MARK HANSEN, ESQ.
 4                               MARIA GALENO, ESQ.
 5                               Kellogg Huber Hansen Todd
 6                                  & Evans PLLC
 7                               1615 M Street NW
 8                               Washington, DC  20006

 9   For Bellsouth:             RICHARD J. FAVRETTO, ESQ.
10                               Mayer Brown Rowe & Maw
11                               1675 Broadway
12                               New York, NY  10019

13   For Verizon:               STEVEN G. BRADBURY, ESQ.
14                               Kirkland & Ellis
15                               655 Fifteenth Street NW
16                               Washington, DC  20005
```

K. Rusin

3

1  (Tape on)

2  THE COURT: — issues this morning I'm going to have

3  the proceedings put on tape just so that if people want it

4  there is a record of exactly what was said.

5  THE CLERK: Yes, Your Honor. In the matter of

6  William Twombly against Bell Atlantic, et al. Counsel, please

7  identify yourselves for the record, beginning with the

8  plaintiff.

9  MR. RICHARDS: Your Honor, Doug Richards from Milberg

10  Weiss for the plaintiffs.

11  THE COURT: Okay, Mr. Richards.

12  MR. BUCHMAN: Good morning, Your Honor. Michael

13  Buchman from Milberg Weiss on behalf of the plaintiffs.

14  THE COURT: Good morning, Mr. Buchman.

15  MR. KOLASKY: Your Honor, William Kolasky on behalf

16  of defendant Quest.

17  THE COURT: Mr. Kolasky.

18  MR. HANSEN: Mark Hansen with Maria Galeno for

19  defendant SBC, Your Honor. Good morning.

20  THE COURT: Mr. Hansen, good to see you again. It's

21  been a long time.

22  MR. FAVRETTO: Dick Favretto, Your Honor, from Mayer

23  Brown Rowe & Maw, on behalf of Bellsouth.

24  THE COURT: Okay. Good morning.

25  MR. BRADBURY: And good morning, Your Honor. Steve

K. Rusin

1    Bradbury from Kirkland & Ellis on behalf of Verizon.

2            THE COURT:  Mr. Bradbury, good morning.

3            MR. BRADBURY:  Good morning.

4            THE COURT:  All right.  Well, I've read the papers

5    and I gather what's before me is the question of whether the

6    discovery is to go forward.  And let me start by seeing if I

7    understand exactly what the plaintiff's position is.  As I

8    understand it — Mr. Richards, are you going to speak?

9            MR. RICHARDS:  Yes, I am.

10            THE COURT:  As I understand it, the plaintiffs are

11    not seeking to commence general discovery in advance of the

12    decision of the motion to — or motions to dismiss, but is

13    seeking only discovery that the plaintiffs argue is somehow

14    connected to or required for responding to the motions.

15            MR. RICHARDS:  And there are additional dimensions to

16    the four categories of discovery we're seeking, but Your

17    Honor's correct that from our view we've tried to strike a

18    balance just in a very limited way, seek kind of key discovery

19    coupled with discovery that's put in issue by the papers that

20    they raise.

21            THE COURT:  Yeah.  Well, I mean, it seems to me that

22    if that's the theory, we can rule out most of what you've asked

23    for.  It seems to me that you don't need discovery to respond

24    to any purported facts that the defendants are asserting in

25    their briefs.

1     The proper thing to say is that these motions are to

2 be decided based on the pleading, and if the defendants say

3 things that are contrary to or not a part of the complaint,

4 then those things are to be disregarded, that the motion is

5 about the sufficiency of the complaint, and if they say things

6 that are inconsistent with or an expansion of those purported

7 facts, the answer is to disregard them, not to let you put in

8 facts that aren't part of the pleadings either.

9     MR. RICHARDS:  Your Honor, I don't disagree that that

10 is one answer.  And that's — that's one of the reasons I said

11 there are other dimensions to this, too.  When we decided what

12 to ask for at this stage, we also tried to narrow things — you

13 know, narrow our requests to things that would not be

14 burdensome.

15     And I would submit that neither of the two categories

16 that go beyond issues directly put, you know, by the substance

17 of the motion in issue are — are categories that should be

18 very easily produced.  For example, documents that they've

19 already produced in a government investigation.

20     THE COURT:  Yeah.  Well, that's very easy, but I

21 suppose to the extent that the — you don't know whether there

22 are investigations, then I suppose they don't have to lay out

23 which governmental agencies are after them for your benefit,

24 and even if you do, it's certainly less burdensome to make a

25 million copies of a million pages of documents that have

K. Rusin

6

1   already been produced than it is to search for documents, but
2   that's still an expense and a burden.
3       I'm a cheap bastard myself, and I don't like to see
4   money spent even on, you know, the reams of paper that are
5   necessitated if it's not necessary, so even though I'm sure
6   it's a trivial expense in comparison to the vast resources of
7   all the parties here, if — if you're asking me to rule — I
8   was trying to get you to say that you were only interested in
9   things that had something to do with the complaint.
10      But if you are interested in starting discovery soon,
11  I think I'm persuaded by the defendants that the motion is
12  sufficiently substantial — not to say that I have any view yet
13  since I don't know anything about this field particularly, but
14  it seems to me sufficiently substantial to be worth pondering
15  before we embark on a lot of discovery and also persuaded by
16  the fact that I appear already to have set an oral argument
17  date for these motions, so it's on a relatively fast track to
18  decision.
19      And nobody was counting on the door for discovery for
20  months while the complaint was pending, which seems to suggest
21  it's not the world's most urgent thing.  So to the extent that
22  you are asking to start general discovery before the motions
23  are decided, that's denied, and — for the reasons already
24  stated.  For most of what you have asked, I don't really see
25  that it is somehow related to the decision of the motions.

K. Rusin