AO88 (Rev. 12/07) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT
District of Columbia

| In re Rail Fuel Surcharge Antitrust Litigation | **SUBPOENA IN A CIVIL CASE** |
|---|---|
| This Relates to: All Direct Purchaser Actions | Case Number:[1] MDL No. 1869, No. 07-489 |

TO: The Association of American Railroads
50 F Street NW
Washington, DC 20001-1564

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Schedula A (attached).

| PLACE | DATE AND TIME |
|---|---|
| The Association of American Railroads, 50 F Street NW, Washington, DC 20001 | 2/13/2009 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Direct Purchaser Plaintiffs' Interim Co-Lead Class Counsel | 1/13/2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Sami H. Rashid, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010; telephone (212) 849-7000.

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

**(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.**
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) DUTIES IN RESPONDING TO A SUBPOENA.**
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.**
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

## DEFINITIONS

These Requests For Production are subject to and incorporate the following definitions and instructions:

1. "AAR," "you" or "your" means the Association of American Railroads, its board, committees, subcommittees, divisions, departments, predecessors or successors, and any of its present or former officers, directors, employees, members, representatives or any others acting on its behalf.

2. "AII" means the All Inclusive Index, published by the AAR.

3. "AIILF" means the All Inclusive Index Less Fuel, published by the AAR.

4. "Analyses" means any studies, reports, memoranda, summaries, statistical compilations, presentations, reviews, audits and other types of written, printed or electronic submissions of information.

5. "Communication" means any exchange, transfer, or dissemination of facts, opinions or information, regardless of the means by which it is accomplished.

6. "Concerning," "relate to" or "relating to" means containing, describing, discussing, embodying, commenting upon, identifying, incorporating, regarding to, evidencing, evaluating, summarizing, constituting, comprising or otherwise pertinent to the matter or any aspect thereof.

7. "Defendants" means CSX Transportation, Inc. ("CSX"), BNSF Railway Company ("BNSF"), Union Pacific Railroad Company ("UP"), and Norfolk Southern Railway Company ("NS"), individually or collectively, and any of their respective corporate parents, subsidiaries, affiliates, divisions, departments, predecessors or successors, and any of their

present or former officers, directors, employees, members, representatives or any others acting on their behalf respectively.

8.  "Document" means without limitation, the original and all non-identical copies of all items subject to discovery under Rule 34 of the Federal Rules of Civil Procedure. This definition includes, without limitation, electronically stored information (see also definition number 9 below), letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, summaries, records of telephone conversations, telegrams, facsimile transmissions and receipts, notes, reports, compilations, notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, audiotapes, film and sound reproductions, sales, advertising and promotional literature, agreements, stored recordings, minutes or other records of meetings, all written or graphic records or representations of any kind, and mechanical representations of any kind.

9.  "Electronically stored information" or "ESI" includes, without limitation, the following:

   a.  information that is generated, received, processed, and recorded by computers and other electronic devices;

   b.  internal or external web sites;

   c.  output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, personal electronic mail used at any time for business purposes, AOL Instant Messenger™ (or similar instant messaging program) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files,

and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

    d.    activity listings of electronic mail receipts and/or transmittals; and

    e.    any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or in any other vehicle for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, e.g., Palm Pilot, Blackberry, or similar device, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

10.   "Meeting" means any gathering, assembly, convocation, encounter or contemporaneous presence of two or more persons (whether in person or by telephone, videoconference or other electronic means) for any purpose, whether planned, arranged, scheduled or not.

11.   "Person" means any natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, trust, association, institute, or other business, legal or government entity.

12.   "Policy" or "practice" means any procedure or directive, whether written or unwritten, formal or informal.

13.   "RCAF" means the Rail Cost Adjustment Factor published by the Surface Transportation Board whether adjusted for productivity or unadjusted for productivity.

14.   "Rail Cost Indexes" means the AII, the AIILF and/or the RCAF.

15.   "Rail Freight Transportation Services" means the transportation of freight by a railroad whether the rates are set by private contracts or through other means exempt from rate

regulation under federal law, or are set by tariff publication or other means that are subject to regulation under federal law.

16. "Rail Fuel Surcharge" means a separately-identified component of the total rate charged for rail freight transportation services that is called a "fuel surcharge" or a "rail fuel surcharge," or is otherwise identified as a stand-alone charge purportedly to recoup increases in the rail carrier's fuel costs.

