# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

IN RE: RAIL FREIGHT FUEL SURCHARGE
ANTITRUST LITIGATION

This Document Relates To:

ALL DIRECT PURCHASER CASES

MDL Docket No. 1869
Misc. No. 07-489 (PLF/AK/JMF)

## MEMORANDUM OPINION

Now pending before the Court is <u>Defendants' Motion for Phased Discovery</u> [#187]

("Motion").[1]  Defendants propose a Case Management Order that provides for class discovery

before class certification and merits discovery.  Plaintiffs propose an alternative order that

provides for class certification at the conclusion of all fact discovery.

The issue now before this Court is whether bifurcated discovery is appropriate.

### I.     Background.

Defendants are the four largest Class I railroads based in the United States.  Plaintiffs are

eighteen businesses from multiple districts that allege that defendants entered into a conspiracy in

---

[1]Also pending before the Court is defendants' <u>Memorandum in Support of Motion for Phased Discovery</u> [#187] ("Supp. Memo."), Direct Purchaser Plaintiffs ("plaintiffs")'s <u>Opposition in Response to Defendants' Motion for Phased Discovery</u> [#228] ("Opposition"), BNSF Railway Company ("BNSF"), Union Pacific Railroad Company ("UP"), and Norfolk Southern Railway Company ("NS")'s <u>Reply Memorandum of Defendants in Support of Defendants' Motion</u> [#241] ("Reply"), CSX Transportation, Inc. ("CSXT")'s <u>Amended Reply Memorandum in Support of Defendants' Motion</u> [#250] ("Amended Reply"), <u>Plaintiffs' Supplemental Memorandum in Response to New Arguments in Defendants' Reply and Amended Reply</u> [#280] ("Sur-Reply"), CSXT's <u>Supplemental Memorandum in Further Support of Defendants' Motion</u> [#286], and BNSF, UP, and NS's <u>Response Memorandum to Plaintiffs' Supplemental Memorandum Regarding Defendants' Motion</u> [#287].

2003 which they continued to enforce through 2007.[2]   The alleged conspiracy forms the basis of the dispute in this case.

Plaintiffs allege that defendants violated federal antitrust laws by conspiring to fix and maintain the prices of rail freight transportation services through the use of Rail Fuel Surcharges. Rail Fuel Surcharges are separate fees added to customers' bills by defendants, purportedly to compensate defendants for increased fuel costs. Plaintiffs claim that defendants, in pursuit of increased profits, devised a plan to impose inflated surcharges to as many customers as possible.

As part of their plan, defendants allegedly conspired to eliminate the surcharge being used by the Association of American Railroads ("AAR") – a barrier that prevented defendants from imposing new, inflated surcharges. Plaintiffs claim that defendants conspired to cause the AAR to remove fuel from the All-Inclusive Index ("AII"), a rate-escalation provision used in most rail freight transportation agreements. The AII and a related index, the Rail Cost Adjustment Factor ("RCAF"), provided for the full recovery of fuel cost increases by railroads. Because no provision was in place to compensate railroads for fuel cost increases after the AAR removed fuel from the AII and RCAF, defendants were free to impose their own fuel surcharges.

Plaintiffs claim that defendants implemented a uniform Rail Fuel Surcharge program by which they fixed and imposed artificially high surcharges that exceeded their increased fuel costs and generated billions of dollars of profits. Plaintiffs claim that defendants agreed to maintain the established rates and took other collective actions to enforce their conspiracy. Plaintiffs also

---

[2] Plaintiffs' individual actions (there originally were thirteen) were consolidated by the Judicial Panel on Multidistrict Litigation on November 6, 2007, and they were transferred to this Court pursuant to 28 U.S.C. § 1407. Plaintiffs seek class certification pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

claim that defendants published the Rail Fuel Surcharges on their websites to ensure that each railroad adhered to the collusive pricing.

