UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL Docket No. 1869<br>Misc. No. 07-489 (PLF) |
| This document relates to:<br><br>ALL CASES | |

**DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
ANSWER TO DIRECT PURCHASER PLAINTIFFS'
SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

COMES NOW Defendant Norfolk Southern Railway Company ("NS") by its attorneys, and for its answer to Direct Purchaser Plaintiffs' Second Consolidated Amended Class Action Complaint, states as follows:

1.      NS admits that Plaintiffs purport to bring an action on behalf of a putative class against NS, BNSF Railway Company ("BNSF"), Union Pacific Railroad Company ("UP") and CSX Transportation, Inc. ("CSXT").    NS denies that this action may properly be maintained as a class action and denies that NS has engaged in price fixing in violation of Section 1 of the Sherman Act.    NS denies the remaining allegations of Paragraph 1.

2.      NS denies that it engaged in the alleged conspiracy and denies the remaining allegations in Paragraph 2, including those that purport to define a "rail fuel surcharge."

1

3.      Paragraph 3 states legal conclusions to which no response is required.    To the extent a response is required, NS is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding other railroads, and NS denies the allegations to the extent directed at NS.

4.      NS admits that some of its rail freight transportation contracts as of 2003 included rate escalation provisions based on the Rail Cost Adjustment Factor ("RCAF"), which is a cost index derived from the All Inclusive Index ("AII").    NS states that the RCAF and AII were created pursuant to federal statute, 49 U.S.C. § 10708, and are calculated quarterly by the Association of American Railroads ("AAR") and then submitted to and approved by the Surface Transportation Board ("STB").    NS is without knowledge or information sufficient to form a belief as to the last sentence in Paragraph 4.    NS denies the remaining allegations in Paragraph 4.

5.      NS denies the allegations in Paragraph 5.

6.      NS denies the allegation in Paragraph 6.

7.      NS is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 7 regarding BNSF and UP.    NS denies the remaining allegations in Paragraph 7.

8.      NS admits that the NS CEO serves on the Board of the AAR and that the AAR Board has regularly scheduled meetings.    NS denies the remaining allegations in Paragraph 8.

9.      NS admits that the third sentence of Paragraph 9 contains an accurate quote from the AAR publication "AAR Railroad Cost Indexes."    NS is without knowledge or information sufficient to form a belief as to the allegation in the last sentence in Paragraph 9.    NS denies the remaining allegations in Paragraph 9.

2

10.     NS is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 10.   NS denies the accuracy of the content of the quote attributed to UP's James R. Young, and states that NS assessed fuel surcharges on unregulated rate authorities at least as early as June 2000.

11.     NS is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 11 related to statements attributed to James Young.   NS denies the remaining allegations in Paragraph 11.

12.     NS denies the allegations in Paragraph 12.

13.     NS is without knowledge or information sufficient to form a belief as to the conduct of any other railroad.   NS denies the remaining allegations in Paragraph 13, but affirmatively states that, since NS initiated its fuel surcharge mechanisms in 2000, as set forth more fully in response to Paragraph 57, NS has had fuel surcharges calculated as a "percentage multiplier of the *total* base rate for the rail freight transportation."

14.     NS denies the allegations in Paragraph 14, except admits that it has posted on its web site a fuel surcharge mechanism applied to traffic moving pursuant to regulated rate authorities and that could be applied to other traffic.

15.     NS is without knowledge or information sufficient to form a belief as to the conduct of any other railroad.   NS denies the allegations in Paragraph 15.

16.     NS admits that the Surface Transportation Board issued a decision on January 25, 2007, entitled "Rail Fuel Surcharges" that pertained to regulated traffic not at issue in this action. NS respectfully refers the Court to the decision for a full and complete understanding of its contents, and otherwise denies the allegations in Paragraph 16.

17.     NS admits that the American Chemistry Council and an entity calling itself the Consumers United for Rail Equity issued a purported study of railroad fuel surcharge revenue in 2007.   NS is without knowledge or information sufficient to form a belief as to the accuracy of the study's findings or of Plaintiffs' characterization of the study.

