**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL Docket No. 1869
Misc. No. 07-489 (PLF/JMF/AK)
**Publicly Filed Version** |
| This document relates to:<br><br>ALL CASES | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

I.     Defendants Have the Burden of Demonstrating Withheld Documents Are Privileged or Protected. ....................................................................................................3

II.    Documents Shared Among Defendants and AAR Members Should Not be Withheld. ...........................................................................................................................5

      A.    Defendants' communications shared with AAR members lose any privileged status. ........................................................................................6

      B.    Communications involving AAR counsel or counsel to a member of the AAR are not privileged. ..........................................................................7

          i.    The Communications Do Not Involve Legal Advice .................................7

          ii.   There is no Attorney-Client Relationship with AAR counsel or counsel to an AAR member. ......................................................................8

      C.    AAR Members Did Not Share a "Joint Defense" ....................................................8

III.   Defendants Cannot Claim Work Product Protections for Documents Prepared in Connection with STB Proceeding. ...................................................................................10

IV.   Defendants are Not Entitled to Continue to Claim Attorney-Client Privilege for Materials Provided to Counsel in Connection with STB Proceeding *Ex Parte* 661. .........12

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES
**Page**

**Cases**

*Alexander v. F.B.I.*,
   186 F.R.D. 102 (D.D.C. 1998) .................................................................................... 13

*Ascom Hasler Mailing System v. United States Postal Serv.*,
   2010 WL 143709 (D.D.C. Jan. 14, 2010)(A) ................................................................ 4

*Blumenthal v. Drudge*,
   186 F.R.D. 236 (D.D.C. 1999) ................................................................................. 3, 7

*Boca Investerings Partnership v. United States*,
   31 F. Supp. 2d 9 (D.D.C. 1998) .................................................................................... 7

*Coastal States Gas Corp. v. Department of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ................................................................................ 3, 11

*Director of OTS v. Ernst & Young*,
   795 F. Supp. 7 (D.D.C. 1992) ..................................................................................... 12

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992) .................................................................................... 13

*Hager v. Bluefield Regional Medical Ctr.*,
   170 F.R.D. 70 (D.D.C. 1997) ....................................................................................... 4

*Harper-Wyman Co. v. Conn. General Life Insurance Co.*,
   1991 WL 62510 (N.D. Ill. Apr. 17, 1991) .................................................................... 6

*Hickman v. Taylor*,
   329 U.S. 495 (1947) .................................................................................................... 11

*Holland v. Island Creek Corp.*,
   885 F. Supp. 4 (D.D.C. 1995) ..................................................................................... 10

*In re Lindsey*,
   158 F.3d 1263 (D.C. Cir. 1998) .................................................................................... 3

*Loftin v. Bande*,
   258 F.R.D. 31 (D.D.C. 2009) ................................................................................ 12, 13

*Minebea Co., Ltd. v. Papst*,
   228 F.R.D. 34 (D.D.C. 2005) ..................................................................................... 6, 9

*Minebea Co., Ltd. v. Papst*,
   229 F.R.D. 1 (D.D.C. 2005) ..................................................................................... 5, 15

*N.L.R.B. v. Jackson Hospital Corp.*,
   257 F.R.D. 302 (D.D.C. 2009) ............................................................................. *passim.*

*Robinson v. Texas Automobile Dealers Association*,
   214 F.R.D. 432 (E.D. Tex. 2003)........................................................................................8

*\*In re Sealed Case*,
   737 F.2d 94 (D.C. Cir. 1984)....................................................................................3, 13, 14

*Trustees of Electric Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*,
   2010 WL 558719 (D.D.C. Feb. 12, 2010) ..........................................................................4

*\*United States v. American Telegraph & Telegraph Co.*,
   86 F.R.D. 603 (D.D.C. 1979)............................................................................................11

*United States v. America Social of Composers, Authors and Publishers*,
   129 F. Supp. 2d 327 (S.D.N.Y. 2001)................................................................................8

