UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: RAIL FREIGHT FUEL
SURCHARGE ANTITRUST LITIGATION

This document relates to:

ALL DIRECT PURCHASER CASES

MDL Docket No. 1869
Misc. No. 07-489 (PLF/JMF/AK)

**MEMORANDUM OPINION**

Now pending before the Court and ready for resolution is Plaintiffs' Motion to Compel Production of Documents ("MTC") [#340].[1] For the reasons stated herein, the plaintiffs' motion will be granted in part and denied in part.

**I. Background**

The facts of the case are set out in In re Rail Freight Fuel Surcharge Antitrust Litig., 587 F. Supp. 2d 27, 29-31 (D.D.C. 2008) and In re Rail Freight Fuel Surcharge Antitrust Litig., 258 F.R.D. 168, 168-69 (D.D.C. 2009).

Discovery in this case has been progressing on a rolling basis, beginning August 1, 2009. Scheduling Order ¶ 1. The parties agreed to attempt to "front-load" this production. Id. The parties spent months negotiating search terms, filters and protocols for the search, reviewing, and producing the immense discovery in this case, eventually seeking judicial intervention regarding

---

[1] The motion to compel was filed under seal. Pursuant to the protective order in this case, plaintiffs also filed a public version of the motion. Both the sealed motion and the public version bear their own docket number. This opinion will refer to the docket number of the public filings of all documents.

a set of circumscribed issues that they were not able to resolve. In re Rail Freight Fuel Surcharge Antitrust Litig., No. 07-MC-489, 2009 WL 3443563, at *1 (D.D.C. Oct. 23, 2009).  In response, I ordered certain documents to be produced. Id.  The parties have continued with discovery, and, after great effort to work together to narrow the discovery disputes between them, have brought several discrete issues regarding privileges asserted by defendants BNSF Railway Company ("BNSF") and Union Pacific Railroad Company ("UP") before the Court.  First, plaintiffs assert that BNSF has improperly withheld communications involving the Association of American Railroads ("AAR"). Plaintiffs' Memorandum of Law in Support of Their Motion to Compel Production of Documents ("Pls. Memo") [#340-1] at 1.  Second, plaintiffs claim that both BNSF and UP, pursuant to the work-product doctrine, have improperly withheld documents prepared in connection with the 2006 hearings of the Surface Transportation Board ("STB"). Id. at 2.  Lastly, plaintiffs argue that BNSF has also improperly claimed attorney-client privilege for documents prepared for the STB proceedings by non-attorney or unspecified personnel. Id.  I will consider each issue raised by plaintiffs in turn.

## II. Documents Shared Among Defendants and AAR Members

Plaintiffs argue that BNSF has improperly withheld two kinds of documents shared between BNSF and AAR members: (1) documents originating with in-house counsel that were then shared with other defendants and other members of AAR; and (2) communications between AAR membership and counsel to the AAR or an AAR member. Pls. Memo. 6.  Plaintiffs argue that the first type of document loses any protection provided by the attorney-client privilege because distributing a privileged document to a third party destroys the privilege. Id.

The purpose of the attorney-client privilege is to protect a client's confidences to his or

her attorney, thereby encouraging an open and honest relationship between the client and the attorney. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980). The public interest in the observance of law and administration is promoted by the "full and frank communications between attorneys and their clients." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The communication from an attorney may be protected if it is based on confidential information provided by the client. Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 254 (D.C. Cir. 1977). Thus, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984) (citing Brinton v. Dep't of State, 636 F.2d 600, 604 (D.C.Cir. 1980), cert. denied, 452 U.S. 905 (1981)). Further, as plaintiffs argue, the communication of the otherwise privileged information to a third party can vitiate the protection created by the privilege.

There were six documents in issue; however, BNSF has withdrawn its claim of privilege regarding minutes from a AAR committee meeting where counsel for the AAR provided advice to committee members. Opposition of Defendants BNSF Railway Company and Union Pacific Railroad Company to Plaintiffs' Motion to Compel Production of Documents [#341] ("Def. Opp.") at 12. BNSF claims that the remaining five documents are protected by attorney-client privilege by virtue of BNSF's membership in the AAR. Counsel for AAR provides legal advice to an AAR committee, which consists of members from multiple corporations. Thus, BNSF argues that there is no third party present to vitiate the claim of privilege because all members of the committee share the protection of the privilege. It gives me pause to allow categorically communications among different companies to be cloaked in privilege by virtue of their membership in the same trade organization. Such a finding of privilege could seriously expand

the attorney-client privilege beyond its normal, common law constraints. Thus, I will order the remaining documents be produced for an *in camera* review. I will review the documents to confirm that the attorney-client communications reflected in the documents are between BNSF as a committee member in the AAR and counsel for AAR and relate directly to the work of the committee. BNSF should provide the documents to chambers no later than 5 days from the date of this order.

