# Exhibit 15

(Prystowsky Declaration)



**American Public Power Association**



**ISSUE BRIEF**

FEBRUARY 2008

# Railroad Competition

**Summary**

Electric utilities must rely on rail transportation to move the vast majority of coal from the mine mouth to the power plant. While domestic coal continues to be a relatively low-cost fuel, its economic benefits for power production are being threatened by the increasingly lower quality and higher costs of rail service resulting in part from railroad industry consolidation and the absence of effective regulatory oversight.

Many coal-burning electric utilities have no choice but to receive coal shipments from only one rail carrier and are thus subject to monopolistic behavior. As a result, these rail customers do not have the ability to negotiate the terms of their rail transportation in an open and competitive market. These rail customers are charged higher rail rates while those rail customers with competitive options are given competitively-priced rates. Over the past several years, rail customers have also experienced numerous service and reliability problems.

Legislative remedies are required to enhance competitive transportation and improve the rail customer protection mechanisms and enforcement implemented by the Surface Transportation Board (STB). Absent congressional action, electric utilities and the communities they serve will continue to be subject to unnecessarily higher rates and poorer service for coal transportation.

APPA supports legislation introduced in the 110th Congress that would address these issues.

**Background**

Approximately 50 percent of the nation's electricity is generated from coal, the vast majority of which is transported by rail. A substantial amount of that coal has only one available railroad transportation option for at least some portion of its shipment. Thus, a large amount of the coal used to generate electricity in this country is "captive" to a single railroad for transportation, and the transportation costs for shipping that coal reflect the monopoly power of the carrier and are frequently unreasonably high.

The monopoly power of the railroads over captive shippers has grown dramatically in the last two decades. Since 1980, the industry has been reduced from 42 major carriers to five. In 1995, Congress abolished the Interstate Commerce Commission (ICC) and gave the newly created STB authority over the rail industry for mergers, rate and service disputes, and construction, operation and/or abandonment of railroad lines. Since its creation, the STB has failed to use the legal and regulatory mechanisms at its disposal to protect railroad customers from monopolistic practices by the railroads. As a result, many rail customers have simply foregone filing rate cases at the STB due the low probability of success as well

*continued*

as the high costs of filing and litigation. The filing fee alone was raised by the STB in the past year to $178,200 (from $160,000) for a coal rate case. By comparison, federal courts only require a $150 filing fee for complaints.

In October of 2006, the General Accountability Office (GAO) issued a report titled *"Freight Railroads: Industry Health Has Improved, but Concerns about Competition and Capacity Should Be Addressed"* which validated rail customer concerns. The GAO found a number of problem areas, including: a lack of competition in the national railroad industry; inadequate STB efforts to ensure rail customer access to competition and to protect rail customers from monopoly abuse; the failure of the STB to collect adequate data from the railroads on all of their annual revenues from rail customers; and concerns over the ability of the national rail system to provide sufficient, reliable service in the future. This report helped to bolster efforts by rail customers and their supporters in Congress to push for legislative remedies in early 2007 at the beginning of the 110th Congress.

**Congressional Action**

Because of the entrenched policies at the STB and the long record of inaction, legislation is needed to institute stronger protective mechanisms at the STB and allow for competitively-priced rates for rail customers. Legislation to address the concerns of rail customers has been reintroduced in the 110th Congress, with some changes. H.R. 2125, the Railroad Competition and Improvement Act of 2007, was introduced in May of 2007 by House Transportation and Infrastructure Committee Chairman Jim Oberstar (D-MN) and Representative Richard Baker (R-LA). S. 953, the companion bill in the Senate with the same title, was introduced in March by a bipartisan group of Senators led by Senators John Rockefeller (D-WV), Byron Dorgan (D-ND) and David Vitter (D-LA).

Both H.R. 2125 and S. 953 would require railroads to quote rates to their customers, upon request, between any two points on their system where traffic can originate, terminate or be interchanged, and to remove "paper" barriers that prevent short-line railroads from connecting to more than one major railroad (e.g., ensuring that contracts between the major railroads and short-line carriers allow short-line carriers to engage in competition without being penalized). The legislation also contains a clear statement of the railroads' "obligation to serve" given that their function is essential to many sectors of the economy, and empowers and directs the STB to take action to investigate railroad practices that the STB believes to be abusive of railroad market power. Additionally, the bills seek to develop a workable rate challenge process at the STB.

In September, the House Transportation and Infrastructure Committee held a hearing on "Rail Competition and Service" during which H.R. 2125 was discussed at length. In early 2008, the Committee is expected to hold a legislative hearing specifically on the bill. In October of 2007, a Subcommittee of the Senate Commerce, Science and Transportation Committee held a hearing on the "Surface Transportation Board and Regulation Relating to Railroads." At this hearing, several committee members discussed S. 953 and urged full committee action on the bill.

*continued*

In addition, legislation has been reintroduced in both the House and Senate to eliminate the exemptions from antitrust law that the railroads currently enjoy — including those under mergers and acquisitions, collective ratemaking, and private antitrust lawsuits. H.R. 1650, the Railroad Antitrust Enforcement Act of 2007 was introduced in March of 2007 by Representative Tammy Baldwin (D-WI) and the identical companion bill in the Senate, S. 772, was introduced in the same month by Senator Herb Kohl (D-WI) and Senator David Vitter (R-LA), among others.  In the fall of 2007, the Senate Judiciary Committee held a hearing and unanimously approved S. 772.  The bill has been placed on the Senate calendar and is awaiting action by the full Senate.

In the spring of 2006, the railroads began to express interest in receiving a federal Investment Tax Credit (ITC) of 25 percent to apply to new investment in rail infrastructure.  Given that the railroads have reported record profits in recent years with continued service reliability problems, an additional federal subsidy for infrastructure improvement should not come without guarantees that dollars will be spent to enhance reliability, especially in captive shipper corridors. APPA and captive shipper groups like Consumers United for Rail Equity (CURE), of which APPA is a member, have indicated that we would be willing to support an ITC for the railroads only if STB reforms providing relief for rail  customers are enacted at the same time.

In the 110th Congress, bills have been introduced in both the House and Senate granting an ITC to the railroads without any accountability of where that funding would be directed.  S. 1125, the Freight Rail Infrastructure Capacity Expansion Act of 2007, was introduced in April by now former Senator Trent Lott (R-MS), Senator Ben Nelson (D-NE) and others, and the House companion bill, H.R. 2116 (same title) was introduced in May by Representatives Kendrick Meek (D-FL) and Eric Cantor (R-VA). These bills would give the railroads a 25% tax credit for the cost of new qualified freight rail infrastructure property and new qualified locomotive property.  APPA will continue to work with CURE to ensure that these efforts do not advance without STB reform measures.

**APPA Position**

APPA supports H.R. 2125, S. 953, H.R. 1650 and S. 772, which encourage structural and policy changes to promote competitive transportation alternatives for rail customers, improvements in the rail customer protection mechanisms that are implemented by the STB, and remove the antitrust exemptions for the railroads. APPA opposes enactment of legislation (H.R. 2116 and S. 1125) granting a federal ITC for the railroads without these reforms.

While the railroads will argue that any rail customer legislation is an attempt at re-regulation, the goal of rail customers is not re-regulation, but rather a national rail policy that will ensure reliable rail transportation and reasonable rates for all rail customers — particularly for those rail customers without access to competitive transportation alternatives. ■