# Exhibit 18

(Prystowsky Declaration)

# RAILROAD ANTITRUST ENFORCEMENT ACT OF 2007

# HEARING

BEFORE THE

## TASK FORCE ON ANTITRUST AND COMPETITION POLICY

OF THE

## COMMITTEE ON THE JUDICIARY

## HOUSE OF REPRESENTATIVES

ONE HUNDRED TENTH CONGRESS

SECOND SESSION

ON

## H.R. 1650

FEBRUARY 25, 2008

## Serial No. 110–171

Printed for the use of the Committee on the Judiciary



Available via the World Wide Web: http://judiciary.house.gov

U.S. GOVERNMENT PRINTING OFFICE

40–922 PDF                WASHINGTON : 2009

For sale by the Superintendent of Documents, U.S. Government Printing Office
Internet: bookstore.gpo.gov   Phone: toll free (866) 512–1800; DC area (202) 512–1800
Fax: (202) 512–2104   Mail: Stop IDCC, Washington, DC 20402–0001

## COMMITTEE ON THE JUDICIARY

JOHN CONYERS, JR., Michigan, *Chairman*

| | |
|---|---|
| HOWARD L. BERMAN, California | LAMAR SMITH, Texas |
| RICK BOUCHER, Virginia | F. JAMES SENSENBRENNER, JR., |
| JERROLD NADLER, New York | Wisconsin |
| ROBERT C. "BOBBY" SCOTT, Virginia | HOWARD COBLE, North Carolina |
| MELVIN L. WATT, North Carolina | ELTON GALLEGLY, California |
| ZOE LOFGREN, California | BOB GOODLATTE, Virginia |
| SHEILA JACKSON LEE, Texas | STEVE CHABOT, Ohio |
| MAXINE WATERS, California | DANIEL E. LUNGREN, California |
| WILLIAM D. DELAHUNT, Massachusetts | CHRIS CANNON, Utah |
| ROBERT WEXLER, Florida | RIC KELLER, Florida |
| LINDA T. SANCHEZ, California | DARRELL ISSA, California |
| STEVE COHEN, Tennessee | MIKE PENCE, Indiana |
| HANK JOHNSON, Georgia | J. RANDY FORBES, Virginia |
| BETTY SUTTON, Ohio | STEVE KING, Iowa |
| LUIS V. GUTIERREZ, Illinois | TOM FEENEY, Florida |
| BRAD SHERMAN, California | TRENT FRANKS, Arizona |
| TAMMY BALDWIN, Wisconsin | LOUIE GOHMERT, Texas |
| ANTHONY D. WEINER, New York | JIM JORDAN, Ohio |
| ADAM B. SCHIFF, California | |
| ARTUR DAVIS, Alabama | |
| DEBBIE WASSERMAN SCHULTZ, Florida | |
| KEITH ELLISON, Minnesota | |

PERRY APELBAUM, *Staff Director and Chief Counsel*

———

## TASK FORCE ON ANTITRUST AND COMPETITION POLICY

JOHN CONYERS, JR., Michigan, *Chairman*

| | |
|---|---|
| HOWARD L. BERMAN, California | RIC KELLER, Florida |
| RICK BOUCHER, Virginia | STEVE CHABOT, Ohio |
| ZOE LOFGREN, California | BOB GOODLATTE, Virginia |
| SHEILA JACKSON LEE, Texas | DANIEL E. LUNGREN, California |
| MAXINE WATERS, California | CHRIS CANNON, Utah |
| STEVE COHEN, Tennessee | DARRELL ISSA, California |
| BETTY SUTTON, Ohio | MIKE PENCE, Indiana |
| ANTHONY D. WEINER, New York | J. RANDY FORBES, Virginia |
| DEBBIE WASSERMAN SCHULTZ, Florida | LAMAR SMITH, Texas, *Ex Officio* |

PERRY APELBAUM, *Staff Director and Chief Counsel*

# C O N T E N T S

---

## FEBRUARY 25, 2008

Page

### OPENING STATEMENT

The Honorable John Conyers, Jr., a Representative in Congress from the State of Michigan, and Chairman, Task Force on Antitrust and Competition Policy ........................................................................................................................ 1

