# Exhibit 50

(Prystowsky Declaration)

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC

55 WEST MONROE STREET
SUITE 1111
CHICAGO, IL 60603
WWW.WHAFH.COM

TELEPHONE 312-984-0000
FAX 312-984-0001

270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600*

SYMPHONY TOWERS
750 B STREET - SUITE 2770
SAN DIEGO, CA 92101
619-239-4599*

625 NORTH FLAGLER DRIVE
9TH FLOOR
WEST PALM BEACH, FL 33401
561-833-1776*

March 10, 2010

MARY JANE FAIT
Email: fait@whafh.com

**VIA ELECTRONIC MAIL DELIVERY**

David D. Cross
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

Dear David:

  As counsel for Nyrstar Taylor Chemicals, Inc., formerly known as Zinifex Taylor Chemicals, Inc. ("Nyrstar"), I am responding to your letter of February 22, 2010 to Steve Neuwirth and Steig Olson. I number the responses according to the requests and references in your letter. By repeating the language of your requests, we do not admit that any are proper or warranted nor do we waive any objections to producing any further documents or information, but in fact reassert all applicable objections previously made.

  (1) Please produce all documents responsive to Defendants' Request for Production for the period May 1, 2001, to September 24, 2002, or provide written confirmation that no additional responsive documents exist beyond the single document already produced and explain the circumstances of the loss or destruction of such documents.

  We wish to advise you of certain circumstances that limited the number of documents produced by Nyrstar Taylor Chemicals, Inc., formerly known as Zinifex Taylor Chemicals, Inc. ("Nyrstar"), for the time between May 1, 2001, and September 24, 2002:

*WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC

Letter to D. Cross
March 10, 2010
Pg. 2

- Prior to the filing of Nyrstar's complaint, I gave oral preservation instructions to Nyrstar, and, on January 8, 2009, I transmitted a written litigation hold notice. However, pursuant to standard company off-boarding procedures, when Jeff Taylor and Bill Tiddy left the company in the fall of 2007, their electronically stored information was deleted. To the extent that either Jeff Taylor or Bill Tiddy communicated with Defendants, those communications should be in the possession of Defendants. To the extent either communicated internally with Betsy Myers, Kent Strader, William Moore, Edward Przybyl or Glenn Poynter during the relevant time, those individuals' PST files have been searched using 51 search terms agreed with the defendants to locate relevant information for production. In addition, Betsy Myers' e-mails have been searched to produce documents sent to or received from Mr. Taylor, and Edward Przybyl's e-mails have been searched to produce documents sent to or received from Mr. Taylor and Mr. Tiddy.

- Pursuant to standard backup rotation procedures, in February 2009, all backup tapes for electronic data from February 2007 through February 2008 were overwritten. However, the Microsoft Exchange email server was backed up on or about June 30, 2007, preserving all e-mails from all company employees in existence as of that date. Nyrstar is in possession of this backup tape, but, because Nyrstar has changed domains, servers, management of the servers, and software at that time, the ESI on this backup tape is not reasonably accessible. However, we are open to a discussion of how to determine whether this tape contains any relevant information and how it might be recovered.

- Pursuant to reminders circulated from time to time to Nyrstar's personnel to delete e-mails to save space on the server, prior to June 2007, Betsy Myers deleted all e-mails dated before 2003.

- In May 2008, Shelby Hyatt's hard drive crashed, and all information stored on it became irretrievable.

- Nyrstar's hard-copy documents were moved to an off-site storage facility in 2006 because its on-site warehouse had a leaking roof. It is possible that some older boxes were destroyed because of water damage or were not moved to the new warehouse.

(2) Pursuant to the parties' agreement and Requests 31-33, Defendants request certain supplemental information regarding Nyrstar's use of non-rail alternatives during the relevant time period. . . . Please produce all contracts and payment-related records, including invoices, freight bills, negotiation files, and accounts payable statements, for the *three* truck and *three* barge carriers most often used by Nyrstar during the relevant time period.

