**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL Docket No. 1869<br>Misc. No. 07-489 (PLF/JMF/AK) |
| This document relates to:<br><br>ALL DIRECT PURCHASER CASES | |

**MEMORANDUM ORDER**

Now pending before the Court and ready for resolution is third-party Surface Transportation Board's ("STB") Motion of the Surface Transportation Board to Quash Subpoena [#366] ("Mot. to Quash"). For the reasons stated herein, the STB's motion will be denied.

**I. Background**

The facts of the case are set out in In re Rail Freight Fuel Surcharge Antitrust Litig., 587 F. Supp. 2d 27, 29-31 (D.D.C. 2008) and In re Rail Freight Fuel Surcharge Antitrust Litig., 258 F.R.D. 168, 168-69 (D.D.C. 2009). Briefly, plaintiffs allege that defendants, the four largest Class I railroads based in the United States, violated federal antitrust laws by conspiring to price-fix the cost of rail freight transportation services via the application of rail fuel surcharges. In re Rail Freight Fuel Surcharge Antitrust Litig., 258 F.R.D. at 168. The instant case is brought on behalf of shippers whose freight was not rate-regulated. Complaint at ¶ 1. Rate-regulated freight refers to that freight which the STB has the authority to regulate.

Discovery in this case has been progressing on a rolling basis, beginning August 1, 2009. Scheduling Order ¶ 1. In December 2009, plaintiffs served the STB with an administrative

request for the STB's confidential Carload Waybill Sample ("waybill data") for the years 1985 to 2008. Mot. to Quash at Addendum A. The STB published a notice of the request in the Federal Register on January 8, 2010. See 75 Fed. Reg. 1118. According to the STB, four railroads filed objections to the disclosure requests, CSX Transportation Inc. ("CSXT"), BNSF Railway Company ("BNSF"), Canadian Railway Company and Grand Trunk Corporation (collectively, "CN"), and Norfolk Southern Railway Company ("NS"). Mot. to Quash at 5 (citing Mot. to Quash at Addendum C). The objections were based on plaintiffs' failure to comply with STB regulations. Id. Specifically, plaintiffs failed to state the purpose of their request, establish a need for the data, identify the individuals who would have access to the confidential data released by the STB, or state that they intended to comply with STB's confidentiality protections. Id. Two of the railroads also argued that plaintiffs' requests were overbroad and failed to explain the relevance of data dating back to 1985. Id. at 5-6. Lastly, several of the railroads objected to the fact that the plaintiffs failed to inform the STB of the pending lawsuit and of the court order limiting the relevant dates of discovery. Id. at 6. The railroads noted that the plaintiffs had already received complete traffic data from defendants through discovery in the case, and they failed to explain why they also needed the waybill sample data. Id.

Plaintiffs filed a reply submission on January 26, 2010. They attached the protective order issued by the Court in this case as an addendum and agreed to treat the data released by the STB as "highly confidential," in accordance with the protective order. Id. Plaintiffs further agreed to meet all relevant provisions of the order, but they did not reveal who would have access to the data, a requirement under STB regulations. Id. (citing 49 C.F.R. § 1244.9(b)(4)(v)

(regarding confidentiality requirements)).[1]  Further, STB determined that plaintiffs "made no attempt to show the purpose of the request or their specific need for the data." Id.

On February 3, 2010, the STB Director denied the plaintiffs' administrative request for the data, explaining that plaintiffs had failed to provide a complete and detailed explanation of the purpose of the request, to reveal the limited discovery period at issue in the present litigation, or to explain the necessity and relevance of the waybill data. Id. at 7.  Further, the Director of the Office of Economics, Environmental Analysis, and Administration ("the Director") indicated that plaintiffs failed to describe the specific data fields needed, with justification as to why that particular data was needed. Id.  According to the STB, plaintiffs neither appealed the Director's decision within the agency, nor did they seek judicial review of the denial of their request. Id.  Instead, the plaintiffs served the subpoena at issue on the STB, which the STB has moved the Court to quash.

## II. Legal Analysis

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  If, however, the discovery sought, in this case through a subpoena to a third party, "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or [ ] subjects a person to undue burden," the third party may move to quash the subpoena under Rule 45 of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 45(c)(3); see also Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984).  Rule 26 of the Federal

---

[1]All references to the United States Code and the Code of Federal Regulations are to the electronic versions that appear in Westlaw and Lexis.

