**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL DIRECT PURCHASER CASES | MDL No. 1869<br>Misc. No. 07-489 (PLF/AK/JMF)<br>Hon. Paul L. Friedman |

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S
REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Plaintiffs' Consolidated Opposition To The Motions For Protective Order by the Defendants ("Pl. Opp." or "Opposition") does not justify the broad-ranging corporate representative testimony that Plaintiffs seek from Union Pacific Railroad Company ("Union Pacific") and the other Defendants. Plaintiffs devote most of their Opposition to arguments about relevance and broad principles of liberal discovery that ultimately do not address the specific overbreadth and burden problems of the Rule 30(b)(6) notices that Plaintiffs have served. Despite Plaintiffs' arguments, the fact remains that Plaintiffs have served corporate representative deposition notices that may require a Union Pacific witness or witnesses to testify about: (1) the "overall policies and practices" applicable to any of the many thousands of interline transactions that regularly occurred within the relevant time period; and, (2) the assembled recollection of percipient witnesses – most of whom have been, or will be, deposed in

their individual capacities – concerning the content of discussions at "alliance" meetings relating to fuel surcharges. This is not an appropriate use of Rule 30(b)(6) in this case.

Union Pacific will not repeat here the legal arguments made by the other Defendants in their Reply briefs, but relies upon and joins in those arguments. Union Pacific files this Reply to emphasize several areas in which Plaintiffs' Opposition falls far short of addressing the particular burden and overbreadth issues affecting the Union Pacific deposition.

First, much of Plaintiffs' Opposition simply does not address the burden and overbreadth problems that Union Pacific has identified. In particular, Plaintiffs spend a good portion of their Opposition discussing a relevance argument that is itself irrelevant to Union Pacific's motion. Plaintiffs argue that testimony concerning interline policies and practices is relevant to defenses that Defendants have raised under 49 U.S.C. § 10706(a)(3)(B) challenging the admissibility and probative value of interline communications. But Union Pacific has not objected to Plaintiffs' corporate representative deposition notices on the ground that interline evidence is not discoverable. Indeed, as Union Pacific pointed out in its Motion, it has produced numerous interline documents during discovery and has not objected to Plaintiffs' extensive questioning of Union Pacific witnesses concerning interline transactions and policies. Union Pacific's objections to Plaintiffs' 30(b)(6) notice concern its overbreadth and consequent undue burden and unfairness. While the Defendants have a compelling claim that interline communications are inadmissible and irrelevant to Plaintiffs' conspiracy allegations under Section 10706(a)(3)(B), that issue has no bearing on this Motion or what the Magistrate Judges need decide.

Second, Plaintiffs' reliance upon the general principle that parties are not limited to one form of discovery does not support the broad scope of the 30(b)(6) testimony that they seek. Union Pacific does not assert that Plaintiffs are precluded from noticing a corporate representative deposition merely because Union Pacific has already produced numerous interline documents or because Plaintiffs have already questioned some Union Pacific witnesses about the same topics included in Plaintiffs' deposition notice. Rather, the basis for Union Pacific's

2

objections to topics 1 and 2 in Plaintiffs' 30(b)(6) notice is that the topics are unreasonably duplicative and overbroad in the context of this case.

Plaintiffs' Opposition makes clear that one of the purposes of their topic number 2 is to compel a corporate representative to somehow compile the various recollections of attendees at alliance meetings concerning fuel-surcharge related topics and be prepared to provide second-hand testimony about those individuals' recollections on behalf of the corporation. *See* Pl. Opp. at 27 (arguing that Plaintiffs "should not have to shuttle between witnesses looking for one who can remember what occurred…."). Collecting the individual recollections of different corporate employees about particular meetings that occurred seven or more years ago is not a reasonable use of a 30(b)(6) deposition, particularly when Plaintiffs have had an adequate opportunity to obtain individual deposition testimony of percipient witnesses who participated in those meetings.

