## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL Docket No. 1869 |
| This document relates to: | Misc. No. 07-489 (PLF/JMF/AK) |
| ALL INDIRECT PURCHASER CASES | |

### DEFENDANT BNSF RAILWAY COMPANY'S ANSWER TO THE INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Defendant BNSF Railway Company ("BNSF") hereby answers the Indirect Purchaser Plaintiffs' ("Plaintiffs") Consolidated Amended Complaint ("Complaint") filed on April 15, 2008, as set forth below.  BNSF denies the allegations in the Complaint except as specifically admitted, denies any allegations as to which there is no specific response, denies all titles, headings, footnotes, subheadings, and any other material not contained in numbered paragraphs, and denies that it violated the antitrust laws in any way.  Plaintiffs' allegations related to claims brought under state antitrust and consumer protection laws require no response because those claims have been dismissed and the dismissal was affirmed by the U.S. Court  of Appeals for the D.C. Circuit.  *See In re Rail Freight Fuel Surcharge Antitrust Litigation*, 593 F. Supp. 2d 29 (D.D.C. 2008), *aff'd*, 602 F.3d 444 (D.C. Cir. 2010).  To the extent that an answer is required to any such allegations, the allegations are denied.

1.      BNSF admits that Plaintiffs purport to bring an action as described in Paragraph 1, but denies that it engaged in any violations of law.

2.      BNSF denies the allegations in Paragraph 2.

3.      To the extent that Paragraph 3 relies on a publicly-available document, that document is the best evidence of its contents.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations relating to any economic analysis of the American Chemistry Council.    BNSF denies the remaining allegations in Paragraph 3.

4.      Paragraph 4 states legal conclusions to which no response is required.  To the extent a response is required, BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other railroads and denies the allegations to the extent directed at BNSF.

5.      BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations relating to the alleged October 2004 earnings call conducted by another defendant.  BNSF denies the remaining allegations in Paragraph 5.

6.      BNSF denies the allegations in Paragraph 6.

7.      BNSF denies the allegations in Paragraph 7.

8.      The allegations in the second sentence of Paragraph 8 are too vague to permit a response.  BNSF denies the remaining allegations in Paragraph 8.

9.      BNSF denies the allegations in Paragraph 9.

10.      BNSF denies the allegations in Paragraph 10.

11.      BNSF denies the allegations in Paragraph 11.

12.      BNSF admits that its CEO and those of the other three Defendants are board members of the Association of American Railroads ("AAR").  BNSF neither admits nor denies the allegations relating to the content of the "AAR Railroad Cost Indexes" or the statement purportedly made by an unidentified "senior officer" of BNSF.  As to both, the document or statement referenced is the best evidence of its contents.  BNSF denies the remaining allegations

in Paragraph 12, except that it admits that Matthew Rose was its Chairman, President and CEO in 2003-2004.

13.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14.     BNSF denies the allegations in Paragraph 14.

15.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the alleged statements attributed to James Young.  BNSF denies the remaining allegations in Paragraph 15.

16.     BNSF denies the allegations in Paragraph 16.

17.     BNSF denies the allegations in Paragraph 17.

18.     BNSF admits that it had fuel surcharges that were applied based on a percentage of the transportation rate.  BNSF denies the remaining allegations in Paragraph 18.

19.     BNSF denies the allegations in Paragraph 19.

20.     BNSF denies the allegations in Paragraph 20.

21.     BNSF denies the allegations in Paragraph 21.

22.     BNSF denies the allegations in Paragraph 22.

23.     BNSF admits that the Surface Transportation Board ("STB") issued a ruling in January 2007 that pertained to traffic not at issue in this action.  The STB ruling is the best evidence of its contents.

24.     BNSF admits that the Surface Transportation Board ("STB") issued a ruling in January 2007 that pertained to traffic not at issue in this action.  The STB ruling is the best evidence of its contents.

25.    BNSF admits that it has disclosed that it received a state grand jury subpoena concerning its rail fuel surcharges.  BNSF further admits that it filed an SEC Form 10-K dated February 15, 2008.  That filing is the best evidence of its contents.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25.

26.    BNSF denies the allegations in Paragraph 26.

27.    BNSF admits that Plaintiffs purport to seek damages on behalf of themselves and a purported class for rail fuel surcharges imposed on shipments made under private contracts and through other means exempt from rate regulation under federal law, and that they do not seek relief arising from fuel surcharges imposed on regulated freight transportation.  BNSF denies that Plaintiffs were damaged or are entitled to any relief, and further denies any remaining allegations in Paragraph 27.

