UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | |
| | MDL Docket No. 1869 Misc. No. 07-489 (PLF/AK/JMF) |
| This Document Relates To: ALL DIRECT PURCHASER CASES | |

**MEMORANDUM ORDER**

Now pending before the Court is Plaintiffs' Motion to Re-Open Fact Discovery for Limited Deposition Discovery Due To Defendant Union Pacific Railroad Company's Production of Critical "Alliance" Meeting Documents on the Last Day of Fact Discovery and Supporting Memorandum [#511]. For the following reasons, Plaintiffs' motion will be granted in part and denied in part.

This is an action in which the gravamen of the plaintiffs' complaint is that the defendants agreed to impose fuel surcharges on plaintiffs, their customers, in violation of the antitrust laws. A central dividing line between the parties is the significance of meetings between the representatives of connecting railroads such as a western railroad, Union Pacific, and an eastern one, Norfolk Southern. Defendants insist that these meetings are a perfectly legitimate means of discussing business they share so that they can meet a statutory mandate that requires their cooperation on certain issues. See Defendant Union Pacific Railroad Company's Opposition to Plaintiffs' Motion to Re-Open Fact Discovery for Limited Deposition Discovery [#516] at 4, n.1. Indeed, defendants have moved the presiding judge, Judge Friedman, to exclude all "interline related" communications in his consideration of plaintiffs' pending motion for class certification.

See Defendants' Memorandum in Support of Motion to Exclude Interline-Related

Communications From Consideration for Class Certification or any Other Purpose Prohibited by

49 U.S.C. § 10706[1] [#420].  Plaintiffs, of course, resist that motion, insisting that they can and

will produce evidence of an industry wide determination and agreement to impose fuel

surcharges that violated the law.  Thus, information pertaining to meetings among the defendants

has proven to be an important part of discovery.

The parties and their counsel have cooperated in an exemplary manner in this

complicated MDL case but there have been a few bumps along the road.  This one deals with

information pertaining to a meeting held on May 14, 2003.  A section of the minutes of that

meeting states:

> Discussion on fuel surcharges and various application processes as
> used by different roads.  Consensus was reached that it would be a
> positive outcome if all roads had the same process in the eyes of
> our customers.  There was some question as to whether or not the
> industry can work together on this opportunity, probably through
> the AAR, or do roads have to handle the opportunity on a bilateral
> basis.  Follow up: UP [i.e. Union Pacific]-Jack Koraleski/Mike
> Hemmer, NS [i.e Norfolk Southern] Don Seale/Greg Summy.

[#516] at 4-5.

Union Pacific explains that "Hemmer" and "Summy" mentioned in the notes are in house

counsel for Union Pacific and Norfolk Southern and that the minutes reflect that whether to

impose a uniform industry fuel surcharge was referred to them and "[n]othing came of the

notion."  Id. at 5, n.2.

It is not disputed that Union Pacific made these minutes available to plaintiffs in a

---

[1] All references to the United States Code are to the electronic versions in Westlaw or
Lexis.

production of documents in February 2009[2] and that plaintiffs used these minutes during the depositions it took of some of the defendants' officers and employees. Id. at 5.

The minutes identified a man named Brad King as a participant and another document indicated that a Norfolk Southern officer returned a draft of the minutes of this meeting to King and a man named Woody Sutton. Id.  During his deposition, Don Seale, the Chief Marketing Officer of Norfolk Southern, was questioned about this transmittal and explained who King and Sutton were and their positions. Id. at 6.

Plaintiffs complain that defendants did not name King or Sutton initially as custodians whose files were to be searched. Plaintiffs' Reply in Support of Motion to Re-Open Fact Discovery for Limited Deposition Discovery Due to Defendant Union Pacific Railroad Company's Production of Critical "Alliance" Meeting Documents on the Last Day of Discovery [#518] at 4.  Plaintiffs also complain that there were given only what they call "sanitized meeting 'minutes'" of what are called "'Alliance' meetings" (an apparent reference to meetings among all the defendants) in the documents that were produced and that the defendants' officers and employees, when deposed, disclaimed any knowledge of any one being assigned to take notes during alliance meetings. Id. at 6, n.5.

In May 2010, plaintiffs added four custodians to the list of custodians whose files were to be produced by the defendants; two of them were King and Sutton. [#516] at 7.

By June, 2010 Union Pacific had identified the existence of Alliance meeting files "that contained contemporaneous records of the Alliance meetings." Id.

---

[2] The documents produced at this time were the documents given previously to the Attorney General of New Jersey. [#516] at 4.

That same month, plaintiffs demanded to know who was the author of certain handwritten notes concerning an Alliance meeting that had taken place on June 3, 2003.  In response, Union Pacific indicated that the notes were prepared by Sutton and that Alliance meeting files maintained by Sutton consisted of paper files and three ring binders. Id.

Once King and Sutton were named as custodians, Union Pacific collected and produced their files even though they contained information beyond the limitation of discovery I had imposed by my order of October 23, 2009 [#314].  Among those files were the paper files and three ring binders that Sutton prepared of minutes from the Alliance meetings.  Once Sutton was added to the custodian lists, plaintiffs received the Alliance meeting files that Sutton had maintained. [#516] at 7.

Union Pacific collected the pertinent files and intended to deliver them to plaintiffs in September of that year but a processing error delayed their production to November 18, 2010, the last day of factual discovery. [#511] at 2.  In those documents, there were handwritten notes, ostensibly taken by King, of the May 2003, UP/NS meeting that contained the following words: "Fuel charges –> Uniform application across the industry would be helpful." [#511] at 5.

