**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL No. 1869 |
| | Misc. No. 07-489 (PLF/AK/JMF) |
| This Document Relates To: ALL DIRECT PURCHASER CASES | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO STAY PENDING APPEAL PURSUANT TO FED. R. CIV. P. 23(f)**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    I.    Defendants' Request for a "Partial Stay" Is Unprincipled ................................................ 2

    II.    Under the *Lorazepam* Standard, a Stay Is Unwarranted ................................................. 5

        A.    Defendants Have Not Demonstrated That They Are
             Likely to Succeed on Their Petition or Appeal ...................................................... 5

        B.    A Full or Partial Stay Will Cause Significant Delay and
             Harm to Plaintiffs, While Denying A Stay Will Not
             Cause Significant Harm to Defendants ................................................................. 10

        C.    The Public Interest Does Not Favor a Stay ........................................................... 12

        D.    The Cases on Which Defendants Rely Do Not Support a Stay Here ................... 13

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andrews v. Chevy Chase Bank,*
    474 F. Supp. 2d 1006 (E.D. Wis. 2007)...................................................................14

*Bacon v. Stiefel Laboratories, Inc.,*
    837 F.Supp.2d 1280 (S.D. Fla. 2011) ...................................................................12

*Beattie v. CenturyTel, Inc.,*
    No. 02-10277-BC, 2006 WL 1722207 (E.D. Mich. June 20, 2006).........................9

*Behrend v. Comcast Corp.,*
    655 F.3d 182 (3d Cir. 2011)..................................................................................7

*Blair v. Equifax Check Services, Inc.,*
    181 F.3d 832 (7th Cir. 1999) ................................................................................5

*Chamberlan v. Ford Motor Co.,*
    402 F.3d 952 (9th Cir. 2005) .............................................................................6, 7

*Chavez v. IBP, Inc.,*
    No. CT-01-5093-EFS, 2002 WL 32145647 (E.D. Wash. Dec. 23, 2002).............14

*Gray v. Golden Gate National Recreation Area,*
    No. C 08-00722 EDL, 2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) ...................14

*Griffiths v. Ohio Farmers Ins. Co.,*
    No. 1:09-CV-1011, 2010 WL 2774446 (N.D. Ohio July 12, 2010).......................10

*In re DC Water & Sewer Authority,*
    561 F.3d 494 (D.C. Cir. 2009)...........................................................................2, 6

*In re James,*
    444 F.3d 643 (D.C. Cir. 2006) ..............................................................................1

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    208 F.R.D. 1 (D.D.C. 2002)................................................................2, 5, 13, 14

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    289 F.3d 98 (D.C. Cir. 2002) .............................................................................1, 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
    MDL No. 1869, 2012 WL 2870207 (D.D.C. June 21, 2012) ...........................7, 8, 9

*In re Veneman*,
   309 F.3d 789 (D.C. Cir. 2002) ............................................................................2

*Mayo v. UBS Real Estate Securities, Inc.*,
   No. 08–00568–CV–W–DGK, 2011 WL 3109786 (W.D. Mo. July 26, 2011) .......................11

*Rosen v. J.M. Auto Inc.*,
   No. 07-61234-CIV, 2009 WL 7113827 (S.D. Fla. May 20, 2009)........................................12

*Stoffels v. SBC Commc'ns, Inc.*,
   254 F.R.D. 294 (W.D. Tex. 2008) .....................................................................12

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
   262 F.3d 134 (2d Cir. 2001)...............................................................................5

## STATUTES

49 U.S.C. §10706 ............................................................................1, 2, 3, 7

## RULES

Fed. R. Civ. P.  23(f) ........................................................................... passim

## OTHER AUTHORITIES

NEWBERG ON CLASS ACTIONS § 8:9 (4th Ed. 2002) ..................................................13

## PRELIMINARY STATEMENT

As previewed at the recent status conference, Defendants move for a stay of all proceedings *except* with respect to Defendants' motion to exclude evidence under 49 U.S.C. §10706.  This approach is unprincipled on its face.  Given the direct overlap between Defendants' §10706 motion and the merits (*see, e.g.*, Def. Mem. at 2 (resolution of the §10706 motion "does not depend on class certification")), it confirms that nothing about Defendants' pending petition for leave to appeal would genuinely render further proceedings on the merits either inefficient or inappropriate.  On the other hand, a stay would merely add inefficient and prejudicial delay to this important litigation that commenced in the spring of 2007 and involves a class period beginning in 2003.

