# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL No. 1869 |
| | Misc. No. 07-489 (PLF/AK/JMF) |
| This Document Relates To: | **PUBLICLY FILED VERSION** |
| ALL DIRECT PURCHASER CASES | |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND REQUESTS FOR ADMISSION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................3

I.     The Use of a Consolidated Narrative Statement Is Entirely Proper ....................................3

II.    Plaintiffs' Specific Interrogatory Responses Are Full and Complete................................4

      A.    Plaintiffs Have Delineated the Nature and Purpose of Defendants' Conspiracy in Sufficient Detail (NS Interrogatories 1, 2(e) & 2(f)).......................4

      B.    Plaintiffs Need Not Parse Their Evidence Into "Direct" and "Circumstantial" Categories (CSX Interrogatory 5)................................10

      C.    There Is No Requirement that Plaintiffs Identify Every "Knowing" Participant in Defendants' Conspiracy (NS Interrogatory 2(a))...........................12

      D.    Plaintiffs Lack Sufficient Knowledge to Provide Contentions Regarding the Termination of the Conspiracy (CSX Interrogatory 6, NS Interrogatory 2(h) & BNSF Interrogatory 5) ................................14

      E.    Defendants May Not Pose Hypothetical Interrogatories (CSX Interrogatory 7)................................15

      F.    Plaintiffs Contend that Defendants Agreed to Implement Policies against Discounting their Conspiratorial Fuel Surcharges (CSX Interrogatory 4) ...........17

III.    Plaintiffs Are Unable to Admit or Deny Requests for Admission That Improperly Call for Pure Legal Conclusions and Present Incomplete, Counterfactual Hypotheticals ................................18

      A.    RFAs 153-155 Call For Purely Legal Conclusions ................................18

      B.    RFAs 82 and 98-102 Pose Incomplete, Counterfactual Hypotheticals.................20

CONCLUSION ......................................................................................................21

## TABLE OF AUTHORITIES

Page

### Cases

*Am. Tobacco Co. v. United States,
328 U.S. 781 (1946)................................................................2, 7

In re Auto. Refinishing Paint Antitrust Litig.,
2006 WL 1479819 (E.D. Pa. May 26, 2006) ..........................................3

Bovarie v. Schwarzenegger,
2011 WL 719206 (S.D. Cal. Feb. 22, 2011) ...........................................20

Bregman v. District of Columbia,
182 F.R.D. 352 (D.D.C. 1998)...........................................................3

Continental Ore Co. v. Union Carbide & Carbon Corp.,
370 U.S. 690 (1962)......................................................................4

*Disability Rights Council v. Wa. Metro. Area Transit Auth.,
234 F.R.D. 1 (D.D.C. 2006)........................................................18, 19

Disability Rights Council v. Wa. Metro. Area Transit Auth.,
2005 WL 2453214 (D.D.C. Aug. 4, 2005) ............................................19

Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.,
288 F. Supp. 2d 325 (E.D.N.Y. 2003) ................................................15

Equal Rights Center v. Post Prop., Inc.,
246 F.R.D. 29 (D.D.C. 2007)............................................................7

Everett v. USAir Group, Inc.,
165 F.R.D. 1 (D.D.C. 1995)............................................................11

Gen. Cigar Co. v. Cohiba Caribbean's Finest, Inc.,
2007 WL 983855 (D. Nev. Mar. 30, 2007) ......................................14, 15

*Kendrick v. Sullivan,
125 F.R.D. 1 (D.D.C. 1989)...........................................11, 12, 16, 17

Lakehead Pipe Line Co. v. Am. Home Assur. Co.,
177 F.R.D. 454 (D. Minn. 1997)..................................................18, 19

Men of Destiny Ministries, Inc. v. Osceola County, Florida,
2006 WL 2048288 (M.D. Fla. July 20, 2006) .........................................20

Mento v. Potter,
2010 WL 1323567 (W.D.N.Y. Mar. 29, 2010).....................................3, 4

Riss & Co. v. Assoc. of Am. Railroads,
23 F.R.D. 211 (D.D.C. 1959)............................................................8

*Storck USA, L.P. v. Farley Candy Co., Inc.*,
  1995 WL 153260 (N.D. Ill. 1995) ...................................................................................20

*Story v. M/T Allegiance*,
  2007 WL 2790760 (W.D. Wash. Sept. 24, 2007) ...........................................................20

*Sylvester v. SOS Children's Villages Ill., Inc.*,
  453 F.3d 900 (7th Cir. 2006) ...........................................................................................10

*United States v. General Motors Corp.*,
  384 U.S. 127 (1966) ...........................................................................................................7

*\*United States v. Md. & Va. Milk Prod. Assoc.*,
  22 F.R.D. 300 (D.D.C. 1958) ...........................................................................................11

*United States v. Petroff-Kline*,
  557 F.3d 285 (6th Cir. 2009) ...........................................................................................18

*United States v. True*,
  250 F.3d 410 (6th Cir. 2001) ...........................................................................................15

*In re Vitamins Antitrust Litig.*,
  2001 WL 1049433 (D.D.C. June 20, 2001) .............................................................13, 15

*Williams v. Walker*,
  2009 WL 5199227 (E.D. Cal. Dec. 22, 2009) .........................................................14, 15

