UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

In re RAIL FREIGHT FUEL SURCHARGE
ANTITRUST LITIGATION
_____

This document relates to:

ALL DIRECT PURCHASER CASES
_____

)
)
)
)
)
)
)
)
)
)
)

MDL Docket No. 1869
Misc. No. 07-489 (PLF)


OPINION

      This matter is before the Court on defendants' motion to stay proceedings under

Rule 23(f) of the Federal Rules of Civil Procedure pending resolution of their petition to appeal

the Court's order granting class certification.  The Court heard oral argument on the stay motion

on September 13, 2012.  Upon consideration of the parties' papers, the oral arguments presented

by counsel, the relevant legal authorities, and the entire record in this case, the Court will grant

the defendants' motion as it relates to dissemination of class notice, and deny the motion as it

relates to expert discovery, Daubert motions, and summary judgment briefing.  This Court will

postpone ruling on any summary judgment motions until after the court of appeals has addressed

defendants' petition (and, if it grants the petition, the merits of the appeal), notice has been sent

to the class, and class members are afforded the opportunity to opt out of the class.


I.  BACKGROUND

      The Court has described the background of this case previously.  See In re Rail

Freight Fuel Surcharge Antitrust Litig. ("Rail Freight I "), 587 F. Supp.2d 27, 29–31 (D.D.C.

2008); In re Rail Freight Fuel Surcharge Antitrust Litig. ("Rail Freight II "), 593 F. Supp.2d 29,

32, 34–35 (D.D.C. 2008), aff'd, Fayus Enters. v. BNSF Ry. Co., 602 F.3d 444 (D.C. Cir. 2010);

In re Rail Freight Surcharge Antitrust Litig. ("Rail Freight III"), – F.R.D. –, 2012 WL 2870207,

at *1-11 (D.D.C. June 21, 2012).  It therefore will limit its discussion accordingly.

Plaintiffs allege that defendants — BNSF Railway Company ("BNSF"); CSX

Transportation, Inc. ("CSX"); Norfolk Southern Railway Company ("NS"); and Union Pacific

Railroad Company ("UP") — engaged in a price fixing conspiracy to coordinate their fuel

surcharge programs in order to impose supra-competitive total price increases on their shipping

customers.  See Rail Freight III, 2012 WL 2870207, at *1.  The plaintiff class is composed of

persons and entities that allegedly purchased rail freight transportation services directly from

defendants during the class period, and who were assessed a rail fuel surcharge for those

services.  Id. at *2.  This litigation has been pending before the Court since November 2007.

Plaintiffs moved for certification of the class on March 18, 2010.   The Court heard oral

argument in October 2010, but delayed its decision on class certification to consider the potential

implications of the Supreme Court's decision in Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541

(2011).  On June 21, 2012, the Court granted the plaintiffs' motion for class certification.  Rail

Freight III, 2012 WL 2870207.

Defendants promptly filed a petition in the United States Court of Appeals for the

District of Columbia Circuit seeking leave to appeal the class certification decision under Rule

23(f).  A motions panel of the D.C. Circuit has referred the petition to the merits panel.  In re Rail

Freight Surcharge Antitrust Litig., No. 12-8008 (D.C. Cir. Aug. 28, 2012). The briefing schedule

in the Circuit, initially set to run through November 2012, has been suspended pending further

order of the court, and oral argument has not yet been scheduled in this case.  See In re Rail

Freight Surcharge Antitrust Litig., No. 12-7085 (D.C. Cir. Aug. 31, 2012) (scheduling order); In re Rail Freight Surcharge Antitrust Litig., No. 12-7085 (D.C. Cir. Sept. 19, 2012) (order suspending briefing).  Defendants seek a stay of proceedings in this Court pending resolution of the Rule 23(f) petition in the D.C. Circuit.   Plaintiffs oppose this motion and urge the Court to direct the parties to proceed with expert discovery, notice to potential class members, and Daubert and summary judgment briefing.

## II.  LEGAL STANDARD

Rule 23(f) of the Federal Rules of Civil Procedure provides that a court of appeals, in its discretion, may allow an appeal from a district court order granting or denying class certification.  "An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders."  Fed. R. Civ. P. 23(f).

