UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | ) ) ) ) ) | MDL Docket No. 1869 Misc. No. 07-0489 (PLF) |
| This document relates to: ALL DIRECT PURCHASER CASES | ) ) ) ) |   |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a number of motions seeking access to material that has been filed under seal in this case. Several putative class members – Dow Chemical Company ("Dow"), Rayonier, Inc. ("Rayonier"), and the Southern Company ("Southern") – as well as plaintiffs in a related case – the Oxbow companies – seek access to assertedly confidential information filed under seal pursuant to a protective order. These third parties have moved to intervene for the purposes of amending the protective order, as appropriate; signing on to that amended order and committing to abide by it; and then being given access to the information now under seal. To be clear, these motions do not seek general access to discovery materials in this case, but only to the sealed portions of court records already on the public docket. To the extent that some discovery materials and all of the expert reports are sought by these motions, that is because they were exhibits to or submitted under seal with the class certification motion and opposition.[1]

---

[1] Plaintiffs' counsel argue that there is no authority whatsoever for putative class members or others to be given access to the parties' expert reports because those reports represent a multimillion dollar investment by the class to produce work product that is based on confidential transactional data. See October 15, 2013 Tr. at 87, 89, 90, 92-94, 105. The Court need not address that issue at this stage.

The Court heard oral argument on the motions to intervene and for access on September 13, 2012, on the same date that it heard argument on defendants' motion to stay proceedings pending a decision by the court of appeals on the defendants' appeal of this Court's class certification decision. Following that hearing, the Court stayed notice to the class and took the motions for access under advisement pending the court of appeals' decision on class certification. On August 9, 2013, the court of appeals vacated the class certification order and remanded the case to this Court for reconsideration. See In re Rail Freight Fuel Surcharge Antitrust Litig. – MDL No. 1869, 725 F.3d 244 (D.C. Cir. 2013). At a status conference on October 15, 2013, the Court elicited the parties' views on how to proceed on remand. At the request of those putative class members with pending motions seeking to intervene, it also held a status conference on the same day with respect to those pending motions. For the reasons that follow, the Court will grant the petitioners' motions to intervene, but will deny the motions for access without prejudice to their being refiled at a later date.[2]

---

[2] The papers reviewed in connection with the pending motions include the following: Southern's motion for access to materials filed under seal ("Southern Mot.") [Dkt No. 553]; Oxbow's motion for access to materials filed under seal [Dkt. No. 554]; Dow's motion for access to the record [Dkt No. 557]; plaintiffs' opposition to the motions of Southern and Oxbow [Dkt. No. 561]; defendants' opposition to Oxbow's motion [Dkt. No. 562]; Southern's reply in support of its motion ("Southern Reply") [Dkt. No. 567]; Oxbow's reply in support of its motion [Dkt. No. 568]; Rayonier's motion to intervene for the limited purpose of modifying the stipulated protective order [Dkt. No. 570]; defendants' opposition to the motions of Southern, Oxbow, and Dow [Dkt. No. 562]; plaintiffs' opposition to Dow's motion [Dkt. No. 573]; Dow's reply in support of its motion ("Dow Reply Mem.") [Dkt. No. 578]; defendants' opposition to Rayonier's motion ("Defs.' Opp. Rayonier") [Dkt. No. 581]; plaintiffs' opposition to Rayonier's motion [Dkt. No. 582]; Southern's request to add to status conference its pending motion for access [Dkt. No. 674]; Dow's statement on its motion for access ("Dow Supp. Mem.") [Dkt. No. 683]; Oxbow's statement on its motion for access [Dkt. No. 684]; Rayonier's statement on its motion for access ("Rayonier Supp. Mem.") [Dkt. No. 685]; defendants' statement on motions for access ("Defs.' Supp. Mem.") [Dkt. No. 686]; plaintiffs' statement on motions for access [Dkt. No. 687]; notice of supplemental authority by Southern [Dkt. No. 692]; Stipulation and Scheduling Order [Dkt. No. 694]; Show Cause Order [Dkt. No. 697]; and the parties' joint statement pursuant to the Show Cause Order ("Parties' Joint Statement") [Dkt. No. 698].

I.

Under Rule 24(b) of the Federal Rules of Civil Procedure, the Court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B).  The decision to grant such a motion is left to the discretion of the Court.  EEOC v. Nat'l Children's Center, 146 F.3d 1042, 1045 (D.C. Cir. 1998).  In exercising its discretion the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  FED. R. CIV. P. 24(b)(3).

