**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN RE:  RAIL FREIGHT FUEL | ) | |
| SURCHARGE | ) | |
| ANTITRUST LITIGATION | ) | MDL No. 1869 |
| | ) | Misc. No. 07-489 (PLF) |
| _____ | ) | Hon. Paul L. Friedman |
| | ) | |
| This document relates to: | ) | |
| ALL DIRECT PURCHASER CASES | ) | PUBLICLY FILED VERSION |
| _____ | ) | |

**DEFENDANTS' SUR-REPLY MEMORANDUM IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 3

    I.      Dr. Rausser's Flawed Use of a ███████ █████ ████████ .......................................... 3

    II.    Dr. Rausser's Model Does Not Allow Adequate Fuel Cost Recovery ....................... 8

    III.   The Over ████████ Shipments with Negative "Damages" and
           Thousands of Uninjured Shippers Demonstrate the Unreliability of
           Dr. Rausser's Model .................................................................................. 10

    IV.   Dr. Rausser's Model Predicts False Positive Damages for Pre-Class
           Shipments ................................................................................................ 14

CERTIFICATE OF SERVICE .............................................................................. 18

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Comcast Corp. v. Behrend,*
  __ U.S. __, 133 S. Ct. 1426 (2013) ................................................................................ 8, 12

*In re Photochromic Lens Antitrust Litig.,*
  2014 WL 1338605 (M.D. Fla. Apr. 3, 2014) ...................................................................... 13

*In re Rail Freight Antitrust Litig.,*
  287 F.R.D. 1 (D.D.C. 2012) ................................................................................................. 1

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
  725 F.3d 244 (D.C. Cir. 2013) ........................................................... 2, 3, 10, 12, 13, 14, 15

## INTRODUCTION

The issues in this case have narrowed substantially as Plaintiffs struggle with *Behrend* and the D.C. Circuit's decision.

1.      Plaintiffs have retreated from their core allegation that Defendants conspired on standard fuel surcharge formulas that were more "aggressive" and "nothing like" admittedly competitive formulas.[1]  In a case that was once primarily about an industry-wide "tax" accomplished with more aggressive fuel surcharge formulas, Plaintiffs' reply does not contest that Class Period fuel surcharge formulas had approximately the same earning power as pre-Class formulas.  In a stark turnaround, Plaintiffs now say that the "earning power [of a fuel surcharge formula] alone tells us *nothing*."  Reply Mem. of Law in Supp. of Mot. for Class Certification ("Pls.' Reply Br.") at 10 (emphasis added) (Dkt. No. 711).

2.      This admission has forced Plaintiffs to rely in their reply brief and new expert reports on various general theories of fuel surcharge "coverage."  They argue that they can establish classwide injury under the exacting standards of *Behrend* and the D.C. Circuit's decision based on an alleged conspiracy "to implement and enforce" fuel surcharges, irrespective of how "aggressive" those fuel surcharges were.  Pls.' Reply Br. at 6.  Defendants addressed the fundamental flaws in Plaintiffs' coverage theories in Defendants' Opposition at 58-66.  Defs.' Memo. of Law in Opp. to Pls.' Renewed Mot. for Class Certification ("Defs.' Opp. Br.") at 58-66 (Dkt. No. 707).  And in their reply, Plaintiffs have now *confirmed* that they have no economic model to prove the common impact of a "coverage" conspiracy—that is, "that all class members

---

[1] *In re Rail Freight Antitrust Litig.*, 287 F.R.D. 1, 48 (D.D.C. 2012) ("[A]s plaintiffs and their expert make clear, their antitrust claim in this case is not a conspiracy to impose just any fuel surcharge; rather, plaintiffs claim that defendants agreed to increase total prices 'by widespread application and enforcement of coordinated, and aggressive, fuel surcharges.'").

were in fact injured by the alleged conspiracy"—as required by the D.C. Circuit.  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) ("*D.C. Cir. Op.*").  Dr. Rausser states in his reply report that his model "was not developed . . . to predict [fuel surcharge] coverage," Rausser Suppl. Reply Expert Report ("Rausser Reply Rep.") at 37,[2] an admission consistent with his testimony that he has "no information on what were the factors that caused some shippers to have fuel surcharges whereas other[s] did not."  O'Mara Decl., Ex. 3 (Rausser Dep., Sept. 24, 2010) at 293:16–295:11.  Thus, there is *zero* common proof that Plaintiffs can use to establish that all (or even virtually all) class members paid a fuel surcharge as a result of the alleged conspiracy and would not have paid one absent the conspiracy.

