# Exhibit 107

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE | ) | MDL Docket No. 1869 |
| ANTITRUST LITIGATION | ) | Misc. No.07-489(PLF) |
| This Document Relates To: | ) | |
| DIRECT PURCHASER CASES | ) | |
| | ) | |

HIGHLY CONFIDENTIAL

VIDEOTAPED DEPOSITION OF GORDON RAUSSER, Ph.D.

San Francisco, California

Wednesday, March 5, 2014

VOLUME II (Pages 310 - 547)

Reported by:
JANIS JENNINGS
CSR No. 3942, CLR, CCRR
Job No. 48896

Page 379

this particular litigation. And subsequently it was subpoenaed and I got it much later than when I requested it. And as soon as I got it, I incorporated it which you see in my merits reply report.
Q. Okay. Well, we'll get to talk about all of that in some greater detail in a minute.
Bottom line, as you sit here today, you have more confidence that the [redacted] estimate is more -- strike that.
You think the [redacted] estimate of class-wide damages is likely to be more accurate than the [redacted] estimate of class-wide damages?
A. Yes. I've already said that, haven't I?
Q. You did. Okay.
Now, when you calculate individual damages in this matter, which model are you planning on using --
MR. WERDER: Objection.
BY MR. SOVEN:
Q. -- the original model or the model in which you incorporate the STB data?
MR. WERDER: Object to form.
THE WITNESS: When you say when I compute,

Page 380

that's not part of my assignment. I haven't been asked to compute individual damages.
But if so, then quite obviously if I end up having more confidence recognizing, as I point out in my reply report, there is an issue with regard to using any econometric model for estimating individual damages, and that goes to my discussion that takes place with regard to prediction errors.
BY MR. SOVEN:
Q. Yeah. Stop.
A. But -- no, I'm not going to stop because you asked me the question.
Q. I asked you which model you were using to calculate individual damages and --
A. Going forward?
Q. Going forward.
A. Not going back, because we've already established --
Q. Right.
A. -- that I computed it for the named plaintiffs. And there I didn't have the model incorporating both sets of data. And I used the original model, which is I gather what you're referring to as the [redacted], I used that model to do that computation.

Page 381

But with regard to going forward, if I have the most confidence, as I do in the class-wide measure, incorporating -- using the same model but incorporating the two sets of data, I would use that model for computing the individual -- yeah.
Q. Well, you testified yesterday that you're currently in the process of calculating damages for individual shippers.
A. I don't recall that testimony. Do you want to point it out to me? I'd like to see it.
Q. I'll ask a better question.
Are you currently in the process of calculating damages for individual shippers?
A. I certainly have looked at it with regard to individual shippers. As I already represented, I looked at the work of Dr. Kalt. He represents that [redacted] had no damages or negative damages, and I pointed out that that analysis is faulty, and if you correct it, it's only [redacted]. But that's including all class members.
As we see in Dr. McClave's work, using my model he finds once he [redacted] he gets virtually all positive damages.

Page 382

Q. Right. And all of that's terrific but completely nonresponsive.
Going forward, which model do you intend to use to calculate damages for individual shippers?
A. With regard to my analysis going forward, I expect to use not only the model that I have already used for looking at the named plaintiffs, but as well the STB data-incorporated version of my model.
Q. Let's be precise. Do you intend to use both models or the STB version model to calculate damages for individual shippers?
A. For what purpose?
Q. For the purpose of figuring out whether individual shippers were harmed by the alleged conspiracy.
A. I will obviously do both. But when it comes to the underlying confidence, I will, as I have already represented to you, place more confidence in the results with regard to incorporating in my model the STB data.
Q. And at trial when you testify, which model are you going to present?
MR. WERDER: Assumes facts not in evidence.
MR. SOVEN: I'll withdraw the question.
THE WITNESS: You say at trial which am I

Page 383

going to present? I may present both.
Let me back up. With regard to peer reviewed, if I were submitting this paper for peer review, I would present both. And I would explain the difference between the data sets used for the same model and I would explain what the results were, not only in terms of the class-wide damages but the individual damages. I would report both.
Now, in that forum given my experience as an editor and a reviewer --
BY MR. SOVEN:
Q. Yeah. But --
A. -- reviewers would appreciate that. And I would expect to do so if asked by counsel to present that same thing at trial.
Q. All right. My apologies for the repetition. As you sit here today, you have more confidence in the accuracy of the STB version of the model both for calculating class-wide damages and for calculating damages to individual shippers?
A. It would be inconsistent to estimate it with more confidence for class-wide and not also do so for individuals.
Q. So the answer to my question is yes?
A. Basically, yes. But as I said, I would

Page 384

present both.
Q. At trial?
A. By the way --
MR. WERDER: At trial he's going to present what counsel asks him to present, Josh. And we're not at trial yet.
MR. SOVEN: That's a fair point.
BY MR. SOVEN:
Q. Are you currently working on -- you characterized sort of version 2 as the STB version of the damages model. Is there currently a version 3.0 of the damages model underway?
A. No.
MR. WERDER: Object to the form to the extent it implies that the STB data creates a version 2.0 model.
THE WITNESS: It's not a 2.0 model. It's -- as I've indicated, it's precisely the same model incorporating another bit of information and data.
BY MR. SOVEN:
Q. All right. Can you turn to page 223 of your reply report.
A. 223?
Q. Yeah.
A. I'm there.

Page 385

Q. Okay. With apologies for the repetition. It's necessary for transition.
I understood your answer to Mr. Cross' question to be that every shipper who paid a rate-based FSC in the class period paid prices that were higher than they would have been in the but-for world; is that correct?
MR. WERDER: Objection.
THE WITNESS: Now you're going to individual damages.
BY MR. SOVEN:
Q. Well, yeah.
A. And as I've already told you, I've only done that work with regard to the named plaintiffs.
I've seen the work of Dr. McClave and the work of Dr. Kalt, and their work, once Dr. Kalt's work is corrected, verge in recognizing the sparse data for some shippers, the evidence is overwhelming that, yes, indeed each and every shipper is going to be damaged.
But does that -- does that follow then your question about, what, the price is going to be higher than the but-for price? Is that what you're saying?
Q. All right. Well --

Page 386

A. Certainly given my methodology -- and, by the way, I'll put something on the record right now. Dr. Kalt represents that I've presented two methodologies --
Q. Stop. Stop.
A. No, I'm not going to stop. You're asking me a question about --
Q. Dr. Rausser, you really will get to talk at length but it's got to be slightly in the ballpark of my question.
A. Okay. Fair enough.
Q. Okay. All right. Look, I understood you said to Mr. Cross that every shipper who paid a rate-based FSC during the class period was harmed by alleged conspiracy. Is that correct?
A. I didn't say "every shipper." I said that the Other category -- he was asking me about the Other category, if I understood it. I certainly represented that those legacy -- you're asking me about legacy contracts now?
Q. I'm not asking. I'm not distinguishing. I'm saying: Legacy or not legacy, isn't it the case that every shipper who paid a rate-based FSC in the class period was harmed by the alleged conspiracy?
A. That's an individual damage question.