IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


IN RE:     RAIL FREIGHT FUEL
           SURCHARGE ANTITRUST
           LITIGATION — MDL NO. 1869     MC No. 07-489

                                         Washington, DC
                                         October 2, 2014
                                         11:00 a.m.


_____/




                TRANSCRIPT OF STATUS HEARING
        BEFORE THE HONORABLE PAUL L. FRIEDMAN
              UNITED STATES DISTRICT JUDGE




APPEARANCES:

For Class Plaintiffs:          Michael D. Hausfeld, Esquire
                               Sathya S. Gosselin, Esquire
                               Seth R. Gassman, Esquire
                               HAUSFELD LLP
                               1700 K Street, NW
                               Suite 650
                               Washington, DC 20006
                               (202) 579-1089
                               mhausfeld@hausfeldllp.com

                               Stephen R. Neuwirth, Esquire
                               QUINN EMANUEL
                               51 Madison Avenue
                               22nd Floor
                               New York, NY 10010
                               (212) 849-7000
                               Fax: (212) 849-7100
                               stephenneuwirth@quinnemanuel.com

For the Defendant             Daniel M. Wall, Esquire
  Union Pacific:              Timothy L. O'Mara, Esquire
                              LATHAM & WATKINS
                              505 Montgomery Street
                              Suite 2000
                              San Francisco, CA 94111-2562
                              (415) 395-8240
                              Fax: (415) 395-8095
                              Dan.Wall@lw.com


For Defendant CSX:            David D. Cross, Esquire
                              Kent Alan Gardiner, Esquire
                              CROWELL & MORING, L.L.P.
                              1001 Pennsylvania Avenue, NW
                              Washington, DC 20004-2595
                              (202) 624-2578
                              Fax: 202-628-5116
                              kgardiner@crowell.com
                              dcross@crowell.com


For Defendant Norfolk        John Murray Nannes, Esquire
    Southern:                Tara L. Reinhart, Esquire
                             SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM, LLP
                             1440 New York Avenue, NW
                             Washington, DC 20005-2111
                             (202) 371-7500
                             Fax: (202) 661-9191
                             john.nannes@skadden.com

For Defendant BNSF:          Veronica S. Lewis, Esquire
                             GIBSON, DUNN & CRUTCHER LLP
                             2100 McKinney Avenue
                             Suite 1100
                             Dallas, TX 75201-6912
                             (214) 698-3320
                             Fax: (214) 571-2900
                             vlewis@gibsondunn.com

Court Reporter:              Lisa M. Foradori, RPR, FCRR
                            Official Court Reporter
                            U.S. Courthouse, Room 6706
                            333 Constitution Avenue, NW
                            Washington, DC  20001
                            (202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                    P R O C E E D I N G S
 2              COURTROOM DEPUTY:  Miscellaneous Case 07-489.  In
 3    Re:  Rail Freight Surcharge Antitrust Litigation.
 4              Counsel, please identify yourselves for the record.
 5              MR. HAUSFELD:  Good morning, Your Honor, Michael
 6    Hausfeld for the cross-plaintiffs.
 7              MR. NEUWITH:  Good morning, Your Honor, Stephen
 8    Neuwirth, Quinn Emanuel, for the plaintiffs.
 9              MR. GASSMAN:  Good morning, Your Honor, Seth
10    Gassman from Hausfeld for the plaintiffs.
11              MR. GOSSELIN:  Good morning, Your Honor, Satya
12    Gosselin from Hausfeld for the plaintiffs.
13              MR. WALL:  Good morning, Your Honor, Dan Wall,
14    along with Tim O'Mara, from Latham & Watkins for Union
15    Pacific.
16              MS. LEWIS:  Good morning, Your Honor, Veronica
17    Lewis from Gibson, Dunn for BNSF Rail.
18              MR. NANNES:  Good morning, Your Honor, John Nannes
19    for Norfolk Southern Railway Company.
20              MR. GARDINER:  Your Honor, Ken Gardiner, Crowell &
21    Moring for CSX.
22              MR. CROSS:  Good morning, Your Honor, David Cross,
23    Crowell & Moring for CSX Transportation.
24              THE COURT:  And everybody else is associated with
25    one or another of the defendants.  So, yesterday Mr. Hausfeld
```

1    called on behalf of both sides, as I understood it, and asked

2    for a -- that we get together and it be done under seal.  He

3    originally asked for a chambers conference, and I said, well,

4    how many people are going to be there?  And I quickly

5    concluded it would be too large for chambers.

6           So, I didn't put anything on the docket, I just

7    asked the courtroom deputy, Ms. Moon, to list it as a sealed

8    civil matter.  And we can keep the notes of -- the reporter's

9    notes under seal and she won't make a transcript unless and

10   until I tell her to.  But, other than that, I don't know why

11   we're here.

12          MR. WALL:  Your Honor, just to clarify --

13          THE COURT:  You need to speak in the microphone,

14   Mr. Wall.

15          MR. WALL:  Just to clarify, we were advised

16   yesterday that this hearing had been scheduled.  It wasn't --

17   counsel didn't call on behalf of both parties, he called on

18   behalf of plaintiffs.  We found out later on that it was going

19   to be sealed.  We don't understand the basis for sealing it.

20   We don't agree that it should be sealed.  We know what it's

21   about because we've talked to the counsel in the interim.  And

22   I can understand why they would want it private, but the

23   standards for what one might want private or sealed are not

24   the same.  So, I just want that on the record.

25          THE COURT:  Mr. Hausfeld.

1          MR. HAUSFELD:  Good morning, Your Honor.  It has

2    recently come to our attention -- first, Your Honor, let me

3    thank you on behalf of the plaintiffs, as well as, I think, of

4    the defendants, for accommodating us on such short notice.

5    And I think, as you will see, there is no disagreement in --

6    once the defendants have learned the nature of what is it that

7    we're about to address, that they, too, agree that the matter

8    that we're about to present to the Court should be considered

9    favorably by the Court.  And, that is, that it has recently

10   come to our attention that there is a serious issue concerning

11   potential conflict of interest on behalf of our plaintiff,

12   Gordon Rausser, in this matter.

13          THE COURT:  On behalf of what?

14          MR. HAUSFELD:  Our expert, Gordon Rausser, in the

15   course of this matter.  It appears -- and the defendants will

16   prepare to raise the issue that Dr. Rausser had an interest,

17   both economically and/or otherwise in equity, in a company

18   that either purchased or represented entities that otherwise

19   would have been opt-out claimants in the Rail Litigation, and

20   that was undisclosed.

21          When we first learned about it, pursuant to

22   subpoenas issued by the defendants for documents from

23   OnPoint, Dr. Rausser's company, as well as Dr. Rausser.  We

24   had an independent investigation or review of the documents

25   that were requested.  There are other companies that were

1    subpoenaed as well.  We have produced the documents that have

2    been requested.  The other company that has been subpoenaed

3    has not yet produced the documents, as far as we know.

4              THE COURT:  Subpoenaed by whom?

5              MR. HAUSFELD:  Subpoenaed by the defendants.

6              THE COURT:  Okay.

7              MR. HAUSFELD:  We have -- this has just arisen.  We

8    have not had an opportunity to fully absorb the complexities

9    of the transactions involved between Dr. Rausser, his company,

10   and this company acquiring opt-out shipper rail claims called

11   Cascade.

12             We have not had any opportunity to see the

13   documents of this other company that has yet been subpoenaed,

14   and we feel -- we feel and felt that in light of the

15   seriousness of the matter and of the seriousness in which we

16   are taking the matter, that this could become a distraction or

17   unnecessary diversion to the class certification hearing

18   scheduled for Monday.  And we were going to request an

19   opportunity to have that hearing adjourned to give us the time

20   in order to fully evaluate the materials produced, interview

21   the individuals who may be associated with this, so that we

22   have a fuller and more meaningful understanding of what

23   occurred and what consequences and implications are raised by

24   this issue.

25             We have spoken to the defendants about this.

1   We feel that there should be a target date for a rescheduled

2   hearing, if convenient with the Court's schedule.  We're

3   looking at some time in November, if that works.  And in the

4   interim, both the plaintiffs and the defendants will use that

5   time to apprize themselves of all of the information that

6   needs to be had with regard to this issue.

7          THE COURT:  Okay.  Mr. Neuwirth, do you want to add

8   anything?

9          MR. NEUWITH:  No, I think Mr. Hausfeld has fully

10  covered it.  And I would just add that I think that the reason

11  that the proposed adjournment makes sense is so that, given

12  the nature of the issues and the seriousness of them, there is

13  an opportunity to assess what is the appropriate -- what are

14  the appropriate steps, if any, to take in response to what

15  we've learned already.

16         THE COURT:  Okay.  Mr. Wall.

17         MR. WALL:  So, needless to say, this is not

18  ordinary, and it is all quite shocking.  I think that we want

19  to proceed here in two steps, if it's okay with Your Honor.

20  We have a position, of course, on what we should do as a

21  result of this, albeit, one that's been formed in the last

22  16-17 hours.  But I think that there's a lot more to this than

23  a question of an undisclosed conflict of interest.

24         So, with Your Honor's permission, I think that I

25  would like to turn over, for a moment, to Mr. Cross

1    representing CSX, who can give you a summary of just what we

2    found in the document production that we received yesterday.

3              MR. CROSS:  Good morning, Your Honor.  I think it's

4    fair to say that we feel like at this point we're still a

5    little bit at the tip of the iceberg.  We're just starting to

6    learn these facts.  We've started to try to go through the

7    documents, they're a bit dense, complicated, a lot of security

8    notes and things of that sort.

9              So, I'm just going to give Your Honor a few of the

10   highlights, but I wanted to start with the background just to

11   let Your Honor know how we got to where we are.  We had reason

12   to believe, before going into a July deposition of Professor

13   Rausser, that he may have some financial interest, ownership

14   interest or something like that, in a company that was buying

15   claims in this litigation, and that company is called Cascade

16   Settlement Services.

17             There's another company -- used to be another

18   company called Spectrum, that has, as we understand it, merged

19   with Cascade Settlement Services, they're now one company.

20   And Spectrum, we knew, had been buying or at least soliciting

21   claims in this litigation.  In the deposition on July 31st of

22   this year, I asked Professor Rausser some questions about

23   this, and in particular, just to give Your Honor the context,

24   again, of where we are.  I asked him whether he was familiar

25   with a company called Cascade Settlement Services.  He said

1   Yes.  How do you know them?  I know them because of the

2   principals that exist at Cascade, many years ago they started

3   another firm.  He goes on to say:  My company, in fact, at

4   that point -- his company is OnPoint Analytics.

5            THE COURT:  His company is called what?

6            MR. CROSS:  OnPoint Analytics.

7            THE COURT:  All right.

8            MR. CROSS:  He talks about they have done some

9   work.  So, I then asked him:  Is there any formal relationship

10  between OnPoint Analytics and Cascade Settlement Services?

11  His answer was:  No.  He said they had done some work in the

12  past.  The questions that really matter are these two, Your

13  Honor.  The next question was:  So, OnPoint Analytics does not

14  have any ownership or other financial interest in Cascade

15  Settlement Services?  He said:  No.  I said:  Do you?  He

16  said:  No.

17            I said:  Do you or OnPoint Analytics have any

18  ownership or financial interest in any company that has

19  purchased claims in this case?  And he said:  No.  Candidly,

20  Your Honor, at that point we thought there wasn't really

21  anything to this, we were prepared to move on.  Fast forward

22  to August 28th, and we receive a deposition errata from the

23  plaintiffs.  The bulk of it is pretty typical errata, and then

24  you get to the last part, and to the question that I had just

25  read to Your Honor about whether he has any financial

1    interest.  He keeps the No, but he adds a But.  So the answer

2    becomes:  No, I don't have ownership interest or -- ownership

3    or financial interest in Cascade Settlement Services as a

4    company.  I do, however, have the right to share in

5    distributions from certain claims they manage, but those do

6    not include claims in this case or any other case in which I

7    am a testifying expert or OnPoint has performed any services.

8    That's what they added after the word No, and it's

9    characterized as a clarification.

10              This, of course, flagged the concern for us that

11   there was something more there.  That's when we served

12   subpoenas.  We got those subpoenas out within two weeks.  And

13   that's how we find ourselves where we are today, Your Honor.

14   Yesterday we received documents from the plaintiffs.  I'm just

15   going to give Your Honor a few of the highlights, as I said,

16   they are a bit dense.

17              We have not yet received documents from Cascade

18   Settlement Services, we did subpoena them.  We actually had

19   reached an agreement with them that they were going to produce

20   documents last Friday, once we had an additional protective

21   order entered.  Judge Facciola signed that order last Friday.

