1

```
 1              UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF COLUMBIA

 3


 4


 5    IN RE RAIL FREIGHT FUEL SURCHARGE  :
      ANTITRUST LITIGATION - MDL NO. 1879: CA No.MC 07-489
 6                                       :
      --------------------------------------------------------
 7


 8             TRANSCRIPT OF STATUS CONFERENCE

 9          BEFORE THE HONORABLE PAUL L. FRIEDMAN

10          UNITED STATES SENIOR DISTRICT JUDGE

11              Tuesday, October 21, 2014

12    APPEARANCES:
      For Plaintiffs      HAUSFELD, LLP
13                        BY:  MICHAEL D. HAUSFELD, ESQ.
                          SETH R. GASSMAN, ESQ.
14                        1700 K Street, Suite 650
                          Washington, D.C. 20006
15                        (202)540-7200

16                        QUINN EMANUEL URQUHART & SULLIVAN, LLP
                          BY:  STEPHEN R. NEUWIRTH, ESQ.
17                            51 Madison Avenue, 22nd Floor
                              New York, NY   10010
18                            (212)849-7165

19


20       Proceedings reported by machine shorthand, transcript

21    produced by computer-aided transcription.

22


23


24


25
```

2

1    APPEARANCES (Continued):

2    For the Defendants:       GIBSON DUNN & CRUTCHER, LLP
                               BY:  RANDY MARTRO, ESQ.
3                                   200 Park Avenue, 48th Floor
                                    New York, NY   10166-0193
4                                   (212)351-3825

5                              CROWELL MORING
                               BY: KENT A. GARDINER, ESQUIRE
6                                   DAVID CROSS, ESQUIRE
                                    1001 Pennsylvania Avenue NW
7                                   Washington, D.C. 20004-2595
                                    (202)624-2578
8
                               LATHAM & WATKINS, LLP.
9                              BY: DANIEL M. WALL, ESQ.
                                    TIM O'MARA, ESQ.
10                                  505 Montgomery Street
                                    Suite 2000
11                                  San Francisco, CA 94111-6538
                                    (415)395-8227
12
                               SKADDEN ARPS, LLP.
13                             BY:  JOHN M. NANNES, ESQ.
                                    1440 New York Avenue NW
14                                  Washington, D.C.  20005
                                    (202)371-7500
15

16   For Gordon Rausser:       COBLENTZ PATCH DUFFY & BASS, LLP
                               BY:  JONATHAN R. BASS, ESQ.
17                                  One Ferry Building
                                    Suite 200
18                                  San Francisco, CA   94111
                                    (415)391-4800
19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          DEPUTY CLERK:  Miscellaneous Action In Re Rail

3    Freight Fuel Surcharge Antitrust Litigation — MDL No.

4    1869.

5          Counsel please identify yourselves for the

6    record.

7          MR. NEUWIRTH:  Stephen Neuwirth from Quinn

8    Emanuel for the plaintiff.

9          MR. HAUSFELD:  Good morning, Your Honor.

10   Michael Hausfeld for the plaintiff.

11         MR. GASSMAN:  Good morning, Your Honor.  Seth

12   Gassman for the plaintiff.

13         MS. COBB:  Alicia Cobb from Emanuel on behalf of

14   the class plaintiffs.

15         MR. TAYLOR:  Kyle Taylor from Quinn Emmanuel for

16   the plaintiffs.

17         MR. WALL:  Good morning, Your Honor.  Daniel

18   Wall and Tim O'Mara from Latham Watkins for Union Pacific.

19         MR. NANNES:  Good morning, Your Honor.  John

20   Nannes from Skadden Arps on behalf of Norfolk Southern

21   Railway Company.

22         MS. LEWIS:  Good morning, Your Honor. Veronica

23   Lewis, Gibson Dunn on behalf of BNSF Railway.

24         MR. MASTRO:  Randy Mastro from Gibson Dunn.

25         MR. GARDINER: Good morning, Your Honor.  Tim

4

1    Gardiner for CSXT.

2            MR. CROSS:  Good morning, Your Honor.  David

3    Cross from Crowell Moring on behalf of CSXT.

4            THE COURT:  So I assume that everybody not at

5    counsel table is, those on plaintiffs' side are okay for

6    plaintiffs to be here.  Those defense are okay with

7    defense to be here and vice versa.

8            MR. HAUSFELD:  We have one procedural matter,

9    Your Honor.

10           THE COURT:  Talk into the microphone.

11           MR. HAUSFELD:  One procedural matter, Your

12   Honor.  Jonathan Bass, representing Dr. Rausser, is here.

13   I'd like to move his admission pro hac for purposes of his

14   appearance.

15           THE COURT:  Is Dr. Rausser a party in this case?

16           MR. NEUWIRTH:  No, but he is a subject of the

17   concerns that were raised at the last hearing.

18           MR. WALL:  No objection.

19           MR. HAUSFELD:  Thank you, Your Honor.

20           THE COURT:  Fine.  Well, I guess my other

21   question is you say no objection, but you've got all these

22   protective orders.  We've got the original protective

23   orders, we've got several amended protective orders.  This

24   proceeding is under seal for the time being.  I don't know

25   what we're going to be talking about here. and I don't

5

1    know -- I mean, you're the ones who want this hearing.   I

2    don't know, I don't know what we're going to be talking

3    about here.  And all I care about is whether we're going

4    forward with the class certification here on November 11,

5    but to the extent that things are going to be discussed

6    that are subject to the protective order, can we just say

7    Dr. Rausser's lawyer can be here and hear everything

8    that's discussed here.  And is that okay with every

9    signatory to the protective order and every other

10   limitation that you've agreed to impose?

11        MR. WALL:  So I'm in the same position as you

12   are, Your Honor, about not being entirely clear what we're

13   going to talk about here today.  However, in the last

14   couple of weeks there have been moments when it has

15   certainly appeared that the plaintiffs were going to try

16   to abandon Dr. Rausser and that Dr. Rausser needed

17   independent counsel to take care of Dr. Rausser.  There

18   have been other moments where it appeared as though they

19   were going to stick with Dr. Rausser.  In all events we've

20   had a bunch of depositions at which we have allowed

21   Mr. Bass to participate and represent Dr. Rausser's

22   interests, and so we have no problem continuing that

23   through this hearing.

24        THE COURT:  All right.  So if that's Mr. Wall's

25   position, then I'll grant the motion for admission

6

1   pro hac vice.

