# EXHIBIT 3

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

IN RE RAIL FREIGHT FUEL SURCHARGE :
ANTITRUST LITIGATION - MDL NO. 1879: CA No.MC 07-489
:
----------------------------------------------------------

TRANSCRIPT OF STATUS CONFERENCE

BEFORE THE HONORABLE PAUL L. FRIEDMAN

UNITED STATES SENIOR DISTRICT JUDGE

Tuesday, October 21, 2014

APPEARANCES:

For Plaintiffs HAUSFELD, LLP
BY: MICHAEL D. HAUSFELD, ESQ.
SETH R. GASSMAN, ESQ.
1700 K Street, Suite 650
Washington, D.C. 20006
(202)540-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
BY: STEPHEN R. NEUWIRTH, ESQ.
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212)849-7165

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

APPEARANCES (Continued):

For the Defendants:

GIBSON DUNN & CRUTCHER, LLP
BY: RANDY MARTRO, ESQ.
200 Park Avenue, 48th Floor
New York, NY 10166-0193
(212)351-3825

CROWELL MORING
BY: KENT A. GARDINER, ESQUIRE
DAVID CROSS, ESQUIRE
1001 Pennsylvania Avenue NW
Washington, D.C. 20004-2595
(202)624-2578

LATHAM & WATKINS, LLP.
BY: DANIEL M. WALL, ESQ.
TIM O'MARA, ESQ.
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
(415)395-8227

SKADDEN ARPS, LLP.
BY: JOHN M. NANNES, ESQ.
1440 New York Avenue NW
Washington, D.C. 20005
(202)371-7500

For Gordon Rausser:

COBLENTZ PATCH DUFFY & BASS, LLP
BY: JONATHAN R. BASS, ESQ.
One Ferry Building
Suite 200
San Francisco, CA 94111
(415)391-4800

P R O C E E D I N G S

DEPUTY CLERK: Miscellaneous Action In Re Rail Freight Fuel Surcharge Antitrust Litigation - MDL No. 1869.

Counsel please identify yourselves for the record.

MR. NEUWIRTH: Stephen Neuwirth from Quinn Emanuel for the plaintiff.

MR. HAUSFELD: Good morning, Your Honor. Michael Hausfeld for the plaintiff.

MR. GASSMAN: Good morning, Your Honor. Seth Gassman for the plaintiff.

MS. COBB: Alicia Cobb from Emanuel on behalf of the class plaintiffs.

MR. TAYLOR: Kyle Taylor from Quinn Emmanuel for the plaintiffs.

MR. WALL: Good morning, Your Honor. Daniel Wall and Tim O'Mara from Latham Watkins for Union Pacific.

MR. NANNES: Good morning, Your Honor. John Nannes from Skadden Arps on behalf of Norfolk Southern Railway Company.

MS. LEWIS: Good morning, Your Honor. Veronica Lewis, Gibson Dunn on behalf of BNSF Railway.

MR. MASTRO: Randy Mastro from Gibson Dunn.

MR. GARDINER: Good morning, Your Honor. Tim

Gardiner for CSXT.

MR. CROSS: Good morning, Your Honor. David Cross from Crowell Moring on behalf of CSXT.

THE COURT: So I assume that everybody not at counsel table is, those on plaintiffs' side are okay for plaintiffs to be here. Those defense are okay with defense to be here and vice versa.

MR. HAUSFELD: We have one procedural matter, Your Honor.

THE COURT: Talk into the microphone.

MR. HAUSFELD: One procedural matter, Your Honor. Jonathan Bass, representing Dr. Rausser, is here. I'd like to move his admission pro hac for purposes of his appearance.

THE COURT: Is Dr. Rausser a party in this case?

MR. NEUWIRTH: No, but he is a subject of the concerns that were raised at the last hearing.

MR. WALL: No objection.

MR. HAUSFELD: Thank you, Your Honor.

THE COURT: Fine. Well, I guess my other question is you say no objection, but you've got all these protective orders. We've got the original protective orders, we've got several amended protective orders. This proceeding is under seal for the time being. I don't know what we're going to be talking about here. and I don't

know -- I mean, you're the ones who want this hearing. I don't know, I don't know what we're going to be talking about here. And all I care about is whether we're going forward with the class certification here on November 11, but to the extent that things are going to be discussed that are subject to the protective order, can we just say Dr. Rausser's lawyer can be here and hear everything that's discussed here. And is that okay with every signatory to the protective order and every other limitation that you've agreed to impose?

MR. WALL: So I'm in the same position as you are, Your Honor, about not being entirely clear what we're going to talk about here today. However, in the last couple of weeks there have been moments when it has certainly appeared that the plaintiffs were going to try to abandon Dr. Rausser and that Dr. Rausser needed independent counsel to take care of Dr. Rausser. There have been other moments where it appeared as though they were going to stick with Dr. Rausser. In all events we've had a bunch of depositions at which we have allowed Mr. Bass to participate and represent Dr. Rausser's interests, and so we have no problem continuing that through this hearing.

THE COURT: All right. So if that's Mr. Wall's position, then I'll grant the motion for admission

pro hac vice.

MR. HAUSFELD: Thank you, Your Honor.

THE COURT: And let me just say also that I've had a conversation with Judge Pratter in the Eastern District of Pennsylvania and intend to have additional conversations with her.

