# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

----------------------------X

IN RE:

RAIL FREIGHT FUEL SURCHARGE
ANTITRUST LITIGATION — Case No. MC 07-489
MDL NO. 1869

------------------------------X

Washington, D.C.
Thursday, August 21, 2014
11:10 A.M.

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE PAUL L. FRIEDMAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs: Michael D. Hausfeld, Esq.
Sathya Gosselin, Esq.
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 579-1089

Stephen R. Neuwirth, Esq.
Alicia Cobb, Esq.
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

For the Defendants: Daniel M. Wall, Esq.
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
(415) 395-8240

Court Reporter: Lisa Walker Griffith, RPR
U.S. District Courthouse
Room 6507
Washington, D.C. 20001
(202) 354-3247

APPEARANCES: (cont'd.)

For the Defendants: Kent Alan Gardiner, Esq.
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
(202) 624-2500

John Murray Nannes, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
1440 New York Avenue, NW
Washington, DC 20005-2111
(202) 371-7500

Joshua H. Soven, Esq.
GIBSON, DUNN & CRUTCHER, L.L.P.
1050 Connecticut Avenue, NW
Washington, DC 20036-5303
(202) 955-8503

**P R O C E E D I N G S**

THE DEPUTY CLERK: MC Number 07-489. In re Rail Freight Fuel Surcharge Antitrust Litigation, MDL 1869.

Counsel, please come forward and identify yourselves for the record.

MR. HAUSFELD: Good morning, Your Honor. Michael Hausfeld for the class plaintiffs.

THE COURT: Mr. Hausfeld.

MR. NEUWIRTH: Good morning, Your Honor. Steven Neuwirth for the class plaintiffs.

THE COURT: Mr. Neuwirth.

MR. WALL: Good morning, Your Honor. Dan Wall for the Union Pacific and I will be arguing for the defendants today.

THE COURT: Okay.

Mr. Nannes.

MR. NANNES: Good morning, Your Honor. John Nannes for Norfolk Southern Railway Company. Nice to be with you, this morning.

MR. GARDINER: Good morning, Your Honor. Kent Gardiner for CSX Transportation.

MR. SOVEN: Good morning, Your Honor. Joshua Soven for BNSF Railway Company.

THE COURT: Anybody else want to identify themselves for the record? Everybody's appearances have been noted but

if anybody wants to say who they are. Okay.

It seems to me that the question is, what is this hearing going to look like, how long is it going to take and when are we going to do it. So I have a couple of thoughts if you want my thoughts first.

I don't have any views on Dr. McClave because I don't know anything about it and you are going to tell me about it. I do think it would be use -- are you suggesting three hours for openings I think and one hour for closings or maybe that's still up in the air. That seems fine.

Should we divide it into topics for the openings rather than one side speaking for three hours and then the other side? I think we should divide it into topics. I'm not sure what those topics are because as I looked back, I said in my order of October 16th, that I wasn't going to limit the issues. But I identified four issues.

So I can't -- to be honest, I have not read all of the briefs yet. So I don't know what each side thinks are the most important of the issues that need to be addressed. But I still think it would be useful to divide it into issues. They could be broad issues rather than narrow ones, you know.

My initial reaction about the witness time is, but I'm not-- none of this is cast is stone-- is that the proponent of the witness and the opponent of the witness

should have equal time with that witness. But the proponent's time should be divided between the direct and redirect because we have the expert reports. We will agree on an amount of time per witness. And whatever time used on redirect is taken away from what time you might want to save -- whatever time used on direct is taken away from what time you would otherwise use on redirect.

You proposed two alternative dates. The first set of three days does not work for me. The second set of three days sort of works for me. I'm available October 6 in the morning and the remainder of the week. So that's all I have to say for the moment.

So who wants to speak first, Mr. Hausfeld?

MR. HAUSFELD: Good morning again, Your Honor. Rather than here we are again, we could say here we still are. I think there is general agreement--

THE COURT: I know you go to the Shakespeare Theater but if anybody saw they great play at the Woolly Mammouth recently, that's almost the line from the play. It just closed. I won't mention the name of it but it was wonderful.

Okay, go ahead.

MR. HAUSFELD: There is general agreement, there is an opening, a closing and a middle. With regard to the middle, we feel Your Honor's suggestion of equal time makes sense. What we would like to do, unless the defendants

believe otherwise, is to have the opportunity to speak with the defendants conferring about whether or not they would be agreeable to that equal time as opposed to twice the amount of time for direct.

