# EXHIBIT 9

# CONSULTATION AGREEMENT

THIS CONSULTATION AGREEMENT ("*Agreement*") is entered into effective as of December 16, 2010 (the "*Effective Date*") by and between:

a) CASCADE SETTLEMENT SERVICES LLC ("*Cascade*"), a Delaware limited liability company doing business as "*Cascade Capital Management*"; and

b) GORDON RAUSSER ("*Rausser*").

Cascade has developed a business plan which consists of, among other things, the formation of one or more Funds (as defined below) to pursue the Business (as defined below). Rausser is an expert in the area of, among other things, complex litigation requiring analysis of economic and financial damages, class certification, antitrust behavior, relevant market determination, and other fact-intensive statistical and econometric issues. Cascade has determined that the services of Rausser would be beneficial to Cascade and the Funds in their business activities.

NOW THEREFORE, FOR VALUABLE CONSIDERATION, Cascade and Rausser agree as follows:

1) Certain Definitions. As used herein, the following terms shall have the meanings set forth below:

*Agreement* has the meaning given to it in the preamble to this Agreement.

*Base Fee* has the meaning given to it in Section 5(a) of this Agreement.

*Business* means the anticipated Business to be pursued by the Funds which shall consist primarily of entering into and performing the Contracts.

*Cascade* has the meaning given to it in the preamble to this Agreement.

*Cascade Election Notice* has the meaning given to it in Section 7(a)(ii) of this Agreement.

*Cascade Sale* means either (a) the sale or other disposition, by merger, consolidation or otherwise, of all or substantially all of the assets of Cascade, or (b) the sale or other disposition, by merger, consolidation or otherwise, of all or substantially all of the membership interests of Cascade.

*Case* means a Securities Case or a Commercial Case.

*Cause* has the meaning given to it in Section 7(c) of this Agreement.

*Claims* means, the actual or potential right to participate as a Class member in any recovery obtained, or that may be obtained, in a Case.

*Closing Fee* has the meaning given to it in Section 5(c) of this Agreement.

*Closing Services* has the meaning given to it in Section 5(c) of this Agreement.

*Commercial Case* means a potential, pending, threatened or settled state or federal class action lawsuit (other than a Securities Case) arising out of actual or alleged violations of state or federal antitrust or other laws.

*Contracts* means the anticipated contracts to be entered into by a Fund pursuant to which it agrees to::

i) provide filing services and/or other administrative services with respect to Claims;

ii) purchase Claims; or

iii) advance funds against future recoveries that may be made upon Claims.

*Distributions* means any amounts received by Cascade from any Fund however characterized excluding, however, the following:

i) any amounts received by Cascade from a Fund which are specifically designated by such Fund as a return of an equity investment made by Cascade in such Fund;

ii) any amounts received by Cascade from a Fund in payment of, or as reimbursement for, expense items described in **Exhibit A** attached hereto and incorporated herein by this reference.

*Effective Date* has the meaning given to it in the preamble to this Agreement.

*Fair Market Value* has the meaning given to it in Section 7(b)(iii)(1) of this Agreement.



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY 

***Fund*** means any corporation, limited partnership or limited liability company established by Cascade during the Term to pursue the Business.

***Negotiation Period*** has the meaning given to it in Section 7(b)(iii)(2) of this Agreement.

***OnPoint*** means OnPoint Analytics, Inc., a California corporation.

***Parties*** means Cascade and Rausser. ***Party*** means either of Cascade or Rausser.

***Person*** means (a) any individual, (b) any corporation, limited liability company, partnership, trust or other entity of any kind, type or nature, and (c) any governmental agency or authority.

***Quarterly Report*** has the meaning given to it in Section 5(d) of this Agreement.

***Rausser*** has the meaning given to it in the preamble to this Agreement.

***Rescission Notice*** has the meaning given to it in Section 7(b)(ii)(2)(b) of this Agreement.

***Referral Fee*** has the meaning given to it in Section 5(b) of this Agreement.

***Referral Source*** has the meaning given to it in Section 5(b) of this Agreement.

***Securities Case*** means a potential, pending, threatened or settled state or federal class action lawsuit arising out of actual or alleged violations of state or federal securities laws.

***Services*** has the meaning given to it in Section 3 of this Agreement.

***Term*** has the meaning given to it in Section 7 of this Agreement.

2) **Engagement of Rausser**. On the terms and conditions set forth in this Agreement (a) Cascade engages and retains Rausser as an independent contractor to provide the Services to Cascade and the Funds throughout the Term and (b) Rausser accepts such engagement and agrees to provide the Services to Cascade and the Funds throughout the Term.

