# EXHIBIT 15

Kausser

Confidential Private Offering Memorandum #____________

CASCADE SETTLEMENT SERVICES FUND I LLC

SUBSCRIPTION AGREEMENT

1. **THE SECURITIES OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "*SECURITIES ACT*"), OR REGISTERED OR QUALIFIED UNDER ANY APPLICABLE STATE SECURITIES OR BLUE SKY LAWS. THE SECURITIES OFFERED HEREBY MAY NOT BE OFFERED, SOLD, ASSIGNED, PLEDGED, HYPOTHECATED, TRANSFERRED OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND REGISTRATION OR QUALIFICATION UNDER THE APPLICABLE STATE SECURITIES OR BLUE SKY LAWS OR AN EXEMPTION FROM THE REGISTRATION AND QUALIFICATION REQUIREMENTS OF SUCH LAWS.**

2. **THIS SUBSCRIPTION AGREEMENT DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO PURCHASE, ANY OF THE SECURITIES DESCRIBED HEREIN BY OR TO ANY PERSON IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL. THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY ANY FEDERAL OR STATE SECURITIES AUTHORITIES, NOR HAVE SUCH AUTHORITIES PASSED UPON THE MERITS OF THE OFFERING OR THE ACCURACY OR ADEQUACY OF THIS DOCUMENT OR ANY INFORMATION PROVIDED BY OR ON BEHALF OF THE COMPANY TO POTENTIAL INVESTORS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

3. **INVESTMENT IN THESE SECURITIES IS SPECULATIVE AND INVOLVES A HIGH DEGREE OF RISK. BY EXECUTING THIS SUBSCRIPTION AGREEMENT, THE INVESTOR REPRESENTS AND WARRANTS THAT THE INVESTOR IS RELYING ONLY UPON THE INVESTOR'S OWN PROFESSIONAL ADVISORS REGARDING TAX, ACCOUNTING, INVESTMENT, LEGAL, FINANCIAL AND OTHER CONSEQUENCES OF INVESTING IN THE COMPANY AND THE RISKS INVOLVED IN MAKING THE INVESTMENT.**

**THIS SUBSCRIPTION AGREEMENT** (this "***Agreement***") is executed by the undersigned (the "***Investor***") in connection with the offer to and purchase by the Investor of that number of Preferred Units (the "***Units***") of Cascade Settlement Services Fund I LLC (the "***Fund***"), a California limited liability company, set forth on the signature page to this Agreement, at a purchase price of One Dollar ($1.00) per Unit, for an aggregate purchase price as set forth on the signature page to this Agreement (the "***Aggregate Purchase Price***").

The solicitation of this subscription and, if accepted by the Fund, the offer and sale of the Units are being made in reliance upon the provisions of Regulation D ("***Regulation D***") promulgated by the Securities and Exchange Commission (the "***SEC***") under the Securities Act of 1933, as amended (the "***Securities Act***"), and/or Section 4(2) of the Securities Act.

**FOR VALUABLE CONSIDERATION**, it is agreed as follows:

2. **Offer to Subscribe; Purchase Price and Closing.**

   2.1 The Investor hereby offers to subscribe for and purchase the Units for the Aggregate Purchase Price in accordance with the terms and conditions of this Agreement.

   2.2 The closing of the sale and purchase of the Units (the "***Closing***") will occur upon the satisfaction of all conditions described in this Agreement, including the acceptance by the Fund of this offer to subscribe.

3. **Representations and Warranties of the Investor.** The Investor hereby represents and warrants to the Fund and its Manager (i.e., Cascade Settlement Services, LLC (the "***Manager***"), which representations and warranties shall be true, accurate and complete as of the date of execution hereof and as of the date of the Closing that:

   3.1 **Accredited Investor.** The Investor is (check applicable box):

(a) [___] a bank as defined in Section 3(a)(2) of the Securities Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act acting in its individual or fiduciary capacity.

(b) [___] a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended (the "*Exchange Act*").

(c) [___] an insurance company as defined in Section 2(13) of the Securities Act.

(d) [___] an investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of that act.

(e) [___] a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

(f) [___] a plan established and maintained by a state, its political subdivisions or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, if such plan has total assets in excess of $5,000,000.

