# EXHIBIT 25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL No. 1869<br>Misc. No. 07-489 (PLF/AK/JMF) |
| This Document Relates To:<br><br>ALL DIRECT PURCHASER CASES | **FILED UNDER SEAL** |

**EXHIBIT A**
**TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**SUPPLEMENTAL EXPERT REPORT OF GORDON RAUSSER, PH.D.**

# SUPPLEMENTAL EXPERT REPORT
# OF
# GORDON RAUSSER, PH.D.

**In the matter of**

***In Re: Rail Freight Fuel Surcharge Antitrust Litigation***
**USDC, District of Columbia, Case No. 1:07-mc-00489-PLF**

**Highly Confidential**
**Pursuant to Protective Order**

**December 19, 2013**

offered no economic theory and described no fact pattern supporting their premise that shipments under legacy contracts would have been unaffected by the alleged conspiracy. The facts of the case and sound economic logic suggest that the conspiracy impacted shipments made under legacy contracts for two fundamental reasons.

*First*, irrespective of when FSC formulas were embedded in contracts, the effect they had on prices at a later date would be determined by the economic environment in existence on the date of shipment, not the date of contract execution. When FSC formulas were first embedded in legacy contracts, actual FSC rates were small and transient, and had very little economic effect on shippers. In contrast, in the Class Period, when my model finds overcharges on shipments that have been identified as legacy shipments, FSC rates were very high and had a sizeable economic effect on shippers, every month for years. It is reasonable to expect that, in an environment of competition, Defendants would have yielded to resistance from shippers (including legacy shippers) and reduced or offset the dramatically increasing FSC rates that Defendants applied during the Class Period, either by adjusting those FSC rates, re-pricing base rates or offering other concessions. In fact, as discussed in Section III.B.(2) of this Supplemental Report, Dr. Kalt accepts that such market forces could have caused long-term contracts to be renegotiated or amended. However, that competitive environment ceased to exist in the Class Period, replaced instead by a new environment that reflected the Defendants' collusive agreement to apply FSCs universally and to enforce those FSCs, without discounts or other concessions. As a result, legacy shippers (in common with Class shippers) paid extremely onerous FSC rates that did not reflect increases in incremental fuel costs. For this reason, my damage model should in fact find that shipments under legacy contracts experienced overcharges, stemming from the same allegedly unlawful conduct that caused overcharges to the Class shipments.

*Second*, an examination of the contracts that the Defendants have identified as legacy contracts – the computed overcharges for which form the basis of the Defendants' false positive argument – reveals that many of those contracts simply do not satisfy the description of legacy contracts that the Defendants provided to the Court of Appeals in support of their argument. The Defendants have described legacy contracts as contracts (1) negotiated before the Class Period; (2) containing FSC formulas established before the Defendants were alleged to have begun coordinating their FSC policies; and (3) under which FSCs were assessed during the Class Period exclusively pursuant to formulas that pre-dated the conspiracy. I have reviewed voluminous information concerning the contracts that the Defendants identified as legacy contracts, and that description is inaccurate. Many of the legacy contracts that Defendants rely on were entered during the Class Period, or immediately before it at a time when the alleged conspiracy was in active formation. Many others were amended during the conspiracy period to incorporate the FSC formulas that were implemented as part of the alleged conspiracy. And still many others contained FSC provisions that called for application of the current FSC formula as of the date of shipment – not the date of the contract; once the conspiracy began, the Defendants applied conspiracy period FSCs to shipments under these contracts. As a result, and in contrast to how Defendants have framed the issue, many legacy contracts did *not* have "the benefits of competition built into their terms" such that it was "not possible for conspiracy to have affected" them.[15] This is a separate reason why my damage model should in fact find overcharges on shipments under legacy contracts.

## III. THE CONSPIRACY ALLEGED BY PLAINTIFFS WOULD BE EXPECTED TO AFFECT ALL CONTRACTS, INCLUDING LEGACY CONTRACTS

Defendants' supposed finding of false positives with respect to legacy shipments is based on a false premise – namely, that the alleged conspiracy could not have affected shipments under

[15] *E.g.*, Kalt Report ¶ 515.

alleged conspiracy. That premise is false because during the time when these shipments actually paid high and persistent FSC rates and experienced overcharges, there was collusive and coordinated behaviour with respect to the universal application of FSCs, without concessions, discounts or competition. This coordinated behaviour enabled the Defendants to enforce rate-based FSCs that significantly over-recovered on incremental fuel costs and generated significantly higher FSC rates than had been the norm prior to the Class Period, thus causing legacy shipments *and* Class shipments alike economic harm, as I have consistently opined throughout this litigation. The fact that legacy shipments were affected by the alleged conspiracy—and thus constitute a highly contaminated benchmark with which to compare Class shipments—is confirmed by my investigation of the FSC provisions applied to those shipments. As described in detail in this Supplemental Report, the majority of legacy shipments were under FSC provisions that were updated or amended during the conspiracy period, or that were created entirely during the conspiracy period. This analysis further demonstrates that the Defendants' contention that legacy shipments had FSC provisions and all-in rates that were somehow set in stone in the pre-Class Period and thus could not have been affected by the collusion in the conspiracy period, is simply wrong.

December 19, 2013

Respectfully submitted,

Gordon Rausser

Gordon Rausser, Ph.D.