UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                         )
In re RAIL FREIGHT FUEL SURCHARGE        )
ANTITRUST LITIGATION                     )
_____ )       MDL Docket No. 1869
                                         )       Misc. No. 07-0489 (PLF)
This document relates to:                )
                                         )
ALL CASES                                )
_____ )

OPINION AND ORDER

This case has been there and back again — through one round of class

certification, an appeal to the D.C. Circuit, and now a second round of class certification briefing

after the court of appeals vacated the Court's prior decision certifying the class and remanded for

further consideration.  Through it all, the plaintiffs have principally relied on Dr. Gordon

Rausser's expert reports and testimony.  But on the eve of a second class certification hearing,

plaintiffs were blindsided by evidence that indicates that Rausser has, for years, consulted with

and invested in companies that buy out class action claims for profit — including a claim or

claims in this case — while serving as an expert witness in class action cases around the country.

Because Rausser's credibility has been drawn into serious question, plaintiffs

have moved for leave to file a supplemental expert report, limited in scope, to attest to the

integrity and reliability of Rausser's expert analysis and methodologies.  Defendants argue that

Rausser's tarnished credibility does not warrant allowing an additional expert witness and that

they would be prejudiced by further delaying the already costly proceedings.  After careful

consideration of the parties' briefs, exhibits, and the relevant legal authorities, the Court grants

plaintiffs' motion for leave to file a supplemental expert report.[1]

## I.  BACKGROUND

The history of this case is recounted in detail in prior opinions of this Court and of

the U.S. Court of Appeals for the District of Columbia Circuit.  See In re Rail Freight Fuel

Surcharge Antitrust Litig., 287 F.R.D. 1 (D.D.C. 2012); In re Rail Freight Fuel Surcharge

Antitrust Litig., 725 F.3d 244 (D.C. Cir. 2013).  Only the facts relevant to plaintiffs' motion are

summarized here.

On March 10, 2014, defendants' counsel received an email from an employee of

Cascade Settlement Services ("Cascade") named Rod Montgomery.[2]  That email stated, in part:

> I fear the company's involvement with Gordon Rausser, majority owner of
> OnPoint Analytics, could be a serious conflict of interest . . . .  Mr.
> Rausser holds a non-voting percentage ownership in our company,
> specifically Cascade, LLC.   I believe he has a 10% interest in the
> company.  As a result, he stands to gain directly from any purchases of
> claims made in the Rail case.  He has been able to keep the company
> apprised of all developments in the case given he has "insider"
> information.  His [damages] model [] also might have indirect or direct
> benefit to him financially.

---

[1]      The papers reviewed in connection with the pending motion include the
following: plaintiffs' motion for leave to file a supplemental expert report ("Mot.") and exhibits
[Dkt. No. 742]; defendants' opposition to plaintiffs' motion ("Opp.") and exhibits [Dkt. No.
748]; transcript of October 2, 2014 hearing ("Oct. 2 Hrg.") [Dkt. No. 751]; transcript of October
21, 2014 hearing ("Oct. 21 Hrg.") [Dkt. No. 752]; and transcript of November 13, 2014 hearing
("Nov. 13 Hrg.") [Dkt. No. 754].

[2]      Cascade invests in class action lawsuits by buying out the claims of potential class
plaintiffs.  Cascade Settlement Services, http://www.cascadesettlement.com (last visited Nov. 26,
2014).  It also "provides comprehensive filing services to maximize settlement proceeds for
institutional investors and corporations."  Id.

Mot. Ex. 1.  After receiving this email, "[d]efendants tried to confirm or refute Mr. Montgomery's claim using publicly available information," but were "unable to find any evidence corroborating the allegations."  Opp. at 6-7.  Defendants, however, did not share Mr. Montgomery's accusations with plaintiffs' counsel or the Court.