17. "Shippers" or "customers" mean those who purchased rail freight transportation services directly from Defendants.

18. The terms "all" and "each" shall be construed as "all and each."

19. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

20. The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1. You are requested to produce all documents in your possession, custody or control, regardless of the physical location of the documents.

2. All documents shall be produced in the same order and format as they are kept or maintained in the ordinary course of business. If any documents have been removed from the files in which they were found for purposes of producing them in response to these Requests, for each such document identify the file(s) in which the document was originally located.

3. You are requested to produce each document requested, together with all non-identical copies and drafts of such document.

4. If any requested document cannot be produced in full, you are to produce it to the extent possible, indicating which document, or portion of such document, is being withheld, and the reason that document, or portion of such document, is being withheld.

5. Documents attached to each other should not be separated when being produced in response to these Requests.

6. Color copies of documents are to be produced where color is necessary to interpret or understand the contents of the documents.

7. If no documents exist that are responsive to a particular Request, that fact should be stated in each of your responses to said Request.

8. Separately with respect to each piece of information called for by these Requests which is withheld under a claim of privilege or otherwise, provide an explanation of the claim being asserted and a detailed privilege log that contains at least the following information for each document that you withhold:

    a. State the date of the document;

    b. Identify each and every author of the document;

    c. Identify each and every person who prepared or participated in the preparation of the document;

    d. Identify each and every person who received the document;

    e. Identify each and every person from whom the document was received; and

    f. Provide sufficient information relating to the document and the circumstances thereof to explain the claim of privilege or protection and to permit the adjudication of the propriety of the claim.

9. If a document or group of documents responsive to these Requests once existed, but has been destroyed or discarded, for each such document or group of documents, identify the document or group of documents, state when the document or group of documents was destroyed or discarded, state why the document or group of documents was destroyed or discarded, and identify the persons most knowledgeable about the contents of the document or group of documents and the circumstances under which the document or group of documents was destroyed or discarded.

10. Unless a different time period is specified, the time period relevant to these Requests is January 1, 2000 through the present.

11. The obligation to provide the information sought by these requests for production is continuing within the requirement of Fed. R. Civ. P. 26(e).

## REQUESTS FOR PRODUCTION

1. Documents sufficient to show your corporate structure or organization throughout the relevant period, including, but not limited to, Articles of Association and by-laws, membership lists showing classes of membership and members of each class and the privileges and responsibilities of each class, the Board, committees or subcommittees of the Board, other committees, subcommittees or any departments, divisions or working groups.

2. As to each of your departments and divisions, committees, subcommittees and working groups, including, but not limited to, the Office of the President, Administration and Finance, Communications, Government Affairs, Law Department, Policy and Planning and Safety and Operations, provide documents sufficient to identify each employee having any responsibilities or duties with respect to Class I Railroads or Rail Cost Indexes.

3. All agendas, minutes, and attendee records concerning meetings and discussions held by you and your committees, subcommittees, working groups or any other group, including, but not limited to, your Board, any committee or subcommittee of the Board including any Executive Committee, and all committees and subcommittees reporting to the Board (including, but not limited to, the Safety and Management Operations Committee, the Network Efficiency Management Committee, the Policy and Advocacy Management Committee, Rail inc. and the Transportation Technology Center, Inc.), as well as all other committees, subcommittees and working groups of those committees.

4. To the extent not requested above, as to each meeting and discussion described in Request No. 3, all minutes of any such meetings, agendas, notes, proposals, resolutions or other actions taken, votes taken, and any agreements reached, as well as documents sufficient to identify the individuals who attended the meetings (either in person or through electronic, or other means, e.g., telephonically, or via video conferencing), the dates of attendance, and the subject matters discussed.

5. All documents submitted to, discussed or considered at, or issued by you, your committees, subcommittees, working groups or any other group, including, but not limited to, your Board, any committee or subcommittee of the Board including any Executive Committee, and all committees and subcommittees reporting to the Board (including, but not limited to, the Safety and Management Operations Committee, the Network Efficiency Management Committee, the Policy and Advocacy Management Committee, Rail inc. and the Transportation Technology Center, Inc.), as well as all other committees, subcommittees and working concerning Rail Fuel Surcharges or the Rail Cost Indexes.

7

6. Documents sufficient to show the annual financial contributions of each of the Defendants (or any other member of the AAR) to the AAR.