## II.   Summary of the Arguments.

### A.   Defendants' Arguments in Support of Their Motion.

District court judges are "accorded considerable discretion to limit both discovery and the extent of the hearing on Rule 23 requirements." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 324 (3d Cir. 2008).  Bifurcated discovery is warranted if "the interests of economy and reduced costs outweigh any minimal prejudice which would befall plaintiffs from delaying discovery on the merits."  Supp. Memo. at 2.  The Federal Rules of Civil Procedure promote a "just, speedy and inexpensive determination of every action."  Fed. R. Civ. P. 1.  In addition, Rule 23 encourages the determination of class certification "at any early practicable time."  Fed. R. Civ. P. 23.  Discovery pertaining "only to the merits delays the certification decision and may ultimately be unnecessary."  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14 (2004). Defendants argue that phased discovery facilitates early resolution of the class certification issue and reduces the burden of the subsequent merits discovery.

First, defendants argue that the Court should decide whether to certify a class as soon as possible.  Defendants contend that the sheer size of plaintiffs' proposed merits discovery, which includes requests for 100 depositions and 70 separate document requests, will substantially delay the potentially dispositve class certification decision.  See Coopers & Lybrand v. Livesey, 437 U.S. 463, 476 (1978).  Defendants call plaintiffs' request to proceed with merits discovery and Rule 23 briefs in the early summer of 2010 "unrealistic" given the volume of plaintiffs' requests.

Supp. Memo. at 4.  Production of documents and answers would be more efficient if limited to class certification issues, thereby expediting the Court's consideration of class certification.

Defendants claim that plaintiffs, in opposing their Motion, intend to "begin class certification briefing more than 16 months later than they originally proposed in the Joint Rule 26(f) Report."[3]  Based on plaintiffs' proposal that class briefing be completed in the end of 2010, the class certification issue may not be decided until the eve of trial in June 2011.  Defendants argue that this approach creates an unworkable schedule if some of plaintiffs' proposed class is certified.  It renders impossible interlocutory appeals of the class certification issue.[4]  Also, it unfairly exposes putative class members to key rulings before requiring them to decide whether to opt out.  See McCarthy v. Kleindienst, 741 F.2d 1406, 1412 (D.C.C. 1984) ("Fundamental fairness . . . requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable . . .").

---

[3] Local Rule 23.1(b) requires motions for class certification to be filed within 90 days unless the court offers an extension.  "That rule and its predecessors 'have been strictly applied." Reply at 2 (citing Howard v. Gutierrez, 474 F. Supp. 2d 41, 53 (D.D.C. 2007), reconsideration denied, 503 F. Supp. 2d 392 (D.D.C. 2007)).  Initially, plaintiffs submitted a proposed schedule which provided for "a class briefing in June 2009, approximately six months after the start of discovery and seven months before the close of discovery."  Reply at 3.

[4] "The fact that, unlike other procedural rules, Rule 23 has a specific appeals provision confirms the importance of interlocutory appeals in this context."  Reply at 4; see Fed. R. Civ. P. 23 advisory committee's note.

Second, bifurcated discovery, defendants argue, is logistically possible in this case.[5] Defendants acknowledge that "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  Reply at 6-7 (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).  Still, they argue, this concept does not translate into a requirement for a ruling on the merits of whether plaintiffs have established a factual conspiracy.  At the class certification stage, plaintiffs need only "demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class"; they need not prove the element of antitrust impact itself.  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 311. Proof that the challenged fuel surcharges were conspiratorial is unnecessary because, defendants argue, the alleged conspiracy is assumed at the certification stage to determine whether injury to all class members can be shown by common proof.  Reply at 9.  For example, defendants find evidence concerning their relationships with one another to be irrelevant at this stage and seek their exclusion from initial discovery.

Defendants argue that they can effectively isolate electronically stored information ("ESI") relevant to class certification from ESI relevant to the merits.  Defendants would apply "search terms for class certification topics to materials related to an agreed-upon set of custodians, and would leave for future merits discovery (if any) the application of the remaining search terms."  Reply at 11.  Defendants would use platforms that would identify documents viewed in earlier phases of discovery to prevent the need to review these documents again during

---

[5] Defendants other than CSXT have agreed to produce "transactional data; freight transportation contracts and/or rate authorities; and selected shipper negotiation histories" in addition to other documents determined by the parties to be relevant to the class certification issue.  Reply at 10-11.

merits discovery.  Reply at 12.  Manual review and classification of documents has been

outmoded, and the burden of conducting such electronic searches is one the defendants willfully

assume.  Id.