18.     NS is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 18 related to CSXT, BNSF and UP.   NS admits the statements contained in the fifth and sixth sentences of Paragraph 18, which were published in NS's SEC Form 10-K, dated February 15, 2008.   NS affirmatively states that it has been notified by the office of the New Jersey Attorney General that it is not proceeding with its investigation at this time.

19.     The first sentence of Paragraph 19 sets forth a legal conclusion to which no response is required.   NS denies the allegations in Paragraph 19.

20.     NS admits that Plaintiffs purport to bring an action for damages related to rail freight transportation under private transportation contracts and other means exempt from rate regulation, and are not seeking damages related to rate regulated rail freight transportation.

21.     NS is without knowledge or information sufficient to form a belief as to the allegations in the first two sentences of Paragraph 21 and as to Dust Pro, Inc.'s commercial dealings with other railroads.   NS denies that Dust Pro, Inc. directly purchased unregulated rail freight transportation from NS during the class period.   NS denies the remaining allegations in Paragraph 21.

22.     NS is without knowledge or information sufficient to form a belief as to the allegations in the first three sentences of Paragraph 22.   NS admits that it provided rail freight

transportation services to Carter Distributing Company during the class period.   NS denies the remaining allegations in Paragraph 22.

23.    NS is without knowledge or information sufficient to form a belief as to the allegations in the first two sentences of Paragraph 23.   NS admits that it sold unregulated rail freight transportation services to Strates Shows, Inc. during the class period.   NS denies the remaining allegations in Paragraph 23.

24.    NS is without knowledge or information sufficient to form a belief as to the allegations in the first four sentences of Paragraph 24.   NS admits that it provided rail freight transportation services to US Magnesium LLC during the class period.   NS denies the remaining allegations in Paragraph 24.

25.    NS is without knowledge or information sufficient to form a belief as to the allegations in the first four sentences of Paragraph 25.   NS admits that it provided rail freight transportation services to Zinifex Taylor Chemicals, Inc. during the class period.   NS denies the remaining allegations in Paragraph 25.

26.    NS is without knowledge or information sufficient to form a belief as to the allegations in the first two sentences of Paragraph 26.   NS admits it sold unregulated rail freight transportation services to Donnelly Commodities Inc. during the class period.   NS denies the remaining allegations in Paragraph 26.

27.    NS is without knowledge or information sufficient to form a belief as to the allegations in the first four sentences of Paragraph 27.   NS admits that it provided rail freight transportation services to Dakota Granite Company during the class period.   NS denies the remaining allegations in Paragraph 27.

28.     NS is without knowledge or information sufficient to form a belief as to the allegations in the first two sentences of Paragraph 28.   NS admits that it provided unregulated rail freight transportation services to Olin Corporation during the class period.   NS denies the remaining allegations in Paragraph 28.

29.     NS admits that CSXT provides rail freight transportation services.   NS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 29.

30.     NS admits the first and second sentences of Paragraph 30.   As to the fourth sentence, NS (1) has an ethanol transload facility at 1000 S. Van Dorn St., in Alexandria, Virginia, which formerly was an intermodal facility and (2) formerly maintained a government relations office at 1500 K Street, N.W., #375, Washington, D.C. 20005.   NS denies the remaining allegations in Paragraph 30.

31.     NS admits that BNSF provides rail freight transportation services.   NS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 31.

32.     NS admits that UP provides rail freight transportation services.   NS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 32.

33.     NS admits that Plaintiffs purport to bring this action under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages and reasonable attorneys fees and costs from Defendants for the injuries allegedly sustained by Plaintiffs and members of the Class by reasons of Defendants' alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.   NS denies the remaining allegations in Paragraph 33.

34.     NS admits that this Court has jurisdiction over these consolidated actions.

35.     NS admits that venue is proper in this District, but denies all remaining allegations in Paragraph 35.

36.     NS does not challenge venue in this District.

37.     NS does not challenge the jurisdiction of this Court over NS in this matter, but NS otherwise denies the allegations in Paragraph 37, including the allegations in subsection (d).