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of America*,
   2004 U.S. Dist. LEXIS 18747 (D.D.C. May 17, 2004) .....................................................9

*United States v. Naegele*,
   468 F. Supp. 2d 165 (D.D.C. 2007) .................................................................................14

*Western Trails, Inc. v. Camp Coast to Coast, Inc.*,
   139 F.R.D. 4 (D.D.C. 1991).........................................................................................7, 13

*Willingham v. Ashcroft*,
   228 F.R.D. 1 (D.D.C. 2005)..............................................................................................11

## **Rules**

Fed. R. Civ. P. 26(b)(3)(A)..........................................................................................................4

Fed. R. Civ. P. 26(b)(5)(A)(ii) .....................................................................................................4

Federal Rules of Evidence Manual at 501-35-36 (8th ed. 2002).................................................9

Direct Purchaser Plaintiffs ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for an order compelling Defendants BNSF Railway Company ("BNSF") and Union Pacific Railroad Company ("UP") (together, "Defendants") to produce certain documents withheld as purportedly privileged or protected.

## PRELIMINARY STATEMENT

Defendants have withheld a large number of responsive documents on the purported grounds of attorney-client privilege or the work product doctrine. A large portion of these documents were screened automatically by ESI filters and never manually reviewed or logged. But among those manually reviewed and logged by Defendants, there are documents that appear (from the information provided in the manual logs) important to proving the allegations in the Amended Complaint yet not protected by attorney-client privilege or the work product doctrine. Plaintiffs move to compel production of these documents.[1]

*First*, BNSF improperly is withholding communications involving the Association of American Railroads ("AAR"). To the extent these communications came from BNSF's in-house counsel and then were disseminated to AAR members and personnel (including employees of the other three Defendant railroads), black letter law holds that such dissemination destroys the privilege. And to the extent that these communications originate from the AAR's counsel or counsel for a different railroad, the communications were not made for the purpose of providing confidential legal advice nor is there an attorney-client relationship that can be the basis of a

---

[1] As the Court can see from the small number of documents Plaintiffs now challenge, this motion is not exhaustive of Plaintiffs' concerns with Defendants' withholding and redaction of documents claimed to be privileged or work product. But for the remaining issues, the parties continue to meet and confer. Plaintiffs bring this motion without prejudice to their right to challenge additional documents in the future. Plaintiffs raise these challenges now in an effort to afford sufficient time in the remaining discovery period to take into consideration documents produced as a result of this motion. Plaintiffs also believe that the resolution of these disputes will be highly instructive to the parties going forward.

1

privilege claim. Therefore, the AAR-related documents that have been improperly withheld (listed on Exhibit A to the Declaration of Sami Rashid (March 23, 2010) ("RD")) should be produced.

*Second*, both Defendants are improperly withholding documents prepared by business (or unspecified) personnel in connection with a 2006 *ex parte* hearing of the Surface Transportation Board ("STB"). Defendants' claim of work product doctrine (the documents listed on Exhibits C through E to the RD) should be rejected because the administrative proceeding conducted by the STB – where the railroads, shippers, and other entities were invited to comment at a public hearing, but had no right to present evidence or cross-examine – is not the kind of adversarial "litigation" for which the work product doctrine applies.

*Third*, perhaps knowing it is on shaky legal ground in asserting work product protection, BNSF also claims attorney-client privilege for documents and analyses related to the STB proceeding but prepared solely by business (or unspecified) personnel. (These documents are listed on Exhibit E to the RD) Even if these documents were created at the request of counsel, BNSF has not provided sufficient information to establish or assess the applicability of the attorney-client privilege. These documents, which are from priority custodians, should have been produced by last October. But months of meet and confers have not yielded the documents nor even a remotely adequate description of the basis for claiming privilege. Plaintiffs have already had to conduct important depositions and file their motion for class certification without reviewing these documents. Further delay risks unfairly depriving Plaintiffs of these documents for the balance of depositions of Defendants' executives and for their reply brief on class certification. Therefore, because there is no articulable basis to withhold these documents, they should be ordered to be produced immediately. At a minimum, the Court should conduct an *in*

*camera* review of this category of documents so the Court can see for itself that there is no basis to withhold these documents from production.