There is an additional document at issue withheld by UP. It is a memorandum containing information related to a phone call with BNSF. I have little doubt that this document is properly withheld, as it is in fact an internal UP document. I will nonetheless order it be produced for an *in camera* review, so as to resolve any doubt left by UP's privilege log that this document is indeed a privileged document.

### III. Work-Product Privilege and Documents Prepared in Connection with the STB Proceeding

Plaintiffs seek to compel documents prepared in preparation for the STB hearing on fuel surcharges. In doing so, plaintiffs claim that the STB hearing does not qualify as litigation; thus, the attorney work-product related to the hearing is not protected by the privilege. MTC 11. Defendants counter that the hearing was an "'adversarial administrative matter[]'" and falls within the scope of the privilege. Opp. 8 (citing <u>General Elec. Co. v. Johnson</u>, No. 00-CV-2855, 2006 WL 2616187, at *11 (D.D.C. Sept. 12, 2006)).

The question of whether the *ex parte* hearing by the STB qualifies as litigation, so as to protect the work-product is complex. Plaintiffs claim that the fundamental question is whether

the STB hearing provided the opportunity for cross-examination; without that, the proceedings do not qualify as litigation and the privilege does not apply.

Rule 26(b)(3) of the Federal Rules of Civil Procedure protects from production written materials that lawyers prepare "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). According to that Rule, "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" may not be discovered. Fed. R. Civ. P. 26(b)(3)(A). The purpose of the privilege is to protect the adversary process by ensuring that lawyers work with a "degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 510 (1947). Neither Rule 26(b)(3) nor Hickman provide a clear delineation of what is to be considered "litigation." In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation. See, e.g., Amobi v. District of Columbia Dep't of Corrs., 262 F.R.D. 45, 52 (D.D.C. 2009) (finding that because arbitration was adversarial in nature it can be characterized as litigation). "The proceeding for which documents are prepared need not actually take place in a court of record, as long as the proceeding is adversarial in nature." Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 827 (5th ed. 2007). The challenge in determining whether the STB proceedings are to be considered litigation is the unfortunate description of the proceedings as *ex parte*. Courts have found patent application proceedings, which are primarily *ex parte* in nature, do not constitute litigation because they are not adversarial in nature. See, e.g., McCook Metals L.L.C. v. Alcoa, Inc., 192 F.R.D. 242, 260 (N.D. Ill. 2000) (citing Oak Indus. v. Zenith Electronics Corp., 687 F. Supp. 369, 374 (N.D. Ill. 1988); Avery Dennison Corp. v. UCB Films PLC, No. 95-CV-6351, 1998 WL

5

703647, at *6 (N.D. Ill. Sept. 30, 1998)). A closer look at the STB proceedings, however, reveals that there is a significant adversarial aspect to the proceedings. Even a simple review of the STB docket for the proceedings shows that there was a back and forth among the carriers and shippers, with some of the railways even providing written responses to filings made by shippers. See, e.g., Union Pacific Reply to Arkansas Electric Cooperative Corporation, Opp. at Ex 6.

Plaintiffs argue that there is a bright-line test to determine whether a proceeding qualifies as litigation: the parties must have the right to cross-examine witnesses. They rely on United States v. American Tel. & Tel. Co., 86 F.R.D. 603, 627 (D.D.C. 1979), for the supposition that the "right to cross-examine is the determinative factor" of whether a proceeding is litigation. MTC 11 (quoting United States v. AT&T, 86 F.R.D. at 627-28). Unfortunately, AT&T does not provide such a clear-cut definition. AT&T was an anti-trust case with considerable discovery. Two Special Masters, Geoffrey C. Hazard, Jr. and Paul R. Rice, issued Guidelines for the Resolution of Privilege Claims to the parties. Guideline 15 states that:

> In the terms "material prepared in anticipation of litigation or for trial":
>
> (a) "Litigation" includes a proceeding in a court or administrative tribunal in which the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation.
>
> (b) "In anticipation" means any time after initiation of the proceeding or such earlier time as the party who normally would initiate the proceeding had tentatively formulated a claim, demand, or charge. When the material was prepared by a party who normally would initiate such a proceeding, that person must establish the date when the claim, demand, or charge was tentatively formulated. When the material was prepared by a potential defendant or respondent, that person must establish the date when he received a demand or warning of charges or

6

> information from an outside source that a claim, demand, or charge was in prospect.