The Honorable Darrell Issa, a Representative in Congress from the State of California, Member, Task Force on Antitrust and Competition Policy ....... 2

The Honorable Chris Cannon, a Representative in Congress from the State of Utah, and Member, Task Force on Antitrust and Competition Policy ........ 3

The Honorable Sheila Jackson Lee, a Representative in Congress from the State of Texas, and Member, Task Force on Antitrust and Competition Policy ........................................................................................................................ 3

### WITNESSES

The Honorable Tammy Baldwin, a Representative in Congress from the State of Wisconsin, and Member, Committee on the Judiciary

Oral Testimony ........................................................................................................ 6

Prepared Statement ............................................................................................... 13

Ms. Susan M. Diehl, Senior Vice President, Logistics and Supply Chain Management, Holcim (US) Inc.

Oral Testimony ........................................................................................................ 23

Prepared Statement ............................................................................................... 25

Mr. Terry Huval, Director of Utilities, Lafayette Utilities System, Lafayette, LA

Oral Testimony ........................................................................................................ 30

Prepared Statement ............................................................................................... 32

Mr. G. Paul Moates, Sidley Austin, LLP, on behalf of the Association of American Railroads

Oral Testimony ........................................................................................................ 55

Prepared Statement ............................................................................................... 58

Mr. Darren Bush, Professor, University of Houston Law Center

Oral Testimony ........................................................................................................ 76

Prepared Statement ............................................................................................... 79

### LETTERS, STATEMENTS, ETC., SUBMITTED FOR THE HEARING

Prepared Statement of the Honorable Sheila Jackson Lee, a Representative in Congress from the State of Texas, and Member, Task Force on Antitrust and Competition Policy ........................................................................................ 4

### APPENDIX

Material Submitted for the Hearing Record ........................................................... 125

# RAILROAD ANTITRUST ENFORCEMENT ACT OF 2007

---

## MONDAY, FEBRUARY 25, 2008

House of Representatives,
Task Force on Antitrust
and Competition Policy
Committee on the Judiciary,
*Washington, DC.*

The Task Force met, pursuant to notice, at 4:02 p.m., in room 2141, Rayburn House Office Building, the Honorable John Conyers, Jr. (Chairman of the Task Force) presiding.

Present: Representatives Conyers, Jackson Lee, Smith, Goodlatte, Cannon and Issa.

Mr. CONYERS. Good afternoon. The hearing on the Antitrust Task Force will come to order.

We are pleased to have everyone here. I would like to begin our discussion this afternoon by observing that under current law, the Department of Justice and the Federal Trade Commission have limited authority to enforce Federal antitrust laws in the railroad industry. This is a subject that has not been on the front of the minds of many Members of Congress, and we thank Congresswoman Baldwin, a Member of the Judiciary Committee, for putting a little focus on this today.

The Department of Justice and the Federal Trade Commission have limited authority to enforce Federal antitrust laws in the railroad industry. Why is this important? Well, certain transactions among rail carriers, if approved by the industry's regulatory body, the Surface Transportation Board or STB, are exempt from Federal antitrust enforcement. And so this hearing seeks to examine whether the roles of the Department of Justice and the FTC, Federal Trade Commission, in the railroad industry need to be expanded.

So the measure under scrutiny today would eliminate some of the antitrust immunities that specifically apply to railroads, providing the Department of Justice, the Trade Commission, and the STB, with concurrent jurisdiction over antitrust matters. In addition, it proposes to eliminate some of the restrictions on remedies available to private plaintiffs in antitrust actions against rail carriers. The bill removes the carve-out in the Clayton Act that prevents private plaintiffs from obtaining injunctive relief in railroad antitrust suits. The bill would enable private plaintiffs to be awarded treble damages. Judicial precedent currently limits damages to the rail carriers' filed rate.

(1)

Case 1:07-mc-00489-PLF -JMF  Document 395-19  Filed 08/10/10  Page 6 of 9

Holcim has no recourse regarding rates since cement (officially "hydraulic cement") is classified as an exempt product from rate regulation by the STB. Since the STB has done little to address service issues, Holcim believes Congress should expand the STB's authority to promote transparency around rail service. Congress should also require the STB to submit an annual report regarding rail service complaints and describe the procedures the STB took to resolve them. Further, either party should be allowed to submit a dispute over rail service to the STB for "final offer" arbitration.

At present, the Surface Transportation Board does not fulfill its mandate "to respond to the demands of maintaining a healthy and competitive . . . national transportation infrastructure. . . . [T]he STB [is] charged with ensuring that the nation maintains a strong railroad infrastructure that serves passengers and shippers well." [1] The STB has not fostered competition and improved service during its tenure and has not responded well to the needs of shippers.

CONCLUSION

As a shipper of a strategic building material, Holcim needs a vibrant and profitable rail industry to support the nation's economic growth. Holcim must have access to a competitive rail transportation system, to ensure timely and efficient delivery of cement to those who build our nation's critical infrastructure. It simply requires the rail industry to re-invest to grow and stay competitive, like its customers. Congress must level the playing field following decades of consolidation and growth of monopoly power in the rail industry.

During the last decade, Holcim has invested over $1 billion to upgrade its capacity and better serve its customers while improving its environmental performance. Holcim is investing an additional $1 billion in Ste. Genevieve, Missouri, on the Mississippi River, to ensure cost effective, environmentally friendly and reliable transport of cement, in part based on concerns that the railroads will not have the capacity or service levels necessary to serve customer needs in the years to come. We believe that the railroads must also re-invest; however, that investment need not be conditioned on receiving a mandate to continue with monopolistic practices.

What is currently being proposed in H.R. 1650, under your leadership, Mr. Chairman and that of your Committee, has many key proposals that would help captive shippers like Holcim, for example: 1. removing the antitrust exemption under the Nation's antitrust laws; 2. allowing Federal Courts to assert jurisdiction in actions against common carriers and, 3. extending treble damages to carriers. Indeed, Mr. Chairman, we would not advocate for reform that would deter growth of our critical rail infrastructure. What we believe is that stronger competition creates incentives to become efficient operators with a strong customer focus—much like the incentives of the free market economy that drive efficiencies and competitive investment by Shippers. Competition, not monopoly power, is essential to fuel the railroads' and Shippers' growth. Continued monopoly power is by definition anti-competitive and will yield no growth. Every business must and does invest in renewing its infrastructure in order to remain competitive and railroads should be no exception.

I believe that Congress must especially consider provisions that promote rate competition and provide greater oversight on rail service related issues.

I sincerely thank you, Mr. Chairman, and Members of the Committee for your time and I again appreciate this opportunity to speak about issues vital to our national infrastructure and future growth.

Mr. CONYERS. We turn now to the director of utilities for the Lafayette Utility System in Louisiana and the chairman of the American Public Power Association. We have Mr. Huval, with a very important background, a little bit different from anyone else that is a witness. But Mr. Terry Huval, your experience and engineering background, your work over the years in Louisiana, and your particular experiences make us very pleased that you are before us today.

We are going to put your testimony in the record and invite you to talk with us at this time.

---

[1] Statement of Congressman Wise, Ranking Member, Hearing on STB Reauthorization, March 12, 1998, U.S. House of Representatives, Subcommittee on Railroads, Committee on Transportation and Infrastructure.

30

### TESTIMONY OF TERRY HUVAL, DIRECTOR OF UTILITIES, LAFAYETTE UTILITIES SYSTEM, LAFAYETTE, LA

Mr. HUVAL. Thank you, Mr. Chairman, and thank you to the Members of the Committee here this afternoon. My name is Terry Huval, I am from Lafayette, Louisiana, the heart of Cajun country. We speak more French than we speak English sometimes. In case I just jump into French, stop me and I will go ahead and get back to the English part of the story.

I am serving at the pleasure of the APPA as the chairman of the board this year. I have been in the utility business all my working career since I graduated in electrical engineering from college. I am also representing the Consumers United for Rail Equity, which is representing a large number of captive shippers not only in the utility business, but also in the grain, petrochemical, and many other areas.

My message to you today is to speak of the STB and how they have conducted their business, especially since I noted that the rail providers have indicated that the antitrust issues that we are trying to address by this bill 1650 are actually being overseen by the STB. I will share with you some stories about Lafayette.

We have a coal plant that we co-own that is located about 90 miles north of us. To get coal to that particular plant is a 1,500-mile trek from Wyoming to Louisiana. Of that 1,500 miles, we have a competitive rail solution for all but 20 miles. So only the last 20 miles is only served by one rail provider.

The STB, in their assessment of how they should be overseeing the railroads, takes the position that unless we have two rail providers, or these two rail providers, that come all the way from the beginning, from the source point, to the destination, that the company serving us cannot be forced to open up part of their line for competition. So what that means is of the 1,500 miles of train track coming to Lafayette, of which 1,480 miles we have a competitive option, we are forced under a monopoly rate structure for the entire 1,500 miles. That is, to us, not reasonable, and I think anyone who would be looking at these issues from an antitrust perspective would have to question why that takes place.

Unfortunately, as time has gone on in this business, we have noted even when there are alternate rail providers, that because to ship coal requires rail, unless you have a river close by, requires rail, you are not seeing much meaningful competition between the rail providers. That is unfortunate, and it has an impact on our customers. In our particular case, when we provide electric service to our customers, our total cost of providing service is what we charge the customers. If we are being overcharged by the rail companies, then 100 percent of that overcharge goes to our customers.

In the case of the city of Lafayette, based on experts that we have got, we have consulted with, they have indicated to us that we are probably spending about $15 million a year or more than we should to serve our 120,000 customers in Lafayette. Bringing that to something more manageable, if we look at the entire education system in Lafayette, whether it is the university or the technical college or the community college or public schools or private schools, that is almost 10 percent of our total electrical usage. So

31

that means that those schools are paying about $1.5 million a year extra for electricity because of this circumstance.

It is my suggestion that I think those schools could find a better way to use that $1.5 million, and all the rest of our customers also. You know, $15 million each year comes up to a lot of money. Those are the dollars that our customers and the customers of most electric utility companies are being forced to pay.

The last point I wanted to bring up to you has to do with the whole notion that we should have a major industry like this that is not subject to all of the antitrust requirements that other companies are. I have read some of the testimony from the rail companies, and I don't understand how every other business in this country can operate and be under those types of antitrust requirements, but yet the rail companies feel that they should not be. I believe that if the jurisdiction of dealing with antitrust issues was moved away from the Surface Transportation Board, there would be a much more level playing field for the captive customers, and still at the same time recognizing the need of the railroads to continue to operate.

With that, I have reached the end of my comments. I thank you for your attention.

Mr. CONYERS. Thank you so much for your testimony.

[The prepared statement of Mr. Huval follows:]

32

PREPARED STATEMENT OF TERRY HUVAL

**Testimony of Terry Huval**
**Director, Lafayette Utilities System**
**Lafayette, Louisiana**

**Before the**
**House Judiciary Committee Antitrust Task Force**
**On Antitrust and Competition Policy**

**Hearing on H.R. 1650,**
**the "Railroad Antitrust Enforcement Act of 2007"**

Mr. Chairman and Members of the Committee, my name is Terry
Huval, and I serve as the Director of the Lafayette Utilities System ("LUS") in
Lafayette, Louisiana. I am also appearing here today on behalf of the American
Public Power Association (APPA), an organization for which I currently serve as
the Chairman of the Board of Directors. Thank you for the invitation to
participate in this hearing in support of H.R. 1650, the Railroad Antitrust
Enforcement Act of 2007.

LUS greatly appreciates the opportunity to appear today before the
Committee to discuss a matter of considerable importance to consumer protection
and the public interest. We seek the removal of antitrust law immunities and
outdated policies that have contributed to the current competitive problems facing
rail customers, including LUS, and that are producing significant marketplace
harm. LUS and numerous other consumers across Louisiana and this Nation
believe that H.R. 1650 offers an important step in helping to address some of the
competitive problems facing railroad customers today. We respectfully urge the
Judiciary Committee to favorably act upon and report H.R. 1650 to the full House.