Nyrstar has already produced payment data for all freight shipments for the entire relevant period, January 2001 through May 2007, in excel spreadsheets. *See* NYR006355-9601, NYR009602-9780, NYR009781-10004. Under the parties' November 17, 2009 agreement,

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC

Letter to D. Cross
March 10, 2010
Pg. 3


Nyrstar did not have to produce individual payment records, such as invoices, freight bills, etc. for non-rail shipments.

(3) Please identify the barge companies Nyrstar used during that time.

As limited by the parties' agreement that led to Nyrstar's supplemental response to Interrogatory No. 4, Nyrstar states that it used only one barge company, Volunteer Barge and Transport, Inc., during the relevant time period.

(4) Please provide the Bates numbers for the invoices you are referring to in your interrogatory response as well as for the particular "SAP excel spreadsheets" you contend reflect the amounts Nyrstar paid for non-rail shipments during the relevant time period.

Nyrstar identifies freight bills that can be located in the production with Bates numbers NYR021380-92, and contracts or rate quotes with Bates numbers NYR010869-85 and NYR010887-96. The excel spreadsheets that contain payment information for rail and non-rail carriers from January 2001 through May 2007 are at NYR006355-9601, NYR009602-9780, NYR009781-10004. Under the parties' November 17, 2009 agreement, Nyrstar did not have to produce individual payment records, such as invoices, freight bills, etc. for non-rail shipments.

(5) [P]lease explain the basis for each of your contentions that any of the information requested in Interrogatory No. 4 is not reasonably ascertainable, or that the burden of ascertaining the information would be the same for defendants as for Plaintiff, and please describe the efforts, if any, you have made to ascertain such information. Regarding the volumes of shipments by non-rail means, you will recall that you agreed in our meet and confers to provide this information in response to Interrogatory No. 4, and we need to understand why you are now declining to do so. Regarding cost information for 2001 and 2002, we need to understand where such information may reside, if at all, beyond Nyrstar's "online accounting" system and why such information, if it exists, is not reasonably accessible.

Regarding cost information, Nyrstar has produced payment data for all of years in the relevant time period, including 2001-2002. *See* NYR006355-9601, NYR009602-9780, NYR009781-10004. Hard-copy invoices for 2001-2002 from which cost information may be derived may be available in storage among approximately 160 boxes, and the burden of ascertaining such information would be the same for Defendants as for Plaintiff.

With respect to volume information, in March 2007, Nyrstar changed from its legacy accounts payable system (AS400) to its current SAP system. The volume codes did not carry over to the SAP system, and the legacy system cannot be accessed in a manner to determine the volume of non-rail shipments or to divide freight costs between rail and truck. The enormous burden of combing through over one hundred boxes of invoices in storage to calculate the

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC

Letter to D. Cross
March 10, 2010
Pg. 4

volume of non-rail shipments from the hard-copy invoices in those boxes is the same for Defendants as for Plaintiff.

(6) Please explain the basis for these allegations ["Plaintiff estimates that approximately one-quarter to one-third of acid freight costs during the relevant time period was for rail freight, and that the majority of zinc metal freight during the relevant time period was for trucking freight"], including how you arrived at these allocations and what you relied upon for them.

These estimates were based upon employees' knowledge of the relative volumes of truck and rail shipments of sulfuric acid and zinc. Documents supporting these estimates can be located at NYR021725-NYR021744 (Sulfuric Acid Sales Arrangement, at page 12) and NYR021766-76 (Zinifex Clarksville Metal Marketing, at page 4).

Please feel free to contact me with any questions.

Sincerely,

Mary Jane Fait /jc

cc: Stephen R. Neuwirth
**QUINN, EMANUEL, URQUHART, OLIVER & HEDGES LLP**
51 Madison Ave., 22nd Floor
New York, NY 10010

Steig D. Olson
**HAUSFELD LLP**
11 Broadway, Suite 615
New York, NY 10004