Rules of Civil Procedure defines and governs the scope of discovery for all discovery devices, and, therefore, Rule 45 must be read in light of it. 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2452 at 392-393 (3d ed. 2008); see also Briggs v. Wash. Metropolitan Area Transit Auth., No. 01-CV-1876, 2005 WL 357190, at *5 (D.D.C. Feb. 15, 2005) (citing Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1023 (Fed. Cir. 1986) (noting that Rule 45 must be read in light of Rule 26(b)).  Thus, "courts generally employ a balancing test, weighing the burdensomeness to the moving party against the [issuing party's] need for, and the relevance of, the information being sought." Flanagan v. Wyndham Intern. Inc., 231 F.R.D. 98, 102-03 (D.D.C. 2005) (citing Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985); Wyoming v. U.S. Dep't. of Agric., 208 F.R.D. 449, 452-53 (D.D.C. 2002); Alexander v. FBI, 186 F.R.D. 71, 75 (D.D.C. 1998); Insulate Am. v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005)).

The Court of Appeals for the District of Columbia Circuit has found that government agencies are "persons" subject to Rule 45 subpoenas. Yousuf v. Samantar, 451 F.3d 248, 257 (D.C. Cir. 2006) (holding that "the Government is a 'person' subject to subpoena under Rule 45 regardless whether it is a party to the underlying litigation.").  Courts have applied Rule 45 standards, which require a court to quash subpoenas that call for privileged matter or would cause an undue burden, to document subpoenas issued to third-party agencies or agency employees in federal civil suits. Watts v. S.E.C., 482 F.3d 501, 508 (D.C. Cir. 2007) (citing Linder v. Calero-Portocarrero, 251 F.3d 178, 181 (D.C. Cir. 2001); Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency, 86 F.3d 1208, 1212 (D.C. Cir. 1996)).

It is also true that many federal agencies, like the STB, have regulations that govern

agency responses to subpoenas in civil action. These regulations, often called "Touhy regulations," after the Supreme Court's decision in United States ex rel Touhy v. Ragan, 340 U.S. 462 (1951), specify the showing that the party issuing the subpoena must make to secure government compliance with a subpoena that has been issued to the agency or to one of its employees. See, e.g., Watts v. SEC, 482 F.3d 501, 507 ( D.C. Cir. 2007) (referring to the SEC regulations that require employees to decline to disclose information in response to subpoenas unless General Counsel authorizes them to do so). It is clear, however, that such regulations cannot be read to create a valid legal basis for an agency refusal to comply with a subpoena. As I have stated in another case:

> The Touhy regulations were enacted by various government agencies under the authority of the so-called "Federal Housekeeping Statute." 5 U.S.C. § 301. This statute allowed government agencies to create procedures for responding to subpoenas and requests for testimony. See, e.g., Comm. for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d 788, 793 (D.C. Cir. 1971). They do not, however, confer a separate privilege upon the government, nor create a legal basis to withhold information pursuant to a federal subpoena. See Houston Bus. Journal v. Office of Comptroller of Currency, 86 F.3d 1208, 1212 (D.C. Cir. 1996); see also Watts v. SEC, 482 F.3d 501, 508-09 (D.C. Cir. 2007) ("[T]he legal basis for any opposition to a subpoena must derive from an independent source of law such as government privilege or the rules of evidence or procedure.") (citing James WM. Moore et. al., MOORE'S FEDERAL PRACTICE § 45.05(1)(b) (3d ed.2006)). In the instant case, where a valid subpoena has been served upon a government agency, the controlling legal standard by which the court reviews whether the agency must comply is based on the Federal Rules of Civil Procedure. See Linder v. Calero-Portocarrero, 251 F.3d 178, 181 (D.C. Cir. 2001); see also Watts, 482 F.3d at 508 ("Rule 45's privilege and undue burden standard thus applies to both document and testimonial subpoenas.").

In re: Motion to Compel Compliance with Subpoena Directe[ed] to Dep't of Veteran Affairs, 257

5

F.R.D. 12, 15-16 (D.D.C. 2009).

Accordingly, the plaintiffs' failure to exhaust the administrative remedy provided and then seek judicial review of the Board's refusal to provide the information is irrelevant. Thus, the only question presented is: would the enforcement of the subpoena subject the Board to an undue burden. For the reasons I state below, I conclude that it will not.

### III. Undue Burden

The STB argues that the subpoena imposes an undue burden on it, because the plaintiffs have already received the same information from defendants through discovery, in the form of transactional data covering all shipments from years 2000 to 2008. Mot. to Quash at 9. Further, the burden for the STB is that fact that plaintiffs have not fully availed themselves of the proper administrative process for obtaining the data. Mot. to Quash at 8. I have already addressed this issue; that the plaintiffs failed to avail themselves of the administrative process remains irrelevant.

Plaintiffs argue that the data requested from the STB does not create an undue burden, because it includes waybill data from all reporting United States railroads, including non-defendants. Direct Purchaser Plaintiffs' Response to the Motion of the Surface Transportation Board to Quash Subpoena Duces Tecum [#367] ("Pls. Opp.") at 9. Thus, argue plaintiffs, the waybill sample data augments, but does not duplicate the production by defendants. Id. at 10. The STB cannot quarrel with plaintiffs argument; all are agreed that plaintiffs could not possibly have secured the data from the railroads it did not sue and therefore the only source of the data is the STB.

Other than its claim that duplicate production would create an undue burden, the STB

6

does not provide an affidavit from any STB representative explaining why the production of the data will be so expensive and time consuming that enforcing the subpoena would, on balance, constitute a burden that it should not be required to bear.  To the contrary, STB concedes that "[t]he fields of data that contain nonconfidential information are routinely disclosed publicly." Mot. to Quash at 3.  If such information is publicly available upon demand, it is hard to understand why making it available to plaintiffs can constitute an "undue burden."

I appreciate that the STB claims some of the information is confidential and, under its regulations, there are important showings that must be made before an applicant is permitted to see the confidential data. Id. at 4; see also 49 C.F.R. § 1244.9.  Nevertheless, the unequivocal teaching of Watts and of my decision in In re: Motion to Compel Compliance with Subpoena Directe[ed] to Dep't of Veteran Affairs is that the source of an agency's refusal to comply with a subpoena cannot be agency regulations.  Instead, unless a statute renders information privileged from disclosure, the source of any privilege against disclosure must be found in the common law. Similarly, Rule 45 of the Rules of Civil Procedure indicates that a court may quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).  Additionally, another subsection of that Rule protects a party from having to disclose "a trade secret or other confidential research, development or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i).  Thus, STB must first show that the disclosure plaintiffs want would disclose a trade secret, or other confidential research, development or commercial information."  Failing that, the STB would have to make a showing that the information is nevertheless protected by either a statutory or common law privilege.  The STB must also show that the protections afforded by an order I would issue,

which would subject any disclosure the STB made to the highly confidential provisions of the protective order issued in this case, would not sufficiently safeguard the STB's interest in protecting the confidentiality of the information it must disclose.  Since the STB does not even attempt this specific and detailed showing, its resistance to the subpoena, premised only on its own regulations, is insufficient.

**IV. The Data Requested by the Subpoena Would Not Allow an End-Run Around Discovery**

The STB also objects to the subpoena because it is a "blatant evasion of the Court's limit on discovery," by seeking waybill data back to 1995.[2] Mot. to Quash at 10.  Plaintiffs claim that they seek data back to 1995 so that their expert will have additional data to investigate the relationship between freight rates and variable costs. Pls. Opp. at 10.  Plaintiffs further argue that the Court's order limiting discovery was specific to the parties, and should not apply to this non-party subpoena. Id.  Plaintiffs are correct.  That I limited discovery as between the parties to a certain period of time does not compel that I reach the same conclusion when other information is sought from a third party.

**V. Conclusion**

For the reasons stated herein, it is hereby

**ORDERED** that Motion of the Surface Transportation Board to Quash Subpoena [#366] is **DENIED**.  It is, further, hereby

**ORDERED** that data produced in response to the subpoena will be covered by the court-ordered protective order and will be considered "Highly Confidential - Attorneys' Eyes Only."

**SO ORDERED.**

---

[2] The administrative request sought data back to 1985. Mot. to Quash at 10.

                                                                                                                             _____
                                                                                                                              JOHN M. FACCIOLA
                                                                                                                              UNITED STATES MAGISTRATE JUDGE