Plaintiffs do not deny that they have deposed, or soon will depose, the key Union Pacific executives who participated in the meetings at issue. Plaintiffs complain about the witnesses' lack of recollection about particular topics (Pl. Opp. at 27-28, n. 67), but a lack of specific recollection of events that occurred so long ago is hardly surprising. This is not a situation in which successive corporate employees have attempted to evade discovery by claiming that they are not the appropriate person to testify on a particular topic. *See* Notes of Advisory Committee on 1970 Amendments to Rule 30 (explaining that Rule 30(b)(6) was intended in part to curb "'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it"). Union Pacific witnesses have not denied that they were present at relevant meetings or claimed that they were not the appropriate persons to question about those meetings. Plaintiffs have had an adequate opportunity to depose the responsible persons who were involved in the events in question. Their inability to recall events to Plaintiffs' satisfaction is not a justification for a duplicative 30(b)(6) deposition. Under these circumstances, a 30(b)(6) deposition for the purpose of canvassing various meeting participants for any recollections they may have of

specific conversations seven years ago would be "unreasonably cumulative [and] duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).

Third, Plaintiffs' Opposition does not dispute that, in response to Plaintiffs' topic 1, a Union Pacific corporate representative may be called upon to testify as to whether and how particular corporate "policies" might apply to any of thousands of different documents relating to interline communications. Pl. Opp. at 25. Plaintiffs argue that "the possibility that a witness might be shown a document for which it had not been specifically prepared is a reality of litigation…." *Id.* But this platitude does not address the specific testimony that Plaintiffs seek here.

Plaintiffs ask for testimony that would be binding upon the company about policies applicable to particular interline communications, while declining to identify those communications. Plaintiffs have refused even to limit the testimony to communications involving fuel surcharges, but intend to conduct an examination "on policies and practices that applied to interline or concurrence communications generally." *Id.* In light of the variety and regularity of interline communications that are necessary (and specifically endorsed by Congress) in the rail freight industry, such a scope is unreasonable and overbroad. Indeed, this Court has previously recognized the overbreadth of discovery concerning interline communications that do not involve the fuel surcharges or fuel-related issues that are the subject matter of this case. Memorandum Order dated October 23, 2009 (Doc. 313) at 11 (noting that Plaintiffs' demand that "defendants produce documents pertaining to communications that have nothing to do with fuel surcharges because the persons communicating had the power [to influence, recommend or adopt fuel surcharges] is archetypical of overbreadth"). It is unreasonable for Plaintiffs to expect Union Pacific to prepare a 30(b)(6) witness to testify about the policies applicable to any of a variety of interline communications that Plaintiffs refuse to limit or even identify.

Finally, Plaintiffs' argument that they have not had an adequate opportunity to conduct discovery through individual depositions because Defendants recently filed a motion addressing

4

the scope of Section 10706(a)(3)(B) is inconsistent with the record.  Defendants' reliance on Section 10706 has been clear from the beginning of discovery.  *See, e.g.,* Union Pacific's Fourth Affirmative Defense in its Answer to Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint (Doc. No. 164), filed on December 18, 2008, before discovery had begun.  *See id.* at ¶ 111 ("Defendants' alleged conduct with respect to communications concerning interline railroad services was privileged under law, including, but not limited to, the statutory privileges described in 49 U.S.C. §10706").  As Defendants Norfolk Southern Railway Company ("NS") and BNSF Railway Company ("BNSF") point out in their Reply briefs, Defendants also identified the statutory protections provided by Section 10706(a)(3)(B) in their consolidated Motion to Dismiss and in briefing on their motion for phased discovery, as well as in briefing on other discovery motions.  *See* NS Reply at 6-7; BNSF Reply at 2-3.

Plaintiffs' ability to obtain relevant testimony from percipient witnesses has also not been hampered by Union Pacific's rolling document production.  Union Pacific produced minutes of the relevant alliance meetings with its first production of documents on February 5, 2009, long before depositions had begun.  Plaintiffs have already questioned Union Pacific witnesses at length concerning the same alliance meetings that they now claim are newly at issue using those minutes and other documents concerning those meetings.  *See* Declaration of David G. Meyer In Support of Union Pacific Railroad Company's Motion for Protective Order at ¶¶ 3-5.  Over six months ago Plaintiffs deposed Mr. Eisele extensively concerning alliance meetings, using twenty different exhibits concerning sixteen different meetings.  *Id.* at ¶ 4.  Plaintiffs acknowledge that they deposed Mr. Eisele and Mr. Young (Union Pacific's current CEO) about alliance meetings, complaining only about their lack of "corporate preparation."  Pl. Opp. at 21.  But there is no reason to think that the production of any additional documents (much less the passage of additional time) will help to refresh witnesses' recollection about the events of alliance meetings that Plaintiffs have already explored in depositions.

In addition, Plaintiffs have now had the opportunity to depose Union Pacific's Chief Marketing Officer, Jack Koraleski, and will soon depose its former CEO, Richard Davidson.  *Id.*

5

at ¶ 6. Mr. Koraleski's deposition took place on December 2, 2010, *after* Defendants had filed the motion that Plaintiffs' claim shed new light on Defendants' Section 10706 arguments. Plaintiffs questioned Mr. Koraleski extensively about alliance meetings and interline communications, and will presumably do the same with Mr. Davidson. Both Mr. Koraleski and Mr. Davidson participated in alliance meetings that Plaintiffs claim should be the subject of 30(b)(6) testimony. *Id.*

Plaintiffs' Opposition falls short of justifying the scope of their 30(b)(6) notice for other reasons that are addressed in the other Defendants' Reply briefs. For example, Plaintiffs' attempt to use Defendants' 30(b)(6) notices to the named Plaintiffs to support the scope of the 30(b)(6) topics in Plaintiffs' notice is flawed for a number of reasons, including that the scope of information concerning rail shipments is significantly different for a *railroad* than it is for a company engaged in another business that simply ships by rail. *See* NS Reply at 11-12. And, to the extent that Plaintiffs intend to use the broad scope of their 30(b)(6) notice as a means to inquire about the Defendants' legal contentions on the scope of Section 10706 or any other issue, that is not an appropriate use of a corporate representative deposition. *See* Defendant CSX Transportation's ("CSXT") Reply at 13-15. It is not necessary to repeat those arguments here, but Union Pacific joins in them and respectfully submits that they provide additional reasons to grant Union Pacific's motion.

For all the reasons discussed above, and in the pertinent portions of the motions and reply briefs of CSXT, NS, and BNSF, topics 1 and 2 in Plaintiffs' 30(b)(6) notice on Union Pacific are overbroad and unreasonably duplicative. Union Pacific therefore respectfully requests that it not be required to provide corporate testimony on those topics or, in the alternative, that those topics be appropriately narrowed.

December 3, 2010                                   Respectfully submitted,

/s/ Alan M. Wiseman

| | |
|---|---|
| Tyrone R. Childress | Alan M. Wiseman (D.C. Bar # 187971 |
| David G. Meyer | Thomas A. Isaacson |
| HOWREY LLP | Peter A. Barile III |
| 550 South Hope Street, Suite 1100 | HOWREY LLP |
| Los Angeles, CA  90071 | 1299 Pennsylvania Avenue, N.W. |
| (213) 892-1800 | Washington, D.C.  20004 |
| | (202) 783-0800 |

*Attorneys for Defendant Union Pacific Railroad Company*

## CERTIFICATE OF SERVICE

I, David G. Meyer, an attorney certify that on December 3, 2010, I caused a true and correct copy of the foregoing **DEFENDANT UNION PACIFIC RAILROAD COMPANY's REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** to be filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to counsel for all parties.

                                                                  **/s/ David G. Meyer**
                                                                     David G. Meyer