28.    BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 to the extent they are directed at the other Defendants or relate to the corporate background of plaintiff Agway Liquidating Trust.  BNSF denies that it engaged in any conspiracy or antitrust violations.

29.    BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 to the extent they are directed at the other Defendants or relate to the corporate background of plaintiff Fayus Enterprises.  BNSF denies that it engaged in any conspiracy or antitrust violations.

30.    BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 to the extent they are directed at the other Defendants or relate to

the corporate background of plaintiff Maroon Incorporated.  BNSF denies that it engaged in any

conspiracy or antitrust violations.

      31.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 31, except that it denies that it engaged in any conspiracy or antitrust

violations.

      32.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 32.

      33.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 33.

      34.     BNSF admits the allegations in Paragraph 34 regarding its principal place of

business.  BNSF states that it is a wholly owned subsidiary of Burlington Northern Santa Fe,

LLC.  BNSF further states that its parent corporation was formed by a series of mergers, but

denies that Paragraph 34 sets forth that history completely.  BNSF admits that, by many

measures, it is the second largest railroad network in North America and that it operates

approximately 32,000 route miles of railroad.  BNSF admits that it has offices and rail lines

throughout the western United States, extending into the Southeastern states.

      35.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 35.

      36.     Paragraph 36 states legal conclusions to which no response is required.  To the

extent a response is required, BNSF admits that Plaintiffs purport to invoke the jurisdiction of the

Court as described in Paragraph 36.

37.     Paragraph 37 states legal conclusions to which no response is required.  To the extent a response is required, BNSF admits that Plaintiffs purport to invoke the jurisdiction of the Court as described in Paragraph 37.

38.     Paragraph 38 states legal conclusions to which no response is required.  To the extent a response is required, BNSF admits that Plaintiffs claim that venue is proper in this District.

39.     Paragraph 39 states legal conclusions to which no response is required.  To the extent a response is required, BNSF admits that the Judicial Panel on Multidistrict Litigation has transferred these actions to this District for consolidated pretrial proceedings.

40.     Paragraph 40 states legal conclusions to which no response is required.  To the extent a response is required, BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other Defendants, but it admits that, for purposes of this litigation, it is subject to the personal jurisdiction of this Court.  BNSF specifically denies the allegations in Paragraph 40(d).

41.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.  BNSF neither admits nor denies the allegations drawn from an unidentified report issued by the AAR Policy and Economics Department; that report is the best evidence of its contents.

42.     BNSF admits that it sold and carried out rail shipments in the flow of interstate commerce to shippers and customers throughout the United States during the proposed class period.  BNSF denies the remaining allegations in Paragraph 42.

43.     Paragraph 43 states legal conclusions to which no response is required.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegation in the first sentence of Paragraph 43.

44.     Paragraph 44 states legal conclusions to which no response is required.  To the extent a response may be required, BNSF denies the allegations in Paragraph 44.

45.     BNSF denies the allegations in Paragraph 45.

46.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of Paragraph 46.  BNSF denies the remaining allegations in Paragraph 46.

47.     BNSF admits that Plaintiffs purport to bring this action as a class action and to describe the class as set forth in Paragraph 47.  BNSF denies that a class should be certified.

48.     Paragraph 48 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations in Paragraph 48.

49.     The allegations in the first sentence of Paragraph 49 state legal conclusions to which no response is required.  To the extent a response is required, BNSF denies them.  BNSF denies the remaining allegations in Paragraph 49.

50.     Paragraph 50 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations in Paragraph 50.

51.     Paragraph 51 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations in Paragraph 51.

52.     Paragraph 52 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations in Paragraph 52.

53.     Paragraph 53 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations in Paragraph 53.

54.     With respect to the first sentence in Paragraph 54, BNSF admits that Congress partially deregulated the railroad industry with passage of the Staggers Rail Act of 1980.  The remaining allegations in Paragraph 54 state legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations.

55.     BNSF admits the allegations in Paragraph 55.

56.     Paragraph 56 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations.

57.     BNSF admits that there are now seven Class I railroads, two of which are owned by Canadian entities.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 57.  BNSF denies the allegations in the last sentence of Paragraph 57.

58.     BNSF denies the allegations in Paragraph 58.

59.     BNSF denies the allegations in the first sentence of Paragraph 59.  The second sentence of Paragraph 59 states legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 59.

60.     The first two sentences of Paragraph 60 state legal conclusions to which no response is required.  To the extent a response is required, BNSF denies the allegations.  BNSF denies the remaining allegations in Paragraph 60.

61.     BNSF admits that it has on occasion entered into private freight transportation contracts that included cost escalation provisions tied to the All Inclusive Index ("AII") or the

Rail Cost Adjustment Factor ("RCAF").  BNSF further admits that the AII and the RCAF were

published by the AAR, that both indexes included fuel costs as a factor, and that both indexes

weighted a number of other cost factors.  BNSF lacks knowledge or information sufficient to

form a belief as to the truth of the allegations regarding the practices of other railroads.  BNSF

denies the remaining allegations in Paragraph 61.

      62.     BNSF denies the allegations in Paragraph 62.

      63.     BNSF admits that on occasion prior to 2003, it charged fuel surcharges on private

rail freight transportation.  BNSF lacks knowledge or information sufficient to form a belief as to

the truth of the allegations regarding the practices of other railroads.  BNSF denies the remaining

allegations in Paragraph 63.

      64.     BNSF admits that its executives attended meetings of the AAR and the National

Freight Transportation Association ("NFTA"), including an NFTA meeting held April 2-6, 2003

in Litchfield Park, Arizona.  BNSF denies the remaining allegations in Paragraph 64 and further

states that NFTA is an organization of shippers as well as transportation providers.  Indeed, 60

percent of NFTA members are shippers and 40 percent are transportation providers, which

include not only railroads but motor carriers, water carriers, and rail car leasing companies.

      65.     BNSF admits that by 2003 it had fuel surcharges that were based on the HDF

index, but lacks knowledge or information sufficient to form a belief as to the truth of the

allegations regarding Union Pacific Railroad Company's ("UP") fuel surcharges, except that it

admits that UP publicly announced carload fuel surcharges based on the WTI index prior to June

2003 and that thereafter UP publicly announced that it would utilize the HDF index effective

June 2003.  BNSF denies the remaining allegations in Paragraph 65.

66.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding UP, except that it admits that UP publicly announced carload fuel surcharges as described in Paragraph 66.  Insofar as the allegations are directed at BNSF, BNSF denies the second sentence of Paragraph 66 and admits that it had a fuel surcharge that was applied in the manner described in the third and fourth sentences of Paragraph 66.  BNSF denies the remaining allegations in Paragraph 66.

67.     BNSF denies the allegations in Paragraph 67.

68.     BNSF denies the allegations in Paragraph 68.

69.     With respect to the second sentence in Paragraph 69, BNSF admits that UP publicly announced modifications to its carload fuel surcharges in April 2003 but did not announce a change in the index it employed.  BNSF denies the remaining allegations in Paragraph 69.

70.     BNSF denies the allegations in Paragraph 70.

71.     BNSF denies the allegations in Paragraph 71.

72.     BNSF admits that the All Inclusive Index Less Fuel ("AIILF") was similar to the All Inclusive Index except that it did not include fuel costs as a component and that it specified the fourth quarter of 2002 as its base period.  The AAR announcement referred to in Paragraph 72 is the best evidence of its contents.  BNSF denies the remaining allegations in Paragraph 72.

73.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 73.  BNSF denies the remaining allegations in Paragraph 73.

74.     BNSF admits that from 2003 to present, John Lanigan has been its Chief Marketing Officer and that Matthew Rose has been its Chairman, President and CEO.  BNSF

10

neither admits nor denies the unidentified statement attributed to Mr. Lanigan; the source of the quotation is the best evidence of its contents.  BNSF denies the remaining allegations in Paragraph 74.

75.     BNSF denies the allegations in Paragraph 75.

76.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76.

77.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77.

78.     BNSF denies the allegations in Paragraph 78.

79.     BNSF denies the allegations in Paragraph 79.

80.     BNSF denies the allegations in Paragraph 80, except that BNSF admits that the AII and the RCAF both included a fuel cost component.

81.     BNSF denies the allegations in Paragraph 81.

82.     The allegation as to whether publication of a cost escalation index without a fuel component was required by a regulatory body is a legal conclusion to which no response is required.  To the extent a response is required, the allegation is admitted.  BNSF denies the remaining allegations in Paragraph 82.

83.     BNSF denies the allegations in Paragraph 83.

84.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other Defendants.  Insofar as the allegations in Paragraph 84 are directed at BNSF, BNSF admits that it applied fuel surcharges as a percentage of the transportation rate in some private contracts and on some other traffic not subject to rate regulation, but denies the remaining allegations in Paragraph 84.

85.     BNSF denies the allegations in Paragraph 85.

86.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding UP.  Insofar as the allegations are directed at BNSF, BNSF admits that the monthly percentages for BNSF's carload fuel surcharge from June 2002 through July 2007 are reflected in the Table in Paragraph 86.  BNSF denies any implication in Paragraph 86 that the same fuel surcharge has been applied to all BNSF traffic.

87.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87.

88.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88.

89.     BNSF denies the allegations in Paragraph 89.

90.     BNSF neither admits nor denies the allegations in Paragraph 90.  The article from *Traffic World* referenced therein is the best evidence of its contents.

91.     BNSF denies the allegations in the first sentence of Paragraph 91.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 91.  The study commissioned by the American Chemistry Council referenced therein is the best evidence of its contents.

92.     BNSF admits that the first sentence of Paragraph 92 contains BNSF's average cost of diesel fuel (including handling, taxes, and hedging effect) for the quarters specified. BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding customers of the other Defendants or the distance that a freight train can move a ton of freight on a single gallon of fuel.  BNSF neither admits nor denies the allegations drawn from the unidentified "2007 AAR Publication," which is the best evidence of its contents.  BNSF denies

the remaining allegations in Paragraph 92, and it specifically denies that it deflected attention from cost savings achieved through fuel efficiency gains by calculating fuel surcharges as a percentage of the shipping rate or that its customers overpaid for fuel.

93.     BNSF denies the allegations in Paragraph 93.

94.     BNSF denies the allegations in Paragraph 94.

95.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other Defendants.  Insofar as the allegations are directed at BNSF, BNSF denies the allegations in Paragraph 95.

96.     BNSF denies the allegations in Paragraph 96.

97.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other Defendants.  Insofar as the allegations are directed at BNSF, BNSF denies the allegations in Paragraph 97.

98.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other Defendants.  Insofar as the allegations are directed at BNSF, BNSF admits that Archer-Daniels-Midland Company approached it about hedging opportunities, which BNSF declined to pursue.  The allegations in the second sentence of Paragraph 98 are too vague and non-specific to permit a response.  BNSF denies the remaining allegations in Paragraph 98.

99.     BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other Defendants.  Insofar as the allegations are directed at BNSF, BNSF admits that it discussed fuel surcharges with at least one national shipper organization regarding rail fuel surcharges but denies the remaining allegations in Paragraph 99.

100.    BNSF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the other Defendants.  Insofar as the allegations are directed at BNSF, BNSF denies the allegations in the second sentence of Paragraph 100, although it admits that in some situations customers with shipments requiring movements on more than one railroad were billed separately by each railroad.  BNSF denies the remaining allegations in Paragraph 100.

101.    BNSF denies the allegations in Paragraph 101, except that the "table" presented appears to be drawn from an AAR document or publication.  Such document or publication is the best evidence of its contents.

102.    BNSF denies the allegations in the first two sentences of Paragraph 102 and in Subpart a.  Regarding Subpart b, BNSF admits that there are now five domestic Class I railroads. BNSF further states that there have been mergers in the railroad industry, but denies that Paragraph 102 sets forth that history completely.  BNSF denies the remaining allegations in Subpart b.  Subparts c, d, and e are legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.  BNSF admits that its CEO and those of the other three Defendants are board members of the Association of American Railroads ("AAR") but denies the remainder of the first sentence of Subpart f.  BNSF further states that the unidentified document attributed to the AAR in the second sentence of Subpart f is the best evidence of its contents.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the alleged statement attributed to that document.  BNSF denies the third sentence in Subpart f and notes that there are only 4, not 5, Defendants and admits that the AAR Board meets periodically and that, from time to time, BNSF engages in AAR-related communications between AAR board meetings.  BNSF denies all remaining allegations in Paragraph 102.

103.    BNSF admits that the STB issued a ruling in January 2007 that pertained to traffic not at issue in this action.  The STB ruling is the best evidence of its contents.

104.    BNSF admits that the STB issued a ruling in January 2007 that pertained to traffic not at issue in this action.  The STB ruling is the best evidence of its contents.

105.    BNSF admits that the STB ruling pertained to traffic not at issue in this action. The STB ruling is the best evidence of its contents.

106.    BNSF denies the allegations in Paragraph 106.

107.    BNSF states that the economic analysis attributed to the American Chemistry Council is the best evidence of its contents.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the alleged statements contained therein and therefore denies them.

108.    BNSF states that article attributed to Argus Media Inc. is the best evidence of its contents.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the alleged statements contained therein and therefore denies them.

109.    BNSF denies the allegations in Paragraph 109.

110.    BNSF states that the unidentified report attributed to the AAR is the best evidence of its contents.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the alleged statement attributed to James Young or the allegation regarding other railroads' market capitalization.  BNSF denies the remaining allegations in Paragraph 110.

111.    BNSF denies the allegations in Paragraph 111.

112.    BNSF denies the allegations in Paragraph 112.

113.    BNSF denies the allegations in Paragraph 113.

114.    BNSF denies the allegations in Paragraph 114.

115.    Paragraph 115 states legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.  BNSF further states that the writings attributed to Professors Harris and Sullivan are the best evidence of their contents.  BNSF lacks knowledge or information sufficient to form a belief as to the truth of the alleged statements attributed to those individuals.

116.    BNSF incorporates by reference its responses to the above paragraphs as if fully set forth herein.

117.    BNSF denies the allegations in Paragraph 117.

118.    BNSF denies the allegations in Paragraph 118.

119.    BNSF denies the allegations in Paragraph 119.

120.    BNSF denies the allegations in Paragraph 120.

121.    BNSF denies the allegations in Paragraph 121.

122.    BNSF incorporates by reference its responses to the above paragraphs as if fully set forth herein.

123.    BNSF denies the allegations in Paragraph 123.

124.    BNSF denies the allegations in Paragraph 124.

125.    BNSF denies the allegations in Paragraph 125.

126.    BNSF denies the allegations in Paragraph 126.

127.    BNSF denies the allegations in Paragraph 127.

128.    BNSF denies the allegations in Paragraph 128.

129.    BNSF denies the allegations in Paragraph 129.

130.    BNSF denies the allegations in Paragraph 130.

131.    BNSF denies the allegations in Paragraph 131.

132.     BNSF denies the allegations in Paragraph 132.

133.     BNSF denies the allegations in Paragraph 133.

134.     BNSF denies the allegations in Paragraph 134.

135.     BNSF denies the allegations in Paragraph 135.

136.     BNSF denies the allegations in Paragraph 136.

137.     BNSF denies the allegations in Paragraph 137.

138.     BNSF denies the allegations in Paragraph 138.

139.     BNSF denies the allegations in Paragraph 139.

140.     BNSF denies the allegations in Paragraph 140.

141.     BNSF denies the allegations in Paragraph 141.

142.     BNSF denies the allegations in Paragraph 142.

143.     BNSF incorporates by reference its responses to the above paragraphs as if fully set forth herein.

144.     BNSF denies the allegations in Paragraph 144.

145.     BNSF denies the allegations in Paragraph 145.

146.     BNSF denies the allegations in Paragraph 146.

147.     BNSF denies the allegations in Paragraph 147.

148.     BNSF denies the allegations in Paragraph 148.

149.     BNSF denies the allegations in Paragraph 149.

150.     BNSF denies the allegations in Paragraph 150.

151.     BNSF denies the allegations in Paragraph 151.

152.     BNSF denies the allegations in Paragraph 152.

153.     BNSF denies the allegations in Paragraph 153.

154.    BNSF denies the allegations in Paragraph 154.

155.    BNSF denies the allegations in Paragraph 155.

156.    BNSF denies the allegations in Paragraph 156.

157.    BNSF denies the allegations in Paragraph 157.

158.    BNSF denies the allegations in Paragraph 158.

159.    BNSF denies the allegations in Paragraph 159.

160.    BNSF denies the allegations in Paragraph 160.

161.    BNSF denies the allegations in Paragraph 161.

162.    BNSF incorporates by reference its responses to the above paragraphs as if fully set forth herein.

163.    BNSF denies the allegations in Paragraph 163.

164.    BNSF denies the allegations in Paragraph 164.

165.    BNSF denies the allegations in Paragraph 165.

## PRAYER FOR RELIEF

BNSF denies that Plaintiff is entitled to any relief whatsoever.  BNSF denies each and every allegation of the Complaint not specifically admitted.

## AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise bear, BNSF asserts the following affirmative defenses:

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    Under the Court's order of December 31, 2008, Plaintiffs' claims for damages under all state antitrust and consumer protection laws are preempted by federal law.  *In re Rail*

*Freight Fuel Surcharge Antitrust Litig.*, 593 F. Supp. 2d 29 (D.D.C. 2008), *aff'd*, 602 F.3d 444 (D.C. Cir. 2010).

3.      Plaintiffs did not suffer antitrust injury.

4.      Plaintiffs lack standing.

5.      To the extent that Plaintiffs allege or infer a conspiracy by virtue of meetings, discussions or agreements relating to interline movements, rates or related matters, Plaintiffs' claims are foreclosed by 49 U.S.C. § 10706(a)(3)(B).

6.      Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations and/or the doctrine of laches.

7.      Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

8.      Plaintiffs' claims are barred, in whole or in part, because this action cannot be maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

9.      Plaintiffs' claims are barred, in whole or in part, because this action cannot be maintained as a class action pursuant to Federal Rule of Civil Procedure 23, with the class period alleged.

10.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs are not proper class representatives pursuant to Federal Rule of Civil Procedure 23.

11.      BNSF had legitimate business justifications for all of its conduct at issue in this matter.

12.      BNSF's conduct did not adversely affect competition in any relevant market.

13.      Plaintiffs did not suffer any injury or damage caused by BNSF.

14.      Plaintiffs' damages, if any, are speculative.

15.     Plaintiffs' claims are barred in whole or in part to the extent based on conduct that is subject to the jurisdiction of the STB.

16.     The injuries alleged by Plaintiffs were caused in whole or in part by the conduct of third parties for whom BNSF was not responsible, through forces in the marketplace over which BNSF had no control, or through acts or omissions on the part of one or more of the Plaintiffs, including failure to mitigate damages.

17.     Plaintiffs are not entitled to injunctive relief.

18.     BNSF incorporates by reference any and all other defenses asserted by any other Defendant.

19.     BNSF specifically reserves the right to assert any additional defenses that become apparent during the course of this case.  Additional facts may become known during the course of discovery and investigation which will support affirmative defenses that currently are unknown to BNSF. To preserve such affirmative defenses, BNSF hereby incorporates by reference all of the affirmative defenses set forth in Federal Rule of Civil Procedure 8(c) and reserves the right to assert additional affirmative defenses as discovery proceeds.

## **PRAYER FOR RELIEF**

WHEREFORE, BNSF respectfully prays for relief as follows:

(1)     That the Court dismiss the Complaint with prejudice and enter judgment in favor of BNSF and against Plaintiffs on all their claims;

(2)     That class certification be denied;

(3)     That the Plaintiffs recover nothing;

(4)     That injunctive relief be denied;

(5)    That the Court award BNSF its reasonable costs incurred in defending this action, including reasonable attorneys' fees; and

(6)    That the Court grant BNSF such other and further relief as the Court deems just and proper.

### Jury Trial Demand

BNSF denies that Plaintiffs are entitled to a jury trial, and specifically requests that this matter be heard by the Court.

Dated: February 9, 2011                                Respectfully submitted,

                                                                   /s/ Gary A. Winters
                                                                   Richard J. Favretto (D.C. Bar #156588)
                                                                   Gary A. Winters (D.C. Bar #439376)
                                                                   Michael E. Lackey, Jr. (D.C. Bar #443362)
                                                                   MAYER BROWN LLP
                                                                   1999 K Street, N.W.
                                                                   Washington, D.C. 20006
                                                                   (202) 263-3000

                                                                   *Attorneys for Defendant BNSF Railway Company*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 9, 2011, I caused the foregoing Defendant BNSF

Railway Company's Answer To The Indirect Purchaser Plaintiffs' Consolidated Amended

Complaint to be filed with the Clerk of the Court using the CM/ECF system, which will send a

notice of the electronic filing to counsel for all parties.


<u>/s/  Gary A. Winters</u>
Gary A. Winters