Plaintiffs deposed Jack Koraleski, UP Executive Vice President of Marketing and Sales on June 16, 2011.  He testified that he spoke to King prior to Koraleski's deposition and that King reviewed his own notes of the May 3, 2003, meeting and that King told Koraleski that King did not recall the fuel surcharge discussion referenced in both the meeting minutes and the handwritten notes. [#518] at 10.

Plaintiffs wish to reopen discovery to conduct two additional depositions.  They wish to depose King.  They also wish to take a Rule 30(b)(6) deposition regarding the authorship,

creation and retention of "Alliance files" turned over by defendants on the last day of fact

discovery, and the employment history and responsibilities of King, specifically with respect to

his responsibilities concerning Alliance meetings. [#511] at 6.

Discovery will only be re-opened "for good cause." Fed. R. Civ. P. 16(b)(4).  In

determining whether there is "good cause" to reopen discovery, the Court may look at the

following factors:

> (1) whether trial is imminent; (2) whether the request is opposed;
> (3) whether the non-moving party would be prejudiced; (4)
> whether the moving party was diligent in obtaining discovery
> within the guidelines established by the court; (5) the foreseeability
> of the need for additional discovery in light of the time allotted by
> the district court; and (6) the likelihood that discovery will lead to
> relevant evidence.

Childers v. Slater, 197 F.R.D. 185, 187-88 (D.D.C. 2000).

The Court will focus on whether or not plaintiffs were diligent in obtaining discovery in

making its determination whether there is "good cause" to reopen discovery.  See United States

ex. rel. Pogue v. Diabetes Treatment Ctrs. of America, 576 F. Supp. 2d 128, 134 (D.D.C. 2008).

Plaintiffs received the "Alliance files" and the handwritten notes on November 19, 2010,

the last day of fact discovery. [#511] at 2.  Because plaintiffs did not have the documents prior to

the close of discovery, it cannot be said that plaintiffs were not diligent in deposing King about

the "Alliance files" during discovery.

While the parties cast aspersions on each other' motives, the significance of a single

handwritten note in a case involving thousands of documents did not and could not have been

discovered any sooner.  While plaintiffs had the typed minutes of the May 2003, meeting early on

there is nothing in them suggesting their derivation from handwritten notes and it did not emerge

until the notes were produced that King was their author.  That occurred on the last day of

discovery.  Thus, Union Pacific's argument that plaintiffs have had the meeting minutes since

discovery began and used them in deposing other witnesses misses the mark.  Having the printed

minutes does not in itself obviate the necessity of King explaining, if he can, what he wrote down

and what he remembers about the discussion at the May 3, 2003, meeting.

      Furthermore, none of the witnesses who were deposed spoke of handwritten notes and

plaintiffs make a compelling case from their deposition testimony that they did not recall or

know that any one was or had the responsibility to take notes, let alone that such notes existed.

[#518] at 6-8.  Indeed, one witness named Charles Eisele, who had managerial responsibilities

for Alliance meetings, disclaimed knowledge of any one being assigned to take notes. Id. at 7.

Thus, the Court finds that plaintiffs were diligent in obtaining discovery and should not be

penalized for not requesting to depose Mr. King until after the end of discovery.  Finally, the

Court notes that it will make the Court's video conferencing facilities available to counsel to take

King's deposition.  All King need do is to go to the District Court in Omaha, where he lives, and

counsel can take his deposition from this Courthouse.  Counsel will meet and confer with each

other and then with these chambers to make the necessary arrangements.

      Plaintiffs also demand that they be  permitted to take a Rule 30(b)(6) deposition about (1)

"the hard copy" Alliance file, its creation, maintenance and custody, (2) the author of the hand

written note and (3) Brad King's duties and responsibilities during the relevant period of time (as

well as equivalent information for anyone else who maintained this file). [#511] at 6.

      First, King has now been identified as the author of the note and can speak to his own

responsibilities, including taking minutes or notes at the Alliance meetings and maintaining files

of the minutes and notes.  Thus, two of the three potential topics should be covered.

Second, my order of February 10, 2011, permitted plaintiffs to explore at a Rule 30(b)(6) deposition the following topic:

> Your company's discussions pertaining to agreements reached or considered regarding fuel surcharges or fuel costs at meetings denominated by the participants as Alliance meetings in the period 2002-2004.

[#495] at 1.

While plaintiffs represent that UP refused to add the topics plaintiffs  have now proposed at the 30(b)(6) to the topic I permitted by my order,[3] plaintiffs surely had an adequate opportunity to explore in depth what happened at the Alliance meetings in the earlier 30(b)(6) depositions.

Additionally, plaintiffs have already deposed UP employees concerning the "Alliance files" and specifically the handwritten notes of the May 14, 2003, meeting. [#516] at 2.  They have received all the Alliance files.  They have a sworn answer to an interrogatory about how the notes were prepared and an explanation of how Sutton kept the Alliance files in paper files and three ring binders, both of which have now been produced.  Plaintiffs have not articulated what additional information they will obtain from inquiring about the hard copy "Alliance file, its creation and maintenance."  They surely have enough information that would serve to authenticate the documents they have received if they wish to place them in evidence under Rule 901 of the Federal Rules of Evidence.

Therefore, plaintiffs' motion to reopen discovery to depose a UP representative with

---

[3] [#511] at 6, n.10.

regards to the "Alliance files" will be denied but its motion to take Brad King's deposition will be granted.  It is therefore, hereby

      **ORDERED** that <u>Plaintiffs' Motion to Re-Open Fact Discovery for Limited Deposition Discovery Due To Defendant Union Pacific Railroad Company's Production of Critical "Alliance" Meeting Documents on the Last Day of Fact Discovery and Supporting Memorandum</u> [#511] is **DENIED** in part and **GRANTED** in part.

      **SO ORDERED.**


                              _____

                              JOHN M. FACCIOLA
                              UNITED STATES MAGISTRATE JUDGE