Moreover, Defendants' motion is predicated on the assumption that their Rule 23(f) petition will be resolved in the "near future" and therefore any stay would only be "brief."  *See* D. Mem. at 5 n.1.  But that assumption has now been proven incorrect, because the Court of Appeals on August 28, 2012, did not grant or deny the Rule 23(f) petition but instead referred the petition to a merits panel.[1]  The Court of Appeals followed this procedure before in *Lorazepam* and *In re James*.  *See Lorazepam* Order, Case No. 01-8003 (D.C. Cir. Sept. 28, 2001) (attached hereto as Ex. 2; *In re James* Order, Case No. 05-8002 (D.C. Cir. Apr. 19, 2005) (attached hereto as Ex. 3).  In those cases significant time passed before the merits panel ruled – in each instance, to deny the petition for leave to appeal, even after briefing (including on the merits) and oral argument.[2]

---

[1]  *See* Ex. 1, Order, Case No. 12-8008 (D.C. Cir. Aug. 28. 2012).

[2]  *See In re James*, 444 F.3d 643, 648 (D.C. Cir. 2006); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 109 (D.C. Cir. 2002).  In *In re James*, approximately 15 months passed from the initial petition (and 12 months from the entry of the order referring the petition to a merits panel) to the denial of the petition.  *See* Ex. 4, docket in Case No. 05-8002 (D.C. Cir.); Ex. 5, docket in Case No. 05-5132 (D.C. Cir.) to which Case No. 05-8002 was transferred.  In *Lorazepam*, approximately 10 months passed from the initial petition (and 8 months from the

1

Defendants have failed to satisfy the criteria for a stay. Defendants make no convincing argument that they will succeed on the merits of the appeal (if the merits are even addressed by the Court of Appeals). In addition, public policy favors a speedy resolution of the case, not indefinite and unnecessary delay. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 3 (D.D.C. 2002). In contrast, with discovery complete and little required to prepare for trial, Defendants face almost no harm from proceeding on the merits.

## ARGUMENT

## I.   DEFENDANTS' REQUEST FOR A "PARTIAL STAY" IS UNPRINCIPLED.

Defendants suggestion that the Court should rule on their motion to exclude evidence pursuant to 49 U.S.C. § 10706 now, while staying all other proceedings, is as untenable as it is unprincipled. If anything, Defendants' suggestion is an acknowledgment that there is no reason to delay addressing the merits of the case.

Defendants stake their entire proposed "partial stay" on the assertion that there is some crucial difference between the § 10706 determination and the rest of the case. Other than oblique references to it being a "discrete" issue (Def. Mem. at 2), precisely what that difference might be left unsaid. Instead, Defendants spend a significant portion of their opening brief repeating the history of certain § 10706 submissions, with a few references to Plaintiffs' alleged and anticipated reliance on the evidence Defendants seek to exclude. *See* Def. Mem. at 10-13.

---

entry of the order referring the petition to a merits panel) to the denial of the petition. *See* Ex. 6, docket in Case No. 01-8003 (D.C. Cir.); Ex. 7, docket in Case No. 01-7163 (D.C. Cir.) to which Case No. 01-8003 was transferred. Plaintiffs are aware of only two other cases in which the petition was transferred to the merits panel, and in each the petition also was denied by the merits panel. *See In re Veneman*, 309 F.3d 789, 790-91 (D.C. Cir. 2002); *Veneman* Order, Case No. 01-8005 (D.C. Cir. Jan. 15, 2002) (attached hereto as Ex. 8); *In re DC Water & Sewer Authority*, 561 F.3d 494, 495 (D.C. Cir. 2009); *DC Water* Order, Case No. 08-8009 (D.C. Cir. Sept. 23, 2008) (attached hereto as Ex. 9).

Defendants then conclude that the "appropriate way to proceed," *see id.* at 13,  is to hear the §

10706 motion, with all other issues stayed.

Defendants' suggestion that the motion to exclude evidence under § 10706 is somehow

discrete also ignores the obvious overlap with summary judgment.  As the Court noted, it may be

that "I don't need to decide the interline communication question until I decide whether I need to

rely on any interline communications in deciding the summary judgment motion.".  *See* Hr'g Tr.

6, Aug. 9, 2012 .[3]  Defendants self-servingly assert, without any legitimate basis, that Plaintiffs'

case is purportedly contingent on a handful of pieces of evidence, disregarding (and not

disclosing) that Plaintiffs have provided Defendants with discovery responses that identify

volumes of merits evidence that Plaintiffs may rely upon in proving their case (and some of

which Defendants may eventually attempt to challenge under § 10706).  Even if Defendants

succeed on their § 10706 motion, Plaintiffs would still have the right and ability, with reference

to this other conduct and materials, to defeat any motion for summary judgment Defendants

bring.  At the same time, if Defendants do not prevail on their motion to exclude, summary

judgment for defendants would be foreclosed, because the evidence Defendants have sought to

exclude by itself is no doubt sufficient to create a triable issue of fact regarding the conspiracy.

Thus**,** to the extent Defendants advocate addressing their motion to exclude under § 10706 now,

it follows that the Court should also proceed with the inextricably related summary judgment

motions and related expert reports.

---

[3]  Defendants make much of the fact that Plaintiffs will likely rely on certain pieces of evidence
at summary judgment that Defendants contend, incorrectly, is excluded by § 10706.  *See* Def.
Mem. at 10.  That argument, however, has no bearing on *when* Defendants' arguments about the
federal statute can be evaluated.  The language of § 10706 makes clear that admissibility should
be reviewed in relation to a trial before a jury.  *See* 49 U.S.C. § 10706(a)(3)(B)(ii) ("In any
proceeding before a jury, the court shall determine" admissibility).

Defendants then argue that since the D.C. Circuit might reverse class certification, any expert, summary judgment, and trial preparation work while the Rule 23(f) petition remains pending might be wasted.  But such an argument does not withstand scrutiny.  For example, with respect to expert discovery, experts from both sides have already considered and analyzed almost the entire discovery record.  While Defendants have informed the Court that they intend to use a new expert for the next phase of the case, they have not provided any indication beyond simply articulating their desire to "tell their merit[s] story" as to what new testimony the expert will offer.[4]  Of course, with discovery closed, there are no new documents or testimony for that expert to analyze.  Whatever new "story" their expert conveys to the Court and jury will presumably be based on the same evidence already in the record.

Plaintiffs, of course, welcome giving Defendants the opportunity to set forth their "merit[s] story" at summary judgment, so that Plaintiffs have the opportunity to present the Court with all of the evidence of Defendants' unlawful conspiracy.  But instead of addressing any challenges to evidence in the context of summary judgment briefing, Defendants propose addressing the § 10706 issue completely in the abstract – unconnected to a particular motion or attempt by a party to use the evidence at trial, and while the rest of the case remains stayed.  The only, and obvious, ground for such an approach would be Defendants' hope that some evidence might be excluded in isolation, while Plaintiffs' are precluded from getting the case ready for trial or introducing other corroborating evidence in the context of a summary judgment motion.

---

[4]   *See* Hr'g Tr. at 56.  Defendants bemoan that they have not been able to "show this Court that these defendants did not do what the plaintiffs have alleged in the complaint that they did," *see id.* at 57:5-7, but nevertheless suggest a drawn-out expert discovery schedule in which Plaintiffs submit their expert report first, with Defendants then responding.  Dkt. No. 551-2 at 7.

II.    **UNDER THE *LORAZEPAM* STANDARD, A STAY IS UNWARRANTED.**

A Rule 23(f) petition does not automatically stay proceeding in the district court, *see* Fed.

R. Civ. P. 23(f), and proceedings are typically stayed only in exceptional circumstances.  *See*

*Lorazepam*, 208 F.R.D. at 3; *see also Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,

262 F.3d 134, 140 (2d Cir. 2001) ("Finally, we note that parties should not view Rule 23(f) as a

vehicle to delay proceedings in the district court."); *Blair v. Equifax Check Services, Inc.*, 181

F.3d 832, 835 (7th Cir. 1999) ("Rule 23(f) is drafted to avoid delay . . . .  Because stays will be

infrequent, interlocutory appeals under Rule 23(f) should not unduly retard the pace of

litigation.").

The court in *Lorazepam*, "informed by a flexible application of the well-established, four-

factor balancing test employed to consider preliminary injunctive relief and other stays,"

identified the following factors that should be considered in deciding whether to stay

proceedings on a Rule 23(f) petition:

> (1) whether there is a substantial likelihood that the movant will
> succeed on the merits of the claims/appeal; (2) whether the movant
> will suffer irreparable injury if an injunction/stay does not issue;
> (3) whether others will suffer harm if an injunction/stay is granted;
> and (4) whether the public interest will be furthered by an
> injunction/stay.

*Lorazepam*, 208 F.R.D. at 3.  Defendants fail to demonstrate that they are entitled to a stay under

these criteria.

A.    **Defendants Have Not Demonstrated That They Are Likely to Succeed on
       Their Petition or Appeal**

While predicting the actions of an appellate court is difficult, as *Lorazepam* notes,

Defendants certainly have not shown that they are substantially likely to succeed on their petition

or appeal.

The Court of Appeals reviewed and chose not to grant Defendants' petition at this time, deciding instead to refer the petition to a merits Panel.  *See supra* at 1.  As discussed above, Plaintiffs are aware of four instances where the Court of Appeals has previously employed a similar procedure, and in each instance the petition for leave to appeal ultimately was denied by the merits panel.[5]

As the D.C. Circuit has observed, "Courts generally disfavor interlocutory appeals because they disrupt ongoing trial court proceedings and squander resources."  *In re DC Water & Sewer Authority*, 561 F.3d at 497 (denying Rule 23(f) petition); *accord Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005) ("petitions for Rule 23(f) review should be granted sparingly," in "rare cases").

Plaintiffs also respectfully submit that this Court's meticulous analysis of the facts and application of the most rigorous class-certification standard are factors substantially mitigating against any probability of Defendants' success with the petition or the merits of their appeal. Based on detailed documentary evidence, fact witness testimony, and comprehensive expert analysis, this Court carefully considered and rejected all of the grounds on which Defendants now assert that the class includes so many "uninjured class members" that it may "preclude[] certification of any class at all," *see* D. Mem. at 5.  As this Court found, among other things:

> [T]he fuel surcharge programs applied by defendants before the class period were nothing like the widespread application of defendants' more aggressive, standardized fuel surcharge programs during the class period; that these standardized fuel surcharges were applied uniformly, to all or virtually all class members; and that there is no evidence of widespread discounting of base rates in exchange for application of fuel surcharges, and that any such discounting in the record is an anomaly that does not

---

[5]   That the district court in *Lorazepam* considered the referral in deciding to issue a stay is therefore irrelevant given the Court of Appeal's subsequent practice.  As discussed *infra* at pp.13-14, *Lorazepam* is wholly distinguishable from the issues raised by Defendants' motion.

> preclude a finding of predominance.  Furthermore, the Court credits Dr.
> Rausser's conclusion that impact and damages are capable of proof at trial
> with common evidence.  The Court finds that Dr. Rausser's economic
> regression analysis is workable, and that he presents a theory of proof that
> is plausible and susceptible to proof at trial through available evidence
> common to the class.

*See In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 2012 WL 2870207, at

*21 (D.D.C. June 21, 2012).  Factual disputes that this Court conclusively resolved are clearly

not an appropriate basis for interlocutory review.  *See Lorazepam*, 289 F.3d at 105; *Chamberlan*,

402 F.3d at 959.[6]  In the face of the Court's opinion, Defendants not only improperly

"characterize legal issues as novel," *see Lorazepam*, 289 F.3d at 105-06, but also purport to

characterize *fact* disputes as *legal* issues.

Defendants also attempt to fabricate a "novel" legal issue by arguing that the Court

applied the wrong standard for evaluating expert evidence for class certification.  *See* Def. Mem.

at 4.  Defendants even claimed to the Court of Appeals that this Court applied something "akin to

a pleading standard" instead of a "rigorous analysis" in assessing expert evidence.  *See* Petition

at 11.  Once again, Defendants are mistaken, and their invocation of the pending Supreme Court

review of *Behrend v. Comcast Corp.*, 655 F.3d 182 (3d Cir. 2011), *cert. granted*, 2012 WL

113090 (June 25, 2012), does not alter the fundamentally *factual* nature of the review Defendants

seek in their petition.

---

[6]   Defendants likewise made no showing that the grant of class certification is the "death knell"
of this litigation.  Defendants' contention that they have case-dispositive defenses – including
their broad reading of 49 U.S.C. § 10706 as precluding evidence of the conspiracy – belies their
contention that class certification will end the case.  *See Defendants' Memorandum in Support of
Motion to Exclude Interline-Related Communications from Consideration for Class Certification
or Any Other Purpose Prohibited by 49 U.S.C. Section 10706*, at 27-28 (Sept. 8, 2010) (filed
under seal) ("Def. § 10706 Mem.") (arguing that Plaintiffs' antitrust claim "rests almost
exclusively" on collusive evidence precluded under 49 U.S.C. § 10706(a)(3)(B)(ii), and that they
"undoubtedly will move for summary judgment" based thereon).

Indeed, Petitioner Comcast's submission to the Supreme Court argues in favor of a standard that this Court has already satisfied.  Specifically, Comcast argues that a class certification decision must "resolve factual disputes relevant to each Rule 23 requirement", which means that the court must receive enough reliable evidence to ensure that the requirements can be satisfied.  *See* Brief for Petitioners, *Behrend v. Comcast Corp.*, No. 11-864 (Aug. 17, 2012) (attached hereto as Ex. 10), at 36 (citations and internal quotations omitted).  That is precisely what the Court did here in its class certification opinion.  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 2012 WL 2870207, at *14  ("[T]he Court concludes . . . that it can and must resolve any factual disputes relevant to the requirements for class certification – even if that requires considerations enmeshed in the factual and legal issues comprising plaintiffs' claim on the merits") (citing *Wal–Mart Stores, Inc. v. Dukes,* ⸻ U.S. ⸻ , 131 S. Ct. 2541, 2551-52 (2011); *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 320 (3d Cir. 2008)).

In assessing Plaintiffs' class certification motion and challenges to it, the Court weighed the arguments raised in nearly a dozen briefs; assessed depositions of 21 railroad executives, hundreds of exhibits, expert reports; and then heard two full days of oral argument.  *Id.* at *1 n.1. On each of the factual disputes, the Court found Plaintiffs' proffer of evidence persuasive and credible.  *See, e.g., id.* at * 21 ("Although the Court agrees with defendants that it must resolve this (and other) factual disputes, the Court disagrees with defendants that the facts fall in their favor at this stage").[7]

---

[7]   In contrast, the Court found the declarations on which Defendants and their expert "heavily" relied were "unpersuasive. Indeed, the most damning portions of almost every single declaration on which defendants rely are contradicted by the declarant's subsequent deposition testimony." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2012 WL 2870207, at *48-9.

8

With respect to the expert evidence, the Court rigorously examined the economic principles underlying Dr. Rausser's theory of common impact, considered its reliability, and evaluated Defendants' criticisms at length before concluding that Dr. Rausser's theory was "plausible" and "persuasive" and that he had established "the key logical steps behind [his] theory." *Id.* at *19, 20.  The Court then addressed Dr. Rausser's regression models, which, it found, were not merely promises of what might be done in a future phase of this case but were rather "workable" analyses that Dr. Rausser had actually applied to the "complete set of defendants' transaction data." *Id.* at *68, 76.  In conducting these assessments, the Court thoroughly evaluated – and rejected – the criticisms raised by Defendants and Dr. Willig. *Id.* at *69-70.

Defendants thus have not demonstrated that their appeal is substantially likely to succeed. Moreover, even if one assumed that Defendants' petition were to be granted, and further assume that Defendants might succeed on some aspects on the merits, such a decision would likely only narrow the scope of the class, rather than terminate the class, as Defendants themselves previously acknowledged. *See* Dkt. No. 551-2, at 1 ("If the Court of Appeals were to find that class certification was inappropriate or overbroad in this case, *the number of shippers and damages at issue would diminish dramatically*.") (emphasis added).  A stay in such circumstances is simply not warranted. *Beattie v. CenturyTel, Inc.*, No. 02-10277-BC, 2006 WL 1722207, at *5 (E.D. Mich. June 20, 2006) ("Ultimately, it does not appear that the same type of potentially case-terminating issues are present in this case as they were in *Lorazepam,* and this case would continue in this Court in some form regardless of whether the court of appeals overturns the grant of class certification, which itself is far from clear under the circumstances.").

9

**B.     A Full or Partial Stay Will Cause Significant Delay and Harm to Plaintiffs, While Denying A Stay Will Not Cause Significant Harm to Defendants.**

Seeking to downplay their request for a stay, Defendants assert that they are only requesting a "brief stay" as their Rule 23(f) will be resolved in the "near future." *See* Def. Mem. at 5 n.1.  This statement was wholly speculative when made and has now been shown to be untrue given the D.C. Circuit's decision to refer the Rule 23(f) petition to a merits panel *without* granting or denying the petition.  *See supra* at p.1.

Plaintiffs and class members face significant harm from the delay a stay would entail. This litigation has already been pending for over five years, and an unnecessary stay now would delay any compensation that class members may receive.  *Griffiths v. Ohio Farmers Ins. Co*., No. 1:09-CV-1011, 2010 WL 2774446, at *3 (N.D. Ohio July 12, 2010) ("Delaying discovery or the start of a trial can harm the non-moving party, especially when it is unclear if and when appellate review will be granted.").

Furthermore, as this case involves conduct already dating back a decade, significant evidentiary concerns will arise from additional delay.  At least one key witness has recently taken a medical leave of absence from his job as Chief Operating Officer for one of the Defendants.[8]  At least one other key witness has retired since his deposition.[9]  Defendants' assertion that Plaintiffs' prior depositions of such witnesses render these evidentiary concerns moot is a red herring.  Plaintiffs have the right to call live witnesses to trial, not simply prosecute

---

[8]   *See* Union Pacific CEO James Young To Take Medical Leave Of Absence – Update, *available at* http://www.rttnews.com/1832912/union-pacific-ceo-james-young-to-take-medical-leave-of-absence-update.aspx (attached hereto as Ex. 11).

[9]   *See* www.linkedin.com/pub/chuck-adams/8/796/555 (noting the retirement of Union Pacific executive Chuck Adams (attached hereto as Ex. 12)).

their case by deposition transcript.  With so much already complete, and the case so close to trial, there is simply no doubt that a stay could jeopardize Plaintiffs' ability to prosecute the litigation.

In contrast, Defendants' contention that they face "prejudice" preparing for trial because such preparation would be "all wasted effort," *see* Def. Mem. at 6, is unavailing.  "[I]f the specter of having to try a case twice was an irreparable injury, then there would be an irreparable injury anytime a party wanted to pursue a discretionary appeal of an adverse pre-trial order, which would vitiate this prong of the analysis."  *Mayo v. UBS Real Estate Securities, Inc.*, No. 08–00568–CV–W–DGK, 2011 WL 3109786, at *2 (W.D. Mo. July 26, 2011).  Document production has long been completed, the last deposition occurred in January 2012, and what expert work remains will be derivative of, and at most supplemental to, the facts already uncovered and the expert analysis already performed.  As a result, the case can be ready for summary judgment and trial in short order.

A stay here could also encourage individual plaintiffs to pursue separate litigation against the Defendants arising from the same conspiratorial conduct at issue in the class litigation.  As this Court is aware, one large company already has filed separate litigation against the Defendants, and certain lawyers and parties have told the Court that other separate suits are under consideration.  *See* Dkt. Nos. 553, 554, 557.  While Plaintiffs believe there are compelling reasons why large claimants would benefit from remaining in the class – including, among many others, that one very large shipper (Olin Corporation) is a named Plaintiff – the delays associated with staying the class action could well encourage class members to file their own suits.  This could lead to the perverse result of such individual actions potentially moving ahead of the class action, particularly if the counsel and parties in those actions are able to take advantage of the extraordinary record developed over the last five years *for the Class* through the huge investment

of time, resources, and cash outlays by class counsel, as well as the substantial investment of time and resources of this Court.  The Class would also face a risk that action taken in separate actions might compromise the litigation strategy developed by Class Counsel over time.[10]

Finally, an adverse appellate ruling on class certification will not "transform[]" the litigation as Defendants suggest.  *See* Def. Mem. at 6.  Even if class certification is denied, the case will continue against Defendants on behalf of some or all named Plaintiffs, premised on the same evidence of conspiracy, and using the same expert methodology to calculate damages.  The balance of harms, therefore, supports denying Defendants' motion for a stay.  *See, e.g.*, *Bacon v. Stiefel Laboratories, Inc.*, 837 F.Supp.2d 1280, 1282 (S.D. Fla. 2011) ("Given the late stage of this lengthy litigation and the absence of any certainty as to whether an appeal will be permitted by the Eleventh Circuit, this Court declines to exercise its discretion to stay the proceedings.").

**C.     The Public Interest Does Not Favor a Stay.**

Despite conceding that the public interest lies "in the speedy resolution" of the case, *see* Def. Mem. at 9, Defendants nevertheless contend that a stay is in the public interest because some nebulous confusion will result if the class is issued notice before Defendants have exhausted all their avenues of appeal.  *Id.* at 8-9.  Courts regularly reject this argument, and find that notice should be issued even if a Rule 23(f) petition is pending.  *See, e.g., Rosen v. J.M. Auto Inc.*, No. 07-61234-CIV, 2009 WL 7113827, at *2 (S.D. Fla. May 20, 2009) (rejecting delay in issuing notice where public interest grounds weigh against granting a stay); *accord Stoffels v.*

---

[10]   Defendants make an unconvincing attempt to discount concerns regarding the potential for separate claims to benefit from the requested delay in the class action.  *See* Def. Mem. at 8.  That any individually filed cases would likely be heard in the same multidistrict proceeding – Defendants' argument for why cases individual plaintiffs bring do not affect the stay – is only relevant if the Court were to automatically stay any such cases, an option consistent with Defendants' apparent goal of delaying proceedings to the extent possible.

12

*SBC Commc'ns, Inc.*, 254 F.R.D. 294, 297 (W.D. Tex. 2008) (rejecting a delay to class notice)

(citing MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed. 2004); internal citations omitted);

*see also* NEWBERG ON CLASS ACTIONS § 8:9 (4th Ed. 2002).  As a threshold matter, the question

of whether and when to issue notice is separate from the question of whether this litigation can

be made trial ready on the merits.

 And Defendants simply ignore the more obvious public interests that would be

undermined by the stay – for example, the private prosecution of antitrust conspiracies in a

timely manner and the expedient restoration of market integrity, with restitution to victims of the

unlawful behavior.

  **D.**  **The Cases on Which Defendants Rely Do Not Support a Stay Here**

 Defendants mistakenly contend that *Lorazepam* supports their position that a stay is

warranted here.  While it is true that the *Lorazepam* court granted a stay pending the outcome of

the defendants' Rule 23(f) appeal, the decision actually demonstrates just how exceptional the

circumstances must be in order to justify a stay.  *Lorazepam* found that a stay was warranted

under a balancing of the four factors only because the appeal addressed the "dispositive" issue of

whether plaintiffs had standing to sue in the first instance – "an important legal issue . . . that

need[ed] immediate resolution" before the case could proceed.  *Lorazepam*, 208 F.R.D. at 5.  No

such "dispositive" question is at issue here.  Although Defendants now claim that "there will be

no class at all" if they succeed on their petition and subsequent appeal, they do not claim the

appeal could terminate the litigation – nor could they.  *See* Def. Mem. at 1.  In addition, unlike

this litigation, fact discovery was only in its early stages in *Lorazepam*, and a successful appeal

presented the very real possibility that defendants would incur "expensive, burdensome

13

discovery" that would prove to be unnecessary if plaintiffs were found to have no standing. *Id.* at 4.

Other cases Defendants cite are inapposite. In *Gray v. Golden Gate National Recreation Area*, No. C 08-00722 EDL, 2011 WL 6934433 (N.D. Cal. Dec. 29, 2011), cited heavily to support Defendants' argument that they face "prejudice" if the case is not stayed, the plaintiffs conceded both that the appeal presented novel legal issues and that a decertification order would result in the plaintiffs repleading the complaint. Here, by contrast, the unlikely event of decertification or modification of the class would change almost nothing. Plaintiffs' claims would stay the same, and Plaintiffs' methodology for calculating damages for the individual Plaintiffs would remain.

Defendants' citation to *Andrews v. Chevy Chase Bank*, 474 F. Supp. 2d 1006 (E.D. Wis. 2007), is equally misplaced. While Defendants cite the case for the proposition that a stay is appropriate even if the class is merely reduced in size on appeal, the *Andrews* court itself agreed that its class definition was overly broad, as Defendants themselves concede. *Id.* at 1010 ("I agreed with defendant that I likely defined the class too broadly, and that if the class action survives, the class definition will have to be narrowed."); *see also Chavez v. IBP, Inc.*, No. CT-01-5093-EFS, 2002 WL 32145647, at *2 (E.D. Wash. Dec. 23, 2002) (finding that potential reduction in class was significant because it was "significant for the purposes of discovery," a non-factor in the present litigation). There is no reason to reach a similar conclusion here.

14

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Stay Pending Appeal Pursuant to Fed.

R. Civ. P. 23(f) should be denied.

Dated: August 31, 2012

Respectfully submitted:


_/s/ Michael D. Hausfeld_____
Michael D. Hausfeld, D.C. Bar #153742
Michael P. Lehmann
William P. Butterfield, D.C. Bar #420354
Sathya S. Gosselin
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201
Email:  mhausfeld@hausfeldllp.com

_/s/ Stephen R. Neuwirth_____
Stephen R. Neuwirth
Richard I. Werder, Jr.
Daniel L. Brockett
Marc L. Greenwald
Sami H. Rashid
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100
Email:  stephenneuwirth@quinnemanuel.com


*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

15

**<u>CERTIFICATE OF SERVICE</u>**

I, Sathya S. Gosselin, certify that on August 31, 2012, I caused a true and correct copy of the foregoing memorandum to be served on counsel for Defendants.

*/s/ Sathya S. Gosselin*
Sathya S. Gosselin