*Withers v. Wexford Health*,
  2010 WL 780321 (C.D. Ill. Mar. 3, 2010) .....................................................................16

## Other Authorities

Charles. A. Wright, et al.,
  Federal Practice & Procedure § 2174 (3d ed. 2010) ..........................................................9

## PRELIMINARY STATEMENT

Plaintiffs' discovery responses satisfy any conceivable requirement arising under the Federal Rules.  In addition to responding to well over one thousand requests for admission, Plaintiffs responded to Defendants' dozens of overlapping interrogatories by providing an overarching narrative factual statement that, at over 80 pages, identifies facts and cites reams of supporting evidence concerning the origins of Defendants' price-fixing conspiracy, the conspiracy's objective and elements (often by quoting directly from documents); the key meetings (typically by date), the principal actors (by name), specific steps taken in furtherance of the conspiracy, and the conspiracy's effects.  In addition to this narrative, Plaintiffs also provided supplemental information responsive to individual interrogatories as appropriate.

Defendants' feigned confusion about Plaintiffs' positions and supporting evidence regarding Plaintiffs' price-fixing claim simply cannot be reconciled with Plaintiffs' actual responses.  Even a cursory review of Plaintiffs' narrative statement belies the claim that Plaintiffs "refuse to identify their positions and supporting evidence."  Defendants' Motion to Compel Answers to Defendants' Interrogatories and Requests for Admissions (May 18, 2011) ("D. Br.") at 1.  Lacking a legitimate grievance, Defendants resort to quibbling with the narrative format of the responses and move to compel answers to discovery requests that are either manifestly improper or are already answered in full.  The motion is wholly without merit.

There is nothing improper about Plaintiffs' use of a consolidated narrative statement to answer multiple overlapping interrogatories.  By cross-referencing responsive paragraphs of the narrative statement, and adding specific responses where necessary, Plaintiffs provide separate and complete answers to each of Defendants' proper requests.  Courts have acknowledged the propriety of Plaintiffs' approach under Rule 33 and, despite much handwaving, Defendants cite no contrary authority.  *See* Section I *infra*.

Straining to cast aspersions on the merits of Plaintiffs' case, Defendants contend that Plaintiffs have not sufficiently identified the "terms" of the conspiracy.   But Plaintiffs unambiguously identify the facts and evidence supporting their contention that Defendants unlawfully conspired to raise prices by uniformly applying coordinated fuel surcharges across the industry.   Plaintiffs' marshalling of the overwhelming evidence of collusion in the narrative statement fully meets any discovery burden under the Federal Rules.   Indeed, the narrative's identification of the evidence of Defendants' collusion surpasses what is legally required to prove a price-fixing conspiracy, as under well-settled law such conspiracies need not be reduced to a formal agreement or have precise terms.   *See Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946).   The answers Defendants purport to seek are right before their eyes.   *See* Section II(A) *infra*.

Defendants have moved on other discovery requests that are patently defective (*see* Sections II(B), II(E) & III *infra*) or have been fully answered to the extent they can be answered (*see* Sections II(C), II(D) & II(F) *infra*).   At every step, Defendants adopt positions that cannot be reconciled with controlling case law or the actual substance of Plaintiffs' discovery responses. Indeed, Defendants' persistence in the face of contrary authority suggests that the discovery process is being used here not to obtain discoverable information, but rather to vex, harass, and otherwise divert Plaintiffs' (and the Court's) resources away from the real issues in this litigation.   Defendants' motion to compel should be denied in its entirety.

## ARGUMENT

**I.      The Use of a Consolidated Narrative Statement Is Entirely Proper**

Plaintiffs have answered each of Defendants' interrogatories with references to a narrative statement that sets out Plaintiffs' contentions and supporting evidence in great detail.[1] In addition, Plaintiffs have supplemented the narrative with separate responses where necessary to provide complete answers.  *See* Ex. A at 89-119.  Plaintiffs employed this approach because Defendants' interrogatories are extremely duplicative and seem to ask Plaintiffs to marshal all of the facts and evidence supporting Plaintiffs' allegations.  Plaintiffs' use of a narrative statement is appropriate under the circumstances and under the Federal Rules.  *See Bregman v. District of Columbia*, 182 F.R.D. 352, 363 (D.D.C. 1998) (Facciola, J.) (upholding use of narrative to answer separate interrogatories); *Mento v. Potter*, 2010 WL 1323567, at \*4 (W.D.N.Y. Mar. 29, 2010) (same); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at \*10 (E.D. Pa. May 26, 2006) (observing that Rule 33 permits use of a single narrative statement to respond to an entire set of interrogatories).  More than that, the narrative statement is highly effective in that it comprehensively describes Defendants' agreement to raise prices by uniformly applying coordinated fuel surcharges across the industry.  *See infra* Point II(A) (highlighting key points of narrative).

Defendants do not cite a single decision questioning the use of a narrative statement to answer multiple interrogatories.  Defendants simply note that Rule 33 requires that interrogatories be answered "separately and fully."  D. Br. at 4.  But that standard is met here. Plaintiffs have separately answered each interrogatory by referencing responsive paragraphs of

---

[1]   Plaintiffs' consolidated Interrogatory Responses are attached hereto as Exhibit A. Plaintiffs' consolidated responses to Defendants' requests for admissions are attached hereto as Exhibit B.

the narrative and, where needed, adding interrogatory-specific responses to those references.  It would be unwieldy, and for no substantive benefit, for Plaintiffs to cut and paste the cross-referenced paragraphs of the narrative into each interrogatory response.  Such a cosmetic modification is not required by Rule 33.

Nor is there anything to Defendants' contention that Plaintiffs have cross-referenced overly broad portions of their narrative statement.  As the Supreme Court has recognized, the "character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."  *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).  Against this backdrop, providing contextual material is essential to convey the scope and substance of the conspiracy.  *See id.* (an antitrust plaintiff "should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each").  Plaintiffs should not bear the risk that Defendants will later try to use responses divorced of context to subvert this principle.  Nor can Defendants demonstrate any prejudice.  *See Mento*, 2010 WL 1323567, at *4 (upholding use of a narrative to answer multiple interrogatories; the detail did not prejudice the defendant or constitute "surplusage that should be stricken").

## II.     Plaintiffs' Specific Interrogatory Responses Are Full and Complete

### A.     Plaintiffs Have Delineated the Nature, Purpose, and Implementation of Defendants' Conspiracy in Sufficient Detail (NS Interrogatories 1, 2(e) & 2(f))

Defendants assert that Plaintiffs' responses do not adequately address NS Interrogatories 1, 2(e), and 2(f), because they purportedly do not identify the "precise terms" of the conspiracy.  *See* D. Br. at 9.  Defendants' claimed ignorance of Plaintiffs' conspiracy allegations cannot be reconciled with Plaintiffs' narrative statement, which sets forth with great breadth and depth

Defendants' unlawful agreement to apply coordinated fuel surcharges uniformly across the industry.  *See, e.g.,* Ex. A at ¶¶ 1-127.[2]

 While no summary here can replace a review of Plaintiffs' narrative, Plaintiffs note that the narrative first explains the origins and context of Defendants' conspiracy.  For example, the narrative explains that ███████████████████████████████████████████████ ███████████████████████████████████ *id.* at ¶ 1, ████████████████████ ████████████████████████████ *id.* at ¶¶ 2-13. ████████████████████████ ██████████████████████████████████████████████████████████████████

*Id.* at ¶ 1.

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████ *Id.* at ¶ 14. █████████████████████████████

██████████

█████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████

_____

 [2]  Defendants' suggestion that there are "serious concerns about the good faith basis for" Plaintiffs' conspiracy claim (D. Br. at 9) extends beyond the realm of advocacy into sheer ridiculousness.  As Plaintiffs' narrative statement shows, the evidence supporting Plaintiffs' claim is overwhelming.  And this statement does not yet reflect, for example ███████████ ██████████████████████████████████████████████████████████████ ████████████  The belated production of these notes is the subject of a motion to reopen discovery that Plaintiffs are filing on the same day as the instant opposition brief.

*Id.* at ¶ 16 (emphasis added); *see also id.* at ¶¶ 80, 102.

The narrative identifies by name the key actors in this conspiracy. *See, e.g., id.* at ¶ 16
ns. 35-36.  And it ███████████████████████████████████████████████████████

███████████████████████████████████████████████ *See id.* at ¶¶ 23-53. ████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████ *Id.* at ¶ 17.  Plaintiffs also explain ████████████████

█████████████████████████████████████████████████ *See id.* at ¶¶ 18-21.

The narrative details ███████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████ *See, e.g., id.* at ¶¶ 29-33 ██████████████████████████████

██████████████████████████████████████ *id.* at ¶¶ 35-41 ████████████████

████████████████████████████████████████████████ ; *id.* at ¶ 42 ██████████

██████████████████████████ *id.* at ¶¶ 44, 57-60 ████████████████████

████████████████████ ; *id.* at ¶¶ 80-84 ████████████████████████████

█████████████████████████████████ The narrative also details ██████████████████

█████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

█████████████████ *See id.* at ¶¶ 63-78, 85-94 █████████ ¶¶ 100-02 ████████████████

███████████

Throughout the narrative, Plaintiffs marshal the voluminous evidence supporting these facts and provide extensive detail and explanation of the significance of that evidence. Plaintiffs' extraordinarily detailed responses setting forth the facts and evidence about Defendants' unlawful agreement satisfy any conceivable requirement of Rule 33.  *See Equal Rights Center v. Post Prop., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) ("The party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete.").

At the heart of Defendants' motion is a misguided effort to suggest that the only cognizable type of price-fixing conspiracy is one that is spelled out in precise detail all at once. This is simply false.  While Plaintiffs have identified facts and evidence showing that Defendants, over a series of meetings, agreed uniformly to apply coordinated fuel surcharges across the industry, it is long-settled that "[n]o formal agreement is necessary to constitute an unlawful conspiracy."  *Am. Tobacco Co.*, 328 U.S. at 809 ("The essential combination or conspiracy in violation of the Sherman Act may be found in a course of dealings or other circumstances as well as in any exchange of words."); *see also United States v. General Motors Corp.*, 384 U.S. 127, 142-43 (1966) ("[E]xplicit agreement is not a necessary part of a Sherman Act conspiracy. . . .").

Defendants next assert that, in response to NS Interrogatory 1, Plaintiffs do not identify the "precise Rail Fuel Surcharge mechanisms that are the object" of the conspiracy.  *See* D. Br. at 8.  This assertion is unfounded.  As noted above and throughout Plaintiffs' narrative statement,

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████  and Plaintiffs' narrative addresses this in detail.  *See, e.g.,*

Ex. A at 104-05 & ¶¶ 25, 30, 32, 41-43, 57-58, 95,101-05.[3]  Plaintiffs have thus fully identified the conspiracy's "object."

NS Interrogatory 1 also seeks identification of every fuel surcharge that was the "result" of the conspiracy, including the specific "surcharge percentage[s]" yielded throughout the Class Period.  *See* D. Br. at App. A.  As Plaintiffs' point out in their specific response to NS Interrogatory No. 1, this request is improper.  *See* Ex. A at 104.  ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████  *See* Ex. A at 104 & ¶ 84.

Accordingly, as Plaintiffs state in their responses, Plaintiffs' contention is ████████████

█████████████████████████████████████████████████  *See* *id*. at 104.

Requiring Plaintiffs to comb through Defendants' transaction data—which involves over 260 gigabytes of data and over 70 million qualifying shipments—to identify every fuel-surcharge variation, their terms, and the surcharge percentages they generated throughout the Class Period, would be overly burdensome.  *See* Declaration of Marc L. Greenwald, dated June 8, 2011 ("Greenwald Decl."), at ¶¶ 2-5; *see also Riss & Co. v. Assoc. of Am. Railroads*, 23 F.R.D. 211, 212 (D.D.C. 1959) ("[I]nterrogatories are not to be used in an oppressive manner.  An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks, in searching for facts and classifying and compiling data.  A litigant may not compel his

---

[3]  Defendants cannot reasonably argue that Plaintiffs' interrogatory responses should have said more about fuel surcharges on intermodal freight traffic given that intermodal fuel surcharges are the subject of ongoing Rule 30(b)(6) depositions.  Following those depositions, Plaintiffs will supplement their interrogatory responses as appropriate.

adversary to go to work for him." (internal quotation marks omitted)).   Such an effort would be particularly unjustified since Plaintiffs' expert at Class certification already analyzed Defendants' transaction data and the shipments in the Class to calculate overcharges suffered by Class members.  *See* Greenwald Decl. at ¶¶ 4; 8B Charles A. Wright et al., FEDERAL PRACTICE & PROCEDURE § 2174 (3d ed. 2010) ("Interrogatories that are unnecessary are objectionable."). That effort will be supplemented during expert discovery, which has not yet commenced.

Defendants disingenuously suggest that they cannot identify the relevant fuel surcharges in their transactional data themselves, because the Class definition is "vague (and ever-evolving)."  D. Br. at 13 n.9.  But Plaintiffs' Class definition has not changed since Class certification briefing.  At that time, Defendants claimed to be capable of identifying the fuel surcharge mechanisms imposed on Class members.  Indeed, Defendants' opposition to Class certification was premised on the assertion that the Class definition embraced a variety of fuel surcharge formulas.  *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 381) at 20-22, 45-47; *see also* Revised Expert Report of Robert D. Willig, dated August 1, 2010 (Dkt. No. 391) at 54-63 (purporting to identify variation in fuel surcharges paid by Class members).

Finally, Defendants claim that they are confused about whether mileage-based fuel surcharges are part of the Class.  *See* D. Br. at 10-11.  If this is truly the issue, it can be easily resolved—indeed, it could have been resolved during the meet-and-confer process since there has never been any change in Plaintiffs' position.  Mileage-based fuel surcharges unambiguously

are not, and have never been, included in the Class definition.  Plaintiffs' denial of RFAs 111 and

115 does not create any inconsistency in Plaintiffs' position.[4]

### B.       Plaintiffs Need Not Parse Their Evidence Into "Direct" and "Circumstantial" Categories (CSX Interrogatory 5)

While Plaintiffs have set forth the evidence of Defendants' conspiracy in extraordinary

detail, CSX Interrogatory 5 asks Plaintiffs to go further and to specify whether any of this

evidence "itself constitutes an unlawful agreement."  D. Br. at App. A.  This phraseology is

confusing and objectionable on its face.  In meet-and-confers, Defendants stated that what they

are really seeking through CSX Interrogatory 5 is for Plaintiffs to sort their conspiracy evidence

into two legal categories: "direct" versus "circumstantial" evidence.  *See* D. Br. at 6.  That

request is plainly improper under Rule 33.

As an initial matter, while some courts occasionally distinguish between "direct" and

"circumstantial" evidence, others have strenuously questioned the relevance and coherence of

any such distinction:

> The distinction between direct and circumstantial evidence is vague, but more
> important it is irrelevant to assessing the strength of a party's case.  From the
> relevant standpoint—that of probative value—'direct' and 'circumstantial'
> evidence are the same in principle.

*Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 903 (7th Cir. 2006) (Posner, J.)

(internal citations and quotation marks omitted)).  The very existence of this legal dispute about

whether there is any meaningful distinction between "direct" and "circumstantial" evidence

---

[4]   Those RFAs ask Plaintiffs to admit that mileage-based surcharges adopted by BNSF
and CSX during the Class Period were not a "product" of the conspiracy.  *See* D. Br. at 10.
Those surcharges could be considered the "product" of the conspiracy in a number of respects,
including because they were specifically designed to generate the same revenue as rate-based
fuel surcharges and they were applied more broadly given the widespread application of
Defendants' conspiratorial fuel surcharges.  *See* Ex. A at ¶ 99.  But Plaintiffs are not seeking
damages from imposition of these mileage-based fuel surcharges.

underscores why CSX Interrogatory 5 is improper.  Any debate over the existence and

significance of that distinction should be left to the parties' lawyers; it is not properly addressed

through written discovery.

Contention interrogatories cannot be used "to ascertain contentions of the opposing party

in respect to matters of law." *United States v. Md. & Va. Milk Prod. Assoc.*, 22 F.R.D. 300, 301

(D.D.C. 1958) (cited with approval in the advisory committee note to the 1970 amendment to

FED. R. CIV. P. 33).[5]  As this Court has observed, "Rule 33(b) clearly contemplates . . . a sharp

distinction between permissible interrogatories and inquiries into issues of pure law." *Kendrick*

*v. Sullivan*, 125 F.R.D. 1, 2 (D.D.C. 1989) (internal quotation marks omitted)).  A party may be

required to specify its contentions, but it need not reveal the "arguments [it] intends to use in

support of [its] contentions." *Md. & Va. Milk Prod. Assoc.*, 22 F.R.D. at 302.  Nor may a

contention interrogatory seek disclosure of the opposing parties' "legal theories." *Kendrick*, 125

F.R.D at 4.  That is just what Defendants are impermissibly seeking here.

*Kendrick* is illustrative.  The plaintiff there challenged the constitutionality of the

Adolescent Family Life Act ("AFLA"), and objected to a set of contention interrogatories served

by defendant Health and Human Services ("HHS") concerning the AFLA's legality.  This Court

concluded that the plaintiff was required to answer interrogatories seeking identification of

"those portions of HHS' guidelines for AFLA grantees which the plaintiffs regard as unlawful,

and to describe the nature of the purported illegality." 125 F.R.D., at *4.  The plaintiff was not,

---

[5]   The purpose of contention interrogatories is to narrow and sharpen issues in dispute by obliging the responding party "to state what it contends, . . . [or] to state all the facts upon which it bases a contention." *Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 3 (D.D.C. 1995) (internal quotation marks omitted).  To take the example highlighted in Defendants' brief, "'in an action for negligence it is proper by an interrogatory to require the plaintiff to specify of what he claims the alleged negligence consists.'"  D. Br. at 7 (quoting *Md. & Va. Milk Prod. Assoc.*, 22 F.R.D. at 301).

however, required to answer interrogatories that were designed to tease out the "plaintiffs'

argument as to severability, *i.e.*, whether, if any AFLA grants are found to be unlawful, the entire

statute must be stricken as unconstitutional." *Id*. While it is entirely proper to seek a party's

contentions and supporting evidence, "[d]iscovery as to legal arguments," the Court explained,

"is impermissible." *Id*.

Under this standard, which Defendants fail to acknowledge, CSX Interrogatory 5 is

indefensible. CSX Interrogatory 5 asks that Plaintiffs take the evidence that they have already

set out in support of their contentions and perform the secondary—and purely legal—task of

dividing it into the categories of "direct" and "circumstantial" evidence.[6] Rule 33 does not

authorize that request.

Defendants have not cited a single case obliging a party to specify in discovery its

"direct" evidence or otherwise sort its evidence into legal categories. Defendants' only argument

is that contention interrogatories can legitimately call for the application of law to fact. *See* D.

Br. at 6. But this undisputed proposition does not save CSX Interrogatory 5. Defendants are

entitled to seek Plaintiffs' contentions regarding the alleged conspiracy and the facts Plaintiffs

believe support those contentions. Defendants cannot, however, probe purely legal issues about

Plaintiffs' proof.

### C.   There Is No Requirement that Plaintiffs Identify Every "Knowing" Participant in Defendants' Conspiracy (NS Interrogatory 2(a))

NS Interrogatory 2(a) asks Plaintiffs to identify every person that "participated in the

alleged unlawful agreement." D. Br. at App. A. This request is objectionable on its face, as it

would potentially embrace every employee at each Defendant who had anything to do with

---

[6]   To the extent there is any coherent or significant distinction between "direct" and
"circumstantial" evidence, that distinction is undoubtedly legal in nature.

Defendants' fuel surcharge programs or meetings, extending to non-executive employees and administrative assistants.  In meet-and-confers, Defendants changed this request to introduce a *mens rea* element, and now seek the identity of every single employee who "knowingly participated" in the conspiracy, as distinguished from those who "unknowingly carried" it out. *See* D. Br. at 13-14.  This change, however, only exacerbates the interrogatory's defects.  Despite the long history of the Sherman Act, Defendants cannot cite a single case supporting a requirement that the plaintiff must identify the precise *mens rea* of every single one of the defendants' employees.

Once again, Plaintiffs have given Defendants everything to which they are entitled. Plaintiffs identify the key actors in the conspiracy and cite evidence from which it is clear which employees were most actively involved.  Plaintiffs explicitly state that ███████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. A at ¶ 16. █████████

████████████████████████████████████ *See id*. at ns. 35-36.  These contentions are certainly sufficient for liability purposes, which Defendants concede.  *See* D. Br. at 14 (asserting that Plaintiffs will have to establish that "at least one specific individual executive, with the requisite authority, for each defendant knowingly entered into an unlawful conspiracy"). Nothing would be gained by having Plaintiffs examine the list of every single employee underneath these senior executives and attempt to specify their subjective "knowledge" of the conspiracy.

Defendants' reliance on *In re Vitamins Antitrust Litig.*, 2001 WL 1049433 (D.D.C. June 20, 2001), is unavailing.  *Vitamins* merely held that an antitrust plaintiff may properly ask the defendants to identify employees with general knowledge of the alleged conspiracy.  In context,

this was merely a garden-variety request, meant to facilitate the discovery process, for the defendants to identify their employees who had general knowledge of the acts alleged in the complaint.  That is much different from a requirement that a plaintiff identify the *mens rea* of each one of a defendant's employees.  No authority supports such a requirement.

### D.     Plaintiffs Lack Sufficient Knowledge to Provide Contentions Regarding the Termination of the Conspiracy (CSX Interrogatory 6, NS Interrogatory 2(h) & BNSF Interrogatory 5)

CSX Interrogatory 6, NS Interrogatory 2(h), and BNSF Interrogatory 5 collectively ask Plaintiffs to identify the *specific date* on which the conspiracy ended and all evidence supporting that contention.  *See* D. Br. at App. A.  Now agreeing that Plaintiffs "need not identify a specific date if they do not contend the alleged agreement ended as of a specific date," Defendants submit that they are seeking only Plaintiffs' contention as to whether the conspiracy ended at all.  *See* D. Br. at 16-17.  Even in their modified form, these interrogatories warrant no further response.

A party may decline to answer a contention interrogatory if the party "lacks sufficient knowledge, information or belief to answer the question."  *Williams v. Walker*, 2009 WL 5199227, at *31 (E.D. Cal. Dec. 22, 2009); *see also Gen. Cigar Co. v. Cohiba Caribbean's Finest, Inc.*, 2007 WL 983855, at *3 (D. Nev. Mar. 30, 2007).  Plaintiffs have invoked this rule here, explaining in their responses that Plaintiffs ████████████████████████████ ████████████████████████████████████ Ex. A at 93, and further that ████████████ ████████████████████████████████████████████████████ ████████ *id.* at 100-01, 106; *see also id.* at 4 (objecting to all requests to the extent they seek information "that is not within Plaintiffs' possession").

Plaintiffs have no obligation to formulate a contention as to when the conspiracy ended.  The *defendant* in an antitrust case has the burden of proving when the conspiracy ended, a burden that can only be satisfied with proof of an affirmative announcement of withdrawal and

an affirmative step to manifest that announcement. *See United States v. True*, 250 F.3d 410, 424-25 (6th Cir. 2001) ("[O]nce established, a conspiracy is presumed to continue until there is an affirmative showing that it has been abandoned. . . . Withdrawal requires a showing that a defendant affirmatively acted to defeat or disavow the conspiracy's purpose." (internal quotation marks and citation omitted)); *Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 288 F. Supp. 2d 325, 330-31 (E.D.N.Y. 2003) (holding that the issue of withdrawal turns on whether "the defendants effectively announced to their alleged coconspirators that they are no longer parties to the alleged conspiratorial agreement and [took] some affirmative step to manifest that announcement").[7]

Plaintiffs are unaware of any such evidence of affirmative withdrawal here. Accordingly, Plaintiffs need not provide further answers to CSX Interrogatory 6, NS Interrogatory 2(h), and BNSF Interrogatory 5. *See Williams*, 2009 WL 5199227, at *31 (a party may decline to answer an interrogatory if the party "lacks sufficient knowledge, information or belief to answer the question"); *Gen. Cigar Co.*, 2007 WL 983855, at *3 (same).[8]

### E.   Defendants May Not Pose Hypothetical Interrogatories (CSX Interrogatory 7)

CSX Interrogatory 7 asks Plaintiffs to specify whether, in the absence of the unlawful agreement, Defendants' pre-conspiracy fuel-surcharge formulas would have "resulted in

---

[7]   Defendants rely on *In re Vitamins Antitrust Litig.*, 2001 WL 1049433, at *12 (D.D.C. June 20, 2001), but that case only required production of data relevant to the conspiracy period. That case says nothing about whether evidence in this case would permit Plaintiffs to assess the conspiracy's end date.

[8]   Plaintiffs note that Defendants successfully obtained a discovery cutoff of May 14, 2007, for documents other than transactional data. *See* Greenwald Decl. ¶ 6. Plaintiffs' expert at Class certification, Dr. Rausser, ████████████████████████████████████████████ *See* Corrected Expert Report of Gordon Rausser, Ph.D, dated May 27, 2010 (Dkt. No. 368) at 117-20; Corrected Expert Reply Report of Gordon Rausser, Ph.D, dated September 20, 2010 (Dkt. No. 431) at 93-99.

Defendants receiving more revenue than the incremental fuel costs Defendants incurred during the Proposed Class Period." D. Br. App. A. This interrogatory is improper. "Rule 33(b)'s language requires that the contentions or legal opinions of an interogatee must relate to, or be applied to, a *fact*." *Kendrick*, 125 F.R.D. at 3. Interrogatories seeking a party's position "on what are, in essence, hypotheticals" are not permitted by the Federal Rules. *See id*. (denying motion to compel answers to interrogatories seeking the opposing party's position on hypothetical scenarios); *see also Withers v. Wexford Health*, 2010 WL 780321, at *3 (C.D. Ill. Mar. 3, 2010) (no duty to answer interrogatories that are "speculative and hypothetical").

CSX Interrogatory 7 violates this prohibition because it seeks Plaintiffs' position, not on the facts of the case, but rather with respect to a counterfactual scenario—specifically, what would have happened with Defendants' various pre-conspiracy fuel surcharges absent the conspiracy. Rule 33 does not permit such interrogatories. *See Kendrick*, 125 F.R.D. at 3.

Defendants argue that because Plaintiffs contend that Defendants' conspiratorial fuel surcharge programs resulted in over-recovery of fuel costs, Plaintiffs must be compelled to answer whether Defendants' pre-conspiratorial fuel surcharges in the hypothetical non-conspiratorial world would have done the same. This argument is misplaced. Plaintiffs contend that ███████████████████████████████████████████████████████ ██████████████████████████ *See* Ex. A at ¶¶ 117-123. Plaintiffs' ability to use actual evidence to demonstrate over-recovery does not require Plaintiffs to answer a counterfactual hypothetical.

In antitrust cases like this one, modeling the so-called "but for" world—that is, the state of events absent the conspiracy—is the subject of complex economic analysis and is, accordingly, addressed through expert discovery. Plaintiffs' expert addressed the "but for" world

in the context of Class certification and will supplement his analyses as appropriate during the expert discovery period.  But Plaintiffs' expert's efforts to model the but-for world using economic tools do not mean Plaintiffs must model counterfactual events in written discovery responses.  *See Kendrick*, 125 F.R.D. at 3.

F.      **Plaintiffs Contend that Defendants Agreed to Implement Policies against Discounting their Conspiratorial Fuel Surcharges (CSX Interrogatory 4)**

CSX Interrogatory 4 asks whether Plaintiffs contend that Defendants entered into an agreement to "decline to negotiate discounts on Rail Fuel Surcharges."  D. Br. at App. A (bracket marks omitted).  Plaintiffs' response is unequivocal: ███████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████ Ex. A at 99.

Stretching to manufacture some dispute, Defendants complain that Plaintiffs have not specified whether Defendants' policies against discounting "were part of the alleged unlawful agreement" or were acts "in furtherance" of the agreement.  *See* D. Br. at 19.  Putting aside the meaninglessness of this distinction, Plaintiffs expressly assert that ██████████████

██████████████████████████████████████████ *See* Ex. A at ¶ 81 ███████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████ No further response to CSX Interrogatory 4 is required.

III.     **Plaintiffs Are Unable to Admit or Deny Requests for Admission That Improperly Call for Pure Legal Conclusions and Present Incomplete, Counterfactual Hypotheticals**

A.     **RFAs 153-155 Call For Purely Legal Conclusions**

RFAs 153-155 ask Plaintiffs to admit that certain alleged facts—among them Defendants' coordinated rail fuel surcharges and revenues in excess of fuel costs—"standing alone" do not *prove* a conspiracy under the Sherman Act.  *See* D. Br. at App. A.  Putting aside the facial ambiguity of what "standing alone" means in this context, these questions improperly seek admissions on questions of law.

Rule 36 permits RFAs that apply law to facts.  *See* Fed. R. Civ. P. 36(a)(1)(A). Nevertheless, a party cannot, by RFA, ask another party to admit the truth of a legal conclusion. *See, e.g., United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009); *Disability Rights Council v. Wa. Metro. Area Transit Auth.*, 234 F.R.D. 1, 3 (D.D.C. 2006).  As this Court has observed, "it would be inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party *has simply attached to operative facts*."  *See Disability Rights Council*, 234 F.R.D. at 3 (emphasis added); *see also Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454, 457-58 (D. Minn. 1997) (emphasizing that RFAs are not vehicles for questions of law; that their purpose is to expedite trial by eliminating undisputed or peripheral issues; and that "Plaintiffs were justified in refusing to endorse the legal conclusions that the Defendants were soliciting").

Here, RFAs 153-155 function only to probe Plaintiffs' views about what is required as a legal matter to prove an antitrust violation.  Plaintiffs are not obligated to address the merit of Defendants' legal theories just because Defendants sprinkled otherwise purely legal questions with a few facts.  *See, e.g., Disability Rights Council*, 234 F.R.D. at 3; *Lakehead*, 177 F.R.D. at 457-58.

The RFAs Defendants champion here are similar to those rejected by this Court in *Disability Rights Council*.  In that case—which considered whether the Washington transit authority had violated the Americans with Disabilities Act and the Rehabilitation Act—one of the challenged RFAs sought confirmation that the authority's "'No Show/Late Cancellation Policy,' . . . is consistent with [Federal Transit Administration] regulations." *See Disability Rights Council v. Wa. Metro. Area Transit Auth.*, 2005 WL 2453214 (D.D.C. Aug. 4, 2005) ("Opposition to Defendant's Motion Seeking a Determination that Plaintiffs' Objections to Admissions are Unjustified and Matters be Admitted").  This Court rejected the request as "ask[ing] plaintiffs to interpret federal law[]," concluding that "plaintiffs were justified in refusing to endorse the legal conclusions that [the defendant] was soliciting" about their compliance with federal authorities. *Disability Rights Council*, 234 F.R.D. at 3.  Equally deficient was a request for admission "'that *consistent with the regulations*, Metroaccess patrons must meet their rides at a designated pick-up spot [outdoors],'" which this Court characterized as calling for "a purely legal opinion about what is required by the FTA regulations." *Id.*

Similarly, Defendants here seek Plaintiffs' legal view on Defendants' contention that, "standing alone," some conduct was consistent with federal antitrust laws.  While Defendants are free to make whatever arguments they want to Judge Friedman about the legality of their conduct, "standing alone" or otherwise, RFAs of this sort are not allowed under Rule 36. *See id.*; *Lakehead*, 177 F.R.D. at 457-58.[9]

---

[9]   Defendants assert that Plaintiffs waived this objection to RFA 155 because Plaintiffs' initial and first supplemental responses to Defendants' RFAs did not object to RFA 155 on the ground that it concerned a purely legal matter. *See* D. Br. at 20 n.11.  Defendants are wrong.  Plaintiffs' general objections expressly objected to the RFAs insofar as they sought "to compel an admission on a subject that is purely legal in nature." *See, e.g.,* Greenwald Decl. Ex. 1 at ¶ 12.  Plaintiffs reiterated that specific objection in RFA 155 during the meet-and-confer process to

**B.      RFAs 82 and 98-102 Pose Incomplete, Counterfactual Hypotheticals**

RFAs 82 and 98-102 improperly ask Plaintiffs to admit various propositions about Class

members' activities and each Defendant's economic self-interest *absent the alleged conspiracy*.

*See* D. Br. App. A.  To each of these six requests, Plaintiffs objected "that the Request calls for

speculation, posits an incomplete, counterfactual hypothetical, calls for expert analysis, and fails

to provide sufficient information from which Plaintiff can responsibly answer.  Because the

Request posits an incomplete, counterfactual hypothetical, Plaintiff cannot truthfully admit or

deny the Request."  *See* Ex. B at 47, 59-61.

That response is warranted: Rule 36 limits the scope of RFAs to facts; the application of

law to fact; opinions about either; and the authenticity of documents.  *See* FED. R. CIV. P.

36(a)(1).  Since hypothetical questions do not supply actual facts, they are improper under Rule

36.  *See, e.g., Bovarie v. Schwarzenegger*, 2011 WL 719206, at * 7 (S.D. Cal. Feb. 22, 2011)

("Requests for Admission are improper where the Request contains an incomplete

hypothetical."); *Story v. M/T Allegiance*, 2007 WL 2790760 at *1 (W.D. Wash. Sept. 24, 2007)

("Defendant objected to this request claiming that it 'seeks an admission as to a hypothetical.' . .

. The Court finds that defendant's objection is justified."); *Men of Destiny Ministries, Inc. v.

Osceola County, Florida*, 2006 WL 2048288, at *3 (M.D. Fla. July 20, 2006); *Storck USA, L.P.

v. Farley Candy Co., Inc.*, 1995 WL 153260, at *3 (N.D. Ill. 1995) ("Storck will not be required

to admit to . . . hypothetical admissions.").  Defendants cite no contrary authority.

---

make clear the basis for Plaintiffs' objection; but the objection was lodged continuously from
Plaintiffs' first responses onward.

Defendants' suggestion that Plaintiffs have conceded RFAs 98 and 99 is also meritless. Defendants' misguided arguments about deposition testimony by Plaintiffs' expert cannot cure the defects with their RFAs.[10]

## **CONCLUSION**

For all of the foregoing reasons, Defendants' motion to compel should be denied.

---

[10]   Plaintiffs' expert Dr. Rausser merely "hypothes[ized]" at his deposition about Defendants' use of fuel surcharges absent a conspiracy. *See* Cross Decl. Exh. 8 at 119:3-8.  In answering hypothetical questions, Dr. Rausser stated that rate-based fuel surcharges "*might* have been charged during the class period but for the conspiracy."  *Id*. at 119:9-120:2 (emphasis added).  Dr. Rausser also stated that it is "possible" a shipper who did not pay a fuel surcharge before the Class Period would nevertheless have paid one during the Class Period absent a conspiracy.  *Id*. at 120:3-16.  This is hardly an admission of the supposed "facts" underlying RFAs 98 and 99.

Dated: June 8, 2011

  /s/ Michael D. Hausfeld
Michael D. Hausfeld, D.C. Bar #153742
Michael P. Lehmann
William P. Butterfield, D.C. Bar #420354
Sathya S. Gosselin
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201
Email:  mhausfeld@hausfeldllp.com

  /s/ Stephen R. Neuwirth
Stephen R. Neuwirth
Richard I. Werder, Jr.
Marc L. Greenwald
Steig D. Olson
Sami H. Rashid
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100
Email:  stephenneuwirth@quinnemanuel.com

***Interim Co-Lead Counsel for Direct Purchaser Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I, Sathya S. Gosselin, an attorney, certify that I emailed a true and correct copy of the

foregoing memorandum (which was filed under seal) to counsel for Defendants in this matter on

June 8, 2011.


    /s/ Sathya S. Gosselin    
      Sathya S. Gosselin