Although the D.C. Circuit has not yet articulated the standard for evaluating a proposed stay pending decision on a Rule 23(f) petition, Judge Hogan has applied the established four-factor balancing test used for preliminary injunctions and other injunctive relief.  In re Lorazepam & Clorazepate Antitrust Litig., 208 F.R.D. 1, 3 (D.D.C. 2002); see also Blair v. Equifax Check Servs., 181 F.3d 832, 835 (7th Cir. 1999) (noting that a court should engage in the same analysis when deciding whether to grant a stay under Rule 23(f) as when court considers granting preliminary injunctions and stays of administrative decisions).  Under this test, a court should consider the following:

> (1) whether there is a substantial likelihood that the movant will succeed on the merits of the claims/appeal;

(2) whether the movant will suffer irreparable injury if an injunction/stay does not issue;

(3) whether others will suffer harm if an injunction/stay is granted; and

(4) whether the public interest will be furthered by an injunction/stay.

In re Lorazepam & Clorazepate Antitrust Litig., 208 F.R.D. at 3 (citing Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 842-43 (D.C. Cir. 1977); Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958)).  The parties agree that this is the appropriate standard.  See Defs.' Mot. at 3; Pls.' Opp'n at 5.

## III.  DISCUSSION

As the Seventh Circuit has noted, an action is stayed only if the movants show "that the probability of error in the class certification decision is high enough that the costs of pressing ahead in the district court exceed the costs of waiting."  Blair v. Equifax Check Servs., 181 F.3d at 835.  Defendants have failed to make this showing here.

### A.  Likelihood of Success on the Merits

Most challenges to class certification will not survive the initial step of persuading the court of appeals to grant the Rule 23(f) petition.  See In re Lorazepam & Clorazepate Antitrust Litig., 289 F.3d 98, 105-06 (D.C. Cir. 2002) ("The sheer number of class actions, the district court's authority to modify its class certification decision . . . and the ease with which litigants can characterize legal issues as novel, all militate in favor of narrowing the scope of Rule 23(f) review.").  The D.C. Circuit, however, has identified three circumstances in which it is likely to consider an appeal from a class certification decision:

(1) when there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable, taking into account the district court's discretion over class certification;

(2) when the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; and

(3) when the district court's class certification decision is manifestly erroneous.

Id. at 99-100; see id. at 105.

Defendants assert that the Court committed manifest error in finding that certain categories of class members had suffered injury as a result of the fuel surcharges. The Court finds that the court of appeals is unlikely to reverse on this issue, as the "manifest error" standard is very difficult to satisfy. See In re Lorazepam & Clorazepate Antitrust Litig., 289 F.3d at 109 (rejecting challenge to district court's factual findings and noting that district court could further refine the class as additional facts came to light).

Defendants also assert that the Court applied erroneous legal standards on two issues. First, defendants claim that the Court improperly failed to perform a full evidentiary analysis under Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993), when evaluating plaintiffs' expert testimony. Second, defendants assert that the Court applied the incorrect standard for evaluating the number of injured class members sufficient to preclude a finding of predominance. Defendants argue that their petition is likely to be granted because these are unsettled and fundamental legal issues, and because an erroneous decision is likely to force defendants into settlement negotiations. The Court agrees that there is some possibility that the court of appeals

will consider one or both of these issues.  The Court finds, however, that defendants are unlikely to ultimately prevail on appeal.

Defendants correctly identify a circuit split as to whether a district court must address Daubert challenges at the class certification stage.  Compare Am. Honda Co. v. Allen, 600 F.3d 813, 816 (7th Cir. 2010) ("[T]he district court must perform a full Daubert analysis before certifying the class if the situation warrants."), with In re Zurn Pex Plumbing Products Liability Litig., 644 F.3d 604, 612-14 (8th Cir. 2011) (concluding that district court need not assess the admissibility of expert testimony at the class certification stage; "full Daubert hearing" not required so long as court conducts "rigorous analysis" of parties' claims regarding expert testimony as it relates to common proof).  Furthermore, defendants note that the Supreme Court recently granted a petition for a writ of certiorari that implicates this question.[1]  Defendants, however, do not clearly identify how resolution of this legal question would affect the Court's decision here, as defendants never raised a Daubert challenge before this Court decided the class certification issue.  Nor is it obvious that a full Daubert analysis would have yielded a different result.  See, e.g., Rail Freight III, 2012 WL 2870207, at *18 (finding that plaintiffs' expert's use of regression analysis was a generally accepted basis for certifying a class); id. at *66-67 (observing that multiple regression analysis is particularly useful in antitrust actions); id. at *33, n. 11 (noting credentials of plaintiffs' expert).

---

[1]    The Supreme Court granted a petition for writ of certiorari on the following question: "Whether a district court may certify a class action without resolving whether the plaintiff class has introduced admissible evidence, including expert testimony, to show that the case is susceptible to awarding damages on a class-wide basis." See Comcast Corp. v. Behrend, – S.Ct. –, 2012 WL 113090, at *1 (June 25, 2012).

It is also unlikely that defendants will prevail on the question of the correct standard for including uninjured members in a class, as the law on this issue does not appear to be unsettled. See Kohen v. Pacific Inv. Management Co. LLC, 571 F.3d 672, 677-78 (9th Cir. 2009) (reconciling case law holding that a class may include a small number of uninjured persons with contrary statements in other cases).

Defendants also argue that the court of appeals' order directing the parties to brief the merits of their appeal suggests that the court is willing to entertain the substantive issues presented in the petition.  Although this is a plausible theory, this Court has located five cases in which the D.C. Circuit referred a Rule 23(f) petition directly to the merits panel, and in every case, that petition ultimately was denied.[2]  It is a fool's errand to try to predict what the court of appeals is likely to do before it acts or, absent explanation, to speculate on why it has made a certain procedural decision.

In sum, although it is possible that defendants may prevail on their appeal, defendants have not shown that they are substantially likely to do so.

### B.  Irreparable Injury to Defendants if the Action Proceeds

Defendants argue that if the action proceeds, the parties will spend considerable time and money conducting expert discovery, disseminating notice, and preparing Daubert and summary judgment briefs.  If the D.C. Circuit modifies or reverses the certification decision, they maintain, some or most of this preparation may have to be redone.

---

[2]     See In re Lorazepam & Clorazepate Antitrust Litig., 289 F.3d 98 (D.C. Cir. 2002); In re Veneman, 309 F.3d 789 (D.C. Cir 2002); In re James, 444 F.3d 643 (D.C. Cir. 2006); In re D.C. Water and Sewer Auth., 561 F.3d 494 (D.C. Cir. 2009); In re U-Haul, Int'l Inc., No. 08-7122, 2009 WL 902414 (D.C. Cir. April 6, 2009).

No doubt subjecting a party to duplicative and wasteful litigation exercises is a significant harm.  See Johnson v. Geico Cas. Co., 269 F.R.D. 406, 413 (D. Del. 2010) (staying discovery on class membership, which was likely to be affected if court of appeals modified or reversed part of the certification order); Gray v. Golden Gate Nat. Recreational Area, 2011 WL 6934433, at *2 (N.D. Cal. Dec. 29, 2011) (noting that litigation expenses can constitute "substantial harm"); but see In re Lorazepam & Clorazepate Antitrust Litig., 208 F.R.D. at 6 ("litigation expenses alone do not necessarily qualify as irreparable harm.").  Courts, therefore, have considered carefully the implications of an appeal on the nature and scope of the class action proceeding.  See, e.g., In re Lorazepam & Clorazepate Antitrust Litig., 208 F.R.D. at 6 (applying flexible balancing of factors, and staying proceedings where the impact of reversal could be dispositive of the case); Beattie v. CenturyTel Inc., No. 02-10277-BC, 2006 WL 1722207, at *8 (E.D. Mich. June 20, 2006) (denying stay motion in part where litigation would still proceed even if class certification decision were reversed.)

As in Beattie, litigation will almost certainly proceed in this case, even if the certification decision is reversed or modified.  See Pls.' Opp. Stay at 12; Defs.' Motion Stay at 6 (conceding that "the named Plaintiffs' claims would remain" even if class certification is denied). This suggests that some, perhaps most, of the parties' work in preparing expert discovery, Daubert motions, and summary judgment briefs will be of use even if the defendants prevail on their appeal.  In the Court's view, defendants have failed to show that they will be irreparably harmed if the parties are required to proceed with expert discovery and the preparation of Daubert and summary judgment briefs.

### C.  Harm to Others if the Action is Stayed

In this five-year old lawsuit, delayed resolution of the claims would substantially harm class members, as a stay would postpone summary judgment and trial for many months, or possibly over a year.  See Griffiths v. Ohio Farmers Ins. Co., No. 1:09-CV-1011, 2010 WL 2774446, at *3 (N.D. Ohio 2010) ("Delaying discovery or the start of a trial can harm the non-moving party, especially when it is unclear if and when appellate review will be granted."); cf. In re Lorazepam & Clorazepate Antitrust Litig., 208 F.R.D. at 4-5 (staying case where expected delay would be limited to a few months).  A stay would postpone any compensation that class members might receive if plaintiffs succeed on the merits, and would delay a definitive resolution of the case regardless of who ultimately prevails.  Plaintiffs also point out that the factual record will grow weaker with age and that some witnesses may become unavailable.  Because the extensive fact discovery has already been completed, the factual record is somewhat protected; nonetheless, the Court recognizes that case delays may compromise plaintiffs' ability to call relevant witnesses at trial or that memories may fade.

Plaintiffs, therefore, have demonstrated a risk of significant harm that offsets that faced by defendants, particularly in light of defendants' failure to show a substantial likelihood of prevailing on the merits of their appeal.

### D.  Other Public Interest Factors

Defendants correctly note that proceeding with class notice while the Rule 23(f) petition is pending could lead to confusion among the public and the absent class members.  See Manual for Complex Litigation (Fourth) § 21.28 (2004) (the district court "should ordinarily stay the dissemination of class notice to avoid the confusion and substantial expense of renotification

that may result from appellate reversal or modification after notice dissemination"); <u>Jenkins v.</u>

<u>Hyundai Motor Financing Co.</u>, No. C2-04-720, 2008 WL 2268319, at *5 (S.D. Ohio 2008)

(recognizing the public interest in minimizing potential confusion that could result from

potentially erroneous notices, and staying notice to class); <u>Beattie v. CenturyTel Inc.</u>, 2006 WL

1722207, at *8 (same).  This public interest consideration counsels in favor of staying class

notice until after the court of appeals has acted on the petition.

     Defendants propose that notice be sent to absent class members only after the

court of appeals has addressed defendants' petition and, if the petition is granted, the merits of

the appeal.  Plaintiffs suggest a two-step notice process: one notice notifying the class of the suit

now and another notice triggering the opt-out period after the court of appeals acts.  It is unclear

what would be gained by notifying class members immediately, as the next step in the litigation

process is expert discovery (a process that requires no involvement by class members), and as the

primary purpose of notice is to permit class members an opportunity to decide whether to stay in

the lawsuit or opt out.  <u>Peters v. Nat'l R.R. Passenger Corp.</u>, 966 F.2d 1483, 1486 (D.C. Cir.

1992).[3]

     This Court has discretion as to the timing of notice, provided that notice is sent

prior to entry of final judgment.  Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(d); <u>see also</u> <u>In re</u>

<u>Veneman</u>, 309 F.3d 789, 792 (D.C. Cir. 2002) ("due process requires that putative class members

---

[3]     At oral argument, counsel for plaintiffs suggested that a second purpose of a Rule 23 notice, one that argues for a first notice now and a second after the court of appeals has acted, is to mitigate any person or entity communicating with class members and providing inaccurate or purposely false information about the case.  But plaintiffs have provided no evidence that this a problem in this case.

receive notice and an opportunity to opt out").  The Court finds that a stay of class notice is

appropriate at this time.

## IV.  CONCLUSION

In sum, the Court finds that defendants have failed to demonstrate that the

likelihood of success of their appeal is sufficiently high that the costs of proceeding with expert

discovery, Daubert motions, and summary judgment briefing outweigh the costs of further delay.

It finds, however, that a stay of class notice is warranted at this time.  Accordingly, the Court will

deny defendants' motion as it pertains to expert discovery and briefing of the Daubert and

summary judgment issues and grant the motion as it pertains to class notice.  An Order consistent

with this Opinion will be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 20, 2012