Rule 24(b) has been broadly interpreted as a proper vehicle for a third party to seek access to sealed judicial records or discovery.  See EEOC v. Nat'l Children's Center, 146 F.3d at 1045-46.  The D.C. Circuit has concluded that "third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order."  Id. at 1046.  Permissive intervention to seek access to court records or discovery has been allowed in a variety of types of cases, including class actions and antitrust actions.  See, e.g., Wilk v. American Medical Ass'n, 635 F.2d 1295, 1299 (7th Cir. 1980) (granting third party's motion for access to sealed pretrial discovery in antitrust action), superseded in part by statute; In re Linerboard Antitrust Litigation, 333 F. Supp. 2d 333, 335 (E.D. Penn. 2004) (granting collateral litigants' motion for permissive intervention in antitrust class action and granting access to all discovery); In re Vitamins Antitrust Litigation, No. 99-MC-197, 2001 WL 34088808, at *7 (D.D.C. Mar. 19, 2001) (granting Canadian litigants' motion to intervene in related U.S. class action).[3]

---

[3] Although Dow and Southern cite Rule 23 of the Federal Rules of Civil Procedure as the basis for their motions, Southern Reply 11-12; Dow Reply Mem. 3, Rule 23 provides a right of appearance only to individuals and entities that have elected to remain in the class.  7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1799, at 252-53 (3d ed. 2005) (citing In re Potash Antitrust Litig., 162 F.R.D. 559

Under Rule 24(b)(2), a movant typically must show (1) an independent basis for subject matter jurisdiction; (2) that the motion to intervene is timely; and (3) a claim or defense that shares a common question of law or fact with the main action. See EEOC v. Nat'l Children's Center, 146 F.3d at 1046. The D.C. Circuit has found that the jurisdictional prong is already met when the movant seeks modification of a protective order still in place, as the district court already has jurisdiction over the protective order. Id. at 1047 (finding that "such intervenors do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power that it already has"). The timeliness prong presents no barrier: this requirement is intended to ensure that the main action is not disrupted by the entry of a delinquent newcomer, and it has been viewed flexibly in the context of interventions to amend protective orders. Id. The requirement of a common question of law or fact also is easily met here by all parties. See id. (noting that courts "have afforded this requirement considerable breadth when the movant seeks to intervene for the collateral purpose of challenging a confidentiality order"). Oxbow's claims in the related litigation are very similar to the claims at issue in the present case, and the claims of the potential class members are, by definition, identical to those presented here. The Court therefore finds that the three requisites for intervention under Rule 24(b)(2) have been met.

II.

The putative class members – Dow, Rayonier, and Southern – seek access to the sealed portions of the record in this case primarily, they say, in order for their counsel to

---

(D. Minn. 1995)); see also In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 363, 366 (D.D.C. 2001). Because the appropriate mechanism is a motion for permissive intervention under Rule 24(b), the Court construes the motions of Dow and Southern as brought under Rule 24(b).

"provide meaningful, informed advice about whether [they] should opt out and pursue [their] own individual action[s]." Dow Supp. Mem. 2; see also Rayonier Supp. Mem. 2-3; Southern Mot. 1.  This argument has lost some force in light of the court of appeals' remand, since the decision whether to certify the class is now delayed.  Indeed, in view of the stipulated Scheduling Order issued by the Court on October 31, 2013, a decision on certification likely will not take place until the summer or fall of 2014.  See Stipulation and Scheduling Order at 1-2.  The putative class members nevertheless argue that there is no reason to deny them immediate access to the sealed portions of the record because early disclosure will facilitate their ultimate decision whether or not to opt out and proceed individually; it will allow them to make that decision, at the appropriate time, "on an expeditious basis." Dow Supp. Mem. 2.  Rayonier goes even further, suggesting the possibility that it may not wait "some indeterminate period of time to learn if a class will be certified," but, rather, after receiving access to the sealed portions of the record, it may decide "whether to proceed with its own action now." Rayonier Supp. Mem. 2.

Plaintiffs and defendants have numerous responses to these arguments.  First, they say, there is little relevant material still under seal.  Since the fall of 2012, in response to directions from this Court and from Magistrate Judge Facciola, they say they have complied with the terms of the protective order, as modified, requiring them to file on the public docket redacted versions of materials that have been filed under seal; they represent that they continue to do so.  See Defs.' Supp. Mem. 1; Defs.' Opp. Rayonier Mot. 3, n.1; October 15, 2013 Tr. at 85-87.  Whether the parties have strictly complied with the terms of the protective order has recently been called into question.[4]  The Court therefore places minimal weight on the parties'

---

[4] On November 5, 2013, Magistrate Judge Facciola questioned whether the parties had violated the terms of the protective order by filing on the public record overly-redacted briefs, and by filing under seal an expert report that should have been made public.  Show Cause

representations that the redactions have been undertaken with scrupulous care.  The risk that substantial material is improperly withheld, however, has been mitigated by the careful attention of Magistrate Judge Facciola, and most documents filed in this case are available on the public record.  Moreover, the Court finds the other reasons put forth by the parties to be persuasive.

Plaintiffs and defendants' second argument is that if the movants are seeking access to the sealed materials primarily in order to aid them in determining whether to opt out of the class or remain a class member, there is no longer any urgency because a decision on certification is nearly a year away.  See Stipulation and Scheduling Order at 1-2.  Third, counsel for the plaintiffs are concerned that giving access to sealed material to the movants likely will create an incentive for many other putative class members to intervene, attempt to gain access to sealed records, and then, possibly, file their own opt out suits.  All of this, they argue, would undermine judicial economy and, if taken to an extreme, would threaten the viability of the class action mechanism.  Fourth, plaintiffs argue that normally limited access to sealed materials in a class action is provided only *after* notice has been issued, not *before* the issuance of notice, because only then must putative class members decide whether to opt out.  See In re NASDAQ Market-Makers Antitrust Litigation, 182 F.R.D. 69, 72 (S.D.N.Y. 1998) (permitting access after notice was disseminated to class members); J.B.D.L. Corp v. Wyeth-Ayerst Laboratories, Inc., C-1-01-704, at 3-6 (S.D. Ohio July 15, 2003) (same).  Fifth, the parties – particularly the defendants – maintain that they have a strong interest in not having their sensitive, confidential business information widely circulated.  Finally, the parties note that if the Court ultimately decides *not* to certify a class, the decision about whether to opt out will have been made for the

---

Order at 1-2. Magistrate Judge Facciola ordered the parties to show cause as to why these documents should not be made publicly available, id. at 3, and the parties conceded that the relevant documents could be made public with very few redactions. Parties' Joint Statement 3-7.

movants, and they would have no need for or right to the materials they seek.  And regardless of the ultimate outcome on the certification decision, the only prejudice they possibly will suffer is delay in their individual cases.[5]  The Court is persuaded by these arguments that the request for access to the sealed material is premature.

As for Oxbow, the Court also finds that its request for access is premature, but for different reasons.  This Court dismissed Oxbow's initial complaint for failure to state a claim under Rule 12(b)(6).  See Oxbow Carbon & Minerals, LLC v. Union Pacific Railroad Co., 926 F. Supp. 2d 36 (D.D.C. 2013).  Oxbow then filed an amended complaint.  The defendants have once again moved to dismiss, and that motion is now ripe.  The Court was advised at the October 15, 2013 status conference that discovery has not yet begun in the Oxbow case and, presumably, it will not begin until after the motion to dismiss is resolved.  See October 15, 2013 Tr. at 79-80, 97-98.  While Oxbow asserts that it nevertheless has an immediate interest in obtaining access to the materials under seal in this case, its interest in those materials will become considerably weaker, if not non-existent, if its claims do not survive the motion to dismiss.  As the relevant authorities make plain, the appropriate time for this Court to determine whether the protective order should be amended so as to make relevant documents available to Oxbow is after the motion to dismiss has been resolved and discovery in the related case is underway.  See MANUAL FOR COMPLEX LITIGATION § 11.432 (4th ed. 2004) ("Generally, the [nonparty] seeking discovery should first establish its right to discovery in the court in which it will be used").  See also Foltz v. State Farm Mutual Automobile Insurance Co., 331 F.3d 1122, 1132 (9th Cir. 2003) ("As an initial matter, the collateral litigant must demonstrate the relevance of the protected discovery to

---

[5]  While there was some initial confusion at the October 15, 2013 status conference, all counsel ultimately agreed that delay does not create a statute of limitations problem because during the pendency of an asserted class action the statute of limitations is tolled for all members of the putative class.  See October 15, 2013 Tr. at 95, 100.

the collateral proceedings and its general discovery therein."); Wilk v. American Medical Ass'n, 635 F.2d at 1299-1300 (permitting access by a "bona fide litigant" who would otherwise be entitled to discover sealed materials through duplicative discovery in related proceedings).

There is no prejudice to denying Oxbow access – and nothing to be gained by providing access – until after the motion to dismiss is decided in the related case, and Oxbow and the defendants know whether the litigation and attendant discovery will proceed. None of the cases cited by Oxbow supports access to protected court documents for use in a related case that has not yet reached the discovery stage. Oxbow's request for access will be denied without prejudice.

For all of these reasons, it is hereby

ORDERED that [Dkt. No. 553], [Dkt. No. 554], [Dkt. No. 557], and [Dkt. No. 570] the motions of the Southern Company, the Oxbow companies, Dow Chemical Company, and Rayonier, Inc. to intervene and for access to sealed portions of the record are GRANTED IN PART and DENIED IN PART; it is

FURTHER ORDERED that the Southern Company, the Oxbow companies, Dow Chemical Company, and Rayonier, Inc. shall be permitted to intervene under Rule 24(b) of the Federal Rules of Civil Procedure for the limited purpose of seeking modifications to the protective order; it is

FURTHER ORDERED that [Dkt. No. 553], [Dkt. No. 557], and [Dkt. No. 570] the motions of the Southern Company, Dow Chemical Company, and Rayonier, Inc. to modify the protective order are DENIED as premature, and without prejudice to their being refiled upon a showing that the movants are potential members of a certified class for which class notice has been issued; and it is

FURTHER ORDERED that [Dkt. No. 554] the motion of Oxbow to modify the protective order is DENIED as premature, and without prejudice to its being refiled upon a showing that Oxbow is entitled to discovery in Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co., Civil Action No. 11-1049.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE: November 21, 2013                      United States District Judge