      3.      Predictably, Plaintiffs return to the theme that purported documentary evidence of conspiracy can be used to prove, or lighten their burden of proving, that they have put forth a reliable injury and damages model.  *See, e.g.*, Pls.' Reply Br. at 1; Rausser Reply Rep. at 28.  This is the same argument[3] that the D.C. Circuit rejected in unambiguous language:  "Rausser's models are essential to the plaintiffs' claim they can offer common evidence of classwide injury.  No damages model, no predominance, no class certification."  *D.C. Cir. Op.*, 725 F.3d at 253.

      4.      Plaintiffs are left with their flawed contention that the purported ability of Dr. Rausser's model to predict rail rates (independent of any ability to predict fuel surcharge coverage or to track allegedly more "aggressive" fuel surcharges) is good enough.  This sur-reply brief therefore focuses primarily on Plaintiffs' new efforts to explain away the methodological defects of Dr. Rausser's model.  As Dr. Joseph Kalt shows in his sur-reply declaration, and we

---

[2]  *See also* Defs.' Opp. Br. at 58-66; Decl. of Timothy O'Mara, March 31, 2014 ("O'Mara Decl."), Ex. 4 (Rausser Dep., Mar. 4, 2014) at 263:8-17.

[3]  Br. of Resp'ts at 9-18, 41-50, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013) (No. 12-7085).

explain below, there is no merit to Plaintiffs' efforts to (a) defend the ████████████████

that hard-wires Dr. Rausser's model to find damages when fuel costs are high, or (b) show that

the model allows "proper" fuel cost recovery.  We demonstrate that other economic studies of

the railroad industry *reject a* ██████████████ and that Dr. Rausser's model in no way

allows ordinary fuel cost recovery.

We also address Plaintiffs' and Dr. Rausser's new efforts to explain away the astonishing

fact that in a case that is supposed to be about fuel surcharges that systematically and

formulaically raised all rail rates, Dr. Rausser's model finds no injury for at least █████

*class shipments* and *more than* ████ *class members*.  Drs. Rausser and McClave dismiss this as

"normal prediction error," a claim that concedes the model cannot reliably assess impact for all

(or virtually all) class members and that casts aside basic statistical science.

Finally, we demonstrate that Dr. Rausser's and Dr. McClave's new efforts to explain

away the false positives Dr. Rausser's model generates for *pre-Class* shipments are flawed.

These false positives alone "shred" Plaintiffs' case for class certification.  *D.C. Cir. Op.*, 725

F.3d at 252.  Plaintiffs' efforts in fact confirm the pre-Class false positives, and demonstrate that

Dr. Rausser's model does not satisfy the standards set forth in *Behrend* and the D.C. Circuit's

decision.

## ARGUMENT

**I.**     **Dr. Rausser's Flawed Use of a ███████████████**

Dr. Rausser's model suffers from numerous methodological flaws.  A central flaw that

causes many of the false-positive "damages" is that the model ███████████████████████

████████████████████████████████████████████████████████████

model uses a constant, or fixed, "fuel cost/rail rate relationship").[4]  Pls.' Reply Br. at 13-14.  Dr. Rausser readily admits this.  Rausser Reply Rep. at 61-64.  Consequently, the model predicts that ███████████████████████████████████████████████████████████████████ ██████████████████ regardless of whether fuel is a small proportion of a railroad's total costs (as it was in 2002—9.3%) or a large proportion of total costs (as it was in 2008—27.4%).  Sur-reply Decl. of Joseph P. Kalt, Ph.D. ("Kalt Sur-reply Decl.") at 12 n.25.  The model treats any increase in all-in rail rates that exceeds Dr. Rausser's ████████████████████ as damages.  Understanding this arithmetic sleight of hand is vital to understanding why the model predicts damages where there could be none.  Dr. Kalt demonstrated that this assumption of a ██████████████████████████████ is contrary to basic economic theory, causes Dr. Rausser's model to produce "damages" in response to rising fuel costs, and inevitably results in false positives.  Decl. of Joseph P. Kalt, Ph.D., Mar. 31, 2014, ("Kalt Remand Decl.") at 28-38.

In reply, Dr. Rausser tries to defend this core assumption of the model by citing five economic studies that he incorrectly asserts █████████████████████████████████ Pls.' Reply Br. at 15 n.67; Rausser Reply Rep. at 64.  The citations are baseless and misrepresent the content of the studies; *each of them rejects a* ██████████████████████ Kalt Sur-reply Decl. at 6-13.  For example, Dr. Rausser argues that his calculation of a ██████ ███████████████████████████████████████████████████████████████ contained in a study of railroad costs by Christensen Associates.  The Christensen study, however, *explicitly* tests the ████████████████████████████████████████████████ ████ *Id*.  Further, the ████████████████████ that Christensen reports for the period 2003-2008 is roughly double that used by Dr. Rausser to calculate damages, confirming that by

---

[4]  In the model, the variable that states this relationship is the "fuel coefficient."

including in his data set the years 1999-2002, when fuel costs were low, Dr. Rausser substantially understates ███████████ that existed during the Class Period.  *Id*. at 7-8 & Fig. SR-2.  Similarly, the other four articles cited by Dr. Rausser reject a ██████████████ ████████████████████████████████ [5]  *Id*. at 11-13 & Fig. SR-4; *see also* Kalt Remand Decl. at 28-41.

Plaintiffs and Dr. Rausser also incorrectly cite Areeda & Hovenkamp's *Antitrust Law* treatise to support Dr. Rausser's ████████████████████████████████.  Pls.' Reply Br. at 17.  The cited passages simply explain that in a "before and after" price prediction model one must account for ██████████████████████████████████ ████████ and that one approach for doing that is to examine the ██████████████████ ████████ Decl. of Kyle R. Taylor, May 28, 2014, Ex. 106 § 395b1.  The treatise does *not* state that when modeling for ████████████████████████████████████████████ ████████████████████████.  It does not even address that issue, and therefore provides no support for Dr. Rausser's methodology.

Indeed, Dr. Rausser's own work demonstrates the falsity of his ████████ █ █████ ████████ and the inappropriateness of using the assumption to assess damages from the alleged conspiracy.  In his original model, Dr. Rausser ████████████████████████████ ████████████████████████████████████████████████████ Confronted with the implausibility of ██████████████████████████████████ ████████████████████████████████████ (fuel prices averaged $1.42) ██████████████

---

[5]  Dr. McClave claims that it is "standard practice" to estimate a constant fuel elasticity, "as Dr. Rausser has detailed in his reports."  McClave Suppl. Expert Report ("McClave Reply Rep.") at 15.  Dr. McClave's only support for this assertion, however, is a citation to Dr. Rausser's merits reply report where he discusses the same four articles addressed above.

████████████████████████████ (averaging $2.61 over the Class Period and reaching

an average of $3.80 in 2008), Kalt Sur-reply Decl. at 12 n.25, ████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ versus

████.[6]  Pls.' Reply Br. at 13-14.  This ████████████████████████████

████████ calculated by Dr. Rausser is entirely inconsistent with his ████████████

██████████████   Put simply, it is plainly wrong to ████████████████████████

██████████████ particularly when fuel costs became a substantially higher proportion of

Defendants' total costs during the Class Period.

    Dr. Rausser's reply report offers further proof that the ████████████████

████████   In trying to defend his ████████████████████ Dr. Rausser presents

Figure 4, which illustrates that the ████████████████ can vary dramatically.



---

[6]  To be precise, Dr. Rausser used ████████████████████████████████████

████████████████████████████████████████████████████  Kalt Remand Decl. at 17-
18.

As Figure 4 shows, different time periods yield substantially different ███████████ ████████████████████████████████.  When Dr. Rausser includes more years when fuel costs were low, his calculated ██████████████████████.  The inverse is also true—in Figure 4, when the data set includes more years with higher fuel costs, the ██████████ ████████████████████████  To obtain a relatively ████████████████████████████ which Plaintiffs prefer because it results in higher damages, the trick is to use a time period when fuel was on average a relatively low proportion of the railroads' costs.  That is exactly what Dr. Rausser did—████████████████████████████████████████████████████████ ██████████████████████████████████.

Had Dr. Rausser used only the ██████████████████ from the 2003-2008 Class Period in the STB model, the result would have been a benchmark of ██—nearly three times higher than the ████ benchmark he derived ████ ████ ████ Kalt Sur-reply Decl. at 19.  This is still not the right way to perform the analysis because it ignores substantial variation in fuel costs during the Class Period, but it nonetheless shows how Dr. Rausser's model converts the record high fuel costs into damages by using █████████████████████████████████████ ██████████████.

Finally, Plaintiffs argue that even if Defendants are correct that the ██████████████ ████████████████████, it does not matter because Dr. McClave has "tested Dr. Rausser's model ██████████████████████████████████████████████████" and still finds a ████ overcharge.  Pls.' Reply Br. at 19 (quotations omitted).  This does nothing to save the model, and it is extremely misleading.  Dr. McClave's alternative model still uses the same ████████████████████████████ from Dr. Rausser's model; it simply removes a different component of that model.  McClave Reply Rep. at 16; *see also* Kalt Sur-reply Decl. at

21-22.  It therefore is no surprise that Dr. McClave's alternative model still yields damages.  Dr.

McClave's error is confirmed by applying his alternative model to the pre-Class Period data,

which cannot be contaminated by the alleged conspiracy.  This test yields a statistically

significant overcharge (as high as ████ for every quarter in the pre-Class Period.  Kalt Sur-reply

Decl. at 30 & Fig. SR-7.  That, standing alone, is a disqualifying false positive under the D.C.

Circuit standard.[7]

## II.     Dr. Rausser's Model Does Not Allow Adequate Fuel Cost Recovery

Because Dr. Rausser's damage model incorrectly uses a ████████████████

████████, the model systematically predicts but-for prices that do not allow for full fuel cost

recovery.  In his reply report, Dr. Rausser attempts to salvage his model by producing a new

calculation that purports to show that the model allows for "adequate" recovery of increased fuel

costs.  Rausser Reply Rep. at 72, Fig. 11.  This calculation is misleading.  It relies on a mismatch

in the way Dr. Rausser calculates fuel costs and fuel cost recovery.

In Dr. Rausser's Figure 11, "Fuel Cost Recovery" is calculated based on changes in rates

per *revenue* ton-mile, whereas "Fuel Costs" are calculated based on changes per *gross* ton-mile.

---

[7]  Plaintiffs' argument that Defendants are improperly disaggregating a multi-dimensional
conspiracy, Pls.' Reply Br. at 6-7, is squarely contrary to *Behrend*.  *See Comcast Corp. v.
Behrend*, __ U.S. __, 133 S. Ct. 1426, 1430 (2013).  There, plaintiffs proposed four theories of
antitrust impact.  Three of those, while not necessarily meritless in an individual action, "could
not be determined in a manner common to all the class plaintiffs."  *Id*. at 1431.  The Supreme
Court held that the damages model "must measure only those damages attributable" to the fourth
theory, *i.e.*, the one theory accepted for classwide use by the district court.  *Id*. at 1433.  The
same is true here.  Having conceded that there was no classwide increase in the earning power of
the fuel surcharge formulas themselves, Plaintiffs must prove that Dr. Rausser's model, by itself,
offers common proof of impact to all class members consistent with their "coverage" theory.
*Behrend* squarely holds that plaintiffs cannot take two theories, neither of which individually
supports class certification, and assert that the combination of the theories somehow satisfies
Rule 23.  *Id*. at 1430 (rejecting the contention that plaintiffs need not "'tie each theory of
antitrust impact' to a calculation of damages").

Kalt Sur-reply Decl. at 3.  This is not an inconsequential error.  Because Figure 11 compares (a) fuel cost on a per ton-mile basis to (b) fuel cost recovery on a per ton-mile basis, it is crucial to use the same measure of ton-miles in both calculations.  *The Defendant railroads have roughly twice as many gross ton-miles as revenue ton-miles.*[8]  *Id.*  Thus, if we calculate changes in the railroads' fuel costs per revenue ton-mile as Dr. Rausser did to prepare Figure 11, the changes in fuel costs per revenue ton-mile are roughly double those costs calculated on a gross ton-mile basis.  Not surprisingly, Dr. Rausser's apples-to-oranges comparison finds "adequate" fuel cost recovery.  Dr. Kalt demonstrates, however, that when Defendants' fuel costs and estimated fuel cost recovery are calculated on a consistent apples-to-apples basis, using revenue ton-miles, the model does not allow Defendants to recover their fuel costs.  *Id.* at 3-6 & Fig. SR-1.

Plaintiffs and Dr. Rausser also try to excuse the model's failure to allow for adequate fuel cost recovery by arguing that Defendants would *not* have fully passed through their higher fuel costs because this "*generally does not happen*" in the industry.  Pls.' Reply Br. at 16 (emphasis added); Rausser Reply Rep. at 63-64.  Plaintiffs reason that because Defendants do not "fully pass through every cost increase," it is plausible to assume that the ██████████████████ ██████████████████  Pls.' Reply Br. at 16.  Plaintiffs' only support for this new theory are a few misleading citations, in a footnote, to statements from industry executives that the railroads "price to the market" and do not engage in "cost-plus pricing."  *Id.* at 16 n.72.  These statements have nothing to do with whether Defendants increase prices to recover increased

---

[8]  Revenue ton-miles reflect only (i) the tons of a shipper's cargo (*i.e.*, excluding the weight of the railcars and locomotives) and (ii) the miles from origin to destination (*i.e.*, without accounting for returning empty equipment to origination points, etc.).  In contrast, gross ton-miles account for (i) the tons of a shipper's cargo plus the weight of the railcars and locomotives and (ii) all of a railroad's miles, including those associated with empty equipment return.

costs.  They merely indicate that Defendants base their prices on multiple factors including costs

(as most firms do).  They do not establish that Defendants would not have passed on their

soaring fuel costs during the Class Period.  More importantly, this new argument contradicts

Plaintiffs' and Dr. Rausser's long-standing admissions that Defendants would have recovered

their incremental fuel costs in the absence of a conspiracy.[9]  They cannot now retreat from these

critical admissions.

### III. The Over ████████ Shipments with Negative "Damages" and ████████ of Uninjured Shippers Demonstrate the Unreliability of Dr. Rausser's Model

The D.C. Circuit held that predominance requires a "reliable means of proving classwide

injury in fact" and "common evidence, that all class members were in fact injured."  *D.C. Cir.*

*Op.*, 725 F.3d at 252, 253.  On remand, Dr. Kalt established that Dr. Rausser's model fails those

requirements because it produces over ████████ shipments with negative "damages"

and ████ of uninjured shippers, even though they *all* allegedly paid supra-competitive, rate-

based fuel surcharges on every class shipment.  Kalt Remand Decl. at 46, Fig. 13.

In their reply papers, Plaintiffs and Dr. Rausser do not dispute that Dr. Rausser's model

finds widespread negative "damages"—*i.e.*, it predicts that Defendants would have charged a

"but for" price *higher* than the price Defendants actually charged—for ████%[10] of all class

shipments (at least ████ shipments), which account for more than ████ of class revenues.

---

[9]  O'Mara Decl., Ex. 13 (Rausser Dep., Dec. 11, 2012) at 31:18-22 ("Q: So you would expect in your counterfactual world that the defendants would also recover their incremental fuel costs through some variety of mechanisms, is that right?  A:  Yes."); O'Mara Decl., Ex. 2 (Tr. of Class Certification Hr'g, Oct. 7, 2010) at 309:13-18 (Mr. Hausfeld:  "Yeah, fuel costs were going up. They were going nuts.  No one here in this litigation or anywhere else has said that a company cannot recover its legitimate increase in costs.").

[10]  The range reflects the disagreement among the experts on whether to use Dr. Kalt's method or Dr. Rausser's method for ████████████████████████████ used by Dr. Rausser. The issue is "highly technical," as Dr. McClave puts it, McClave Reply Rep. at 29, but the resulting percentages of uninjured shipments are very high under either method.

Pls.' Reply Br. at 33; Rausser Reply Rep. at 109-11.  That Dr. Rausser's model produces

negative "damages" for such a large percentage of class shipments and class revenues

demonstrates that it is fundamentally unreliable.  The widespread negative "damages" are

entirely inconsistent with Plaintiffs' theory of impact and damages—that Defendants' rate-based

fuel surcharges always generated supra-competitive rates during the Class Period.

Dr. Rausser tries to dismiss the widespread negative "damages" his model produces by

claiming that they are "consistent with an acceptable rate of prediction error."  Rausser Reply

Rep. at 104.  In other words, Dr. Rausser argues that these results are unreliable *errors* in the

"but-for" prices predicted by the model.  This admission by Dr. Rausser establishes that the

model is not reliable evidence of *classwide* impact, because it cannot reliably assess injury for

about ██████ *of class shipments* and more than ████ *class members*.

Moreover, the "prediction error" argument is a rhetorical straw man.  The relevant

question in assessing the reliability of this model is *how large* the prediction errors are relative to

the effect that the model is trying to estimate.  Critically, the difference (or variance) between the

actual prices paid by shippers in the real world and Dr. Rausser's best attempt to model those

prices is often very large.  When Dr. Rausser tries to use his model to predict individual "but-

for" non-conspiratorial prices, those predicted "but-for" competitive prices are much *higher* (in

some cases more than ██ higher) than the amount shippers actually paid during the Class

Period.  Kalt Sur-reply Decl. at 37-40 & Fig. SR-9.

Dr. Kalt's examination of the class representatives, ████████████████

demonstrates how far Dr. Rausser's results are from "normal" prediction error.  Figure SR-9

plots the differences between (a) actual transportation rates for ████████████ class shipments

and (b) the but-for rates for those shipments predicted by Prof. Rausser's STB model.  *Id*.  Dr.

Rausser's model finds *negative* "damages" for ████ of ███████████ class shipments, an output from the model that is impossible to square with Plaintiffs' theory of impact and damages. *Id.*

Similarly, Figure SR-9 also shows that out of more than █████ class shipments made by ███████████████████████████ Dr. Rausser's STB model predicts that ████ have negative "damages." *Id.* Moreover, the model generates positive and negative damages for ████ ████████ *made under the same fuel surcharge formulas in the same time period.* For example, the model predicts negative "damages" for just under ████ of █████████ class shipments made solely under Union Pacific's █████████████████████ fuel surcharge formula. *Id.* at 38 n.108. As Dr. Kalt shows, the ██████████████████████████████████ ████████████████████████████████████████████ ██████████████████. *Id.* It simply makes no sense under Plaintiffs' theory that ████ ████████████████████████████████████████████ ████████████████████████████ And yet that is what Dr. Rausser's model predicts, outputs that are impossible to square with Plaintiffs' allegations about common impact and damages, in violation of *Behrend* and the D.C. Circuit's decision. *Behrend*, 133 S. Ct. at 1433 (model "must be consistent with [plaintiffs'] liability case") (citation and quotations omitted); *D.C. Cir. Op.*, 725 F.3d at 253 ("Predicating class certification on a model divorced from the plaintiffs' theory of liability. . . indicates a failure to conduct the rigorous analysis demanded by Rule 23.").[11]

---

[11] Dr. Rausser offers the unsupported argument that uninjured shipments are outliers from the "tails of the probability distribution" and are outside of a "95% prediction interval." Rausser Reply Rep. at 108. Dr. Kalt tested that proposition by excluding the model's results at the very high and low ends, focusing only on shipments within the 95% prediction interval. Dr. Kalt

*(Cont'd on next page)*

Dr. Rausser also incorrectly argues that the Court should disregard the model's pervasive finding of negative "damages" because the more than ▉ shippers with negative "damages" for all of their shipments purportedly account for only a small percentage (▉) of total class shipments. Rausser Reply Rep. at 115. There are two flaws in this argument. First, Dr. Rausser's model ▉

▉.[12] As shown above, the but-for prices that the model predicts demonstrate its unreliability—the model predicts negative "damages" for an astounding ▉ *of all Class shipments*, which establishes the model's inability to identify and measure the effects of the claimed conspiracy.

Second, even at the shipper level, Plaintiffs and Dr. Rausser do not dispute that Dr. Rausser's model predicts that ▉ of class members (▉, out of about 16,000 class members)[13] had only negative "damages." This result is fatal to Plaintiffs' motion: under the D.C. Circuit's decision, Plaintiffs have the burden to show by common proof that "all" members of the class were injured, and this model, taken at face value, does not meet that burden.[14]

In short, there are only two possible interpretations of the model's prediction of

---

*(Cont'd from previous page)*

finds essentially the same results, with the STB model showing negative "damages" for more than ▉ of shipments (over ▉) accounting for over ▉ of revenue for the shipments within that interval. Kalt Sur-reply Decl. at 40-42 & Fig. SR-10.

[12] Rausser Expert Rep., Oct. 15, 2012, at 171; O'Mara Decl., Ex. 15 (Rausser Merits Dep., Dec. 18, 2012) at 436:2-437:16.

[13] *Compare* Kalt Remand Decl. at 45-51 & Figs. 13, 14, *with* Pls.' Reply Br. at 31-34; Rausser Reply Rep. at 115-16 & Tbl. 27.

[14] *See D.C. Cir. Op.*, 725 F.3d at 252; *see also In re Photochromic Lens Antitrust Litig.*, 2014 WL 1338605, at * 23 (M.D. Fla. Apr. 3, 2014) (holding a model showing only 86% to 90% of class members were injured could not satisfy predominance).

widespread negative "damages":  the model is either unreliable or it shows that large portions of the putative class were *not* injured.  Defendants maintain that the proper conclusion is that Dr. Rausser's model is fundamentally flawed, but under the D.C. Circuit's standard, either scenario is fatal to Plaintiffs' attempt to certify a class.

## IV.    Dr. Rausser's Model Predicts False Positive Damages for Pre-Class Shipments

The D.C. Circuit defined false positives as a showing of "injury where none could exist." *D.C. Cir. Op.*, 725 F.3d at 252.  On remand, Dr. Kalt presented various tests that detect injury in situations where "none could exist."  One test proves that Dr. Rausser's model predicts widespread damages on shipments that occurred entirely *before the conspiracy* was allegedly formed.  In response, Dr. Rausser offers several new arguments that attempt to deal with this false positive.  Not one is correct.

Dr. Rausser first dismisses the results as irrelevant because "[t]here is no allegation or evidence of conspiracy focused on FSCs for shipments traveling in most of the pre-Class Period."  Rausser Reply Rep. at 88.  But that is precisely why this test *is* relevant.  Testing for overcharges where there should be none is exactly what the D.C. Circuit instructed the parties to do—and what Dr. Rausser refuses to do.  *D.C. Cir. Op.*, 725 F.3d at 252-53.

Dr. Rausser next argues that the test employs "too little data and produce[s] unreliable results," a refrain that appears throughout his report.  Rausser Reply Rep. at 94.  This flatly misrepresents the most basic rules of statistics.  Dr. Kalt's pre-Class Period tests use a minimum of ▮▮▮▮▮ transactions, and in most cases ▮▮▮▮▮▮ transactions.  Such datasets are *very large* by any statistical measure.  Kalt Sur-reply Decl. at 26-27 & Fig. SR-6.  In any event, the "reliability" of a result is measured by tables of statistical confidence.  Those tables *always* take the number of data points into account *before* assessing the "reliability" of the results.

14

Therefore, when Dr. Kalt reports his results at a "99%" confidence level, that finding confirms that there is sufficient data for the analysis performed. *Id*. at 27.

Finally, in an attempt to avoid conceding that his model produces pre-conspiracy overcharges, Dr. Rausser notes that the ████████████████████████████████ ████████████████████████████████████ Rausser Reply Rep. at 90. This is misleading. As Dr. Rausser has explained, his model ███████████████████████ ████████████████████████████ *Id*. at 22-23. And, as Dr. McClave stated unequivocally, "the ██████████ have to be considered as a unit." Taylor Decl., Ex. 64 (McClave Expert Report, June 12, 2013) at 27. Taking this very same approach and reading the ██████████████████ Dr. Kalt now finds—and Dr. Rausser does not dispute—that the model produces *positive* "damages" for pre-Class Period shipments.

These findings of "damages" well before the alleged conspiracy are undeniably false positives that render Dr. Rausser's model unreliable. When addressing the question of legacy false positives, the D.C. Circuit stated that "[a]s things stand, we have no way of knowing the overcharges the damages model calculates for class members is any more accurate than the obviously false estimates it produces for legacy shippers." *D.C. Cir. Op.*, 725 F.3d at 254. The D.C. Circuit's reasoning remains true today.

15

Dated:  July 21, 2014                              Respectfully submitted,


_____/s/ Daniel M. Wall_____

Daniel M. Wall                                     Tyrone R. Childress
Timothy L. O'Mara                                  David G. Meyer
Christopher B. Campbell                            JONES DAY
LATHAM & WATKINS LLP                               555 South Flower Street, 50th Floor
505 Montgomery Street, Suite 2000                  Los Angeles, CA  90071-2300
San Francisco, CA  94111                           Telephone:   (213) 489-3939
Telephone:   (415) 391-0600

                                                   Alan M. Wiseman (D.C. Bar No. 187971)
J. Scott Ballenger (D.C. Bar No. 465252)           Thomas A. Isaacson (D.C. Bar No. 376959)
LATHAM & WATKINS LLP                               COVINGTON & BURLING LLP
555 Eleventh Street, NW, Suite 1000                1201 Pennsylvania Avenue, NW
Washington, D.C. 20004                             Washington, DC  20004-2401
Telephone:  (202) 637-2200                         Telephone:  (202) 662-6000

*Attorneys for Defendant Union Pacific Railroad Company*



_____/s/ John M. Nannes_____          Saul P. Morgenstern
John M. Nannes (D.C. Bar No. 195966)               Jennifer B. Patterson
Tara L. Reinhart (D.C. Bar No. 462106)             Amanda C. Croushore
Sean M. Tepe (D.C. Bar No. 1001323)                KAYE SCHOLER LLP
SKADDEN, ARPS, SLATE,                              425 Park Avenue
  MEAGHER & FLOM LLP                               New York, NY 10022
1440 New York Avenue, N.W.                         Telephone:   (212) 836-8000
Washington, DC  20005
Telephone:  (202) 371-7000                         Claudia R. Higgins (D.C. Bar No. 940288)
                                                   KAYE SCHOLER LLP
                                                   901 Fifteenth Street, NW
                                                   Washington, DC 20005
                                                   Telephone:   (202) 682-3500

*Attorneys for Defendant Norfolk Southern Railway Co.*

_____/s/ Veronica S. Lewis_____

Randy M. Mastro
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  (212) 351-4000

Theodore J. Boutros, Jr.
GIBSON, DUNN & CRUTCHER LP
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:  (213) 229-7000

Joshua H. Soven (D.C. Bar No. 436633)
Andrew S. Tulumello (D.C. Bar No. 468351)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC  20036
Telephone:  (202) 955-8500

Veronica S. Lewis
Robert C. Walters
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201
Telephone:  (214) 698-3100

Samuel M. Sipe, Jr. (D.C. Bar No. 256446)
Linda Stein (D.C. Bar No. 376217)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Telephone:  (202) 429-3000

*Attorneys for Defendant BNSF Railway Company*

_____/s/ David D. Cross_____

Kent A. Gardiner (D.C. Bar No. 432081)
Kathryn D. Kirmayer (D.C. Bar No. 424699)
Shari Ross Lahlou (D.C. Bar No. 476630)
David D. Cross (D.C. Bar No. 490187)
Luke van Houwelingen (D.C. Bar No. 989950)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:  (202) 624-2500

*Attorneys for Defendant CSX Transportation, Inc.*

17

**CERTIFICATE OF SERVICE**

I, Veronica S. Lewis, hereby certify that, on July 21, 2014, I caused a true and correct copy of the foregoing Defendants' Sur-reply Memorandum to be filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to counsel for all parties.

     /s/ Veronica S. Lewis     
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201
Telephone:     (214) 698-3100