22   Unfortunately, I was later informed in the evening by their

23   counsel --

24              THE COURT:  I was at a baseball game, so --

25              MR. CROSS:  Well, we appreciate Judge Facciola

1  turning to it, Your Honor.  We learned that evening that the

2  plaintiffs' counsel reached out to them and asked them not to

3  produce any documents because they might challenge the

4  subpoena.  So, we don't yet have those yet, we're hoping to

5  get those today.

6          So, again, Your Honor, just the highlights and some

7  of the stuff we've learned on the documents that have come in.

8  And what we now know from the documents is not only was the

9  original deposition testimony not accurate, but as we now

10  know, the errata also was not accurate, because it seems clear

11  from what we have so far that there is a financial interest

12  that Professor Rausser has in Cascade Settlement Services.

13          Among the documents we have, Your Honor,

14  December 28th of 2012, Professor Rausser purchased a

15  promissory note.  He paid a million dollars to Cascade

16  Settlement Services for this.

17          THE COURT:  December what?

18          MR. CROSS:  I'm sorry.

19          THE COURT:  December what?

20          MR. CROSS:  December 28th of 2012.

21          THE COURT:  And one of the questions that's running

22  through my mind, there are many questions running through my

23  mind, and you probably don't have the answer to this at this

24  point.  How early was the relationship?  How early was the

25  financial relationship or his interest in any of this?

1  Because -- does it affect his -- it may affect his credibility

2  if he lied or dissembled in his deposition or even in the

3  errata.  But does it affect the credibility or quality of his

4  first reports two or three years ago that were the ones before

5  me when I decided the first class certification decision and

6  the one that the courts of appeals were looking at.

7          And I think that's a question that probably affects

8  how both sides would approach the state of the record at that

9  point, irrespective of what happened later in terms of his

10  financial interest and irrespective of what it does to his

11  credibility.  So that's -- I'm sure that's -- I'm not the

12  first one in the room to have thought of that.  And I take it

13  you're probably not in a position to know the answer at this

14  point.

15          MR. CROSS:  Not yet.  We do know that the

16  relationship between OnPoint Analytics and Cascade Settlement

17  Services goes back to at least 2010, they began doing some

18  consulting work for them.  And, Your Honor, interestingly

19  enough, it was only, I think, September 30th of this year,

20  literally just a couple of days ago, that OnPoint Analytics

21  decided to terminate their relationship with Cascade

22  Settlement Services.  So, we do know it goes back to 2010.

23          As to Professor Rausser's own financial interest,

24  again, we know that he paid a million dollars to Cascade for

25  the purpose of Cascade Settlement Services investing in

1    Spectrum.  Remember, these two companies eventually merged,

2    and we know that Spectrum was buying claims in the Rail

3    Freight Fuel Surcharge litigation.

4            In March of 2013, he took that promissory note, and

5    it looks like he converted it into a promissory note directly

6    with Spectrum, and he paid about $750,000 -- I'm sorry, about

7    $790,000 for that note.  There's another one in also the same

8    time where he purchases another note with Cascade Settlement

9    Services for about $150,000.

10           He also, Your Honor, has an ongoing consulting

11   relationship.  So, I talked about this a moment ago.  Since

12   December of 2010 he's been providing consulting services.  The

13   consulting agreement lays out, it's a pretty broad scope, but

14   the bottom line looks to be that they use him and OnPoint

15   Analytics to identify potential claims to invest in, how to

16   value those claims.  And he gets compensated in a variety of

17   ways, but essentially he gets a percentage of revenue.

18           And what concerns us, Your Honor, is his deposition

19   errata says that he segregates the revenue from claims where

20   he's testifying versus claims where he's not.

21           THE COURT:  How does he know?

22           MR. CROSS:  Well, that's our question, Your Honor,

23   we need more discover on that.  What we've seen so far is, if

24   you look at his consulting agreement and you look at these

25   promissory notes, what they all say is that the revenue he

1   receives, either compensation as a consultant or interest on

2   these promissory notes, comes from the cash flow that comes

3   into the company, most of them say across all funds.

4           So, in his compensation agreement, in particular,

5   he gets upwards of 17-percent of the revenue they bring in the

6   door on anything and everything.  There's no indication in the

7   agreement that it's somehow segregated.  He also gets a

8   7-percent distribution on anything he refers to them.  So, if

9   he tells them:  Here's something I think you should invest in,

10  and they invest in it, he gets 7-percent of anything that

11  comes in the door.

12          And of concern there, Your Honor, is we have an

13  e-mail from Professor Rausser to Cascade indicating -- and

14  this is May of 2013 -- he indicates that the Rail Freight

15  case, he refers to it as Rails -- it certainly looks to be

16  this case, is a case that he referred to them to invest in.

17          And just a couple other points, Your Honor.  One

18  point that I did want to make is, it also -- there's obviously

19  a credibility concern about the conflict of interest, but

20  another concern we have that we started to see in the

21  documents, Your Honor, is there are statements internal in the

22  dealings between OnPoint Analytics and Cascade that contradict

23  positions that Professor Rausser has taken in this case.  And

24  just to give Your Honor a couple of examples.  Your Honor will

25  recall that Professor Rausser has long maintained that fuel

1    surcharges going into the class period were designed not to

2    recover fuel costs but for the purpose of recovering

3    conspiratorial profits.

4           In an internal memo from OnPoint Analytics, this is

5    January of 2011, Your Honor, from someone named Gareth

6    Macartney, that works at OnPoint Analytics.  Mr. Macartney

7    writes:  The full surcharge programs were designed to recover

8    fuel costs due to fuel price increases over a specified

9    threshold.  And Gareth Macartney, Your Honor, has attended

10   every deposition of Professor Rausser in this case.

11          THE COURT:  Who is he?

12          MR. CROSS:  He works for OnPoint Analytics.  So,

13   we're not dealing with a situation where they created a wall

14   and had people not involved in the litigation dealing with

15   OnPoint Analytics.  Mr. Macartney was the person who seems to

16   be principally dealing with Cascade on the Rail Freight

17   litigation.  And, of course, he's also attending all of

18   Professor Rausser's depositions.

19          There are indications of a number of meetings or at

20   least multiple, more than one meeting in 2011, and it looks

21   like on into 2013 or 2014, where folks from OnPoint Analytics

22   are meeting with people from Cascade, and they're talking

23   specifically about the Rail Freight litigation.  There's an

24   e-mail, this is from 2011, I believe, where Cascade asked a

25   number of questions about the litigation, and OnPoint provides

1    a number of answers.

2           What's yet unclear to us, Your Honor, is to what

3    extent they are using the confidential information obtained in

4    this case to provide the services that they provide to Cascade

5    Services -- Cascade Settlement Services.  Of course, that's

6    one of the things that we'd like to figure out, Your Honor.

7           And I'll just close with the last couple of things.

8    Two other contradictions that we found, Your Honor, in the

9    document -- of course, one of the points that we have long

10   maintained in this case, and is at issue in class cert now, is

11   the appropriateness of using average overcharges.  And we've

12   pointed out that there are a lot of differences between the

13   railroads and shippers that matter.

14          In a memo that OnPoint Analytics prepared, and this

15   is in February of 2011, they point out that:  In Rail Freight,

16   claimed filing will be complex.  And they give a number of

17   examples, Your Honor, I won't go through all of them, but one

18   of them they point out is that contrary to the claims that

19   Professor Rausser has made in his reports, they say:  Fuel

20   surcharges were different in their underlying indexes, HDF or

21   WTI, thresholds and conversion formulas for different

22   railroads in different shipper categories, such as intermodal,

23   carload and coal.  As Your Honor may recall, that is a central

24   premise of our defense on class cert in many ways.

25          He also talks about the complexity of dealing with

1    interline shipments and how that would be a challenge dealing

2    with the claims at the class cert stage.  And ultimately he

3    says:  The estimated overcharge will vary by time, it was

4    greater when the price of oil was high.  And here is the

5    important part, Your Honor.  And may vary by shipper category,

6    such as intermodal, coal, et cetera, or some other dimension.

7    And, again, Your Honor, we believe that is inconsistent with

8    the position they have taken on overcharges.

9         Your Honor, I'll just close with these two things.

10   The last thing we see in the documents, and I'm not going to

11   walk through the specifics because I think we should move on.

12   There are e-mails in July of 2014 and August of 2014 where

13   Professor Rausser is receiving information specifically about

14   Cascade purchasing claims in the Rail Freight case, and there

15   are even evaluations associated with those particular claims.

16        And most interesting, Your Honor, is although

17   Professor Rausser said that he had no formal relationship or

18   financial interest in Cascade Settlement Services, we received

19   an organizational chart where he is actually listed on the org

20   chart with a dotted line, albeit, but he is listed on the org

21   chart with the title of Director of Analytics.

22        So, Your Honor, Mr. Wall is going to speak more to

23   this.  We do think it's going to be important to get more

24   discovery, and we'll talk about that later.  The last point

25   that I did want to make is, we do want to ensure that OnPoint

1    Analytics, Professor Rausser and the plaintiffs' counsel have

2    taken appropriate measures to preserve documents, because we

3    do think there will be additional discovery.  To be clear, I'm

4    not suggesting anyone has not, it is just a concern that we

5    want to make sure that those steps have been taken.

6    Obviously, this has just come to light, we're all dealing with

7    it.

8              Thank you, Your Honor.

9              THE COURT:  Okay.

10             MR. NEUWITH:  Your Honor, Mr. Wall agreed that I

11   could say one thing before he gets up, just very briefly.  Our

12   presentation, obviously, did not include a description of

13   these underlying documents, and these are documents that we've

14   recently become aware of.  We produced them all, everything we

15   have received, to the defendants.  And these are, obviously,

16   raising very serious issues for us as well.

17             And I just wanted to make clear that in requesting

18   the conference today, our purpose was to alert the Court to

19   what we have learned, and we're certainly prepared to answer

20   any questions.  I can assure you that Mr. Cross has not

21   identified every document that is troubling to us.  I'm not

22   sure that we would agree with some of the characterizations he

23   had of some of the substantive points he referred to.  But in

24   terms of the issues that raised troubling concerns for us,

25   these documents are there.  We just wanted to make clear to

1   the Court that if the Court has any questions that you want us

2   to answer today, we will do that.

3          THE COURT:  Well, first of all, on the document

4   preservation point, I'm sure that counsel is doing everything

5   they can to preserve the documents.

6          MR. NEUWITH:  Yes.

7          THE COURT:  And the next question is, what about

8   your clients and what about Mr. Rausser and his company?  Are

9   they aware of the -- I assume they're aware of the concerns

10  being raised.

11         MR. NEUWITH:  I think they are certainly aware

12  because they have had to produce these -- these subpoenas were

13  not to the plaintiffs, these subpoenas were to Dr. Rausser's

14  company.  And it was through the collection of documents that

15  was made in response to those subpoenas that we became aware

16  of these issues.

17         THE COURT:  Is he and/or his company, separately,

18  retained by counsel at this point.  I mean, are they just

19  producing documents to both sides pursuant to subpoena or

20  otherwise on their own, or are there --

21         MR. NEUWITH:  As of this initial production, to

22  my -- they have not advised us that they retained separate

23  counsel.  The production -- the documents were provided to the

24  lead counsel for the plaintiffs, and we made the production.

25  I couldn't tell you whether -- if Dr. Rausser has retained

1  separate counsel in connection with this, he hasn't told us

2  about it yet.

3          THE COURT:  Okay.

4          MR. WALL:  I'm not sure where to begin, but I think

5  I might want to begin with just following up and saying it

6  probably wouldn't be a bad idea if he got separate counsel at

7  this point.  I've got to add one thing to what Mr. Cross said

8  to just give you sort of a sense of where we are.

9          One of the things that we were going to talk about

10  at the class certification hearing is the fact that the

11  plaintiffs have now abandoned their pretenses of

12  individualized damages estimates and have just come right out

13  and said they're going to award average damages.  There's

14  actually a document in this case that was produced, which is

15  Dr. Rausser's own analysis of the Wal-Mart Supreme Court

16  decision, which contains the line:  Since the Hydrogen

17  Peroxide ruling, we know that we have to be careful with the

18  use of average comparisons when making arguments on common

19  impact.  Using averages may mask individual differences.

20          What's going on here is, he is a player in the game

21  of trying to buy class action claims cheap and selling them

22  high, you know, cashing them in.  And so he makes evaluations

23  of the strength and the weakness of class certification.

24  There's documents in here in which he advises Cascade not to

25  invest in this case because class certification is going to be

1    very hard, but to instead invest in the Visa/MasterCard

2    litigation because it's better.

3            He was asked about this.  There's no way his

4    original testimony is true.  There's no way.  I remember it

5    very distinctly because -- look, I was about to argue to you

6    on Monday that you should not have any faith in this man's

7    credibility, he is a champion dissembler.  He is a manipulator

8    of facts and an advocate to the extreme.  And taking his

9    deposition is like trying to catch the wind because of that.

10   But when Mr. Cross went to ask those questions, his demeanor

11   changed entirely.  And he very calmly -- I hope to show you

12   the video -- he very calmly told us that he had no financial

13   interest in Cascades, and that he knew them because of some

14   stuff they used to do, and it was all false.

15           And then the errata comes in and, obviously, he

16   thought about it.  We now get why he thinks he can get away

17   with it because he's making a distinction between whether he's

18   an owner of the company as opposed to a debt holder and a

19   consulting agreement and having a claim to distributions.

20   Nobody could find him a reliable witness after what we have

21   just found in the last 24 hours.  That, however, is not an

22   excuse to not finish the assignments that we were given by the

23   Court of Appeals and to resolve this case.

24           And, frankly, we are ready to go.  There are some

25   of us that the thought of moving this hearing a day

1  practically makes us ill.  But the most important value that

2  we feel about is that we need to finish this and we need to

3  finish it promptly and we need to finish it on this record.

4  We're here, as the plaintiffs have frequently reminded you, on

5  a mandate.  And that mandate says that if the Rausser model,

6  not somebody else's model, but the Rausser model, doesn't pass

7  muster under Behrend and under the false positives analysis,

8  the class certification must be denied.  And we want to get to

9  that as soon as possible.

10         So, what we're -- we're willing to move this into

11  November; that's okay.  But we want it -- and we understand

12  that the plaintiffs want to keep their options open.  And what

13  we've talked about is that within, say, two weeks, they would

14  come back and -- I guess we'd jointly come back, but it's

15  really they're coming back to let you know what they want to

16  do as a result of this.  But I'll tell you what we want to do

17  right now, which is, we want to finish this out, we want to

18  have the class certification hearing.

19         This is fundamentally a question of credibility.

20  Credibility is always an issue, it doesn't go away.  And,

21  certainly, there's no way that our -- that all the time and

22  the investment getting to this point, getting to where we're

23  ready to argue class certification can somehow be prejudiced

24  because it turns out that their expert is a guy who invests in

25  class action claims and tried to hide it from us.  That just

1   doesn't work.

2              So, we're willing to do that.  It's certainly

3   conditioned, and I don't think there's any dispute about this,

4   but we want unfettered, ultra fast track discovery of what's

5   going on here.  We got 300 pages yesterday, there's a lot in

6   it, but it raises a lot of other questions.  We're going to

7   get another production today.  And we will move heaven and

8   earth to get this done in time so we can back here to finish

9   this, as we all should finish it, in November.  Hopefully that

10  works with Your Honor's schedule.

11             MR. HAUSFELD:  Your Honor, if I may.  Clearly, it

12  is with great regret that we even requested this conference.

13  But in light of the seriousness of the issues raised, we felt

14  it imperative.  We too would like to finish this out.  But

15  let's just listen to what Mr. Cross said and the purpose of

16  this conference.

17             These matters have just come to light, he said.

18  They're just starting to learn the facts.  It's a complex

19  matter with dense materials, and yet, they don't have answers

20  because it is unclear at this point exactly what occurred.

21  Therefore, for those reasons, because we need the time for

22  both sides to evaluate exactly what is the extent and the

23  implication and the consequences, we asked for the

24  adjournment.  That's what we're asking for today, not to argue

25  the merits on a half record or to make inferences correctly or

1    incorrectly on the basis of that.

2            It's whether or not, at this point, Your Honor

3    feels it makes sense in light of these recent revelations and

4    the seriousness with which the plaintiffs' counsel are taking

5    them to uncover and evaluate and understand what happened,

6    should the class certification hearing be temporarily

7    postponed in order to enable both sides to present a full

8    record.

9            THE COURT:  Okay.  So, have you talked about dates?

10           MR. WALL:  What would work for us is, essentially

11   we still need three days.

12           THE COURT:  Well, we originally had three and then

13   two of them got truncated, so we could set -- so, we could get

14   a full three days or -- unless somebody thinks we should set

15   four, just to be safe, but we could set a full three days when

16   we don't have any commitments to be involved in speaking

17   engagements or to go temple or to build a sukkah.

18           MR. WALL:  So, we have two blocks that work for us,

19   November 12th, 13th, 14th, and then the four-day block between

20   the 17th and the 20th, which we could do either the 17th to

21   the 19th or the 18th through the 20th.

22           MR. NEUWITH:  Your Honor, I apologize, I had not

23   had a chance to look at my calender when we initially talked

24   about November earlier today.  My schedule during November is

25   very problematic during virtually every week, in part because

1   we had -- I don't know if the first week of December would be

2   an option.  I could do any of those five days.

3            MR. WALL:  I'm sorry, but we just really don't want

4   to wait that long, we want to get this over with.

5            MR. NEUWITH:  Just to be clear, Your Honor, we

6   certainly don't have a problem with tentatively setting a date

7   for a hearing, but we don't know what are necessarily going to

8   be the ramifications of what we ultimately conclude about what

9   went on here, and we may need to approach the Court about

10  relief about what is going to happen going forward in the

11  case.  And we certainly wouldn't want to foreclose the

12  opportunity to do that.  That has absolutely nothing to do

13  with the scheduling, but we just don't want there to be a --

14  we would --

15           THE COURT:  All right.  I could, from my

16  perspective, the week of November 10th, I'd have to move one

17  or two things, and the week of the 11th is Veterans Day, which

18  is -- court is closed.  But that gives us the Monday or the

19  Wednesday, Thursday, Friday.  The week of the 17th, except for

20  one sentencing so far, I'm totally open.  The week of the 24th

21  and the last part -- the 27th is Thanksgiving, so for people

22  who travel, that's probably not a good week.

23           So the week of the 10th, the week of the 17th, the

24  week of the 1st of December, the week of the 8th of December.

25  I mean, I'm pretty good in December so far.

1          MR. NEUWITH:  If it's --

2          MR. HAUSFELD:  Your Honor, can we have some time to

3   discuss this with the defendants and see if we can reach an

4   agreement?

5          THE COURT:  Sure.

6          MR. HAUSFELD:  Possibly things can be reshuffled

7   with the schedules.

8          MR. WALL:  Can we put the 17th on the calendar

9   tentatively, and then we'll see what we can do.  If we have to

10  come back, we'll come back.

11          THE COURT:  What's your story on the week of the

12  17th, Mr. Neuwirth?

13          MR. NEUWITH:  I have a major commitment in another

14  case where, to be blunt, I may lose the client if I'm not able

15  to be where I have to be for that week.

16          THE COURT:  Is it the entire week?

17          MR. NEUWITH:  It is the 18th, the 19th and the

18  20th.

19          THE COURT:  Well --

20          MR. NEUWITH:  It's a deposition of a very senior

21  officer of the company.

22          THE COURT:  So, there's another -- well, I don't

23  know.  There's also the -- what's the prior week?

24          MR. WALL:  Your Honor, we have -- our expert is not

25  available that week, so we wouldn't be able the week of the

1   3rd.

2            THE COURT:  The week of the 10th.

3            MR. WALL:  Oh, the week of the 10th we could do the

4   12th, 13th and 14th works for us.  Sorry.

5            MR. NEUWITH:  If that were the only way to get this

6   done, we could do it, as long as we stopped at 4:00 o'clock on

7   Friday the 14th.

8            THE COURT:  That's fine.  And the other possibility

9   is to work with those three days and the following Monday,

10  since Mr. Neuwirth has -- he's getting ready for his hearing

11  later in the week.

12           MR. NEUWITH:  I could do that.

13           MR. HAUSFELD:  I think that makes sense, Your

14  Honor.  That works for me.

15           MR. WALL:  I don't have a problem with that.  One

16  thing that I just want to follow up with -- one thing I want

17  to follow up with is that if -- if the plaintiffs are giving

18  any thought to seeking relief, whatever that means, we'd like

19  to be able to resolve that issue in time to hold the date that

20  we're setting now.  So...

21           THE COURT:  I thought I heard somebody say that

22  maybe we should all come back here in a couple of weeks for an

23  update as to what's going on.

24           MR. NEUWITH:  We think that is --

25           THE COURT:  That's separate and apart from the

1   hearing dates.

2            MR. WALL:  That would be fine.

3            THE COURT:  All right.  So, should we block off the

4   12th, 13th, 14th and 17th, or just the 12th, 13th and 14th,

5   or --

6            MR. HAUSFELD:  I think, Your Honor, given this

7   other issue, to the extent it plays in, it would be wise to

8   have the flexibility of keeping the 17th open.

9            THE COURT:  All right.  I'll put it on my calendar.

10           MR. HAUSFELD:  If we can return two weeks from

11  today, unless that conflicts with anyone's calendar, if

12  necessary.

13           MR. NEUWITH:  I have a holiday that day.

14           THE COURT:  What's today?  Today is the 2nd.  I'm

15  going to be out of town -- I either have to do it the 10th,

16  the 9th or the 10th, or the -- I've got to be in New York the

17  15th, 16th and 17th, I'm not sure -- for American Law

18  Institute -- I'm not sure what time on the 14th I'm leaving to

19  get there.  But we could maybe think about the morning of the

20  14th for a status or the following week.

21           MR. WALL:  Your Honor, I can't do the 14th or the

22  15th.  I could do the 16th or 17th.

23           THE COURT:  Those are the days I'm in New York.

24           MR. WALL:  Oh, sorry.  The 13th.

25           THE COURT:  That's a holiday.

1          MR. WALL:  The 20th?

2          THE COURT:  The 20th is okay with me.

3          MR. HAUSFELD:  Going once.

4          MR. NEUWITH:  Is there any chance to do it the 21st

5     instead of the 20th?

6          MR. WALL:  I think so.

7          THE COURT:  The 21st at what time?

8          MR. WALL:  Doesn't matter.  Whatever is convenient

9     to you.  Morning?

10         THE COURT:  I've got two short things, one at 9:30

11    and one at 10:00.  So, we could do it 10:30 or 11:00 on the

12    21st.

13         MR. HAUSFELD:  Why don't we make it 11:00 so it

14    gives us a change to get in, in case there are delays.

15         THE COURT:  So the plan is -- we will -- I guess

16    we'll place on the docket for today, status conference held,

17    and that the dates -- next weeks' dates are vacated.  That

18    there will be a further status conference on October 21 at

19    11:00 a.m, and that the hearing that was to take place next

20    week will be November 12th, 13th, 14th and, if necessary,

21    17th.  Something like that.

22         MR. WALL:  Your Honor, one last housekeeping point.

23    We very much want this transcribed.  We want this to be part

24    of the record in this case.  And we also want the opportunity

25    to address the question of whether this should be sealed,

 1   because it just -- this was done ex parte, we didn't have a

 2   voice in it, and it is what it is.  But there's a pretty

 3   serious question as to whether this meets the standards for

 4   sealing a courtroom.

 5         THE COURT:  Well, we can have that discussion.  On

 6   the other hand, for some of the reasons that Mr. Cross stated,

 7   in terms of not knowing the breadth and depth and scope of all

 8   this, and the fact that people's reputations are at stake.

 9   And I understand from the defense perspective, it may be a

10   reputation that can never be resurrected, but I don't know

11   that yet.  I think for the time being it should be under seal.

12         MR. WALL:  Okay.

13         THE COURT:  But if you want a transcript, we can do

14   a transcript under seal that would be provided -- I don't know

15   whether the existing protective order is sufficient.  I don't

16   know how widely --

17         MR. HAUSFELD:  I think, Your Honor, in this

18   situation what courts have done is have a transcript available

19   for counsels' eyes only.

20         THE COURT:  There are a lot of counsel, too.

21         MR. HAUSFELD:  I understand, but I don't think that

22   it's fair to discriminate among counsel, but as long as every

23   counsel who is associated with the litigation, in terms of

24   having entered appearance, understands that they cannot reveal

25   that outside themselves.

1          MR. WALL:  Your Honor, that's fine.  I think

2    everybody gets how serious this is.

3          THE COURT:  All right.

4          MR. WALL:  And we'll --

5          THE COURT:  If you can talk with Lisa afterwards

6    and she will prepare a transcript under seal.  If you want her

7    to put some magic language on the cover of the transcript -- I

8    mean, do you want her to put on the cover of the transcript:

9    Under seal for counsels' eyes only -- something like that.

10          MR. NEUWITH:  That would make it -- then we could

11    apply the protective order.

12          THE COURT:  Okay.  So, she'll hang around and you

13    can just clear it up with her.  And that does not foreclose

14    Mr. Wall's concern that at some point, maybe everything that

15    happened here should be taken out from under seal.  But I

16    think that in fairness everybody -- and, actually, Mr. Cross

17    makes the point, as did Mr. Hausfeld and Mr. Neuwirth, that

18    there is a lot that is yet unknown, and it may only get worse,

19    not better.  But I don't think it's fair to the people -- the

20    person involved, and maybe there's more than one person

21    involved, ultimately, I don't know, to prejudge that until we

22    know more.

23          MR. HAUSFELD:  Thank you, Your Honor.

24          MR. WALL:  Understood, Your Honor.  Thank you very

25    much.

1          THE COURT:  Okay.  So, I guess I won't see you next

2     week.  I will, I understand, be seeing Mr. Hausfeld on Yom

3     Kippur but we won't be discussing the case.

4     COURT ADJOURNED AT 11:50 A.M.

5

6

7                     C E R T I F I C A T E

8          I, Lisa M. Foradori, RPR, FCRR, certify that

9     the foregoing is a correct transcript from the record of

10    proceedings in the above-titled matter.

11

12

13

14    Date:_____        _____

15                                 Lisa M. Foradori, RPR, FCRR

16

17

18

19

20

21

22

23

24

25

**$**

$150,000 [1]  14/9
$750,000 [1]  14/6
$790,000 [1]  14/7

**0**

07-489 [2]  1/4 4/2

**1**

1001 [1]  2/8
10010 [1]  1/21
1089 [1]  1/18
10:00 [1]  30/11
10:30 [1]  30/11
10th [6]  26/16 26/23 28/2 28/3 29/15 29/16
1100 [1]  2/19
11:00 [3]  1/6 30/11 30/13
11:00 a.m [1]  30/19
11:50 A.M [1]  33/4
11th [1]  26/17
12th [5]  25/19 28/4 29/4 29/4 30/20
13th [6]  25/19 28/4 29/4 29/4 29/24 30/20
1440 [1]  2/15
14th [9]  25/19 28/4 28/7 29/4 29/4 29/18 29/20 29/21 30/20
15th [2]  29/17 29/22
16-17 [1]  8/22
16th [2]  29/17 29/22
17 [1]  8/22
17-percent [1]  15/5
1700 [1]  1/16
17th [1]  25/20 25/20 26/19 26/23 27/8 27/12 29/4 29/8 29/17 29/22 30/21
1869 [1]  1/4
18th [2]  25/21 27/17
19th [2]  25/21 27/17
1st [1]  26/24

**2**

2000 [1]  2/3
20001 [1]  3/3
20004-2595 [1]  2/9
20005-2111 [1]  2/9
20006 [1]  1/17
2010 [3]  13/17 13/22 14/12
2011 [4]  16/5 16/20 16/24 17/15
2012 [2]  12/14 12/20
2013 [3]  14/4 15/14 16/21
2014 [4]  1/5 16/21 18/12 18/12
202 [5]  1/18 2/9 2/16 2/16 3/3
202-628-5116 [1]  2/10
20th [6]  25/20 25/21 27/18 30/1 30/2 30/5
21 [1]  30/18
2100 [1]  2/19
2111 [1]  2/15
212 [2]  1/22 1/22
214 [2]  2/20 2/21
21st [3]  30/4 30/7 30/12
22nd [1]  1/21
24 [1]  22/21
24th [1]  26/20
2562 [1]  2/3
2578 [1]  2/9
2595 [1]  2/9
27th [1]  26/21
28th [3]  10/22 12/14 12/20
2900 [1]  2/21
2nd [1]  29/14

**3**

300 [1]  24/5

**20th** [1]  13/19
**31st** [1]  9/21

3269 [1]  3/3
3320 [1]  2/20
333 [1]  3/2
354-3269 [1]  3/3
371-7500 [1]  2/16
395-8095 [1]  2/4
395-8240 [1]  2/4
3rd [1]  28/1

**4**

415 [2]  2/4 2/4
489 [2]  1/4 4/2
4:00 o'clock [1]  28/6

**5**

505 [1]  2/2
51 [1]  1/20
5116 [1]  2/10
571-2900 [1]  2/21
579-1089 [1]  1/18

**6**

624-2578 [1]  2/9
650 [1]  1/17
661-9191 [1]  2/16
6706 [1]  3/2
6912 [1]  2/20
698-3320 [1]  2/20

**7**

7-percent [2]  15/8 15/10
7000 [1]  1/22
7100 [1]  1/22
7500 [1]  2/16
75201-6912 [1]  2/20

**8**

8095 [1]  2/4
8240 [1]  2/4
849-7000 [1]  1/22
849-7100 [1]  1/22
8th [1]  26/24

**9**

9191 [1]  2/16
94111-2562 [1]  2/3
9:30 [1]  30/10
9th [1]  29/16

**A**

a.m [3]  1/6 30/19 33/4
abandoned [1]  21/11
able [3]  27/14 27/25 28/19
about [34]
above [1]  33/10
above-titled [1]  33/10
absolutely [1]  26/12
absorb [1]  7/8
accommodating [1]  6/4
accurate [2]  12/9 12/10
acquiring [1]  8/15
across [1]  15/3
action [2]  21/21 23/25
actually [4]  11/18 18/19 21/14 32/16
add [3]  8/7 8/10 21/7
added [1]  11/8
additional [2]  11/20 19/3
address [2]  6/7 30/25
adds [1]  11/1
adjourned [2]  7/19 33/4
adjournment [2]  8/11 24/24
advised [2]  5/15 20/22

advises [1]  21/24
advocate [1]  22/8

affect [3]  13/1 13/1 13/3
affects [1]  13/7
after [2]  11/8 22/20
afterwards [1]  32/5
again [4]  9/24 12/6 13/24 18/7
ago [4]  10/2 13/4 13/20 14/11
agree [3]  5/20 6/7 19/22
agreed [1]  19/10
agreement [7]  11/19 14/13 14/24 15/4 15/7 22/19 27/4
aided [1]  3/24
Alan [1]  2/7
albeit [2]  8/21 18/20
alert [1]  19/18
all [19]  8/5 8/18 10/7 14/25 15/3 16/17 17/17 19/6 19/14 20/3 22/14 23/21 24/9 26/15 28/22 29/3 29/9 31/7 32/3
along [1]  4/14
already [1]  8/15
also [12]  10/4 14/7 14/10 15/7 15/18 16/17 17/25 27/23 30/24
although [1]  18/16
always [1]  23/20
am [1]  11/7
American [1]  29/17
among [2]  12/13 31/22
analysis [2]  21/15 23/7
Analytics [17]  10/4 10/6 10/10 10/13 10/17 13/16 13/20 14/15 15/22 16/4 16/6 16/12 16/15 16/21 17/14 18/21 19/1
and/or [2]  6/17 20/17
another [10]  4/25 9/17 9/17 10/3 14/7 14/8 15/20 24/7 27/13 27/22
answer [6]  10/11 11/1 12/23 13/13 19/19 20/2
answers [2]  17/1 24/19
ANTITRUST [2]  1/3 4/3
any [19]  7/12 8/14 10/9 10/14 10/17 10/18 10/25 11/6 11/7 12/3 12/25 19/20 20/1 22/6 24/3 25/16 26/2 28/18 30/4
anyone [1]  19/4
anyone's [1]  29/11
anything [6]  5/6 8/8 10/21 15/6 15/8 15/10
apart [1]  28/25
apologize [1]  25/22
appeals [2]  13/6 22/23
appearance [1]  31/24
APPEARANCES [1]  1/13
appears [1]  6/15
apply [1]  32/11
appreciate [1]  11/25
apprize [1]  8/5
approach [2]  13/8 26/9
appropriate [3]  8/13 8/14 19/2
appropriateness [1]  17/11
are [37]
argue [3]  22/5 23/23 24/24
arguments [1]  21/18
arisen [1]  7/7
around [1]  32/12
ARPS [1]  2/14
as [37]
ask [1]  22/10
asked [10]  5/1 5/3 5/7 9/22 9/24 10/9 12/2 16/24 22/3 24/23
asking [1]  24/24
assess [1]  8/13
assignments [1]  22/22
associated [4]  4/24 7/21 18/15 31/23
assume [1]  20/9

**A**

**assure** [1]  19/20
**attended** [1]  16/9
**attending** [1]  16/17
**attention** [2]  6/2 6/10
**August** [2]  10/22 18/12
**August 28th** [1]  10/22
**available** [2]  27/25 31/18
**Avenue** [5]  1/20 2/8 2/15 2/19 3/2
**average** [3]  17/11 21/13 21/18
**averages** [1]  21/19
**award** [1]  21/13
**aware** [5]  19/14 20/9 20/9 20/11 20/15
**away** [2]  22/16 23/20

**B**

**back** [9]  13/17 13/22 23/14 23/14 23/15
24/8 27/10 27/10 28/22
**back to** [1]  23/15
**background** [1]  9/10
**bad** [1]  21/6
**baseball** [1]  11/24
**basis** [2]  5/19 25/1
**be** [51]
**became** [1]  20/15
**because** [19]  5/21 10/1 12/3 12/10 13/1
18/11 19/2 20/12 21/25 22/2 22/5 22/9
22/13 22/17 23/24 24/20 24/21 25/25
31/1
**become** [2]  7/16 19/14
**becomes** [1]  11/2
**been** [9]  5/16 6/19 7/2 7/2 7/13 8/21
9/20 14/12 19/5
**before** [4]  1/10 9/12 13/4 19/11
**began** [1]  13/17
**begin** [2]  21/4 21/5
**behalf** [6]  5/1 5/17 5/18 6/3 6/11 6/13
**Behrend** [1]  23/7
**being** [2]  20/10 31/11
**believe** [3]  9/12 16/24 18/7
**better** [2]  22/2 32/19
**between** [7]  7/9 10/10 13/16 15/22 17/12
22/17 25/19
**bit** [3]  9/5 9/7 11/16
**block** [2]  25/19 29/3
**blocks** [1]  25/18
**blunt** [1]  27/14
**BNSF** [2]  2/18 4/17
**both** [8]  5/1 5/17 6/17 8/4 13/8 20/19
24/22 25/7
**bottom** [1]  14/14
**breadth** [1]  31/7
**briefly** [1]  19/11
**bring** [1]  15/5
**broad** [1]  14/13
**build** [1]  25/17
**bulk** [1]  10/23
**buy** [1]  21/21
**buying** [3]  9/14 9/20 14/2

**C**

**CA** [1]  2/3
**calendar** [3]  27/8 29/9 29/11
**calender** [1]  25/23
**call** [1]  5/17
**called** [7]  5/1 5/17 7/10 9/15 9/18 9/25
10/5
**calmly** [2]  22/11 22/12
**can** [19]  5/8 5/22 9/1 19/20 20/5 22/16
23/23 24/8 27/2 27/3 27/6 27/8 27/9
29/10 31/5 31/10 31/13 32/5 32/13
**can't** [1]  29/21
**Candidly** [1]  10/19

**cannot** [1]  31/24
**careful** [1]  21/11
**carload** [1]  17/23
**Cascade** [26]  7/11 9/15 9/19 9/25 10/2
10/10 10/14 11/3 11/17 12/12 12/15
13/16 13/21 13/24 13/25 14/8 15/13
15/22 16/16 16/22 16/24 17/4 17/5
18/14 18/18 21/24
**Cascades** [1]  22/13
**case** [20]  4/2 10/19 11/6 11/6 15/15
15/16 15/16 15/23 16/10 17/4 17/10
18/14 21/14 21/25 22/23 26/11 27/14
30/10 30/24 33/3
**cash** [1]  15/2
**cashing** [1]  21/22
**catch** [1]  22/9
**categories** [1]  17/22
**category** [1]  18/5
**central** [1]  17/23
**cert** [3]  17/10 17/24 18/2
**certain** [1]  11/5
**certainly** [7]  15/15 19/19 20/11 23/21
24/2 26/6 26/11
**certification** [9]  7/17 13/5 21/10 21/23
21/25 23/8 23/18 23/23 25/6
**certify** [1]  33/8
**cetera** [1]  18/6
**challenge** [2]  12/3 18/1
**chambers** [2]  5/3 5/5
**champion** [1]  22/7
**chance** [2]  25/23 30/4
**change** [1]  30/14
**changed** [1]  22/11
**characterizations** [1]  19/22
**characterized** [1]  11/9
**chart** [3]  18/19 18/20 18/21
**cheap** [1]  21/21
**civil** [1]  5/8
**claim** [1]  22/19
**claimants** [1]  6/19
**claimed** [1]  17/16
**claims** [17]  7/10 9/15 9/21 10/19 11/5
11/6 14/2 14/15 14/16 14/19 14/20
17/18 18/2 18/14 18/15 21/21 23/25
**clarification** [1]  11/9
**clarify** [2]  5/12 5/15
**class** [16]  1/14 7/17 13/5 16/1 17/10
17/24 18/2 21/10 21/21 21/23 21/25
23/8 23/18 23/23 23/25 25/6
**clear** [6]  12/10 19/3 19/17 19/25 26/5
32/13
**Clearly** [1]  24/11
**client** [1]  27/14
**clients** [1]  20/8
**close** [2]  17/5 18/9
**closed** [1]  26/18
**coal** [2]  17/23 18/6
**collection** [1]  20/14
**COLUMBIA** [1]  1/1
**come** [11]  6/2 6/10 12/7 19/6 21/12
23/14 23/14 24/17 27/10 27/10 28/22
**comes** [4]  15/2 15/2 15/11 22/15
**coming** [1]  23/15
**commitment** [1]  27/13
**commitments** [1]  25/16
**common** [1]  21/18
**companies** [2]  6/25 14/1
**company** [24]  4/19 6/19 6/23 7/2 7/9
7/10 7/13 9/14 9/15 9/17 9/18 9/19 9/25
10/3 10/4 10/5 10/18 11/4 15/3 20/8
20/14 20/17 22/18 27/21
**comparisons** [1]  21/18
**compensated** [1]  14/16
**compensation** [2]  15/1 15/4

**complex** [2]  17/16 24/18
**complexities** [1]  7/8
**complexity** [1]  17/25
**complicated** [1]  9/7
**computer** [1]  3/24
**computer-aided** [1]  3/24
**concern** [6]  11/10 15/12 15/19 15/20
19/4 32/14
**concerning** [1]  6/10
**concerns** [3]  14/18 19/24 20/9
**conclude** [1]  26/8
**concluded** [1]  5/5
**conditioned** [1]  18/9
**conference** [6]  5/3 19/18 24/12 24/16
30/16 30/18
**confidential** [1]  17/3
**conflict** [3]  6/11 8/23 15/19
**conflicts** [1]  29/11
**connection** [1]  21/1
**consequences** [2]  7/23 24/23
**considered** [1]  6/8
**conspiratorial** [1]  16/3
**Constitution** [1]  3/2
**consultant** [1]  15/1
**consulting** [6]  13/18 14/10 14/12 14/13
14/24 22/19
**contains** [1]  21/16
**context** [1]  9/23
**contradict** [1]  15/22
**contradictions** [1]  17/8
**contrary** [1]  17/18
**convenient** [2]  8/2 30/8
**conversion** [1]  17/21
**converted** [1]  14/5
**correct** [1]  33/9
**correctly** [1]  24/25
**costs** [2]  16/2 16/8
**could** [16]  7/16 19/11 22/20 25/13 25/13
25/15 25/20 26/2 26/15 28/3 28/6 28/12
29/19 29/22 30/11 32/10
**couldn't** [1]  20/25
**counsel** [16]  4/4 5/17 5/21 11/23 12/2
19/1 20/4 20/18 20/23 20/24 21/1 21/6
25/4 31/20 31/22 31/23
**counsels'** [2]  31/19 32/9
**couple** [5]  13/20 15/17 15/24 17/7 28/22
**course** [6]  6/15 8/20 11/10 16/17 17/5
17/9
**court** [13]  1/1 3/1 3/1 6/8 6/9 19/18 20/1
20/1 21/15 22/23 26/9 26/18 33/4
**Court's** [1]  8/2
**Courthouse** [1]  3/2
**courtroom** [2]  5/7 31/4
**courts** [2]  13/6 31/18
**cover** [2]  32/7 32/8
**covered** [1]  8/10
**created** [1]  16/13
**credibility** [7]  13/1 13/3 13/11 15/19
22/7 23/19 23/20
**cross** [10]  2/7 4/6 4/22 8/25 19/20 21/7
22/10 24/15 31/6 32/16
**cross-plaintiffs** [1]  4/6
**CROWELL** [3]  2/8 4/20 4/23
**crowell.com** [2]  2/10 2/11
**CRUTCHER** [1]  2/18
**CSX** [4]  2/7 4/21 4/23 9/1

**D**

**Dallas** [1]  2/20
**damages** [2]  21/12 21/13
**Dan** [1]  4/13
**Dan.Wall** [1]  2/5
**Daniel** [1]  2/1
**date** [4]  8/1 26/6 28/19 33/14

## D

**dates [4]** 25/9 29/1 30/17 30/17
**David [2]** 2/7 4/22
**day [4]** 22/25 25/19 26/17 29/13
**days [7]** 13/20 25/11 25/14 25/15 26/2 28/9 29/23
**DC [5]** 1/5 1/17 2/9 2/15 3/3
**dcross [2]** 2/11
**dealing [6]** 16/13 16/14 16/16 17/25 18/1 19/6
**dealings [1]** 15/22
**debt [1]** 22/18
**December [9]** 12/14 12/17 12/19 12/20 14/12 26/1 26/24 26/24 26/25
**December 28th [2]** 12/14 12/20
**decided [2]** 13/5 13/21
**decision [2]** 13/5 21/16
**Defendant [4]** 2/1 2/7 2/13 2/18
**defendants [10]** 4/25 6/4 6/6 6/15 6/22 7/5 7/25 8/4 19/15 27/3
**defense [2]** 17/24 31/9
**delays [1]** 30/14
**demeanor [1]** 22/10
**denied [1]** 23/8
**dense [3]** 9/7 11/16 24/19
**deposition [9]** 9/12 9/21 10/22 12/9 13/2 14/18 16/10 22/9 27/20
**depositions [1]** 16/18
**depth [1]** 31/7
**deputy [1]** 5/7
**description [1]** 19/12
**designed [2]** 16/1 16/7
**did [5]** 11/18 15/18 18/25 19/12 32/17
**didn't [3]** 5/6 5/17 31/1
**differences [2]** 17/12 21/19
**different [3]** 17/20 17/21 17/22
**dimension [1]** 18/6
**directly [1]** 14/5
**Director [1]** 18/21
**disagreement [1]** 6/5
**discover [1]** 14/23
**discovery [3]** 18/24 19/3 24/4
**discriminate [1]** 31/22
**discuss [1]** 27/3
**discussing [1]** 33/3
**discussion [1]** 31/5
**dispute [1]** 24/3
**dissembled [1]** 13/2
**dissembler [1]** 22/7
**distinction [1]** 22/17
**distinctly [1]** 22/5
**distraction [1]** 7/16
**distribution [1]** 15/8
**distributions [2]** 11/5 22/19
**DISTRICT [3]** 1/1 1/1 1/11
**diversion [1]** 7/17
**do [32]** 8/7 8/20 10/1 10/15 10/17 11/4 11/5 13/15 13/22 18/23 18/25 19/3 20/2 22/14 23/16 23/16 24/2 25/20 26/2 26/12 26/12 27/9 28/3 28/6 28/12 29/15 29/21 29/22 30/4 30/11 31/13 32/8
**docket [2]** 5/6 30/16
**document [5]** 9/2 17/9 19/21 20/3 21/14
**documents [24]** 6/22 6/24 7/1 7/3 7/13 9/7 11/14 11/17 11/20 12/3 12/7 12/8 12/13 15/21 18/10 19/2 19/13 19/13 19/25 20/5 20/14 20/19 20/23 21/24
**does [6]** 10/13 13/1 13/3 13/10 14/21 32/13
**doesn't [4]** 23/6 23/20 24/1 30/8
**doing [2]** 13/17 20/4
**dollars [2]** 12/15 13/24
**don't [23]** 5/10 5/19 5/20 11/2 12/4

12/23 24/3 24/19 25/16 26/1 26/3 26/6 26/7 26/13 27/22 28/15 30/15 31/10 31/14 31/15 31/21 32/19 32/21
**done [7]** 5/2 10/8 10/11 24/8 28/6 31/1 31/18
**door [2]** 15/6 15/11
**dotted [1]** 18/20
**Dr [7]** 6/16 6/23 6/23 7/9 20/13 20/25 21/15
**due [1]** 16/8
**DUNN [2]** 2/18 4/17
**during [2]** 25/24 25/25

## E

**e-mail [2]** 15/13 16/24
**e-mails [1]** 18/12
**earlier [1]** 25/24
**early [2]** 12/4 12/24
**earth [1]** 24/8
**economically [1]** 6/17
**either [4]** 6/18 15/1 25/20 29/15
**else [1]** 4/24
**else's [1]** 23/6
**EMANUEL [2]** 1/20 4/8
**enable [1]** 25/7
**engagements [1]** 25/17
**enough [1]** 13/19
**ensure [1]** 18/25
**entered [2]** 11/21 31/24
**entire [1]** 27/16
**entirely [1]** 13/9
**entities [1]** 6/18
**equity [1]** 6/17
**errata [6]** 10/22 10/23 12/10 13/3 14/19 22/15
**Esquire [11]** 1/14 1/15 1/15 1/19 2/1 2/1 2/7 2/7 2/13 2/13 2/18
**essentially [2]** 14/17 25/10
**estimated [1]** 18/3
**estimates [1]** 21/12
**et [1]** 18/6
**evaluate [3]** 7/20 24/22 25/5
**evaluations [2]** 18/15 21/22
**even [3]** 13/2 18/15 24/12
**evening [2]** 11/22 12/1
**eventually [1]** 14/1
**every [4]** 16/10 19/21 25/25 31/22
**everybody [3]** 4/24 32/2 32/16
**everything [4]** 15/6 19/14 20/4 32/14
**ex [1]** 31/1
**exactly [2]** 24/20 24/22
**examples [2]** 15/24 17/17
**except [1]** 26/19
**excuse [1]** 22/22
**exist [1]** 10/2
**existing [1]** 31/15
**expert [4]** 6/14 11/7 23/24 27/24
**extent [3]** 17/3 24/22 29/7
**extreme [1]** 23/2
**eyes [2]** 31/19 32/9

## F

**Facciola [2]** 11/21 11/25
**fact [3]** 10/3 21/10 31/8
**facts [3]** 9/6 22/8 24/18
**fair [3]** 9/4 31/22 32/19
**fairness [1]** 32/16
**faith [1]** 22/6
**false [2]** 22/14 23/7
**familiar [1]** 16/9
**far [5]** 7/3 12/11 14/23 26/20 26/25
**fast [2]** 10/21 24/4
**favorably [1]** 6/9
**Fax [5]** 1/22 2/4 2/10 2/16 2/21

## 5

**CRR [3]** 3/1 33/8 33/15
**February [1]** 10/7 7/15
**feel [5]** 7/14 7/14 8/1 9/4 23/2
**feels [1]** 25/3
**felt [2]** 7/14 24/13
**few [2]** 9/9 11/15
**figure [1]** 17/6
**filing [1]** 17/16
**financial [11]** 9/13 10/14 10/18 10/25 11/3 12/11 12/25 13/10 13/23 18/18 22/12
**find [2]** 11/13 22/20
**fine [3]** 28/8 29/2 32/1
**finish [8]** 22/22 23/2 23/3 23/3 23/17 24/8 24/9 24/14
**firm [1]** 10/3
**first [7]** 6/2 6/21 13/4 13/5 13/12 20/3 26/1
**five [1]** 26/2
**flagged [1]** 11/10
**flexibility [1]** 29/8
**FLOM [1]** 2/14
**Floor [1]** 1/21
**flow [1]** 15/2
**folks [1]** 16/21
**follow [2]** 28/16 28/17
**following [3]** 21/5 28/9 29/20
**Foradori [2]** 3/1 33/8 33/15
**foreclose [2]** 26/11 32/13
**foregoing [1]** 33/9
**formal [2]** 10/9 18/17
**formed [1]** 8/21
**formulas [1]** 17/21
**forward [2]** 10/21 26/10
**found [4]** 5/18 9/2 17/8 22/21
**four [2]** 25/15 25/19
**four-day [1]** 25/19
**Francisco [1]** 2/3
**frankly [1]** 22/24
**FREIGHT [8]** 1/3 4/3 14/3 15/14 16/16 16/23 17/15 18/14
**frequently [1]** 23/4
**Friday [4]** 11/20 11/21 26/19 28/7
**FRIEDMAN [1]** 1/10
**from 2011 [1]** 16/24
**fuel [7]** 1/3 14/3 15/25 16/2 16/8 16/8 17/19
**full [4]** 16/7 25/7 25/14 25/15
**fuller [1]** 7/22
**fully [3]** 7/8 7/20 8/9
**fundamentally [1]** 23/19
**funds [1]** 15/3
**further [1]** 30/18

## G

**game [2]** 11/24 21/20
**Gardiner [2]** 2/7 4/20
**Gareth [2]** 16/5 16/9
**Gassman [2]** 1/15 4/10
**get [15]** 5/2 10/24 12/5 18/23 22/16 22/16 23/8 24/7 24/8 25/13 26/4 28/5 29/19 30/14 32/18
**gets [7]** 14/16 14/17 15/5 15/7 15/10 19/11 32/2
**getting [3]** 23/22 23/22 28/10
**GIBSON [2]** 2/18 4/17
**gibsondunn.com [1]** 2/21
**give [8]** 7/19 9/1 9/9 9/23 11/15 15/24 17/16 21/8
**given [3]** 8/11 22/22 29/6
**gives [2]** 26/18 30/14
**giving [1]** 28/17
**go [5]** 9/6 17/17 22/24 23/20 25/17
**goes [3]** 10/3 13/17 13/22

**G**

**going [23]** 5/4 5/18 7/18 9/9 9/12 11/15 11/19 16/1 18/10 18/22 18/23 21/9 21/13 21/20 21/25 24/5 24/6 26/7 26/10 26/10 28/23 29/15 30/3
**good [12]** 4/5 4/7 4/9 4/11 4/13 4/16 4/18 4/22 6/1 9/3 26/22 26/25
**Gordon [2]** 6/12 6/14
**Gosselin [2]** 1/15 4/12
**got [8]** 9/11 11/12 21/6 21/7 24/5 25/13 29/16 30/10
**great [1]** 24/12
**greater [1]** 18/4
**guess [3]** 23/14 30/15 33/1
**guy [1]** 23/24

**H**

**had [21]** 5/16 6/16 6/24 7/8 7/12 8/6 9/11 9/20 10/11 10/24 11/18 11/20 16/14 18/17 19/23 20/12 22/12 25/12 25/22 25/23 26/1
**half [1]** 24/25
**hand [1]** 31/6
**hang [1]** 32/12
**happen [1]** 26/10
**happened [3]** 13/9 25/5 32/15
**hard [1]** 22/1
**has [24]** 6/1 6/9 7/2 7/3 7/7 7/13 8/9 9/18 10/18 10/25 11/7 12/12 14/10 15/23 15/25 16/9 17/19 19/4 19/6 19/20 20/1 20/25 26/12 28/10
**hasn't [1]** 21/1
**Hausfeld [10]** 1/14 1/16 4/6 4/10 4/12 4/25 5/25 8/9 32/17 33/3
**hausfeldllp.com [1]** 1/18
**have [61]**
**having [2]** 22/19 31/24
**HDF [1]** 17/20
**he [62]**
**he's [7]** 14/12 14/20 14/20 16/17 22/17 22/17 28/10
**heard [1]** 28/21
**hearing [13]** 1/10 5/16 7/17 7/19 8/2 21/10 22/25 23/18 25/6 26/7 28/10 29/1 30/19
**heaven [1]** 24/7
**held [1]** 30/16
**her [4]** 5/10 32/6 32/8 32/13
**here [11]** 5/11 8/19 18/4 21/20 21/24 23/4 24/5 24/8 26/9 28/22 32/15
**Here's [1]** 15/9
**hide [1]** 23/25
**high [2]** 18/4 21/22
**highlights [3]** 9/10 11/15 12/6
**him [4]** 9/24 10/9 14/14 22/20
**his [21]** 7/9 10/4 10/5 10/11 12/25 13/1 13/1 13/2 13/3 13/9 13/10 14/18 14/24 15/4 17/19 20/8 20/17 22/3 22/8 22/10 28/10
**hold [1]** 28/19
**holder [1]** 22/18
**holiday [2]** 29/13 29/25
**Honor [62]**
**Honor's [2]** 8/24 24/10
**HONORABLE [1]** 1/10
**hope [1]** 22/11
**Hopefully [1]** 24/9
**hoping [1]** 12/4
**hours [2]** 8/22 22/21
**housekeeping [1]** 30/22
**how [12]** 5/4 9/11 10/1 11/13 12/24 12/24 13/8 14/15 14/21 18/1 31/16 32/2
**however [2]** 11/4 22/21

**hydrogen [1]** 21/16

**I**

**I'd [1]** 26/16
**I'll [4]** 17/7 18/9 23/16 29/9
**I'm [20]** 9/9 11/14 12/18 13/11 13/11 14/6 18/10 19/3 19/21 20/4 21/4 26/3 26/20 26/25 27/14 29/14 29/17 29/18 29/18 29/23
**I've [3]** 21/7 29/16 30/10
**iceberg [1]** 9/5
**idea [1]** 21/6
**identified [1]** 23/16
**identify [2]** 4/4 14/15
**ill [1]** 23/1
**impact [1]** 21/19
**imperative [1]** 24/14
**implication [1]** 24/23
**implications [1]** 7/23
**important [3]** 18/5 18/23 23/1
**in 2011 [1]** 16/20
**include [2]** 11/6 19/12
**inconsistent [1]** 18/7
**incorrectly [1]** 25/1
**increases [1]** 16/8
**independent [1]** 6/24
**indexes [1]** 17/20
**indicates [1]** 15/14
**indicating [1]** 15/13
**indication [1]** 15/6
**indications [1]** 16/19
**individual [1]** 21/19
**individualized [1]** 21/12
**individuals [1]** 7/21
**inferences [1]** 24/25
**information [3]** 8/5 17/3 18/13
**informed [1]** 11/22
**initial [1]** 20/21
**initially [1]** 25/23
**instead [2]** 22/1 30/5
**Institute [1]** 29/18
**interest [18]** 6/11 6/16 8/23 9/13 9/14 10/14 10/18 11/1 11/2 11/3 12/11 12/25 13/10 13/23 15/1 15/19 18/18 22/13
**interesting [1]** 18/16
**interestingly [1]** 13/18
**interim [2]** 5/21 8/4
**interline [1]** 14/13
**intermodal [2]** 17/22 18/6
**internal [2]** 15/21 16/4
**interview [1]** 7/20
**into 2013 [1]** 16/19
**invest [2]** 14/15 15/9 15/10 15/16 21/25 22/1
**investigation [1]** 6/24
**investing [1]** 13/25
**investment [1]** 23/22
**invests [1]** 23/24
**involved [5]** 7/9 16/14 25/16 32/20 32/21
**irrespective [2]** 13/9 13/10
**is [93]**
**issue [8]** 6/10 6/16 7/24 8/6 17/10 23/20 28/19 29/7
**issued [1]** 6/22
**issues [5]** 8/12 19/16 19/24 20/16 24/13
**it [77]**
**it's [16]** 5/20 8/19 9/3 11/8 14/13 15/7 18/23 22/2 23/14 24/2 24/18 25/2 27/1 27/20 31/22 32/19

**J**

**January [1]** 16/5
**John [2]** 2/13 4/18

**john.nanpes [1]** 2/17
**jointly [1]** 29/14
**JUDGE [3]** 1/11 11/21 11/25
**July [3]** 9/12 9/21 18/12
**July 31st [1]** 9/21
**just [41]**

**K**

**keep [2]** 5/8 23/12
**keeping [1]** 29/8
**keeps [1]** 11/1
**Ken [1]** 4/20
**Kent [1]** 2/7
**kgardiner [1]** 2/10
**Kippur [1]** 33/3
**knew [2]** 9/20 22/13
**know [25]** 5/10 5/20 7/3 9/11 10/1 10/1 12/8 12/10 13/13 13/15 13/22 13/24 14/2 14/21 21/17 21/22 23/15 26/1 26/7 27/23 31/10 31/14 31/16 32/21 32/22
**knowing [1]** 31/7

**L**

**L.L.P** [1] 2/8
**language [1]** 32/7
**large [1]** 5/5
**last [10]** 8/21 10/24 11/20 11/21 17/7 18/10 18/24 22/21 26/21 30/22
**later [5]** 5/18 11/22 13/9 18/24 28/11
**LATHAM [2]** 2/2 4/14
**Law [1]** 29/17
**lays [1]** 14/13
**lead [1]** 20/24
**learn [2]** 9/6 24/18
**learned [6]** 6/6 6/21 8/15 12/1 12/7 19/19
**least [3]** 9/20 13/17 16/20
**least 2010 [1]** 13/17
**leaving [1]** 31/9
**let [3]** 6/2 9/11 23/15
**let's [1]** 24/15
**Lewis [2]** 2/18 4/17
**lied [1]** 13/2
**light [5]** 7/14 19/6 24/13 24/17 25/3
**like [11]** 8/25 9/4 9/14 14/5 16/21 17/6 22/9 24/14 28/18 30/21 32/9
**line [3]** 14/14 18/20 21/16
**Lisa [4]** 3/1 32/5 33/8 33/15
**list [1]** 5/7
**listed [2]** 18/19 18/20
**listen [1]** 24/15
**literally [1]** 13/20
**litigation [12]** 1/4 4/3 6/19 9/15 9/21 14/3 16/14 16/17 16/23 16/25 22/2 31/23
**little [1]** 9/5
**LLP [3]** 1/16 2/14 2/18
**long [5]** 15/25 17/9 26/4 28/6 31/22
**look [4]** 14/24 14/24 22/5 25/23
**looking [2]** 8/3 13/6
**looks [4]** 14/5 14/14 15/15 16/20
**lose [1]** 27/14
**lot [7]** 8/22 9/7 17/12 24/5 24/6 31/20 32/18
**lw.com [1]** 2/5

**M**

**Macartney [4]** 16/6 16/6 16/9 16/15
**made [3]** 17/19 20/15 20/24
**Madison [1]** 1/20
**magic [1]** 32/7
**mail [1]** 15/13 16/24
**mails [1]** 18/12
**maintained [2]** 15/25 17/10

**major** [1]  27/13
**make** [9]  5/9 15/18 18/25 19/5 19/17 19/25 24/25 30/13 32/10
**makes** [6]  8/11 21/22 23/1 25/3 28/13 32/17
**making** [2]  21/18 22/17
**man's** [1]  22/6
**manage** [1]  11/5
**mandate** [2]  23/5 23/5
**manipulator** [1]  22/7
**many** [5]  5/4 10/2 12/22 17/24
**March** [1]  14/4
**Mart** [1]  21/15
**mask** [1]  21/19
**MasterCard** [1]  22/1
**materials** [2]  7/20 24/19
**matter** [11]  5/8 6/7 6/12 6/15 7/15 7/16 10/12 17/13 24/19 30/8 33/10
**matters** [1]  24/17
**may** [12]  7/21 9/13 13/1 15/14 17/23 18/5 21/19 24/11 26/9 27/14 31/9 32/18
**maybe** [4]  28/22 29/19 32/14 32/20
**MC** [1]  1/4
**McKinney** [1]  2/19
**MDL** [1]  1/4
**me** [4]  6/2 13/15 28/14 30/2
**MEAGHER** [1]  2/14
**mean** [3]  20/18 26/25 32/8
**meaningful** [1]  7/22
**means** [1]  28/18
**measures** [1]  19/2
**mechanical** [1]  3/24
**meeting** [2]  16/20 16/22
**meetings** [1]  16/19
**meets** [1]  31/3
**memo** [2]  16/4 17/14
**merged** [2]  9/18 14/1
**merits** [1]  24/25
**mhausfeld** [1]  1/18
**Michael** [2]  1/14 4/5
**microphone** [1]  5/13
**might** [3]  5/23 12/3 21/5
**million** [2]  12/15 13/24
**mind** [2]  12/22 12/23
**Miscellaneous** [1]  4/2
**model** [3]  23/5 23/6 23/6
**moment** [2]  8/25 14/11
**Monday** [4]  7/18 22/6 26/18 28/9
**Montgomery** [1]  2/2
**Moon** [1]  5/7
**more** [9]  7/22 8/22 11/11 14/23 16/20 18/22 18/23 32/20 32/22
**MORING** [3]  2/8 4/21 4/23
**morning** [12]  4/5 4/7 4/9 4/11 4/13 4/16 4/18 4/22 6/1 9/3 29/19 30/9
**most** [3]  15/3 18/16 23/1
**move** [5]  10/21 18/11 23/10 24/7 26/16
**moving** [1]  22/25
**Mr** [12]  4/25 5/14 5/25 8/7 8/9 16/6 16/15 27/12 28/10 32/17 32/17 33/2
**Mr.** [12]  8/16 8/25 18/22 19/10 19/20 20/8 21/7 22/10 24/15 31/6 32/14 32/16
**Mr. Cross** [7]  8/25 19/20 21/7 22/10 24/15 31/6 32/16
**Mr. Rausser** [1]  20/8
**Mr. Wall** [3]  8/16 18/22 19/10
**Mr. Wall's** [1]  32/14
**Ms** [1]  5/7
**much** [2]  30/23 32/25
**multiple** [1]  16/20
**Murray** [1]  2/13
**must** [1]  23/8

**muster** [1]  23/7
**my** [8]  10/5 12/22 12/22 20/22 25/23 25/24 26/15 29/9

**N**

**named** [1]  16/5
**Nannes** [2]  2/13 4/18
**nature** [2]  6/6 8/12
**necessarily** [1]  26/7
**necessary** [2]  29/12 30/20
**need** [8]  5/13 14/23 23/2 23/2 23/3 24/21 25/11 26/9
**needless** [1]  8/17
**needs** [1]  8/6
**Neuwirth** [6]  1/19 4/8 8/7 27/12 28/10 32/17
**never** [1]  31/10
**New** [4]  1/21 2/15 29/16 29/23
**next** [5]  10/13 20/7 30/17 30/19 33/1
**no** [17]  1/4 1/4 6/5 8/9 10/11 10/15 10/16 10/19 11/1 11/2 11/8 15/6 18/17 22/3 22/4 22/12 23/21
**Nobody** [1]  22/20
**Norfolk** [2]  2/13 4/19
**not** [44]
**note** [5]  12/15 14/4 14/5 14/7 14/8
**notes** [5]  5/8 5/9 9/8 14/25 15/2
**nothing** [1]  26/12
**notice** [1]  6/4
**November** [8]  8/3 23/11 24/9 25/19 25/24 25/24 26/16 30/20
**November 10th** [1]  26/16
**November 12th** [2]  25/19 30/20
**now** [8]  9/19 12/8 12/9 17/10 21/11 22/16 23/17 28/20
**number** [4]  16/19 16/25 17/1 17/16
**NW** [4]  1/15 2/8 2/15 3/2
**NY** [1]  1/21

**O**

**o'clock** [1]  28/6
**O'Mara** [2]  2/1 4/14
**obtained** [1]  17/3
**obviously** [5]  15/18 19/6 19/12 19/15 22/15
**occurred** [2]  7/23 24/20
**October** [2]  1/5 30/18
**October 21** [1]  30/18
**of 2010** [1]  14/12
**of 2011** [2]  16/5 17/15
**of 2012** [2]  12/14 12/20
**of 2013** [2]  14/4 15/14
**of 2014** [2]  18/12 18/12
**off** [1]  29/3
**officer** [1]  27/21
**Official** [1]  3/1
**Oh** [2]  28/3 29/24
**oil** [1]  18/4
**okay** [12]  7/6 8/7 8/16 8/19 19/9 21/3 23/11 25/9 30/2 31/12 32/12 33/1
**once** [3]  6/6 11/20 30/3
**one** [24]  4/25 5/23 8/21 9/19 12/21 13/6 13/12 14/7 15/17 16/20 17/6 17/9 17/17 19/11 21/7 21/9 26/16 26/20 28/15 28/16 30/10 30/11 30/22 32/20
**ones** [1]  13/4
**ongoing** [1]  14/10
**only** [6]  12/8 13/19 28/5 31/19 32/9 32/18
**OnPoint** [19]  6/23 10/4 10/6 10/10 10/13 10/17 11/7 13/16 13/20 14/14 15/22 16/4 16/6 16/12 16/15 16/21 16/25 17/14 18/25
**open** [3]  23/12 26/20 29/8

**opportunity** [6]  3/8 7/12 7/19 8/13 26/12 30/24
**opposed** [1]  22/18
**opt** [2]  6/19 7/10
**opt-out** [2]  6/19 7/10
**option** [1]  26/2
**options** [1]  23/12
**or 2014** [1]  16/21
**or the** [1]  29/16
**order** [6]  7/20 11/21 11/21 25/7 31/15 32/11
**ordinary** [1]  8/18
**org** [2]  18/19 18/20
**organizational** [1]  18/19
**original** [2]  12/9 22/4
**originally** [2]  5/3 25/12
**other** [13]  5/10 6/25 7/2 7/13 10/14 11/6 15/17 17/8 18/6 24/6 28/8 29/7 31/6
**otherwise** [3]  6/17 6/18 20/20
**our** [10]  6/2 6/10 6/11 6/14 14/22 17/24 19/11 19/18 23/21 27/24
**ourselves** [1]  11/13
**out** [16]  5/18 6/19 7/10 11/12 12/2 14/13 17/6 17/12 17/15 17/18 21/12 23/17 23/24 24/14 29/15 32/15
**outside** [1]  31/25
**over** [3]  8/25 16/8 26/4
**overcharge** [1]  18/3
**overcharges** [2]  17/11 18/8
**own** [3]  13/23 20/20 21/15
**owner** [1]  22/18
**ownership** [5]  9/13 10/14 10/18 11/2 11/2

**P**

**Pacific** [2]  2/1 4/15
**pages** [1]  24/5
**paid** [3]  12/15 13/24 14/6
**part** [5]  10/24 18/5 25/25 26/21 30/23
**parte** [1]  31/1
**particular** [3]  9/23 15/4 18/15
**parties** [1]  5/17
**pass** [1]  23/6
**past** [1]  10/12
**PAUL** [1]  1/10
**Pennsylvania** [1]  2/8
**people** [5]  5/4 16/14 16/22 26/21 32/19
**people's** [1]  31/8
**percent** [3]  15/5 15/8 15/10
**percentage** [1]  14/17
**performed** [1]  11/7
**period** [1]  16/1
**permission** [1]  8/24
**Peroxide** [1]  21/17
**person** [3]  16/15 32/20 32/20
**perspective** [2]  26/16 31/9
**place** [2]  30/16 30/19
**plaintiff** [1]  6/11
**plaintiffs** [16]  1/14 4/6 4/8 4/10 4/12 5/18 6/3 8/4 10/23 11/14 20/13 20/24 21/11 23/4 23/12 28/17
**plaintiffs'** [3]  12/2 19/1 25/4
**plan** [1]  30/15
**player** [1]  21/20
**plays** [1]  29/7
**please** [1]  4/4
**point** [19]  9/4 10/4 10/20 12/24 13/9 13/14 15/18 17/15 17/18 18/24 20/4 20/18 21/7 23/22 24/20 25/2 30/22 32/14 32/17
**pointed** [1]  17/12
**points** [3]  15/17 17/9 19/23
**position** [3]  8/20 13/13 18/8
**positions** [1]  15/23

**positives** [1]  23/7
**possibility** [1]  28/8
**possible** [1]  23/9
**Possibly** [1]  27/6
**postponed** [1]  25/7
**potential** [2]  6/11 14/15
**practically** [1]  23/1
**prejudge** [1]  32/21
**prejudiced** [1]  23/23
**premise** [1]  17/24
**prepare** [2]  6/16 32/6
**prepared** [3]  10/21 17/14 19/19
**present** [2]  6/8 25/7
**presentation** [1]  19/12
**preservation** [1]  20/4
**preserve** [2]  19/2 20/5
**pretenses** [1]  21/11
**pretty** [4]  10/23 14/13 26/25 31/2
**price** [2]  16/8 18/4
**principally** [1]  16/16
**principals** [1]  10/2
**prior** [1]  27/23
**private** [2]  5/22 5/23
**probably** [5]  12/23 13/7 13/13 21/6
26/22
**problem** [2]  26/6 28/15
**problematic** [1]  25/25
**proceed** [1]  8/19
**proceedings** [2]  3/24 33/10
**produce** [3]  11/19 12/3 20/12
**produced** [6]  3/24 7/1 7/3 7/20 19/14
21/14
**producing** [1]  20/19
**production** [5]  9/2 20/21 20/23 20/24
24/7
**Professor** [14]  9/12 9/22 12/12 12/14
13/23 15/13 15/23 15/25 16/10 16/18
17/19 18/13 18/17 19/1
**profits** [1]  16/3
**programs** [1]  16/7
**promissory** [5]  12/15 14/4 14/5 14/25
15/2
**promptly** [1]  23/3
**proposed** [1]  8/11
**protective** [3]  11/20 31/15 32/11
**provide** [2]  20/23 31/14
**provided** [2]  20/23 31/14
**provides** [1]  16/25
**providing** [1]  14/12
**purchased** [3]  6/18 10/19 12/14
**purchases** [1]  14/8
**purchasing** [1]  18/14
**purpose** [4]  13/25 16/2 19/18 24/15
**pursuant** [2]  6/21 20/19
**put** [5]  5/6 27/8 29/9 32/7 32/8

**Q**

**quality** [1]  13/3
**question** [9]  8/23 10/13 10/24 13/7
14/22 20/7 23/19 30/25 31/3
**questions** [9]  10/22 10/12 12/21 12/22
16/25 19/20 20/1 22/10 24/6
**quickly** [1]  5/4
**QUINN** [2]  1/20 4/8
**quinnemanuel.com** [1]  1/23
**quite** [1]  8/18

**R**

**rail** [11]  1/3 4/3 4/17 6/19 7/10 14/2
15/14 16/16 16/23 17/15 18/14
**railroads** [2]  17/13 17/22
**Rails** [1]  15/15

**Railway** [1]  4/19
**raise** [1]  6/18
**raised** [4]  7/23 19/24 20/10 24/13
**raises** [1]  24/6
**raising** [1]  19/16
**ramifications** [1]  26/8
**Rausser** [21]  6/12 6/14 6/16 6/23 7/9
9/13 9/22 12/12 12/14 15/13 15/23
15/25 16/10 17/19 18/13 18/17 19/1
20/8 20/25 23/5 23/6
**Rausser's** [5]  6/23 13/23 16/18 20/13
21/15
**RE** [2]  1/3 4/3
**reach** [1]  27/3
**reached** [2]  11/19 12/2
**read** [1]  10/25
**ready** [3]  22/24 23/23 28/10
**really** [4]  10/12 10/20 23/15 26/3
**reason** [2]  8/10 9/11
**reasons** [2]  24/21 31/6
**recall** [2]  15/25 17/23
**receive** [1]  10/22
**received** [5]  9/2 11/14 11/17 18/18
19/15
**receives** [1]  15/1
**receiving** [1]  15/16
**recent** [1]  25/3
**recently** [1]  6/2 6/9 19/14
**record** [8]  4/4 5/24 13/8 23/3 24/25 25/8
30/24 33/9
**recorded** [1]  3/24
**recover** [2]  16/2 16/7
**recovering** [1]  14/2
**referred** [2]  15/16 19/23
**refers** [2]  15/8 15/15
**regard** [1]  8/6
**regret** [1]  24/12
**Reinhart** [1]  2/13
**relationship** [7]  10/9 12/24 12/25 13/16
13/21 14/11 18/17
**reliable** [1]  22/20
**relief** [2]  26/10 28/18
**remember** [2]  14/1 22/4
**reminded** [1]  23/4
**Reporter** [2]  3/1 3/1
**reporter's** [1]  5/8
**reports** [2]  13/4 17/19
**represented** [1]  6/18
**representing** [1]  9/1
**reputation** [1]  31/10
**reputations** [1]  31/8
**request** [1]  7/18
**requested** [3]  6/25 7/2 24/12
**requesting** [1]  19/17
**rescheduled** [1]  8/1
**reshuffled** [1]  27/6
**resolve** [2]  22/23 28/19
**response** [2]  8/14 20/15
**result** [2]  8/21 23/16
**resurrected** [1]  31/10
**retained** [3]  20/18 20/22 20/25
**return** [1]  29/10
**reveal** [1]  31/24
**revelations** [1]  25/3
**revenue** [4]  14/17 14/19 14/25 15/5
**review** [1]  6/24
**right** [8]  10/7 11/4 21/12 23/17 26/15
29/3 29/9 32/3
**room** [2]  3/2 13/12
**RPR** [3]  3/1 33/8 33/15
**ruling** [1]  21/17
**running** [2]  12/21 12/22

**S**

**safe** [1]  25/15

**said** [14]  5/3 9/25 10/11 10/15 10/15
10/16 10/19 10/19 11/15 18/17 21/7
21/13 24/15 24/17
**same** [2]  5/24 14/7
**San** [2]  2/3
**Sathya** [1]  1/15
**Satya** [1]  4/11
**say** [9]  8/17 9/4 10/3 14/25 15/3 17/19
19/11 23/13 28/21
**saying** [1]  21/5
**says** [3]  14/19 18/3 23/5
**schedule** [3]  8/2 24/10 25/24
**scheduled** [2]  5/16 7/18
**schedules** [1]  27/7
**scheduling** [1]  26/13
**scope** [2]  14/13 31/7
**seal** [7]  5/2 5/9 31/11 31/14 32/6 32/9
32/15
**sealed** [5]  5/7 5/19 5/20 5/23 30/25
**sealing** [2]  5/19 31/4
**security** [1]  9/7
**see** [7]  6/5 7/12 15/20 18/10 27/3 27/9
33/1
**seeing** [1]  33/2
**seeking** [1]  28/18
**seems** [2]  12/10 16/15
**seen** [1]  14/23
**segregated** [1]  15/7
**segregates** [1]  14/19
**selling** [1]  21/21
**senior** [1]  27/20
**sense** [4]  8/11 21/8 25/3 28/13
**sentencing** [1]  26/20
**separate** [4]  20/22 21/1 21/6 28/25
**separately** [1]  20/17
**September** [1]  13/19
**September 30th** [1]  13/19
**serious** [4]  6/10 19/16 31/3 32/2
**seriousness** [5]  7/15 7/15 8/12 24/13
25/4
**served** [1]  11/11
**services** [19]  9/16 9/19 9/25 10/10 10/15
11/3 11/7 11/18 12/12 12/16 13/17
13/22 13/25 14/9 14/12 17/4 17/5 17/5
18/18
**set** [3]  25/13 25/14 25/15
**Seth** [2]  1/15 4/9
**setting** [2]  26/6 28/20
**Settlement** [15]  9/16 9/19 9/25 10/10
10/15 11/3 11/18 12/12 12/16 13/16
13/22 13/25 14/8 17/5 18/18
**share** [1]  11/4
**she** [2]  5/9 32/6
**she'll** [1]  32/12
**shipments** [1]  18/1
**shipper** [3]  7/10 17/22 18/5
**shippers** [1]  17/13
**shocking** [1]  8/18
**short** [2]  6/4 30/10
**should** [15]  5/20 6/8 8/1 8/20 15/9 18/11
22/6 24/9 25/6 25/14 28/22 29/3 30/25
31/11 32/15
**show** [1]  22/11
**sides** [5]  5/1 13/8 20/19 24/22 25/7
**signed** [1]  11/21
**since** [3]  14/11 21/16 28/10
**situation** [2]  16/13 31/18
**SKADDEN** [1]  2/14
**skadden.com** [1]  2/17
**SLATE** [1]  2/14
**so** [45]
**soliciting** [1]  9/20
**some** [16]  8/3 9/13 9/22 10/8 10/11 12/6
13/17 18/6 19/22 19/23 22/13 22/24

**S**

some... [4]  27/2 31/6 32/7 32/14
somebody [3]  23/6 25/14 28/21
somehow [2]  15/7 23/23
someone [1]  16/5
something [5]  9/14 11/11 15/9 30/21 32/9
soon [1]  23/9
sorry [5]  12/18 14/6 26/3 28/4 29/24
sort [2]  9/8 21/8
Southern [2]  2/13 4/19
speak [2]  5/13 18/22
speaking [1]  25/16
specifically [2]  16/23 18/13
specifics [1]  18/11
specified [1]  16/8
Spectrum [5]  9/18 9/20 14/1 14/2 14/6
spoken [1]  7/25
stage [1]  18/2
stake [1]  31/8
standards [2]  5/23 31/3
start [1]  9/10
started [2]  9/6 10/2 15/20
starting [2]  9/5 24/18
state [1]  13/8
stated [1]  31/6
statements [1]  15/21
STATES [2]  1/1 1/11
status [4]  1/10 29/20 30/16 30/18
stenography [1]  3/24
Stephen [2]  1/19 4/7
stephenneuwirth [1]  1/23
steps [3]  8/14 8/19 19/5
still [2]  9/4 25/11
stopped [1]  28/6
story [1]  27/11
Street [2]  1/16 2/2
strength [1]  21/23
stuff [2]  12/7 22/14
subpoena [3]  11/18 12/4 20/19
subpoenaed [5]  7/1 7/2 7/4 7/5 7/13
subpoenas [6]  6/22 11/12 11/12 20/12 20/13 20/15
substantive [1]  19/23
such [3]  6/4 17/22 18/6
sufficient [1]  31/15
suggesting [1]  19/4
Suite [3]  1/17 2/3 2/19
sukkah [1]  25/17
summary [1]  9/1
Supreme [1]  21/15
surcharge [4]  1/3 4/3 14/3 16/7
surcharges [2]  16/1 17/20
sure [8]  13/11 19/5 19/22 20/4 21/4 27/5 29/17 29/18

**T**

take [3]  8/14 13/12 30/19
taken [5]  15/23 18/8 19/2 19/5 32/15
taking [3]  7/16 22/8 25/4
talk [3]  18/24 21/9 32/5
talked [5]  5/21 14/11 23/13 25/9 25/23
talking [1]  16/22
talks [2]  10/8 17/25
Tara [1]  2/13
target [1]  8/1
tell [3]  5/10 20/25 23/16
tells [1]  15/9
temple [1]  25/17
temporarily [1]  25/6
tentatively [2]  26/6 27/9
terminate [1]  13/21
terms [4]  13/9 19/24 31/7 31/23

testifying [2]  11/7 14/20
testimony [2]  12/9 22/4
than [4]  5/10 8/22 16/20 32/20
thank [4]  6/3 19/8 32/23 32/24
Thanksgiving [1]  26/21
that [191]
that's [17]  8/21 11/8 11/11 11/13 12/21 13/7 13/11 13/11 14/22 17/5 23/11 24/24 26/22 28/8 28/25 29/25 32/1
their [7]  11/22 13/21 17/20 20/20 21/11 23/12 23/24
them [20]  8/12 10/1 10/1 11/18 11/19 12/2 12/12 13/18 15/3 15/8 15/9 15/16 17/17 17/18 19/14 21/21 21/22 22/13 25/5 25/13
themselves [2]  8/5 31/25
then [7]  10/9 10/23 22/15 25/12 25/19 27/9 32/10
there [29]  5/4 6/5 6/10 6/25 8/1 8/12 10/9 10/20 11/11 11/11 12/11 12/22 15/12 15/21 16/19 17/12 18/12 18/14 19/3 19/25 20/20 22/24 26/13 29/19 30/4 30/14 30/18 31/20 32/18
there's [17]  8/22 9/17 14/7 15/6 15/18 16/23 21/13 21/24 22/3 22/4 23/21 24/3 24/5 27/22 27/23 31/2 32/20
Therefore [1]  24/21
these [16]  9/6 10/12 14/1 14/24 15/2 18/9 19/13 19/13 19/15 19/25 20/12 20/12 20/13 20/16 24/17 25/3
they [35]
they're [7]  9/7 9/19 16/22 20/9 21/13 23/15 24/18
thing [5]  18/10 19/11 21/7 28/16 28/16
things [8]  9/8 17/6 17/7 18/9 21/9 26/17 27/6 30/10
think [28]  6/3 6/5 8/9 8/10 8/18 8/22 8/24 9/3 13/7 13/19 15/9 18/11 18/23 19/3 20/11 21/4 24/3 28/13 28/24 29/6 29/19 30/6 31/11 31/17 31/21 32/1 32/16 32/19
thinks [2]  22/16 25/14
this [79]
those [13]  11/5 11/12 12/4 12/5 14/16 18/15 19/5 20/15 22/10 24/21 26/2 28/9 29/23
thought [6]  10/20 13/12 22/16 22/25 28/18 28/21
three [16]  13/4 25/11 25/12 25/14 25/15 28/9
threshold [1]  16/9
thresholds [1]  17/21
through [7]  9/6 12/22 12/22 17/17 18/11 20/14 25/21
Thursday [1]  26/19
Tim [1]  4/14
time [13]  7/19 8/3 8/5 14/8 18/3 23/21 24/8 24/21 27/2 28/19 29/18 30/7 31/11
Timothy [1]  2/1
tip [1]  9/5
title [1]  18/21
titled [1]  33/10
to 2010 [1]  13/22
today [11]  11/13 12/5 19/18 20/2 24/7 24/24 25/24 29/11 29/14 29/14 30/16
together [1]  5/2
told [2]  21/1 22/12
too [4]  5/5 6/7 24/14 31/20
took [1]  14/4
totally [1]  26/20
town [1]  29/15
track [1]  24/4
transactions [1]  7/9
transcribed [1]  30/23

transcript [10]  1/10 3/24 5/9 31/13 31/14 31/18 32/6 32/7 32/8 33/9
transcription [1]  3/24
Transportation [1]  4/23
travel [1]  26/22
tried [1]  23/25
troubling [2]  19/21 19/24
true [1]  22/4
truncated [1]  25/13
try [1]  9/6
trying [2]  21/21 22/9
turn [1]  8/25
turning [1]  12/1
turns [1]  23/24
two [13]  8/19 10/12 11/12 13/4 14/1 17/8 18/9 23/13 25/13 25/18 26/17 29/10 30/10
TX [1]  2/20
typical [1]  10/23

**U**

U.S [1]  3/2
ultimately [3]  18/2 26/8 32/21
ultra [1]  24/4
unclear [2]  17/2 24/20
unclear to [1]  17/2
uncover [1]  25/5
under [9]  5/2 5/9 23/7 23/7 31/11 31/14 32/6 32/9 32/15
underlying [2]  17/20 19/13
understand [8]  5/19 5/22 9/18 23/11 25/5 31/9 31/21 33/2
understanding [1]  7/22
understands [1]  31/24
understood [2]  5/1 32/24
undisclosed [2]  6/20 8/23
unfettered [1]  24/4
Unfortunately [1]  11/22
Union [2]  2/1 4/14
UNITED [2]  1/1 1/11
unknown [1]  32/18
unless [3]  5/9 25/14 29/11
unnecessary [1]  7/17
until [2]  5/10 32/21
up [5]  19/11 21/5 28/16 28/17 32/13
update [1]  28/23
upwards [1]  15/5
us [20]  6/4 7/19 11/10 14/18 17/2 19/16 19/21 19/24 20/1 20/22 21/1 22/12 22/25 23/1 23/25 25/10 25/18 26/18 28/4 30/14
use [3]  8/4 14/11 21/18
used [2]  9/17 22/14
using [3]  17/3 17/11 21/19

**V**

vacated [1]  30/17
value [2]  14/16 23/1
variety [1]  14/16
vary [2]  18/3 18/5
Veronica [2]  2/18 4/16
versus [1]  14/20
very [10]  19/11 19/16 22/1 22/5 22/11 22/12 25/25 27/20 30/23 32/24
Veterans [1]  26/17
video [1]  22/12
virtually [1]  25/25
Visa [1]  22/1
Visa/MasterCard [2]  22/1
vlewis [1]  2/19
voice [1]  31/2

**W**

wait [1]  26/4

**W**

**Wal [1]** 21/15
**Wal-Mart [1]** 21/15
**walk [1]** 18/11
**wall [7]** 2/1 4/13 5/14 8/16 16/13 18/22 19/10
**Wall's [1]** 32/14
**want [31]** 5/22 5/23 5/24 8/7 8/18 15/18 18/25 18/25 19/5 20/1 21/5 23/8 23/11 23/12 23/15 23/16 23/17 23/17 24/4 26/3 26/4 26/11 26/13 28/16 28/16 30/23 30/23 30/24 31/13 32/6 32/8
**wanted [3]** 9/10 19/17 19/25
**was [27]** 5/18 6/20 9/14 9/24 10/11 10/13 11/11 11/22 11/24 12/8 12/10 12/24 12/24 13/19 14/2 16/15 18/3 18/4 19/18 20/14 20/15 21/14 22/3 22/5 22/14 30/19 31/1
**Washington [5]** 1/5 1/17 2/9 2/15 3/3
**wasn't [2]** 5/16 10/20
**WATKINS [2]** 2/2 4/14
**way [4]** 22/3 22/4 23/21 28/5
**ways [2]** 14/17 17/24
**we [153]**
**we'd [3]** 17/6 23/14 28/18
**we'll [5]** 18/24 27/9 27/10 30/16 32/4
**we're [18]** 5/11 6/7 6/8 8/2 9/4 9/5 12/4 16/13 19/6 19/19 23/4 23/10 23/10 23/22 24/2 24/6 24/24 28/20
**we've [8]** 5/21 8/15 9/6 12/7 14/23 17/11 19/13 23/13
**weakness [1]** 21/23
**Wednesday [1]** 26/19
**week [23]** 25/25 26/1 26/16 26/17 26/19 26/20 26/22 26/23 26/23 26/24 26/24 27/11 27/15 27/16 27/23 27/25 27/25 28/2 28/3 28/11 29/20 30/20 33/2
**weeks [4]** 11/12 23/13 28/22 29/10
**weeks' [1]** 30/17
**well [12]** 5/3 6/3 6/23 7/1 11/25 14/22 19/16 20/3 25/12 27/19 27/22 31/5
**went [2]** 22/10 26/9
**were [17]** 5/15 6/25 6/25 7/18 10/21 11/19 13/4 13/6 16/1 16/7 17/20 20/12 20/13 20/23 21/9 22/22 28/5
**what [47]**
**what's [7]** 17/2 21/20 24/4 27/11 27/23 28/23 29/14
**whatever [2]** 28/18 30/8
**when [8]** 6/21 11/11 13/5 18/4 21/18 22/10 25/15 25/23
**where [16]** 9/11 9/24 11/13 14/8 14/19 14/20 16/13 16/21 16/24 18/12 18/19 21/4 21/8 23/22 27/14 27/15
**whether [8]** 9/24 10/25 20/25 22/17 25/2 30/25 31/3 31/15
**which [9]** 7/15 11/6 21/14 21/16 21/24 23/17 25/4 25/20 26/17
**who [7]** 7/21 9/1 16/11 16/15 23/24 26/22 31/23
**whom [1]** 7/4
**why [4]** 5/10 5/22 22/16 30/13
**widely [1]** 31/16
**will [14]** 6/5 6/15 8/4 15/24 17/16 18/3 19/3 20/2 24/7 30/15 30/18 30/20 32/6 33/2
**willing [2]** 23/10 24/2
**wind [1]** 22/9
**wise [1]** 29/7
**within [2]** 11/12 23/13
**witness [1]** 22/20
**won't [4]** 5/9 17/17 33/1 33/3
**word [1]** 11/8

**work [7]** 10/9 10/11 12/18 24/1 25/10 25/18 28/9
**works [6]** 8/3 16/6 16/12 24/10 28/4 28/14
**worse [1]** 32/18
**would [17]** 5/5 5/22 6/19 8/10 8/25 13/8 18/1 19/22 23/13 24/14 25/10 26/1 26/14 29/2 29/7 31/14 32/10
**wouldn't [3]** 21/6 26/11 27/25
**writes [1]** 16/7
**WTI [1]** 17/21

**Y**

**year [2]** 9/22 13/19
**years [2]** 10/2 13/4
**Yes [2]** 10/1 20/6
**yesterday [5]** 4/25 5/16 9/2 11/14 24/5
**yet [11]** 7/3 7/13 11/17 12/4 12/4 13/15 17/2 21/2 24/19 31/11 32/18
**Yom [1]** 33/2
**York [4]** 1/21 2/15 29/16 29/23
**you [35]**
**you're [1]** 13/13
**your [66]**
**yourselves [1]** 4/4