2           MR. HAUSFELD:  Thank you, Your Honor.

3           THE COURT:  And let me just say also that I've

4   had a conversation with Judge Pratter in the Eastern

5   District of Pennsylvania and intend to have additional

6   conversations with her.

7           MR. WALL:  So we heard about this because of,

8   there happens to be some overlapping counsel between this

9   case and that case, and we understand that Mr. Hausfeld

10  raised some issues in that case about Dr. Rausser.  I'm

11  not privy to them because I'm not involved yet in it, but

12  it was reported to us that those communications with Your

13  Honor were going to take place.

14          THE COURT:  She doesn't want to know chapter and

15  verse what's going on in sealed proceedings, but she wants

16  to know whether she can go forward in her case and I guess

17  wants to know how to evaluate what's being represented to

18  her.

19          MR. WALL:  To be very clear, the defendants

20  don't believe these should be sealed.  We understand that

21  Your Honor wanted them sealed while we are trying to

22  gather the facts.  We know the facts.  We know enough of

23  the facts, and there's certainly no justification under

24  ordinary sealing standards to keep it sealed, so we have

25  no objection to any of this coming out in any form.

1            THE COURT:  I guess we can discuss that issue at

2    the conclusion of these proceedings, but for the time

3    being, of course, the transcript of the last proceeding

4    was under seal and the transcript and notes of this

5    proceeding will be under seal until I say otherwise.  All

6    right.  So we're going to move on to discuss whatever it

7    is we're going to discuss.

8            MR. HAUSFELD:  Yes, Your Honor.  And that was a

9    report back to Your Honor concerning the developments that

10   were disclosed during the discovery that was taken

11   pursuant to the concerns expressed by the defendants at

12   the last status hearing, concerns which we came to you as

13   soon as we learned of them because they raised serious

14   issues which would cause Plaintiffs' class counsel to make

15   decisions with regard to the continuing progress of the

16   litigation, particularly of class certification.

17            In the course of that, we discovered that for

18   the most part, despite the fact that -- in light of the

19   fact that the allegations raised are serious concerning

20   lapses, as the most diplomatic way of phrasing it, in

21   Dr. Rausser's conduct or behavior, the defendants were

22   aware of the potential back in March of 2014 and did not

23   disclose that to plaintiffs' counsel until we -- and we

24   did not learn of those issues until the subpoenas were

25   issued.

1              In the course of the discovery to date,

2    defendants have not only focused on the three matters that

3    they mentioned to the Court but raised through questioning

4    insinuations of Plaintiffs' counsels' participation, in

5    essence, failing to disclose or not disclosing those

6    matters to the Court or to the defendants, which clearly

7    sought to impugn the integrity of counsel from Quinn

8    Emanuel as well as myself.  And there have been no facts

9    unearthed despite the length of time with regard to that

10   kind of an accusation.

11             We learned for the first time yesterday that

12   whatever it is that the defendants claimed that they have

13   learned and regardless of the merits of the concerns

14   raised, the defendants acknowledged that they are not

15   moving to disqualify Dr. Rausser.  That puts us in a

16   position that if whatever it is they were concerned about

17   does not rise to the level of that kind of request on

18   their part, does this end the matter?

19             THE COURT:  Except for when he's cross-examined

20   and his credibility is attacked.

21             MR. HAUSFELD:  Exactly.  And with respect to

22   that, we believe that in light of the events, in light of

23   the discovery, we do not feel that it's in the best

24   interests of the class to put the class in the position of

25   having Dr. Rausser's credibility outside of the integrity

1    of his economics become an issue in the class

2    certification.  And so despite -- in light of the fact

3    that they are not moving to disqualify Dr. Rausser -- and

4    we do not want the class certification to become

5    distracted in terms of robustness and the integrity of the

6    economics by that kind of a sideshow -- we feel that it

7    would be in the best interest -- it is in the best

8    interest of the class to have another economist adopt and

9    verify, corroborate, stay within the bounds of the class

10   certification report as developed by Dr. Rausser, both

11   initially and after remand.  This is not inconsistent,

12   Your Honor, with what has occurred to date where the

13   defendants on remand abandoned Dr. Willig, substituted him

14   with Dr. Kalt, who raised criticisms that were never

15   raised by Dr. Willig in terms of opposition to

16   certification.

17       Where the first report, as Your Honor had

18   mentioned, by Dr. Rausser was done prior to any of the

19   issues raised in the last hearing was completed, we feel

20   that it would unduly prejudice and penalize the class not

21   to permit that replacement with a new lead economist

22   utilizing the same economics and methodologies as have

23   already been disclosed.  That would delay --

24       THE COURT:  Well, you're assuming that the new

25   economic -- economist would come to the same conclusions.

10

1   In other words, what you're offering up, I take it, is

2   that a new economist would come in and not do his or her

3   own independent analysis but with the expertise that that

4   economist has review what it is Dr. Rausser had already

5   done and decide whether the conclusions are the same?

6            MR. HAUSFELD:  Yes.

7            MR. WALL:  I think, I think another way to look

8   at it, Your Honor, which --

9            THE COURT:  Move over.

10           MR. NEUWIRTH:  I'm sorry.  I think the position

11  we're taking is that the new expert would only offer

12  opinions -- if the new expert is going to offer opinions,

13  they would only be within the parameters of what

14  Dr. Rausser previously offered.  Obviously the expert

15  would have to do work to be able to independently

16  determine that he or she is able to express those opinions

17  based his or her own independent determination; but I

18  think the point we're just trying to convey is that the

19  expert would be operating within the parameters of the

20  opinion Dr. Rausser had already expressed and would not be

21  embarking on an entirely new analysis, and I think that

22  that's consistent with what's been done in other courts

23  where this type of substitution that's been made under

24  similar circumstances.

25           THE COURT:  I understand, I think.

1          MR. HAUSFELD:  And, Your Honor, with respect to

2     your last insight, it would take time to get a new

3     economist, you know, to acquaint themselves so that we

4     would need to adjust the schedule, and we can do that in

5     conference with the defendants to permit that time for

6     that new economist to be as prepared as possible.  Again,

7     a schedule of completion of the review, the issuance of a

8     report in the economist's own words, a deposition of the

9     economist.  A proposed report by the defendants in

10    response and then the hearing set after that.

11          THE COURT:  Mr. Wall.

12          MR. WALL:  This is entirely news to us.  Let's

13    begin by remembering that it was the plaintiffs who

14    disrupted the schedule in this case that would have had us

15    already having completed the class certification argument

16    by coming to Your Honor ex parte and asking to have a

17    hearing.  I guess they told you that we were in it, but

18    they weren't.

19          THE COURT:  There was no affirmative

20    misrepresentation.  I drew an inference from the

21    conversation.

22          MR. WALL:  Okay.  And they were the ones who

23    said that they had learned that he had -- that Dr. Rausser

24    had an undisclosed conflict of interest, and it was

25    Mr. Neuwirth who was talking about seeking some sort of a

1   remedy at that time two weeks ago.  There have been

2   numerous conversations and emails in which we've tried to

3   get them to declare what it was that they wanted to do.

4   They've been unwilling to tell us and would not even tell

5   us prior to the beginning of this hearing in the

6   courtroom.  Apparently they have decided that the least of

7   some very bad options are to call to the bullpen and bring

8   in somebody to just take Dr. Rausser's testimony.

9         THE COURT:  I know you're from the west coast,

10  but if only Matt Williams had done that.

11        MR. WALL:  Yeah.  Well, you took the analogy

12  right out of my mouth.  You know, I mean, I'm sure that

13  Matt Williams wished he hadn't taken Zimmerman out.

14        THE COURT:  You're right.

15        MR. WALL:  But he made the decision and you

16  can't play the game over.  And we have been at this for

17  seven years chasing Dr. Rausser and his testimony around.

18  I can't even imagine how much money has been spent on it,

19  but it's probably, you know, upwards of $50 million,

20  something like that.

21        And now for what is a credibility issue, it's a

22  serious credibility issue.  It's a credibility issue that

23  we submit Your Honor should fully take into account in

24  considering his testimony.  They want to get him out of

25  the way and just have somebody else come in and sprinkle

1    holy water on his testimony and defend it without the

2    taint of this.  I guess this is being proposed without any

3    details.  We don't know who this person is.  We don't know

4    how long it will take to find him or her.  We don't know

5    what is supposed to happen, and it was sort of thrown on

6    us that we'll go and have a meet-and-confer and work this

7    out.

8         Well, I mean, it's not going to shock you that

9    our position is that we don't want to do it.  That that --

10   you don't get to replay the game.  And I don't just say is

11   that as a smirking Giants fan.  I say that because those

12   are -- those are the rules.

13         THE COURT:  I'm cheering for the Giants because

14   then they'll sort of vindicate us a little bit.

15         MR. WALL:  I'm with you on that.  No, I wouldn't

16   have taken him out either.

17         But the reality is is that we're here under

18   these circumstances where we're not at the beginning of

19   the case, we're not in some posture where we've got a lot

20   of flexibility.  We're here on a remand.  The remand is

21   written about Gordon Rausser's testimony.  Your Honor has

22   no choice but to consider whether it holds up in light of

23   *Baron*, whether it has the false positives and all of those

24   things.

25         And with all due respect, it's absolutely

1   bizarre that they want to have somebody other than the

2   author of the testimony come in and defend it.  You know,

3   they already have Dr. McClave who does a little bit of

4   that, and his role is essentially to sprinkle some holy

5   water on some of it.

6           But we want to cross-examine Dr. Rausser about

7   this.  We've taken his deposition something like eight

8   times in this case.  He's put in 928 pages of expert

9   report, not including appendices and exhibits and what

10  have you.  He relies on his merits testimony and his class

11  certification testimony.  It's all interrelated.  And

12  that's what we have done to get to this point.  And I get

13  it.  I mean, without getting deeply into it, what we know

14  is that despite the facade of being this University of

15  California professor, he is a speculator in class action

16  claims and has been for many years.

17          He does, in fact, have an undivided interest in

18  certain proceeds from these funds that this Cascade outfit

19  has, which despite his allegations that there's some sort

20  of undocumented agreement that restricts what he gets on

21  cases in which he testifies, are not restricted, and it's

22  very clear that he had at least some level of activity

23  that involved this case in particular.  And that's not --

24  it isn't disqualifying.  I'm kind of shocked somewhat that

25  Mr. Hausfeld said that they just found out yesterday that

1   we didn't think it was disqualifying.  I said that at the

2   last hearing.

3           It's a credibility issue.  It's not a

4   disqualifying.  And it is -- he's the one who's got to

5   stand and defend his work and sure, like any witness, like

6   Dr. Kalt, they are going to attack Dr. Kalt's credibility;

7   and nobody attacks it more vigorously than Dr. Rausser,

8   who basically calls him a liar at every turn.  But it's

9   time for Dr. Rausser to defend Dr. Rausser, not to have

10  someone else to be named later to come in for obviously

11  the singular reason that they don't want to be bothered

12  with what we've learned.  That isn't just.  That isn't

13  fair.  And it's obviously just this desperate measure to

14  try to get you to not think about this.

15          THE COURT:  All we're talking about -- all we're

16  talking about, and I know it's taken X number of years to

17  get here, is the class certification.  We're not talking

18  about the trial, if there is a trial; right?

19          MR. WALL:  I do think that it's very different

20  between class certification and trial because we are here,

21  as I said, on remand.  On class certification we have

22  certain instructions and there's a certain body of work.

23  It's also, *Baron* makes it clear this is now a question of

24  law, these issues.  It's not a jury deciding whether

25  somebody is credible or not.  And if they need to go to

1     the bullpen for trial, they can talk about -- we can talk

2     about that after class certification is resolved and see

3     what sanctions go with that and costs that they have to

4     make up.  But class certifications, it's basically in the

5     books, Your Honor.  We're done.  We're going to have a

6     hearing, we're going to have a few hours of testimony and

7     we're going to be done.  We should finish it.

8          THE COURT:  Well, let me ask you this.  I'll

9     hear from them.

10         MR. NEUWIRTH:  Your Honor, let me just very

11    briefly address a couple of points.  And let me preface

12    this by saying that nothing I'm saying today is meant to

13    challenge the integrity or character in any way of any of

14    the defense counsel here; we respect and like and this is

15    nothing personal.  But for Mr. Wall to stand here and

16    complain about the timing I think is very inappropriate in

17    this context.

18         On October 7th we received an email from Tim

19    O'Mara of Mr. Wall's firm, Latham and Watkins, saying that

20    as a professional courtesy that they were providing us

21    with an attached document.  That attached document is an

22    email dated March 10, 2014, to Scott Ballenger of

23    Mr. Wall's firm from a gentleman named Brod Montgomery who

24    was deposed last week and apparently is the person who

25    disclosed this issue to the defendants.

1          And in that email to Mr. Ballenger he says,

2     among other things, he is someone who worked that at

3     Cascade; he says that in his email, the company that said

4     that Dr. Rausser had an economic interest.  And he says,

5     "The reason for my email, I fear the company's involvement

6     with Gordon Rausser, majority owner in Onpoint Analytics,

7     could be a serious conflict of interest and an ultimate

8     problem for my sales personnel.  Mr. Rausser holds a

9     nonvoting percentage ownership in our companies,

10    specifically Cascade LLC.  I believe he has a 10 percent

11    interest in the company.  As a result, he stands to gain

12    directly from any purchases of claims made in the Rail

13    case.  He has been able to keep the company apprised of

14    all developments in the case, given he has 'insider'

15    information.  His model would also might have indirect or

16    direct benefit to him financially."  And then he talks

17    about other things.

18          THE COURT:  Let me ask you this.  Cutting to the

19    chase here.  Court of Appeals is going to look at this

20    again.  I don't want to get reversed again.  Shouldn't

21    they have a record that has Rausser's testimony in it?

22    Shouldn't -- they've had half of Rausser.  They've told me

23    that false positives, all this stuff that was discussed by

24    the experts and relating to the experts and the

25    econometric theory; and the record they are going to be

1    looking at is half of what went before and half of what

2    comes now.  I was not reversed.  I was not reversed.  It

3    was vacated and remanded to consider things, the impact of

4    the Supreme Court's decision on what I had already done.

5    That's part of the record.

6            And by way of example, to put it in the least

7    damaging light to you -- they would say it was more than

8    that -- they came up with the false -- they came up with,

9    excuse me.  They discussed -- they discussed this whole

10   false positives things.  That wasn't the only thing that

11   they suggested might be impacted by the Supreme Court's

12   decision.

13           You're the ones that told me it was limited to

14   that or that I could proceed -- you actually told me,

15   Mr. Hausfeld stood here and told me I could proceed on the

16   exact same record, which would have been exclusively

17   Rausser from the plaintiff's side.  And we didn't have to

18   have any further discovery, any further briefing,

19   anything.  It was all Rausser then, and I just had *Re*

20   *Comcast* and figured out what the Court of Appeals would

21   say if I agreed with you.

22           And it was the defense that said no, we got to

23   do more.  Well, it turns out both sides did more.  But a

24   piece of what the Court of Appeals is going to look at is

25   Rausser.  And they ought to have my views on his

1    credibility.  They ought to have him on the witness stand

2    being examined and cross-examined.  It's not going to --

3    it's not going to influence the jury.  I'm not a jury.

4    And if and when we get to trial, then it may -- then you

5    may have a stronger argument for starting over.

6            That -- I don't know what the law is, I suppose

7    there's no law that says you have to rely on the exact

8    same experts at trial that you relied on in the class

9    certification proceeding.  But we're not beginning the

10   class certification proceeding.  We're not even at a point

11   where all discovery has closed and this all emerged,

12   because it had never been -- I had never rendered a

13   decision, Court of Appeals never reviewed a decision,

14   suddenly this problem emerges after discovery is closed.

15   Mr. Wall would still have his arguments about how much

16   time and money were spent, but he wouldn't have the

17   argument that we're either in the ninth inning or the

18   seventh inning or some inning, but the Court of Appeals

19   has a record that they have a point of view about.  And it

20   includes a pristine Rausser.

21            MR. HAUSFELD:  Your Honor --

22            THE COURT:  And you know, I think that the

23   transcripts that go to the Court of Appeals on the

24   seventh, eighth and ninth inning should include -- I mean,

25   how can I -- you're going to stand here and tell me to

1    decide that nothing has changed except that if I had had

2    all of these facts before me before, I might have had some

3    views on Rausser's credibility.  If you had proposed to me

4    before the last class certification hearing what you're

5    proposing today, I might be more sympathetic.  But we're

6    half done with the class certification proceeding or more

7    than half done.  And I'm told, I think I haven't read the

8    opinion recently because it was so painful to read.  I

9    haven't read the opinion -- this is facetious --

10            MR. HAUSFELD:  It's sealed.

11            THE COURT:  Well, it may not be forever, and

12   Judge Brown may see it.  It's fine.

13            I haven't read it recently, but they went to --

14   they took some pains to say that they were not reversing

15   me.  They were not saying I was wrong, and you should be

16   happy that they didn't say I was wrong.  They said I

17   didn't consider everything that I should have considered

18   in light of what the Supreme Court had said.

19            And I need to apply that to Mr. Rausser and any

20   other experts that you have and to the experts that they

21   have and to what -- what the briefing has been

22   post-*Comcast* and post the Circuit's opinion, but also the

23   discovery because if you all hadn't agreed that some

24   further discovery and some further expert reports weren't

25   required, we would just be arguing *Comcast* on the

1    then-record.  But the then-record is not going to go away

2    when it gets to the Court of Appeals.

3              MR. HAUSFELD:  Your Honor, we don't want the

4    record to go away.  The record is what it is.

5              THE COURT:  Except that I didn't know anything

6    about Mr. Rausser's credibility.

7              MR. HAUSFELD:  But here is the difference, and

8    the issue is, as Your Honor pointed out, had we known of

9    these issues beforehand and as you said at the time before

10   the remand, we would have raised them immediately.  It's

11   regrettable, tragic where we are now that we have to --

12   all of us, except the defendants have to be put in this

13   position of making a decision with regard to what is the

14   record that's going up on appeal.

15             And as Your Honor has noted repeatedly, the

16   issue that the Court of Appeals felt it didn't address was

17   the false positives.  The issue which the Court of Appeals

18   asked you to look at as a result of their reading of

19   *Comcast* was the economics.  It's the credibility of the

20   economics which is at issue, not Dr. Rausser's errors in

21   judgment outside of the economics.

22             We are not changing the economics, either the

23   theories or the methodology.  We stand by those.  It

24   should not make a difference to the economics and the

25   methodology which personal economist advocates those

22

1      economics and those theories as long as the reliability

2      and the credibility of those economics and methodologies

3      are the issue on certification.

4             No one is trying to walk away from false

5      positives.  No one is trying to walk away from the

6      criticisms that have been raised by the substitute defense

7      economist after the remand.  We've got to deal with those.

8      But it should not be predicated upon a personal

9      credibility issue unrelated to the economics.  And there's

10     been no showing whatsoever that any of the economics put

11     forward by Dr. Rausser or criticized, you know, by

12     Dr. Kalt is at issue in any of the matters that have been

13     raised from the last hearing and this, the sealed

14     proceedings.

15            THE COURT:  Well, I suppose we can go forward on

16     the current state of the record without having any live

17     testimony.  I mean, I don't know how the defense can make

18     you call Dr. Rausser.  I can rely on his deposition and

19     his reports.

20            MR. NEUWIRTH:  Well, I would assume that what

21     the defendants would then do is tell the Court of Appeals

22     that this issue was here, that it wasn't properly

23     investigated by the District Court and that, therefore,

24     any findings you make this time around also had an issue

25     that the Court didn't properly look at.

1          We're trying to deal with the practical

2     realities of the situation, which is that we learned very

3     late in this process and came to the Court as soon as we

4     did learn about these issues.  They are issues that, as

5     Mr. Hausfeld said, don't have to do with the underlying

6     substance of the reports.  The Court of Appeals' issues

7     were not specific to Gordon Rausser, the individual.  They

8     had to do with the content of his reports, and all that

9     we're suggesting is that without proposing to change the

10    content, we would have to undertake to have another

11    economist determine whether he or she can tell the Court

12    that based on their own independent determination they can

13    adopt these positions and that they would be the person

14    who would present those positions to the Court.

15          Nothing would change about the substance of the

16    case, and we would run the risk, of course, that an

17    economist might say they are not willing to back up those

18    opinions.  But we're concerned that with the issues that

19    have come up, issues that the defendants have known about

20    since March and we only learned about much more recently

21    that we now have the Hobson's choice between going forward

22    with an expert that they will attack for these issues

23    which Mr. Wall described as credibility issues, and

24    there's a lot of cases and we could brief this for Your

25    Honor.

24

1          THE COURT:  Maybe that, I mean, Mr. Wall says he

2    didn't know what you were going to say until he walked in

3    here this morning.

4          MR. NEUWIRTH:  Well, what we were going to say

5    in terms of what was the next step, that may be, but the

6    issue of what was the underlying issue, they've clearly

7    noted that.  We just finished discovery late yesterday in

8    California; yesterday was the day Dr. Rausser was deposed.

9    And so Mr. Hausfeld and I literally did not have a chance

10   even to speak to each other in person or by phone until

11   this morning about what was the right thing to do in light

12   of a transcript that we got late last night of

13   Dr. Rausser's deposition.

14          THE COURT:  All right.

15          MR. HAUSFELD:  Your Honor, had we known of these

16   issues at the time that we were searching for an expert to

17   begin with, we might not have even chosen Dr. Rausser.

18          THE COURT:  Probably not.

19          MR. HAUSFELD:  But the issue is, do the

20   challenges now to Dr. Rausser affect the integrity of the

21   economics or his personal integrity?  And for purposes of

22   certification for the class, it clearly is apparent that

23   there's going to be an effort to leverage those potential

24   lapses in personal credibility into the credibility and

25   reliability of the economics.

1           As Mr. Neuwirth just said, one of the reasons

2    that we could not be certain before now as to what the

3    options were, because as Your Honor has suggested, maybe

4    it would be possible to go to proceed without any live

5    testimony, as we did before in certification.  But we had

6    to weigh the fact that then there was the potential for

7    this issue to be raised as a tangential matter that was

8    not considered.  All of which put us in a position that we

9    had to basically look at a number of balls in the air and

10   see where they were going, you know, to be managed best to

11   protect the overriding interest of the class as opposed to

12   any effort to discredit an individual for his individual

13   or personal lapses.

14           And that's what Mr. Neuwirth and I have the

15   greatest responsibility to do:  protect the interest of

16   the class and the integrity of the economics.  If we

17   cannot find an expert that will stay within the bounds,

18   then we're stuck.  If we can -- and the difficulty in that

19   is speaking to an economist and not only requesting

20   whether or not they would be willing to undertake that

21   position, but for them asking us How long would I have to

22   do that?  And that's been a principal response of the

23   economists that we've spoken to, over a dozen and a half.

24   What length of time are you giving me if the Court permits

25   this for us to be able to do this?  And until we came in

1    today, with all of this information that has been

2    uncovered in discovery, it wasn't clear, it wasn't clear

3    what Your Honor's position would be.

4           But we did plan for an alternative, and the

5    alternative would be to permit someone, another economist

6    to come in with regard to the theories and the methodology

7    that have already been laid out subject to the same

8    criticism that has already been put forward by the

9    defendants.  But we would need to know what time, if any,

10   we would have in order to engage that economist so that

11   they can be prepared.

12           MR. WALL:  Well, we have seen the limits of the

13   Matt Williams analogy, because Matt Williams stood up for

14   his decision.  It's a couple things I need to put on the

15   record because there was a very unfortunate effort to sort

16   of say that we've known about this for a long time and we

17   didn't do about it [sic].

18           The first thing is I would like to actually hand

19   up to the Court the email that started all of this so that

20   you can see what we got.  (Handing.)

21           This email came to us unsolicited on March 10,

22   2014.  It has a number of claims which honestly at the

23   time seemed kind of hard to believe.

24           THE COURT:  You gave me two copies of the same

25   thing.

1          MR. WALL:  They're the same thing.  Two copies

2     of the same thing, sorry.

3          We didn't know what to make of it.  We obviously

4     appreciated the seriousness of the issue, but we were also

5     aware that sometimes people who have left the company and

6     might have a dispute with their former employer might have

7     an ax to grind or something of that nature.  And there was

8     at least one statement in here, he has a statement at the

9     bottom of this, he says, "I understand that Mr. Rausser is

10    good friends with the judge."  We felt that was pretty

11    clearly not true, so we were -- we didn't know what to do.

12         What we did was -- no, we didn't bring it to

13    their attention.  Can you imagine if you were in our

14    position that you'd bring this to their attention?  If

15    this has value, it has value as impeachment.  You don't

16    share your impeachment material with your adversary.  We

17    investigated it, and we tried to do some things with

18    public sources and nothing really came of it.

19         And so we took a deposition.  We didn't take a

20    deposition about this.  It just so happens that in July

21    there was a deposition of Dr. Rausser, and literally at

22    the very end of the deposition we asked him about this.

23    And as I mentioned at the last hearing, he said very

24    coolly and matter-of-factly that he didn't have any --

25    that he knew about Cascade, but it was based upon

1    something that he had done with them in the past and he

2    didn't have any financial interests in them, that he

3    didn't have any financial interests in any company that

4    had brought claims in this litigation.

5            Well, we learned from Dr. Rausser yesterday that

6    he had a conversation about that, which he thinks was with

7    Plaintiffs' counsel after the depositions in July.  He

8    couldn't remember if it was one of the plaintiffs' counsel

9    or was it somebody else, but certainly in July Plaintiffs'

10   counsel knew absolutely that we had asked the question

11   about Cascade's settlement services, and they had access

12   to Dr. Rausser to ask him what that was about.  And

13   furthermore --

14           THE COURT:  They may have had a conversation

15   with someone that led to the incomplete errata.

16           MR. WALL:  Well, of course, because of privilege

17   issues we don't know how the errata came about.  The story

18   is that the errata was sent to them, to the lawyers

19   without doing anything, just flipped it to us, perhaps.

20   It's not a normal errata.  It's not one of your

21   run-of-the-mill typo corrections.

22           But if it is true that they didn't do anything,

23   they didn't say, Hey, Gordon, why are you changing a no to

24   basically a yes, that's not on us.  That's not our fault.

25   That provides no cause to blame us to kill the messenger

1    and to say that somehow, you know, we are the bad guys in

2    this.

3              It turns out that other than the comment about

4    Professor Rausser being friends with Your Honor, that the

5    substance that the substance of Mr. Montgomery's email is

6    true.  Some of the details are very nuanced because of the

7    agreements and what have you, but the substance is true.

8              So here we are.  We would not -- they are right,

9    we wouldn't have brought it up.  We would have been here

10   two weeks ago for a hearing and somewhere in the middle of

11   Dr. Rausser's cross-examination I would have asked him

12   questions about this, and we would have just proceeded

13   through.  They are the ones that panicked and realized

14   that you cannot separate the credibility of the man from

15   the credibility of his work; that you would not have

16   felt -- I mean, Your Honor relied on this man in

17   practically every sentence of your decision in this case.

18   The name Rausser appears 304 times in your opinion.  He is

19   cited on virtually every proposition.  That is the record

20   that went up to the D.C. Circuit.

21             The D.C. Circuit said Rausser's models are

22   essential to the plaintiffs' claims for class

23   certification.  No model, no predominance, no class

24   certification.

25             When we had a -- do you remember a year ago we

1    had an argument about what the remand meant, what the

2    scope was?

3              THE COURT:  Right.

4              MR. WALL:  And we filed briefs on that.  This is

5    the first sentence of the plaintiffs' briefs.  "The Court

6    of Appeals granted interlocutory review and remanded on a

7    single question:  whether the damages model sponsored by

8    plaintiffs' expert, Dr. Gordon Rausser, yields false

9    positives for so-called legacy contracts."

10             We disagree with the scope of the remand, but we

11   all agree that that's the bare minimum of the remand.  And

12   it is fantastic to suggest that there is some sort of

13   clean division that you or anybody else can make between

14   his personal honesty and integrity and the work that he

15   does so much of, which we've been telling you for years

16   it's ipsi dixit, that it's just stuff that he's just

17   asserting.

18             That's what they don't like about this.  It is

19   so hard in these cases to reveal the dissembling and the

20   misrepresentations and the liberties with the record that

21   an economist does when they filter it through the science

22   that they're selling.  This is not hard.

23             THE COURT:  Well, let me ask you this

24   hypothetical:  Let's suppose we were exactly where we are.

25             MR. WALL:  Uh-huh.

1          THE COURT:  And they came in and said, you know,

2     Our expert's been damaged and they are really going to do

3     a job on him when we put him on the stand.

4          MR. WALL:  Yes.

5          THE COURT:  So we want time, not to have a

6     substitute but to have a rebuttal.

7          MR. WALL:  A rebuttal?

8          THE COURT:  A rebuttal witness.  To come in and

9     to say they've attacked Rausser's credibility, torn him to

10    shreds, but I've done the same analysis, and the analysis

11    has integrity even if he doesn't.

12         You know, what choice do they have if they

13    withdraw their witness?  To go with no expert?  What

14    choice do they have -- you know, as I said before, I'm not

15    sure they have an obligation to call him so that you can

16    cross-examine him, and then we're stuck with your

17    attacking his credibility through other means.  If they

18    did call a rebuttal witness like the unknown, as-yet

19    unknown expert or someone to review all of his work, I

20    suppose you would still be on cross-examination saying to

21    him, When you reviewed his work were you aware of this,

22    this and that.  When you reviewed his work, did you know

23    that he -- you know, it's not as effective.

24         MR. WALL:  I don't think it's the same, which is

25    why they are making this request.

1          THE COURT:  But I mean, the question is what are

2     their options at this point?

3          MR. WALL:  I think their options are to play the

4     game out.  The thing that's bothers me more than anything

5     about what's happening here is I know the

6     cross-examination that I was going to do of Dr. Rausser.

7     And it's about things that I believe will make you find

8     that he's not a credible witness.  I didn't expect to have

9     this.  But there's a lot of other stuff.  I still want to

10    do that.  I still want to have the right to call him.  I

11    don't care if they want to call him.  I'll call him.  I

12    can call their expert.

13         And I want to put -- I want to put his

14    credibility writ large into the record, because it's not

15    just about this.  They are trying to get away with this,

16    Oh, this is a good man gone bad.  I'm sorry, I'm not

17    buying that.  Dr. Rausser's testimony is made of the same

18    stuff as his attempts to explain this.

19         THE COURT:  I don't know that we're going to

20    resolve this today, but I will say because I haven't

21    thought about it because, as I said, I didn't know what

22    was going to happen until I walked into this courtroom

23    here.  But from my perspective, the fact of the matter is

24    that we're not at square one.  I mean, not at

25    post-discovery square one.

1          MR. WALL:  Right.

2          THE COURT:  We are in the middle.  And the Court

3     of Appeals -- I mean, I forget the number you just

4     mentioned, the number of times I mentioned Rausser's name

5     in my opinion, but my opinion is based to a very, very

6     large extent on Rausser because essentially what we had

7     was Rausser saying all of these things and your expert

8     criticizing all of these things, and I agreed with him on

9     almost everything.

10          So that's the record that went to the Court of

11     Appeals.  The Court of Appeals has said -- they didn't say

12     You're wrong, we deny class certification, or they didn't

13     say You're wrong, start all over again.  They said You

14     need to take the new Supreme Court case law and apply it

15     to what you've already done with some additional stuff.

16     And you think it's a lot of additional stuff; the

17     plaintiff started out thinking it wasn't.  We're not at

18     the beginning.  So Rausser is essential.  Rausser is a

19     part of what I did.

20          I mean, I envisioned taking chunks of my earlier

21     opinion on the facts and the background and the experts

22     and all of that and using it again.  And to the extent I

23     came to the same conclusions, using some of it again.  And

24     if I didn't, I didn't.  But that doesn't seem as feasible

25     if Rausser's -- I mean, again, I haven't thought about it.

1    There's something to your statement -- and maybe we need

2    briefing on this -- that -- and I don't know what the

3    briefs are going to say, that it's hard to separate the

4    credibility of someone from the credibility of his work.

5            I mean, one of the reasons -- I'm just thinking

6    aloud, guys, I'm sorry -- but one of the reasons we have

7    Daubert hearings and one of the reasons we're very -- the

8    Supreme Court told us we're supposed to be a safety valve

9    for a jury because experts take on an aura that the lay

10   witness doesn't have because he or she is talking about

11   stuff that the ordinary person can't understand without

12   help.  So we want to make sure they don't get junk science

13   and that they get -- and it's been fully vetted before we

14   let them hear it.  So I don't know where -- I don't know

15   where we go from here.

16           MR. WALL:  I'll give you one example where this

17   is, I think it's really illustrative of this is that the

18   primary new work that Dr. Rausser offers in the initial

19   class certification decision, declaration that he offered

20   on remand is this effort to sort of sell the notion that

21   this is a big misunderstanding about the false positives

22   because the conspiracy really affected legacy and

23   non-legacy alike.  It affected apparently all shipments

24   now.

25           There is no doubt that his personal credibility

1    plays into how you're going to view that, because a lot of

2    it is just take my word for it.  So a full record will

3    include whatever you need to think about in order to

4    assess whether you're going to believe that testimony.

5    And we ought to have it.

6         MR. HAUSFELD:  Your Honor is focused on the

7    issue that the defendants are seeking to really raise with

8    regard to Dr. Rausser.  Is it Dr. Rausser, qua

9    Dr. Rausser, or is it the economics that Dr. Rausser put

10   forth to the Court that provided the basis for the Court's

11   opinion?  I'm sure if Dr. Rausser had no basis for he was

12   saying, the Court could have possibly come with a

13   different conclusion about balancing by the preponderance

14   what Dr. Rausser supported through economic theory as

15   opposed to the criticisms that Dr. Willig issued.

16         What is at issue here is whether the credibility

17   of Dr. Rausser for personal reasons infects, taints or

18   contaminates the integrity of the economics.  And at a

19   minimum, and I think as Your Honor just said, we would

20   like to consider whether or not a rebuttal witness, if

21   that's the proper phrase, of someone who says Okay, let's

22   remove Dr. Rausser as a person, what will another

23   economist untainted or uninfected by those issues come up

24   with with regard to the economics and the methodology of

25   what occurred in this market and what consequences were

1    caused by the alleged conduct.  That at least is at least

2    to us the most just way to establish the fact that there

3    was no overlap, no inability to separate whatever these

4    lapses were on the part of Dr. Rausser and his economics.

5            MR. WALL:  A couple of things and then we'll be

6    done.

7            I mean, first of all, I got to say I can't help

8    but be reminded of the stories that's told about, do you

9    remember the Rodney King trial in Los Angeles and when he

10   was acquitted and afterwards there was a lot of

11   postmortems on that.  And one of the things people said

12   was that they showed the tape so many times during that

13   trial that by the end people became anesthetized to the

14   fact that a man was being beaten up by the police on

15   videotape, and I can see the process now.  It's just a

16   personal credibility issue.  It's got nothing to do with

17   the economics here.

18           We think that the way to proceed at this point

19   is if they want to make a specific tangible motion, they

20   should make it on expedited terms.  Obviously if we're

21   going to go that way, the hearing on the 11th won't

22   hold, but they should, say ten days file a motion with a

23   specific tangible proposal.  We'll respond in ten days.

24   And then we can have another hearing at Your Honor's

25   convenience to decide what to do.

1           THE COURT:  Well, the other thing that would be

2    useful about a motion is not only would we have a

3    flesh-and-bones proposal that you can react to and I can

4    react to, but if there is any precedent, any law, any

5    similar situations that have arisen -- the only thing that

6    in my experience that I can think of that's very, very,

7    very different is I think it was a medical examiner who

8    had done the autopsy and then had died.

9           MR. WALL:  Right.

10           THE COURT:  And so could another medical

11    examiner come in and review the autopsy report and

12    whatever still existed in the file besides the report but

13    review the entirety of the file and say I agree.

14           MR. WALL:  Right.  It won't surprise you that we

15    looked into this.  And yes, you're right.  Most of the

16    times when leave is granted and you substitute an expert

17    it's because of unavailability and that kind of an

18    unavailability.  There are some cases which have dealt

19    with -- including some in this district -- that have dealt

20    with late revelations about something which just

21    completely undermined the testimony.  It ultimately comes

22    down to the fact of circumstances and a lot of it is,

23    would be Your Honor's discretion in the ordinary case.

24           I think all of that is difficult to apply here

25    because of the remand and what we were talking about about

1    where we are.  Needless to say, it's not come up in that

2    context before.  And there's never been such a case in

3    which the Court was faced with the fact that they were

4    looking at a Court of Appeals decision that says Make some

5    findings about this expert's work.

6              MR. HAUSFELD:  Exactly, the work.  And that lies

7    at the foundation of what it is that the Court needs to

8    decide is the most appropriate course to test the

9    reliability of the work.

10             MR. WALL:  I would just be repeating myself,

11   Your Honor.

12             THE COURT:  All right.  Well, the suggestion is

13   that the plaintiffs file something in writing with a

14   specific motion or request as to what they want,

15   approximately how much time they want, but more

16   importantly what they want and why they think it's

17   justified.  And how they perceive the hearing which we've

18   now blocked out I think up to four days for, how they

19   perceive the hearing going if their request is granted.

20   And if there is any case law analogous situation, I'd like

21   to hear about them.  And then the defendants can file

22   something in response.

23             MR. WALL:  May I make a couple of advanced

24   lawyer requests.  One is is it possible -- I know it's a

25   little bit of speculation -- but is it possible to put a

1    date on the calendar for when the class certification

2    would be if Your Honor were to deny relief?  We have such

3    a hard time with scheduling.  We're probably talking most

4    likely January, but if there were some dates that would

5    work for Your Honor in January, I would love to reserve

6    them so that we have something to work against.

7              THE COURT:  I'm pretty good the week of

8    January 5, although I think I've got five or six

9    sentencings then, and they do take time.  Twelfth and

10   13th I'm away, the 14th through 16th, the 19th is

11   Martin Luther King day.  I'm good the week of the 20th.

12   I mean, the week of the 19th, but the 20th through 23

13   are good.  So 5 through 9, except I may have a half a day

14   of sentencing on two of those days.  Twelve and 13, 20

15   through 23, and 26 through 28.

16             MR. WALL:  We'll talk about it and just

17   communicate with chambers somehow about what those might

18   be best to reserve.

19             THE COURT:  Okay.

20             MR. WALL:  Second thing is, is we've got to deal

21   with the sealed status of this somehow and how do we want

22   to do that.  Do you want us to make a motion to unseal?

23   What do we need to do?

24             THE COURT:  Well, my initial reaction, I assume

25   you're all going to order a transcript and she'll give you

1    a sealed transcript for now and give me a copy of it and

2    hopefully we can get that done quickly.  So the question

3    is who should take the laboring order on that, whether

4    the, you know, you should move to unseal or they should

5    show cause why it should remain sealed.

6          MR. WALL:  Beats me.  There was never any prior

7    motion to seal it, and obviously we've proposed it from

8    the start so that it should fall on plaintiffs to file

9    that motion.

10         MR. HAUSFELD:  A good part of that, Your Honor,

11   could probably be resolved depending on whatever decision

12   you make concerning the relief.  Because at that point you

13   would be making a decision with regard to whether

14   Dr. Rausser needs to appear, whether you're going to allow

15   the record to be supplemented by the defendants with

16   regard to the information anyway concerning Dr. Rausser.

17   I don't think it is judicially efficient for us to address

18   that at this point since it may become moot depending upon

19   the ultimate decision.

20         THE COURT:  Well, the problem --

21         MR. HAUSFELD:  A matter of timeliness.

22         THE COURT:  The problem is, as Mr. Wall has made

23   the point, if I applied the case law to this Circuit that

24   you don't have a leg to stand on, and I said I'm not going

25   to -- in a very judicious way I said I'm going to ignore

41

1    the case law for now because a person's reputation is at

2    stake.  We may be at a point where we just have to move

3    on.  And I have to apply the law which is what I tend to

4    do most of the time, I think.

5              MR. WALL:  You're making quite a record today,

6    Your Honor.

7              THE COURT:  I know I am.  Well, I think

8    Mr. Nannes is the only one who was there at my portrait

9    ceremony, but I've done so much to offend the Court of

10   Appeals at this point that I can't do much more.  But it

11   was all in good-natured fun, and it was actually terrific.

12   So these are facetious remarks.

13             You know, I don't think we should wait on this,

14   and so I think, I think somebody ought to -- you're going

15   to file a motion in ten days -- ten days okay?

16             MR. HAUSFELD:  Yes, Your Honor.

17             THE COURT:  About what your proposal is.  And on

18   the day you file that motion, on or before that day

19   Mr. Wall and his team will file a motion to unseal these

20   two proceedings.

21             MR. HAUSFELD:  Very well, Your Honor.

22             THE COURT:  And then you'll have ten days to

23   respond to his motion, and he has ten days to respond to

24   your motion.  So --

25             MR. WALL:  Should we set a hearing date for

1    that?

2           THE COURT:  Let's do the math first.  So the

3    21st gets us to the 31st, and then that gets us to the

4    10th.  And we already have the 12th, 13th, 14th and

5    17th set aside, so do you want to all come back on one

6    of those days to discuss both of those issues?

7           MR. HAUSFELD:  That's fine, Your Honor.

8           MR. WALL:  Sure.

9           THE COURT:  So the last filing will be on the

10   10th.  The 11th is Veterans Day, so let's not come back

11   on the 12th.  Let's come back on the 13th or 14th.

12          MR. WALL:  Thirteenth is fine.

13          MR. HAUSFELD:  Yes.

14          THE COURT:  Thursday the 13th at 9:30.  And

15   I'm going to think about this a lot in the meantime

16   because it's a hard problem.

17          MR. HAUSFELD:  I think as a housekeeping matter,

18   you might want to adjourn the class certification

19   proceedings.

20          THE COURT:  Yes.  We'll set aside the dates for

21   the class certification proceeding.  And I think, I don't

22   like to keep all this stuff nonpublic, so certainly the

23   minute order or the docket entry, we had a status

24   conference today.  The dates of the class certification

25   hearing were vacated.  Plaintiffs will file -- Plaintiffs

43

1    will file their motion on October 31st, to which

2    Defendants will respond on November 10.  Defendants will

3    file their motion on the 31st, to which the other side

4    will respond on the 10th.  And then we'll have a hearing

5    on the 13th at 9:30.  So then we get to this question:

6    Do these filings --

7              MR. HAUSFELD:  Is it easier than the last

8    question that was put to you and I?

9              THE COURT:  Do these filings have to be under

10   seal?

11             MR. HAUSFELD:  With regard to our request, we

12   wouldn't be utilizing any of the information underlying

13   the substance.  It's the concerns, we can refer to it as

14   the concerns raised at the proceeding.  Until the entire

15   issue is addressed, it might be wise to maintain that

16   consistency.

17             MR. NEUWIRTH:  Say that -- I'm sorry.

18             MR. HAUSFELD:  So that it's not undermined.

19             MR. NEUWIRTH:  There may be a practical solution

20   to this problem.  I think it's inevitable from the

21   discussion today that some of the underlying substance of

22   the report is going to come up in the documents, which

23   would trigger the order in place from Judge Facciola an

24   about the procedure that we used being protected by the

25   protective order.  So these papers already filed under

44

1    that procedure and we can confer with each other and then

2    file public documents.  And I think that that schedule

3    won't interfere with your ability to have a hearing.

4           THE COURT:  All right.  I think that's a very

5    good suggestion.  We already have a protective order in

6    place, so things are filed under seal with stuff that's

7    subject to the protective order and others.  And then

8    the -- and then they are within a few days or whatever

9    allowed within the public record.

10          MR. NEUWIRTH:  Correct.

11          THE COURT:  And, you know, the only question is

12   to make sure that I've got what I need to have.

13          MR. WALL:  Fine, Your Honor.

14          THE COURT:  All right.  Thank you.

15          (Proceedings adjourned at 12:13 p.m.)

16

17

18

19

20

21

22

23

24

25

45

1               CERTIFICATE OF OFFICIAL COURT REPORTER

2

3           I, Barbara DeVico, certify that the foregoing is

4     a correct transcript from the record of proceedings in the

5     above-entitled matter.

6

7

8

9

10

11    _____          10-27-14

12    SIGNATURE OF COURT REPORTER                DATE

13

14

15

16

17

18

19

20

21

22

23

24

25