MR. WALL: So we heard about this because of, there happens to be some overlapping counsel between this case and that case, and we understand that Mr. Hausfeld raised some issues in that case about Dr. Rausser. I'm not privy to them because I'm not involved yet in it, but it was reported to us that those communications with Your Honor were going to take place.

THE COURT: She doesn't want to know chapter and verse what's going on in sealed proceedings, but she wants to know whether she can go forward in her case and I guess wants to know how to evaluate what's being represented to her.

MR. WALL: To be very clear, the defendants don't believe these should be sealed. We understand that Your Honor wanted them sealed while we are trying to gather the facts. We know the facts. We know enough of the facts, and there's certainly no justification under ordinary sealing standards to keep it sealed, so we have no objection to any of this coming out in any form.

THE COURT: I guess we can discuss that issue at the conclusion of these proceedings, but for the time being, of course, the transcript of the last proceeding was under seal and the transcript and notes of this proceeding will be under seal until I say otherwise. All right. So we're going to move on to discuss whatever it is we're going to discuss.

MR. HAUSFELD: Yes, Your Honor. And that was a report back to Your Honor concerning the developments that were disclosed during the discovery that was taken pursuant to the concerns expressed by the defendants at the last status hearing, concerns which we came to you as soon as we learned of them because they raised serious issues which would cause Plaintiffs' class counsel to make decisions with regard to the continuing progress of the litigation, particularly of class certification.

In the course of that, we discovered that for the most part, despite the fact that -- in light of the fact that the allegations raised are serious concerning lapses, as the most diplomatic way of phrasing it, in Dr. Rausser's conduct or behavior, the defendants were aware of the potential back in March of 2014 and did not disclose that to plaintiffs' counsel until we -- and we did not learn of those issues until the subpoenas were issued.

In the course of the discovery to date, defendants have not only focused on the three matters that they mentioned to the Court but raised through questioning insinuations of Plaintiffs' counsels' participation, in essence, failing to disclose or not disclosing those matters to the Court or to the defendants, which clearly sought to impugn the integrity of counsel from Quinn Emanuel as well as myself. And there have been no facts unearthed despite the length of time with regard to that kind of an accusation.

We learned for the first time yesterday that whatever it is that the defendants claimed that they have learned and regardless of the merits of the concerns raised, the defendants acknowledged that they are not moving to disqualify Dr. Rausser. That puts us in a position that if whatever it is they were concerned about does not rise to the level of that kind of request on their part, does this end the matter?

THE COURT: Except for when he's cross-examined and his credibility is attacked.

MR. HAUSFELD: Exactly. And with respect to that, we believe that in light of the events, in light of the discovery, we do not feel that it's in the best interests of the class to put the class in the position of having Dr. Rausser's credibility outside of the integrity

of his economics become an issue in the class certification. And so despite -- in light of the fact that they are not moving to disqualify Dr. Rausser -- and we do not want the class certification to become distracted in terms of robustness and the integrity of the economics by that kind of a sideshow -- we feel that it would be in the best interest -- it is in the best interest of the class to have another economist adopt and verify, corroborate, stay within the bounds of the class certification report as developed by Dr. Rausser, both initially and after remand. This is not inconsistent, Your Honor, with what has occurred to date where the defendants on remand abandoned Dr. Willig, substituted him with Dr. Kalt, who raised criticisms that were never raised by Dr. Willig in terms of opposition to certification.

Where the first report, as Your Honor had mentioned, by Dr. Rausser was done prior to any of the issues raised in the last hearing was completed, we feel that it would unduly prejudice and penalize the class not to permit that replacement with a new lead economist utilizing the same economics and methodologies as have already been disclosed. That would delay --

THE COURT: Well, you're assuming that the new economic -- economist would come to the same conclusions.

In other words, what you're offering up, I take it, is that a new economist would come in and not do his or her own independent analysis but with the expertise that that economist has review what it is Dr. Rausser had already done and decide whether the conclusions are the same?

MR. HAUSFELD: Yes.

MR. WALL: I think, I think another way to look at it, Your Honor, which --

THE COURT: Move over.

MR. NEUWIRTH: I'm sorry. I think the position we're taking is that the new expert would only offer opinions -- if the new expert is going to offer opinions, they would only be within the parameters of what Dr. Rausser previously offered. Obviously the expert would have to do work to be able to independently determine that he or she is able to express those opinions based his or her own independent determination; but I think the point we're just trying to convey is that the expert would be operating within the parameters of the opinion Dr. Rausser had already expressed and would not be embarking on an entirely new analysis, and I think that that's consistent with what's been done in other courts where this type of substitution that's been made under similar circumstances.

THE COURT: I understand, I think.

MR. HAUSFELD: And, Your Honor, with respect to your last insight, it would take time to get a new economist, you know, to acquaint themselves so that we would need to adjust the schedule, and we can do that in conference with the defendants to permit that time for that new economist to be as prepared as possible. Again, a schedule of completion of the review, the issuance of a report in the economist's own words, a deposition of the economist. A proposed report by the defendants in response and then the hearing set after that.

THE COURT: Mr. Wall.

MR. WALL: This is entirely news to us. Let's begin by remembering that it was the plaintiffs who disrupted the schedule in this case that would have had us already having completed the class certification argument by coming to Your Honor ex parte and asking to have a hearing. I guess they told you that we were in it, but they weren't.

THE COURT: There was no affirmative misrepresentation. I drew an inference from the conversation.

MR. WALL: Okay. And they were the ones who said that they had learned that he had -- that Dr. Rausser had an undisclosed conflict of interest, and it was Mr. Neuwirth who was talking about seeking some sort of a

remedy at that time two weeks ago. There have been numerous conversations and emails in which we've tried to get them to declare what it was that they wanted to do. They've been unwilling to tell us and would not even tell us prior to the beginning of this hearing in the courtroom. Apparently they have decided that the least of some very bad options are to call to the bullpen and bring in somebody to just take Dr. Rausser's testimony.

THE COURT: I know you're from the west coast, but if only Matt Williams had done that.

MR. WALL: Yeah. Well, you took the analogy right out of my mouth. You know, I mean, I'm sure that Matt Williams wished he hadn't taken Zimmerman out.

THE COURT: You're right.

MR. WALL: But he made the decision and you can't play the game over. And we have been at this for seven years chasing Dr. Rausser and his testimony around. I can't even imagine how much money has been spent on it, but it's probably, you know, upwards of $50 million, something like that.

And now for what is a credibility issue, it's a serious credibility issue. It's a credibility issue that we submit Your Honor should fully take into account in considering his testimony. They want to get him out of the way and just have somebody else come in and sprinkle

holy water on his testimony and defend it without the taint of this. I guess this is being proposed without any details. We don't know who this person is. We don't know how long it will take to find him or her. We don't know what is supposed to happen, and it was sort of thrown on us that we'll go and have a meet-and-confer and work this out.

Well, I mean, it's not going to shock you that our position is that we don't want to do it. That that -- you don't get to replay the game. And I don't just say is that as a smirking Giants fan. I say that because those are -- those are the rules.

THE COURT: I'm cheering for the Giants because then they'll sort of vindicate us a little bit.

MR. WALL: I'm with you on that. No, I wouldn't have taken him out either.

But the reality is is that we're here under these circumstances where we're not at the beginning of the case, we're not in some posture where we've got a lot of flexibility. We're here on a remand. The remand is written about Gordon Rausser's testimony. Your Honor has no choice but to consider whether it holds up in light of *Baron*, whether it has the false positives and all of those things.

And with all due respect, it's absolutely

bizarre that they want to have somebody other than the author of the testimony come in and defend it. You know, they already have Dr. McClave who does a little bit of that, and his role is essentially to sprinkle some holy water on some of it.

But we want to cross-examine Dr. Rausser about this. We've taken his deposition something like eight times in this case. He's put in 928 pages of expert report, not including appendices and exhibits and what have you. He relies on his merits testimony and his class certification testimony. It's all interrelated. And that's what we have done to get to this point. And I get it. I mean, without getting deeply into it, what we know is that despite the facade of being this University of California professor, he is a speculator in class action claims and has been for many years.

He does, in fact, have an undivided interest in certain proceeds from these funds that this Cascade outfit has, which despite his allegations that there's some sort of undocumented agreement that restricts what he gets on cases in which he testifies, are not restricted, and it's very clear that he had at least some level of activity that involved this case in particular. And that's not -- it isn't disqualifying. I'm kind of shocked somewhat that Mr. Hausfeld said that they just found out yesterday that

we didn't think it was disqualifying. I said that at the last hearing.

It's a credibility issue. It's not a disqualifying. And it is -- he's the one who's got to stand and defend his work and sure, like any witness, like Dr. Kalt, they are going to attack Dr. Kalt's credibility; and nobody attacks it more vigorously than Dr. Rausser, who basically calls him a liar at every turn. But it's time for Dr. Rausser to defend Dr. Rausser, not to have someone else to be named later to come in for obviously the singular reason that they don't want to be bothered with what we've learned. That isn't just. That isn't fair. And it's obviously just this desperate measure to try to get you to not think about this.

THE COURT: All we're talking about -- all we're talking about, and I know it's taken X number of years to get here, is the class certification. We're not talking about the trial, if there is a trial; right?

MR. WALL: I do think that it's very different between class certification and trial because we are here, as I said, on remand. On class certification we have certain instructions and there's a certain body of work. It's also, *Baron* makes it clear this is now a question of law, these issues. It's not a jury deciding whether somebody is credible or not. And if they need to go to

the bullpen for trial, they can talk about -- we can talk about that after class certification is resolved and see what sanctions go with that and costs that they have to make up. But class certifications, it's basically in the books, Your Honor. We're done. We're going to have a hearing, we're going to have a few hours of testimony and we're going to be done. We should finish it.

THE COURT: Well, let me ask you this. I'll hear from them.

MR. NEUWIRTH: Your Honor, let me just very briefly address a couple of points. And let me preface this by saying that nothing I'm saying today is meant to challenge the integrity or character in any way of any of the defense counsel here; we respect and like and this is nothing personal. But for Mr. Wall to stand here and complain about the timing I think is very inappropriate in this context.

On October 7th we received an email from Tim O'Mara of Mr. Wall's firm, Latham and Watkins, saying that as a professional courtesy that they were providing us with an attached document. That attached document is an email dated March 10, 2014, to Scott Ballenger of Mr. Wall's firm from a gentleman named Brod Montgomery who was deposed last week and apparently is the person who disclosed this issue to the defendants.

And in that email to Mr. Ballenger he says, among other things, he is someone who worked that at Cascade; he says that in his email, the company that said that Dr. Rausser had an economic interest. And he says, "The reason for my email, I fear the company's involvement with Gordon Rausser, majority owner in Onpoint Analytics, could be a serious conflict of interest and an ultimate problem for my sales personnel. Mr. Rausser holds a nonvoting percentage ownership in our companies, specifically Cascade LLC. I believe he has a 10 percent interest in the company. As a result, he stands to gain directly from any purchases of claims made in the Rail case. He has been able to keep the company apprised of all developments in the case, given he has 'insider' information. His model would also might have indirect or direct benefit to him financially." And then he talks about other things.

THE COURT: Let me ask you this. Cutting to the chase here. Court of Appeals is going to look at this again. I don't want to get reversed again. Shouldn't they have a record that has Rausser's testimony in it? Shouldn't -- they've had half of Rausser. They've told me that false positives, all this stuff that was discussed by the experts and relating to the experts and the econometric theory; and the record they are going to be

looking at is half of what went before and half of what comes now. I was not reversed. I was not reversed. It was vacated and remanded to consider things, the impact of the Supreme Court's decision on what I had already done. That's part of the record.

And by way of example, to put it in the least damaging light to you -- they would say it was more than that -- they came up with the false -- they came up with, excuse me. They discussed -- they discussed this whole false positives things. That wasn't the only thing that they suggested might be impacted by the Supreme Court's decision.

You're the ones that told me it was limited to that or that I could proceed -- you actually told me, Mr. Hausfeld stood here and told me I could proceed on the exact same record, which would have been exclusively Rausser from the plaintiff's side. And we didn't have to have any further discovery, any further briefing, anything. It was all Rausser then, and I just had *Re Comcast* and figured out what the Court of Appeals would say if I agreed with you.

And it was the defense that said no, we got to do more. Well, it turns out both sides did more. But a piece of what the Court of Appeals is going to look at is Rausser. And they ought to have my views on his

credibility. They ought to have him on the witness stand being examined and cross-examined. It's not going to -- it's not going to influence the jury. I'm not a jury. And if and when we get to trial, then it may -- then you may have a stronger argument for starting over.

That -- I don't know what the law is, I suppose there's no law that says you have to rely on the exact same experts at trial that you relied on in the class certification proceeding. But we're not beginning the class certification proceeding. We're not even at a point where all discovery has closed and this all emerged, because it had never been -- I had never rendered a decision, Court of Appeals never reviewed a decision, suddenly this problem emerges after discovery is closed. Mr. Wall would still have his arguments about how much time and money were spent, but he wouldn't have the argument that we're either in the ninth inning or the seventh inning or some inning, but the Court of Appeals has a record that they have a point of view about. And it includes a pristine Rausser.

MR. HAUSFELD: Your Honor --

THE COURT: And you know, I think that the transcripts that go to the Court of Appeals on the seventh, eighth and ninth inning should include -- I mean, how can I -- you're going to stand here and tell me to

decide that nothing has changed except that if I had had all of these facts before me before, I might have had some views on Rausser's credibility. If you had proposed to me before the last class certification hearing what you're proposing today, I might be more sympathetic. But we're half done with the class certification proceeding or more than half done. And I'm told, I think I haven't read the opinion recently because it was so painful to read. I haven't read the opinion -- this is facetious --

MR. HAUSFELD: It's sealed.

THE COURT: Well, it may not be forever, and Judge Brown may see it. It's fine.

I haven't read it recently, but they went to -- they took some pains to say that they were not reversing me. They were not saying I was wrong, and you should be happy that they didn't say I was wrong. They said I didn't consider everything that I should have considered in light of what the Supreme Court had said.

And I need to apply that to Mr. Rausser and any other experts that you have and to the experts that they have and to what -- what the briefing has been post-*Comcast* and post the Circuit's opinion, but also the discovery because if you all hadn't agreed that some further discovery and some further expert reports weren't required, we would just be arguing *Comcast* on the

then-record. But the then-record is not going to go away when it gets to the Court of Appeals.

MR. HAUSFELD: Your Honor, we don't want the record to go away. The record is what it is.

THE COURT: Except that I didn't know anything about Mr. Rausser's credibility.

MR. HAUSFELD: But here is the difference, and the issue is, as Your Honor pointed out, had we known of these issues beforehand and as you said at the time before the remand, we would have raised them immediately. It's regrettable, tragic where we are now that we have to -- all of us, except the defendants have to be put in this position of making a decision with regard to what is the record that's going up on appeal.

And as Your Honor has noted repeatedly, the issue that the Court of Appeals felt it didn't address was the false positives. The issue which the Court of Appeals asked you to look at as a result of their reading of *Comcast* was the economics. It's the credibility of the economics which is at issue, not Dr. Rausser's errors in judgment outside of the economics.

We are not changing the economics, either the theories or the methodology. We stand by those. It should not make a difference to the economics and the methodology which personal economist advocates those

economics and those theories as long as the reliability and the credibility of those economics and methodologies are the issue on certification.

No one is trying to walk away from false positives. No one is trying to walk away from the criticisms that have been raised by the substitute defense economist after the remand. We've got to deal with those. But it should not be predicated upon a personal credibility issue unrelated to the economics. And there's been no showing whatsoever that any of the economics put forward by Dr. Rausser or criticized, you know, by Dr. Kalt is at issue in any of the matters that have been raised from the last hearing and this, the sealed proceedings.

THE COURT: Well, I suppose we can go forward on the current state of the record without having any live testimony. I mean, I don't know how the defense can make you call Dr. Rausser. I can rely on his deposition and his reports.

MR. NEUWIRTH: Well, I would assume that what the defendants would then do is tell the Court of Appeals that this issue was here, that it wasn't properly investigated by the District Court and that, therefore, any findings you make this time around also had an issue that the Court didn't properly look at.

We're trying to deal with the practical realities of the situation, which is that we learned very late in this process and came to the Court as soon as we did learn about these issues. They are issues that, as Mr. Hausfeld said, don't have to do with the underlying substance of the reports. The Court of Appeals' issues were not specific to Gordon Rausser, the individual. They had to do with the content of his reports, and all that we're suggesting is that without proposing to change the content, we would have to undertake to have another economist determine whether he or she can tell the Court that based on their own independent determination they can adopt these positions and that they would be the person who would present those positions to the Court.

Nothing would change about the substance of the case, and we would run the risk, of course, that an economist might say they are not willing to back up those opinions. But we're concerned that with the issues that have come up, issues that the defendants have known about since March and we only learned about much more recently that we now have the Hobson's choice between going forward with an expert that they will attack for these issues which Mr. Wall described as credibility issues, and there's a lot of cases and we could brief this for Your Honor.

THE COURT: Maybe that, I mean, Mr. Wall says he didn't know what you were going to say until he walked in here this morning.

MR. NEUWIRTH: Well, what we were going to say in terms of what was the next step, that may be, but the issue of what was the underlying issue, they've clearly noted that. We just finished discovery late yesterday in California; yesterday was the day Dr. Rausser was deposed. And so Mr. Hausfeld and I literally did not have a chance even to speak to each other in person or by phone until this morning about what was the right thing to do in light of a transcript that we got late last night of Dr. Rausser's deposition.

THE COURT: All right.

MR. HAUSFELD: Your Honor, had we known of these issues at the time that we were searching for an expert to begin with, we might not have even chosen Dr. Rausser.

THE COURT: Probably not.

MR. HAUSFELD: But the issue is, do the challenges now to Dr. Rausser affect the integrity of the economics or his personal integrity? And for purposes of certification for the class, it clearly is apparent that there's going to be an effort to leverage those potential lapses in personal credibility into the credibility and reliability of the economics.

As Mr. Neuwirth just said, one of the reasons that we could not be certain before now as to what the options were, because as Your Honor has suggested, maybe it would be possible to go to proceed without any live testimony, as we did before in certification. But we had to weigh the fact that then there was the potential for this issue to be raised as a tangential matter that was not considered. All of which put us in a position that we had to basically look at a number of balls in the air and see where they were going, you know, to be managed best to protect the overriding interest of the class as opposed to any effort to discredit an individual for his individual or personal lapses.

And that's what Mr. Neuwirth and I have the greatest responsibility to do: protect the interest of the class and the integrity of the economics. If we cannot find an expert that will stay within the bounds, then we're stuck. If we can -- and the difficulty in that is speaking to an economist and not only requesting whether or not they would be willing to undertake that position, but for them asking us How long would I have to do that? And that's been a principal response of the economists that we've spoken to, over a dozen and a half. What length of time are you giving me if the Court permits this for us to be able to do this? And until we came in

today, with all of this information that has been uncovered in discovery, it wasn't clear, it wasn't clear what Your Honor's position would be.

But we did plan for an alternative, and the alternative would be to permit someone, another economist to come in with regard to the theories and the methodology that have already been laid out subject to the same criticism that has already been put forward by the defendants. But we would need to know what time, if any, we would have in order to engage that economist so that they can be prepared.

MR. WALL: Well, we have seen the limits of the Matt Williams analogy, because Matt Williams stood up for his decision. It's a couple things I need to put on the record because there was a very unfortunate effort to sort of say that we've known about this for a long time and we didn't do about it [sic].

The first thing is I would like to actually hand up to the Court the email that started all of this so that you can see what we got. (Handing.)

This email came to us unsolicited on March 10, 2014. It has a number of claims which honestly at the time seemed kind of hard to believe.

THE COURT: You gave me two copies of the same thing.

MR. WALL: They're the same thing. Two copies of the same thing, sorry.

We didn't know what to make of it. We obviously appreciated the seriousness of the issue, but we were also aware that sometimes people who have left the company and might have a dispute with their former employer might have an ax to grind or something of that nature. And there was at least one statement in here, he has a statement at the bottom of this, he says, "I understand that Mr. Rausser is good friends with the judge." We felt that was pretty clearly not true, so we were -- we didn't know what to do.

What we did was -- no, we didn't bring it to their attention. Can you imagine if you were in our position that you'd bring this to their attention? If this has value, it has value as impeachment. You don't share your impeachment material with your adversary. We investigated it, and we tried to do some things with public sources and nothing really came of it.

And so we took a deposition. We didn't take a deposition about this. It just so happens that in July there was a deposition of Dr. Rausser, and literally at the very end of the deposition we asked him about this. And as I mentioned at the last hearing, he said very coolly and matter-of-factly that he didn't have any -- that he knew about Cascade, but it was based upon

something that he had done with them in the past and he didn't have any financial interests in them, that he didn't have any financial interests in any company that had brought claims in this litigation.

Well, we learned from Dr. Rausser yesterday that he had a conversation about that, which he thinks was with Plaintiffs' counsel after the depositions in July. He couldn't remember if it was one of the plaintiffs' counsel or was it somebody else, but certainly in July Plaintiffs' counsel knew absolutely that we had asked the question about Cascade's settlement services, and they had access to Dr. Rausser to ask him what that was about. And furthermore --

THE COURT: They may have had a conversation with someone that led to the incomplete errata.

MR. WALL: Well, of course, because of privilege issues we don't know how the errata came about. The story is that the errata was sent to them, to the lawyers without doing anything, just flipped it to us, perhaps. It's not a normal errata. It's not one of your run-of-the-mill typo corrections.

But if it is true that they didn't do anything, they didn't say, Hey, Gordon, why are you changing a no to basically a yes, that's not on us. That's not our fault. That provides no cause to blame us to kill the messenger

and to say that somehow, you know, we are the bad guys in this.

It turns out that other than the comment about Professor Rausser being friends with Your Honor, that the substance that the substance of Mr. Montgomery's email is true. Some of the details are very nuanced because of the agreements and what have you, but the substance is true.

So here we are. We would not -- they are right, we wouldn't have brought it up. We would have been here two weeks ago for a hearing and somewhere in the middle of Dr. Rausser's cross-examination I would have asked him questions about this, and we would have just proceeded through. They are the ones that panicked and realized that you cannot separate the credibility of the man from the credibility of his work; that you would not have felt -- I mean, Your Honor relied on this man in practically every sentence of your decision in this case. The name Rausser appears 304 times in your opinion. He is cited on virtually every proposition. That is the record that went up to the D.C. Circuit.

The D.C. Circuit said Rausser's models are essential to the plaintiffs' claims for class certification. No model, no predominance, no class certification.

When we had a -- do you remember a year ago we

had an argument about what the remand meant, what the scope was?

THE COURT: Right.

MR. WALL: And we filed briefs on that. This is the first sentence of the plaintiffs' briefs. "The Court of Appeals granted interlocutory review and remanded on a single question: whether the damages model sponsored by plaintiffs' expert, Dr. Gordon Rausser, yields false positives for so-called legacy contracts."

We disagree with the scope of the remand, but we all agree that that's the bare minimum of the remand. And it is fantastic to suggest that there is some sort of clean division that you or anybody else can make between his personal honesty and integrity and the work that he does so much of, which we've been telling you for years it's ipsi dixit, that it's just stuff that he's just asserting.

That's what they don't like about this. It is so hard in these cases to reveal the dissembling and the misrepresentations and the liberties with the record that an economist does when they filter it through the science that they're selling. This is not hard.

THE COURT: Well, let me ask you this hypothetical: Let's suppose we were exactly where we are.

MR. WALL: Uh-huh.

THE COURT: And they came in and said, you know, Our expert's been damaged and they are really going to do a job on him when we put him on the stand.

MR. WALL: Yes.

THE COURT: So we want time, not to have a substitute but to have a rebuttal.

MR. WALL: A rebuttal?

THE COURT: A rebuttal witness. To come in and to say they've attacked Rausser's credibility, torn him to shreds, but I've done the same analysis, and the analysis has integrity even if he doesn't.

You know, what choice do they have if they withdraw their witness? To go with no expert? What choice do they have -- you know, as I said before, I'm not sure they have an obligation to call him so that you can cross-examine him, and then we're stuck with your attacking his credibility through other means. If they did call a rebuttal witness like the unknown, as-yet unknown expert or someone to review all of his work, I suppose you would still be on cross-examination saying to him, When you reviewed his work were you aware of this, this and that. When you reviewed his work, did you know that he -- you know, it's not as effective.

MR. WALL: I don't think it's the same, which is why they are making this request.

THE COURT: But I mean, the question is what are their options at this point?

MR. WALL: I think their options are to play the game out. The thing that's bothers me more than anything about what's happening here is I know the cross-examination that I was going to do of Dr. Rausser. And it's about things that I believe will make you find that he's not a credible witness. I didn't expect to have this. But there's a lot of other stuff. I still want to do that. I still want to have the right to call him. I don't care if they want to call him. I'll call him. I can call their expert.

And I want to put -- I want to put his credibility writ large into the record, because it's not just about this. They are trying to get away with this, Oh, this is a good man gone bad. I'm sorry, I'm not buying that. Dr. Rausser's testimony is made of the same stuff as his attempts to explain this.

THE COURT: I don't know that we're going to resolve this today, but I will say because I haven't thought about it because, as I said, I didn't know what was going to happen until I walked into this courtroom here. But from my perspective, the fact of the matter is that we're not at square one. I mean, not at post-discovery square one.

MR. WALL: Right.

THE COURT: We are in the middle. And the Court of Appeals -- I mean, I forget the number you just mentioned, the number of times I mentioned Rausser's name in my opinion, but my opinion is based to a very, very large extent on Rausser because essentially what we had was Rausser saying all of these things and your expert criticizing all of these things, and I agreed with him on almost everything.

So that's the record that went to the Court of Appeals. The Court of Appeals has said -- they didn't say You're wrong, we deny class certification, or they didn't say You're wrong, start all over again. They said You need to take the new Supreme Court case law and apply it to what you've already done with some additional stuff. And you think it's a lot of additional stuff; the plaintiff started out thinking it wasn't. We're not at the beginning. So Rausser is essential. Rausser is a part of what I did.

I mean, I envisioned taking chunks of my earlier opinion on the facts and the background and the experts and all of that and using it again. And to the extent I came to the same conclusions, using some of it again. And if I didn't, I didn't. But that doesn't seem as feasible if Rausser's -- I mean, again, I haven't thought about it.

There's something to your statement -- and maybe we need briefing on this -- that -- and I don't know what the briefs are going to say, that it's hard to separate the credibility of someone from the credibility of his work.

I mean, one of the reasons -- I'm just thinking aloud, guys, I'm sorry -- but one of the reasons we have Daubert hearings and one of the reasons we're very -- the Supreme Court told us we're supposed to be a safety valve for a jury because experts take on an aura that the lay witness doesn't have because he or she is talking about stuff that the ordinary person can't understand without help. So we want to make sure they don't get junk science and that they get -- and it's been fully vetted before we let them hear it. So I don't know where -- I don't know where we go from here.

MR. WALL: I'll give you one example where this is, I think it's really illustrative of this is that the primary new work that Dr. Rausser offers in the initial class certification decision, declaration that he offered on remand is this effort to sort of sell the notion that this is a big misunderstanding about the false positives because the conspiracy really affected legacy and non-legacy alike. It affected apparently all shipments now.

There is no doubt that his personal credibility

plays into how you're going to view that, because a lot of it is just take my word for it. So a full record will include whatever you need to think about in order to assess whether you're going to believe that testimony. And we ought to have it.

MR. HAUSFELD: Your Honor is focused on the issue that the defendants are seeking to really raise with regard to Dr. Rausser. Is it Dr. Rausser, qua Dr. Rausser, or is it the economics that Dr. Rausser put forth to the Court that provided the basis for the Court's opinion? I'm sure if Dr. Rausser had no basis for he was saying, the Court could have possibly come with a different conclusion about balancing by the preponderance what Dr. Rausser supported through economic theory as opposed to the criticisms that Dr. Willig issued.

What is at issue here is whether the credibility of Dr. Rausser for personal reasons infects, taints or contaminates the integrity of the economics. And at a minimum, and I think as Your Honor just said, we would like to consider whether or not a rebuttal witness, if that's the proper phrase, of someone who says Okay, let's remove Dr. Rausser as a person, what will another economist untainted or uninfected by those issues come up with with regard to the economics and the methodology of what occurred in this market and what consequences were

caused by the alleged conduct. That at least is at least to us the most just way to establish the fact that there was no overlap, no inability to separate whatever these lapses were on the part of Dr. Rausser and his economics.

MR. WALL: A couple of things and then we'll be done.

I mean, first of all, I got to say I can't help but be reminded of the stories that's told about, do you remember the Rodney King trial in Los Angeles and when he was acquitted and afterwards there was a lot of postmortems on that. And one of the things people said was that they showed the tape so many times during that trial that by the end people became anesthetized to the fact that a man was being beaten up by the police on videotape, and I can see the process now. It's just a personal credibility issue. It's got nothing to do with the economics here.

We think that the way to proceed at this point is if they want to make a specific tangible motion, they should make it on expedited terms. Obviously if we're going to go that way, the hearing on the 11th won't hold, but they should, say ten days file a motion with a specific tangible proposal. We'll respond in ten days. And then we can have another hearing at Your Honor's convenience to decide what to do.

THE COURT: Well, the other thing that would be useful about a motion is not only would we have a flesh-and-bones proposal that you can react to and I can react to, but if there is any precedent, any law, any similar situations that have arisen -- the only thing that in my experience that I can think of that's very, very, very different is I think it was a medical examiner who had done the autopsy and then had died.

MR. WALL: Right.

THE COURT: And so could another medical examiner come in and review the autopsy report and whatever still existed in the file besides the report but review the entirety of the file and say I agree.

MR. WALL: Right. It won't surprise you that we looked into this. And yes, you're right. Most of the times when leave is granted and you substitute an expert it's because of unavailability and that kind of an unavailability. There are some cases which have dealt with -- including some in this district -- that have dealt with late revelations about something which just completely undermined the testimony. It ultimately comes down to the fact of circumstances and a lot of it is, would be Your Honor's discretion in the ordinary case.

I think all of that is difficult to apply here because of the remand and what we were talking about about

where we are. Needless to say, it's not come up in that context before. And there's never been such a case in which the Court was faced with the fact that they were looking at a Court of Appeals decision that says Make some findings about this expert's work.

MR. HAUSFELD: Exactly, the work. And that lies at the foundation of what it is that the Court needs to decide is the most appropriate course to test the reliability of the work.

MR. WALL: I would just be repeating myself, Your Honor.

THE COURT: All right. Well, the suggestion is that the plaintiffs file something in writing with a specific motion or request as to what they want, approximately how much time they want, but more importantly what they want and why they think it's justified. And how they perceive the hearing which we've now blocked out I think up to four days for, how they perceive the hearing going if their request is granted. And if there is any case law analogous situation, I'd like to hear about them. And then the defendants can file something in response.

MR. WALL: May I make a couple of advanced lawyer requests. One is is it possible -- I know it's a little bit of speculation -- but is it possible to put a

date on the calendar for when the class certification would be if Your Honor were to deny relief? We have such a hard time with scheduling. We're probably talking most likely January, but if there were some dates that would work for Your Honor in January, I would love to reserve them so that we have something to work against.

THE COURT: I'm pretty good the week of January 5, although I think I've got five or six sentencings then, and they do take time. Twelfth and 13th I'm away, the 14th through 16th, the 19th is Martin Luther King day. I'm good the week of the 20th. I mean, the week of the 19th, but the 20th through 23 are good. So 5 through 9, except I may have a half a day of sentencing on two of those days. Twelve and 13, 20 through 23, and 26 through 28.

MR. WALL: We'll talk about it and just communicate with chambers somehow about what those might be best to reserve.

THE COURT: Okay.

MR. WALL: Second thing is, is we've got to deal with the sealed status of this somehow and how do we want to do that. Do you want us to make a motion to unseal? What do we need to do?

THE COURT: Well, my initial reaction, I assume you're all going to order a transcript and she'll give you

a sealed transcript for now and give me a copy of it and hopefully we can get that done quickly. So the question is who should take the laboring order on that, whether the, you know, you should move to unseal or they should show cause why it should remain sealed.

MR. WALL: Beats me. There was never any prior motion to seal it, and obviously we've proposed it from the start so that it should fall on plaintiffs to file that motion.

MR. HAUSFELD: A good part of that, Your Honor, could probably be resolved depending on whatever decision you make concerning the relief. Because at that point you would be making a decision with regard to whether Dr. Rausser needs to appear, whether you're going to allow the record to be supplemented by the defendants with regard to the information anyway concerning Dr. Rausser. I don't think it is judicially efficient for us to address that at this point since it may become moot depending upon the ultimate decision.

THE COURT: Well, the problem --

MR. HAUSFELD: A matter of timeliness.

THE COURT: The problem is, as Mr. Wall has made the point, if I applied the case law to this Circuit that you don't have a leg to stand on, and I said I'm not going to -- in a very judicious way I said I'm going to ignore

the case law for now because a person's reputation is at stake. We may be at a point where we just have to move on. And I have to apply the law which is what I tend to do most of the time, I think.

MR. WALL: You're making quite a record today, Your Honor.

THE COURT: I know I am. Well, I think Mr. Nannes is the only one who was there at my portrait ceremony, but I've done so much to offend the Court of Appeals at this point that I can't do much more. But it was all in good-natured fun, and it was actually terrific. So these are facetious remarks.

You know, I don't think we should wait on this, and so I think, I think somebody ought to -- you're going to file a motion in ten days -- ten days okay?

MR. HAUSFELD: Yes, Your Honor.

THE COURT: About what your proposal is. And on the day you file that motion, on or before that day Mr. Wall and his team will file a motion to unseal these two proceedings.

MR. HAUSFELD: Very well, Your Honor.

THE COURT: And then you'll have ten days to respond to his motion, and he has ten days to respond to your motion. So --

MR. WALL: Should we set a hearing date for

that?

THE COURT: Let's do the math first. So the 21st gets us to the 31st, and then that gets us to the 10th. And we already have the 12th, 13th, 14th and 17th set aside, so do you want to all come back on one of those days to discuss both of those issues?

MR. HAUSFELD: That's fine, Your Honor.

MR. WALL: Sure.

THE COURT: So the last filing will be on the 10th. The 11th is Veterans Day, so let's not come back on the 12th. Let's come back on the 13th or 14th.

MR. WALL: Thirteenth is fine.

MR. HAUSFELD: Yes.

THE COURT: Thursday the 13th at 9:30. And I'm going to think about this a lot in the meantime because it's a hard problem.

MR. HAUSFELD: I think as a housekeeping matter, you might want to adjourn the class certification proceedings.

THE COURT: Yes. We'll set aside the dates for the class certification proceeding. And I think, I don't like to keep all this stuff nonpublic, so certainly the minute order or the docket entry, we had a status conference today. The dates of the class certification hearing were vacated. Plaintiffs will file -- Plaintiffs

will file their motion on October 31st, to which Defendants will respond on November 10. Defendants will file their motion on the 31st, to which the other side will respond on the 10th. And then we'll have a hearing on the 13th at 9:30. So then we get to this question: Do these filings --

MR. HAUSFELD: Is it easier than the last question that was put to you and I?

THE COURT: Do these filings have to be under seal?

MR. HAUSFELD: With regard to our request, we wouldn't be utilizing any of the information underlying the substance. It's the concerns, we can refer to it as the concerns raised at the proceeding. Until the entire issue is addressed, it might be wise to maintain that consistency.

MR. NEUWIRTH: Say that -- I'm sorry.

MR. HAUSFELD: So that it's not undermined.

MR. NEUWIRTH: There may be a practical solution to this problem. I think it's inevitable from the discussion today that some of the underlying substance of the report is going to come up in the documents, which would trigger the order in place from Judge Facciola an about the procedure that we used being protected by the protective order. So these papers already filed under

that procedure and we can confer with each other and then file public documents. And I think that that schedule won't interfere with your ability to have a hearing.

THE COURT: All right. I think that's a very good suggestion. We already have a protective order in place, so things are filed under seal with stuff that's subject to the protective order and others. And then the -- and then they are within a few days or whatever allowed within the public record.

MR. NEUWIRTH: Correct.

THE COURT: And, you know, the only question is to make sure that I've got what I need to have.

MR. WALL: Fine, Your Honor.

THE COURT: All right. Thank you.

(Proceedings adjourned at 12:13 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Barbara DeVico, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

[signature] 10-27-14

SIGNATURE OF COURT REPORTER DATE