Then we just have the issue of Dr. McClave and the additional witness, if any, that they would want. With regard to closing, I think it was a suggestion that it be at least a minimum of one hour as opposed to just a one hour maximum.

THE COURT: But I think I would like to either today or as soon as you all leave the courtroom, see if we can agree on specifics. I mean, so that how much time per each witness, how much time for closing. Maybe your discussions were at a minimum an hour. But maybe you could actually agree on 90 minutes or two hours or whatever the number is. I don't want an open end on the day we all show up here.

MR. HAUSFELD: Right. And again, depending upon the equal time for witnesses and how many witnesses, we could work within the timeframe of three days. Or if we can't, then it could be two and a half days and have a day of closing a week or so later at convenience because closing can be somewhat separate but relatively contemporaneous with the hearing so that if we can't get every day consecutively, that's a potential option.

THE COURT: Okay. Are you about to tell me why you,

are you going to tell me why you think you need McClave or are they going to tell me why they think you don't need McClave?

Mr. Neuwirth?

MR. NEUWIRTH: Sure. Good morning again, Your Honor.

Just one quick note on the schedule. The reason we had proposed through midday on the 8th is because I have religious observance starting that evening and then on--

THE COURT: Do I? What is the holiday?

MR. NEUWIRTH: Sukkot.

THE COURT: You are a better Jew than I am.

MR. NEUWIRTH: I don't know about that. But just observing that holiday. So if we were to it--

THE COURT: Not you, what about you, Mr. Nannes, are you a Sukkot man?

MR. NANNES: Yes, Your Honor.

MR. NEUWIRTH: Your Honor terms of Dr. McClave I think as a threshold point it is important to just review the context of his report on remand. There was an opening report by Dr. Rausser. There was a rebuttal -- a response to that. The defendants who had had multiple experts that they put in on the merits, chose to put in on remand a report from Dr. Kalt, a single report, but which raised multiple issues. And in reply, Dr. Rausser submitted a report. And there was also

a report from Dr. McClave who had put in a report on the merits as well, addressing some of the issues that had been raised in Dr. Kalt's opposition.

That was not the end though, as Your Honor knows, the defendants came back to Your Honor and said, based on what had been in Dr. Rausser's and Dr. McClave's reply reports, they wanted an opportunity to put in something further both in terms of a brief and they said an additional report from Dr. Kalt.

They did not say that Dr. McClave's report should be struck. They did not say that they needed multiple witnesses to respond to Dr. Rausser and Dr. McClave, they said we would like to put in additional report from Dr. Kalt.

Not only did they put in that report, but on the eve of a deposition that we took of Dr. Kalt,they submitted some supplemental materials beyond those that were in the report that they submitted on the day that it was due. And we took that deposition of Dr. Kalt.

But certainly, if the defendants felt that they needed an additional expert or that there was some problem with Dr. McClave's report, they could have put in an additional expert in the surreply process or they could have told Your Honor that rather than respond to Dr. McClave, they thought there was some problem with him having submitted the report.

THE COURT: Let me ask you this question, whatever we do at this hearing in two and a half days or slightly more than two and a half days or whatever else, is only a supplement to the briefs that you all have submitted and these expert reports that I'm going to have to read, whether I want to or not, I'm going to have to read the expert reports.

The last hearing we had on class certification we didn't have any expert testimony. And in other cases that I've had, I have limited the time for the expert testimony. And in one case that I had, it wasn't an antitrust case, it was a patent case, there were so many experts that, and this was a Daubert question, it was not class certification question, that I required each side to give me a five page summary of their expert reports with the understanding that the expert report was still the evidence, the summary was not to delimit it but just to give me a preview. Then you had 25 minutes for direct. And 25 minutes for cross. And I had 10 minutes for questions. And we moved on to the next expert.

So, in concept, it strikes me that, if we did it the last time without any experts testifying at all, of course I got reversed but that's beside the point. We did it without -- that's not the reason they got reversed. But if we did it without any live testimony at all but with the understanding that I was reading those reports with great care, this is a

supplement to those reports.

And McClave's testimony is along, I mean, he adds some things but it is certainly along the same lines as Rausser. And as I understand they work together. No?

MR. NEUWIRTH: No, these were independent reports, and as I'm sure--

THE COURT: Didn't they used to work together or something?

MR. NEUWIRTH: No.

THE COURT: Okay, go ahead.

MR. NEUWIRTH: They have always submitted independent reports that were put together independently. It is also the case, Your Honor, that as I'm sure you will hear at the hearing, the defendants through Dr. Kalt have raised a very large number of purported challenges to Dr. Rausser's report. Dr. Rausser has responded to those. But there have been certain analyses that Dr. McClave did that we think are important for challenging the premises and context and grounds of what Dr. Kalt is attempting to say in his responses to Dr. Rausser. And so we think, under the circumstances, to have some period of time, even if it is relatively brief compared to the time to the other expert would be useful.

We also understand that one of the benefits to having this type of hearing which is a reason why we didn't

object when the defendants proposed live testimony is that it will give you an opportunity to assess the demeanor of the experts with respect to the work that they did. And we think that Dr. McClave in a context where we have the burden would be able to add some important testimony that would help shed light on what we believe are flaws in Dr. Kalt's analysis.

Again, to the extent we're having live testimony at all, there doesn't seem to be a reason under the circumstances and given the history to exclude Dr. McClave, particularly given that Dr. Kalt in this rebuttal report that Your Honor permitted the defendants to submit, this surreply report, expressly addressed points by Dr. McClave, that he will be free at the hearing to talk about. And we think it is only appropriate given that we have the burden of proof, that Dr. McClave be able to, even if only relatively briefly, to respond to those at the hearing as well.

THE COURT: Okay.

Mr. Wall.

MR. WALL: Good morning, Your Honor. So let me just say that, from our perspective, the purpose of having a live testimony is really to see how the testimony holds up. It's great of you to say that you will read it all given how we have over burdened you with it, we'll see whether you manage to do that. The fault would be ours entirely. These are some pretty long reports.

But when I've done this before, it has frequently been done like an administrative trial where you don't even get to put on your direct examination.

THE COURT: I've done it that way.

MR. WALL: The witness stands for cross.

When we were talking about it with them, we both felt that it would be nice to at least give the witness the chance to get his feet under him a little bit and hit some highlights.

But from our perspective, the value of this, and we think it is a lot of value, is for you to see how they hold up under cross which is why we were not in favor of an equal time allocation. This is all going to be subject to Rule 26. So the direct has to be repetitive of what is in the report. This is not a time to bring in new analysis that have not been disclosed and so forth.

THE COURT: And they've all been deposed too.

MR. WALL: Everybody has been deposed. So our idea is that after a brief direct, there would be a more substantial opportunity for cross. They wanted to have the equal time allocation.

Needless to say that, not only do you decide, but we are most interested in what you would find most valuable. So if you would find equal division most valuable, then we're good with that.

THE COURT: I'm more inclined to think that the redirect should be more valuable to the proponent than the direct for the reasons you just articulated.

MR. WALL: Right. And so, when we thought about this, the elephant in the room at all times was how much of your time can we take. In a world without limits, sure. We have other witnesses we would like to call, too. But the diminishing returns of that time, you know, you get to that point pretty quickly here.

No disrespect to Dr. McClave but he is not a primary witness on this. He is a role-player on class certification. I think of him as the relief pitcher that is supposed to get the one left-handed batter and then, in his, is that he is a statistician, not economist who comes in and he comments on some mathematical or econometric issues, or statistical issues about the structure of the Rausser model. It is what it is.

But it is -- there is no world in my opinion in which, whatever impression you have after hearing Dr. Kalt and Dr. Rausser is going change because you hear Dr. McClave. He is not an omnibus rebuttal witness. He is a very, very narrow witness.

So, we just thought that in a world in which we have to live by time restrictions, that seems like a waste of time, to be straight about it. It just doesn't seem to be a

very important thing.

Now, if you permit it, that's fine. It does create a little bit of a problem, a tricky sort of problem in the allocation of time because if they call a witness, a second witness and we don't, then essentially they're getting more time to allocate to Dr. Kalt's cross which doesn't seem quite right. But that could be managed.

We have also, definitely when they said they want to call Dr. McClave, we started thinking hard about Dennis Carlton, one of the most esteemed economist there is, whose merits report in this case, a part of which we put in the class certification record, directly addresses one of the key issues that we're all fighting about.

So we will do without it if there is just going to be two witnesses. But if you are going to allocate enough time for us to have additional witnesses, that is something that we would definitely want to consider.

When I hear you with the schedule availability, if we look at that time in October, that's really two days that are available because the plaintiffs said that they need to be done on the third day by noon. Within a two day hearing, four witnesses, or three witnesses, are not feasible in my opinion.

THE COURT: If we start with opening arguments.

MR. WALL: Right. Which to me is, the most

important things that we have to say to you at this hearing lie at the intersection of the law and the facts. We're here on remand.

THE COURT: I agree completely.

MR. WALL: We want, you know, the inner scholar in me wants to take the time to engage with Your Honor on these legal issues. And it is going to take some time. I think, as much as I think the live testimony is very important, it is not as important as having a deep discussion of the legal issues and the application of the record, including a lot of stuff that you have not heard before, that wasn't in the record the last time, and some significant changes in the nature of the plaintiff's case to that law, particularly the new law.

So, we think of it in three modules. There is an opening, module of opening argument. We would think there is testimonial module. And we think there is a closing module. We don't think that you can get all that done in two days unless you are getting all of the testimony in essentially five, six court hours. Otherwise you just run out of time.

THE COURT: Have you and Mr. Hausfeld, Mr. Neuwirth talked about, putting McClave aside for a second, how much time Rausser and Kalt are going to take?

MR. WALL: We had different proposals on that. Frankly we punted at the end because what we all realized is

that we didn't know how much time you were allocating, our estimates were somewhat artificial. But we thought that -- we're mostly interested in having 90 minutes of cross examination of Dr. Rausser. That's our highest and most important interest in this. We would be comfortable with a much shorter, we proposed a two to one ratio. But we would even be happy with a three to one ratio of cross to direct and redirect.

But I hear Your Honor saying that you place a value on the redirect. So then maybe you can't do better than two to one. But we would think that in a budgeted environment, if we each have basically two, two and a half hours to do all of the examinations that we want to do, that is sufficient. If you want to give us a lot of extra days, it will be like everything else where we'll fill the time. But I don't think it would be that valuable.

THE COURT: I guess the way the two and a half days came up, the only way it would work is what you are suggesting, that three hours -- if it is three hours of openings, that fills up day one.

MR. WALL: It does.

THE COURT: If it is two and a half hours per witness with two witnesses that pretty much fills up day two, comes close to filling up day two.

MR. WALL: Right.

THE COURT: And then an hour to an hour and a half, to a little bit more of closings fills up the half day.

MR. WALL: I don't know what time we would be able to start on the 6th, whether we're talking about 1:00 or a little bit earlier. But it will be tough to do two three-hour openings in that day.

THE COURT: I'm available on the morning of 6th.

MR. WALL: In the morning.

THE COURT: Yes. And we can sit until--I can't remember what time I've got to be where--

MR. WALL: Is this the panel?

THE COURT: Yes, it is the panel. I don't want to appoint Judge Ginsberg because--

MR. WALL: No one does.

THE COURT: I committed to doing it a long time ago. But that's what we could do in October if we limited the witnesses to, as you suggest, two and a half hours a witness. We could start at 9:00 each morning and go, maybe -- I may have to leave by 1:00 or 1:30 on the first day, Mr. Neuwirth has to leave by 1:00 on the third day.

The alternative suggested in your paper is November, and I'm really in pretty good shape in November.

MR. WALL: Well, we are too. I think from our perspective the only days that we would have to, I know that we would have to avoid are the 10th and the 11th. But

otherwise I think, like any other lawyer, the further you go out the more possibilities there are.

THE COURT: But for one sentencing that has been scheduled, I have to whole week of November 3 free. I have to whole week of November 17 free. As you point out the 11th is a holiday. So--

MR. WALL: I think we can do it in October and do it within two days. But there is no question that, to do that, we can only do two witnesses and there would have to be significant time limits on that. We're fine with that. Obviously the plaintiffs are not. But it seems to me that's the choice that we have to make.

MR. NEUWIRTH: Your Honor, may I make one comment about Dr. McClave and then Mr. Hausfeld and then I will address the overall schedule that has just been discussed.

I do think that it is not surprising that, given the current posture of how the briefing and expert reports went, the defendants are standing up and saying Dr. McClave doesn't matter and we shouldn't hear from him. They got an extraordinary form of relief from you on a motion where we have the burden of proof. They were given the opportunity to put in a surreply brief and surreply report in which Dr. Kalt, one of the purposes they asked you for that permission was so that Dr. Kalt, in their view, could address issues Dr. McClave had raised that they felt that they needed to

address.

And Dr. Kalt wrote a rebuttal report that we assume will be an important informing basis for his testimony in this courtroom and what he will say in response to questions on cross examination.

So, there is something that we think is fundamentally unfair given who has the burden of proof about the idea that they get to put in a surreply report. They stand here and say you can't talk about anything but what has been put into these reports. But you can't have Dr. McClave make any of the points or address any of the points that we asked for and got permission for Dr. Kalt to respond to.

The second point is the suggestion that if we get Dr. McClave, they get to bring Dennis Carlton, who never submitted a report on remand and never submitted a report on cross examination, also seems something of a non sequitur. It is true that he put in a report when we were in the merits phase.

THE COURT: Let me ask you this. He has done a report on the merits, but nothing on class certification.

MR. NEUWIRTH: No, nothing on class certification.

THE COURT: Was he deposed?

MR. NEUWIRTH: He was deposed but in the class certification papers that they filed on remand, they put in some excerpts from the merits reports and made reference in

their briefs to the inferences that they said should be drawn from what those merits expert reports had said.

THE COURT: There is nothing procedurally wrong with that, right?

MR. NEUWIRTH: Procedurally wrong, not in the abstract. But in the context of the fact that they asked Your Honor for permission to do a surreply and chose to use Dr. Kalt again, rather than Dr. Kalt plus someone else, it seems an extraordinary step that is out of that context inappropriate to say that they are now going to get to call as an expert someone who has never put in an opinion that was meant to be an opinion on class certification.

THE COURT: We go back to my original point that the testimony is a lot less important than the reports. They could, even if I didn't -- if I let you call McClave, and I didn't let them call Dennis Carlton, they can still rely on their closing argument on Carlton and what he said and draw my attention back to what he said in his deposition, in his earlier report to the extent it undermines McClave.

MR. NEUWIRTH: I think they could certainly say whatever they want in their closing argument. I'm not sure that they will be able to credibly demonstrate that anything that Dennis Carlton said in his merits report really responded to what McClave said in class cert.

But, certainly the notion that someone would come on

the stand and testify about class cert without ever having been deposed on class cert seems fundamentally unfair. So if we were to go that route, we think we would be entitled to take his deposition before he testifies at this hearing on the question what class cert opinions he might put forward.

But again, I think that the problem we have right now is that the defendants are looking to get the cake and a icing on top. They got the cake of a surreply. Now they want the icing of saying the thing that we surreplied to, it was important enough to ask Your Honor to give us a surreply but now it is not important enough to talk about at the hearing. That's basically their position.

Kalt can come up and say whatever he wants. But we don't want McClave to be able to testify about the points that we told you Kalt had to respond to. So let me turn it over to Mr. Hausfeld.

THE COURT: Let me ask you two other questions. One, whether you have one witness or two witnesses, are you going first, because you have the burden?

MR. NEUWIRTH: We're prepared to go first.

THE COURT: Did you all talk about that?

MR. NEUWIRTH: What we talked about was that depending on whether Your Honor splits up the argument on the first day, however the argument goes, whether it is in sections or not, the plaintiffs would go first, the

defendants would go second either as a whole for the three hours or issue by issue.

THE COURT: But did you talk about witnesses?

MR. NEUWIRTH: Yes. I think the plan was whether we had one witness or two, they would go first and then Dr. Carlton would go second.

THE COURT: Your witnesses--

MR. NEUWIRTH: Our two witnesses would go first. And Dr. Kalt would go second. Then for the closing, the order would be flipped, with the defendants going first and the plaintiffs going last.

THE COURT: And Mr. Wall suggest a few minutes ago that he thought that two and a half hours total for Kalt and two and a half hours total for Rausser would be sufficient.

MR. NEUWIRTH: I'll let Michael address that in the context of the broader schedule. But I think, as Mr. Hausfeld will explain, we feel there is benefit of opening -- direct examination.

MR. WALL: What I was saying is that each side would be allocated two hours and 15 minutes is how I originally did the math which was 90 minutes for your cross examinations of your opponent and 45 minutes for whatever you would do with your own witnesses.

MR. HAUSFELD: That's what I wanted Your Honor to make clear because the way I calculated the time, that could

work either in the two and a half days for everything in terms of what Mr. Wall said, the modules, or you could have the opening the morning of -- the first morning. Then have the testimony over the next day and a half. Then let's say a week later, do the closing.

THE COURT: We could do the openings on the first morning if nobody went more than two hours.

MR. HAUSFELD: Correct.

THE COURT: Rather than three hours.

MR. HAUSFELD: Correct, which is tendency to give yourself a little more flexibility than sometimes might be necessary. If then clearly, if the openings didn't finish, if there were questions, if you are breaking it into topics could be carried over. But if this were a trial, two hour opening is usually considered--

THE COURT: The difference though is this. I agree with Mr. Wall, that the legal arguments are more important than the witnesses. I don't mean to put words in his mouth. I think that's what he said. I may have a lot of questions during the legal arguments. Particularly if you get together and decide on what the modules are going to be called, I don't feel I'm in a position to do that until I've read your briefs.

But you know whether the four issues I've laid out are -- you might not structure, and Mr. Wall and his

colleagues might not structure it according to those four issues because your briefs may have emphasized other things more than those. I know we're going to have a long discussion about false positives and about legacy shippers. Maybe we're going to have an argument about what Barrens meant, the impact here, and we're going to have an argument about damages and common proof, a number of things we are going to have an argument about.

But you all should be able to agree whether it is two hours or three hours. I'm not sure I want to compress it to two hours. What the three or four, hopefully no more than that, modules or subparts are -- And the other thing that we haven't talked about in discussing that, I don't think, is -- well maybe it is implicit.

If it is three hours per side for openings and X. hours per side for closings, and you go first on opening, I think you are going to want to save part of your three hours for a rebuttal to his argument. And if we allow one hour or two hours for closings and he goes first, he is going to want to save some portion of his allotted time for rebuttal to what you say.

And just as I'm inclined with the witnesses, I'm even more inclined on the oral argument to say this is your time, you have to decide which is going to be your opening argument and which is going to be preserved for rebuttal.

But I'm not convinced, I mean, we could do in theory two hours openings, starting at 9 A.M., Monday, October 6. We leave here at 1:00 or 1:30.

But if you leave open the possibility what you've just suggested, but if you have a lot of questions we'll carry it over until the next day, then we're running into whatever time we allot for the experts. And inevitably the closings will not take place on the third day. So we either try to do it all in half a day Monday, half a day Wednesday, and a full day Tuesday, in between, but agree in advance we're not going to get closings, or we pick a week in November.

MR. WALL: I think I have a suggestion which may makes sense because, when we were talking about three hours, we were managing that it was not structured. And so we would want to have our three hours be continuous. If it is divided into topics, we could do as many topics as we can cover on the first day.

Then we come back for the second day, we can start with any remaining topic, essentially finishing the closing. The balance of the day for the witnesses, then possibly spilling over to the next morning. But then wrapping up the following morning.

THE COURT: With the witnesses?

MR. WALL: No, probably with closing arguments.

THE COURT: So you are thinking we can do it in two full days?

MR. WALL: I think we can do it in two full days if we -- yeah, I think that second day could be a bit of a long day to get the witnesses off so that we have the morning --

THE COURT: Even if I let them do McClave?

MR. WALL: No, if you do it with McClave, we would really be pressing the time for the --

MR. HAUSFELD: And a suggestion would be, first of all, I think to be clear, I'm not sure that any of us are contemplating that the second witnesses, whether they be McClave and/or Carlton would be as lengthy as Kalt and Rausser.

THE COURT: Right.

MR. HAUSFELD: And if we shorten to some extent Rausser and Kalt, and then had a follow-up with McClave and Carlton, it could be done. But that would depend on us seeing if we could reach agreement on consolidating that time.

MR. NEUWIRTH: Could I take one minute to confer?

THE COURT: Yes.

(Pause in the proceeding.)

MR. HAUSFELD: I think we just resolved the issue. I think this can be done within that timeframe. We will not call Dr. McClave. So, we will have live testimony only from

Dr. Rausser and Dr. Kalt.

MR. NEUWIRTH: The only principle that we would want to add, Your Honor, which I think is implicit in what everybody has been saying is, whatever time is allocated for the testimony of the two witnesses will be equal. In other words, both will be on the stand for the same amount of time.

THE COURT: Sure.

MR. NEUWIRTH: Both sides will get the same amount of time with each witness.

MR. WALL: I think if I decide to do a short cross, I don't think he is meaning that I can take his time away by doing that.

MR. NEUWIRTH: Right, in other words, if there is let's say three hours for Rausser and three hours for Kalt on the second day, then it would work, whatever, two and a half hours each, that that time would be divided evenly between the plaintiffs and defendants for each witness.

THE COURT: So that if you have 90 minutes -- no, it is not 90. What is half of two and a half hours?

MR. WALL: An hour and 15.

THE COURT: If you have an hour and 15 minutes for Rausser and he has an hour and 15 minutes for Rausser, you are deciding how much you want to spend on your direct, knowing whatever you use on direct is subtracted from your redirect.

He then does his cross, and like any good lawyer, just because he has a certain amount of time, he doesn't have to use it. That is even more true with witnesses than with oral argument I think, although we have all gotten trouble on oral argument by taking all of our rebuttal time, too. Then you have whatever remains from your initial time on redirect but you don't have to use it all either because redirect is redirect and you are only responding to what happened on cross. So if we pick a number, two and a half hours with time for --

MR. NEUWIRTH: The advantage of that approach is I think we can do what Mr. Wall was suggesting which is, if the first day is from 9 to 1:00, which would be a total of four hours, we could take the third hour of the argument time and do it on the morning of the second day, then do the witnesses after that on the second day. Then the last morning have the closings.

MR. HAUSFELD: And there are two aspects to that, Your Honor. These are not traditional openings and possibly closings because, if we do them by topic, each side will address topics. The topics may not be finished within the certain amount of time but then you could just carry the topic over. So that this kind of a scheduling with only two witnesses on that second day gives us a great deal of flexibility to complete everything in that three day period

but really with two days of full hearing.

THE COURT: Do you think based on your reading of each other's briefs that you will be able to agree on the three, four or five topics?

MR. NEUWIRTH: I think that what we need today is the time allocation. My sense is that, if we say now that the general idea will be to have three hours per side for those arguments at the start of the hearing, I am confident that we could get Your Honor a proposal quickly for what topics would be addressed and give Your Honor an opportunity to get back to us on whether those make sense or whether there are additional topics you want to address as you did at the last class certification hearing.

MR. WALL: I don't think that the four questions that you asked us sort of naturally translate into these oral argument modules. It's close. But it is not quite right because I think that it's certainly clear to me that we're going to want to -- I think we should start but at some point we're going to want to have a very deep discussion about what the new class certification standards are, how they work, what they mean, what Barren means, Wal-Mart in the circuit opinion and whatever cases have come out since then. I think that is definitely important.

I think that, at some point we're going to want to each have an opportunity just to address the record. I know

that the plaintiffs do. They have told us in the meet and confers that they want to be able to make arguments about the non-expert record. We have some things that we would want to tell you about what has changed since we were here before. Then it is false positives, coverage, uninjured shippers and damages are the key issues here. So somehow we've got to--

MR. NEUWIRTH: I'm sorry I interrupted.

One observation also was that it may be that each side wants to spend different amounts of time on particular topics. So I think what may have informed Mr. Wall's original suggestion to us that it might just be two, three hours blocks which is roughly what we did at the last hearing for at least part of the argument is that it would give each side the flexibility to devote what time it wants to particular topics. I think we could still do that, even if we divide the topics up.

But I think there are certain topics that the different sides might want to give different emphasis to. So we just would hope that we could preserve the flexibility to allocate our time within that three hours with some of that in mind.

MR. HAUSFELD: I think there is a practical suggestion. Between now and September 15, if the parties could meet and confer to identify the issues that we think we would like to address. And submit that to Your Honor, you

can review it and have time to see if there are any other issues. And issue an order saying these are the issues that you agree, that the parties agree should be addressed but you would like these issues addressed as well. Then we would know by the time we arrive what it is that we need to respond to.

THE COURT: Are we going to try, is somebody going keep track of the time? So--

MR. WALL: We'll take care of that.

THE COURT: So that we know that you may want to spend 25 minutes on Barren, Comcast and the standards in the D.C. Circuit. And they may want to spend 10 minutes telling me nothing has changed.

MR. WALL: Which shouldn't take 10 minutes.

THE COURT: I don't know, Mr. Hausfeld and Mr. Neuwirth will have different ways of saying it.

MR. HAUSFELD: Nothing has changed. We should be able to work that out once we see what the multiplicity or the variety of subjects are.

THE COURT: So the plan would be we'd start at 9:00 A.M. on October 6. If it is still three hours per side for openings, if we take -- if we don't eat lunch and take two 15-minute breaks and go to 1:30 -- I have to figure out how long it takes me to get where ever I'm going-- then it is possible that we get through the openings. And if we don't,

hopefully we'll only have a very little bit to pick up on at 9:00 A.M. on October 7. I'm purposely saying 9:00 A.M. because we're going to have to start bright and early which means people should be here before 9:00 A.M. and all of that.

Then, are we agreed to two and a half hours per witness or are we still debating that question? It seems to me --

MR. HAUSFELD: I think that's fine, Your Honor.

THE COURT: That's doable even if I give them equal time for direct and redirect on one hand, and cross on the other.

MR. WALL: We're fine with that.

THE COURT: All right. So then we should finish the witnesses and any carryover openings on the 7th. Can you agree today or can you agree by, after talking with each other, as to how much time we're going to have for closings?

MR. HAUSFELD: Yes.

THE COURT: The statement was at least an hour.

MR. WALL: Quite honestly, I think that 90 each. That's fine. Again, you can always tell us you are getting tired of hearing from us.

THE COURT: If Mr. Neuwirth is here until 1:00, we could do--

MR. NEUWIRTH: We put in our papers 12:00 is not a problem. I don't mind starting early.

THE COURT: We'll start at 9:00 and do 90 minutes per side.

MR. NEUWIRTH: Thank you for that accommodation, Your Honor.

MR. WALL: Just one thing that came up when Mr. Neuwirth was arguing, I couldn't miss the theme that there was material in Dr. Kalt's surreply that was new that they haven't responded to. Almost all of that material is actually by Dr. Rausser. So one thing that we want to understand is that, if they are planning-- we have to have an understanding about what they can and cannot do in terms of having new, previously disclosed analysis that purports to respond to the surreply.

MR. NEUWIRTH: Your Honor, as you know, you did give them a surreply. And in that surreply--

THE COURT: If I had got forgotten, you have reminded many times this morning.

MR. WALL: Very rare and unprecedented I've heard.

MR. NEUWIRTH: Dr. Kalt submitted a report. And as we've mentioned, on the eve of his deposition, submitted more materials. Now, there was an opportunity to depose him. But if Mr. Wall is taking the position that nothing that was said in that surreply report can even be talked about by Dr. Rausser, that can't be right.

THE COURT: He is not saying that.

MR. WALL: I'm not saying that. I'm not saying that, I'm saying that I cannot cross-examine him on the spot on some new analysis that I have never seen before.

THE COURT: Right.

MR. NEUWIRTH: We understand.

THE COURT: Okay. Now, can I ask a couple of other questions?

I've got all the expert reports I need, right?

MR. WALL: More than enough.

MR. HAUSFELD: All you need or all you want?

THE COURT: You can't always get what you want.

I've got the relevant portions of depositions as exhibits to things that have been filed. I think I know the answer to this. But are the pre-D.C. Circuit opinion, Rausser and Willard reports still in this case?

MR. HAUSFELD: Yes.

THE COURT: That's what I thought.

MR. WALL: Yes, they're part of the record.

THE COURT: Right. Got it. If anybody thinks you need any electronic equipment or overhead stuff or computer things, talk to John Cramer in the clerk's office. Ms. Hightower can give you the number. Just send somebody down here a couple of days and get set up.

MR. HAUSFELD: Thank you.

THE COURT: That's all I have.

MR. WALL: Thank you very much, Your Honor.

THE COURT: I will issue a little order summarizing what we've agreed to today. And then by September 15th, you are going to give me the list of topics.

MR. HAUSFELD: Yes. Thank you, Your Honor.

THE COURT: Thank you.

(Whereupon, at 12:00 noon, the hearing concluded.)

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

______________________________ ________________

Lisa Walker Griffith, RPR Date