3) **Rausser's Services**. During the Term, upon request of Cascade, Rausser shall provide consultation services to Cascade and the Funds consisting of the following (collectively "***Services***"):

a) **Strategic Services**.

i) Assisting in the identification of Cases and/or Claims.

ii) Assisting in the modeling of Cases and/or Claims.

iii) Assisting in marketing efforts designed to result in Contracts.

iv) Assisting in the preparation of underwriting strategies for Contracts.

b) **Origination Services**.

i) Referring Cases, Claims and/or Recovery Rights.

ii) Assisting in the negotiation and closing of Contracts.

iii) Interacting with lead counsel and claims administrators for Cases and/or Claims.

c) **Management Services**.

i) Recommending, interfacing and periodically meeting or conferring with attorneys and others with access to Cases, Claims and/or Recovery Rights.

ii) Attending monthly executive committee meetings, in person when possible.

iii) Attending select meetings with prospective investors and prospective clients.

iv) At the request of Cascade, Rausser shall serve as a member of the executive or other management committee of Cascade and/or any Fund.

4) **Performance Standards**. Rausser shall provide the Services during the Term subject to the following:



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY 

a) **Time Commitment**. Rausser shall devote up to Fifteen (15) hours each calendar month to the performance of the Services. The Services will be performed when and as necessary and requested by Cascade, subject to Rausser's professional and personal calendar and schedule.

b) **Time and Place of Performance**.

i) Rausser shall not maintain an office at the offices of Cascade or any Fund.

ii) Rausser shall perform the Services in person or remotely via telephone, email and/or other methods.

iii) From time to time, Cascade may request that Rausser personally attend meetings at Cascade's offices or at other locations which may involve extended travel time. Subject to Rausser's professional and personal calendar, Rausser shall use reasonable efforts to comply with such requests.

c) **Control of Performance**. Subject to the foregoing, Rausser shall have sole control of the manner and means of performing the Services and shall perform the Services according to his own means and methods of work.

d) **Compliance with Policies and Laws**. During the Term, Rausser shall comply with all applicable state and federal laws and regulations in performing the Services.

e) **Other Activities**. Rausser warrants and represents that he is not now under, and will not in the future during the Term undertake or submit himself to, any contractual or other restrictions or obligations which will materially limit his ability to fulfill his obligations under this Agreement.

f) **Recording of Hours**. Rausser shall not be required to record his hours worked in performing the Services or to provide timesheets for the Services.

g) **Exclusivity**. During the Term, Rausser shall be affiliated exclusively with Cascade and the Funds with respect to business activities that involve providing claim filing services or purchasing or advancing funds against potential class action recoveries or providing advice in connection therewith. It is expressly understood that nothing in this Agreement shall prevent Rausser from (i) serving as an officer or member of the Board of Directors of, or as a consultant to, OnPoint, or its successor, or from rendering consulting services to OnPoint or its successor regarding the business activities of OnPoint, (ii) acting as an expert witness in any litigation matter; (iii) providing strategic consulting services to clients on matters other than providing claim filing services or purchasing or advancing funds against potential class action recoveries, (iv)pursuing academic, teaching, research or other responsibilities in connection with academic appointments; (v) writing and publishing articles, giving seminars and/or speeches on business and financial topics . Rausser shall have the exclusive right to retain any compensation earned in connection with the foregoing activities and neither Cascade nor any Fund shall have any interest in or entitlement thereto.

5) __Fees__. In exchange for Rausser's Services, Cascade shall pay to Rausser fees as follows:

a) **Base Fee**. Subject to the provisions of __Sections 7 and 8__, within twenty (20) days after the end of each calendar quarter during the Term and therefter, Cascade shall pay to Rausser an amount (the "***Base Fee***") equal to the product of:

i) Ten Percent (10%); and

ii) the amount of any Distributions received by Cascade from any Fund during that quarter which is attributable to any Contract entered into during the Term.

b) **Referral Fee**. Subject to the provisions of __Sections 7 and 8__, within twenty (20) days after the end of each calendar quarter during the Term __and thereafter__, Cascade shall pay to Rausser an amount (the "***Referral Fee***") equal to the product of:

i) Seven Percent (7%); and

ii) the amount of any Distributions received by Cascade from any Fund during that quarter which is attributable to any Contract entered into during the Term and for which Rausser is the Referral Source.

Rausser shall be deemed to be the "***Referral Source***" with respect to a Contract if and only if the Case covered by such Contract was identified and brought to Cascade or a Fund primarily through the efforts of Rausser. Disputes as to whether or not Rausser is a Referral Source shall be resolved by binding arbitration under __Section 15(f)__.

c) **Closing Fee**. Subject to the provisions of __Sections 7 and 8__, within twenty (20) days after the end of each

calendar quarter during the Term and thereafter, Cascade shall pay to Rausser an amount (the "***Closing Fee***") equal to the product of:

i) Seven Percent (7%); and

ii) the amount of any Distributions received by Cascade from any Fund during that quarter which is attributable to any Contract entered into during the Term for which (A) Rausser has performed Closing Services and (B) Rausser is not the Referral Source.

Rausser shall be deemed to have performed "***Closing Services***" with respect to a Contract if and only if Rausser was materially and actively involved in the negotiations with the client for such Contract. Disputes as to whether or not Rausser performed Closing Services shall be resolved by binding arbitration under Section 15(f).

For purposes of clarity, Rausser shall not be entitled to a Referral Fee and a Closing Fee with respect to the same Contract.

d) **Quarterly Reports**. Subject to the provisions of Sections 7 and 8, within twenty (20) days after the end of each calendar quarter during the Term and thereafter, Cascade shall provide Rausser with a written report (each a "***Quarterly Report***") specifying the determination of the Base Fee, the Referral Fee and the Closing Fee payable for such calendar quarter along with reasonable backup information sufficient to enable Rausser to confirm the amount of such fees including, among other things, a cash flow statement for Cascade (excluding any items unrelated to Fund activities) and for each Fund.

e) **Audit Rights**. Rausser shall have the right to inspect and/or audit the books and records of Cascade and any Fund to confirm the information provided in any Quarterly Report or the back-up information thereto; provided, however, that Rausser may not conduct such inspection and/or audit more than once in any calendar year. If Rausser's inspection and/or audit reveals that the fees reported by Cascade as payable to Rausser for any calendar quarter were less than the actual fees payable to Rausser for such period, then Cascade shall pay the shortfall to Rausser within ten (10) days of demand. If Rausser's inspection and/or audit reveals that the fees reported by Cascade as payable to Rausser for any calendar quarter were more than five percent (5%) below the actual fees payable to Rausser for such period, then Cascade shall pay (or reimburse Rausser) for the costs incurred in such inspection and/or audit.

f) **Distributions**.

i) Cascade shall cause each Fund to make distributions of its available/distributable cash on a regular basis (at least quarterly); provided, however, each Fund shall have the right to use available/distributable cash to reduce the debt obligations of such Fund. When and as Cascade receives Distributions from any Fund, it shall pay to Rausser his Basic Fee, Referral Fee and/or Closing Fee (if any), as applicable, with respect to such Distribution when and as provided in Section 5. Cascade's equity investment in any Fund will not be granted any preference over, or different treatment from, the equity investments of other investors in such Fund. Cascade will not be entitled to any service fees from any such Fund other than payment of normal and customary costs for administrative services provided by Cascade to such Fund.

ii) It is the intent of the parties that, when and as Cascade receives Distributions from any Fund as to which Rausser is entitled to a Base, Referral and/or Closing Fee in accordance with this Section 5, the funds comprising such Distribution shall be subsequently distributed by Cascade pari passu to Rausser, the members of Cascade any other persons entitled to share in such Distribution. Accordingly, Cascade agrees that when and as it receives Distributions from any Fund, Rausser's Base, Referral and/or Closing Fees (if applicable) with respect to such Distribution shall be paid to Rausser on the earlier of (i) the date on which Cascade distributes the funds comprising such Distribution to its Members or (ii) the date on which Rausser's Referral Fee with respect to such Distribution is payable to him in accordance with this Section 5.

g) **Survival of Fee Entitlements**.

i) Subject to Sections 7(b)(i) and 7(b)(ii)(2)(a), below, in the event that all or substantially all of the membership interests of Cascade are sold, transferred or otherwise disposed of, Cascade shall either:

(1) require, as part of such transaction, that the new owner(s) of such membership interests acknowledge and confirm that the obligations of Cascade and the Rights of Rausser under this Agreement shall survive such transaction; or

(2) prior to the closing of such transaction, assign to Rausser an interest in each Fund equivalent to the maximum percentage of the Distributions from such Fund to which he is or may become entitled under this Agreement (i.e., either 10% or 17% depending upon whether Rausser has provided Referral and or Closing Services).

ii) Subject to Sections 7(b)(i) and 7(b)(ii)(2)(a), below, in the event that all or substantially all of the assets of Cascade are sold, transferred or otherwise disposed of, Cascade shall either:

(1) require, as part of such transaction, that the new owner(s) of such assets assume all of the obligations of Cascade under this Agreement and confirm that the Rights of Rausser under this Agreement shall survive such transaction.; or

(2) prior to the closing of such transaction, assign to Rausser an interest in each Fund equivalent to the portion of the Distributions from such Fund to which he is or may become entitled under this Agreement (i.e., either 10% or 17% depending upon whether Rausser has provided Referral and or Closing Services).

6) **Reimbursement of Travel Expenses**. Cascade shall reimburse Rausser in accordance with Cascade's customary expense reimbursement policy for Rausser's reasonable out-of-pocket travel and accommodation costs and expenses incurred in connection with the performance of the Services when traveling at the request of Cascade during the Term. Cascade shall not be obligated to reimburse Rausser for Rausser's normal costs of doing business such as salaries, rents, overhead, telephone and internet connections and fees, etc.

7) **Term and Termination.**

a) **In General**. Subject to extension as provided in Section 7(b), and earlier termination as provided in Section 7(c), the term of this Agreement (the "***Term***") shall commence on the Effective Date and shall end on the thirteenth (13th) anniversary of the Effective Date.

b) **Extension or Equity Sharing**.

i) **Cascade Sale**. In the event that, prior to the Thirteenth (13th) anniversary of the Effective Date, (1) there is a Cascade Sale and (2) on the date of the closing such Cascade Sale, this Agreement remains in full force and effect (i.e., it has not been terminated by either Cascade or Rausser prior to the closing of such Cascade Sale), then, in such a case, Cascade shall pay or distribute to Rausser at the closing of such Cascade Sale an amount equal to Ten Percent (10%) of the aggregate proceeds (net of legal and accounting fees, brokerage commissions and similar closing costs and excluding assumed debt or liabilities) from the Cascade Sale which is available for distribution (or payable directly) to the members of Cascade as a result of the Cascade Sale. Upon payment of the amount set forth above, all obligations of Cascade for the provision of further Quarterly Reports and for the payment of further Base, Referral and/or Closing Fees under this Agreement and all obligations of Cascade under Section 5(g) shall terminate and lapse.

ii) **No Cascade Sale**. In the event that, prior to the Thirteenth (13th) anniversary of the Effective Date, (1) there is no Cascade Sale and (2) on the Thirteenth (13th) anniversary of the Effective Date this Agreement remains in full force and effect (i.e., it has not been terminated by either Cascade or Rausser prior to the Thirteenth (13th) anniversary of the Effective Date), then, in such a case, within fifteen (15) days following the Thirteenth (13th) anniversary of the Effective Date, Cascade shall immediately provide Rausser with written notice (the "***Cascade Election Notice***") in which Cascade elects, in its sole and absolute discretion, one of the following two alternatives (in the event that Cascade fails to provide a timely Cascade Election Notice, Cascade shall be deemed to have elected Alternative One):

(1) **Alternative One – Rausser's Option to Extend Term**. Cascade may elect to grant to Rausser an option to extend the Term for an additional Seven (7) years until the Twentieth (20th) anniversary of the Effective Date. If Cascade elects Alternative One (or is deemed to have elected Alternative One), then Rausser shall have the right and option to extend the Term for such period by written notice to Cascade given at any time during:

(a) the fifteen (15) day period following the date of the Cascade Election Notice; or

(b) if Cascade fails to provide a Cascade Election Notice, during the thirty (30) day period following the Thirteenth (13th) anniversary of the Effective Date; or

(c) if Cascade provides a Rescission Notice as provided below, within the fifteen (15) day period following the date of Cascade's Rescission Notice.

If Rausser fails to provide timely written notice of Rausser's exercise of such option to extend the Term, such option to extend shall be of no further force or effect.

(2) **Alternative Two – 10% Value Payment to Rausser**. Cascade may elect to pay to Rausser in immediately available funds an amount equal to Ten Percent (10%) of the Fair Market Value of Cascade payable within ten (10) days after the determination of the Fair Market Value of Cascade as provided below; provided, however, that:

(a) upon payment of such sum to Rausser, all obligations of Cascade for the provision of further Quarterly Reports and for the payment of further Base, Referral and/or Closing Fees under this Agreement and all obligations of Cascade under Section 5(g) shall terminate and lapse; and

(b) if Cascade is dissatisfied with the determination of the Fair Market Value of Cascade, Cascade may, at its option, by written notice to Rausser (the "***Rescission Notice***") given within fifteen (15) days after the Fair Market Value of Cascade has been determined, elect to rescind its election of Alternative Two and instead elect Alternative One, and, in such a case, Cascade shall, on demand, reimburse Rausser for all of his actual and reasonable out-of-pocket costs and expenses incurred in connection with the appraisal process.

iii) **Fair Market Value**. In the event that, Cascade elects Alternative Two as provided above, then the Fair Market Value of Cascade shall be determined as provided below:

(1) As used herein, the "***Fair Market Value***" of Cascade shall be determined as of the Thirteenth (13th) anniversary of the Effective Date and shall be the price at which all of the business, assets and liabilities would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

(2) During the twenty (20) day period following the date of the Cascade Election Notice (as it may be extended by mutual agreement of Cascade and Rausser, the "***Negotiation Period***"), Cascade and Rausser shall use their best efforts to mutually agree on the Fair Market Value of Cascade. If they reach such an agreement, the amount agreed upon shall be deemed to be the Fair Market Value of Cascade.

(3) If, by the end of the Negotiation Period, Cascade and Rausser have been unable to reach agreement on the Fair Market Value of Cascade, then the Fair Market Value of Cascade shall be determined as follows:

(a) Within Ten (10) days following the end of the Negotiation Period, each of Cascade and Rausser shall select jointly select an appraiser to determine the Fair Market Value of Cascade. Such appraiser shall determine the Fair Market Value of Cascade and such determination shall be final and binding upon Cascade and Rausser.

(b) If during such 10-day period, Cascade and Rausser cannot mutually agree on a single appraiser, then each of them shall within ten (10) days thereafter select an appraiser and those two appraisers shall within twenty (20) days thereafter in turn select a third appraiser. The third appraiser shall determine the Fair Market Value of Cascade and such determination shall be final and binding upon Cascade and Rausser.

(c) If either Party fails to select an appraiser, then the appraiser selected by the other Party shall determine the Fair Market Value of Cascade and such determination shall be final and binding upon Cascade and Rausser.

(d) The expenses of appraisal shall be paid equally by Rausser and Cascade; provided, however, if Cascade exercises its rights under Section 7(b)(ii)(2(b) and proceeds with Alternative One (extending the Term), Cascade shall, on demand, reimburse Rausser for all of his actual and reasonable out-of-pocket costs and expenses incurred in connection with the appraisal process.

c) **Early Termination**. The Term shall be subject to early termination upon the occurrence of any of the following events:

i) The Term shall terminate upon mutual written agreement of the Parties.



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

ii) The Term shall terminate automatically upon the death of Rausser.

iii) The Term shall automatically terminate upon Rausser's inability to perform the Services because of mental or physical infirmities which continues for a period of six (6) consecutive months.

iv) The Term may be terminated by either Party for Cause (i) if such Cause is not cured within 30 days after written notice to the other Party if such Cause is curable or (ii) immediately upon notice if it is not.

In the case of termination by Cascade, the term "***Cause***" shall mean (x) any felony criminal act by Rausser under applicable law, or dishonesty, embezzlement or fraud by Rausser or (y) any material breach of any term or condition of this Agreement.

In the case of termination by Rausser, the term "***Cause***" shall mean (w) any material breach by Cascade or any of the Funds of any term or provision of this Agreement, (x) the failure by Cascade to establish at least one Fund during the 12 months following the Effective Date of this Agreement, (y) the failure by Cascade and the Funds to enter into at least one Contract during the 18 months following the Effective Date of this Agreement or during any consecutive 32 month period thereafter or (z) the failure of Cascade to pay Base, Referral or Closing Fees pursuant to Section 5 of this Agreement (or voluntary payments as described below) to Rausser which equal, in the aggregate, at least Twenty Thousand Dollars ($20,000) during any consecutive 12-month period commencing on or after the Second (2nd) anniversary of the Effective Date (Cascade may, at its option, make voluntary payments to Rausser to bring the aggregate payments to Rausser to the $20,000 level).

d) **Return of Materials**. Upon expiration or termination of the Term, Rausser shall immediately deliver to Cascade at its principal place of business all documents, writings and materials containing information or data relating to the business or assets of Cascade or any of the Funds which are in his possession, custody or control.

8) **Continuation of Fees Subsequent to Termination**.

a) Subject to Sections 7(b)(i), 7(b)(ii)(2) and 8(b), the obligations of Cascade under Section 5 to provide Quarterly Reports and pay Base, Referral and Closing Fees on Distributions relating to Contracts that were entered into by any Fund prior to the expiration or termination of the Term shall continue and survive the expiration or termination of the Term.

b) Notwithstanding the forgoing, Cascade's obligations under Section 5 to provide Quarterly Reports and pay Base, Referral and Closing Fees shall immediately terminate if, at any time prior to the fifteenth (15th) anniversary of the Effective Date, Rausser participates, directly or indirectly, on his own behalf or as owner, manager, stockholder, consultant, director, officer, partner, manager, member, agent or employee of any Person, in any business which engages or proposes to engage in providing claim filing services or purchasing or advancing funds against potential class action recoveries.

9) **Use of Rausser's Name and Likeness**.

a) During the Term, Cascade and any of the Funds may:

i) disclose publicly that Rausser is affiliated with Cascade and the Funds as an economic, financial or business consultant and advisor on and in any websites, offering materials or promotional materials established or published by Cascade or any of the Funds from time to time; and

ii) may include Rausser's name, likeness and biographical information on and in any websites, offering materials or promotional materials established or published by Cascade or any of the Funds from time to time.

iii) Notwithstanding the foregoing, all written materials using Rausser's name and/or likeness shall be submitted to and approved by him in advance.

b) During the Term, Rausser will not permit his name to be used by any other business engaging in activities similar to or competitive with the Business.

10) **Independent Contractor**. In providing the Services, Rausser shall be an independent contractor, and neither Rausser nor any of Rausser's agents or employees shall be an employee of Cascade or any of the Funds. In all business contacts with third parties, Rausser shall not hold himself out as an employee or agent of Cascade or any of the Funds. Rausser shall not have any right or authority to bind Cascade or any of the Funds to any contract or other agreement. The overall management and control of the business and affairs of Cascade and the Funds shall be

vested in the officers and directors of Cascade and the Funds and not in Rausser. Rausser shall not be entitled to participate in any insurance or other fringe benefit programs offered by Cascade or any of the Funds from time to time.

11) **Gross Fees, No Withholding**. The fees and reimbursements to be paid under this Agreement are gross fees, and neither Cascade nor any of the Funds shall be required to withhold or pay any federal, state or local income taxes, social security taxes, disability or unemployment insurance, or similar payroll taxes in connection with such fees or reimbursements. Rausser shall defend, indemnify and hold harmless Cascade, each of the Funds and each of the managers, members, officers, directors, agents and employees of Cascade and each of the Funds from and against any liabilities (including penalties and interest) as may be asserted in connection with any such federal, state or local income taxes, social security taxes, disability or unemployment insurance or similar payroll taxes. Cascade or the Funds shall issue one or more Form 1099s to Rausser for compensation paid under this Agreement if required by law.

12) **Services of OnPoint**. The Parties acknowledge that Cascade and OnPoint have previously entered into an agreement that provides for the provision of Commercial Case modeling services by OnPoint to Cascade and the Funds.

13) **Restrictive Covenants**.

a) **Confidential Information**. During and after the Term, Rausser agrees not to directly or indirectly disclose or use (or permit the disclosure or use of) any trade secrets or other confidential or proprietary information of Cascade, any of the Funds or any of the affiliates, investors, customers or clients of any of the Funds, or developed for Cascade or any of the Funds as a result of Rausser's engagement under this Agreement, including but not limited to any documentation, records, listings, notes, data, sketches, drawings, computer disks, computer programs, computer coding, files or records, memoranda, designs, models, accounts, reference materials, samples, equipment, trade-secrets, prices, strategic partners, marketing plans or concepts, strategic or other plans, customer names or lists, project opportunities and the like, provided, however that the foregoing restriction shall not include information or data which:

i) is already rightfully in Rausser's possession at the time of its disclosure by Cascade or the applicable Fund to Rausser,

ii) is now or becomes a part of the public domain by virtue of publication, free of copyright or other protection, other than by or through the fault of Rausser (or Rausser's agents or employees), or

iii) is rightfully received by Rausser from a third party who has a right to disclose such information, without restriction on disclosure and without breach of this Agreement or any other agreement.

b) **Employee Raiding**. During the Term and for a period of one year thereafter, Rausser will not, directly or indirectly, whether as an officer, director, shareholder, member, partner, agent, employee, consultant or otherwise or by or through any entity in which Rausser has (directly or indirectly) an ownership or other beneficial or economic interest:

i) directly or indirectly encourage or solicit (i) any employee to leave the employ of Cascade or any of the Funds or (ii) any Person providing services to Cascade or any of the Funds as an independent contractor (other than OnPoint) to terminate the provision of such services to Cascade or any of the Funds; or

ii) directly or indirectly hire or retain any individual, whether as an employee, consultant or otherwise, who within the 12-month period prior to the proposed date of hiring or retention was either (i) an employee of Cascade or any of the Funds or (ii) was an independent contractor providing services to Cascade or any of the Funds.

c) **Customer Raiding**. During the Term and for a period of one year thereafter, Rausser will not, directly or indirectly, whether as an officer, director, shareholder, member, partner, agent, employee, consultant or otherwise or by or through any entity in which Rausser has (directly or indirectly) an ownership, beneficial or economic interest, encourage or solicit:

i) any of the existing or previous customers or clients of Cascade or any of the Funds; provided, however, that such restriction shall not apply with respect to any previous client or customer who has not done business with Cascade or any of the Funds for a period of two (2) years or

ii) any new business prospects which Cascade or any of the Funds is actively pursuing at the end of the Term,

to cease or terminate doing business with Cascade or any Fund or to decline to do business with Cascade or any Fund.

14) <u>Investing Opportunities</u>. Cascade shall provide Rausser with the opportunity to invest in offerings by any Fund established by Cascade during the Term in such amounts as Rausser desires (including amounts less than the minimum investment level otherwise established for such offering), subject to Rausser's continued qualification as an "accredited investor" and meeting of the applicable "suitability standards" for any such investment.

15) <u>Miscellaneous Provisions</u>.

a) <u>Successors and Assigns</u>. Rausser will not assign, sell, transfer, delegate or otherwise dispose of, whether voluntarily or involuntarily, or by operation of law, any rights or obligations under this Agreement. Any purported assignment, transfer, or delegation by Rausser shall be null and void. Subject to the foregoing, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the Parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the Parties or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. Cascade shall have the right to administer this Agreement to the extent it relates to services to be provided to or for any Fund.

b) <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of California as applied to agreements among California residents entered into and to be performed entirely within California.

c) <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

d) <u>Notices</u>. Any notice required or permitted under this Agreement shall be given in writing to the appropriate Party, either by personal service or by registered or certified mail, postage prepaid, addressed to such Party at the address set forth below such Party's signature (or to such other address as may be specified in a written notice given under this subsection). For the purpose of determining compliance with any time limit in this Agreement, a notice shall be deemed to have been duly given and received (a) on the date of service, if served personally on the Party to whom notice is to be given, or (b) on the second business day after mailing, if mailed to the Party to whom the notice is to be given in the manner provided in this subsection.

e) <u>Interpretation</u>. This Agreement shall be interpreted fairly in light of the intentions of the Parties as set forth in this Agreement. The Parties each hereby waive the benefit of any rule or statute requiring that ambiguities be interpreted against the Party preparing this Agreement or causing the ambiguity.

f) <u>Mandatory Arbitration</u>. Except for injunctive relief under <u>Section 15(j)</u>, any controversy or claim arising out of or relating to this Agreement, or breach or alleged breach of this Agreement, shall be settled by mandatory and binding arbitration in the City and County of San Francisco, California, in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction. In each arbitration, the arbritrator(s) shall be instructed to determine the prevailing Party in such arbitration (whether or not there is a monetary award made in such arbitration) and award to such prevailing Party an award from the other Party of an amount equal to all of the prevailing Party's costs of the arbitration, including, without limitation, reasonable attorneys' fees and expenses and all costs of the arbitration for transcripts of the arbitration, administrative fees and the fees of the arbitrator(s).

g) <u>Attorneys' Fees</u>. In the case of any arbitration or litigation arising out of or related to the interpretation or enforcement of this Agreement, the prevailing Party in such arbitration or litigation (as determined by the arbitrators or the Court) shall be entitled to recover, in addition to any award or judgment, all costs of such arbitration or litigation, including, without limitation, reasonable attorneys' fees. The provisions of this subsection shall survive entry of any such award or judgment.

h) <u>Entire Agreement; Integration; Amendments</u>. The terms of this Agreement are intended by the Parties to be the final expression of their agreement with respect to the subject matter of this Agreement and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement shall constitute the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any arbitration or judicial, administrative, or other legal proceeding involving this Agreement. Accordingly, this Agreement contains the entire agreement between the Parties and supersedes

all prior oral, written and implied agreements, understandings, commitments, and practices between the Parties. No amendments to this Agreement may be made except by a writing signed by each of the Parties.

i) **Severability**. If any provision of this Agreement is held invalid or unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

j) **Injunctive Relief**. The Parties state and agree that the obligations imposed by Sections 4(g), 7(d) and 13 are necessary for the protection of the business and goodwill of Cascade and the Funds, are reasonable for that purpose, and that any breach of Rausser's obligations under such Sections would cause substantial and irreparable injury to Cascade and the Funds, for which an award of damages alone would be an inadequate remedy. Thus, in addition to any other remedy (including monetary damages) that may be available to Cascade or any of the Funds for any breach of such Sections by Rausser, the Parties agree that Cascade and any of the Funds shall have the right to seek specific performance of such Sections, along with other equitable and injunctive relief, without proof of actual damage and without the necessity of posting a bond.

k) **Cumulative Remedies**. All rights and remedies hereunder are cumulative and are in addition to and not exclusive of any other rights and remedies available, at law, in equity, by agreement or otherwise.

l) **Survival**. The provisions of Sections 1, 5, 6 (as it relates to expenses incurred prior to the expiration or termination of the Term), 7, 8, 10, 11, 13, and 15 shall survive the expiration or termination of the Term.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement effective as of the date first above written.

| | |
|---|---|
| **CASCADE SETTLEMENT SERVICES LLC**,<br>a Delaware limited liability company doing business as "*Cascade Capital Management*"<br><br>By: [signature]<br>Name: John Chilcott<br>Title: CEO<br><br>**Address for Notices**:<br>Cascade Capital Management<br>Attn: John Chilcott, Managing Partner<br>100 Shoreline Highway, Suite A-190<br>Mill Valley, CA 94941 | [signature: Gordon Rausser]<br>**GORDON RAUSSER**<br><br>Address for Notices:<br>Gordon Rausser<br>661 San Luis Road<br>Berkeley, CA 94707 |

**EXHIBIT A**
**TO CONSULTATION AGREEMENT**

It is anticipated that for each Fund:

(A) Cascade will be providing services to such Fund and such Fund shall reimburse or pay to Cascade the reasonable value of such services: and

(B) Cascade may advance funds to or for the benefit of such Fund and such Fund shall reimburse Cascade for such advances.

The services and advances referred to above include the following:

1) Sales commissions payable to Cascade staff or others for arranging Contracts for such Fund.

2) A bonus pool payable to Cascade staff or others which shall not exceed five percent (5%) of the profits of such Fund.

3) Reimbursement for the actual cost of services provided to or for such Fund by employees of Cascade (including allocable salaries and employee benefits) relating to any of the following:

   a) analytics;

   b) marketing;

   c) IT; and

   d) travel and accommodations.

4) Reimbursement for organizational expenses for such Fund (including, without limitation, legal and accounting fees and filing fees).

5) Reimbursement for legal and accounting fees properly allocable to such Fund.

6) Reimbursement for the allocable portion of Cascades overhead/operating expenses (i.e., rent, utilities, insurance, etc.) which shall be allocated among all of the Funds.

Notwithstanding the foregoing to the contrary, in no event shall the aggregate amount paid by Funds to Cascade in any calendar year:

i) in reimbursement for the services of John Chilcott or for commissions or other fees payable to John Chilcott exceed $250,000; or

ii) in reimbursement for the services of David Levy or for commissions or other fees payable to David Levy exceed $250,000.

Any such amounts paid to John Chilcott, David Levy or other members of Cascade shall be treated as advances against John Chilcott's, David Levy's or such other member's distributions as members of Cascade so that such payment shall not have the effect of reducing the Base, Referral and/or Closing Fees to which Rausser is entitled under this Agreement.