(g) [___] an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company or registered investment advisor, or an employee benefit plan having total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors.

(h) [___] a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940.

(i) [___] an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, a corporation, a Massachusetts or similar business trust, or partnership not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000.

(j) [___] a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of the prospective investment.

(k) [ejP] an individual. (See Section 3.2 below.)

(l) [___] an entity of which each equity or beneficial owner is an entity described in (a) - (j) under this Section 3.1 or is an individual who could check one (1) of the first three (3) boxes under Section 3.2.

**INVESTOR INITIALS HERE:** ejP

3.2 **Individual Investors**. If the Investor checked the box in Section 3.1(k) for "an individual," then the Investor (check all applicable boxes):

(a) [___] is a director or executive officer of the Fund or the Manager.

(b) [ejP] has an individual net worth, or joint net worth with that person's spouse, at the time of his or her purchase exceeding $1,000,000.

(c) [EJP] had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year.

(d) [___] none of the above.

**INVESTOR INITIALS HERE:** ejP

3.3 **Investment Experience; Access to Information; Independent Investigation.**

(a) **Access to Information**. The Investor, in making Investor's investment decision to subscribe for the Units hereunder, represents that:

(i) the Investor has read, reviewed and relied solely on the information specifically contained in this Agreement, that certain Operating Agreement of the Fund, dated August 15, 2011 (the "***Operating Agreement***"), and the Confidential Private Placement Memorandum dated August 15, 2011 (the "***Memorandum***") and any independent investigation made by the Investor and the Investor's personal tax, accounting, investment, legal and other professional advisors and representatives, if any;

(ii) the Investor has, prior to the date of this Agreement, been given an opportunity to ask questions of and receive answers and additional information from the Fund's officers and the Manager as the Investor deems necessary, desirable or advisable and any information so requested has been made available to the full and complete satisfaction of the Investor;

(iii) the Investor is not relying on any oral or written representation or assurance of the Fund, the Manager or any other Person other than as specifically set forth in this Agreement; and

(iv) the Investor has not reproduced, duplicated or delivered the Operating Agreement, the Memorandum, or this Agreement to any other Person (as defined below) except the Investor's professional advisors.

(b) **Reliance on own Advisors**. The Investor has relied completely on the advice of, or has consulted with or has had the opportunity to consult with, Investor's own personal tax, accounting, investment, legal and other professional advisors and representatives with respect to any investment in the Units and has not relied on the Fund, the Manager or any of their affiliates, officers, directors, attorneys, accountants, representatives, agents, advisors or any affiliates of any of the foregoing and each other Person, if any, who controls any of the foregoing, within the meaning of Section 15 of the Securities Act, for any such advice.

(c) **Capability to Evaluate; Investment Experience**. The Investor has experience in investing in securities of companies similar to the Fund and has made investments in securities other than those of the Fund. The Investor has such knowledge and experience in financial and business matters, either directly or through Investor's representatives or advisors, that the Investor is capable of evaluating the merits and risks of the prospective investment. The Investor represents, warrants and acknowledges that it is an "accredited investor" (as defined in Rule 501(a) promulgated under the Securities Act) by virtue of, among other things, the fact that it meets the investor qualification standards set forth in this Section 2 above. If the Investor is an entity, it has not been organized for the purpose of investing in the Units although such investment is consistent with its purposes.

(d) **Ability to Bear Economic Risk**. The Investor understands and acknowledges that an investment in the Units and the Fund involves a high degree of risk. The Investor acknowledges that it, directly or indirectly, is able to represent itself in the transaction contemplated by this Agreement and that it has the ability to bear the economic risk of its investment pursuant to this Agreement. It is possible that the Investor may incur a total loss of its investment. The Investor has adequate means of providing for the Investor's current needs and possible contingencies and does not have a need for liquidity of this investment. The Investor's commitment to illiquid investments, including the Units, is reasonable in relation to the Investor's net worth.

(e) **Investment; No Distribution**. The Investor is acquiring the Units solely for the Investor's own account for investment purposes as a principal and not with a view to the resale, distribution, subdivision or fractionalization of all or any part thereof. The



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

Investor has no agreement, arrangement or understanding for any such resale, distribution, subdivision or fractionalization and has no present plans to enter into any of the foregoing. The Investor is aware that there are legal, contractual and practical limits on the Investor's ability to sell or dispose of the Units and, therefore, that the Investor must bear the economic risk of the investment for an indefinite period of time.

(f) **No General Solicitation**. The Units were not offered to the Investor through, and the Investor is not aware of, any form of general solicitation or general advertising, including, without limitation, (i) any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over television or radio, and (ii) any seminar or meeting whose attendees have been invited by any general solicitation or general advertising.

(g) **Pre-existing Relationship**. The Investor has a pre-existing personal or business relationship with one or more of the members of the Manager and is otherwise qualified to evaluate and assess the risks, nature and other aspects of acquisition of the Units.

3.4 **Due Authorization**.

(a) **Authority**. The signatory hereto has the right, power, authority and capacity to execute and deliver this Agreement and each other document contemplated by this Agreement and acquire the Units without the consent, approval or other authorization of any other Person, including, without limitation, any governmental body, authority or agency. The Investor, if executing this Agreement in a representative or fiduciary capacity, has full power and authority to execute and deliver this Agreement and each other document contemplated hereby or thereby for which a signature is required and to acquire the Units in such capacity and on behalf of the subscribing individual, partnership, trust, estate, corporation or other entity (collectively a "***Person***") for whom or which the Investor is executing such agreements without the consent, approval or other authorization of any other Person, including, without limitation, any governmental body, authority or agency. The Investor, if an individual, has reached the age of majority according to the laws of the state in which he or she resides.

(b) **Due Authorization**. If the Investor is a corporation, a limited liability company or other entity, the Investor is duly and validly organized, validly existing and in good standing as an entity under the laws of the jurisdiction of its organization with full power and authority to purchase the Units to be purchased by it and to execute and deliver this Agreement and each other document contemplated by this Agreement and perform its obligations hereunder and thereunder.

(c) **Partnerships**. If the Investor is a partnership or limited liability company, the representations, warranties, agreements and understandings set forth above are true with respect to all partners or members in the Investor (and if any such partner or member is itself a partnership or limited liability company, all Persons holding an interest in such partnership or limited liability company, directly or indirectly, including through one or more partnerships or limited liability companies), and the Person executing this Agreement has made due inquiry to determine the truthfulness of the representations and warranties made hereby.

(d) **Representatives**. If the Investor is purchasing in a representative or fiduciary capacity, the above representations and warranties shall be deemed to have been made on behalf of the Person or Persons for whom the Investor is so purchasing.

3.5 **Investor Questionnaire**. The information concerning Investor in the Individual Investor Questionnaire or the Entity Investor Questionnaire submitted by Investor along with this Agreement is true, correct and complete and not misleading in any material way.

4. **Acknowledgments**. The Investor acknowledges and agrees that:

4.1 **Risks of Investment**. The Investor recognizes that an investment in the Fund involves a high degree of risk, including, without limitation, risks related to the Fund and an investment in the



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

Units. The Investor recognizes that this Agreement and the Fund's Operating Agreement do not purport to contain all the information which would be contained in a registration statement under the Securities Act.

4.2 **No Governmental Approval**. The Investor understands that no federal or state agency has reviewed, approved, passed upon or made any recommendation or endorsement of the Fund, this offering or the purchase of the Units or any findings or determination as to the fairness of this investment.

4.3 **No Registration; No Public Market**.

(a) **No Registration**. Investor understands that the Units are characterized as "restricted securities" under the federal securities laws, as the Units are being acquired from the Fund in a transaction not involving a public offering. The Units have not been registered under the Securities Act or any applicable state securities or blue sky laws by reason of exemptions from the registration requirements of the Securities Act and such state laws, and may not be offered, sold, pledged, assigned, hypothecated, transferred or otherwise disposed of, in whole or in part, in the absence of an effective registration statement for such Units under the Securities Act and any qualification or registration required pursuant to applicable state securities and blue sky laws or unless an exemption from such qualification and registration is available. The Investor understands that the Fund is under no obligation to file a registration statement covering the Units with the SEC or any other governmental body, authority or agency.

(b) **No Established Market**. The Investor understands that there is no established or public market for the Units and that no established or public market for the Units is likely to develop. Therefore, the Investor must bear the economic risk of the Investor's investment for an indefinite period of time.

(c) **Restrictions on Transfer**. The Investor will not, and will not attempt to, sell, transfer, assign, pledge, hypothecate, encumber or otherwise dispose (a "***Transfer***") of all or any portion of the Units unless allowed by "**Article 8: Transfer and Assignment of Units**" in the Fund's Operating Agreement. The Investor understands that the Operating Agreement contains certain restrictions on transfer of the Units.

4.4 **Exempt Transaction**. The Investor understands that the Units are being offered and sold in reliance on specific exemptions from the registration requirements of federal and state law and that the representations, warranties, agreements, acknowledgments and understandings set forth herein are being relied upon by the Fund in determining the applicability of such exemptions and the suitability of the Investor to acquire the Units.

4.5 **Legend**. It is understood that if the Manager elects to cause the Units to be represented by certificates, such certificates shall bear legends substantially in the following form:

"THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR REGISTERED OR QUALIFIED UNDER ANY APPLICABLE STATE SECURITIES OR BLUE SKY LAWS. THE SECURITIES MAY NOT BE OFFERED, SOLD, ASSIGNED, PLEDGED, HYPOTHECATED, TRANSFERRED OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND REGISTRATION OR QUALIFICATION UNDER APPLICABLE STATE SECURITIES OR BLUE SKY LAWS OR AN EXEMPTION FROM THE REGISTRATION AND QUALIFICATION REQUIREMENTS OF SUCH SECURITIES LAWS."

"THE OFFER, SALE, ASSIGNMENT, PLEDGE, HYPOTHECATION, TRANSFER OR OTHER DISPOSITION OF THE SECURITIES REPRESENTED HEREBY IS PROHIBITED OR LIMITED BY A SECURITIES SUBSCRIPTION AGREEMENT AND BY AN OPERATING AGREEMENT OF THE COMPANY, A COPY OF EACH OF WHICH IS ON FILE WITH THE SECRETARY OF THE COMPANY."



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

5. **Confidential Information**. The Investor agrees not to disclose, directly or indirectly, or permit others to disclose any confidential or proprietary information of the Fund, including, without limitation, the Fund's Operating Agreement and the information contained therein, to any third parties.

6. **Miscellaneous**.

6.1 **Representations and Warranties Survive the Closing; Severability**. The Investor's representations and warranties contained herein shall survive the Closing notwithstanding any due diligence investigation made by or on behalf of the Fund. In the event that any provision of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, then such provision shall be modified in accordance with the intent of the parties as set forth in this Agreement to the minimum extent necessary to make such provision legal, valid and enforceable for such application, provided that if such provision is not capable of being so modified, then such provision shall be severed from this Agreement for such application, and the remaining terms and conditions of this Agreement shall continue in full force and effect without said provision; provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to any party.

6.2 **Successors and Assigns**. The Investor shall not have the right to assign or otherwise transfer this Agreement or any of the Investor's rights or obligations hereunder. Subject to the foregoing limitation, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective permitted successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

6.3 **Governing Law**. This Agreement shall be governed by and construed under the laws of the State of California without giving effect to any conflict of law provisions thereof except for matters arising under the Securities Act or Exchange Act, which matters shall be construed and interpreted in accordance with such laws.

6.4 **Execution in Counterparts Permitted**. This Agreement may be executed in any number of counterparts, each of which shall be enforceable against the parties actually executing such counterparts, and all of which together shall constitute one and the same instrument.

6.5 **Titles and Subtitles; Gender**. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement. The use in this Agreement of a masculine, feminine or neither pronoun shall be deemed to include a reference to the others.

6.6 **Written Notices, Etc.** Any notice, demand or request required or permitted to be given by the Fund or the Investor pursuant to the terms of this Agreement shall be in writing and shall be deemed given when delivered personally or by recognized overnight courier, or by facsimile (with a hard copy to follow by recognized overnight courier), addressed, if to the Fund, at its principal executive office to the attention of David Levy, Cascade Settlement Services Fund I LLC, at 100 Shoreline Highway, Suite B-125 Mill Valley, CA 94941 telephone number (415) 606-1679, email dhl@generosity.com and if to the Investor, at the address and/or facsimile telephone number of the Investor set forth at the end of this Agreement or such other address as a party may request by notifying the other in writing pursuant to this Section 6.6.

6.7 **Expenses**. Each of the Fund and the Investor shall pay all costs and expenses that it respectively incurs with respect to the negotiation, execution, delivery and performance of this Agreement and the transactions contemplated hereby.

6.8 **Entire Agreement; Written Amendments Required**. This Agreement and the other documents delivered pursuant hereto or contemplated hereby constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof, and no party shall be liable or bound to any other party in any manner by any warranties, representations or covenants except as specifically set forth herein or therein. Neither this Agreement nor any term hereof may be amended, waived, discharged, modified or terminated other than by a written instrument signed



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

by each party hereto. Any waiver of the application of any term or provision herein or breach hereof shall not be deemed to be a waiver of any other term, provision or breach and shall not be deemed a waiver of any subsequent application of such term or provision or the occurrence of a subsequent breach.

7. **Subscription and Wiring Instructions; Irrevocability.**

7.1 **Payment of Subscription Funds.** The Investor shall send its signed Agreement and send its subscription funds as required by the Fund either by wire transfer to the Fund (to an account and bank designated by the Fund) or by certified or bank cashier's check payable to the order of the Fund, in each case in immediately available funds, to Cascade Settlement Services Fund I LLC, at the address set forth above.

7.2 **Irrevocable Subscription.** The Investor hereby acknowledges and agrees, subject to the provisions of any applicable laws providing for the refund of subscription amounts submitted by the Investor, that this Agreement is irrevocable and that the Investor is not entitled to cancel, terminate or revoke this Agreement.

7.3 **Fund's Right to Reject Subscription.** This Agreement shall be accepted by the Fund ***only if and when*** the Fund countersigns this Agreement. The Investor hereby confirms that the Fund has full right in its sole discretion to accept or reject the subscription of the Investor, in whole or in part. In the case of rejection, the Fund will promptly return any rejected payments and (if rejected in whole) copies of all executed subscription documents of the Investor (including, without limitation, this Agreement) to the Investor.

8. **Acceptance of Subscription.**

8.1 The Investor acknowledges that this Agreement and the subscription represented hereby shall not be effective unless accepted by the Fund as indicated below.

8.2 In the case of acceptance of the Investor's subscription, ownership of the Units being purchased hereby will pass to the Investor upon the Closing.

8.3 If the Fund accepts Investor's subscription, the Investor agrees:

(a) to be bound by and to be subject to all of the terms and provisions of the Operating Agreement; and

(b) to be a Preferred Member of the Fund.

8.4 If the Fund accepts Investor's subscription, the Fund shall complete and send to Investor an Admission Agreement as required by the Operating Agreement, and the Investor shall sign and return the same to the Fund.

9. **Number of Units and Purchase Price.** The Investor subscribes for the following:

9.1 **The Units:** 21,960 Preferred Units (i.e., $1.00 per Unit);

9.2 **Aggregate Purchase Price:** the aggregate sum of $____________ (i.e., $1.00 per Unit) payable:

~~(a) 50% at closing in the amount~~ of $ ____________

~~(b) The balance in response to Capital Calls~~ to be made by the Manager pursuant to Section 3.6 of the Operating Agreement.



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

**IN WITNESS WHEREOF**, the Investor does represent and certify under penalty of perjury that the foregoing statements are true and correct and that Investor has, by the following signature(s) executed this Agreement as of the date set forth below.

Gordon Rausser
Your Signature

Gordon Rausser
Name: Please Print

Title/Representative Capacity (if applicable)

Name of Company or Individual You Represent (if applicable)

Berkeley, California
Place of Execution of this Agreement

3/25, 2013
Date of Execution

**EXACT NAME IN WHICH YOU WANT THE SECURITIES TO BE REGISTERED ON THE BOOKS AND RECORDS OF THE COMPANY**

Gordon Rausser
(Please Print Exact Registered Name)

**IF INVESTOR IS AN ENTITY, INDICATE:**

Type of Entity: individual
State of Organization: CA

**DELIVERY INSTRUCTIONS**: Please type or print address where your security is to be delivered and the address for notice.

ATTN: Gordon Rausser

661 San Luis Road
Street Address

Berkeley, CA 94707
City, State or Province, Country, Postal Code

510-527-2721 / 510-527-2750
Phone Number (For Federal Express) and Fax Number (re: Notice)

grausser@onpointanalytics.com
E-mail address

| ACCEPTANCE | CASCADE SETTLEMENT SERVICES FUND I LLC - WIRE TRANSFER INSTRUCTIONS: |
|---|---|
| THIS SUBSCRIPTION IS ACCEPTED BY THE FUND AS OF March 29, 2013.<br><br>CASCADE SETTLEMENT SERVICES FUND I LLC, a California limited liability company<br><br>By: Cascade Settlement Services, LLC, a Delaware limited liability company<br>Its: Manager<br><br>By: [signature]<br>David H. Levy, Manager<br><br>By: [signature]<br>John Chiofoli, Manager | Acct. Owner: Cascade Settlement Services Fund I LLC<br>Acct. Number: 80000298506<br>Name of Bank: First Republic Bank<br>Bank Address: 101 Pine Street, San Francisco, CA 94111<br>Bank Tel. No. (415) 296-3541<br>Bank Contact: Lorrie Pendleton<br>Bank Routing No.: 321081669 |

**CASCADE SETTLEMENT SERVICES FUND I LLC (the "*Fund*")**
**CONFIDENTIAL INVESTOR QUESTIONNAIRE**
**(INDIVIDUAL FORM)**

***SECTION A. INSTRUCTIONS.***

1. ***Use of this Form.*** This form of Confidential Investor Questionnaire should be used by any Subscriber which is:

   a) a single individual,
   b) a married couple investing jointly,
   c) a custodian for minor investors, or
   d) an IRA, Keogh or similar benefit plan which covers only non-employee individual owners and their spouses.

2. ***Who Should Complete this Form.*** The Subscriber should complete this form personally. If the investment is being made by a custodian for a minor(s), please provide the requested information for the custodian, except where information about the minor(s) is requested.

***SECTION B. GENERAL INFORMATION, EDUCATION, EMPLOYMENT AND BACKGROUND.***

Full name of Subscriber or Custodian: Gordon Rausser

Marital Status: ____ Married ✓ Single ____ Divorced ____ Other (Specify – ________)

Birth Date: 07 | 21 | 1943 Social Security or FEIN #: 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

Home Address: 641 San Luis Road, Berkeley CA 94707

Business Address: 207 Giannini Hall, UC Berkeley, Berkeley CA 94720

Telephone Numbers: Home: (510) 527-2724 Business: (510) 643-9942

State of Principal Residence: CA If Subscriber is a custodian and the minor's state of residence is different from Subscriber's, specify minor's state of residence: ________

Is there any reason Subscriber might be considered a resident of another state (e.g., recently moved; part-time residence, office or business; registered to vote; pays taxes; holds driver's license; in another state)? [If yes, please explain: ______________________________]

Education of Subscriber:

| College/University | Degree/Major | Year |
|---|---|---|
| Univ. of Chicago | Post Doc. Stat. | 1972-73 |
| U.C. Davis | Ph.D.; M.S. | 1971; 1968 |
| Cal Fresno | B.S. Stat. | 1965 |

Employment of Subscriber:

Employer's Name/Address: University of California, Berkeley
207 Giannini Hall, Berkeley CA 94720-3310

Nature of Employment: Robert Gordon Sproul Distinguished Professor

If Self-Employed, Specify Nature of Business: ______________________________

Other positions/background related to financial, business, accounting, economics, taxation or investment matters which demonstrate investment sophistication: Chairman of the Board, OnPoint Analytics; Chairman of the Board, EASi; other Board of Directors; Director of Rausser Hedgefunds; Board of Directors, Chicago Alternative Investment Partners



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

***SECTION C. SPOUSE OR OTHER PERSON PARTICIPATING IN INVESTMENT DECISION.***

Note: If Subscriber will hold the Units in joint tenancy, as tenants in common or as community property with spouse (rather than as separate property), or if someone else will participate in the investment decision, please complete this Section C for spouse or such other person.

Full name of such person: ______________________

Marital Status: ____ Married ____ Single ____ Divorced ____ Other (Specify -- __________)

Birth Date: __________ Social Security or FEIN#: ______________

Home Address: ______________________

Business Address: ______________________

Telephone Numbers: Home: (____) __________ Business: (____) __________

State of Principal Residence: __________

Is there any reason such person might be considered a resident of another state (e.g., recently moved; part-time residence, office or business; registered to vote; pays taxes; holds driver's license; in another state)? [If yes, please explain: ______________________]

Education of Such Person: College/University Degree/Major Year

Employment of Such Person:

Employer's Name/Address: ______________________

Nature of Employment: ______________________

If Self-Employed, Specify Nature of Business: ______________________

Other positions/background related to financial, business, accounting, economics, taxation or investment matters which demonstrate investment sophistication: ______________________

***SECTION D. INCOME.***

Your gross income from all sources (check appropriate blank):

| | 2 Years Ago | Last Year | Estimated for This Year |
|---|---|---|---|
| **Subscriber Alone:** | ************* | ************* | ************ |
| Greater than $100,000 | | | |
| Greater than $200,000 | | | |
| Greater than $300,000 | ✓ | ✓ | ✓ |
| **Jointly With Spouse:** | ************* | ************* | ************ |
| Greater than $100,000 | | | |
| Greater than $200,000 | | | |
| Greater than $300,000 | | | |



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

**SECTION E. INVESTMENT BACKGROUND AND OBJECTIVES.**

Approximate Number of Years Subscriber has been Investing: 35 Years

Approximate Current Portfolio Value: $ ≥ 100 M

Investment Experience: (Complete Table Below)

| Please check frequency of Subscriber's investments in: | Often | Occasionally | Seldom | Never |
|---|---|---|---|---|
| Real estate, other than principal residence (directly or through partnerships or other entities managed by others) | ✓ | | | |
| Tax shelter programs (real estate, leasing, oil and gas, cattle breeding) | | ✓ | | |
| Marketable securities (stocks, bonds, debentures, notes) | ✓ | | | |
| Commodity futures | ✓ | | | |
| Speculative or Venture Capital Investments | ✓ | | | |
| Other private investment funds, including hedge funds and commodity pools | ✓ | | | |
| Other (Specify ______________________) | | | | |

Investment Objectives (Rank First, Second and Third):

Capital appreciation: First
Current income: Third
Liquidity: Second

**Note**: This investment is most appropriate for persons who prefer capital appreciation.

**SECTION F. QUESTIONS TO DETERMINE "ACCREDITED INVESTOR" STATUS OF SUBSCRIBER.**

**Check all boxes that describe Subscriber and supply additional information where requested:**

**Note**: If Subscriber is a custodian acting for one or more minors, responses below should apply to each minor, not to custodian.

☑ NATURAL PERSON WITH $1,000,000 NET WORTH. A natural person (not an entity) whose individual net worth, or joint net worth with his or her spouse, at the time of his or her purchase exceeds $1,000,000.

☑ NATURAL PERSON WITH $200,000 INDIVIDUAL ANNUAL INCOME. A natural person (not an entity) who had an individual income in excess of $200,000 in each of the preceding two years and has a reasonable expectation of reaching the same income level in the current year.

☐ NATURAL PERSON WITH $300,000 JOINT ANNUAL INCOME. A natural person (not an entity) who had joint income with his or her spouse in excess of $300,000 in each of the preceding two years and has a reasonable expectation of reaching the same income level in the current year.

☐ NON-EMPLOYEE OWNER-ONLY BENEFIT PLAN. An IRA, Keogh, or similar benefit plan which covers only non-employee individual owners who are "accredited investors" under one or more the three categories immediately above (including spouses of such persons). Note: Please also check the box(es) above to indicate which "accredited investor" category applies to each such individual.

**SECTION G. NEED FOR A PURCHASER REPRESENTATIVE.**

Subscriber, either alone or together with a "purchaser representative" (such as an investment adviser, attorney, accountant or other consultant), must have such knowledge and experience in financial and business matters that Subscriber can evaluate the merits and risks of this investment and protect Subscriber's own interests in this investment. Please check one box below:



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

☒ ***No Purchaser Representative***. Subscriber, without the assistance of any purchaser representative, has such knowledge and experience in financial and business matters that Subscriber can evaluate the merits and risks of this investment, make an informed investment decision and otherwise protect Subscriber's interests in this transaction. Subscriber chooses not to engage any purchaser representative.

**SKIP the remainder of this Section G if you checked the box above.**

☐ ***Purchaser Representative Designated***. Subscriber will be relying on the advice of the purchaser representative identified below in evaluating the merits and risks of this investment. Please furnish the information requested below about Subscriber's purchaser representative:

Name of purchaser representative: ______________________
Firm: ______________________
Address: ______________________
Telephone number: ______________ Occupation: ______________

***Eligibility requirements of purchaser representative***. A person may not serve as Subscriber's purchaser representative if the person is being compensated by the Fund (or certain related persons) for advising Subscriber in connection with this investment, or if the purchaser representative has certain present or past relationships with the Fund (or certain related persons). In addition, the purchaser representative must have such knowledge and experience in financial and business matters that he or she, either alone or together with Subscriber, is capable of evaluating the merits and risks of Subscriber's prospective investment in the Units.



HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY
SPECIAL CONFIDENTIALITY

ADMISSION AGREEMENT
pursuant to the
OPERATING AGREEMENT OF CASCADE SETTLEMENT SERVICES FUND 1 LLC
(a California limited liability company)

**THIS ADMISSION AGREEMENT** is being executed by and between:

a) **CASCADE SETTLEMENT SERVICES FUND 1 LLC** (the "*Company*"), a California limited liability company; and

b) Gordon Rausser (the "*New Preferred Member*"),

pursuant to the provisions of the Operating Agreement as defined below.

**FOR GOOD AND VALUABLE CONSIDERATION,** the New Preferred Member agrees as follows:

1) **Operating Agreement**. As used herein, the term "*Operating Agreement*" means that certain Operating Agreement of Cascade Settlement Services Fund 1 LLC dated effective as of August 15, 2011, as amended.

2) **Effective Date**. As used herein, the term "*Effective Date*" means the date on which the Company executes this Admission Agreement.

3) **Other Terms**. Capitalized terms which are not defined in this Admission Agreement shall have the meanings attributed to them in the Operating Agreement.

4) **Admission as a New Preferred Member**. By executing this Admission Agreement, the Company and the New Preferred Member agree that, effective as of the Effective Date, the New Preferred Member shall be, and hereby is, admitted to the Company as a "*Preferred Member*" pursuant to and in accordance with the provisions of the Operating Agreement.

5) **Acceptance by the New Preferred Member**. By executing this Admission Agreement, the New Preferred Member agrees to be bound by, and to comply with the provisions of, the Operating Agreement to the same extent as if the New Preferred Member had been an original signatory thereto.

6) **Preferred Units**. By executing this Admission Agreement, the Company and the New Preferred Member agree that, effective as of the Effective Date, the New Preferred Member acquired 59,880 Preferred Units (the "*Units*").

7) **Counterparts**. This Admission Agreement may be executed in counterparts.

**IN WITNESS WHEREOF**, the Company and the New Preferred Member have executed this Admission Agreement on the dates set forth below.

| **NEW PREFERRED MEMBER:** | **COMPANY:** |
|---|---|
| By: Gordon Rausser | **CASCADE SETTLEMENT SERVICES FUND 1 LLC**, a California limited liability company |
| Name: Gordon Rausser | By: Cascade Settlement Services, LLC, a Delaware limited liability company |
| Dated: as of 3/29, 2013 | By: [signature]<br>Name: JOHN CHILCOTT<br>Title: Chief Executive Officer |
| | Dated: as of March 29, 2013 |

*Confidential* 17