On July 31, 2014, defendants deposed Dr. Rausser and asked whether "there [is] any formal relationship between OnPoint Analytics and Cascade Settlement Services."  Opp. at 7.  Dr. Rausser answered "no," but stated that OnPoint Analytics "has done work for [Cascade] in the past."  Id.  He denied that he or OnPoint had any ownership or other financial interest in Cascade.  Id.  After the deposition, "[d]efendants assumed that was the end of the matter."  Id. at 8.  But on August 29, 2014, plaintiffs produced an errata sheet for Dr. Rausser's deposition that, in effect, changed his answer regarding a financial interest in Cascade from a "no" to a "yes."  Id.  The errata stated that Dr. Rausser does "have the right to share in distributions from certain claims [Cascade] manage[s], but those do not include claims in this case or any other case in which [he is] a testifying expert or OnPoint has performed any services."  Id.

Defendants responded to Dr. Rausser's errata by issuing a series of subpoenas to Dr. Rausser, OnPoint Analytics, Cascade, and Rod Montgomery.  Mot. at 8; Opp. at 8.  Plaintiffs produced responsive documents from Dr. Rausser and OnPoint on October 1, 2014.  Additional discovery followed.  See, e.g., Oct. 21 Hrg. at 7-8; Nov. 13 Hrg. at 5-6.  In summary, the parties agree that the documents produced appear to show that both OnPoint Analytics and Dr. Rausser

entered into agreements with Cascade to provide consulting and other services shortly after the completion of the initial class certification hearing in this case.  Opp. Exs. 8-9.[3]

        The evidence shows that, since at least 2010, Cascade has actively sought to purchase the claims of potential class members in this case through marketing efforts.  Mot. at 10-11.  In July 2010, after completion of Dr. Rausser's first class certification report but before the class certification briefing was completed, Dr. Rausser and OnPoint each began negotiations to enter business relationships with Cascade.  Nov. 13 Hrg. at 41.  The class certification hearing took place on October 6 and 7, 2010.  Id.  OnPoint entered into a written agreement with Cascade on October 24, 2010; Rausser entered into such an agreement on December 16, 2010.  Mot. at 9; Nov. 13 Hrg. at 41.  The Rausser-Cascade agreement provided that Rausser would receive, "among other compensation, a base fee equal to 10% of 'the amount of any Distribution received by Cascade from any Fund during that quarter which is attributable to any Contract entered into during the Term.'"  Mot. at 9-10 (quoting Mot. Ex. 17).  On December 28, 2012, Dr. Rausser also invested approximately $1.15 million into Cascade's "Fund 1," which is made up of class action claim purchases.  Opp. at 10; Opp. Exs. 11-15; Oct. 2 Hrg. at 12.

        Documents produced during discovery on this matter also indicate that, between 2011 and 2013, Cascade consulted with Dr. Rausser "about various facets of this litigation."  Opp. at 10.  In June 2012, Cascade purchased a claim in this litigation from class member Sturgis Iron & Metal Co.  Id. at 12.  This claim was placed in Cascade's "Fund 1," the same fund in

---

[3]      Through his personal attorney, Dr. Rausser has denied that he has or has had any conflict of interest in this case.  Letter from Jonathan R. Bass, Esq. to Honorable Paul L. Friedman (Nov. 12, 2014) [Dkt. No. 755].

which Dr. Rausser had invested.  Id.[4]  Cascade also entered into agreements with five other class

members to administer the filing of their claims in this litigation.  Mot. Ex. 34.  Since defendants

issued their subpoenas, both OnPoint and Dr. Rausser have terminated their agreements with

Cascade.  Mot. Exs. 38, 39.

   The Court held closed hearings on October 2, 2014 and October 21, 2014 to

discuss Dr. Rausser's potential conflicts of interest.  The Court then ordered the parties to submit

memoranda of law as to: (1) how this case should proceed, i.e. whether plaintiffs should be

permitted to submit a supplemental expert report over defendants' objection; and (2) whether

these proceedings should be unsealed.  In response, plaintiffs filed this motion for leave to file a

supplemental expert report.  On November 7, 2014, the Court ordered the unsealing of the

transcripts of the prior hearings, the parties' briefs filed on October 31, 2014 and November 7,

2014, and all further proceedings on this issue.  Memorandum Opinion and Order, In re Rail

Freight Fuel Surcharge Antitrust Litig., 2014 WL 5803136 (D.D.C. Nov. 12, 2014) [Dkt. No.

745].  Soon after, the Court issued a Memorandum Opinion and Order directing the parties to

discuss at the November 13, 2014 status conference and motions hearing whether, as an

alternative to plaintiffs' proposal for a supplemental expert, the Court should simply order class

certification to be re-briefed ab initio with entirely new expert reports.  Memorandum Opinion

and Order, In re Rail Freight Fuel Surcharge Antitrust Litig., 2014 U.S. Dist. LEXIS 158981

(D.D.C. Nov. 12, 2014) [Dkt. No. 750].

---

   [4]  After Dr. Rausser's deposition on July 31, 2014, OnPoint Analytics President
Laura Craft contacted Cascade about whether any claims in this litigation had been placed in
Fund 1.  Cascade removed Sturgis' claim from that fund on August 14, 2014.  Mot. at 12.

## II.  LEGAL STANDARD

"Courts considering a party's request to substitute a new expert have applied the standard for modifying a scheduling order set forth in Rule 16(b) of the Federal Rules of Civil Procedure."  Doctor's Assocs., Inc. v. QIP Holder LLC, 2009 WL 5184404, at *4 (D. Conn. Dec. 23, 2009); see also TIC-The Industrial Co. Wyoming, Inc. v. Factory Mut. Ins. Co., 2012 WL 2830867, at *8 (D. Neb. July 10, 2012); Barnes v. Dist. of Columbia, 289 F.R.D. 1, 14 (D.D.C. 2012).  That Rule permits modification of a scheduling order "only for good cause," FED. R. CIV. P. 16(b)(4), meaning that "despite th[e moving] party's diligence, the time table could not reasonably have been met."  Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co., 2010 WL 3892860, at *2 (N.D. Ind. Sept. 30, 2010).  Although plaintiffs have moved to add a supplemental expert — as opposed to a straight substitution of one expert for another — the analysis remains the same: does good cause exist to alter the scheduling order and reopen discovery for this purpose?[5]

## III.  DISCUSSION

The parties agree that (1) Dr. Rausser's potential conflict of interest creates a serious credibility issue, but (2) is not cause to disqualify him from testifying as an expert in this case.  See Mot. at 1; Opp. at 1-2; see also FED. R. EVID. 702.  They disagree, however, on how to proceed.  Despite the evidence cited above, Dr. Rausser maintains that he has never had a

---

[5]    This appears to be an issue of first impression in this or any Circuit.  Neither the Court nor the parties have identified an analogous case that considered a request to add, but not to substitute, an expert after the discovery of evidence damaging the credibility of the moving party's existing expert.  See Mot. at 15-23; Opp. at 4-5, 20.

conflict of interest in this case and that defendants' accusations are false.  Letter from Jonathan

R. Bass, Esq. to Honorable Paul L. Friedman (Nov. 12, 2014) [Dkt. No. 755] ("[T]he charges are

not true.").  He has not withdrawn from this case.  Nor have plaintiffs moved to withdraw Dr.

Rausser as their expert.  Instead, plaintiffs have moved for leave to file a supplemental expert

report to "address the reliability and integrity of Dr. Rausser's opinions."  Mot. at 1.

### A.  There Is Good Cause to Permit Plaintiffs to File a Supplemental Expert Report

The Court concludes that plaintiffs have established good cause because (1) the

plaintiff class would suffer significant prejudice without the report and testimony of a

supplemental expert, (2) there is no evidence in the record that plaintiffs or their counsel had

knowledge of the information affecting Dr. Rausser's credibility until very recently, and

(3) granting the motion will not be unduly burdensome or prejudicial to defendants.  Moreover,

any prejudice to the defendants will be mitigated by the imposition of strict limits on the

supplemental expert.

### 1.  Plaintiffs Would Suffer Significant Prejudice Without a Supplemental Expert

Dr. Rausser's expert testimony and reports are critical to plaintiffs' case.  He has

been plaintiffs' principal expert, on class certification and the merits, since he was retained in

2009.  Mot. at 4.  Plaintiffs have filed expert reports authored by him on March 18, 2010, August

27, 2010, October 15, 2012, June 13, 2013, December 19, 2013, and May 28, 2014.  See Mot. at

4-5.  He has been deposed eight times.  Oct. 21 Hrg. at 14-15.  This Court relied heavily on Dr.

Rausser's testimony in previously granting class certification, see Dkt. No. 550, reported at 287

F.R.D. 1 (D.D.C. 2012), and the court of appeals remanded for reconsideration of "Rausser's

models" in light of the Supreme Court's decision in <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426 (2013).  <u>See</u> 725 F.3d 244, 253 (D.C. Cir. 2013).  Given the potentially grave damage to Rausser's credibility, the plaintiff class would be significantly prejudiced by requiring it to proceed without either an entirely new expert or a supplemental expert to address the integrity of Dr. Rausser's expert testimony and reports.  <u>See</u> <u>TIC–The Industrial Co. Wyoming, Inc. v. Factory Mut. Ins. Co.</u>, 2012 WL 2830867, at *8 (finding substantial prejudice where the discredited expert was "plaintiff's sole liability expert, and denying the substitution could, in effect, summarily resolve the case in favor of defendants").

Defendants counter that this Court can fairly and objectively consider Rausser's testimony "without the 'assist' from [plaintiffs' supplemental expert]."  Opp. at 20-21.  The Court disagrees.  In light of the critical importance of Dr. Rausser's testimony, plaintiffs would be substantially prejudiced without the opportunity to present a supplemental expert supporting their argument that Rausser's economic analysis and methodologies are and always have been credible and accurate, even if his credibility as a witness has been damaged.

2.  There Is No Evidence That Plaintiffs Knew or Should Have Known

Plaintiffs first learned of Dr. Rausser's potential conflict of interest when defendants served subpoenas in September 2014.  Mot. at 2, 17.  And defendants admit that, despite the benefit of Mr. Montgomery's email alerting them to the potential conflict of interest, they "were unable to find any [publicly available] evidence corroborating the allegations."  Opp. at 7.  Once plaintiffs were made aware of the issue, they promptly brought it to the Court's attention on October 2, 2014.  There therefore is no evidence to discredit plaintiffs'

8

representation that they exercised reasonable diligence or to suggest that they acted in bad faith. Nat'l R.R. Passenger Corp. v. Expresstrak, L.L.C., 2006 WL 2711533, at *2 (D.D.C. Sept. 21, 2006) (quoting DAG Enters., Inc. v. Exxon Mobil Corp., 226 F.R.D. 95, 105 (D.D.C. 2005)) ("[I]f the [moving] party is not diligent, the inquiry should end.").  Despite this, defendants assert that plaintiffs should have investigated after Rausser's July 31, 2014 deposition, or, at the very least, after his August 28, 2014 errata indicated that he may have a financial interest in Cascade. Opp. at 12-14.  Even if the Court accepts this argument, a one-month delay in investigating the issue would not outweigh the significant prejudice plaintiffs would suffer if leave to file a supplemental expert report were denied.

### 3. Defendants Will Not Be Significantly Prejudiced

Defendants argue that "it is unfair and prejudicial to halt the class certification proceedings as they are finally concluding," Opp. at 23, and that plaintiffs' proposal "rewards plaintiffs for Dr. Rausser's lack of objectivity and honesty." Id. at 5.  Although the Court is sensitive to the considerable time, effort, and money already spent by both parties in this litigation, the delay now requested by the plaintiffs is reasonable in light of the seven-year-long history of this case and the stakes involved.[6]  Furthermore, the plaintiff class should not be disadvantaged by denying it a supplemental expert in the absence of evidence that plaintiffs' counsel knew or should have known of Dr. Rausser's conduct, or that plaintiffs' counsel acted in

---

[6]     Plaintiffs suggest that the delay of the class certification hearing will be seven months, from early November 2014 until May 2015, if the Court grants this motion.  Mot. at 4. But the delay is likely to be somewhat longer if defendants require a supplemental expert report, additional depositions are taken, and supplemental briefs are filed, all of which appears probable.

bad faith or did not respond diligently.  The prejudice suffered by defendants is outweighed by the far greater prejudice plaintiffs would suffer if leave were denied.

### 4.  Plaintiffs' Supplemental Expert Report Will Be Limited in Scope

Similar to the way in which other courts have handled substitute expert witnesses and to mitigate the prejudice to defendants, the Court will limit plaintiffs' supplemental expert report to "address[ing] the reliability and integrity of Dr. Rausser's opinions."  Mot. at 1; see also Doctor's Assocs., Inc. v. QIP Holder LLC, 2009 WL 5184404, at *5 (limiting a substitute expert's testimony to "establishing the veracity and integrity of [the original expert] and the conclusions reached in [that expert's] original expert report").  Plaintiffs' supplemental expert may "express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform."  Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co., 2010 WL 3892860, at *3.  But he "[may] not espouse any new theory of liability, impact, or damage.  Rather, that individual will confine his or her opinions to the reliability, integrity, and accuracy of Dr. Rausser's previous work."  Mot. at 2; see Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co., 2010 WL 3892860, at *2-3.

### B.  The Court Will Not Award Attorneys' Fees and Costs

Because there is no evidence in the record of bad faith, manipulation, or lack of diligence by the plaintiffs or their counsel, the Court will not award any attorneys' fees and costs at this time.  See TIC-The Industrial Co. Wyoming, Inc. v. Factory Mut. Ins. Co., 2012 WL 2830867, at *10 (quoting Doctor's Assocs., Inc. v. QIP Holder LLC, 2009 WL 5184404, at *4) ("Generally, in cases in which courts have awarded costs and expenses associated with the

substitution of an expert, there has been evidence of bad faith, fault, or tactical maneuvering on the part of the party making the substitution.").  Defendants are free later to file an appropriate motion for attorneys' fees and costs if new evidence indicates otherwise.

### C.  The Court Will Not Set Aside All Prior Briefing and Expert Reports

Although the Court remains deeply concerned about the potential for Dr. Rausser's credibility to be a distraction from the ultimate issue of whether the class should be certified, the Court will not set aside all prior briefing and expert reports in this case.  The Court has been persuaded by the defendants' arguments that starting over would be extremely prejudicial to defendants, particularly given the considerable length and cost of the class certification proceedings to date.  See, e.g., Nov. 13 Hrg. at 27-35, 53-55.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that plaintiffs' motion for leave to file a supplemental expert report [Dkt. No. 742] is GRANTED; it is

FURTHER ORDERED that plaintiffs shall file a supplemental expert report on or before April 1, 2015; it is

FURTHER ORDERED that by April 15, 2015, defendants shall notify the Court whether they intend to file an additional expert report in response and propose a date by which they will do so; and it is

FURTHER ORDERED that by April 22, 2015, the parties shall jointly propose a schedule for defendants' deposition of plaintiffs' supplemental expert, the deposition of defendants' expert, if necessary, and further briefing, if necessary.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:  November 26, 2014          United States District Judge