7. Documents sufficient to show the voting powers of each of the Defendants (or any other member of the AAR) at the AAR, including, but not limited to, any voting provisions, guidelines or rules for any committees or subcommittees of the Board.

8. All documents relating to policies, methods, formulas, factors, weights and methodologies used to determine the Rail Cost Indexes.

9. All documents concerning the removal of fuel as a cost component of the AII or RCAF.

10. All documents concerning the development or adoption of the AIILF, including, but not limited to, documents relating to the need for or desirability of the AIILF.

11. All documents and communications concerning the Surface Transportation Board's hearings and decisions relating to Rail Fuel Surcharges.

12. All documents relating to the "AAR Railroad Cost Indexes."

13. All documents created by or for the AAR, or its Board, any committee, subcommittee, officers or personnel thereof concerning Rail Fuel Surcharges or the Rail Cost Indexes.

14. All documents concerning meetings and communications between you and any Defendants (or any of your members) relating to Rail Fuel Surcharges or the Rail Cost Indexes.

15. All documents concerning meetings and communications between you and any third party relating to Rail Fuel Surcharges or the Rail Cost Indexes.

16. All documents concerning meetings and communications between and among any of the Defendants relating to Rail Fuel Surcharges or the Rail Cost Indexes.

17. All statements, announcements, press releases, or other disclosures issued by you or any of your members relating to the Rail Cost Indexes.

18. All documents concerning any analyses as to the potential or actual ability of rail freight carriers to offset, recoup or mitigate fuel costs, including (but not limited to): (a) analyses of whether rate-based Rail Fuel Surcharges more accurately recoup actual fuel costs than the AII or the RCAF or any other mileage-based or cost-based Rail Fuel Surcharge (or any other type of such surcharge); (b) analyses of the ability to offset, recoup or mitigate fuel costs both prior to and following the adoption of the AIILF; and (c) analyses of the ability to offset, recoup or mitigate fuel costs by utilizing the RCAF in contracts with shippers.

19. All documents concerning any analyses of the potential or actual impact of Rail Fuel Surcharges on rail freight carriers' profitability, including (but not limited to): (a) analyses of the amount of revenues generated by Rail Fuel Surcharges in comparison to actual fuel costs; and (b) analyses as to whether a rate-based Rail Fuel Surcharge produces more revenues than the AII or the RCAF or any other mileage-based or cost-based fuel surcharge (or any other type of such surcharge).

20. All documents concerning any of the Defendants' (or the rail freight industry's) actual fuel costs including (but not limited to) any analyses of those fuel costs.

21. All documents concerning the actual Rail Fuel Surcharges imposed by any of the Defendants (or any other third party), both prior to 2003 and afterwards, and the method of calculation for those Rail Fuel Surcharges, including (but not limited to) any analyses of those Rail Fuel Surcharge programs.

22. To the extent not requested above, all documents concerning all other analyses concerning Rail Fuel Surcharges or the Rail Cost Indexes.

23. All documents and statistics supporting all AAR publications dealing with Rail Freight Transportation Services, Rail Fuel Surcharges, pricing, costs, capacity, market share, revenues, surcharges and profitability published during the relevant period including (but not limited to) the following reports: "Overview of America's Freight Railroads;" "U.S. Freight Railroad Productivity;" "Railroad Profitability;" "Railroad Tax Burdens;" "Differential Pricing in the Rail Industry;" "Rail Industry Mergers and Market Structure;" "The Economic Impact of America's Freight Railroads;" "Cost-Effectiveness of U.S. Freight Railroads;" and "Freight Railroad Capacity and Investment."

24. All documents concerning any barriers to entry into the rail freight transportation industry, including (but not limited to) any documents concerning the actual or projected cost of developing rail freight infrastructure (such as railroad tracks, stations, yards, and switching facilities), meeting regulatory standards, obtaining easements, or capturing market share.

25. All documents that you have received from any of the Defendants relating to Rail Fuel Surcharges or Rail Cost Indexes.

26. All documents relating to your policies or practices directed toward compliance with the United States antitrust laws, including (but not limited to) any statements signed by your employees or members, acknowledging their receipt of and compliance with your antitrust compliance policy.

27. All documents concerning meetings and communications between you and any of the Defendants about this litigation.

28. All documents referring to or relating to the plaintiffs in this litigation.

29. All written policies and procedures for the retention and/or destruction of documents.