Third, defendants argue that regardless of whether a class is certified, bifurcating

discovery will reduce the costs of merits discovery because, at the very least, the parties will know

the scope of the class.  See Karan v. Nabisco, Inc., 78 F.R.D. 388, 396 (W.D. Pa. 1978).

Simultaneous class discovery and merits discovery may generate "extraordinary and unnecessary

expense and burden," in that the parties may waste resources on merits discovery that turns out to

be unnecessary either because the class is defined more narrowly than expected or the plaintiffs

decide to discontinue the case after a denial of certification.  MANUAL FOR COMPLEX LITIGATION

(FOURTH) § 21.14.  Defendants allege that phased discovery is particularly necessary in this case

because plaintiffs' proposed class faces serious certification challenges, primarily its ability to

satisfy Rule 23's "typicality" and "predominance" requirements.  Fed. R. Civ. P. 23(a)(3) and

23(b)(3).

Defendants also argue that even if plaintiffs' proposed class is certified, it must be

narrowed to conform to plaintiffs' own theory of collusion in this case.  CSXT alleges that

plaintiffs survived defendants' former motion to dismiss by defining the class as those upon

whom AIILF was imposed.  Defendants claim that subsequently, plaintiffs have expanded their

legal theory, such that AIILF is only "one means for implementing the conspiracy to impose

stand-alone 'fuel surcharges.'"  Opposition at 2 n.2.  CSXT sought an Order striking plaintiffs'

"expanded" class definition as not supported by the allegations of their complaint.  Motion for

Order Pursuant to Rule 23, or in the Alternative, for Clarification of the Court's Prior Opinion

[#239].  Accordingly, defendants argue that plaintiffs' proposed class must be narrowed to exclude the named class plaintiffs who "do not allege they had AIILF imposed on them."  Supp. Memo. at 6.

CSXT further asserts that even if plaintiff's proposed class is certified, phased discovery should still proceed only with respect to shippers who have been affected by AIILF because: "An AIILF class is ideally suited for phased discovery," "[d]iscovery of an AIILF class will have benefits even if the class theory is subsequently changed," and "[d]iscovery of narrowed class issues can proceed efficiently while any revised class definition proposed by plaintiffs is tested under the structures of both Rule 12 and Rule 23."  Amended Reply at 5-9.

Finally, defendants claim that even if their motion is denied, "the traditional approach of beginning the Rule 23 briefing well before the end of fact discovery should be followed."  Reply at 6.  The traditional approach resolves the class certification issue long before trial by mandating that the parties focus on class discovery issues during the initial stages of discovery.  Reply at 6.

### B.   Plaintiffs' Arguments in Opposition to Defendants' Motion.

Primarily, plaintiffs argue that class certification and merits evidence are indistinguishable. The "information about the nature of the claims on the merits and the proof that they require is important to deciding certification."  Hubbard v. Potter, No. 03-CV-1062, 2007 WL 604949, at *1 (D.D.C. Feb. 22, 2007).  Plaintiffs' presentation of their approach to proving a factual conspiracy and its impact at trial will "involve discovery into many 'merits' issues that defendants would apparently prefer to leave for the 'merits' phase."  Opposition at 7.  Plaintiffs claim that they need to discuss merit-based evidence at the class certification stage to explain how they intend to prove issues such as "Defendants' adoption of the fuel surcharge program, how it was imposed, and the

Defendants' purposes in doing so."  Opposition at 7-8.  Plaintiffs claim such evidence bears

directly on the issue of common impact and goes to "the showing Plaintiffs will make in support

of their class certification motion."  Opposition at 8.

Moreover, plaintiffs claim that the scope of defendants' conspiracy, including the manner

in which it was implemented and operated, "goes directly to the common application and thus

common impact of the program – issues that defendants admittedly intend to dispute at the class

certification stage."  Opposition at 9.  Because class and merits discovery overlap substantially,

plaintiffs argue that full discovery on the merits is necessary to determine the class certification

issue.  See Bodner v. Banque Paribas, 202 F.R.D. 370, 373 (E.D.N.Y. 2000).

Second, plaintiffs assert that bifurcation is the exception rather than the norm with regards

to discovery in the federal courts.  Plaintiffs argue that bifurcation is inappropriate in this case

because it would not promote "fairness and efficiency."  In re Plastics Additives Antitrust Litig.,

No. 03-CV-2038, 2004 WL 2743591, at *2 (E.D. Pa. Nov. 29, 2004) (citing MANUAL FOR

COMPLEX LITIGATION (FOURTH) § 11.213).  Plaintiffs explain that other jurisdictions have

adopted approaches in which the record is thoroughly developed before the class certification

issue is decided.  See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 307.  In this case,

plaintiffs argue that "class certification should be addressed after merits discovery" to allow

plaintiffs to present their "trial plan" to the Court.  Opposition at 15.

Third, plaintiffs claim that simultaneous class and merits discovery would be more

efficient than bifurcated discovery.  Essentially, plaintiffs argue that it would be impossible for

defendants to develop meaningful search terms that would distinguish between class and merits

discovery in the production of ESI.  Opposition at 17.  Because of this deficiency, plaintiffs argue,

8

defendants would have to "perform the extra step of conducting a document-by-document review to separate 'class' and 'merits' documents, and finally create a log similar to a privilege log to allow plaintiffs to challenge any improper designations made." Opposition at 19. Such extra steps, plaintiffs argue, would cause great expense, further delays, and discovery disputes that would not otherwise exist. Opposition at 19-20. Similarly, plaintiffs argue that bifurcated discovery would result in more depositions because witnesses would have to be deposed twice. Opposition at 20-21.

Fourth, plaintiffs deny that their proposed class exceeds their theory of the case and explain that, although all putative class members may not have been subjected to AIILF, AIILF was only one step – among many – taken by defendants to impose a broad conspiracy.[6] Plaintiffs argue that even if the proposed class size were narrowed, the scope of merits discovery, which focuses on "Defendants' alleged agreement to fix prices through the use of fuel surcharges and the implementation of their conspiracy" would not be narrowed. Opposition at 22. "The alleged violations of a price fixing conspiracy . . . will focus on the actions of the defendants." In re Vitamins Antitrust Litig., 209 F.R.D. 251, 264 (D.D.C. 2002).

Fifth, plaintiffs argue that bifurcated discovery would cause additional disputes and delays. Because "the Court may be forced to spend time and resources resolving discovery disputes over what is 'merit' discovery as compared to 'class' discovery," bifurcated discovery "belies the principles of judicial economy." In re Plastics Additives Antitrust Litig., 2004 WL 2743591, at *3. Bifurcated discovery will enable the defendants to deny plaintiffs access to "damaging documents, including evidence bearing on class certification, by arguing that the information goes

---

[6] Judge Friedman has resolved this question in plaintiffs' favor.

to 'merits' as opposed to 'class' issues." Opposition at 23. Concerns over the costs and burdens of discovery are "misplaced," because the plaintiffs "are entitled to discovery in order to determine to what relief, if any, they are entitled" after they have asserted a plausible claim. In re Rail Freight Fuel Surcharge Antitrust Litig., 587 F. Supp. 2d 27, 32 (D.D.C. 2008).

Last, plaintiffs deny defendants' claim that this suit is inappropriate for certification as a class-action lawsuit. They argue that defendants misstate the law and mischaracterize plaintiffs' claims. Plaintiffs emphasize courts' tendencies to "repeatedly [find] antitrust claims to be particularly well suited for class actions" and to "resolve doubts in favor of certifying the class" due to the "important role for class actions in the private enforcement of antitrust claims." In re Lorazepam & Clorazepate Antitrust Litig., 202 F.R.D. 12, 22 (D.D.C. 2001). Plaintiffs also assert their ability to satisfy the "typicality," "adequacy," and "predominance" requirements of Rule 23. See Fed. R. Civ. P. 23(a)(3), (a)(4), and (b)(3).

### III.   Analysis.

### A.   Standard of Review.

In resolving motions to bifurcate discovery at the pre-certification stage, district courts must "balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties." Hubbard v. Potter, 2007 WL 604949, at *2 (citing Shushan v. Univ. of Colorado, 132 F.R.D. 263, 268 (D. Colo. 1990)). "Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification." Id. (citing Nat'l Org. for Women v. Sperry Rand Corp., 88 F.R.D. 272, 277 (D. Conn. 1980)). The District of Columbia Circuit Court has not set a "bright line" test to determine the circumstances under which discovery should be bifurcated. Id. Bifurcation, however, is

generally permitted in cases in which it promotes "fairness and efficiency."  In re Plastics

Additives Antitrust Litig., 2004 WL 2743591, at *2 (citing MANUAL FOR COMPLEX LITIGATION

(FOURTH) § 11.213).  Although some discovery is necessary to resolve certification issues, "pre-

certification discovery is subject to the limitations which may be imposed by the court, and any

such limitations are within the sound discretion of the court."  Hubbard, 2007 WL 604949, at *2

(citing Nat'l Org. for Women, 88 F.R.D. at 277; Chateau de Ville Prod., Inc. v. Tams-Witmark

Music Library, Inc., 586 F.2d 962, 966 (2d Cir. 1978)).

**B.**     **Defendants' Proposal to Provide Plaintiffs with Voluntary Disclosures and Thereby Eliminate the Need for a Search into Their Data.**

Early certification of a class has significant advantages, so bifurcation of discovery into

merits and class certification to facilitate early resolution has initial appeal.  But, that appeal may

prove superficial in any antitrust case, particularly one in which most of the discovery is going to

be of ESI.

Defendants argue that it would be simple, in practice, to isolate the items that are relevant

to class certification and the items that would be relevant to the merits of the case.  Defendants

identify three types of documents that they consider to be relevant to the issue of class

certification, offer to produce those, and invite the plaintiffs to make good faith suggestions for

other types of documents that plaintiffs deem relevant to the class certification issue.

First of all, defendants have to concede that they are asking plaintiffs (and therefore the

Court) to accept their formulation of the certification question and their determination of what

pertains to it.  But, the whole purpose of discovery is to find not only those documents that

defendants wish for plaintiffs to see but all documents that pertain to the certification issue that

11

plaintiffs believe will advance their position.  To limit plaintiffs to what defendants will give them

is to, in effect, begin and end discovery with defendants' voluntary disclosures.  But, unlike

continental systems where discovery consists of what the parties voluntarily exchange, the

American system expressly authorizes each party to independently demand relevant evidence

from its opponent.  While bifurcated discovery may have much to recommend it, defendants'

assertions about the ease with which they can find responsive documents only apply if I limit

plaintiffs to what defendants will give them.  That approach in effect amends the Federal Rules of

Civil Procedure to create a unique form of discovery for class actions.

To the extent that all documents of a certain type are relevant to class certification, it is

relatively easy to see how the defendants could isolate all documents of that type and produce

them without having to go through an expensive and time consuming review process.  Things

become infinitely more complicated, however, when we are confronted with the possibility that

there will exist, within a given type of document – such as e-mails, memoranda, or meeting

minutes – items that are relevant to class certification, items that are relevant to the merits, and

items that aren't relevant to the case at all.

The creators of the pertinent ESI could not possibly have foreseen that it would some day

prove important to discriminate and differentiate between information that pertained to a policy

and information that pertained to the impact of that policy upon a discrete group of consumers.

Moreover, the creation of means to search large databases is a work in progress and no one has

suggested how the search of defendants' data could be refined so that a search engine of some sort

could yield ESI that pertained to impact but not ESI pertaining to any thing else.  While

defendants blithely suggest that the lawyers in this case are skilled at searching and can therefore

find what they need, they do not propose exactly how the lawyers will use this claimed expertise and create a search engine so refined and exquisite that it will yield information bearing on the certification question but not the merits.

### C.    The Distinctiveness of "Merits-Based" and "Certification-Based" Evidence.

Courts must consider the degree to which the certification evidence is "closely intertwined" with, and indistinguishable from, the merits evidence in determining whether bifurcation is appropriate.  Cima v. WellPoint Health Networks, Inc., No. 05-CV-4127, 2008 WL 746916, at *4 (S.D. Ill. Mar. 18, 2008).  Here, the evidence plaintiffs need for certification purposes is closely intertwined with the merits evidence.  See In re Plastics Additives Antitrust Litig., 2004 WL 2743591, at *3-4 (finding certification and merits discovery to be "sufficiently intermingled" when plastic companies entered into a national price-fixing conspiracy because the discovery needed to prove the existence of the conspiracy (merits) and the consequential damages to the class members (certification) overlapped).

To certify the class, plaintiffs must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  To satisfy this "predominance" requirement, plaintiffs must secure evidence concerning "Defendants' adoption of the fuel surcharge program, how it was imposed, and the Defendants' purposes in doing so" which bears directly on the element of common impact.  Opposition at 8.  In essence, the scope of defendants' alleged conspiracy is indistinguishable from its operation.  Plaintiffs need evidence concerning the operation of the conspiracy – evidence defendants classify as "merits-based" – to establish the scope of the

conspiracy.  In turn, plaintiffs need evidence of the scope of the conspiracy to prove common impact and thereby satisfy Rule 23's "predominance" requirement.

Here, the alleged conspiracy's operation and scope are so closely intertwined that it would be an "arbitrary insistence . . . that thwarts the informed judicial assessment that the current class certification practice emphasizes" to insist that one be classified as "certification evidence" and the other as "merits evidence."  Hubbard, 2007 WL 604949, at *1;  see Gray v. First Winthrop Corp., 133 F.R.D. 39, 41 (N.D. Cal. 1990) (denying a stay of discovery to defendants who alleged that class certification was unlikely because of the impracticalities of distinguishing "merits" and "class" discovery, as they were "closely linked issues").

### D.    The Promotion of Judicial Economy and Efficiency.

Bifurcated discovery fails to promote judicial economy when it requires "ongoing supervision of discovery."  Id.  If bifurcated, this Court would likely have to resolve various needless disputes that would arise concerning the classification of each document as "merits" or "certification" discovery.  See In re Urethane Antitrust Litig., 237 F.R.D. 454, 459 (D. Kan. 2006) (citing Fed. R. Civ. P. 26(b)(2)(iii) ("[T]he court must limit the frequency or extent of discovery . . . if . . . the burden or expense of the proposed discovery outweighs its likely benefit . . . ")).  Concurrent discovery is more efficient when bifurcation "would result in significant duplication of effort and expense to the parties."  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.213;  see In re Hamilton Bancorp, Inc. Sec. Litig., No. 01-CV-0156, 2002 WL 463314, at *1 (S.D. Fla. Jan. 14, 2002) (explaining that in certain cases, bifurcation may increase the costs of litigation by "protracting the completion of discovery, coupled with endless disputes over what is 'merit' versus 'class' discovery").

14

Furthermore, the continued need for supervision and the increased number of disputes would further delay the case proceedings.  Such prevention of the "expeditious resolution of the lawsuit" would prejudice plaintiffs.  In re Plastics Additives Antitrust Litig., 2004 WL 2743591, at *6;  see Fed. R. Civ. P. 1 (The Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination" of actions).  A significant public interest exists in the "vigorous enforc[ement of] national anti-trust laws through the expeditious resolution of [] private antitrust litigation."  In re Plastics Additives Antitrust Litig., 2004 WL 2743591, at *8 (citing Golden Quality Ice Cream, Co. v. Deerfield Specialty Papers, Inc., 87 F.R.D 53, 58 (E.D. Pa. 1980)).  This public interest is even greater in class actions.  Id.

In this case, the need for the Court to facilitate a resolution is especially strong.[7] Defendants' proposal would not increase the efficiency of case proceedings, but would delay the proceedings and ultimately, the resolution of the case.  See In re Plastics Additives Antitrust Litig., 2004 WL 2743591, at *3 (denying a motion to bifurcate discovery due to the delays bifurcation would cause when the matter had already been on the docket for 18 months); 3 WILLIAM B. RUBENSTEIN, ALBA CONTE, & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 9.44 (4th ed. 2009) (explaining that bifurcated discovery which creates the need for the court to rule on whether the discovery pertains to the merits or class certification is therefore inefficient).

Even if plaintiffs' proposed class is not certified, discovery into merits-based evidence is not necessarily wasted; the information "may be valued circumstantial evidence" if litigation

---

[7] The first of the suits consolidated by the Judicial Panel on Multidistrict Litigation was filed over two years ago, in May 2007, and the cases were consolidated in November 2007. Opposition at 2.  The limited amount of information produced thus far was done so only pursuant to Judge Friedman's Order on Motion for Protective Order [#114].

continues absent certification.  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14.  At this

stage, "there is no reason to believe that denial of class certification will terminate this litigation."

In re Plastics Additives Antitrust Litig., 2004 WL 2743591, at *4.  Eighteen individual businesses

from multiple districts have alleged claims against defendants.  Each business independently

sought judicial relief before four businesses moved to consolidate the cases.  See id. (denying

motion to bifurcate discovery and finding that litigation was likely to continue absent class

certification when seven individual lawsuits were filed before the case was consolidated, and six

additional lawsuits were filed after consolidation was stayed pending class certification).

### E.    A Premature Evaluation of Plaintiffs' Ability to Satisfy Rule 23's Certification Requirements.

Defendants' attempt to pre-argue the class certification issue is unpersuasive.  "Discovery

relating to class certification is closely enmeshed with merits discovery, and in fact cannot be

meaningfully developed without inquiry into the basic issues of the litigation."  Gray, 133 F.R.D.

at 41 (citing MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.12 (1985)).  Defendants'

argument that "discovery is premature, burdensome, and inefficient" at this stage is an attempt to

"litigate prematurely the sufficiency of the complaint and the appropriateness of class

certification."  Gray, 133 F.R.D. at 41.

This Court has already established the sufficiency of the complaint.  See In re Rail Freight

Fuel Surcharge Antitrust Litig., 593 F. Supp. 2d 29 (D.D.C. 2008) (denying defendants' motion to

dismiss plaintiffs' federal antitrust claim for injunctive relief and granting defendants' motion to

dismiss plaintiffs' state law claims for lack of subject matter jurisdiction); In re Rail Freight Fuel

Surcharge Antitrust Litig., 587 F. Supp. 2d 27 (D.D.C. 2008) (denying defendants' motion to

dismiss for failure to state a claim).  The Court will not accept defendants' "glowing assessment"
of its own arguments – namely, that class certification will fail or be substantially narrowed–"as a
reason to bifurcate."  See also Intervet, Inc. v. Merial Ltd., No. 06-CV-658, 2008 WL 2411276, at
*2 (D.D.C. June 11, 2008) (declining to bifurcate privilege issue from merits based on movant's
assessment of its own arguments).

Defendants' argument that class certification must be substantially narrowed such that
plaintiffs' proposed class conforms to their theory of collusion is without merit.  Contrary to
defendants' assertions, Judge Friedman has already found, in his denial of CSXT's motion, that
plaintiffs' "complaint alleges a broader conspiracy by the defendants . . . Adoption of the AIILF
was one of the steps . . . but not the only step [] allegedly taken by the defendants to implement
this broader conspiracy."  Memorandum Opinion and Order Denying Defendant's Motion for a
Hearing and Denying Defendant's Motion for Clarification [#281] at 1.  Thus, I will not address
CSXT's arguments regarding the breadth of the class or CSXT's interpretation of the opinion
denying the motion to dismiss.

**F.     Defendants' Proposal to Begin Phased Discovery with a Limited Class Sample.**

As Judge Friedman has already found that CSXT's interpretation is incorrect, CSXT's
proposal to begin discovery only with respect to the shippers who have been affected by AIILF
takes on new implications.  Where before CSXT was essentially saying it wanted to get started
with discovery on a smaller issue and fold in any additional issues as they arise, now, CSXT's
proposal would result in a test-certification process where the parties would conduct discovery on
class issues pertaining to AIILF shippers, go through the certification process, and then,
presumably, address the merits of the AIILF claims and begin discovery as to the other issues.

This could be a three or four stage process, and CSXT has not demonstrated why the results in an AIILF test case would accurately predict the results that would obtain if plaintiffs sought to certify the class as they believe it should be defined.  Given that we already know that the scope of the putative class is larger than the AIILF claims alone, little will be saved in terms of time and resources by litigating class certification twice.

      **G.**     **Plaintiffs' Proposal for Full and Complete Discovery Before Certification.**

This discussion is not to say that untrammeled and unlimited discovery is appropriate before the issue of class certification is addressed.  See Hubbard, 2007 WL 604949, at *2 (explaining that discovery on the merits need not be completed before class certification). Plaintiffs will have to concede that what may be a king's ransom will have been spent on discovery that may never be used if Judge Friedman denies class certification or narrows the nature of the class.  Settlements based solely on avoiding discovery costs are not the hallmark of a judicial system that is working fairly.  Thus, I am obliged to create a means by which the merits discovery that I will permit is no greater than it has to be.  Working from the principle that nothing concentrates a lawyer's mind like a deadline, I have rejected plaintiffs' attempt to postpone briefing of the class certification until all discovery is finished, and a date for dispositive motions is set.  See In re Graphics Processing Units, 253 F.R.D. 478, 482 (N.D. Cal. 2006) (demonstrating that district courts have the discretion to set the dates of Rule 23 briefings before the close of discovery).

Instead, I intend to allow an initial period of discovery, after which the parties will have to brief the certification issue.  See Hubbard, 2007 WL 604949, at *1 (providing the parties in Scheduling Order [#66] with approximately 120 days before the Rule 23 briefing to conduct only

class-based discovery); In re Plastics Additives Antitrust Litig., 2004 WL 2743591, at *15

(explaining that decision not to bifurcate "may require the parties to spend substantial time in

responding simultaneously to merits-based discovery and class-based discovery" and therefore,

providing that parties with 120 days rather than originally proposed 60 to conduct discovery

before the Rule 23 briefings); In re Graphics Processing Units, 253 F.R.D. at 483 (determining

the class certification issue one month before the non-expert discovery cut-off date).

      I appreciate that this is a compromise but I can only hope that like any compromise it will

displease both sides equally.  It is my goal to avoid creating the new discovery disputes that would

arise by instituting a new criterion – relevance to certification – on top of the requirements for

discoverability outlined in the Federal Rules of Civil Procedure.  I also would like to see the issue

of certification resolved as quickly as it can be to bring certainty to the litigation and avoid

wasting resources on discovery that turns out to be irrelevant.  Also, as discussed herein, I want to

allow plaintiffs to make their case for certification using the evidence and arguments that they

consider to be the most appropriate and not to be limited to the information that defendants or the

Court might have chosen.  I find this a preferable solution to attempting to define the ineffable by

attempting to identify in advance what ESI will bear on the certification issue and not the merits

and what I view as the unacceptable solution of limiting plaintiffs to the information defendants

deem relevant to the certification issue.

      Accordingly and in light of this Opinion and the passage of time since the parties' first

proposed schedules, I will order counsel to meet and confer in the next ten days to ascertain

whether they can jointly agree to a schedule for all the remaining events to take place in the case,

with the understanding that I will insist that any such schedule allow for briefing of the

certification issue before the conclusion of discovery and to file a jointly proposed schedule if they can.  If the parties cannot agree, each side will have to file proposed schedules fourteen days from the date of this Order.

### IV.   Conclusion.

For the reasons discussed herein, defendants' Motion [#187] will be denied.  An Order accompanies this Memorandum Opinion.


Dated: July 2, 2009                                       _____/S/_____
                                                          JOHN M. FACCIOLA
                                                          U.S. MAGISTRATE JUDGE