38.     Paragraph 38 states legal conclusions to which no response is required.   To the extent Paragraph 38 contains allegations of fact, NS admits that Plaintiffs purport to bring this suit as a class action, but denies that class certification is appropriate or that the class as stated in Paragraph 38 is properly defined.

39.     Paragraph 39 states legal conclusions to which no response is required.   To the extent a response is required, NS admits that Plaintiffs purport to represent a numerous and geographically dispersed class, but denies that certification of any class is appropriate and otherwise denies the allegations in Paragraph 39.

40.     Paragraph 40 states legal conclusions to which no response is required.   To the extent a response is required, NS denies the allegations in Paragraph 40.

41.     Paragraph 41 states legal conclusions to which no response is required.   To the extent a response is required, NS denies the allegations in Paragraph 41.

42.     Paragraph 42 states legal conclusions to which no response is required.   To the extent a response is required, NS denies the allegations in Paragraph 42.

43.     Paragraph 43 states legal conclusions to which no response is required.   To the extent a response is required, NS denies the allegations in Paragraph 43.

44.     Paragraph 44 states legal conclusions to which no response is required.    To the extent a response is required, NS denies the allegations in Paragraph 44.

45.     NS is without sufficient knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45.

46.     Paragraph 46 states legal conclusions to which no response is required, and NS denies those allegations on that basis.    NS admits that it provides rail freight transportation services in interstate commerce.

47.     Paragraph 47 states legal conclusions to which no response is required.    To the extent Paragraph 47 contains allegations of fact, they are denied.

48.     Paragraph 48 states legal conclusions or opinions to which no response is required. NS admits that Congress partially deregulated the railroad industry with the passage of the Staggers Rail Act of 1980.

49.     NS admits the allegations in Paragraph 49.

50.     NS is without knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 50, and NS denies the remaining allegations in Paragraph 50.

51.     NS admits that there are seven Class I railroads, including two Canadian railroads. NS denies the remaining allegations in Paragraph 51.

52.     NS denies the allegations in Paragraph 52.

53.     NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first and third sentences of Paragraph 53.    NS denies the allegations in the second sentence of Paragraph 53, except that it admits the STB engaged in a proceeding related to rules for Class I mergers.

54.     NS denies the allegations in Paragraph 54.

55.     NS admits that the AAR publishes a number of cost indexes, including the RCAF and AII, which are intended to reflect general changes in railroad costs and which railroads may or may not use in rail freight transportation contract rate escalation provisions.   NS denies the remaining allegations in Paragraph 55.

56.     NS denies the allegations in Paragraph 56.

57.     NS is without knowledge or information sufficient to form a belief as to the conduct of other railroads.   To the extent the allegations are directed at NS, NS denies the allegations in Paragraph 57.   NS affirmatively states that, effective on or about June 28, 2000, it published a separate fuel surcharge that was calculated as a percentage of the base rate, that was applied to traffic moving pursuant to a regulated rate authority, that could be applied to other traffic, and that was triggered by certain events as follows:

> In the event the price of West Texas Intermediate Crude Oil, as published in the Wall Street Journal, exceeds $28.00 per barrel for thirty (30) consecutive days, NS retains the option to apply a fuel surcharge to the rate charge(s) in effect on the date the fuel surcharge is applied, herein after referred to as the 'Base Freight Charge(s).'   If this option is exercised, the fuel surcharge shall be applied according to the following Schedule.

Texas Intermediate Cumulative Crude Oil Fuel Surcharge

| Price per Barrel | Percentage |
| --- | --- |
| $28.01 | 2% |
| $33.01 | 4% |
| $38.01 | 6% |
| $43.01 | 8% |

Each $5.00 per barrel increase an additional 2% thereafter.

At times, application of this fuel surcharge mechanism resulted in no surcharge because the volatility of the price of oil prevented the price from staying above the designated threshold levels for 30 consecutive days.   NS modified this fuel surcharge mechanism effective March 1, 2004, as set forth more fully in response to Paragraph 70.   As was the case prior to 2003, negotiations with shippers may have resulted in the application of fuel surcharge mechanisms different from those published and intended for traffic moving pursuant to regulated rate authorities and may have resulted in the application of no fuel surcharge mechanism.   Similarly, negotiations may have resulted in the application of any number of rate escalation provisions, using a number of different cost indices or other escalation mechanisms.

58.    NS admits that a NFTA conference occurred on April 2-6, 2003 at the Wigwam resort in Litchfield Park, Arizona.    NS denies the remaining allegations in Paragraph 58.

59.    NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.

60.    NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60.

61.    NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61.

62.    NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62.

63.    NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63.

64.     NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 64.    NS denies the remaining allegations in Paragraph 64.

65.     NS denies the allegations of Paragraph 65.

66.     NS admits that, in December 2003, the AAR publication *AAR Railroad Cost Indexes* announced the creation of a cost index, the All Inclusive Index Less Fuel or AIILF, that was derived from another AAR cost index, the All Inclusive Index or AII.    The AIILF includes the same cost components of the AII with the exception that the fuel component of the AII is excluded.    NS admits that the third sentence of Paragraph 66 contains an accurate quote from the AAR publication "AAR Railroad Cost Indexes."    NS admits the allegation in the last sentence of Paragraph 66.    NS denies the remaining allegations in Paragraph 66.

67.     NS is without knowledge or information sufficient to form a belief as to the truth of the allegation that the AIILF was the first cost index created by AAR that did not include a fuel component.    NS denies the remaining allegations in Paragraph 67.

68.     NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.

69.     NS denies the allegations in Paragraph 69.

70.     NS denies the allegations in Paragraph 70.    NS affirmatively states that, effective March 1, 2004, it published a separate fuel surcharge calculated as a percentage of the base rate that was a modification of its published fuel surcharge mechanism initiated in June 2000, as set forth in response to Paragraph 57, that was applied to traffic moving pursuant to a regulated rate authority, that could be applied to other traffic, and that was triggered by certain events as follows:

The formula for determining the fuel surcharge is based on the monthly average price of West Texas Intermediate Crude Oil (WTI Average Price), an industry standard for tracking oil prices.   The WTI Average Price for a given calendar month is determined by adding the daily WTI prices published in the Wall Street Journal during a calendar month, and dividing the result by the number of days so published.   The result is rounded to the nearest cent.

The fuel surcharge will be 0.4% of the linehaul freight charge for every $1 per barrel, or portion thereof, by which the WTI Average Price exceeds $23, starting at a WTI Average Price of $23.01.   The following schedule provides the fuel surcharge within the noted WTI Average Price ranges.

| WTI Average Price Per Barrel | Fuel Surcharge Percentage |
|---|---|
| $23.00 and Below | No Surcharge |
| $23.01 - $24.00 | 0.4% |
| $24.01 - $25.00 | 0.8% |
| $25.01 - $26.00 | 1.2% |
| . . . | |
| $84.01 - $85.00 | 24.8% |

Negotiations with shippers may have resulted in the application of fuel surcharge mechanisms different from those published and applied to traffic moving pursuant to regulated rate authorities and may have resulted in the application of no fuel surcharge mechanism.   Similarly, negotiations may have resulted in the application of any number of rate escalation provisions, using a number of different cost indices or other escalation mechanisms.

71.     NS denies the allegations in Paragraph 71.

72.     NS denies the allegations in Paragraph 72.

73.     NS denies the allegations in Paragraph 73.

74.     NS denies the allegations in Paragraph 74.

75.     NS denies the allegations in Paragraph 75.

76.     NS denies the allegations of Paragraph 76.   To the extent the first sentence of Paragraph 76 contains a legal conclusion, no response is required.

77.     NS denies the allegations in Paragraph 77.

78.     NS is without knowledge or information sufficient to form a belief as to the conduct of any other railroad.    NS denies the remaining allegations in Paragraph 78.

79.     NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79.

80.     NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80.

81.     NS denies the allegations in Paragraph 81.

82.     NS admits that the fuel surcharge percentages listed in the chart in Paragraph 82 attributable to NS are a correct transcription of fuel surcharge percentages found on NS's website (http://www.norfolksouthern.com) related to NS's fuel surcharge mechanism that was applied to carload traffic moving pursuant to regulated rate authorities, that was effective March 1, 2004, through June 30, 2006, and that could be applied to other traffic.    NS denies that the chart accurately represents the fuel surcharges that were actually charged to each and every shipper of unregulated (exempt and contract) traffic.    NS also denies that the chart is an accurate representation of the published fuel surcharge mechanism for carload traffic moving pursuant to regulated rates after June 30, 2006.    NS affirmatively states that, effective July 1, 2006, it published a separate fuel surcharge calculated as a percentage of the base rate that was a modification of its published fuel surcharge mechanism initiated in March 2004, as set forth in response to Paragraph 70.    Furthermore, effective April 1, 2007, NS discontinued assessing a fuel surcharge on its local traffic moving pursuant to a regulated rate authority.    NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 relating to CSXT's fuel surcharge.

83.     NS denies the allegations in Paragraph 83.

84.     NS admits that in July 2003, *Traffic World* published an article called "Follow the Competition."   That article speaks for itself as to its contents.   NS denies the remaining allegations in Paragraph 84.

85.     NS denies the allegations in the first sentence of Paragraph 85.   NS admits that the American Chemistry Council and an entity calling itself the Consumers United for Rail Equity issued a purported study of railroad fuel surcharge revenue in 2007.   NS is without knowledge or information sufficient to form a belief as to the accuracy of the study's findings or the Plaintiffs' characterization of the study.

86.     NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86.

87.     NS denies the allegations in Paragraph 87.

88.     NS denies the allegations in Paragraph 88.

89.     NS admits that it has negotiated and continues to negotiate contracts with varying durations, which may include various fuel surcharge mechanisms and which may include various rate escalation mechanisms.   NS denies the remaining allegations in Paragraph 89.

90.     NS denies the allegations in Paragraph 90.

91.     NS is without knowledge or information sufficient to form a belief as to the truth of allegations about other railroads.   Insofar as the allegations are directed to NS, NS denies the allegations in Paragraph 91.

92.     NS is without knowledge or information sufficient to form a belief as to the truth of allegations about other railroads.   Insofar as the allegations are directed to NS, NS denies the allegations in Paragraph 92.

93.     NS is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93.

94.     NS is without knowledge or information sufficient to form a belief as to the truth of allegations about other railroads.    Insofar as the allegations are directed to NS, NS denies the allegations in Paragraph 94.

95.     NS denies the allegations in Paragraph 95, except admits that the carload information set forth in the table appears to have been reproduced from AAR publications.

96.     NS admits that the STB issued a decision on January 25, 2007, entitled "Rail Fuel Surcharges" that pertained to regulated traffic not at issue in this action.    NS respectfully refers the Court to the decision for a full and complete understanding of its contents, and otherwise denies the allegations in Paragraph 96.

97.     NS admits that the STB decision does not apply to the rail freight transportation which is the subject of this suit and respectfully refers the Court to the decision for a full and complete understanding of its contents.

98.     NS denies the allegations in Paragraph 98.

99.     NS is without knowledge or information sufficient to confirm the truth of the allegations in the third, fourth and sixth sentences of Paragraph 99.    NS denies the remaining allegations in Paragraph 99.

100.    Paragraph 100 contains legal conclusions to which no response is required and denies them on that basis.    To the extent Paragraph 100 includes allegations of fact, NS denies them.

101.    Paragraph 101 contains legal conclusions to which no response is required and denies them on that basis.    To the extent Paragraph 101 includes allegations of fact, NS denies them.

102.    NS incorporates by reference all responses to the preceding paragraphs of this Complaint as if fully set forth herein.

103.    NS denies the allegations in Paragraph 103.

104.    NS denies the allegations in Paragraph 104.

105.    NS denies the allegations in Paragraph 105.

106.    NS denies the allegations in Paragraph 106.

107.    NS denies the allegations in Paragraph 107.

*        *        *

## AFFIRMATIVE AND OTHER DEFENSES

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiffs' claims are barred in whole or in part because NS's conduct has been reasonable, based on independent, legitimate business and economic justifications, without any purpose or intent to injure competition.

### Third Defense

At least some members of the putative class lack standing to bring this cause of action.

## Fourth Defense

At least some members of the putative class have not suffered antitrust injury.

## Fifth Defense

The putative class does not constitute an appropriate class to be certified pursuant to Federal Rule of Civil Procedure 23.

## Sixth Defense

Plaintiffs' claims are barred in whole or in part because they improperly infer conspiracy based on interline communications in contravention of 49 U.S.C. § 10706.

## Seventh Defense

Plaintiffs are barred from recovery, in whole or in part, because their alleged damages, if any, are speculative, uncertain and not recoverable.

## Eighth Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs directly or indirectly authorized, consented to, acquiesced in or ratified some or all of the actions and omissions of which they complain.

## Ninth Defense

Plaintiffs are not entitled to injunctive relief.

## Tenth Defense

The claims of at least some members of the putative class are barred by the *Illinois Brick* doctrine, which prohibits antitrust recovery by indirect purchasers.

Eleventh Defense

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations and/or the doctrine of laches.

Twelfth Defense

The injuries alleged by Plaintiffs were caused in whole or in part by the conduct of third parties for whom NS was not responsible, through forces in the marketplace over which NS had no control, or through acts or omissions on the part of one or more of the Plaintiffs, including failure to mitigate damages.

Thirteenth Defense

Plaintiffs are barred from recovery, in whole or in part, because the alleged injuries and damages claimed, which NS denies, were not legally or proximately caused by any act or omission by NS.

Fourteenth Defense

Plaintiffs' claims are barred, in whole or in part, because they improperly infer conspiracy based on NS's common carrier obligation to disclose rates and provide shippers with advance notice of rate changes pursuant to 49 U.S.C. § 11101.

Fifteenth Defense

Plaintiffs' claims are barred, in whole or in part, to the extent based on conduct that is subject to the jurisdiction of the STB.

Sixteenth Defense

Any affirmative defenses pleaded by other Defendants and not pleaded by NS are incorporated herein to the extent they do not conflict with NS's affirmative defenses.

<u>Seventeenth Defense</u>

NS reserves the right to raise such additional defenses as may be established during discovery and by the evidence in this case and hereby reserves its right to amend its Answer.

## **PRAYER**

**WHEREFORE,** NS respectfully prays for judgment as follows:

1.      That judgment be entered in favor of NS and against Plaintiffs on all their claims;

2.      That class certification be denied;

3.      That Plaintiffs and the putative class recover nothing by their Complaint;

4.      That the Complaint be dismissed with prejudice;

5.      That NS recover all attorneys' fees, costs, and expenses incurred in defense of this action; and

6.      That the Court grant NS such further relief as the Court deems just and proper.


Dated:    February 22, 2010          Respectfully submitted,

/s/ Tara L. Reinhart

John M. Nannes (D.C. Bar # 195966)
Tara L. Reinhart (D.C. Bar # 462106)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Claudia R. Higgins
KAYE SCHOLER LLP
901 Fifteenth Street, NW
Washington, D.C. 20005

Saul P. Morgenstern
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022

*Attorneys for Defendant Norfolk Southern Railway Company*

## JURY TRIAL DEMAND

Defendant Norfolk Southern Railway Company hereby demands trial by jury on all issues so triable.

Dated:    February 22, 2010          Respectfully submitted,

/s/ Tara L. Reinhart

John M. Nannes (D.C. Bar # 195966)
Tara L. Reinhart (D.C. Bar # 462106)
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Claudia R. Higgins
KAYE SCHOLER LLP
901 Fifteenth Street, NW
Washington, D.C. 20005

Saul P. Morgenstern
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022

*Attorneys for Defendant Norfolk Southern Railway Company*

20

**CERTIFICATE OF SERVICE**

I, Tara L. Reinhart, an attorney, certify that on February 22, 2010, I caused a true and correct copy of Defendant Norfolk Southern Railway Company's Answer to Direct Purchaser Plaintiffs' Second Consolidated Amended Class Action Complaint and Jury Trial Demand to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to co-lead counsel for all plaintiffs.

/s/ Tara L. Reinhart