## ARGUMENT

### I. Defendants Have the Burden of Demonstrating Withheld Documents Are Privileged or Protected.

"The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998). In the D.C. Circuit "the privilege is narrowly construed to apply only when a client communicates something to his or her lawyer with the intent that it remain confidential and for the purposes of securing either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *Blumenthal v. Drudge*, 186 F.R.D. 236, 241 (D.D.C. 1999) (Friedman, J.) (internal quotation marks omitted). Communications made by counsel are also protected, but "only if they rest on confidential information obtained from the client." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)

Under Rule 26(b)(3) of the Federal Rules of Civil Procedure, the attorney work-product doctrine or privilege protects "documents and tangible things" that were "prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative." Fed. R. Civ. P. 26(b)(3)(A). "The purpose of the privilege, however, is not to protect any interest of the attorney, who is no more entitled to privacy or protection than any other person, but to protect the adversary trial process itself." *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980).

The burden of presenting "sufficient facts to establish the privilege" rests with the party claiming it. *Sealed Case*, 737 F.2d at 99. To properly withhold a document on the grounds that it is privileged, the party claiming privilege must "'describe the nature of the documents,

communications, or tangible things not produced or disclosed and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Ascom Hasler Mailing Sys. v. U.S. Postal Serv.*, 2010 WL 143709, at *3 (D.D.C. Jan. 14, 2010) (Facciola, J.) (quoting Fed. R. Civ. P. 26(b)(5)(A)(ii)); *Hager v. Bluefield Reg. Med. Ctr.*, 170 F.R.D. 70, 76 (D.D.C. 1997) (party asserting work product protection bears burden of establishing that work product doctrine applies).

Where a privilege log is inadequate, a court may deem the inadequate log a waiver of the privilege; the Court can also inspect documents *in camera* to determine whether privilege has been properly asserted by the withholding party. *See NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307–08 (D.D.C. 2009) (Facciola, J.) (ordering production of documents for *in camera* review, acknowledging that production of documents may have been a more appropriate remedy upon evidence of dilatoriness or bad conduct); *see also Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 2010 WL 558719, at *15 n.8 (D.D.C. Feb. 12, 2010) (Facciola, J.) (automatic production is a "sanction . . . reserved for cases of unjustified delay, inexcusable conduct, or bad faith").[2]  Alternatively, the Court may correct the withholding party's incorrect conception of potentially applicable privileges and order that party to produce all documents improperly withheld. *See Minebea Co., Ltd. v. Papst*, 229 F.R.D. 1, 1-5 (D.D.C. 2005) (Friedman, J.) (setting forth requirements of attorney-client and work-product privileges and ordering production of all documents withheld under misconception of those privileges).

---

[2] A direction to produce a more detailed log is another remedy available to the Court. *See Jackson Hosp.*, 257 F.R.D. at 307–08. But the parties have been conferring on these documents for months, and any further delay is unwarranted.

**II.     Documents Shared Among Defendants and AAR Members Should Not be Withheld.**

Plaintiffs allege that Defendants entered into a price-fixing conspiracy to coordinate their fuel surcharge programs as a means to impose supracompetitive price increases on rail freight shipment customers. As discussed in Plaintiffs' Memorandum in Support of Motion for Class Certification, Defendants used the AAR to engage in discussions about the coordinated imposition of fuel surcharges. *See* Plaintiffs' Memorandum In Support of Motion For Class Certification ("Class Certification Memorandum"), 0-8-mc-00489, at 13-36 (filed under seal March 18, 2010), attached hereto as RD Ex. V.



*See* Rashid Dec. Ex. N, at NS001000364.

*Id.*

Transcript of Deposition of Chuck Adams ("Adams Dep."), March 4, 2010, at 68–72, excerpts attached hereto as RD Ex. O.

Further, under the auspices of the AAR (and NEMC), Defendants: (1) created a new cost-escalation index, the All-Inclusive Index Less Fuel ("AIILF"), in December 2003, to facilitate their coordinated and widespread imposition of stand-alone, rate-based fuel surcharges; and (2) published the AIILF on the public portion of the AAR's website, for the agreed purpose

5

of promoting use of the new index as a means to facilitate imposition of the coordinated fuel surcharges. *See* Class Certification Memorandum, RD Ex. V, at 27-30.

BNSF is improperly withholding two types of documents involving the AAR. ███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████.[3] ████████████████████████

████████████████████████████████████████████████████████████████

████.[4] But BNSF's in-house counsel's communication is not privileged if it is shared with third parties. ████████████████████████████████████████████████████

████████████████████████████████████████, which makes sense because those communications did not arise from an attorney-client relationship.

### A. Defendants' communications shared with AAR members lose any privileged status.

████████████████████████████████████████████████████████████████

████████████████████████████████████████.[5] Regardless of whether the original communication was protected, BNSF's voluntary sharing of that communication with AAR members waives the privilege. *See Minebea Co. Ltd. v. Papst*, 228 F.R.D. 34, 36 (D.D.C. 2005) (Friedman, J.) (explaining that distributing otherwise privileged documents to a third party "necessarily waives the privilege"); *see also Harper-Wyman Co. v.*

---

[3] *See* RD, at Ex. A, at BNSF_LOG 0000766 ███████████████████████████

█████████████████

[4] *See* RD, at Ex. A, at BNSF_LOG 0000233, 0000420, 0000424, 0000428, 0010693. ████████████████████████████████████████████████████████████████

████████████ *See* Adams Dep. at 138–40.

[5] *See* RD, at Ex. A, at BNSF_LOG 0000766.

6

*Conn. Gen. Life Ins. Co.*, 1991 WL 62510, *5–6 (N.D. Ill. Apr. 17, 1991) (dissemination of materials within trade association waived potentially applicable privilege).

    **B.    Communications involving AAR counsel or counsel to a member of the AAR are not privileged.**

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.[6] These documents are not properly withheld because they involve neither legal advice nor constitute communications between an attorney and his or her client.

    i.    <u>The Communications Do Not Involve Legal Advice.</u>

Communications with an attorney are not privileged unless they relate primarily to the provision of legal advice or services. *See Blumenthal*, 186 F.R.D. at 241 (communication must be made to secure "either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding"). Advice regarding business activities is not privileged. *See Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9, 11–12 (D.D.C. 1998) (Friedman, J.); *Western Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4, 10–11 (D.D.C. 1991) (communications to counsel regarding formulation of new rule governing sale of memberships in licensed resorts found to implicate business, rather than legal, judgment). ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉[8] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

---

    [6]  *See* RD, at Ex. A, at BNSF_LOG 0000233, 0000420, 0000424, 0000428, 0010693.

    [7]  *See* RD, at Ex. A, at BNSF_LOG 0000233.

    [8]  *See* RD, at Ex. A, at BNSF_LOG 0000420; BNSF_LOG 0000424 (same), 0000428 (same); *see also* BNSF_LOG 0010693 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

    ii.  There is no Attorney-Client Relationship with AAR counsel or counsel to an AAR member.

Trade association counsel are not automatically, or even presumptively, counsel for the association's members. *See United States v. Am. Soc. of Composers, Authors and Publishers*, 129 F. Supp. 2d 327, 337–40 (S.D.N.Y. 2001) (association lawyers not counsel for association member given the size of the association and the reasonable expectations of its membership); *Robinson v. Texas Auto Dealers Ass'n*, 214 F.R.D. 432, 451–53 (E.D. Tex. 2003) (*rev'd on other grounds*) (association lawyer not counsel for membership which had not sufficiently indicated intent to form attorney-client relationship). Here, AAR membership includes Defendants, other freight railroads of various sizes, and Amtrak and other passenger railroads. *See* RD, at Ex. P. Given this broad membership, BNSF cannot meet its burden of showing an attorney-client relationship existed between the AAR counsel and the many separate employees of the various members who were party to these communications. Similarly, BNSF has not established, or even suggested, that an attorney-relationship formed between members of the AAR and counsel for different AAR members.[9]

  **C.**  **AAR Members Did Not Share a "Joint Defense."**

Recognizing that the privilege normally would not survive dissemination within the AAR, BNSF invokes the "common interest" privilege. *See* RD, at Ex. Q, at 2. ███████ ████████████████████████████████████████████ █████████████████████████████████ Therefore, "common interest" does not apply. As Judge Friedman has summarized: "The joint defense privilege, often referred to as the common interest rule, is an extension of the attorney-client

---

  [9] The AAR itself has yet to provide a privilege log despite having been served with a subpoena over a year ago. The AAR's counsel has informed us that their log will be provided on March 24, the day after Plaintiffs file this motion.

privilege that protects from forced disclosure communications between two or more parties and/or their respective counsel if they are participating in a joint defense agreement." *Minebea*, 228 F.R.D. at 15–16; *see also Jackson Hosp.*, 257 F.R.D. at 313 (while the common-interest doctrine can prevent the waiver of otherwise privileged communications, it does not speak to existence of a valid underlying privilege).

BNSF cannot satisfy the requirements for invoking the "common interest privilege," which this Court has held requires that "the communication (1) [be] prompted by actual or anticipated litigation; (2) for the purpose of furthering a common interest; and (3) in a manner that is consistent with maintaining confidentiality against adverse parties." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,* 2004 U.S. Dist. LEXIS 18747, at *13 (D.D.C. May 17, 2004).

To begin with, BNSF has provided no factual basis for any assertion that members of the AAR shared information pursuant to a common-interest agreement. *See Minebea*, 228 F.R.D. at 16 (common interest privilege applies only where "the parties have clearly and specifically agreed in some manner to pool information for a common goal") (quoting 2 Stephen A. Saltzburg, et al., *Federal Rules of Evidence Manual* at 501-35-36 (8th ed. 2002)). ███████████████████████████████████████████████████████████████████████████████████████[10] Finally, and most fundamentally, BNSF has failed to identify a cognizable "common" legal interest and that each of the "specific communications at issue [was] designed to facilitate [such] common legal interest; a business or commercial interest will not suffice." *Minebea*, 228 F.R.D. at 16; *see also Holland v. Island Creek Corp.*, 885 F.

---

[10] *See* RD, at Ex. A.

9

Supp. 4, 6 (D.D.C. 1995) (common legal interest must exist when the confidential information was disclosed).



*See* RD, at Ex. B. ██████████████████████████████████████ ██████████████████████ *See* RD, at Ex. F, at 1. Accordingly the document is not protected by the common-interest doctrine and the presence of BNSF employees destroys any privilege for the advice from the UP attorney who participated. This document is not privileged and should be produced.

### III. Defendants Cannot Claim Work Product Protections for Documents Prepared in Connection with STB Proceeding.

Prior to the filing of the instant lawsuit, the STB held a public hearing in 2006 on the use of fuel surcharges in the rail freight industry. Each of the Defendants (along with dozens of other entities) submitted statements to the STB. In their submissions, Defendants each argued, among other things, that their fuel surcharges were merely cost recovery vehicles. The STB rejected this claim:

> [It is] an unreasonable practice to compute fuel surcharges as a percentage of the base rates. Because railroads rely on differential pricing, under which rates are dependent on factors other than costs, a surcharge that is tied to the level of the base rate, rather than to fuel consumption for the movement to which the surcharge is applied, cannot fairly be described as merely a cost recovery mechanism. Rather, a fuel surcharge program that increases all rates by a set percentage stands virtually no prospect of reflecting the actual increase in fuel costs for handling the particular traffic to which the surcharge is applied.

*See* RD, at Ex. R, at 6.

Both in anticipation of the STB hearing, and after the STB issued its findings, business personnel at the Defendant railroads did significant internal analyses of their fuel surcharge programs. Not surprisingly, Defendants' seek to prevent the facts underlying their rejected "cost

10

recovery" arguments from coming to light, and have sought to apply work product doctrine to documents addressing this and other business issues that Defendants claim are connected to the STB hearing. But because the STB hearing was not "litigation," the work product doctrine is inapplicable.

The work product doctrine only shields from discovery certain documents and tangible things prepared "with an eye towards *litigation*," *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (emphasis added). The "purpose of the privilege [is] to protect the adversary trial process itself." *Coastal States*, 617 F.2d at 864-65 (D.C. Cir. 1980). The test in this Court for what constitutes "litigation" for purposes of work product protection has long been whether there is a right to cross examination in the proceeding that is being invoked as "litigation." As explained by Special Masters Geoffrey C. Hazard, Jr. and Paul R. Rice in *United States v. American Tel. & Tel. Co*., 86 F.R.D. 603, 627-8 (D.D.C. 1979) ("*AT&T*"): "[C]ross-examination is the hallmark of adversary procedure, and adversary procedure is what the work product privilege was designed to protect." *Id.* ("right to cross-examine is the determinative factor"); *accord Willingham v. Ashcroft*, 228 F.R.D. 1, 4 (D.D.C. 2005) (following *AT&T*'s adoption of the "right to cross-examine" for determining whether a proceeding qualifies as "litigation" for work-product protections).

Here, the STB hearing was indisputably a public hearing that included no right to cross-examination (or anything remotely like such a right). Nor did it bear any other indicia of "litigation":

- The press release issued by the STB announcing the public hearing in the "ex parte" proceeding explained: "The agency will hold the hearing *to provide a forum for the expression of views* by rail shippers, railroads, and other interested persons, on the manner in which fuel surcharges are calculated and charged by railroads." RD, at Ex. S.

11

- In the notice setting forth the schedule of speakers, the STB again explained its purpose for the hearing: "The Board will hold a public hearing to provide interested persons an opportunity to express their views on the subject of fuel surcharges collected by railroads." RD, at Ex. T.

- At the hearing, a number of participants – including rail shippers, trade association representatives, and railroad executives (and not their counsel) – made presentations and fielded questions from the STB Board Members. Anyone interested in participating could do so, assuming the individual timely notified the Board of his or her intention to speak. *See* RD, at ¶ 24.

- There was no right to cross-examine speakers, and the presentations made by Defendants' executives and other the speakers were not under oath; only STB Board Members asked questions. *See id.*

Defendants did not present evidence, call witnesses subject to cross-examination, or formally respond to adversarial complaints. Far from an adversary litigation proceeding, the hearing was, as the STB explained, a "forum for the expression of views" of various members of the railroad community. Such proceeding simply does not equate to the type of "litigation" protected by the work product doctrine, and the Court should order Defendants to produce the documents identified in Exhibits C through E.

**IV.   Defendants are Not Entitled to Continue to Claim Attorney-Client Privilege for Materials Provided to Counsel in Connection with STB Proceeding *Ex Parte* 661.**

Defendant BNSF also claims that certain documents prepared to assist counsel in connection with the STB proceeding are protected by the attorney-client privilege. *See* RD, at Ex. E. However, BNSF cannot demonstrate that the documents are privileged and properly withheld.

As courts in this Circuit have explained, an adequate privilege log must "state the basis upon which the privilege is claimed, state the subject matter, number of pages, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided.'" *Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009) (quoting *Dir. of OTS v.*

12

*Ernst & Young*, 795 F. Supp. 7, 11-12 (D.D.C. 1992)).  Moreover, "a party seeking to withhold documents under the attorney-client privilege, must at a minimum, provide the essential elements necessary to sustain a claim of privilege," identifying "'(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.'" *Alexander v. F.B.I.*, 186 F.R.D. 102, 107 (D.D.C. 1998) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)).

BNSF's log falls far short of these minimal requirements and includes glaring deficiencies for which outright production would be an appropriate remedy.  *See Jackson Hosp.*, 257 F.R.D. at 307.  To begin with, the vast majority of the documents do not appear to have even been provided to counsel and thus cannot constitute attorney-client communications warranting protection.[11]  Indeed, many of the entries at issue fail to identify a single sender or recipient of the challenged communication, let alone an attorney.  The inadequacy of such entries cannot be disputed.  *See Loftin*, 258 F.R.D. at 33.

Even the entries which identify an attorney fail to provide additional information that would be required to gauge the applicability of the attorney-client privilege.  *See Alexander*, 186 F.R.D. at 107 (in addition to providing attorney and client names, log must "provide the essential elements necessary to sustain a claim of privilege").  ███████████████████ ████████████████████████████████████████████████████████████████ *See In re Sealed Case*, 737 F.2d at 98–99; *Boca*, 31 F. Supp. at 12, *Western Trails*, 139 F.R.D. at 10– 11.  ████████████████████████████████████████████

---

[11] *See* RD, at Ex. E.

13

███████████████████████████████████████████████████████████████

██[12]████████████████████████████████[13] To withhold such documents, BNSF must make a "clear showing" that the lawyer in question acted in a legal capacity. *In re Sealed Case*, 737 F.2d at 99. BNSF's log does not make that showing.

In addition, the challenged entries provide no indication that the withheld document contains or reflects *confidential client* communications. As noted above, for example, several withheld documents concern ████████████████████████████████ ████████[14] It is not apparent how such documents, ████████████████████ ████████, might reflect or disclose communications made by BNSF to its counsel in confidence. *See United States v. Naegele*, 468 F. Supp. 2d 165, 170 (D.D.C. 2007) (client communications intended to be incorporated in bankruptcy filing not confidential); *Minebea*, 229 F.R.D. at 3 (attorney communications protected only insofar as they "indirectly or directly reveal a confidential client communication").

Despite months of meet and confers, BNSF has refused to remedy these deficiencies in its log, depriving Plaintiffs of potentially critical evidence that could have been deployed in their class certification brief and in depositions. An order requiring production of the withheld documents would not be a disproportionate sanction. *See Jackson Hosp.*, 257 F.R.D. at 307 (noting that production can be an appropriate remedy for deficiencies in a privilege log in cases involving dilatoriness or bad faith).

---

[12] *Id*. at BNSF_LOG 0001184, 0013324.

[13] *Id*. at BNSF_LOG 0000786.

[14] *Id*. at BNSF_LOG 0001184, 00013324. It bears note that a host of BNSF's entries that fail to identify an attorney also fail to indicate that the document reflects confidential client communications regarding primarily to legal matters. *See generally*, Ex.__.

14

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that the Court should order that the documents identified in Exhibits A through E be produced by Defendants or, in the alternative, submitted for *in camera* inspection so the Court can see for itself that the documents should be produced.

Dated: March 23, 2010

                                      Respectfully submitted:

/s/ Michael D. Hausfeld
Michael D. Hausfeld D.C. Bar #153742
William P. Butterfield D.C. Bar # 420354
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201
Email:  mhausfeld@hausfeldllp.com

Steig D. Olson
HAUSFELD LLP
11 Broadway, Suite 615
New York, NY 10004
Telephone: (212) 830-6850
Facsimile:  (212) 480-8560
Email:  solson@hausfeldllp.com

/s/ Stephen R. Neuwirth
Stephen R. Neuwirth
Daniel Brockett
Marc L. Greenwald
Sami H. Rashid
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100
Email: stephenneuwirth@quinnemanuel.com

*Interim Co-Lead Counsel for Direct Purchaser Plaintiffs*

## CERTIFICATE OF SERVICE

I, Sami H. Rashid, an attorney, certify that on March 23, 2010, I caused a true and correct copy of the foregoing memorandum to be served on counsel for Defendants.

                                                                                            _/s/ Sami H. Rashid_____
                                                                                            Sami H. Rashid