AT&T, 86 F.R.D. at 627. According to the guidelines "litigation" includes proceedings with the right to cross-examine or the right "to subject an opposing party's presentation of proof to equivalent disputation." Id. Plaintiffs look to these guidelines for their definition of litigation, but the guidelines do not support a bright-line rule that the right to cross-examine witnesses is crucial to a proceeding being denominated as "litigation," since they admit of the possibility that a disputation equivalent to cross-examination suffices.

More to the point, guidelines by Special Masters, no matter how distinguished, are not controlling precedent. The proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation. It is irrational to suggest that such a process can never be denominated as "litigation", no matter how severe its consequences, and even though the lawyer prepared for it and functions during it in the exact same manner as she would if the case were being tried to a jury. It surely cannot be the law that a proceeding that did not feature cross-examination is never "litigation", but beating a traffic ticket is because one can cross-examine the cop.

The STB called for the hearing after receiving complaints about the fuel surcharges utilized by the rail carriers. The STB sought to rule on the "reasonableness" of the practice, and ultimately concluded that the practice was unreasonable. In preparing for the hearings, there is no doubt that both the carriers and the shippers approached the hearings as adversarial in nature. Representatives from the carriers were subjected to questioning by the Board. Additional briefings were requested and filed, and the question of reasonableness was adjudicated. That the proceeding bore the description "ex parte" and that it lacked the formal structure of cross-examination of witnesses does not lessen its adversarial nature. The Federal Court of Claims has carefully parsed the adversarial and non-adversarial aspects of certain administrative proceedings, and determined that "documents that were created 'with an eye towards' adversarial aspects of administrative proceedings . . . and that would not have been created in similar form but for these adversarial aspects, should be afforded protection as documents created 'in anticipation of litigation' under the work product doctrine of RCFC[2] 26(b)(3)." Pacific Gas and Elec. Co. v. United States, 69 Fed. Cl. 784, 808 (Fed. Cl. 2006). This approach is applicable here. The documents defendants seek to protect in this case relate specifically to the STB proceedings on fuel surcharges and would not have been created otherwise. As the Court of Claims notes, this approach is consistent with the privilege because it does not allow an opponent to "ride on the litigator's wits," while at the same time not expanding the privilege beyond its bounds. Id. Defendants will not have to produce these documents.

---

[2] Rules of the Court of Federal Claims

## IV. Attorney-Client Privilege and Documents Prepared in Connection with the STB Proceeding

Plaintiffs also seek to compel documents from defendant BNSF related to the STB proceeding claimed to be protected by attorney-client privilege. Plaintiffs claim that BNSF's privilege logs are insufficient to determine whether some of the documents involve attorney-client communications or whether some of the documents relate primarily to business, technical or other non-legal matters. <u>Plaintiffs' Reply Memorandum in Support of Motion to Compel Production of Documents</u> [#351] at 5. There was some confusion between the parties related to different versions of the privilege log based on family-relationships between documents (*i.e.* parent-child documents, typically e-mails and attachments). Regardless of that confusion, based on my reading of the privilege log, I have already found many of the documents for which BNSF claims the attorney-client privilege to be protected by the work-product privilege. The remaining documents for which only the attorney-client privilege has been claimed, with the exception of two documents, appear to relate specifically to preparations for the STB proceedings. I shall review *in camera* the few documents for which only the attorney-client privilege has been claimed.[3] Note that one of the documents not related to the STB proceedings reflects the legal advice of the AAR law department. This is one of the same documents discussed in Section II of this opinion to be reviewed *in camera*.

---

[3] These documents are: BNSF_LOG0000786-787, BNSF_LOG0000788-789, BNSF_LOG0002184, BNSF_LOG0002238, BNSF_LOG0002273-274, BNSF_LOG0010048-049, BNSF_LOG0010071, BNSF_LOG0010455-056, BNSF_LOG0011328, BNSF_LOG0011337, and BNSF_LOG0011338.

## V. Conclusion

For the reasons herein discussed, the Court will grant in part and deny in part plaintiffs' motion to compel. An order accompanies this opinion.

```
_____
```
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE