# Defendants' Appendix in Support of Defendants' Joint and Individual Motions for Summary Judgment

# Volume 27 of 29

# DA06520 - DA06818

N O R F O L K   S O U T H E R N   P R I C E   A U T H O R I T Y

NSSC 80657 SECTION 1 D 00

EFFECTIVE : 08/01/2002

EXPIRES : 07/31/2003

CUSTOMER : DONNELLY COMMODITIES

FILE NUMBER : XXXXXXXXXX

PRODUCT MANAGER: R D GEORGE 540-985-6009



ITEM: 101000.00 ORIGIN ROAD: NS DESTINATION ROAD: NS
STCC: 0113710.00 WHEAT

ORIGIN: STATION GROUP #903257 - IN ALL PTS IN MI OH (SEE LAST PAGES)
DESTINATION: STATION GROUP #901032 - PA ALL NS POINTS (SEE LAST PAGES)

| | COL A | COL B |
|---|---|---|
| EQUIPMENT: | C1 | C1 |
| RATES PER: | CAR | CAR |
| NOTE REFS: | 01 03 | 01 03 04 |

| NRB MILES NOT OVER | | |
|---|---|---|
| 250 | 985.00 | 785.00 |
| 270 | 1022.00 | 822.00 |
| 290 | 1060.00 | 860.00 |
| 310 | 1096.00 | 896.00 |
| 330 | 1133.00 | 933.00 |
| 350 | 1171.00 | 971.00 |
| 370 | 1207.00 | 1007.00 |
| 390 | 1244.00 | 1044.00 |
| 410 | 1282.00 | 1082.00 |
| 430 | 1320.00 | 1120.00 |
| 450 | 1356.00 | 1156.00 |
| 470 | 1394.00 | 1194.00 |
| 490 | 1431.00 | 1231.00 |
| 510 | 1469.00 | 1269.00 |
| 530 | 1505.00 | 1305.00 |
| 550 | 1542.00 | 1342.00 |
| 570 | 1580.00 | 1380.00 |
| 590 | 1616.00 | 1416.00 |
| 610 | 1653.00 | 1453.00 |
| 630 | 1691.00 | 1491.00 |

| | | |
|---|---|---|
| 650 | 1728.00 | 1528.00 |
| 670 | 1764.00 | 1564.00 |
| 690 | 1802.00 | 1602.00 |
| 710 | 1633.00 | 1433.00 |
| 730 | 1876.00 | 1676.00 |
| 750 | 1913.00 | 1713.00 |
| 770 | 1950.00 | 1750.00 |
| 790 | 1988.00 | 1788.00 |
| 810 | 2024.00 | 1824.00 |
| 830 | 2062.00 | 1862.00 |
| 850 | 2100.00 | 1900.00 |
| 870 | 2137.00 | 1937.00 |
| 890 | 2174.00 | 1974.00 |
| 910 | 2211.00 | 2011.00 |
| 930 | 2248.00 | 2048.00 |
| 950 | 2285.00 | 2085.00 |
| 970 | 2322.00 | 2122.00 |



ITEM: 101000.00 STCC: 0113710.00 (CONTINUED)

SUBJECT TO THE RULES AND PROVISIONS PUBLISHED IN NORFOLK SOUTHERN RAILWAY CONDITIONS OF CARRIAGE #1-D, AND ANY SUPPLEMENTS OR REISSUES THEREOF.

THIS CONTRACT IS MADE PURSUANT TO 49 U.S.C. SECTION 10709 FOR TRANSPORTATION REGULATED UNDER SUBTITLE IV, PART A OF TITLE 49 U.S.C. AND SHALL BECOME BINDING ON THE PARTIES UPON ACCEPTANCE BY THE SHIPPER NAMED HEREIN. SHIPPER MAY ACCEPT THIS CONTRACT EITHER BY WRITTEN NOTICE OR BY TENDER OF TRAFFIC UNDER ITS TERMS.

NOTE REFERENCES:

01 RECIPROCAL SWITCHING CHARGES AT ORIGIN OR DESTINATION, IF ANY, WILL BE IN ADDITION TO THE RATE. 0711

WAYBILLS MOVING UNDER CONTRACT MUST BE PROPERLY ENDORSED WITH THE CONTRACT NUMBER. 2656

WHEN A SHIPMENT HAS REACHED THE DESTINATION BUT IS NOT UNLOADED AND IS RETURNED VIA THE SAME ROUTE TO THE ORIGINAL SHIPPING POINT (FOR REASONS OTHER THAN CARRIERS ERROR), THE RETURN MOVEMENT WILL BE AT THE RATE PROVIDED IN THIS ITEM IN THE REVERSE DIRECTION APPLICABLE ON THE DATE THE SHIPMENT IS TENDERED FOR RETURN. 3438

NOT SUBJECT TO TRANSIT PRIVILEGES OF ANY KIND, INCLUDING THE PRIVILEGES OF DIVERSION, RECONSIGNMENT, OR INSPECTION. 5254

THE PROVISIONS OF NS TARIFF 6004-SERIES COVERING DEMURRAGE WILL APPLY. 4913

IN THE EVENT THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL, AS PUBLISHED IN THE WALL STREET JOURNAL, EXCEEDS $28.00 PER BARREL FOR THIRTY (30) CONSECUTIVE DAYS, NORFOLK SOUTHERN RETAINS THE RIGHT TO APPLY A FUEL SURCHARGE TO THE FREIGHT CHARGE(S) CONTAINED IN THIS AUTHORITY IN EFFECT ON THE DATE THE FUEL SURCHARGE IS APPLIED, HEREAFTER REFERRED TO AS THE "BASE FREIGHT CHARGE(S)". IF THIS 6766

Highly Confidential
DA06521
DON008731

A

OPTION IS EXERCISED, THE FUEL SURCHARGE SHALL BE APPLIED
ACCORDING TO THE FOLLOWING SCHEDULE:

| TEXAS INTERMEDIATE CRUDE OIL (PRICE PER BARREL) | CUMULATIVE FUEL SURCHARGE (PERCENTAGE) |
|---|---|
| $28 | 2% |
| $33 | 4% |

NORFOLK SOUTHERN NSSC 80657 1 D00 SENT 07/03/2003 PAGE 4

ITEM: 101000.00 STCC: 0113710.00 (CONTINUED)
NOTE REFERENCES (CONTINUED)

| | |
|---|---|
| $38 | 6% |
| $43 | 8% |
| EACH $5.00 PER BARREL INCREASE | AN ADDITIONAL 2% |

THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL MUST EXCEED A GIVEN BRACKET FOR THIRTY (30) CONSECUTIVE DAYS FOR THE SURCHARGE UNDER THAT BRACKET TO BE APPLICABLE. IF THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL CEASES TO BE AVAILABLE FROM THE WALL STREET JOURNAL OR SOME OTHER READILY ACCESSIBLE SOURCE, A SUBSTITUTE TO MEASURE WILL BE UTILIZED.

CUSTOMERS WILL RECEIVE NOTICE OF ANY FUEL SURCHARGE NOT LESS THAN TEN (10) DAYS PRIOR TO ITS APPLICATION. ANY FUEL SURCHARGE APPLIED TO THE FREIGHT CHARGE(S) IN THIS AUTHORITY WILL BE REMOVED OR REDUCED WHEN THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL REMAINS BELOW THE PRICE WHICH TRIGGERS A SPECIFIC SURCHARGE BRACKET FOR THIRTY (30) CONSECUTIVE DAYS. REDUCTIONS WILL BE MADE PROMPTLY AFTER THEY BECOME APPLICABLE. IN NO CASE WILL THE FREIGHT CHARGE(S) BE REDUCED BELOW THE "BASE FREIGHT CHARGE(S)" NOR WILL THE APPLICATION OR REMOVAL OF THE FUEL SURCHARGE BE RETROACTIVE.

03 RATE APPLICABLE ONLY IN SHIPPER OWNED OR LEASED COVERED HOPPER CARS. 3990

SHIPPER FURNISHED CARS NOT SUBJECT TO MILEAGE ALLOWANCE. 1311

04 RATES WILL NOT APPLY FROM NS STATIONS FSAC 60000 THROUGH 69999. 6878

NORFOLK SOUTHERN NSSC 80657 1 D00 SENT 07/03/2003 PAGE 5

STATION GROUP LISTS:

IN ALL PTS IN MI OH 903257
IN ALL POINTS MI ALL POINTS OH ALL POINTS

PA ALL NS POINTS 901032
PA ALL POINTS

NORFOLK SOUTHERN NSSC 80657 1 D00 SENT 07/03/2003 PAGE 6

From: Michael Donnelly [mike.dci@verizon.net]
Sent: Thursday, July 03, 2003 10:23 AM
To: Kevin Donnelly
Subject: FW: NSSC80657

-----Original Message-----
From: memoapi@nscorp.com [mailto:memoapi@nscorp.com]
Sent: Thursday, July 03, 2003 9:18 AM
To: MIKE.DCI@VERIZON.NET
Subject: NSSC80657

MIKE.DCI@VERIZON.NET

```
                                                                  ./.
                                                            ///@@@@@
----------------NN   NN  SSSS                            ////@@@@@)@!
---------------NNN  NN SS                              ////@@@@@@@@@!
--------------NNNNNNN SSSSS                           ////@@@@@_!@@@!
-------------NN  NNN     SS                             //@@@@@@/ \@_)
------------NN   NN SSSSS                             //@@@@@@@@
                                                    /@@@@@@@@@@@!@\
            NORFOLK SOUTHERN                    /@@@@@@@@@@@@@/  \@\
                                             /@@@@@@@@@@@@@@@/      @/
                                          //@@@@@@@@@@@@@/       /@@/
                                        //  (@@@@@@@@/
                                       ///   @@@@@@@/
                                      ////    !@@@/
                                     /////   (/@/
                                      ///      @@
                                                \\\
```

N O R F O L K   S O U T H E R N   P R I C E   A U T H O R I T Y

NSSC 80657 SECTION 1 D 00

EFFECTIVE : 08/01/2002

EXPIRES : 07/31/2003

CUSTOMER : DONNELLY COMMODITIES

FILE NUMBER : XXXXXXXXXX

PRODUCT MANAGER: R D GEORGE 540-985-6009



ITEM: 101000.00 ORIGIN ROAD: NS DESTINATION ROAD: NS
STCC: 0113710.00 WHEAT

ORIGIN: STATION GROUP #903257 - IN ALL PTS IN MI OH (SEE LAST PAGES)
DESTINATION: STATION GROUP #901032 - PA ALL NS POINTS (SEE LAST PAGES)

| | COL A | COL B |
|---|---|---|
| EQUIPMENT: | C1 | C1 |
| RATES PER: | CAR | CAR |
| NOTE REFS: | 01 03 | 01 03 04 |

| NRB MILES NOT OVER | | |
|---|---|---|
| 250 | 985.00 | 785.00 |
| 270 | 1022.00 | 822.00 |
| 290 | 1060.00 | 860.00 |
| 310 | 1096.00 | 896.00 |
| 330 | 1133.00 | 933.00 |
| 350 | 1171.00 | 971.00 |
| 370 | 1207.00 | 1007.00 |
| 390 | 1244.00 | 1044.00 |
| 410 | 1282.00 | 1082.00 |
| 430 | 1320.00 | 1120.00 |
| 450 | 1356.00 | 1156.00 |
| 470 | 1394.00 | 1194.00 |
| 490 | 1431.00 | 1231.00 |
| 510 | 1469.00 | 1269.00 |
| 530 | 1505.00 | 1305.00 |
| 550 | 1542.00 | 1342.00 |
| 570 | 1580.00 | 1380.00 |
| 590 | 1616.00 | 1416.00 |
| 610 | 1653.00 | 1453.00 |
| 630 | 1691.00 | 1491.00 |
| 650 | 1728.00 | 1528.00 |

| | | |
|---|---|---|
| 670 | 1764.00 | 1564.00 |
| 690 | 1802.00 | 1602.00 |
| 710 | 1633.00 | 1433.00 |
| 730 | 1876.00 | 1676.00 |
| 750 | 1913.00 | 1713.00 |
| 770 | 1950.00 | 1750.00 |
| 790 | 1988.00 | 1788.00 |
| 810 | 2024.00 | 1824.00 |
| 830 | 2062.00 | 1862.00 |
| 850 | 2100.00 | 1900.00 |
| 870 | 2137.00 | 1937.00 |
| 890 | 2174.00 | 1974.00 |
| 910 | 2211.00 | 2011.00 |
| 930 | 2248.00 | 2048.00 |
| 950 | 2285.00 | 2085.00 |
| 970 | 2322.00 | 2122.00 |



ITEM: 101000.00 STCC: 0113710.00 (CONTINUED)

SUBJECT TO THE RULES AND PROVISIONS PUBLISHED IN NORFOLK SOUTHERN RAILWAY CONDITIONS OF CARRIAGE #1-D, AND ANY SUPPLEMENTS OR REISSUES THEREOF.

THIS CONTRACT IS MADE PURSUANT TO 49 U.S.C. SECTION 10709 FOR TRANSPORTATION REGULATED UNDER SUBTITLE IV, PART A OF TITLE 49 U.S.C. AND SHALL BECOME BINDING ON THE PARTIES UPON ACCEPTANCE BY THE SHIPPER NAMED HEREIN. SHIPPER MAY ACCEPT THIS CONTRACT EITHER BY WRITTEN NOTICE OR BY TENDER OF TRAFFIC UNDER ITS TERMS.

NOTE REFERENCES:

01 RECIPROCAL SWITCHING CHARGES AT ORIGIN OR DESTINATION, IF ANY, WILL BE IN ADDITION TO THE RATE. 0711

WAYBILLS MOVING UNDER CONTRACT MUST BE PROPERLY ENDORSED WITH THE CONTRACT NUMBER. 2656

WHEN A SHIPMENT HAS REACHED THE DESTINATION BUT IS NOT UNLOADED AND IS RETURNED VIA THE SAME ROUTE TO THE ORIGINAL SHIPPING POINT (FOR REASONS OTHER THAN CARRIERS ERROR), THE RETURN MOVEMENT WILL BE AT THE RATE PROVIDED IN THIS ITEM IN THE REVERSE DIRECTION APPLICABLE ON THE DATE THE SHIPMENT IS TENDERED FOR RETURN. 3438

NOT SUBJECT TO TRANSIT PRIVILEGES OF ANY KIND, INCLUDING THE PRIVILEGES OF DIVERSION, RECONSIGNMENT, OR INSPECTION. 5254

THE PROVISIONS OF NS TARIFF 6004-SERIES COVERING DEMURRAGE WILL APPLY. 4913

IN THE EVENT THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL, AS PUBLISHED IN THE WALL STREET JOURNAL, EXCEEDS $28.00 PER BARREL FOR THIRTY (30) CONSECUTIVE DAYS, NORFOLK SOUTHERN RETAINS THE RIGHT TO APPLY A FUEL SURCHARGE TO THE FREIGHT CHARGE(S) CONTAINED IN THIS AUTHORITY IN EFFECT ON THE DATE THE FUEL SURCHARGE IS APPLIED, HEREAFTER REFERRED TO AS THE "BASE FREIGHT CHARGE(S)". IF THIS OPTION IS EXERCISED, THE FUEL SURCHARGE SHALL BE APPLIED ACCORDING TO THE FOLLOWING SCHEDULE: 6766

| TEXAS INTERMEDIATE CRUDE OIL (PRICE PER BARREL) | CUMULATIVE FUEL SURCHARGE (PERCENTAGE) |
|---|---|
| $28 | 2% |
| $33 | 4% |



ITEM: 101000.00 STCC: 0113710.00 (CONTINUED)
NOTE REFERENCES (CONTINUED)

| | |
|---|---|
| $38 | 6% |
| $43 | 8% |
| EACH $5.00 PER BARREL INCREASE | AN ADDITIONAL 2% |

THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL MUST EXCEED A GIVEN BRACKET FOR THIRTY (30) CONSECUTIVE DAYS FOR THE SURCHARGE UNDER THAT BRACKET TO BE APPLICABLE. IF THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL CEASES TO BE AVAILABLE FROM THE WALL STREET JOURNAL OR SOME OTHER READILY ACCESSIBLE SOURCE, A SUBSTITUTE TO MEASURE WILL BE UTILIZED.

CUSTOMERS WILL RECEIVE NOTICE OF ANY FUEL SURCHARGE NOT LESS THAN TEN (10) DAYS PRIOR TO ITS APPLICATION. ANY FUEL SURCHARGE APPLIED TO THE FREIGHT CHARGE(S) IN THIS AUTHORITY WILL BE REMOVED OR REDUCED WHEN THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL REMAINS BELOW THE PRICE WHICH TRIGGERS A SPECIFIC SURCHARGE BRACKET FOR THIRTY (30) CONSECUTIVE DAYS. REDUCTIONS WILL BE MADE PROMPTLY AFTER THEY BECOME APPLICABLE. IN NO CASE WILL THE FREIGHT CHARGE(S) BE REDUCED BELOW THE "BASE FREIGHT CHARGE(S)" NOR WILL THE APPLICATION OR REMOVAL OF THE FUEL SURCHARGE BE RETROACTIVE.

03 RATE APPLICABLE ONLY IN SHIPPER OWNED OR LEASED COVERED HOPPER CARS. 3990

SHIPPER FURNISHED CARS NOT SUBJECT TO MILEAGE ALLOWANCE. 1311

04 RATES WILL NOT APPLY FROM NS STATIONS FSAC 60000 THROUGH 69999. 6878



STATION GROUP LISTS:

IN ALL PTS IN MI OH 903257

| | | |
|---|---|---|
| IN ALL POINTS | MI ALL POINTS | OH ALL POINTS |

PA ALL NS POINTS 901032

PA ALL POINTS



THIS RATE AUTHORITY HAS BEEN SENT TO THE FOLLOWING ADDRESSES:

MIKE.DCI@VERIZON.NET

From: Michael Donnelly [mike.dci@verizon.net]
Sent: Wednesday, July 30, 2003 8:47 AM
To: Kevin Donnelly
Subject: FW: NSSC80657

-----Original Message-----
From: memoapi@nscorp.com [mailto:memoapi@nscorp.com]
Sent: Thursday, July 03, 2003 10:18 AM
To: MIKE.DCI@VERIZON.NET
Subject: NSSC80657

MIKE.DCI@VERIZON.NET

```
                                                                  ./.
                                                             ///@@@@@
----------------NN   NN  SSSS                             ////@@@@@)@!
---------------NNN  NN SS                               ////@@@@@@@@@!
--------------NNNNNNN SSSSS                            ////@@@@@_!@@@!
-------------NN  NNN     SS                              //@@@@@@/ \@_)
------------NN   NN SSSSS                              //@@@@@@@@
                                                     /@@@@@@@@@@@!@\
            NORFOLK SOUTHERN                     /@@@@@@@@@@@@@/  \@\
                                              /@@@@@@@@@@@@@@@/     @/
                                           //@@@@@@@@@@@@@/       /@@/
                                         //  (@@@@@@@@/
                                       ///   @@@@@@@/
                                      ////    !@@@/
                                     /////   (/@/
                                      ///      @@
                                                \\\
```

N O R F O L K   S O U T H E R N   P R I C E   A U T H O R I T Y

NSSC 80657 SECTION 1 E 00

EFFECTIVE : 08/01/2003

EXPIRES : 07/31/2004

CUSTOMER : DONNELLY COMMODITIES

FILE NUMBER : XXXXXXXXXX

07/02/03--IMPLEMENTED '03 PA SCALE FOR MIKE DONNELLY...RDG

*** SEE LAST PAGE FOR ADDITIONAL COMMENTS ***

PRODUCT MANAGER: R D GEORGE 540-985-6009
SALES REP : B L AMRHIEN 317-805-4790



ITEM: 101000.00 ORIGIN ROAD: NS DESTINATION ROAD: NS
STCC: 0113710.00 WHEAT

ORIGIN: STATION GROUP #903257 - IN ALL PTS IN MI OH (SEE LAST PAGES)
DESTINATION: STATION GROUP #901032 - PA ALL NS POINTS (SEE LAST PAGES)

| | COL A | COL B |
|---|---|---|
| EQUIPMENT: | C1 | C1 |
| RATES PER: | CAR | CAR |
| NOTE REFS: | 01 03 | 01 03 04 |

| NRB MILES NOT OVER | | |
|---|---|---|
| 250 | 1001.00 | 801.00 |
| 270 | 1038.00 | 838.00 |
| 290 | 1076.00 | 876.00 |
| 310 | 1114.00 | 914.00 |
| 330 | 1152.00 | 952.00 |
| 350 | 1190.00 | 990.00 |
| 370 | 1228.00 | 1028.00 |
| 390 | 1265.00 | 1065.00 |
| 410 | 1303.00 | 1103.00 |
| 430 | 1342.00 | 1142.00 |
| 450 | 1380.00 | 1180.00 |
| 470 | 1418.00 | 1218.00 |
| 490 | 1456.00 | 1256.00 |
| 510 | 1493.00 | 1293.00 |

| | | |
|---|---|---|
| 530 | 1531.00 | 1331.00 |
| 550 | 1569.00 | 1369.00 |
| 570 | 1607.00 | 1407.00 |
| 590 | 1645.00 | 1445.00 |
| 610 | 1683.00 | 1483.00 |
| 630 | 1720.00 | 1520.00 |
| 650 | 1758.00 | 1558.00 |
| 670 | 1796.00 | 1596.00 |
| 690 | 1834.00 | 1634.00 |
| 710 | 1662.00 | 1462.00 |
| 730 | 1910.00 | 1710.00 |
| 750 | 1947.00 | 1747.00 |
| 770 | 1985.00 | 1785.00 |
| 790 | 2023.00 | 1823.00 |
| 810 | 2061.00 | 1861.00 |
| 830 | 2100.00 | 1900.00 |
| 850 | 2138.00 | 1938.00 |
| 870 | 2175.00 | 1975.00 |
| 890 | 2213.00 | 2013.00 |
| 910 | 2251.00 | 2051.00 |
| 930 | 2289.00 | 2089.00 |
| 950 | 2327.00 | 2127.00 |
| 970 | 2365.00 | 2165.00 |



ITEM: 101000.00 STCC: 0113710.00 (CONTINUED)

SUBJECT TO THE RULES AND PROVISIONS PUBLISHED IN NORFOLK SOUTHERN RAILWAY CONDITIONS OF CARRIAGE #1-D, AND ANY SUPPLEMENTS OR REISSUES THEREOF.

THIS CONTRACT IS MADE PURSUANT TO 49 U.S.C. SECTION 10709 FOR TRANSPORTATION REGULATED UNDER SUBTITLE IV, PART A OF TITLE 49 U.S.C. AND SHALL BECOME BINDING ON THE PARTIES UPON ACCEPTANCE BY THE SHIPPER NAMED HEREIN. SHIPPER MAY ACCEPT THIS CONTRACT EITHER BY WRITTEN NOTICE OR BY TENDER OF TRAFFIC UNDER ITS TERMS.

NOTE REFERENCES:

01 RECIPROCAL SWITCHING CHARGES AT ORIGIN OR DESTINATION, IF ANY, WILL BE IN ADDITION TO THE RATE. 0711

WAYBILLS MOVING UNDER CONTRACT MUST BE PROPERLY ENDORSED WITH THE CONTRACT NUMBER. 2656

WHEN A SHIPMENT HAS REACHED THE DESTINATION BUT IS NOT UNLOADED AND IS RETURNED VIA THE SAME ROUTE TO THE ORIGINAL SHIPPING POINT (FOR REASONS OTHER THAN CARRIERS ERROR), THE RETURN MOVEMENT WILL BE AT THE RATE PROVIDED IN THIS ITEM IN THE REVERSE DIRECTION APPLICABLE ON THE DATE THE SHIPMENT IS TENDERED FOR RETURN. 3438

NOT SUBJECT TO TRANSIT PRIVILEGES OF ANY KIND, INCLUDING THE PRIVILEGES OF DIVERSION, RECONSIGNMENT, OR INSPECTION. 5254

THE PROVISIONS OF NS TARIFF 6004-SERIES COVERING DEMURRAGE WILL APPLY. 4913

IN THE EVENT THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL, AS PUBLISHED IN THE WALL STREET JOURNAL, EXCEEDS $28.00 PER BARREL FOR THIRTY (30) CONSECUTIVE DAYS, NORFOLK SOUTHERN RETAINS THE RIGHT TO APPLY A FUEL SURCHARGE TO THE FREIGHT CHARGE(S) CONTAINED IN THIS AUTHORITY IN EFFECT ON THE DATE THE FUEL SURCHARGE IS APPLIED, HEREAFTER REFERRED TO AS THE "BASE FREIGHT CHARGE(S)". IF THIS OPTION IS EXERCISED, THE FUEL SURCHARGE SHALL BE APPLIED ACCORDING TO THE FOLLOWING SCHEDULE: 6766

| TEXAS INTERMEDIATE CRUDE OIL (PRICE PER BARREL) | CUMULATIVE FUEL SURCHARGE (PERCENTAGE) |
|---|---|
| $28 | 2% |
| $33 | 4% |



| | |
|---|---|
| $38 | 6% |
| $43 | 8% |
| EACH $5.00 PER BARREL INCREASE | AN ADDITIONAL 2% |

THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL MUST EXCEED A GIVEN BRACKET FOR THIRTY (30) CONSECUTIVE DAYS FOR THE SURCHARGE UNDER THAT BRACKET TO BE APPLICABLE. IF THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL CEASES TO BE AVAILABLE FROM THE WALL STREET JOURNAL OR SOME OTHER READILY ACCESSIBLE SOURCE, A SUBSTITUTE TO MEASURE WILL BE UTILIZED.

CUSTOMERS WILL RECEIVE NOTICE OF ANY FUEL SURCHARGE NOT LESS THAN TEN (10) DAYS PRIOR TO ITS APPLICATION. ANY FUEL SURCHARGE APPLIED TO THE FREIGHT CHARGE(S) IN THIS AUTHORITY WILL BE REMOVED OR REDUCED WHEN THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL REMAINS BELOW THE PRICE WHICH TRIGGERS A SPECIFIC SURCHARGE BRACKET FOR THIRTY (30) CONSECUTIVE DAYS. REDUCTIONS WILL BE MADE PROMPTLY AFTER THEY BECOME APPLICABLE. IN NO CASE WILL THE FREIGHT CHARGE(S) BE REDUCED BELOW THE "BASE FREIGHT CHARGE(S)" NOR WILL THE APPLICATION OR REMOVAL OF THE FUEL SURCHARGE BE RETROACTIVE.

03 RATE APPLICABLE ONLY IN SHIPPER OWNED OR LEASED COVERED HOPPER CARS. 3990

SHIPPER FURNISHED CARS NOT SUBJECT TO MILEAGE ALLOWANCE. 1311

04 RATES WILL NOT APPLY FROM NS STATIONS FSAC 60000 THROUGH 69999. 6878



STATION GROUP LISTS:

IN ALL PTS IN MI OH 903257

IN ALL POINTS MI ALL POINTS OH ALL POINTS

PA ALL NS POINTS 901032

PA ALL POINTS



COMMENTS:

THIS RATE AUTHORITY HAS BEEN SENT TO THE FOLLOWING ADDRESSES:

MIKE.DCI@VERIZON.NET

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**200011005**

| Account Number | Statement Date | Lead Equiptment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 07/21/2003 | GLNX 21001 | 817123 | 06/27/2003 | 18875 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGIN<br>CONALCO, TN 37134 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| 1904 | 190400 | 258 | PH | 4912.32 | CSXT 3000 - ITEM 16340456 FUEL SURCHARGE |
| | | 240 | PW | 118.00 | |
| TOTALS: | 190400 | | | 5030.32 | |

## Additional Information:

Equipment Characteristics: CAR TYPE T105 CAP 200000 LENGTH 057ft 00in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN- LIGNIN LIQUOR
References:
CSXT 3000 - CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Special Handling: CAR TRIP LEASED TO CONSIGNEE

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,030.32 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 08/05/2003 |
| Amount To Pay: | $5,030.32 |

Form DA-001 P Normal

EXHIBIT
Dust Pro
2
ms 6/4/10

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
200262958

ENTERED AUG 2 9 2003

135

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 08/20/2003 | GLNX 21012 | 814531 | 07/17/2003 | 18959 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGIN<br>CONALCO, TN 37134 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 187000 | | | | |
| 1900 | 190000 | 258 | PH | 4902.00 | |
| | | 240 | PW | 118.00 | CSXT 3000 - ITEM 16340456 FUEL SURCHARGE |
| TOTALS: | 190000 | | | 5020.00 | |

**Additional Information:**
Equipment Characteristics: CAR TYPE T105 CAP 200000 LENGTH 057ft 00in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN- LIGNIN LIQUOR
References:
CSXT 3000 - CSXT
6261
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Special Handling: CAR TRIP LEASED TO CONSIGNEE

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,020.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 09/04/2003 |
| **Amount To Pay:** | $5,020.00 |

Form DA-001 P Normal

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT

RECEIVED SEP 1 0 2003



**Invoice Number**
**201005465**

DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 09/05/2003 | GLNX 21012 | 576130 | 09/02/2003 | 11680 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| WESTWAY TRADING I<br>HOUSTON, TX 77012 | DUST PRO. INC.<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| HOUSTON, TX | PHOENIX, AZ | UP |

| ...s | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 181500 | 230000 | PC | 2300.00 | |
| | | 200 | PW | 46.00 | UP 26112 - ITEM 1019 FUEL SURCHARGE |
| TOTALS: | 181500 | | | 2346.00 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 200000 LENGTH 057ft 00in
Prepaid/Collect Indicator: COLLECT
Lading Description: CAR RAIL, TANK LIGNIN LIQUOR-BORREBOND FP-P ID=RMB
LP127
References:
UP 26112 - UP
181635
80211298
6296
Movement Locations: RAIL ORIGIN: HOUSTON, TX RAIL DEST: PHOENIX, AZ
Movement Route: PTRA-HUSTN-UP

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $2,346.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 09/20/2003 |
| **Amount To Pay:** | **$2,346.00** |

Form DA-001 P Normal
1192-2-002

48

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**201932946**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 10/29/2003 | TMIX205001 | 200326 | 10/27/2003 | 12209 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| WESTWAY TRADING I<br>HOUSTON, TX 77012 | DUST PRO, INC.<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| HOUSTON, TX | PHOENIX, AZ | UP |

| [illegible]s | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 189800 | 230000 | PC | 2300.00 | |
| | | 250 | PW | 58.00 | UP 26112 - ITEM 1019 FUEL SURCHARGE |
| TOTALS: | 189800 | | | 2358.00 | |

**Additional Information:**
Equipment Characteristics: CAR TYPE T105 CAP 198000 LENGTH 040ft 00in
Prepaid/Collect Indicator: COLLECT
Lading Description: CAR RAIL, TANK LIGNIN LIQUOR-BORREBOND FP-P ID=RMB
LP127
References:
UP 26112 - UP
187201
80218193
6344
Movement Locations: RAIL ORIGIN: HOUSTON, TX RAIL DEST: PHOENIX, AZ
Movement Route: PTRA-HUSTN-UP

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $2,358.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 11/13/2003 |
| **Amount To Pay:** | **$2,358.00** |

Form DA-001 P Normal
1427-2-002

55

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**202356576**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 11/24/2003 | TMIX200050 | 568549 | 11/20/2003 | 12413 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| WESTWAY TRADING I<br>HOUSTON, TX 77012 | DUST PRO, INC.<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| HOUSTON, TX | PHOENIX, AZ | UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 187000 | 230000 | PC | 2300.00 | |
| | | 250 | PW | 58.00 | UP 26112 -ITEM 1019 FUEL SURCHARGE |
| TOTALS: | 187000 | | | 2358.00 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 196000 LENGTH 54ft 10in
Prepaid/Collect Indicator: COLLECT
Lading Description: CAR RAIL, TANK LIGNIN LIQUOR-BORREBOND FP-P ID=RMB
LP127
References:
UP 26112 UP
191725
80223140
6358
Movement Locations: RAIL ORIGIN: HOUSTON, TX RAIL DEST: PHOENIX, AZ
Movement Route: PTRA-HUSTN-UP

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $2,358.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 12/09/2003 |
| **Amount To Pay:** | **$2,358.00** |

Form DA-001 P Normal
1595-2-002

**Olney, Melvin** FB # 1567579

CSX-COPS

File Lists Administration Options Window Help

**Bill of Lading** Interrupt Code/Reason: 00.00 - Price mechanically applied

Waybill Control: GLNX 21012 813682 Mar. 22, 2004 Status: Complete

General | Equipment | Participants | Commodity | Detail | Instructions | Pricing | ISS

**CSX Data**

**Shipping Method:** Prepaid

US dollars

Rates

Authority: CSXT 3000

Contact: PASSERI, MAZIE

Phone: 904-279-5426 Fax:

| Acct | Units | Rate | QL | Weight | QL | Freight | Advan |
|---|---|---|---|---|---|---|---|
| 101A | 1 | 2.58 | PH | 196500 | N | 5069.70 | |
| 101N | 1 | 4.80 | PW | 0 | | 243.35 | |
| | | | | | **Totals:** | 5313.05 | |

Divisions

Authority:

Contact: BUCHANAN, LARRY

Phone: 000-000-0000 Fax:

| Road | Junction | Proportion | Qualifiers | Factor |
|---|---|---|---|---|
| CSXT | | 1,506.71 | PW | 97.2 |
| | | | | 72.33 |
| | ENC | 72.33 | | 72.33 |

Fields | Comments | Extend Date | Force Msg | Non-ISS

**ISS Messages**

| Date | Time | Road | Act | Type | L |
|---|---|---|---|---|---|
| 04/04/2004 | 05:40 | UP | CH | A | 26 |
| 04/22/2004 | 18:17 | CSXT | OP | A | 26 |
| 06/01/2004 | 05:36 | CSXT | DT | S | 26 |
| 06/02/2004 | 13:53 | UP | DR | S | 26 |
| 06/02/2004 | 13:53 | CSXT | CA | S | 26 |
| 06/03/2004 | 11:53 | UP | CV | A | 26 |
| 06/04/2004 | 02:10 | | CD | S | 26 |
| 06/04/2004 | 18:10 | CSXT | OR | A | 86 |
| 06/04/2004 | 18:15 | UP | OR | A | 8 |
| 08/04/2004 | 02:22 | | SC | A | 86 |

Details

Ready

1. UP CH indicates s/b billed as PPD
2. CSXT OP indicates s/b billed as Collect
3. CSXT DT induactes a date extension
4. CSXT OR 06/04/04 indicates s/b billedd as Collect
5. UP OR 06/04/04 indicates s/b billed as PPD
6. SC 08/04/04 indicates settled composite. CSXT received revenue thru ISS.
7. UP filed RR claim 496036 and recovered monies paid by them to us.

EXHIBIT # 10
...nice G. Fuller CCR #50552
2/8/06 DATE

CSX TRANSPORTATION
CUSTOMER ACCOUNTING DEPT
P. O. BOX 550514
JACKSONVILLE, FL 32255

PAGE NO:01

# ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON
BILLS PAID AFTER DUE DATE

DIRECT QUESTIONS TO:
LAW DEPT-ASSIGNED
904-359-1637

FAX NUMBER: (904) 366-4406

MAIL PAYMENTS TO:
CSXT N/A 112017
1659 SOLUTIONS CENTER
CHICAGO IL 60677-1006

| DUE DATE | AMOUNT DUE |
|---|---|
| 09/16/04 | 3445.79 |

FREIGHT BILL NO: 6815360 DATE: 09/01/04 Y64509

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| GLNX 021001 | T105 | | 20924 | | 712 | 812021 | 04/23/04 | 20194 | 04/23/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 3000 | 2611215 | PREPAID |

SHIPPER
TEMPLE INLAND 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
073030 PHOENIX, AZ

| DESCRIPTION OF ARTICLES | | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | | 181400 | | | | | | | |
| LIGNIN LIQUOR (CONCEN- | | | | | | | | | |
| LIGNIN LIQUOR (CONCEN- | | | | | | | | | |
| LIGNIN LIQUOR | | | | | | | | | |
| | BAS | 190000 | | 1 | 2.58 | PH | 4902.00 | | 4902.00 |
| | FUEL-SC | | | 1 | 4.80 | PW | 235.30 | | 235.30 |
| | | | | TOTAL CHARGES | | | 5137.30 | | 5137.30 |

TARIFF CSXT 6002-E LIQUIDATED DAMAGES INTEREST 10 % 513.73

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| GLNX 021001 | T105 | 243000 | 61600 | | 181400 |

TOTAL CARS: 1

RATE INFO:
RATING STCC: 2611215
PROFILE NUMBER: 00051

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

TOTAL CHARGES 5137.30
PAYMENT RECEIVED 2205.24 11/01/04

CSX TRANSPORTATION

140 1176 1177 C3F CHM

PAGE NO:01

# ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON BILLS PAID AFTER DUE DATE

| DIRECT QUESTIONS TO: | MAIL CORRESPONDENCE TO: | MAIL PAYMENTS TO: | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|
| 1-877-744-7279<br>AND PROMPT 5-4-1 | CSX TRANSPORTATION<br>P. O. BOX 44053<br>JACKSONVILLE FL 32231-4053 | CSXT N/A 112017<br>1659 SOLUTIONS CENTER<br>CHICAGO IL 60677-1006 | 10/05/04 | 5176.51 |

FAX NUMBER: (904) 279-4025

FREIGHT BILL NO: 6815361 DATE: 09/20/04

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| TMIX 205001 | T105 | | | | 712 | 816678 | 05/17/04 | 20352 | 05/17/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 3000 | 2611215 | PREPAID |

SHIPPER
INLAND PAPERBOARD & PACKAGING 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
073030 PHOENIX, AZ

| DESCRIPTION OF ARTICLES | | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | | 187700 | | | | | | | |
| | BAS | 190000 | | 1 | 2.58 | PH | 4902.00 | | 4902.00 |
| | FUEL-SC | | | 1 | 5.60 | PW | 274.51 | | 274.51 |
| | | | | TOTAL CHARGES | | | 5176.51 | | 5176.51 |

R... CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| TMIX 205001 | T105 | 252100 | 64400 | | 187700 |

TOTAL CARS: 1

RATE INFO:
PROFILE NUMBER: 00051
PURCHASE ORDER: 6445

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

THE OCTOBER 2004 CSXT FUEL SURCHARGE WILL CHANGE FROM 7.2% TO 8.8%.
PLEASE DIRECT QUESTIONS TO YOUR CSXT SALES REPRESENTATIVE.

N580 03/02

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**205456451**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 06/17/2004 | GLNX 21012 | 804602 | 06/01/2004 | 20422 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGING<br>ELIZABETHTON, TN 37643 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| MEMPHIS, TN | PHOENIX, AZ | UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 188500 | 285300 | PC | 2853.00 | |
| | | 450 | PW | 128.00 | UP 26112 -ITEM 1034 FUEL SURCHARGE |
| TOTALS: | 188500 | | | 2981.00 | |

**Additional Information:**
Equipment Characteristics: CAR TYPE T105 CAP 200000 LENGTH 57ft 00in
Prepaid/Collect Indicator: PREPAID
Lading Description: LIGNIN LIQUOR (CONCEN- LIGNIN LIQUOR
Route Type: DEREGULATED RULE 11 - CHARGES FOR HAUL
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $2,981.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 07/02/2004 |
| Amount To Pay: | $2,981.00 |

Form DA-001 P Normal

CSX TRANSPORTATION

CSX TRANSPORTATION
CUSTOMER ACCOUNTING DEPT
P. O. BOX 550514
JACKSONVILLE, FL 32255

PAGE NO:01

ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON
BILLS PAID AFTER DUE DATE

DIRECT QUESTIONS TO:
LAW DEPT-ASSIGNED
904-359-1637

MAIL PAYMENTS TO:
CSXT N/A 112017
1659 SOLUTIONS CENTER
CHICAGO IL 60677-1006

| DUE DATE | AMOUNT DUE |
|---|---|
| 09/30/04 | 5993.85 |

FAX NUMBER: (904) 366-4406

FREIGHT BILL NO: 8097047 DATE: 09/15/04 Y64614

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| GLNX 021001 | T105 | | 20924 | | 712 | 815998 | 06/15/04 | 20533 | 06/15/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 3000 | 2611215 | PREPAID |

SHIPPER
TEMPLE INLAND 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
073030 PHOENIX, AZ

| DESCRIPTION OF ARTICLES | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | BAS 200000 | | 1 | 2.58 | PH | 5160.00 | | 5160.00 |
| LIGNIN LIQUOR (CONCEN- | FUEL-SC | | 1 | 5.60 | PW | 288.96 | | 288.96 |
| LIGNIN LIQUOR | | | | TOTAL CHARGES | | 5448.96 | | 5448.96 |

TARIFF CSXT 6002-E LIQUIDATED DAMAGES INTEREST 10 % 544.89

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| GLNX 021001 | T105 | 200000 | | | 200000 |
| TOTAL CARS: | | 1 | | | |

RATE INFO:
RATING STCC: 2611215
PROFILE NUMBER: 00005

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

CSX TRANSPORTATION

CSX TRANSPORTATION
CUSTOMER ACCOUNTING DEPT
P. O. BOX 550514
JACKSONVILLE, FL 32255

PAGE NO:01

# ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON
BILLS PAID AFTER DUE DATE

DIRECT QUESTIONS TO:
LAW DEPT-ASSIGNED
904-359-1637

FAX NUMBER: (904) 366-4406

MAIL PAYMENTS TO:
CSXT N/A 112017
1659 SOLUTIONS CENTER
CHICAGO IL 60677-1006

| DUE DATE | AMOUNT DUE |
|---|---|
| 09/30/04 | 5993.85 |

FREIGHT BILL NO: 8097041 DATE: 09/15/04 Y64614

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| RELX 002250 | T105 | | 20846 | | 712 | 812390 | 06/18/04 | 20538 | 06/18/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 3000 | 2611215 | PREPAID |

SHIPPER
TEMPLE INLAND 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
073030 PHOENIX, AZ

| DESCRIPTION OF ARTICLES | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | BAS 200000 | | 1 | 2.58 | PH | 5160.00 | | 5160.00 |
| LIGNIN LIQUOR (CONCEN- | FUEL-SC | | 1 | 5.60 | PW | 288.96 | | 288.96 |
| LIGNIN LIQUOR | | | | | | | | |
| | | | TOTAL CHARGES | | | 5448.96 | | 5448.96 |

TARIFF CSXT 6002-E LIQUIDATED DAMAGES INTEREST 10 % 544.89

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| RELX 002250 | T105 | 262400 | 62400 | | 200000 |

TOTAL CARS: 1

RATE INFO:
RATING STCC: 2611215
PROFILE NUMBER: 00005

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

CSX TRANSPORTATION

CSX TRANSPORTATION
CUSTOMER ACCOUNTING DEPT
P. O. BOX 550514
JACKSONVILLE, FL 32255



# ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON
BILLS PAID AFTER DUE DATE

| DIRECT QUESTIONS TO: | MAIL PAYMENTS TO: | DUE DATE | AMOUNT DUE |
|---|---|---|---|
| LAW DEPT-ASSIGNED<br>904-359-1637<br><br>FAX NUMBER: (904) 366-4406 | CSXT N/A 112017<br>1659 SOLUTIONS CENTER<br>CHICAGO IL 60677-1006 | 09/30/04 | 5780.43 |

FREIGHT BILL NO: 8097045 DATE: 09/15/04 Y64614

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| DACX 000420 | T106 | | | | 712 | 814161 | 07/05/04 | 20611 | 07/05/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 3000 | 2611215 | PREPAID |

| SHIPPER | | CONSIGNEE | |
|---|---|---|---|
| TEMPLE INLAND<br>2877 SPECTER RD<br>CONALCO TN 37185 | 3R699X | DUSTPRO INC<br>TRACK 862<br>PHOENIX AZ | D8KM00 |

| ORIGIN | DESTINATION |
|---|---|
| 046610 CONALCO, TN | 073030 PHOENIX, AZ |

| DESCRIPTION OF ARTICLES | | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | | 184900 | | | | | | | |
| LIGNIN LIQUOR (CONCEN- | BAS | 190000 | | 1 | 2.58 | PH | 4902.00 | | 4902.00 |
| LIGNIN LIQUOR | FUEL-SC | | | 1 | 7.20 | PW | 352.94 | | 352.94 |
| | | | | TOTAL CHARGES | | | 5254.94 | | 5254.94 |

TARIFF CSXT 6002-E LIQUIDATED DAMAGES INTEREST 10 % 525.49

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| DACX 000420 | T106 | 254500 | 69600 | | 184900 |
| TOTAL CARS: | | 1 | | | |

RATE INFO:
RATING STCC: 2611215
PROFILE NUMBER: 00005

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

Invoice Number
**206098657**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 07/16/2004 | DACX 405 | 810340 | 07/08/2004 | 20632 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGING<br>ELIZABETHTON, TN 37643 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| MEMPHIS, TN | PHOENIX, AZ | UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 189600 | 285300 | PC | 2853.00 | |
| | | 500 | PW | 143.00 | UP 26112 -ITEM 1034 FUEL SURCHARGE |
| TOTALS: | 189600 | | | 2996.00 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 192000 LENGTH.46ft 04in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN- LIGNIN LIQUOR
Route Type: DEREGULATED RULE 11 - CHARGES FOR HAUL
References:
CSXT 9 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $2,996.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 07/31/2004 |
| Amount To Pay: | $2,996.00 |

Form DA-001 P Normal

RECEIVED AUG 3 2004

CSX TRANSPORTATION

99 686 687 C3F CHM

135

PAGE NO:01

ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON BILLS PAID AFTER DUE DATE

| DIRECT QUESTIONS TO: | MAIL CORRESPONDENCE TO: | MAIL PAYMENTS TO: | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|
| 1-877-744-7279<br>AND PROMPT 5-4-2-2 | CSX TRANSPORTATION<br>P. O. BOX 44053<br>JACKSONVILLE FL 32231-4053 | CSXT N/A 112017<br>1659 SOLUTIONS CENTER<br>CHICAGO IL 60677-1006 | 08/13/04 | 2357.71 |

FAX NUMBER: (904) 279-4025

FREIGHT BILL NO: 8372879 DATE: 07/29/04

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| DACX 000405 | T105 | | | | 712 | 810340 | 07/08/04 | 20632 | 07/08/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 28612 | 2611215 | RULE11 - COLLECT |

SHIPPER
INLAND PAPERBOARD & PACKAGING 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
RAIL: 046380 MEMPHIS, TN
FINAL: PHOENIX, AZ

| DESCRIPTION OF ARTICLES | | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | BAS | 189600 | | 1 | 1.16 | PH | 2199.36 | | |
| LIGNIN LIQUOR (CONCEN- | FUEL-SC | | | 1 | 7.20 | PW | 158.35 | | |
| LIGNIN LIQUOR | | | | | | | | | |
| | | | | TOTAL CHARGES | | | 2357.71 | | |

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| DACX 000405 | T105 | 259800 | 70200 | | 189600 |
| TOTAL CARS: | | 1 | | | |

RATE INFO:
RATING STCC: 2611215
PROFILE NUMBER: 00000

SPECIAL INSTRUCTIONS
REWAYBILLED SHIPMENT

Goes w/ UPRR 206098657

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

THESE CHARGES FOR MOVE FROM: CONALCO, TN
TO: MEMPHIS, TN

THE AUGUST 2004 CSXT FUEL SURCHARGE WILL CHANGE FROM 7.2% TO 6.4%.
PLEASE DIRECT QUESTIONS TO YOUR CSXT SALES REPRESENTATIVE.

FAILURE TO PAY W/I 15 DAYS OF BILL DATE WILL RESULT IN ADDITION OF 10% LDI TARIFF CHARGES

EXHIBIT # 7
2/8/01

| | | | |
|---|---|---|---|
| 209812149 | 2/22/05 | 6,212.08 | 6,212.08 |
| 209812150 | 2/22/05 | 6,035.00 | 6,035.00 |
| 209940545 | 2/28/05 | 6,035.00 | 6,035.00 |
| 210152649 | 3/11/05 | 5,182.96 | 5,182.96 |
| 210152624 | 3/11/05 | 5,020.00 | 5,020.00 |
| 210302641 | 3/21/05 | 6,101.00 | 6,101.00 |
| 210334098 | 3/23/05 | 6,101.00 | 6,101.00 |

6/23/05 RANDY EVANS CREDIT UNION PACIFIC RAILROAD $40,687.04

RANDY EVANS CREDIT Jun 23, 2005 ****************$40,687.04

Forty Thousand Six Hundred Eighty-Seven and 04/100 Dollars

UNION PACIFIC RAILROAD
PHIL RUMMELL
1400 DOUGLAS ST STOP 1620
OMAHA, NE 68179

EXHIBIT # 8
Janice G. Fuller CCR #50552 2/8/06 DATE

CSX TRANSPORTATION

99 69 RECEIVED AUG 3 2004 691 C3F CHM

PAGE NO: 01

ORIGINAL FREIGHT BILL

135

FINANCE CHARGE 12%/YEAR ON BILLS PAID AFTER DUE DATE

| DIRECT QUESTIONS TO: | MAIL CORRESPONDENCE TO: | MAIL PAYMENTS TO: | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|
| 1-877-744-7279<br>AND PROMPT 5-4-2-2 | CSX TRANSPORTATION<br>P. O. BOX 44053<br>JACKSONVILLE FL 32231-4053 | CSXT N/A 112017<br>1659 SOLUTIONS CENTER<br>CHICAGO IL 60677-1006 | 08/13/04 | 2335.33 |

FAX NUMBER: (904) 279-4025

FREIGHT BILL NO: 8372881 DATE: 07/29/04

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| TMIX 205001 | T105 | | | | 712 | 812307 | 07/13/04 | 20652 | 07/13/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 28612 | 2611215 | RULE11 - COLLECT |

SHIPPER
INLAND PAPERBOARD & PACKAGING 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
RAIL: 046380 MEMPHIS, TN
FINAL: PHOENIX, AZ

| DESCRIPTION OF ARTICLES | | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | BAS | 187800 | | 1 | 1.16 | PH | 2178.48 | | |
| LIGNIN LIQUOR (CONCEN- | FUEL-SC | | | 1 | 7.20 | PW | 156.85 | | |
| LIGNIN LIQUOR | | | | | | | | | |
| | | | | TOTAL CHARGES | | | 2335.33 | | |

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| TMIX 205001 | T105 | 252200 | 64400 | | 187800 |
| TOTAL CARS: | | 1 | | | |

RATE INFO:
RATING STCC: 2611215
PROFILE NUMBER: 00005

SPECIAL INSTRUCTIONS
REWAYBILLED SHIPMENT

8/9/04 Jeanie lets call Phil Bummel & Joost ask why

Goes w/ UPRR -
Goes w/ Inland -
P.O. # -

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

THESE CHARGES FOR MOVE FROM: CONALCO, TN
TO: MEMPHIS, TN

THE AUGUST 2004 CSXT FUEL SURCHARGE WILL CHANGE FROM 7.2% TO 6.4%.
PLEASE DIRECT QUESTIONS TO YOUR CSXT SALES REPRESENTATIVE:

*FAILURE TO PAY W/I 15 DAYS OF BILL DATE WILL RESULT IN ADDITION OF 10% LDI TARIFF CHARG

NSGO 03/02

CSX TRANSPORTATION

100 690 691 C3F CHM

RECEIVED AUG 2 4 2004

PAGE NO:01

135

ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON BILLS PAID AFTER DUE DATE

| DIRECT QUESTIONS TO: | MAIL CORRESPONDENCE TO: | MAIL PAYMENTS TO: | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|
| 1-877-744-7279<br>AND PROMPT 5-4-2-2 | CSX TRANSPORTATION<br>P. O. BOX 44053<br>JACKSONVILLE FL 32231-4053 | CSXT N/A 112017<br>1659 SOLUTIONS CENTER<br>CHICAGO IL 60677-1006 | 08/27/04 | 2468.39 |

FAX NUMBER: (904) 279-4025

FREIGHT BILL NO: 8518511 DATE: 08/12/04

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| GLNX 021012 | T105 | | 20931 | | 712 | 806305 | 07/22/04 | 20685 | 07/22/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 28612 | 2611215 | RULE11 - COLLECT |

SHIPPER
INLAND PAPERBOARD & PACKAGING 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
RAIL: 046380 MEMPHIS, TN
FINAL: PHOENIX, AZ

| DESCRIPTION OF ARTICLES | | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | BAS | 198500 | | 1 | 1.16 | PH | 2302.60 | | |
| LIGNIN LIQUOR (CONCEN- | FUEL-SC | | | 1 | 7.20 | PW | 165.79 | | |
| LIGNIN LIQUOR | | | | | | | | | |
| | | | | TOTAL CHARGES | | | 2468.39 | | |

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| GLNX 021012 | T105 | 259900 | 61400 | | 198500 |
| TOTAL CARS: | | 1 | | | |

RATE INFO:
RATING STCC: 2611215
PROFILE NUMBER: 00005

SPECIAL INSTRUCTIONS
REWAYBILLED SHIPMENT

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

THESE CHARGES FOR MOVE FROM: CONALCO, TN
TO: MEMPHIS, TN

THE SEPTEMBER 2004 CSXT FUEL SURCHARGE WILL CHANGE FROM 6.4% TO 7.2%.
PLEASE DIRECT QUESTIONS TO YOUR CSXT SALES REPRESENTATIVE.

*FAILURE TO PAY W/I 15 DAYS OF BILL DATE WILL RESULT IN ADDITION OF 10% LDI TARIFF CHARG

NSCO 03/92

CSX TRANSPORTATION

100 692 RECEIVED AUG 2 4 2004 693 C3F CHM

PAGE NO:01

135

ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON BILLS PAID AFTER DUE DATE

| DIRECT QUESTIONS TO: | MAIL CORRESPONDENCE TO: | MAIL PAYMENTS TO: | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|
| 1-877-744-7279<br>AND PROMPT 5-4-2-2 | CSX TRANSPORTATION<br>P. O. BOX 44053<br>JACKSONVILLE FL 32231-4053 | CSXT N/A 112017<br>1659 SOLUTIONS CENTER<br>CHICAGO IL 60677-1006 | 08/27/04 | 2271.91 |

FAX NUMBER: (904) 279-4025

FREIGHT BILL NO: 8518519 DATE: 08/12/04

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| GLNX 021001 | T105 | | 20924 | | 712 | 812017 | 07/23/04 | 20692 | 07/23/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 28612 | 2611215 | RULE11 - COLLECT |

SHIPPER
INLAND PAPERBOARD & PACKAGING 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
RAIL: 046380 MEMPHIS, TN
FINAL: PHOENIX, AZ

| DESCRIPTION OF ARTICLES | | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | BAS | 182700 | | 1 | 1.16 | PH | 2119.32 | | |
| LIGNIN LIQUOR (CONCEN- | FUEL-SC | | | 1 | 7.20 | PW | 152.59 | | |
| LIGNIN LIQUOR | | | | | | | | | |
| | | | | TOTAL CHARGES | | | 2271.91 | | |

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| GLNX 021001 | T105 | 244300 | 61600 | | 182700 |
| TOTAL CARS: | | 1 | | | |

RATE INFO:
RATING STCC: 2611215
PROFILE NUMBER: 00005

SPECIAL INSTRUCTIONS
REWAYBILLED SHIPMENT

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

THESE CHARGES FOR MOVE FROM: CONALCO, TN
TO: MEMPHIS, TN

THE SEPTEMBER 2004 CSXT FUEL SURCHARGE WILL CHANGE FROM 6.4% TO 7.2%.
PLEASE DIRECT QUESTIONS TO YOUR CSXT SALES REPRESENTATIVE.

*FAILURE TO PAY W/I 15 DAYS OF BILL DATE WILL RESULT IN ADDITION OF 10% LDI TARIFF CHARG

NS60 03/92

CSX TRANSPORTATION

117 1114 1115 C3F CHM

PAGE NO:01

ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON BILLS PAID AFTER DUE DATE

| DIRECT QUESTIONS TO: | MAIL CORRESPONDENCE TO: | MAIL PAYMENTS TO: | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|
| 1-877-744-7279<br>AND PROMPT 5-4-1 | CSX TRANSPORTATION<br>P. O. BOX 44053<br>JACKSONVILLE FL 32231-4053 | CSXT N/A 112017<br>1659 SOLUTIONS CENTER<br>CHICAGO IL 60677-1006 | 10/19/04 | 2335.18 |

FAX NUMBER: (904) 279-4025

FREIGHT BILL NO: 8842227 DATE: 10/04/04

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| DACX 000405 | T105 | | | | 712 | 811952 | 08/18/04 | 20770 | 08/18/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 28612 | 2611215 | RULE11 - COLLECT |

SHIPPER
INLAND PAPERBOARD & PACKAGING 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
RAIL: 046380 MEMPHIS, TN
FINAL: PHOENIX, AZ

| DESCRIPTION OF ARTICLES | | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | BAS | 189200 | | 1 | 1.16 | PH | 2194.72 | | |
| LIGNIN LIQUOR (CONCEN- | FUEL-SC | | | 1 | 6.40 | PW | 140.46 | | |
| LIGNIN LIQUOR | | | | | | | | | |
| | | | | | TOTAL CHARGES | | 2335.18 | | |

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| DACX 000405 | T105 | 259400 | 70200 | | 189200 |
| TOTAL CARS: | | 1 | | | |

RATE INFO:
RATING STCC: 2611215
PURCHASE ORDER: 6583

SPECIAL INSTRUCTIONS
REWAYBILLED SHIPMENT

DPI Internal copy only entered as 9.30.04 for fiscal year end

ENTERED OCT 14 2004

135

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

THESE CHARGES FOR MOVE FROM: CONALCO, TN
TO: MEMPHIS, TN

THE NOVEMBER 2004 CSXT FUEL SURCHARGE WILL CHANGE FROM 8.8% TO 9.2%.
PLEASE DIRECT QUESTIONS TO YOUR CSXT SALES REPRESENTATIVE.

*FAILURE TO PAY W/I 15 DAYS OF BILL DATE WILL RESULT IN ADDITION OF 10% LDI TARIFF CHAR

N560 03/92

CSX TRANSPORTATION

117 1116 1117 C3F CHM

PAGE NO:01

# ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON BILLS PAID AFTER DUE DATE

| DIRECT QUESTIONS TO: | MAIL CORRESPONDENCE TO: | MAIL PAYMENTS TO: | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|
| 1-877-744-7279<br>AND PROMPT 5-4-1 | CSX TRANSPORTATION<br>P. O. BOX 44053<br>JACKSONVILLE FL 32231-4053 | CSXT N/A 112017<br>1659 SOLUTIONS CENTER<br>CHICAGO IL 60677-1006 | 10/19/04 | 2383.32 |

FAX NUMBER: (904) 279-4025

FREIGHT BILL NO: 8842228 DATE: 10/04/04

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| TMIX 200050 | T105 | | | | 712 | 811953 | 08/18/04 | 20771 | 08/18/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 28612 | 2611215 | RULE11 - COLLECT |

SHIPPER
INLAND PAPERBOARD & PACKAGING 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
RAIL: 046380 MEMPHIS, TN
FINAL: PHOENIX, AZ

| DESCRIPTION OF ARTICLES | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | BAS 193100 | | 1 | 1.16 | PH | 2239.96 | | |
| LIGNIN LIQUOR (CONCEN- | FUEL-SC | | 1 | 6.40 | PW | 143.36 | | |
| LIGNIN LIQUOR | | | | | | | | |
| | | | | TOTAL CHARGES | | 2383.32 | | |

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| TMIX 200050 | T105 | 258600 | 65500 | | 193100 |

TOTAL CARS: 1

RATE INFO:
RATING STCC: 2611215
PURCHASE ORDER: 6584

SPECIAL INSTRUCTIONS
REWAYBILLED SHIPMENT

DPI Internal copy only
entered as 9.30.04 for fiscal year end

ENTERED OCT 14 2004

135

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

THESE CHARGES FOR MOVE FROM: CONALCO, TN
TO: MEMPHIS, TN

THE NOVEMBER 2004 CSXT FUEL SURCHARGE WILL CHANGE FROM 8.8% TO 9.2%.
PLEASE DIRECT QUESTIONS TO YOUR CSXT SALES REPRESENTATIVE.

*FAILURE TO PAY W/I 15 DAYS OF BILL DATE WILL RESULT IN ADDITION OF 10% LDI TARIFF CHAR

M560 03/92

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT

Jan we need to inquire about FSC



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**208795753**

ENTERED DEC 30 2004

RECEIVED DEC 20 2004

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 12/16/2004 | DACX 405 | 811952 | 08/18/2004 | 20770 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGING<br>ELIZABETHTON, TN 37643 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 189200 | | | | |
| 1900 | 190000 | 258 | PH | 4902.00 | |
| | | 640 | PW | 314.00 | CSXT 3000 -ITEM 39524935 FUEL SURCHARGE |
| TOTALS: | 190000 | | | 5216.00 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 192000 LENGTH 46ft 04in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN- LIGNIN LIQUOR
References:
CSXT 9 CSXT
6583
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

Ligtac
18,931 gallons

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,216.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 12/31/2004 |
| **Amount To Pay:** | **$5,216.00** |

Form DA-001 P Normal

CSX TRANSPORTATION

CSX TRANSPORTATION
CUSTOMER ACCOUNTING DEPT
P. O. BOX 550514
JACKSONVILLE, FL 32255

PAGE NO:01

ORIGINAL FREIGHT BILL

FINANCE CHARGE 12%/YEAR ON BILLS PAID AFTER DUE DATE

DIRECT QUESTIONS TO:
LAW DEPT-ASSIGNED
904-359-1637

FAX NUMBER: (904) 366-4406

MAIL PAYMENTS TO:
CSXT N/A 112017
1659 SOLUTIONS CENTER
CHICAGO IL 60677-1006

| DUE DATE | AMOUNT DUE |
|---|---|
| 02/25/05 | 5866.71 |

FREIGHT BILL NO: 1990891 DATE: 02/10/05 Y65948

| CAR | KIND | LENGTH | CAPACITY | HEIGHT | BILLING ROAD | WAYBILL NUMBER | WAYBILL DATE | BILL OF LADING NUMBER | BILL OF LADING DATE |
|---|---|---|---|---|---|---|---|---|---|
| GLNX 021001 | T105 | | 20924 | | 712 | 805820 | 10/12/04 | 21022 | 10/12/04 |

| ROUTE | SHIPPERS INVOICE | PRICE AUTHORITY | STCC | SHIPPING METHOD |
|---|---|---|---|---|
| CSXT MEMPH UP | | CSXT 3000 | 2611215 | PREPAID |

SHIPPER
TEMPLE INLAND 3R699X
2877 SPECTER RD
CONALCO TN 37185

CONSIGNEE
DUSTPRO INC D8KM00
TRACK 862
PHOENIX AZ

ORIGIN
046610 CONALCO, TN

DESTINATION
073030 PHOENIX, AZ

| DESCRIPTION OF ARTICLES | | WEIGHT | PCKGS | UNITS | RATE | QL | FREIGHT | ADVANCES | PREPAID |
|---|---|---|---|---|---|---|---|---|---|
| LIGNIN LIQUOR (CONCEN- | | 175900 | | | | | | | |
| LIGNIN LIQUOR (CONCEN- | BAS | 190000 | | 1 | 2.58 | PH | 4902.00 | | 4902.00 |
| LIGNIN LIQUOR | FUEL-SC | | | 1 | 8.80 | PW | 431.38 | | 431.38 |
| | | | | TOTAL CHARGES | | | 5333.38 | | 5333.38 |

TARIFF CSXT 6002-E LIQUIDATED DAMAGES INTEREST 10 % 533.33

RATE CODE: PH = 100 WEIGHT PW = PER CENT

| EQUIPMENT | KIND | GROSS | TARE | ALLOW | NET |
|---|---|---|---|---|---|
| GLNX 021001 | T105 | 237500 | 61600 | | 175900 |
| TOTAL CARS: | | 1 | | | |

RATE INFO:
RATING STCC: 2611215

DUSTPRO INC
P O BOX 24509
PHOENIX AZ 85074-4509

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**208253859**

RECEIVED NOV 22 2004

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 11/18/2004 | DACX 420 | 813349 | 11/09/2004 | 21134 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGING<br>ELIZABETHTON, TN 37643 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| 1934 | 193400 | 258 | PH | 4989.72 | |
| | | 920 | PW | 459.00 | CSXT 3000 -ITEM 16340456 FUEL SURCHARGE |
| TOTALS: | 193400 | | | 5448.72 | |

**Additional Information:**
Equipment Characteristics: CAR TYPE T106 CAP 192000 LENGTH 52ft 11in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,448.72 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 12/03/2004 |
| **Amount To Pay:** | **$5,448.72** |

Form DA-001 P Normal
1108-2-003

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**208253860**

RECEIVED NOV 22 2004

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 11/18/2004 | TMDX205001 | 813227 | 11/09/2004 | 21133 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGING<br>ELIZABETHTON, TN 37643 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| 1980 | 198000 | 258 | PH | 5108.40 | |
| | | 920 | PW | 470.00 | CSXT 3000 -ITEM 16340456 FUEL SURCHARGE |
| TOTALS: | 198000 | | | 5578.40 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 198000 LENGTH 40ft 00in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,578.40 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 12/03/2004 |
| **Amount To Pay:** | **$5,578.40** |

Form DA-001 P Normal

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**208449098**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 12/02/2004 | GLNX 21012 | 970482 | 11/19/2004 | 21152 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGING<br>ELIZABETHTON, TN 37643 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| 2000 | 200000 | 258 | PH | 5160.00 | |
| | | 920 | PW | 475.00 | CSXT 3000 -ITEM 16340456 FUEL SURCHARGE |
| TOTALS: | 200000 | | | 5635.00 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 200000 LENGTH 57ft 00in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

**For Assistance:**

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

**Remit Payment To:**

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,635.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 12/17/2004 |
| **Amount To Pay:** | **$5,635.00** |

Form DA-001 P Normal

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**208690200**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 12/10/2004 | DACX 405 | 918084 | 12/06/2004 | 21181 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGING ELIZABETHTON, TN 37643 | DUST PRO INC PHOENIX, AZ 85034 | 2611215 LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 184700 | | | | |
| 1900 | 190000 | 258 | PH | 4902.00 | CSXT 3000 -ITEM 39524935 |
| | | 1240 | PW | 608.00 | FUEL SURCHARGE |
| TOTALS: | 190000 | | | 5510.00 | |

ouch

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 192000 LENGTH 46ft 04in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

**For Assistance:**

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,510.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 12/25/2004 |
| **Amount To Pay:** | **$5,510.00** |

Form DA-001 P Normal

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**208874794**

RECEIVED DEC 2 7 2004

ENTERED DEC 3 0 2004

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 12/21/2004 | GLNX 21001 | 863958 | 12/13/2004 | 21194 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGING<br>ELIZABETHTON, TN 37643 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 186100 | | | | |
| 1900 | 190000 | 258 | PH | 4902.00 | |
| | | 1240 | PW | 608.00 | CSXT 3000 -ITEM 39524935 FUEL SURCHARGE |
| TOTALS: | 190000 | | | 5510.00 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 200000 LENGTH 57ft 00in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

19,075 gallons
Lignac

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,510.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 01/05/2005 |
| **Amount To Pay:** | **$5,510.00** |

Form DA-001 P Normal

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**208879212**

RECEIVED DEC 2 7 2004

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 12/21/2004 | TMIX200050 | 949085 | 12/15/2004 | 21212 |

ENTERED DEC 3 0 2004

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| INLAND PAPERBOARD & PACKAGING ELIZABETHTON, TN 37643 | DUST PRO INC PHOENIX, AZ 85034 | 2611215 LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| 1909 | 190900 | 258 | PH | 4925.22 | |
| | | 1240 | PW | 611.00 | CSXT 3000 -ITEM 39524935 FUEL SURCHARGE |
| TOTALS: | 190900 | | | 5536.22 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 196000 LENGTH 54ft 10in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

19,567 gallons
Ligtoe

**For Assistance:**

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,536.22 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 01/05/2005 |
| **Amount To Pay:** | **$5,536.22** |

Form DA-001 P Normal
1261-3-003

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**209812149**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 02/22/2005 | GLNX 21012 | 960517 | 02/11/2005 | 21403 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| TEMPLE INLAND<br>WEST MEMPHIS, AR 72301 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| 1956 | 195600 | 293 ✓ | PH | 5731.08 | CSXT 98864 -ITEM 39837312 FUEL SURCHARGE |
| | | 840 ✓ | PW | 481.00 | |
| TOTALS: | 195600 | | | 6212.08 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 200000 LENGTH 57ft 00in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

CSX = 2450.48
UPRR = 3462.12 3287.00
+ 299.48 262.48
$ 3761.60 3543.4
+ 218.12

19,280 gallons
Level 1

ENTERED APR 08 2005

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $6,212.08 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 03/09/2005 |
| **Amount To Pay:** | **$6,212.08** |

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**209812150**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 02/22/2005 | DACX 405 | 876667 | 02/11/2005 | 21402 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| TEMPLE INLAND<br>WEST MEMPHIS, AR 72301 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| 1900 | 182600<br>190000 | 293<br>840 | PH ✓<br>PW ✓ | 5567.00<br>468.00 | CSXT 98864 -ITEM 39837312 FUEL SURCHARGE |
| TOTALS: | 190000 | | | 6035.00 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T105 CAP 192000 LENGTH 46ft 04in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

CSX = 2204.00
176.32 FSC
2380.32

UP = 3363.00 3281.00
291.68 262.48
3654.68 3543.48

18035 gallons
Level 1

+ 111.20

ENTERED APR . . 2005

**For Assistance:**

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $6,035.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 03/09/2005 |
| **Amount To Pay:** | **$6,035.00** |

Form DA-001 P Normal
1415-3-003

107

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**209940545**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 02/28/2005 | DACX 420 | 830621 | 02/21/2005 | 21454 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| TEMPLE INLAND<br>WEST MEMPHIS, AR 72301 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 105800 | | | | |
| 1900 | 190000 | 293 | PH | 5567.00 | |
| | | 840 | PW | 468.00 | CSXT 98864 -ITEM 39837312 FUEL SURCHARGE |
| TOTALS: | 190000 | | | 6035.00 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE T106 CAP 192000 LENGTH 52ft 11in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

18149 gallons
Level 1

ENTERED APR 0 8 2005

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $6,035.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 03/15/2005 |
| **Amount To Pay:** | **$6,035.00** |

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**210302641**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 03/21/2005 | TMIX200050 | 899894 | 03/14/2005 | 21541 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| TEMPLE-INLAND INC<br>WEST MEMPHIS, AR 72301 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|---|
| | 188100 | | | | | |
| 1900 | 190000 | | 293 | PH | 5567.00 | |
| | | | 980 | PW | 534.00 | CSXT 98864 ITEM 41679628 FUEL SURCHARGE |
| TOTALS: | 190000 | | | | 6101.00 | |

**Additional Information:**

```
Equipment Characteristics:  CAR TYPE  T105     CAP. 196000  LENGTH 54ft  10in
Prepaid/Collect Indicator:  COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
  CSXT 3000  CSXT
Movement Locations: RAIL ORIGIN:  CONALCO, TN      RAIL DEST:  PHOENIX, AZ
Movement Route:     CSXT-MEMPH-UP
Special Handling:   CAR TRIP LEASED TO CONSIGNEE
```

18,002 gallons
Level 1

**For Assistance:**

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $6,101.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 04/05/2005 |
| **Amount To Pay:** | **$6,101.00** |

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



DUSTPRO INC
ACCOUNTS PAYABLE
725 S 12TH PLACE

**Invoice Number**
**210334098**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 81889 | 03/23/2005 | GLNX 21001 | 932966 | 03/17/2005 | 21560 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| TEMPLE-INLAND INC<br>WEST MEMPHIS, AR 72301 | DUST PRO INC<br>PHOENIX, AZ 85034 | 2611215<br>LIGNIN LIQUOR (CONCEN- TRATED LIQUID OR SEMI-LIQUID RESIDUE OR BY- PRODUCT FROM THE MANUFAC- TURE OF SULPHATE OR SULPHITE WOOD PU |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| CONALCO, TN | PHOENIX, AZ | CSXT-MEMPH-UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 180300 | | | | |
| 1900 | 190000 | 293 | PH | 5567.00 | CSXT 98864 ITEM 41679628 |
| | | 960 | PW | 534.00 | FUEL SURCHARGE |
| TOTALS: | 190000 | | | 6101.00 | |

**Additional Information:**
Equipment Characteristics: CAR TYPE T105 CAP 200000 LENGTH 57ft 00in
Prepaid/Collect Indicator: COLLECT
Lading Description: LIGNIN LIQUOR (CONCEN-
References:
CSXT 3000 CSXT
Movement Locations: RAIL ORIGIN: CONALCO, TN RAIL DEST: PHOENIX, AZ
Movement Route: CSXT-MEMPH-UP
Special Handling: CAR TRIP LEASED TO CONSIGNEE

18,266 gallons
Level 1

ENTERED APR 0 6 2005

For Assistance:
Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (402) 233-3139

Remit Payment To:
UNION PACIFIC RAILROAD
P.O. BOX 502453
SAINT LOUIS MO 63150-2453

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $6,101.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | |
| Last Payment Date: | |
| Due Date: | 04/07/2005 |
| **Amount To Pay:** | $6,101.00 |

# Redacted in Full

# DA06562 - DA06567

Le courrier électronique peut être porteur de virus informatiques. Le destinataire doit donc passer le présent courriel et les pièces qui y sont jointes au détecteur de virus. L'expéditeur et son employeur déclinent toute responsabilité pour les dommages causés par un virus contenu dans le courriel.

Le présent message et les pièces qui y sont jointes contiennent des renseignements confidentiels destinés uniquement à la personne ou à l'organisme nommé ci-dessus. Toute diffusion, distribution, reproduction ou utilisation comme référence du contenu du message par une autre personne que le destinataire est formellement interdite. Si vous avez reçu ce courriel par erreur, veuillez le détruire immédiatement et en informer l'expéditeur à l'adresse ci-dessus.

------------------------------ IMPORTANT NOTICE - AVIS IMPORTANT ------------------------------

2/2004 +2% moved to NSSC-85451

NORFOLK SOUTHERN

**CONFIDENTIAL TRANSMITTAL**

540-985-6119
423-266-5499

Date: April 11, 2002
File: C2A – NS 18492

TO: Mr. Jack Huh
Manager Transp. and Logistics
Chlor Alkali Products
Olin Corporation
490 Stuart Road, N.E.
Cleveland, TN 37312
FAX (423) 336-4819

FROM: L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S.E.
Roanoke, VA 24042-0041
FAX (540) 985-6103

Attachment: Fully executed Contract/Amendment – final distribution

Ancillary: _X_ NO; _____ YES – Intercarrier agreement – Railroad use only.

Contract No. NS 18492 Amendment No. N/A

Customer: Same

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions? Call Lynn Ferris at (540) 985–6119.

cc:

_____ Roanoke – Box 0037
_____ Roanoke – Box 0041 (C1)
_____ Roanoke – Box 0041 (R–5E-X-153226)
_____ NAM – Knoxville

**CONFIDENTIAL**

TRANSPORTATION CONTRACT
NS 18492

This Contract is made by and between OLIN CORPORATION (Customer), and Norfolk Southern Railway Company and Consolidated Subsidiaries (NS and/or Railroad), with business address at 110 Franklin Road, S. E., Roanoke, VA 24042-0041.

**WITNESSETH:**

In consideration of the premises and the mutual agreements herein contained, the parties agree as follows:

**SECTION 1 – TERM** If the transportation under this Contract is regulated under Subtitle IV, Part A of Title 49 U.S.C., this Contract was made pursuant to 49 U.S.C. §10709. If the transportation under this Contract has been deregulated under 49 U.S.C. §10502, the Contract shall also apply to such transportation.

| | |
|---|---|
| Effective Date: | February 1, 2002 |
| Expiration Date: | January 31, 2003 |
| Renewals | NO |

**SECTION 2 – TRANSPORTATION.** Railroad will transport "Commodity" from "Origin" to "Destination" via "Route" in accordance with the conditions described in Appendix A.

[redacted]

**SECTION 4 – LIQUIDATED DAMAGES** Should Customer not meet the volume requirement for a Contract Period, within 60 days it shall pay Railroad as liquidated damages for carload deficits $600 per deficit car.

**SECTION 5 – FORCE MAJEURE.** A party shall be excused from its contractual obligations to the extent it is prevented or delayed in such performance by any of the following conditions of force majeure: Act of God, act of the public enemy, authority of law, fire or explosion, lockout, strike, war, insurrection, derailment or any like causes beyond their control. The party declaring force majeure shall promptly notify the other parties when the force majeure begins, the nature of the force majeure and when the condition is terminated.

**SECTION 6 – TENDER OF SHIPMENT.** Except as may be otherwise provided in this Contract, Railroad's duty as to transportation shall be subject to the terms and conditions of the Uniform Straight Bill of Lading as published in Uniform Freight Classification UFC 6000–Series or successor publication, which are hereby incorporated into this Contract by reference. Alternative Uniform Bills of Lading may be used with the prior consent of Railroad.

Except to the extent inconsistent with any provisions herein, shipments made under the terms of this Contract are subject to all classifications, tariffs (for regulated commodities only), exempt circulars and circulars of other railroads participating in the transportation involved, government, AAR and carriers rules, regulations, and provisions, including, but not limited to NS Conditions of Carriage No. 1–B, and any supplements or reissues thereof, and such rules and regulations covering limitation of action, weighing, freight loss and damage claims, demurrage and switching, loading, car service and interchange that would apply if this Contract were not in effect.

In order to protect the confidentiality of this Contract and to permit computerized application, Customer shall be responsible for having the contract number shown on the bill of lading in connection with shipments made under the terms of this Contract. While failure to so show the contract number shall not negate any terms of the contract, such failure will constitute sufficient reason for Railroad's refusal to bill the contract charges to any party other than Customer without prior consent of Railroad.

**SECTION 7 – ACCESS.** Any party to this Contract may terminate the Contract as to the Origin and Destination affected and any volume guarantee applicable to such Origin and Destination shall be considered fulfilled if: 1) any railroad ceases service to, abandons or disposes of a line of railroad over which shipments covered by this Contract would move; 2) any railroad cancels a route or switching service necessary to complete a rail movement under this Contract; or 3) any railroad increases its charges for such switching service by more than 10% per annum.

**SECTION 8 – ASSIGNMENT.** No party hereto may assign this Contract, in whole or in part, without the prior written consent of the other parties. Any assignment of this Contract, without such consent in writing, shall be absolutely void, and at the option of the party or parties whose written consent should have been obtained, this Contract may be terminated. Subject to this Section, this Contract shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns.

**SECTION 9 – CREDIT.** Charges under this Contract must be paid by Customer to NS within fifteen (15) days from invoice date of freight bill unless otherwise agreed to in a separate agreement between the Customer and billing carrier.

**SECTION 10 – APPLICABLE LAW.** Virginia law shall govern the interpretation and performance of this Contract, except to the extent otherwise provided herein.

**SECTION 11 – NOTICES.** All notices and other communications under this Contract shall be in writing and directed to the following (or such other office as directed):

NS: Manager Contract Publications, Norfolk Southern Corporation, 110 Franklin Road, S.E., Roanoke, VA 24042-0041

Customer: Manager Transp. and Logistics, Olin Corporation, 490 Stuart Road, N.E., Cleveland, TN 37312

**SECTION 12 – CONFIDENTIALITY.** No party may disclose the terms of this contract to another party without the consent of the other party(ies) except: (1) as required by law or regulation; or (2) to an audit firm, so long as the disclosing party is responsible for insuring compliance by that firm.

**SECTION 13 – TERMINATION.** The provisions of this Contract shall apply through the Termination Date named in Section 1. In addition, if Section 1 provides for automatic renewals, this Contract shall automatically be extended for additional successive 12 month periods unless any party notifies the other parties at least 30 days prior to the end of a renewal Contract Period of its intention to terminate the Contract. If such notification is given, the Contract shall terminate at the end of the 12 month period in which notification was given.

**IN WITNESS WHEREOF,** the parties have caused this Contract to be executed by their duly authorized respective representatives.

| OLIN CORPORATION | NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES |
|---|---|
| By: Jack [signature] | By: Robin A. Gudotti |
| Title: Transportation Manager | Title: Product Manager |
| Date: 4/2/02 | Date: 4-10-02 |

(NS 18492-00)
C2A-LGF

Appendix A
to Contract NS 18492
Page 1 of 2

[redacted]

| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | [redacted] | | [redacted] | [redacted] | [redacted] | [redacted] |

**Note References:**

Note: 1

APPLIES ONLY IN TANK CARS.

NOT APPLICABLE AS PROPORTIONAL RATES WHEN CONSTRUCTING ALL RAIL COMBINATIONS.

RATES ARE NOT APPLICABLE ON SHIPMENTS ACCORDED TRANSIT PRIVILEGES, HOWEVER DIVERSION AND RECONSIGNMENT PRIVILEGES WILL BE PERMITTED.

WHEN A SHIPMENT HAS REACHED THE DESTINATION BUT IS NOT UNLOADED AND IS RETURNED VIA THE SAME ROUTE TO THE ORIGINAL SHIPPING POINT (FOR REASONS OTHER THAN CARRIERS ERROR), THE RETURN MOVEMENT WILL BE AT THE RATE PROVIDED IN THIS ITEM IN THE REVERSE DIRECTION APPLICABLE ON THE DATE THE SHIPMENT IS TENDERED FOR RETURN.

FREIGHT CHARGES ARE TO BE PREPAID. .

SHIPPER WILL SHIP, VIA ROUTE A MINIMUM OF 225 CARS OF COMMODITY FROM ORIGIN TO DESTINATION DURING A 12 MONTH PERIOD.

NO MILEAGE ALLOWANCES PAID TO CONSIGNOR, CONSIGNEE OR OWNER OF CAR.

IN THE EVENT THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL, AS PUBLISHED IN THE WALL STREET JOURNAL, EXCEEDS $28.00 PER BARREL FOR THIRTY (30) CONSECUTIVE DAYS, NORFOLK SOUTHERN RETAINS THE RIGHT TO APPLY A FUEL SURCHARGE TO THE FREIGHT CHARGE(S) CONTAINED IN THIS AUTHORITY IN EFFECT ON THE DATE THE FUEL SURCHARGE IS APPLIED, HEREAFTER REFERRED TO AS THE "BASE FREIGHT CHARGE(S)". IF THIS OPTION IS EXERCISED, THE FUEL SURCHARGE SHALL BE APPLIED ACCORDING TO THE FOLLOWING SCHEDULE:

| TEXAS INTERMEDIATE CRUDE OIL (PRICE PER BARREL) | CUMULATIVE FUEL SURCHARGE (PERCENTAGE) |
|---|---|
| $28 | 2% |
| $33 | 4% |
| $38 | 6% |
| $43 | 8% |
| EACH $5.00 PER BARREL INCREASE | AN ADDITIONAL 2% |

THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL MUST EXCEED A GIVEN BRACKET FOR THIRTY (30) CONSECUTIVE DAYS FOR THE SURCHARGE UNDER THAT BRACKET TO BE APPLICABLE. IF THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL CEASES TO BE AVAILABLE FROM THE WALL STREET JOURNAL OR SOME OTHER READILY ACCESSIBLE SOURCE, A MUTUALLY AGREEABLE SUBSTITUTE TO MEASURE WILL BE UTILIZED.

CUSTOMERS WILL RECEIVE NOTICE OF ANY FUEL SURCHARGE NOT LESS THAN TEN (10) DAYS PRIOR TO ITS APPLICATION. ANY FUEL SURCHARGE APPLIED TO THE FREIGHT CHARGE(S) IN THIS AUTHORITY WILL BE REMOVED OR REDUCED WHEN THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL REMAINS BELOW THE PRICE WHICH TRIGGERS A SPECIFIC SURCHARGE BRACKET FOR THIRTY (30) CONSECUTIVE DAYS. REDUCTIONS WILL BE MADE PROMPTLY AFTER THEY BECOME APPLICABLE. IN NO CASE WILL THE FREIGHT CHARGE(S) BE REDUCED BELOW THE "BASE FREIGHT CHARGE(S)" NOR WILL THE APPLICATION OR REMOVAL OF THE FUEL SURCHARGE BE RETROACTIVE.

NORFOLK SOUTHERN

## CONFIDENTIAL TRANSMITTAL

Date: April 11, 2002
File: C2A - NS 14100

TO: Mr. Jack Huh
Manager Transp. and Logistics
Chlor Alkali Products
Olin Corporation
490 Stuart Road, N.E.
Cleveland, TN 37312
FAX (423) 336-4819

FROM: Mrs. L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S.E.
Roanoke, VA 24042-0041
FAX (540) 985-6103

Attachment: Fully executed Contract/Amendment - final distribution

Ancillary: _X_ NO; _____ YES - Intercarrier agreement - Railroad use only.

Contract No. NS 14100 Amendment No. 9

Customer: Same

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions? Call **Lynn Ferris at (540) 985-6119.**

cc:

_____ Roanoke - Box 0037
_____ Roanoke - Box 0041 (C1)
_____ Roanoke - Box 0041 (R-5E-X-123931)
_____ NAM - Knoxville

CONFIDENTIAL

AMENDMENT NO. 9 TO
NS 14100

This Amendment is made by and between OLIN CORPORATION (Customer), and NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES (NS and/or Railroad), with business address at 110 Franklin Road, S. E., Roanoke, VA 24042-0041.

**WITNESSETH:**

WHEREAS, Customer and Railroad have **entered** [redacted]

WHEREAS, the parties desire to extend their Contract for an additional year and revise the rates;

NOW THEREFORE, the parties agree as follows:

1. Effective Date. This Amendment shall become effective on February 15, 2002, and shall remain in effect until NS 14100 expires or is terminated as provided therein.

2. Amendment of Contract. On and after the Effective Date hereof, the Contract is amended as follows:

(a) Delete Section 1 thereof and substitute in lieu thereof the following new Section 1:

**SECTION 1 - TERM.** If the transportation under this Contract is now regulated under Subtitle IV, Part A of Title 49 U.S.C., this Contract was made pursuant to 49 U.S.C. §10709 (formerly 49 U.S.C. §10713 and 49 C.F.R. §1313.2/1313.3/1313.3(c)). If the transportation under this Contract has been deregulated under 49 U.S.C. §10502 (formerly 49 U.S.C. §10505), the Contract shall also apply to such transportation.

| | |
|---|---|
| Effective Date: | February 15, 1994 (original Contract only) |
| Expiration Date: | February 14, 2003 |
| Renewals | NO |

(b) Delete Appendix A thereof and substitute in lieu thereof the attached new Appendix A.

3. Incorporation. Except as amended herein, all terms, conditions, and provisions of the Contract shall remain fully effective and in force among the parties hereto, and all such terms, conditions, and provisions are hereby incorporated by reference herein.

**IN WITNESS WHEREOF**, the parties have caused this Contract to be executed by their duly authorized respective representatives.

| OLIN CORPORATION | NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES |
|---|---|
| By: Jack [signature] | By: Robin A. Gnudotti |
| Title: Transportation Manager | Title: Product Manager |
| Date: 4/2/02 | Date: 4-10-02 |

(NS 14100-09)
C2A-LGF

Appendix A
to Contract NS 14100
Amendment No. 9
Page 1 of 2

[redacted]

| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | [redacted] | | [redacted] | [redacted] | [redacted] | [redacted] |

**Note References:**

Note: 1

APPLIES ONLY IN TANK CARS.

SUBJECT TO RULE 35 OF UFC, EXCEPT AS TO MINIMUM WEIGHT PROVISIONS.

NOT APPLICABLE AS PROPORTIONAL RATES WHEN CONSTRUCTING ALL RAIL COMBINATIONS.

WHEN A SHIPMENT HAS REACHED THE DESTINATION BUT IS NOT UNLOADED AND IS RETURNED VIA THE SAME ROUTE TO THE ORIGINAL SHIPPING POINT (FOR REASONS OTHER THAN CARRIERS ERROR), THE RETURN MOVEMENT WILL BE AT THE RATE PROVIDED IN THIS ITEM IN THE REVERSE DIRECTION APPLICABLE ON THE DATE THE SHIPMENT IS TENDERED FOR RETURN.

RECIPROCAL SWITCHING IF ANY AT ORIGIN AND DESTINATION WILL BE ABSORBED.

NO MILEAGE ALLOWANCES PAID TO CONSIGNOR, CONSIGNEE OR OWNER OF CAR.

IN THE EVENT THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL, AS PUBLISHED IN THE WALL STREET JOURNAL, EXCEEDS $28.00 PER BARREL FOR THIRTY (30) CONSECUTIVE DAYS, NORFOLK SOUTHERN RETAINS THE RIGHT TO APPLY A FUEL SURCHARGE TO THE FREIGHT CHARGE(S) CONTAINED IN THIS AUTHORITY IN EFFECT ON THE DATE THE FUEL SURCHARGE IS APPLIED, HEREAFTER REFERRED TO AS THE "BASE FREIGHT CHARGE(S)". IF THIS OPTION IS EXERCISED, THE FUEL SURCHARGE SHALL BE APPLIED ACCORDING TO THE FOLLOWING SCHEDULE:

| TEXAS INTERMEDIATE CRUDE OIL (PRICE PER BARREL) | CUMULATIVE FUEL SURCHARGE (PERCENTAGE) |
|---|---|
| $28 | 2% |
| $33 | 4% |
| $38 | 6% |
| $43 | 8% |
| EACH $5.00 PER BARREL INCREASE | AN ADDITIONAL 2% |

THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL MUST EXCEED A GIVEN BRACKET FOR THIRTY (30) CONSECUTIVE DAYS FOR THE SURCHARGE UNDER THAT BRACKET TO BE APPLICABLE. IF THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL CEASES TO BE AVAILABLE FROM THE WALL STREET JOURNAL OR SOME OTHER READILY ACCESSIBLE SOURCE, A MUTUALLY AGREEABLE SUBSTITUTE TO MEASURE WILL BE UTILIZED.

CUSTOMERS WILL RECEIVE NOTICE OF ANY FUEL SURCHARGE NOT LESS THAN TEN (10) DAYS PRIOR TO ITS APPLICATION. ANY FUEL SURCHARGE APPLIED TO THE FREIGHT CHARGE(S) IN THIS AUTHORITY WILL BE REMOVED OR REDUCED WHEN THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL REMAINS BELOW THE PRICE WHICH TRIGGERS A SPECIFIC SURCHARGE BRACKET FOR THIRTY (30) CONSECUTIVE DAYS. REDUCTIONS WILL BE MADE PROMPTLY AFTER THEY BECOME APPLICABLE. IN NO CASE WILL THE FREIGHT CHARGE(S) BE REDUCED BELOW THE "BASE FREIGHT CHARGE(S)" NOR WILL THE APPLICATION OR REMOVAL OF THE FUEL SURCHARGE BE RETROACTIVE.

# CSX Transportation
# &
# Olin Chlor Alkali Products

Meeting Agenda & Contract Proposal

February 24, 2004





Highly Confidential

# Meeting Agenda

- Safety briefing
- Introductions
- Opening presentation by CSX
- Contract renewal proposal by CSX
- Path forward

# Our business relationship has strengthened over the last 5 years.

- Prior to the split up of Conrail(CR), our business relationship was transactional.
- During the post CR contract negotiations, we discovered a mutual need for each other as solid business partners.
- In the past five years, the business relationship has become more of a partnership producing growth for both companies.

# Working together, we have found ways to add value to each of our businesses.

- CSXT has helped Olin reduce costs by converting joint line rates to more competitive single line rates out o [redacted]

- We have gained incremental volume while helping Olin reduce direct freight costs as well as risk, by converting hazardous commodity moves from the highways and waterways to rail.
  - [redacted]
  - [redacted]
  - [redacted]
  - [redacted]

- Olin has gained access to new geographic markets in both the Eastern and Western U. S.

# We believe that our success is based on similar corporate values and related goals.

- CSXT Core Values guide us in the way we conduct business.
  - It starts with the customer
  - People make the difference
  - Safety is a way of life
  - Fact-based
  - Right results, right way
- Olin's commitment to safety and environmental protection
  - Olin has won the CSXT Chemical Safety Excellence Award for two years.
- Our five-year contract has provided a basis for a strong business relationship and mutual benefit.

# And the 5 year contract provided the platform around which to grow.

- Stable prices allowed for more focus on additional cost take out.
- A mutually agreed upon basis for new business opportunities.
- Focus on new markets and market share gain for Olin in the chlor alkali market.
- New volume gain for CSXT to help support our larger rail system.

# Our belief is that Olin has gained substantial benefit from our contract

- A mutually agreed upon basis for freight rates.
- Single line access to new and existing markets.
- [redacted]

# Shifting gears, during the last five years, CSXT's costs have risen substantially.

- Oil prices have risen from $12/bbl to the mid $30's and OPEC has decided to cut production again.
- CSXT's insurance premium to handle hazardous materials has increased by $15 million per year since 9/11.
- The Rail Cost Adjustment Factor-Unadjusted (RCAF-U) has increase by more than 13.5%.
- Additional Safety and Security measures continue to drive other administrative costs up.

# Based on the evolving marketplace and increasing costs, we are asking for rate increases on Olin's business.

- [redacted]
- [redacted]
- [redacted]
- [redacted] to the Norfolk Southern Railroad.
- Lease track and intra-terminal switching at [redacted]

# Attached is our detailed proposal outlining our specific requirements.

- Rates
- Length/Years
- Escalator
- Other Transportation Particulars





Highly Confidential

# In closing, we would like to set some dates for a follow-up discussion.

- To review the proposal in more detail and discuss any specific rates that Olin may have questions about.
- To discuss and reach agreement on any non-rate issues.
- To finalize the platform that will be the basis by which our business and relationship will continue to grow during the next three years.

# Thank you for your business!

- We're looking forward to moving ahead with Olin.



[redacted] ...s on [redacted] ...

C÷98

[redacted]

Tox phase

[redacted]

[redacted]

[redacted]

Highly Confidential

# CSXT proposes the following contract terms

**Term of contract:** Three years

**Rate:** Proposed rates are for one year (6/1/2004 through 5/31/2005). Years two and three will be subject to [redacted]

↳ Not subject to fuel surcharge in [redacted]

[redacted] [redacted] (named in contract)

**Equipment:** Private Tank Cars

**Mileage:** All rates are at zero mileage

## The items listed on this page are part of the expiring contract and require adjustment and/or change.

Intra-Terminal switching contract at [redacted] The current CSXT 8100 I-T switch charge is [redacted] CSXT proposes to increase the [redacted] I-T switch charge for Olin to [redacted]

For Foote Yard or to DuPont or Niacet

The ~~Inter-~~Intra-Terminal switch charge from [redacted] has been [redacted] since March 2000 CSXT proposes to began [redacted] effective June 1, 2004, as part of the contract renewal

Customer running ½ rate due to bad business conditions. This increase wouldn't help him stay in business.

The per car factor for cars routed via [redacted] will expire with the current contract. CSXT's requirement for existing rates and new rates in line haul service with the NS will be determined on individual merit.

**Bahn, Steve CLEV**

**From:** Julian Alan [ajulian@nscorp com]
**Sent:** Monday, August 16, 2004 5:03 PM
**To:** 'Bahn, Steve CLEV'
**Cc:** Guidolti Robin; Guesman Deanna
**Subject:** SOU 541

Steve:

As we discussed earlier today, we are willing to offer a three year term on the renewal of SOU 541, with [redacted] to be applied on September 1st of 2005 and 2006.

Also, on the FSC question, we are willing to offer a [redacted] in lieu of the FSC. We are not in a position to convert to a different FSC version than the one in effect in the NS Conditions of Carriage.

I'll call to discuss specifics on the renewal this week. I also have asked our Contracts group to draft a general contract to serve as a replacement for SOU 541. I'll send it to you as soon as the draft is available.

*Will this include Sunbelt chlorine?*

*Hedge on oil?*

Alan Julian
Norfolk Southern
Director Sales - Chemicals
540-985-6761

The Information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this message and any attachments in error and that any review, dissemination, distribution, copying or alteration of this message and/or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by electronic mail, and delete the original message.

**NORFOLK SOUTHERN CORPORATION**

**CONFIDENTIAL TRANSMITTAL**

Date: July 30, 2001
File: C2A-REG-SOU-C-0541

TO: Mr. Jack Huh
Manager Transportation and Logistics
Chlor Alkali Products
Olin Corporation
490 Stuart Road, N. E.
Cleveland, TN 37312

FROM: Mrs. L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S. E.
Roanoke, VA 24042-0041
FAX (540) 985-6103

Attachment: Fully executed Contract/Amendment - final distribution.

Ancillary: _X_ NO; ___ YES - Intercarrier agreement - Railroad use only.

Contract No.: REG-SOU-C-0541 Amendment No. 52

Customer: Olin Corporation

___ Cancels ___ Replaces: N/A

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions or revisions? Call **Lynn Ferris at 540-985-6119 or contact via Internet e-mail at lgferris@nscorp.com**.

cc :

___ Mrs. Vickie Wolfenden, Transportation Rate Services, Olin Corporation, 490 Stuart Road, N. E., Cleveland, TN 37312 FAX (423) 336-4830

___ Roanoke - Box 0037
___ Roanoke - Box 0041 (C1)
___ Roanoke - Box 0041 (R-5E-X-166169)
___ NAM - Knoxville

**CONFIDENTIAL**

AMENDMENT NO. 52 TO
CONTRACT REG-SOU-C-0541

This Amendment is made by and between Olin Corporation (Customer), with business address at 490 Stuart Road, N. E., Cleveland, TN 37312 and Norfolk Southern Railway Company and Consolidated Subsidiaries (NS and/or Railroad), with business address at 110 Franklin Road, S. E., Roanoke, VA 24042-0041.

WITNESSETH:

WHEREAS, Customer and Railroad have entered a transportation [redacted] and

WHEREAS, the parties desire to extend their Contract through August 31, 2001; revise the rates; revise Section 3 in reference to contract period and volume guarantee; revise Section 4 in reference to liquidated damages; revise Section 6 in reference to tender of shipment of original contract; add an addendum to the Contract covering fuel surcharge; and add restriction governing proportional rates;

NOW THEREFORE, the parties agree as follows:

1. Effective Date. This Amendment shall become effective on October 16, 2000, and shall remain in effect until Contract REG-SOU-C-0541 expires or is terminated as provided therein.

2. Amendment of Contract. On and after the Effective Date hereof, the Contract is amended as follows:

(a) Delete Section 12 and substitute in lieu thereof the following new Section 12:

**SECTION 12.** The provisions of this Contract, subject to the conditions of 49 U.S.C. §10709, shall apply through August 31, 2001.

(b) Delete Section 3 and substitute in lieu thereof the following new Section 3:

**SECTION 3 - MINIMUM VOLUME.** "Contract Period" is defined as the period beginning with the Effective Date of this Contract through August 31, 2001; and, if amended, any 12-month period thereafter during the life of this Contract. Bill of lading date shall govern in determining the period in which a shipment is made.

Liquidated Damages

Volume Requirement

[redacted]

(c) [redacted]

[redacted]

(d) Delete Section 4 and substitute in lieu thereof the following new Section 4:

**SECTION 4 - LIQUIDATED DAMAGES.** Should Customer not meet the volume requirement for a Contract Period, within 60 days it shall pay Railroad as liquidated damages $600 per deficit car.

(e) Delete Section 6 and substitute in lieu thereof the following new Section 6:

**SECTION 6 - TENDER OF SHIPMENT.** Except as may be otherwise provided in this Contract, Railroad's duty as to transportation shall be subject to the terms and conditions of the Uniform Straight Bill of Lading as published in Uniform Freight Classification UFC 6000-Series or successor publication, which are hereby incorporated into this Contract by reference. Alternative Uniform Bills of Lading may be used with the prior consent of Railroad.

(REG-SOU-C-0541-52)

Except to the extent inconsistent with any provisions herein, shipments made under the terms of this Contract are subject to all classifications, tariffs (for regulated commodities only), exempt circulars and circulars of other railroads participating in the transportation involved, government, AAR and carriers rules, regulations, and provisions, including, but not limited to NS Conditions of Carriage No. 1-B, and any supplements or reissues thereof, and such rules and regulations covering limitation of action, weighing, freight loss and damage claims, demurrage and switching, loading, car service and interchange that would apply if this Contract were not in effect.

In order to protect the confidentiality of this Contract and to permit computerized application, Customer shall be responsible for having the contract number shown on the bill of lading in connection with shipments made under the terms of this Contract. While failure to so show the contract number shall not negate any terms of the contract, such failure will constitute sufficient reason for Railroad's refusal to bill the contract charges to any party other than Customer without prior consent of Railroad.

(f) Delete Appendices B thereof and substitute in lieu thereof the attached new appendices Appendices B and D. Delete Appendices A and C thereof and substitute in lieu thereof the attached new appendices Appendices A and C.

(g) The attached Addendum covering fuel surcharge is hereby added to and made a part of this Contract.

3. Incorporation. Except as amended herein, all terms, conditions, and provisions of the Contract shall remain fully effective and in force among the parties hereto, and all such terms, conditions, and provisions are hereby incorporated by reference herein.

IN WITNESS WHEREOF, the parties have caused this Contract Amendment to be executed by their duly authorized respective representatives as of the day and year first above written.

| OLIN CORPORATION | NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES |
|---|---|
| BY *Jack [signature]* | BY *D W Seale* |
| TITLE *Transportation Manager* | TITLE Senior Vice President Merchandise Marketing |
| DATE *1/19/01* | DATE *7/24/01* |

(REG-SOU-C-0541-52)
C2A-LGF

ADDENDUM TO
CONTRACT REG-SOU-C-0541
Amendment No. 52
Page 1 of 1

## FUEL SURCHARGE

In the event the price of West Texas Intermediate Crude Oil, as published in the Wall Street Journal, exceeds $28.00 per barrel for thirty (30) consecutive days, NS retains the right to apply a fuel surcharge to the freight charge(s) contained in this authority in effect on the date the fuel surcharge is applied, hereinafter referred to as the "Base Freight Charge(s)". If this option is exercised, the fuel surcharge shall be applied according to the following schedule:

| Texas Intermediate Crude Oil (Price per barrel) | Cumulative Fuel Surcharge (Percentage) |
|---|---|
| $28 | 2% |
| $33 | 4% |
| $38 | 6% |
| $43 | 8% |
| Each $5.00 per barrel increase thereafter | An additional 2% |

The price of West Texas Intermediate Crude Oil must exceed a given bracket for thirty (30) consecutive days for the surcharge under that bracket to be applicable. If the price of West Texas Intermediate Crude Oil ceases to be available from the Wall Street Journal or some other readily accessible source, a substitute to measure will be utilized.

Customers will receive notice of any fuel surcharge not less than ten (10) days prior to its application. Any fuel surcharge applied to the freight charge(s) in this authority will be removed or reduced when the price of West Texas Intermediate Crude Oil remains below the price which triggers a specific surcharge bracket for thirty (30) consecutive days. Reductions will be made promptly after they become applicable. In no case will the freight charge(s) be reduced below the Base Freight Charge(s) nor will the application or removal of the fuel surcharge be retroactive.



Highly Confidential

Appendix A to
Contract REG-SOU-C-0541
Amendment No. 52
Page 1 of 1

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] Privately-owned or leased tank cars

[redacted]

[redacted]

Escalation: NONE

Appendix B to
Contract REG-SOU-C-0541
Amendment No. 52
Page 1 of 6

Commodity: [redacted]

Equipment: Privately-owned or leased tank cars
Route: [redacted]

Origin: [redacted]

| [redacted] | [redacted] | [redacted] | |
|---|---|---|---|
| [redacted] | | --.-- | [redacted] |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | [redacted] | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | [redacted] | |
| | | --.-- | |
| | | [redacted] | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | [redacted] | |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |

Appendix B to
Contract REG-SOU-C-0541
Amendment No. 52
Page 2 of 6

**Origin:** [redacted]

[redacted]

| | | |
|---|---|---|
| [redacted] | --.-- | [redacted] |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | --.-- | |

Appendix B to
Contract REG-SOU-C-0541
Amendment No. 52
Page 3 of 6

**Origin:** [redacted]

[redacted]

| [redacted] | | [redacted] |
| --- | --- | --- |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | --.-- | |

**Origin:** [redacted]

[redacted]

**Origin:** [redacted]

Destination/
Rate/ [redacted]

[redacted]

--.--
--.--

[redacted]

--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--

[redacted]

Destination/
Rate/
Minimum Weight: [redacted]

[redacted]

--.--

Origin: [redacted]

[redacted]

[redacted]

Escalation: NONE

C2A-LGF

Appendix C to
Contract REG-SOU-C-0541
Amendment No. 52
Page 1 of 1

Commodity: [redacted]

[redacted]

Appendix D to
Contract REG-SOU-C-0541
Amendment No. 52
Page 1 of 3

**Commodity:** [redacted]

**Equipment:** [redacted]
**Route:** [redacted]

**Origin:** [redacted]

**Destination/**
**Rate/**
**Minimum Weight:**

| Destination | [redacted] | |
|---|---|---|
| [redacted] | --.-- | [redacted] |
| | [redacted] | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | [redacted] | |
| | --.-- | |
| | --.-- | |

Appendix D to
Contract REG-SOU-C-0541
Amendment No. 52
Page 2 of 3

**Origin:** [redacted]

[redacted]

| | | | |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] |
| | | --.-- | |
| | | --.-- | |
| | | --.-- | |
| | | [redacted] | |
| | | --.-- | --.-- |
| | | [redacted] | --.-- |
| | | --.-- | [redacted] |
| | | --.-- | |

Appendix D to
Contract REG-SOU-C-0541
Amendment No. 52
Page 3 of 3

**Origin:** [redacted]

[redacted]

--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--
--.--

Escalation: None

C2A-LGF

Highly Confidential

# OLIN SOU-C-541

## Attachment A

| STCC | ORIGIN | DES | | |
|---|---|---|---|---|
| | | | | |
| CAUSTIC SODA | | | | |

[redacted]

DA06616

OLI059701

Highly Confidential

DA06617

**OLIN SOU-C-541**

***Attachment A***

| STCC | ORIGIN | DEST | |
|---|---|---|---|
| [redacted] | | | |

OLI059702

Highly Confidential

## *OLIN SOU-C-541*

***Attachment A***

| STCC | ORIGIN | DES |
|---|---|---|
| [redacted] | | |

DA06618

OLI059703

Highly Confidential

### OLIN SOU-C-541
**Attachment A**

| STCC | ORIGIN | DES |
|---|---|---|

[redacted]

DA06619

OLI059704

CSX TRANSPORTATION

**PRICE LIST CSXT 43158.1**
**Ancillary charges, including fuel surcharge, apply in all instances.**

**PRICE SECTION**

**SWITCH DISTRICT**

**ORIGIN:** [redacted]

**ACTUAL CITY**

**DESTINATION:** [redacted]

STCC 2812220 – [redacted]), Liquid Liquid Caustic Sodium (Soda), Caustic (Sodium Hydroxide), (Sodium Hydrox-ide

Route: [redacted]

Price. [redacted]

Price is subject to increase.

Effective: June 1, 2000 Expiration: May 31, 2001

**SWITCH DISTRICT**

**ORIGIN:** [redacted]

**ACTUAL CITY**

**DESTINATION:** [redacted]

STCC 2812815 – [redacted]

Price. [redacted]

Price is subject to increase.

Effective: April 26, 2001 Expiration: April 25, 2002

May 10 2001

CSX TRANSPORTATION

**PRICE LIST CSXT 43158.1**
**Ancillary charges, including fuel surcharge, apply in all instances.**

**PRICE SECTION**

---

**SECTION CONDITIONS**

**Payer of Freight** OLIN CORP

- **No mileage allowance will be paid** on privately owned or leased equipment when moving under prices herein.
- Ancillary charges, including fuel surcharge, contained in CSXT Tariffs 8100 Series (merchandise)/8200 Series (coal), as of the date of shipment tender shall apply.
- Price applies on shipments moving in tank cars.
- Governing Tariffs: UFC 6000–Series, OPSL 6000–Series, CSXT 8100–Series.
- Price applies only in shipper owned or leased equipment.
- Price applies from origin to destination as stated and may not be used in combination with other prices.
- Freight charges are prepaid

## ALTERNATION OF PRICES

Prices in this publication will alternate with other prices, with similar price conditions, in this publication, unless otherwise specified herein.

CSX TRANSPORTATION

PRICE LIST CSXT 43158.1
Ancillary charges, including fuel surcharge,
apply in all instances.

PRICE SECTION

---

ACTUAL CITY

DESTINATION: [redacted]

STCC 2812220 [redacted]

Route: [redacted]

Price: [redacted]

Minimum Weight is [redacted]

Price is subject to increase.

Effective: May 1, 2001 Expiration April 30, 2002

---

ACTUAL CITY

DESTINATION: [redacted]

STCC 2812220 [redacted]

Route: [redacted]

Price: [redacted]

Minimum Weight is [redacted]

Price is subject to increase

Effective May 1, 2001 Expiration. April 30, 2002

---

SWITCH DISTRICT

DESTINATION: [redacted]

STCC 2812220 [redacted]

Route [redacted]

Price. [redacted]

Minimum Weight is [redacted]

Price is subject to increase

Effective: May 1, 2001 Expiration: April 30, 2002

May 10 2001

CSX
TRANSPORTATION

PRICE LIST CSXT 43158.1
Ancillary charges, including fuel surcharge, apply in all instances.

PRICE SECTION

SWITCH DISTRICT
DESTINATION: [redacted]
STCC 2812220 [redacted]
Route: [redacted]
Price: [redacted]
Minimum Weight is [redacted]
Price is subject to increase
Effective: May 1, 2001 Expiration: April 30, 2002

ACTUAL CITY
DESTINATION: [redacted]
STCC 2812815 [redacted]
Route: [redacted]
Price: [redacted]
Minimum Weight is [redacted]
Price is subject to increase.
Effective: November 3, 2000 Expiration: November 2, 2001

ACTUAL CITY
DESTINATION: [redacted]
STCC 2812220 [redacted]
Route: [redacted]
Price: [redacted]
Minimum Weight is [redacted]
Price is subject to increase.
Effective. January 9, 2001 Expiration January 8, 2002

CSX
TRANSPORTATION

PRICE LIST CSXT 43158.1
Ancillary charges, including fuel surcharge, apply in all instances.

PRICE SECTION

---

ACTUAL CITY

DESTINATION: [redacted]

STCC 2812815 – [redacted]

Route: [redacted]

Price: [redacted]

Minimum Weight is [redacted]

Price not subject to increase.

SHIPPING CONDITIONS:

- Price is not subject to increases.

Effective November 15, 2000 Expiration: May 31, 2004

---

ACTUAL CITY

DESTINATION: [redacted]

[redacted]

Route: [redacted]

Price: [redacted]

Minimum Weight is [redacted]

Price is subject to increase.

Effective: April 25, 2001 Expiration April 24, 2002

---

ACTUAL CITY

DESTINATION [redacted]

[redacted]

Route: [redacted]

Price: [redacted]

Minimum Weight is [redacted]

Price is subject to increase.

Effective. March 2, 2001 Expiration: March 1, 2002

CSX TRANSPORTATION

PRICE LIST CSXT 43158.1
Ancillary charges, including fuel surcharge, apply in all instances.

PRICE SECTION

ACTUAL CITY

DESTINATION: [redacted]

STCC 2818515 [redacted]

Route: [redacted]

Price [redacted]

Minimum Weight is [redacted]

Price is subject to increase

SHIPPING CONDITIONS

- All switching charges will be absorbed at destination

Effective: March 21, 2001 Expiration: March 20, 2002

---

ACTUAL CITY

DESTINATION: [redacted]

STCC 2812220 [redacted]

Route [redacted]

Price: [redacted]

Minimum Weight is [redacted]

Price is subject to increase

Effective February 27, 2001 Expiration. February 28, 2002

---

ACTUAL CITY

DESTINATION: [redacted]

STCC 2812815 [redacted]

Route [redacted]

Price [redacted]

Minimum Weight is [redacted]

Price is subject to increase.

Effective. January 22, 2001 Expiration: January 21, 2002

May 10 2001

CSX TRANSPORTATION

PRICE LIST CSXT 43158.1
Ancillary charges, including fuel surcharge, apply in all instances.

PRICE SECTION

ACTUAL CITY
DESTINATION: [redacted]

STCC 2812220 [redacted]

Route: [redacted]

Price. [redacted]

Minimum Weight is [redacted]

Price is subject to increase.

Effective: January 22, 2001 Expiration. January 21, 2002

SWITCH DISTRICT
ORIGIN: [redacted]

SWITCH DISTRICT
DESTINATION: [redacted]

STCC 2812815 – [redacted]

Route [redacted]

Price: [redacted]

Minimum Weight is [redacted]

Price is subject to increase

Effective. January 1, 2001 Expiration: December 31, 2001

ACTUAL CITY
DESTINATION: [redacted]

STCC 2812815 – [redacted]

Route [redacted]

Price: [redacted]

Minimum Weight is [redacted]

Price is subject to increase.

Effective: February 1, 2001 Expiration January 31, 2002

END OF PRICE SECTION

[redacted]

4. [redacted]

CSXT-82971
Page 2

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

- [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

HERE : [redacted]

Title: VP Logistics

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# Redacted in Full

# DA06632 – DA6634

Highly Confidential

[redacted]

E. Hecker 6-1-05 CSXT-82971

DA06635

OLI061127

# Redacted in Full

# DA06636 - DA06637

CSXT-82971 EFFECTIVE 6-1-05

[redacted]

# Redacted in Full

# DA06639 - DA06640

CN

Sales & Marketing

Canadian National
935 de la Gauchetière St. West
Montreal, Quebec, Canada
H3B 2M9
Facsimile: (514) 399-8016

Ventes et marketing

Canadien National
935, rue de la Gauchetière
ouest
Montréal, (Québec), Canada
H3B 2M9
Télécopieur: (514) 399-8016

January 14, 2002

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

IN IT ✓

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

| | | | |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

[redacted]



CN Contract No. 810159-AE

CN

Sales & Marketing

Canadian National
935 de la Gauchetière St. West
Montreal, Quebec, Canada
H3B 2M9
Facsimile: (514) 399-8016

Ventes et marketing

Canadien National
935, rue de la Gauchetière ouest
Montréal, (Québec), Canada
H3B 2M9
Télécopieur: (514) 399-8016

[redacted]

in IT

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

JJ Ruest

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

| [redacted] | [redacted] |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

| [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |

[redacted]

(G1) [redacted] Eff ective June 30, 2001.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

| [redacted] | [redacted] |
|---|---|
| | |

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted] [redacted]

[redacted] [redacted]

[redacted]

| Item 0000002 | Item 0000002 |
|---|---|

[redacted]

[redacted]

| | |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |



[redacted]

| | | |
|---|---|---|
| [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] |

[redacted]

| | |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

| | | |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

 [redacted]

[redacted]

Item #100000 Item #180000

[redacted]

[redacted]

[redacted]

[redacted]

| Item 8200000 | Item 8200000 |
|---|---|

[redacted]

[redacted]



[redacted]

[redacted]

**CANADIAN PACIFIC RAILWAY**

[redacted]

IN IT
6/12/01

# Redacted in Full

# DA06651 - DA06653

CN

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

CN

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

[redacted]

[redacted]

[redacted]

NORFOLK SOUTHERN

## CONFIDENTIAL TRANSMITTAL

Date:
File: C2A - NS 17996

TO: Mr. Jack Huh
Manager Transp. and Logistics
Chlor Alkali Products
Olin Corporation
490 Stuart Road, N.E.
Cleveland, TN 37312
FAX (423) 336-4819

FROM: L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S.E.
Roanoke, VA 24042-0041
FAX (540) 985-6103

Attachment: Fully executed Contract/Amendment - final distribution

Ancillary: ___ NO; _X_ YES - Intercarrier agreement - Railroad use only.

Contract No. NS 17996 Amendment No. 1

Customer: Same

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions? Call **Lynn Ferris at (540) 985-6119.**

cc:

_____ Ms. Cathy Nosworthy, Pricing Services, Canadian National Railroad Company, 935 de La Gauchetière Street West, Montreal, PQ H3B 2M9

_____ Roanoke - Box 0037
_____ Roanoke - Box 0041 (C1)
_____ Roanoke - Box 0041 (R-5E-X-25528)
_____ NAM - Knoxville

CONFIDENTIAL

AMENDMENT NO. 1 TO
NS 17996

This Amendment is made by and between OLIN CORPORATION (Customer); CANADIAN NATIONAL RAILROAD COMPANY (CN); and NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES (NS), with business address at 110 Franklin Road, S. E., Roanoke, VA 24042-0041. CN and NS may hereinafter be jointly referred to as "Railroad."

**WITNESSETH:**

WHEREAS, effective October 1, 2000, Illinois Central Railroad Company was taken over for operation by Canadian National Railroad Company;

WHEREAS, Customer and Railroad have entered [redacted] transportation of [redacted]

WHEREAS, the parties desire to extend th[redacted]ar; revise [redacted]d liquidated damages provision; and ad[redacted]

NOW THEREFORE, the parties agree as follows:

1. Effective Date. This Amendment shall become effective on January 1, 2001, and shall remain in effect until NS 17996 expires or is terminated as provided therein.

2. Amendment of Contract. On and after the Effective Date hereof, the Contract is amended as follows:

(a) Delete Section 1 thereof and substitute in lieu thereof the following new Section 1.

**SECTION 1 - TERM** If the transportation under this Contract is now regulated under Subtitle IV, Part A of Title 49 U.S.C., this Contract was made pursuant to 49 U.S.C. §10709 (formerly 49 U.S.C. §10713 and 49 C.F.R. §1313.2/1313.3/1313.3(c)). If the transportation under this Contract has been deregulated under 49 U.S.C. §10502 (formerly 49 U.S.C. §10505), the Contract shall also apply to such transportation.

| | |
|---|---|
| Effective Date: | January 1, 2000(original Contract only) |
| Expiration Date. | December 31, 2001 |
| Renewals | NO |

(b) Delete Appendix A thereof and substitute in lieu thereof the attached new Appendix A.

(c) Delete Section 4 thereof and substitute in lieu thereof the following new Section 4:

**SECTION 4 – LIQUIDATED DAMAGES.** Should Customer not meet the volume requirement for a Contract Period, within 60 days it shall pay Railroad as liquidated damages for carload deficits $600 per deficit car.

3. Incorporation. Except as amended herein, all terms, conditions, and provisions of the Contract shall remain fully effective and in force among the parties hereto, and all such terms, conditions, and provisions are hereby incorporated by reference herein.

**IN WITNESS WHEREOF**, the parties have caused this Contract to be executed by their duly authorized respective representatives.

OLIN CORPORATION

By: [signature]

Title: Transportation Manager

Date: 5/7/01

NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES

By: [signature]

Title: Product Manager

Date: 6-27-01

CANADIAN NATIONAL RAILROAD COMPANY

By: [signature]

Title: Vice-President Chemical and Petroleum

Date: 06/14/01

(NS 17996-01)
C2A-LGF

Appendix A
to Contract NS 17996
Amendment No. 1
Page 1 of 2

[redacted]

| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

<u>Note References:</u>

Note: 1

APPLIES ONLY IN TANK CARS.

NOT APPLICABLE AS PROPORTIONAL RATES WHEN CONSTRUCTING ALL RAIL COMBINATIONS.

WHEN A SHIPMENT HAS REACHED THE DESTINATION BUT IS NOT UNLOADED AND IS RETURNED VIA THE SAME ROUTE TO THE ORIGINAL SHIPPING POINT (FOR REASONS OTHER THAN CARRIERS ERROR), THE RETURN MOVEMENT WILL BE AT THE RATE PROVIDED IN THIS ITEM IN THE REVERSE DIRECTION APPLICABLE ON THE DATE THE SHIPMENT IS TENDERED FOR RETURN.

FREIGHT CHARGES ARE TO BE PREPAID.

[redacted]

TRANSIT WILL NOT APPLY, HOWEVER, DIVERSION AND RECONSIGNMENT WILL BE PERMITTED SUBJECT TO RAILROAD APPROVAL.

RECIPROCAL SWITCHING IF ANY AT ORIGIN AND DESTINATION WILL BE ABSORBED.

NO MILEAGE ALLOWANCES PAID TO CONSIGNOR, CONSIGNEE OR OWNER OF CAR.

IN THE EVENT THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL, AS PUBLISHED IN THE WALL STREET JOURNAL, EXCEEDS $28.00 PER BARREL FOR THIRTY (30) CONSECUTIVE DAYS, NORFOLK SOUTHERN RETAINS THE RIGHT TO APPLY A FUEL SURCHARGE TO THE FREIGHT CHARGE(S) CONTAINED IN THIS AUTHORITY IN EFFECT ON THE DATE THE FUEL SURCHARGE IS APPLIED, HEREAFTER REFERRED TO AS THE "BASE FREIGHT CHARGE(S)". IF THIS OPTION IS EXERCISED, THE FUEL SURCHARGE SHALL BE APPLIED ACCORDING TO THE FOLLOWING SCHEDULE:

4-26-01 ; 2:38PM;NS PUBLICATIONS ;540 981 4198 # 4/ 5

| TEXAS INTERMEDIATE CRUDE OIL (PRICE PER BARREL) | CUMULATIVE FUEL SURCHARGE (PERCENTAGE) |
|---|---|
| $28 | 2% |
| $33 | 4% |
| $38 | 6% |
| $43 | 8% |
| EACH $5.00 PER BARREL INCREASE | AN ADDITIONAL 2% |

THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL MUST EXCEED A GIVEN BRACKET FOR THIRTY (30) CONSECUTIVE DAYS FOR THE SURCHARGE UNDER THAT BRACKET TO BE APPLICABLE. IF THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL CEASES TO BE AVAILABLE FROM THE WALL STREET JOURNAL OR SOME OTHER READILY ACCESSIBLE SOURCE, A MUTUALLY AGREEABLE SUBSTITUTE TO MEASURE WILL BE UTILIZED.

CUSTOMERS WILL RECEIVE NOTICE OF ANY FUEL SURCHARGE NOT LESS THAN TEN (10) DAYS PRIOR TO ITS APPLICATION. ANY FUEL SURCHARGE APPLIED TO THE FREIGHT CHARGE(S) IN THIS AUTHORITY WILL BE REMOVED OR REDUCED WHEN THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL REMAINS BELOW THE PRICE WHICH TRIGGERS A SPECIFIC SURCHARGE BRACKET FOR THIRTY (30) CONSECUTIVE DAYS. REDUCTIONS WILL BE MADE PROMPTLY AFTER THEY BECOME APPLICABLE. IN NO CASE WILL THE FREIGHT CHARGE(S) BE REDUCED BELOW THE "BASE FREIGHT CHARGE(S)" NOR WILL THE APPLICATION OR REMOVAL OF THE FUEL SURCHARGE BE RETROACTIVE.

NORFOLK SOUTHERN

CONFIDENTIAL TRANSMITTAL

Date:
File: C2A - NS 17996

TO: Mr. Jack Huh
Manager Transp. and Logistics
Chlor Alkali Products
Olin Corporation
490 Stuart Road, N.E.
Cleveland, TN 37312
FAX (423) 336-4819

FROM: L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S.E.
Roanoke, VA 24042-0041
FAX (540) 985-6103

Attachment: Fully executed Contract/Amendment - final distribution

Ancillary: ___ NO; _X_ YES - Intercarrier agreement - Railroad use only.

Contract No. NS 17996 Amendment No. 1

Customer: Same

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions? Call **Lynn Ferris at (540) 985-6119.**

cc:

___ Ms. Cathy Nosworthy, Pricing Services, Canadian National Railroad Company, 935 de La Gauchetière Street West, Montreal, PQ H3B 2M9

___ Roanoke - Box 0037
___ Roanoke - Box 0041 (C1)
___ Roanoke - Box 0041 (R-5E-X-25528)
___ NAM - Knoxville

Olin
EXHIBIT NO. 3
DATE
MARILYN MORGAN
MORGAN REPORTING

CONFIDENTIAL

AMENDMENT NO. 1 TO
NS 17996

This Amendment is made by and between OLIN CORPORATION (Customer); CANADIAN NATIONAL RAILROAD COMPANY (CN); and NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES (NS), with business address at 110 Franklin Road, S. E., Roanoke, VA 24042-0041 CN and NS may hereinafter be jointly referred to as "Railroad."

**WITNESSETH:**

WHEREAS, effective October 1, 2000, Illinois Central Railroad Company was taken over for operation by Canadian National Railroad Company;

WHEREAS, Customer and Railroad have entered [redacted]

WHEREAS, the parties desire to extend [redacted]; revise [redacted] liquidated damages provision; and [redacted]

NOW THEREFORE, the parties agree as follows:

1. Effective Date. This Amendment shall become effective on January 1, 2001, and shall remain in effect until NS 17996 expires or is terminated as provided therein.

2. Amendment of Contract. On and after the Effective Date hereof, the Contract is amended as follows:

(a) Delete Section 1 thereof and substitute in lieu thereof the following new Section 1

**SECTION 1 - TERM.** If the transportation under this Contract is now regulated under Subtitle IV, Part A of Title 49 U.S.C., this Contract was made pursuant to 49 U.S.C. §10709 (formerly 49 U.S.C. §10713 and 49 C.F.R. §1313.2/1313.3/1313.3(c)). If the transportation under this Contract has been deregulated under 49 U.S.C. §10502 (formerly 49 U.S.C. §10505), the Contract shall also apply to such transportation.

| | |
|---|---|
| Effective Date: | January 1, 2000(original Contract only) |
| Expiration Date: | December 31, 2001 |
| Renewals | NO |

(b) Delete Appendix A thereof and substitute in lieu thereof the attached new Appendix A.

(c) Delete Section 4 thereof and substitute in lieu thereof the following new Section 4:

**SECTION 4 – LIQUIDATED DAMAGES.** Should Customer not meet the volume requirement for a Contract Period, within 60 days it shall pay Railroad as liquidated damages for carload deficits $600 per deficit car.

3. Incorporation. Except as amended herein, all terms, conditions, and provisions of the Contract shall remain fully effective and in force among the parties hereto, and all such terms, conditions, and provisions are hereby incorporated by reference herein.

**IN WITNESS WHEREOF**, the parties have caused this Contract to be executed by their duly authorized respective representatives.

OLIN CORPORATION

By: Jack Alich

Title: Transportation Manager

Date: 5/7/01

NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES

By: [signature]

Title: Product Manager

Date: 6-27-01

CANADIAN NATIONAL RAILROAD COMPANY

By: Jean-Jacques [signature]

Title: Vice-President, Chemical and Petroleum

Date: 06/14/01

(NS 17996-01)
C2A-LGF

Appendix A
to Contract NS 17996
Amendment No 1
Page 1 of 2

[redacted]

| ORIGIN | DESTINATION | RATE ($US) | MIN.WT. (lbs/car) | ROUTE | Begin Date | End Date | Notes |
|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Note References:**

Note: 1

APPLIES ONLY IN TANK CARS.

NOT APPLICABLE AS PROPORTIONAL RATES WHEN CONSTRUCTING ALL RAIL COMBINATIONS

WHEN A SHIPMENT HAS REACHED THE DESTINATION BUT IS NOT UNLOADED AND IS RETURNED VIA THE SAME ROUTE TO THE ORIGINAL SHIPPING POINT (FOR REASONS OTHER THAN CARRIERS ERROR), THE RETURN MOVEMENT WILL BE AT THE RATE PROVIDED IN THIS ITEM IN THE REVERSE DIRECTION APPLICABLE ON THE DATE THE SHIPMENT IS TENDERED FOR RETURN.

FR [redacted]

TRANSIT WILL NOT APPLY, HOWEVER, DIVERSION AND RECONSIGNMENT WILL BE PERMITTED SUBJECT TO RAILROAD APPROVAL.

RECIPROCAL SWITCHING IF ANY AT ORIGIN AND DESTINATION WILL BE ABSORBED

NO MILEAGE ALLOWANCES PAID TO CONSIGNOR, CONSIGNEE OR OWNER OF CAR

IN THE EVENT THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL, AS PUBLISHED IN THE WALL STREET JOURNAL, EXCEEDS $28.00 PER BARREL FOR THIRTY (30) CONSECUTIVE DAYS, NORFOLK SOUTHERN RETAINS THE RIGHT TO APPLY A FUEL SURCHARGE TO THE FREIGHT CHARGE(S) CONTAINED IN THIS AUTHORITY IN EFFECT ON THE DATE THE FUEL SURCHARGE IS APPLIED, HEREAFTER REFERRED TO AS THE "BASE FREIGHT CHARGE(S)". IF THIS OPTION IS EXERCISED, THE FUEL SURCHARGE SHALL BE APPLIED ACCORDING TO THE FOLLOWING SCHEDULE:

| TEXAS INTERMEDIATE CRUDE OIL (PRICE PER BARREL) | CUMULATIVE FUEL SURCHARGE (PERCENTAGE) |
|---|---|
| $28 | 2% |
| $33 | 4% |
| $38 | 6% |
| $43 | 8% |
| EACH $5.00 PER BARREL INCREASE | AN ADDITIONAL 2% |

THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL MUST EXCEED A GIVEN BRACKET FOR THIRTY (30) CONSECUTIVE DAYS FOR THE SURCHARGE UNDER THAT BRACKET TO BE APPLICABLE. IF THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL CEASES TO BE AVAILABLE FROM THE WALL STREET JOURNAL OR SOME OTHER READILY ACCESSIBLE SOURCE, A MUTUALLY AGREEABLE SUBSTITUTE TO MEASURE WILL BE UTILIZED.

CUSTOMERS WILL RECEIVE NOTICE OF ANY FUEL SURCHARGE NOT LESS THAN TEN (10) DAYS PRIOR TO ITS APPLICATION. ANY FUEL SURCHARGE APPLIED TO THE FREIGHT CHARGE(S) IN THIS AUTHORITY WILL BE REMOVED OR REDUCED WHEN THE PRICE OF WEST TEXAS INTERMEDIATE CRUDE OIL REMAINS BELOW THE PRICE WHICH TRIGGERS A SPECIFIC SURCHARGE BRACKET FOR THIRTY (30) CONSECUTIVE DAYS. REDUCTIONS WILL BE MADE PROMPTLY AFTER THEY BECOME APPLICABLE. IN NO CASE WILL THE FREIGHT CHARGE(S) BE REDUCED BELOW THE "BASE FREIGHT CHARGE(S)" NOR WILL THE APPLICATION OR REMOVAL OF THE FUEL SURCHARGE BE RETROACTIVE.

CONFIDENTIAL

AMENDMENT NO. 4 TO
CONTRACT REG-NS-C-17996

This Amendment is made by and between Olin Corporation (Customer), with business address at 490 Stuart Road, N.E., Cleveland, TN 37312; Canadian National Railroad Company (CN), with business address at 935 de La Gauchetière Street West, Montreal, PQ H3B 2M9; and Norfolk Southern Railway Company and Consolidated Subsidiaries (NS), with business address at 110 Franklin Road, S. E., Roanoke, VA 24042-0041 CN and NS are hereinafter jointly referred to as "Railroad."

WITNESSETH:

WHEREAS, Customer and Railroad have entered a transportation [redacted] numbered [redacted]

WHEREAS, the parties desire to extend their Contract through August 31, 2005 and revise the rates,

NOW THEREFORE, the parties agree as follows:

1. Effective Date. This Amendment shall become effective on July 1, 2004, and shall remain in effect until Contract REG-NS-C-17996 expires or is terminated as provided therein.

2. Amendment of Contract. On and after the Effective Date hereof, the Contract is amended as follows:

(a) Delete Section 1 thereof and substitute in lieu thereof the following new Section 1:

SECTION 1 - TERM This Contract, made pursuant to 49 U S.C §10709 shall apply as follows:

| | |
|---|---|
| Effective Date: | January 1, 2000 (original contract only) |
| Termination Date: | August 31, 2005 |
| Automatic Renewals: | NO |

(b) Delete Appendix A thereof and substitute in lieu thereof the attached new Appendix A.

3. Incorporation. Except as amended herein, all terms, conditions, and provisions of the Contract shall remain fully effective and in force among the parties hereto, and all such terms, conditions, and provisions are hereby incorporated by reference herein

**IN WITNESS WHEREOF**, the parties have caused this Contract to be executed by their duly authorized respective representatives.

**OLIN CORPORATION**

BY [signature]

TITLE Transportation Manager

DATE 10-1-05

**NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES**

BY [signature]

TITLE Director Marketing

DATE 4/18/06

**CANADIAN NATIONAL RAILROAD COMPANY**

BY [signature]

TITLE Director of Mktg

DATE 04/21/2005

(REG-NS-C-17996-03)
C2E-SSE

Appendix A to
Contract REG-NS-C-17996
Amendment No. 4
Page 1 of 2

Commodity: [redacted]

Origin: [redacted]

Destination: [redacted]

[redacted] [redacted]

[redacted]

Minimum Weight: [redacted]

Route: [redacted]

[redacted] [redacted]

Billing: **Prepaid**

Mileage Allowance: Shipments moving under the terms of this Contract are not subject to mileage allowance payments by Railroad. If Railroad inadvertently pays mileage allowances to the car owner, Railroad will seek reimbursement of overpayment from car owner. If Railroad is unable to collect the overpayment from the car owner, Customer agrees to reimburse Railroad for overpayment.

Restrictions. Transit will not apply, however, diversion and reconsignment will be permitted.

Volume Guarantee. None

Ancillary: YES - For internal Railroad use only

Escalation: NONE

| | |
|---|---|
| Rejected Shipments: | When a shipment of Commodity, moving under the terms of this contract, has reached Destination but is not unloaded and is returned for reasons other than Railroad's error, to the station at which the Commodity originated, via a route that is the reverse of the route over -which such shipments moved from such Origin point to Destination, the return movement will be subject to the Rate and Minimum Weight provided herein in effect on the date the shipment is tendered for return or to the rate normally applicable for such return movement, whichever is lower. Refused or returned shipments will not count towards fulfillment of Customer's annual volume commitment. |
| Billing: | Freight charges are to be prepaid. |
| Fuel Surcharge: | Subject to the fuel surcharge provisions published in NS Conditions of Carriage No. 1-series or successor publication referenced in this Contract. |

(C2E-SSE)

NS 17281

Contract

## NORFOLK SOUTHERN CORPORATION

## CONFIDENTIAL TRANSMITTAL

Date: July 25, 2006
File: C2A-REG-NS-C-17281

TO: Mr. Stephen A. Bahn
Manager Transportation and Logistics
Chlor Alkali Products
Olin Corporation
490 Stuart Road, N. E.
Cleveland, TN 37312-4819
FAX (423) 336-4819

FROM: Mrs. L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S. E.
Roanoke, VA 24042-0041
FAX (540) 981-4198

Attachment: Fully executed Contract/Amendment - final distribution.

Ancillary: _X_ NO; ___ YES - Intercarrier agreement - Railroad use only.

Contract No.: REG-NS-C-17281 Amendment No. 3

Customer: Same

___ Cancels ___ Replaces: N/A

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions or revisions? Call Lynn Ferris at 540-985-6119 or contact via Internet e-mail at lgferris@nscorp.com.

cc :

___ Roanoke - Box 0037
___ Roanoke - Box 0041 (R5E-X-17281)
___ Roanoke - Box 0041 (C1)

CONFIDENTIAL

AMENDMENT NO. 3 TO
CONTRACT REG-NS-C-17281

This Amendment is made by and between Olin Corporation (Customer), with business address at 490 Stuart Road, N. E., Cleveland, TN 37312; and Norfolk Southern Railway Company and Consolidated Subsidiaries (NS and/or Railroad), with business address at 110 Franklin Road, S E., Roanoke, VA 24042-0041

WITNESSETH

WHEREAS, Customer and Railroad have entered a transportation agreement [redacted]ded, covering the transportation of [redacted]

WHEREAS, the parties desire to extend their Contract through December 31, 2006; and revise rates;

NOW THEREFORE, the parties agree as follows

1 Effective Date. This Amendment shall become effective on January 1, 2006, and shall remain in effect until Contract REG-NS-C-17281 expires or is terminated as provided therein.

2 Amendment of Contract On and after the Effective Date hereof, the Contract is amended as follows.

(a) Delete Section 1 thereof and substitute in lieu thereof the following new Section 1:

SECTION 1 - TERM This Contract, made pursuant to 49 U.S.C. §10709, shall apply as follows:

| | |
|---|---|
| Effective Date: | June 1, 1999 (original Contract only) |
| Termination Date: | December 31, 2006 |
| Automatic Renewals | NO |

(b) Delete Appendix A thereof and substitute in lieu thereof the attached new Appendix A.

3. Incorporation Except as amended herein. all terms, conditions, and provisions of the Contract shall remain fully effective and in force among the parties hereto, and all such terms, conditions, and provisions are hereby incorporated by reference herein.

**IN WITNESS WHEREOF**, the parties have caused this Contract to be executed by their duly authorized respective representatives.

| OLIN CORPORATION | NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES |
|---|---|
| BY [signature] | BY [signature] |
| TITLE TR mgr Jr | TITLE Director Marketing |
| DATE 7-7-06 | DATE 7-24-06 |

C2A-lgf

Appendix A to
Contract REG-NS-C-17281
Amendment No. 3
Page 1 of 2

Commodity: [redacted]

Origin: [redacted]

Destination: [redacted]

Rate. [redacted]

Minimum Weight: [redacted]

Route. [redacted]

Equipment. Privately-owned or leased tank cars

Mileage Allowance: Customer and Railroad agree that Railroad shall not be liable for any Mileage Allowance payments on Equipment moving under the terms of this Contract. Customer will notify the car owner of leased Equipment regarding the Mileage Allowance restriction contained herein. If for any reason Railroad pays mileage allowances to the car owner, Railroad will seek reimbursement of overpayment from car owner If Railroad is unable to collect the overpayment from the car owner, Customer agrees to reimburse Railroad for overpayment.

Restrictions: Transit will not apply, however, diversion and reconsignment will be permitted

[redacted] [redacted]

Ancillary: NO

Fuel Surcharge. In the event the average monthly price of West Texas Intermediate Crude Oil exceeds $23.00 per barrel, calculated using the daily prices published in the Wall Street Journal, Norfolk Southern will assess a fuel surcharge on all linehaul freight charges (as set forth below, the "WTI Average Price").

The applicable fuel surcharge percentage shall be applied to each shipment having a bill of lading dated on or after the 1st day of the second calendar month following the calendar month of a given WTI Average Price Calculation. The fuel surcharge will change monthly per the table below:

| Calendar Month of WTI Average Price | Fuel Surcharge Applied | Calendar Month of WTI Average Price | Fuel Surcharge Applied | Calendar Month of WTI Average Price | Fuel Surcharge Applied |
|---|---|---|---|---|---|
| January | March 1 | May | July 1 | September | November 1 |
| February | April 1 | June | August 1 | October | December 1 |
| March | May 1 | July | September 1 | November | January 1 |
| April | June 1 | August | October 1 | December | February 1 |

The fuel surcharge will be 0.4% of the linehaul freight charge for every $1.00 per barrel, or portion thereof, by which the WTI Average Price exceeds $23.00. The WTI Average Price for a given calendar month will be determined by adding the daily West Texas Intermediate Crude Oil prices published in the Wall Street Journal during a calendar month, and dividing the result by the number of days so published in that given month. The result will be rounded to the nearest cent. If the Wall Street Journal ceases publication of the price of West Texas Intermediate Crude Oil, NS will employ a suitable substitute source of price or measure. The following schedule reflects the applicable fuel surcharge (FSC) within the WTI Average Price ranges noted below.

| WTI Average Price Per Barrel | FSC (%) | WTI Average Price Per Barrel | FSC (%) | WTI Average Price Per Barrel | FSC (%) |
|---|---|---|---|---|---|
| $23.00 and below | None | $31.01 - $32.00 | 3.6% | $42.01 - $43.00 | 8.0% |
| | | $32.01 - $33.00 | 4.0% | $43.01 - $44.00 | 8.4% |
| | | $33.01 - $34.00 | 4.4% | $44.01 - $45.00 | 8.8% |
| $23.01 - $24.00 | 0.4% | $34.01 - $35.00 | 4.8% | $45.01 - $46.00 | 9.2% |
| $24.01 - $25.00 | 0.8% | $35.01 - $36.00 | 5.2% | $46.01 - $47.00 | 9.6% |
| $25.01 - $26.00 | 1.2% | $36.01 - $37.00 | 5.6% | $47.01 - $48.00 | 10.0% |
| $26.01 - $27.00 | 1.6% | $37.01 - $38.00 | 6.0% | $48.01 - $49.00 | 10.4% |
| $27.01 - $28.00 | 2.0% | $38.01 - $39.00 | 6.4% | $49.01 - $50.00 | 10.8% |
| $28.01 - $29.00 | 2.4% | $39.01 - $40.00 | 6.8% | $50.00 and above | * |
| $29.01 - $30.00 | 2.8% | $40.01 - $41.00 | 7.2% | | |
| $30.01 - $31.00 | 3.2% | $41.01 - $42.00 | 7.6% | | |

* The fuel surcharge will be 10.8%, plus an additional 0.4% of the linehaul freight charge for every $1.00 per barrel, or portion thereof, by which the WTI Average Price Per Barrel exceeds $50.00.

CONFIDENTIAL

AMENDMENT NO. 10 TO
CONTRACT REG-SOU-C-0552

This Amendment is made by and between Olin Corporation (Customer), with business address at 490 Stuart Road, N. E., Cleveland, TN 37312; and Norfolk Southern Railway Company and Consolidated Subsidiaries (NS and/or Railroad), with business address at 110 Franklin Road, S E., Roanoke, VA 24042-0041

WITNESSETH.

WHEREAS, Customer and Railroad have entered a transportation agreement numbered Contract REG-SOU-C-0552, as amended, covering the transportation of [redacted]

WHEREAS, the parties desire to extend their Contract for a year and revise the rates,

NOW THEREFORE, the parties agree as follows·

1 Effective Date This Amendment shall become effective on April 1, 2006, and shall remain in effect until Contract REG-SOU-C-0552 expires or is terminated as provided therein

2 Amendment of Contract On and after the Effective Date hereof, the Contract is amended as follows·

(a) Delete Section 1 thereof and substitute in lieu thereof the following new Section 1·

**SECTION 1 - TERM AND RENEWALS.** This Contract shall apply from the Amendment Effective Date through the Termination Date shown below.

| | |
|---|---|
| Effective Date: | September 25, 1985 (original Contract only) |
| Termination Date: | March 31, 2007 |
| Automatic Renewals: | NO |

(b) Delete Appendix A thereof and substitute in lieu thereof the attached new Appendix A.

3. Incorporation. Except as amended herein, all terms, conditions, and provisions of the Contract shall remain fully effective and in force among the parties hereto, and all such terms, conditions, and provisions are hereby incorporated by reference herein.

**IN WITNESS WHEREOF**, the parties have caused this Contract to be executed by their duly authorized respective representatives.

| **OLIN CORPORATION** | **NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES** |
|---|---|
| BY [signature] | BY ______________ |
| TITLE VP - Supply Chain | TITLE ______________ |
| DATE 6/26/09 | DATE ______________ |

(REG-SOU-C-0552-10)
C2A-LGF

Appendix A to
Contract REG-SOU-C-0552
Amendment No 10
Page 1 of 2

Commodity: [redacted]

[redacted]

Equipment. Privately-owned or leased covered hopper cars

Mileage Allowance: Shipments moving under the terms of this Contract are not subject to mileage allowance payments by Railroad. If Railroad inadvertently pays mileage allowances to the car owner, Railroad will seek reimbursement of overpayment from car owner. If Railroad is unable to collect the overpayment from the car owner, Customer agrees to reimburse Railroad for overpayment

Restrictions. Transit will not apply, however, diversion and reconsignment will be permitted

[redacted]

Ancillary NO

Escalation. NONE

Fuel Surcharge In the event the average monthly price of West Texas Intermediate Crude Oil exceeds $23.00 per barrel, calculated using the daily prices published in the Wall Street Journal, Norfolk Southern will assess a fuel surcharge on all linehaul freight charges (as set forth below, the "WTI Average Price")

The applicable fuel surcharge percentage shall be applied to each shipment having a bill of lading dated on or after the 1st day of the second calendar month following the calendar month of a given WTI Average Price Calculation. The fuel surcharge will change monthly per the table below:

| Calendar Month of WTI Average Price | Fuel Surcharge Applied | Calendar Month of WTI Average Price | Fuel Surcharge Applied | Calendar Month of WTI Average Price | Fuel Surcharge Applied |
|---|---|---|---|---|---|
| January | March 1 | May | July 1 | September | November 1 |
| February | April 1 | June | August 1 | October | December 1 |
| March | May 1 | July | September 1 | November | January 1 |
| April | June 1 | August | October 1 | December | February 1 |

The fuel surcharge will be 0.4% of the linehaul freight charge for every $1.00 per barrel, or portion thereof, by which the WTI Average Price exceeds $23.00. The WTI Average Price for a given calendar month will be determined by adding the daily West Texas Intermediate Crude Oil prices published in the Wall Street Journal during a calendar month, and dividing the result by the number of days so published in that given month. The result will be rounded to the nearest cent. If the Wall Street Journal ceases publication of the price of West Texas Intermediate Crude Oil, NS will employ a suitable substitute source of price or measure. The following schedule reflects the applicable fuel surcharge (FSC) within the WTI Average Price ranges noted below.

| WTI Average Price Per Barrel | FSC (%) | WTI Average Price Per Barrel | FSC (%) | WTI Average Price Per Barrel | FSC (%) |
|---|---|---|---|---|---|
| $23.00 and below | None | $31.01 - $32.00 | 3.6% | $42.01 - $43.00 | 8.0% |
| | | $32.01 - $33.00 | 4.0% | $43.01 - $44.00 | 8.4% |
| | | $33.01 - $34.00 | 4.4% | $44.01 - $45.00 | 8.8% |
| $23.01 - $24.00 | 0.4% | $34.01 - $35.00 | 4.8% | $45.01 - $46.00 | 9.2% |
| $24.01 - $25.00 | 0.8% | $35.01 - $36.00 | 5.2% | $46.01 - $47.00 | 9.6% |
| $25.01 - $26.00 | 1.2% | $36.01 - $37.00 | 5.6% | $47.01 - $48.00 | 10.0% |
| $26.01 - $27.00 | 1.6% | $37.01 - $38.00 | 6.0% | $48.01 - $49.00 | 10.4% |
| $27.01 - $28.00 | 2.0% | $38.01 - $39.00 | 6.4% | $49.01 - $50.00 | 10.8% |
| $28.01 - $29.00 | 2.4% | $39.01 - $40.00 | 6.8% | $50.00 and above | * |
| $29.01 - $30.00 | 2.8% | $40.01 - $41.00 | 7.2% | | |
| $30.01 - $31.00 | 3.2% | $41.01 - $42.00 | 7.6% | | |

* The fuel surcharge will be 10.8%, plus an additional 0.4% of the linehaul freight charge for every $1.00 per barrel, or portion thereof, by which the WTI Average Price Per Barrel exceeds $50.00.



Highly Confidential

[redacted]



EXHIBIT
Olin 18
10-7-10 mc
PENGAD 800-631-6989

From: Steely, Kirk CLEV
Sent: Tuesday, August 08, 2006 1:55:12 PM
To: Bahn, Steve CLEV
Subject: Fuel Surcharge

This is the presentation we gave to Jon that precipitated a follow-up meeting.

RKS

# Chlor Alkali Division
# Logistics

***Understanding Fuel Surcharges***

Olin
CHLOR ALKALI
PRODUCTS

[redacted]

[redacted]

[redacted]

[redacted]



[redacted]



| | | |
|---|---|---|
| | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

Olin CHLOR ALKALI

## Fuel Surcharge Application

- *With very few exceptions, all carriers, for all shipping modes apply a fuel cost recovery methodology to their freight bills - referred to as the fuel surcharge*
- *Because of limited to no competition, carrier recovery of increasing fuel costs (fuel surcharge recovery) is practically 100% - that is the shippers pay for all increases in fuel costs*
- *Fuel surcharge costs are calculated in similar ways and are generally calculated as a percent of the base freight rate (line haul charge) and indexed to oil or diesel prices and calculated monthly or weekly*
- *Because of competition in ou[redacted]kets, Olin fuel surcharge recovery is estimated to be no more tha[redacted]*

Olin CHLOR ALKALI


[redacted]
Olin CHLOR ALKALI

# Fuel Surcharge History

| | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|
| Norfolk Southern | ▪WTI Crude threshold of $28/barrel<br>▪2% fuel surcharge applied for every $5/barrel change in WTI<br>▪30 consecutive days at new level to initiate adjustment (up or down) | ▪Unilaterally modified mid 2004<br>▪WTI Crude threshold of $23/barrel<br>▪0.4% fuel surcharge applied for every $1/barrel change in WTI (up or down)<br>▪Calculated monthly; two month lag in application | Same | Modified |
| CSX | ▪No fuel surcharge applied | ▪New Contract May 2004<br>▪ No specific fuel surcharge applied<br>▪[redacted] | Same | Same |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

Olin
CHLOR ALKALI

5

## *Norfolk Southern*

- *In June of 2006, Norfolk Southern unilaterally modified it's fuel surcharge methodology reflecting its belief that oil will not go below $64/barrel*
  - *Oil price floor becomes $64/barrel (versus current $23/barrel)*
  - *Multiplier drops from 0.4%/$/barrel to 0.3%/$/barrel for every dollar above $64*
  - *Effect would be for $70/barrel oil the fuel surcharge will drop from 18.8% to 1.8% of the line haul rate*
  - *The difference is being absorbed into the line haul, making the increase, in effect, permanent*
- *Should oil go below $64/barrel, Norfolk Southern retains the profits*

[redacted]

| | *Old* | *New* |
|---|---|---|
| *% Fuel Surcharge* | *18.8%* | *1 8%* |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

[redacted]

Olin

6

## *Fuel Surcharge Calculations*

| Carrier | Mode | Methodology | Index | Calculation FS% = |
|---|---|---|---|---|
| Norfolk Southern | Rail | % of Line Haul | West Texas Crude | (Index– $23) * 0.4<br>(Index– $64) * 0.3 |
| CSX | Rail | Imbedded in contract price adjustment | [redacted] | None |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

Olin

# Fuel Surcharge - History

- *Fuel surcharges were not a major issue until crude oil prices began to continuously exceed the threshold level in January of 2003*
- *Since August of 2004, fuel surcharges have been on a steady climb from 4% to the current 15-20% levels*










Olin
CHLOR ALKALI PRODUCTS

# Redacted in Full

# DA06689 - DA06690

[redacted]

| | | [redacted] | [redacted] | [redacted] | [redacted] | | | [redacted] |
|---|---|---|---|---|---|---|---|---|
| | | | | | [redacted] | [redacted] | [redacted] | |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | ☑ | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | ☑ | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | ☑ | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | ☑ | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | ☑ | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | ☑ | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | | ☑ | [redacted] |

Olin
CHLOR ALKALI

## Summary

- *Olin will continue to pay fuel surcharges to all carriers* [redacted]
  - *Fuel Surcharge exempt for contract* [redacted]
  - *CSX contract expires May 2007.* [redacted]
- *If oil prices continue to stay above $60/barrel, expect other rail carriers to follow Norfolk Southern's lead and reset the fuel surcharge floor*
- *Increasing the pass through of fuel surcharges is the best way to hedge oil prices*

# Intentionally Omitted

## DA06693-DA06694

From: Lecomte, Doug A MCIN
Sent: Monday, January 06, 2003 1:31:29 PM
To: Fowler, Alan CLEV; Harricharran, Shree CHAS; Osborne, Marvin CLEV; Rice, Tom CLEV; Casteel, Larry CLEV, Asbill, Steve CLEV; Ponsler, Timothy CLEV; Huh, Jack CLEV; Chirumbole, Frank CLEV; Rice, Mary CLEV
Cc: MCIN Customer Support Team, Mark Winstel (MarkWinstel), A. Mulkey (A.Mulkey) Gary Burrows (GaryBurrows)
Subject Fuel Surcharges by [redacted]

Below is a synopsis of the above subject for the [redacted] plant As you will note, these [redacted]

| JAN-MAR 2002 | APR-JUN 2002 | JUL-SEP 2002 | OCT-DEC 2002 | |
|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

(1) This takes each carriers total loads/destination X the rate for that destination to get a total cost/year by [redacted] We then divided the total cost/year by the total loads/year to get an average cost per load by carrier We then divided the average cost/load of each carrier by three to get the average of $418/load

(2) For the average price per gallon, we took the actual average cost/week for each quarter and divided that total by the weeks in the quarter. We secured our cost/gallon from the following web site: HYPERLINK "http://www.eia.doe gov/oil_gas/petroleum/special/gasoline_update/market_summa"www eia doe gov/oil_gas/petroleum/special/gasoline_update/market_summa...

(3) [redacted]

(4) We only counted the trucks we arrange for shipment, no customer pick up's

(5) The fuel surcharge is taken from the table in the [redacted]
There may be some fluctuation in these surcharges from one carrier to another, but this gives you a "ball park number" to view and understand

As you [redacted]

Doug

From: Davis, Amanda G CLEV
Sent: Thursday, July 06, 2006 8:04:41 AM
To: Rice, Tom CLEV
Cc: Fugate, Nancy CLEV
Subject: RE: Truck FSC

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

Thank You,

Amanda Davis

Central Logistics

Office: 423-336-4406

Fax 423-336-4819

Cell: 423-650-2115

---

From: Rice, Tom CLEV
Sent: Wednesday, July 05, 2006 4:41 PM
To: Fugate, Nancy CLEV; Davis, Amanda G CLEV
Subject: Truck FSC

What's the truck FSC for July?

Tom

Davis 9
EXHIBIT
JUL 0 8 2010
Danielle Grant

From: Henson, Rosa S MCIN
Sent: Friday, April 04, 2003 2:48:35 PM
To: Smith, Dee Brady MCIN; Davis, Amanda G MCIN; Fendley, Laura J MCIN, Adams, LaTrena S MCIN; Henson, Rosa S MCIN, Hillman, Terri MCIN; Lecomte, Doug A MCIN; McManus, Roxie C MCIN
Subject: FW: FUEL SURCHARGE

Please remember when you do [redacted]

It appears this is another case of "too much trouble to do anything about "

-----Original Message-----
From: Howard, John, Sr CLEV
Sent: Friday, April 04, 2003 1:47 PM
To: Henson, Rosa S MCIN
Subject: RE: FUEL SURCHARGE

Rosa,

I brought this up to Dennis some time ago, and his response was along the lines of there is nothing we can do about it without some major reconfiguration within SAP.

The fuel surcharge implementation has been difficult for a lot of us, but I am trying to keep an eye on the big picture, which is to say that the [redacted] Hopefully, the process can be refined over time, and we will have fewer discrepancies to field on the subject as time goes by If I learn of any new developments, I will let you know. Thanks for sharing the information below.

John

-----Original Message-----
From: Henson, Rosa S MCIN
Sent: Friday, April 04, 2003 11:44 AM
To: Howard, John, Sr CLEV; Phillips, Dennis CHAS
Cc: Smith, Dee Brady MCIN; Davis, Amanda G MCIN; Fendley, Laura J MCIN, Adams, LaTrena S MCIN, Henson, Rosa S MCIN, Hillman, Terri MCIN; Lecomte, Doug A MCIN; McManus, Roxie C MCIN
Subject FUEL SURCHARGE

[redacted] We might forget to delete them sometimes [redacted]

What do you think?

Thanks,

Rosa

[redacted]

[redacted]

[redacted]

EXHIBIT
PENGAD 800-631-6989
Olin 17
10-1-10 mc

From: Davis, Amanda G CLEV
Sent: Friday, May 04, 2007 7:44 AM
To: Osborne, Marvin CLEV; Cusick, Chris CLEV
Cc: Thorstenson, Jon CLEV; Gilley, Mike CLEV; Steely, Kirk CLEV; Bahn, Steve CLEV
Subject: RE: CSXT 82971 - [redacted]

Marvin,

Chris and I will be meeting at 8:00AM on Monday I am not sure that we would have time to review chlorine and caustic before the sales call begins at 9:00AM. We could plan on meeting together and if there are items that remain we could finish up Monday afternoon or after the sales call.

Let me know what works best for you

Thank You,
Amanda Davis
Central Logistics
Office: 423-336-4406
Fax: 423-336-4819
Cell 423-650-2115

----- Original Message -----
From: Osborne, Marvin CLEV
Sent: Friday, May 04, 2007 8:38 AM
To: Davis, Amanda G CLEV; Cusick, Chris CLEV
Cc: Thorstenson, Jon CLEV[redacted], Steve CLEV
Subject: Re. CSXT 82971 - [redacted]

Amanda,

Let's plan on Monday afternoon. Does it make sense for Chris and I to do it together? If so, please let me know what time, and we can do it at that time.

Marvin
------Original Message------

From: Davis, Amanda G CLEV
To: Chris Cusick
To: Marvin Osborne
Cc: Jon Thorstenson
Cc: Gilley, Mike CLEV
Cc: Steely, Kirk CLEV
Cc: Bahn, Steve CLEV
Sent: May 3, 2007 5·[redacted]
Subject: CSXT 82971 - [redacted]

The attached document contains [redacted] These rates have been on a 3 year contract and will be expiring 5/31/07. A mileage based fuel surcharge method will apply to all new rates The May 2007 fuel surcharge amount is $0 17 per mile (amount used in the attached).

[redacted]lied the [redacted] As you are aware, they have advised that [redacted]ommitted to the timing in which that will take place. At this time we are not sure if the [redacted] will be over the next year, 2 years, etc.

Please review the attached and provide feedback We are still awaiting offers on the joint line rates associated with this contract. We anticipate receiving those offers by the middle of next week.

Chris,
We are scheduled to meet on Monday to review the chlorine.

Marvin,
Please advise when you will be available to meet and review the caustic.

If you have any questions please let me know.

Thank You,
Amanda Davis
Central Logistics
Office: 423-336-4406
Fax: 423-336-4819
Cell: 423-650-2115

**Bahn, Steve CLEV**

**To:** Cusick, Chris CLEV; Smith, Wesley CLEV; Osborne, Marvin CLEV; Casteel, Larry CLEV; Yann, Peter CLEV; Pesce, Tom CLEV; Fugate, Nancy CHAS; Fowler, Alan CLEV; Casey, Sheila K CLEV; Fleming, Bruce CLEV, Kauffman, Keith CLEV; Deluca, Al CLEV; Magan, Phil CLEV; Foster, Allan CLEV; Ponsler, Timothy CLEV; Asbill, Steve CLEV; Steely, Kirk CHAS; Hill, Harry CLEV; Slowik, Ann CLEV; Spearman, Dereak CLEV; Irizarry, Rick CLEV; Brown, Peggy CLEV; Huh, Jack CLEV; Bolick, Gene CLEV; Rice, Tom CLEV; CHAS
**Cc:** Gilley, Mike CLEV
**Subject:** FW: Railroad Fuel Surcharge Status

[redacted]

-----Original Message-----
**From:** Bahn, Steve CLEV
**Sent:** Thursday, April 22, 2004 2:29 PM
**To:** CHAS; Cusick, Chris CLEV; Smith, Wesley CLEV; Osborne, Marvin CLEV; Casteel, Larry CLEV, Yann, Peter CLEV; Pesce, Tom CLEV; Fugate, Nancy CHAS; Fowler, Alan CLEV; Casey, Sheila K CLEV; Fleming, Bruce CLEV; Kauffman, Keith CLEV; Deluca, Al CLEV; Magan, Phil CLEV; Foster, Allan CLEV; Ponsler, Timothy CLEV; Asbill, Steve CLEV; Steely, Kirk CHAS; Hill, Harry CLEV; Slowik, Ann CLEV; Spearman, Dereak CLEV; Irizarry, Rick CLEV; Brown, Peggy CLEV; Huh, Jack CLEV; Bolick, Gene CLEV
**Cc:** Gilley, Mike CLEV
**Subject:** Railroad Fuel Surcharge Status

There have been some questions reguarding railroad fuel surcharges recently so I have summarized the current status below

- The CSX surcharge is increasing from 4.8% to 5.6% effective May 1st We currently are subject to fuel surcharge on only a few CSX moves but will feel the brunt of this increase after May 31, 2004 when our current Master Contract expires and the new contract is subject to the fuel surcharge.
- The "new" Norfolk-Southern surcharge program increases from 4 8% to 5.6% effective May 1st We are currrently subject to this surchage calculation only on those rates that have been renewed this year We will feel the brunt of it after August 31, 2004 when our current Master Contract expires
- The "existing" Norfolk-Southern surcharge program increased from 2% to 4% effective March 25th. All freight contracts still on the "existing" fuel surcharge program will switch over to the "new" surcharge calculation as they expire over the course of this year

To p [redacted]

Let me know if you have questions
Steve

**Bahn, Steve CLEV**

**To:** Rice, Tom CLEV; Cusick, Chris CHAS; Smith, Wesley CLEV; Osborne, Marvin CLEV; Casteel, Larry CLEV; Yann, Peter CLEV; Huh, Jack CLEV; Pesce, Tom CLEV; Fugate, Nancy CHAS; Fowler, Alan CLEV; Casey, Sheila K CLEV; Fleming, Bruce CLEV; Grimes, Jason N MCIN; Bennett, Sheila CLEV; Brown, Peggy CLEV; Kauffman, Keith CLEV; Deluca, Al CLEV; Magan, Phil CLEV; Foster, Allan CLEV; Slowik, Ann CLEV; Hill, Harry CLEV; Spearman, Dereak CLEV; Irizarry, Rick CLEV; Ponsler, Timothy CLEV; Asbill, Steve CLEV Add Peggy Brown

**Cc:** Steely, Kirk CHAS

**Subject:** Railroad Fuel Surcharge

Norfolk-Southern has adopted a new fuel surcharge program that will affect us beginning March 1, 2004. The new program is designed to more closely reflect fuel price fluctuations and also to allow more lead-time notice for changes in the surcharge. It will be very similar to the existing CSXT Railroad fuel surcharge program.

Under the new program, the surcharge will be based on the monthly average price of West Texas Intermediate Crude Oil (WTI). The fuel surcharge will be 0.4% of the line-haul freight rate for every $1.00 the average WTI price exceeds a $23.00/bbl threshold. The surcharge will lag the average WTI price by 2 months.

For example:
The average WTI price for January MTD is $33.78. If this average holds through the end of the month of January, the fuel surcharge for March will be ($33.78-$23.00)*(0.4%)=**4.4%**

This contrasts with the existing program which imposes a fuel surcharge of 2% for every $5.00 that the WTI exceeds a $28.00 $23.00/bbl threshold for 30 days-straight. The fuel surcharge under the existing program has been 2% since November 5, 2003. It likely would have increased to **4%** on February 6, 2004.

Although I have not done an indepth analysis of hypothetical conditions and obviously, depending on WTI pricing trends, the overall impact of changing to the new fuel surcharge program could be:

- We will be subject to some level of fuel surchage more often under the new program.
- The fuel surcharge will fluctuate more rapidly under the new program.
- We will pay more total fuel surcharge under the new program.

Contact me or visit the N-S website if you need more information.

Steve Bahn

# CANADIAN PACIFIC RAILWAY

Domestic Intermodal Services
Intermodal, Food & Consumer Sales Group
Suite 600, 1290 Central Parkway West
Mississauga ON L5C 4R3

---

**Date of Fax:** 30 May, 2002

**Customer Name:** Strates Shows Inc
**To the attention of:** Bill Alford

Thank you for your recent inquiry for freight rates from **Canadian Pacific Railway.** For your use and information we are pleased to confirm our quotation as documented below.

Please note that the attached rates are not published. You must contact the undersigned to accept the rates below and to arrange for publication. This advice must be given PRIOR to traffic moving.

**Customer Name:** Strates Shows Inc.
**Customer Telephone:** 407-855-3939
**Customer Fax:** 407-859-7758
**Customer Email:** Unknown

**CPR Reference No.:** RHE10795

**Effective Date:** 30 May, 2002
**Expiry Date:** 45 Days from Effective Date

**Shipper:** Strates Shows

**Commodity Name:** Carnival Train
**STC Code:** **CPR Comm Code:** 66

**Equipment:** Passenger Coaches and Flatcars

**Origin:** Philadephia PA
**Destination:** Binghamton NY

**Routing:** CPRS Direct (AAR Rule 11)

**Currency:** US Dollars

**Rate Info:**

1. Freight Charges of $13,000. for 10 passenger coaches (with crew of 8-10 for security reasons only) and 46 flatcars loaded with carnival equipment.
2. Special Train Charges of $15,386. for the 56 cars.

❖ Customer must confirm in writing that charges will be accepted.

2002

**Conditions:**

- Rates are exclusive of cartage, blocking, bracing, loading, unloading and all ancillary charges.
- Subject To Dimensional Clearance, if required.
- Rates may be subject to the Goods and Services Tax, and any other sales taxes.
- Rates are subject to availability of equipment unless otherwise specified.
- Unless otherwise indicated, rates are valid for a period of 45 days from the date of this quotation.
- All other ancillary services will be provided subject to the charges and conditions set forth in tariff CPRS 6100 series.
- Demurrage provisions are governed by tariff CPRS 6505.
- This document is governed by CPRS 6000 and UFC 6000.

**Credit:**

Credit must be established prior to movement, otherwise cash or a certified cheque is required. Credit arrangements can be made by contacting our accounting department at 514-395-6436 or 1-800-463-3280, or via fax at 514-395-7413.

**Equipment:**

Equipment can be ordered through the dispatch office of the Car Management Centre at 1-800-704-4000 or 204-947-8100 (or by fax at 1-800-704-3000).

**Service:**

To follow up on your shipments, please call our customer service team at 1-888-333-8111.

**Fuel Surcharge:**

In the event that the price of West Texas Intermediate crude oil, as published on the NYMEX (New York Mercantile Exchange). Averages $24.00 US or more, per barrel for a calendar quarter, CPR retains the right to apply a fuel surcharge to the line haul freight charge (s) referencing this authority. The fuel surcharge shall be applied according to the following schedule.

| SURCHARGE | WEST TEXAS INTERMEDIATE CRUDE OIL (PRICE PER BARREL $U.S.) |
|---|---|
| 2% | $24.00 - $26.99 |
| 4% | $27.00 - $31.99 |
| 6% | $32.00 - $36.99 |
| 8% | $37.00 - $41.99 |

Each $5.00 US increase thereafter = additional 2%

The average for each calendar quarter will be calculated within 15 days following the end of the quarter. And the above schedule will be used to determine the surcharge applicable.

Except as otherwise provided herein rates and charges are subject to the charges, conditions, rules and regulations specified in tariff CPRS 9001 series.

The above noted reference number is your personal quotation number, it applies specifically for the movement quoted herein and may be used to refer to the rate and conditions in this document at any time.

If you have any questions, concerns or suggestions, or if you wish to proceed with the shipping of this traffic, please do not hesitate to contact me at any time to discuss.

Sincerely,

**Robert Emerson**
Senior Account Manager

Tel: 1-877-225-5277 (or 905-803-3263)
Fax: 1-877-724-5929 (or 905-803-3310)
E-mail: Robert_Emerson@cpr.ca

# Redacted in Full

# DA06705 – DA06718

# CARNIVAL TRAIN MOVEMENT CONTRACT

THIS AGREEMENT is made this 25th day of April, 2003, by and between STRATES SHOWS INCORPORATED, a Delaware corporation, with its principal offices at 7120 Lake Ellenor Drive, Orlando, Florida 32809 (the "Carnival Company"), and CSX TRANSPORTATION, INC., a Virginia corporation, with its principal offices at 500 Water Street, Jacksonville, Florida 32202 ("CSXT").

## EXPLANATORY STATEMENT

A. The Carnival Company is the owner and operator of a traveling carnival show, including equipment and other paraphernalia.

B. The Carnival Company is also the owner of railcars (consisting of converted passenger coaches and flat cars), which are specially designed to transport its property, and its employees, agents and invitees, and their personal property.

C. The Carnival Company wishes to retain CSXT, and CSXT is willing, to transport, as a contract carrier only and not a common carrier, the Carnival Company's railcars, including its employees, agents and invitees and their personal property, and its equipment, on the terms and conditions set forth in this Agreement.

7 ?JU

NOW, THEREFORE, in consideration of the premises and the mutual covenants and obligations herein set forth, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, the parties agree as follows:

## 1. DEFINITIONS

The following capitalized terms shall have the meanings ascribed to them below:

"AAR" shall mean the Association of American Railroads.

"Agreement" shall mean this Agreement, as amended from time to time.

"Authorized Carnival Personnel" shall mean those particular Carnival Personnel authorized to ride the Carnival Train, as provided at Section 2.E.

"Carnival Company" shall mean States Shows Incorporated, a Delaware corporation.

"Carnival Personnel" shall mean the officers, directors, employees, agents, independent contractors, guests and invitees of the Carnival Company.

"Carnival Train" shall mean the unit train consisting only of the Railcars and the locomotives employed by CSXT in moving the Railcars.

"Carnival Trainmaster" shall mean the employee of the Carnival Company designated as such by the Carnival Company by written notice to CSXT.

"CSXT" shall mean CSX Transportation, Inc., a Virginia corporation.

"FRA" shall mean the Federal Railroad Administration.

"General Plan" shall mean the proposed schedule for the movement of the Carnival Train and the parking and switching of the Railcars, as set forth in Exhibit "A" to this Agreement, as amended from time to time.

"Railcars" shall mean the passenger coaches and flat cars which are described in Exhibit "B" to this Agreement, as modified or amended from time to time, to reflect substitutions or additions thereto.

2. <u>CSXT SERVICES</u>

A. <u>General Scope of Services</u> - Subject to the further terms and conditions of this Agreement, CSXT agrees to transport the Carnival Train, including its contents and, to the extent permitted by Section 2.E hereof, Authorized Carnival Personnel, over CSXT's railroad lines to and from various locations, as more particularly described by the General Plan. CSXT will provide the locomotive power, supplies and personnel necessary to such operations (including the initial switching and spotting of the Carnival Train for reloading and the reassembly of the Carnival Train as instructed by the Carnival Trainmaster for the movement of the Carnival Train to the next point designated by the General Plan). CSXT is providing its services under this Agreement as a contract carrier only and not as a common carrier.

B. <u>Unscheduled Movements</u> - Any movement of the Railcars in trains other than those described in the General Plan shall be made at CSXT's discretion, upon the request of the Carnival Company, at CSXT's applicable tariff rates.

C. <u>Notice of Train Movement</u> - The Carnival Company shall give CSXT written notice at least twenty (20) days prior to presenting Railcars to CSXT consistent with the General Plan. This notice shall be the Carnival Company's request for movements to be placed on the General Plan and amendments to the General Plan. CSXT and the Carnival Company shall agree on the schedule of movement and routing. The Carnival Company further agrees to give CSXT prior notice of the Carnival Company's performance times and locations.

D. Adherence to General Plan - The operation of the Carnival Train will be subject at all times to the operating and safety rules and procedures of CSXT. CSXT will operate and assign the priority of the Carnival Train at its sole discretion. The priority granted to the Carnival Train may vary by individual movement and will be assigned in such a manner as to minimize the interruption of CSXT's freight operations. CSXT and the Carnival Company will endeavor to follow the schedule, routes, and interchange points in accordance with the General Plan. However, Carnival Train recognizes and agrees that CSXT makes no representations, warranties or promises of any kind regarding its ability to adhere to the General Plan. CSXT will endeavor to provide sufficient prior notice of any problems which it anticipates in moving, unloading, loading or storing the Carnival Train and will endeavor, with the Carnival Company, to arrange for an alternate date, movement or site in the event of the cancellation or modification of the original date, movement or site listed in the General Plan. In no event shall CSXT be liable to the Carnival Company or any other person for damages (whether direct, indirect, consequential or incidental) arising from its failure or refusal to operate the Carnival Train in accordance with the General Plan or alternate arrangements, and the Carnival Company hereby releases CSXT from, and indemnifies CSXT against, all liability for such damages.

E. Authorized Carnival Personnel

1. Only Authorized Carnival Personnel shall have permission to ride the Carnival Train. The Carnival Company covenants and warrants that no other Carnival Personnel shall be present upon the Carnival Train except as permitted by this Section 2.E.

2. Authorized Carnival Personnel shall be limited to the train crew who are qualified to inspect, monitor, and correct the loading and security of the cargo. Alternatively, the Carnival Company may remove Authorized Carnival Personnel from the train such that CSXT will perform such functions.

3. Carnival Personnel who are at least 18 years old shall be allowed reasonable access to the Carnival Train while parked on CSXT's property. The Carnival Company agrees that Carnival Personnel shall comply with CSXT's applicable safety and operating rules and instructions, as in effect from time to time (a copy of which shall be provided to the Carnival Company by CSXT), while on CSXT's property. The Carnival Company assumes full responsibility for the conduct of Carnival Personnel while on CSXT's property. The Carnival Trainmaster shall take immediate corrective action with respect to Carnival Personnel whose conduct violates CSXT's applicable rules or instructions, or may jeopardize the safe or efficient operation of the Carnival Train or the safety or comfort of others on or about CSXT's property. If the Carnival Trainmaster fails to do so, CSXT shall have the right to take corrective action, including exclusion of any Carnival Personnel from its property or the Carnival Train. The Carnival Trainmaster (or his designated alternate) shall be available at all times while the Carnival Train is on CSXT's property.

F. Carnival Company Operations - The Carnival Company is solely responsible for the loading and unloading of its property, and Carnival Personnel on and off the Railcars, in compliance with all applicable standards and practices of AAR, except to the extent otherwise agreed by the parties in writing. The Carnival Company further agrees to comply, and to cause Carnival Personnel to comply, with all laws and regulations and CSXT's then existing operating roles and regulations applicable to the Carnival Company's operations on or about CSXT's property and the Carnival Train while on CSXT's property.

G. CSXT Personnel - Personnel provided by CSXT for the movement of the Carnival Train shall be qualified over the territory and for the type of service which they are to provide in connection with the operation of the Carnival Train.

3. **EQUIPMENT**

A. Provision of Railcars - The Carnival Company is the owner of, and shall provide, the Railcars, for use in accordance with the General Plan.

B. Equipment Standards - All Railcars shall meet the standards of FRA and AAR. CSXT will reject any Railcars which do not meet FRA or AAR standards. The Carnival Train shall not include cars or equipment which exceed the width, height, weight or other restrictions or capacities of the subject trackage as published by AAR in Railway Line Clearances, and shall not contain cars or equipment which require speed restrictions or other movement restrictions below the maximum authorized freight speeds as provided by CSXT's then existing operating rules and regulations.

C. Equipment Inspection - Prior to movement of the Railcars, CSXT may, but is not required to, perform a mechanical inspection of the Railcars, except to the extent otherwise required by applicable law. In the event that any Railcars fail to meet the then current AAR or FRA standards applicable to such equipment, in the opinion of CSXT, CSXT may elect either to reject such Railcars (which may then be required by the Carnival Company) or to make necessary repairs to the Railcars, at the Carnival Company's sole expense under the direction of the Carnival Company Trainmaster and with personnel qualified to work on the type of equipment to be repaired. If the Carnival Company elects to repair the rejected Railcars, it may request the assistance of CSXT to effect such repairs at the Carnival Company's expense and CSXT shall endeavor to provide such assistance in a timely manner. If CSXT elects to repair the Railcars, it may do so, at the Carnival Company's expense, without prior notice to, or the consent of the Carnival Company, provided that the total estimated expense involved in making such repairs to any and/or all Railcars will not exceed $500.00. If CSXT estimates the expense involved will exceed $500.00, CSXT shall promptly notify the Carnival Company of any such repairs made and the estimated costs thereof, and CSXT will not perform such repairs unless the Carnival Company requests such repairs to be made and agrees to assume and pay all costs involved in such repairs. If CSXT determines that any Railcars are unsuitable for further movement, the Carnival Company agrees to make prompt arrangements for the repair of those Railcars by a third party contractor.

D. Storage of Railcars - CSXT will allow the parking of the Railcars and associated vehicles on its property to the extent of available parking capacity and tracks only in accordance with the General Plan and will allow access to such Railcars by Carnival Personnel over its property. The Carnival Company otherwise shall make all necessary arrangements to remove, or cause to be removed, the Railcars from tracks and property of CSXT.

E. Equipment Roster - The Carnival Company shall maintain, at its sole expense, with AAR, a complete and up to date consist roster of all railroad equipment owned by the Carnival Company, which roster shall be accessible in AAR U.M.L.E.R. File (Universal Machine Language Equipment Register). CSXT shall provide, at the Carnival Company's request and sole expense, reasonable technical support or other assistance needed by the Carnival Company to maintain this U.M.L.E.R. file.

## 4. EMERGENCY TRANSPORTATION

In case of emergency whereby the operation of the Carnival Train is disrupted enroute due to equipment failure, conditions caused by work stoppage, track blockage, natural disasters, or other uncontrollable events, CSXT will endeavor to provide, but is not obligated to furnish, emergency service for the completion the trip. CSXT will notify Carnival Company of the emergency disruption of service and to the extent possible, coordinate the emergency transportation service with the Carnival Company. The Carnival Company shall reimburse CSXT for all expenses incurred by CSXT related to provision of emergency service and alternate transportation. Reimbursable expenses for alternate transportation shall be calculated on an actual mileage movement basis in accordance with Section 5, from the actual origin to the actual destination via the route used, and shall not be charged for the uncompleted portion of the disrupted movement.

## 5. COMPENSATION

A. Rates - In consideration for services provided in accordance with the General Plan, the Carnival Company shall pay to CSXT the sums set forth in Exhibit A for each movement. These charges include switching to make up the Carnival Train and doubling, switching and parking of the Carnival Train.

B. CSXT will not absorb the reciprocal switch change of any railroad. Carnival Company recognizes and agrees that it will need to make all necessary arrangements with any other railroad for the billing and payment of these charges or with CSXT for the full reimbursement of all actual reciprocal switch charges incurred due to these movements.

C. Payment - CSXT will issue, at the end of each calendar quarter, a statement of charges pursuant to Section 5.A, and all other amounts due under this Agreement. Payment of such charges shall be due within thirty (30) days of the Carnival Company's receipt of such statement. Delinquent payments shall bear interest at the rate of 12% per annum.

D. Payment Disputes - In the event that the Carnival Company shall disagree with a quarterly statement which has been submitted in accordance with Section 5.B, the Carnival Company shall promptly notify and provide to CSXT a written statement setting forth the nature and basis for the disagreement and amount, if any, which are in dispute. Notwithstanding such disagreement, the actual billing will be paid by the Carnival Company as provided for in Section 5.C. The parties will confer promptly for the purpose of resolving any disputed amounts.

6. **INDEMNIFICATION**

Carnival Company acknowledges CSXT's concerns regarding liability exposure associated with the operation of the Carnival Train, and further recognizes that CSXT would not have agreed to enter into this Agreement absent the express and unqualified commitment of Carnival Company to (a) assume all risks which would not have occurred but for the operation and presence of the Carnival Train on CSXT railroad facilities, (b) to fully and completely indemnify CSXT as provided herein, and (c) to procure and maintain certain insurance protection also as described herein. Therefore, and in accordance with this broad statement of the intention of the parties, the Carnival Company hereby covenants and agrees to be responsible for and to protect, defend, release, indemnify and hold harmless CSXT, its affiliates, and their respective officers, agents, and employees, from and against any and all liability, loss, costs, damage, expense, demands, and judgments, including, without limitation, punitive damages, and including attorneys' fees, for or in connection with injury or death of any person or persons whomsoever (including but not limited to, officers, agents, independent contractors, employees, guests and invitees of CSXT and/or the Carnival Company), and the destruction or damage to any property (including, but not limited to the property of CSXT and/or the Carnival Company and their officers, agents, independent contractors, employees, guests or invitees), caused by, arising out of, attributed to, resulting from, exacerbated by, or in any way connected with, the operation of the Carnival Train, or its presence on the rail facilities of CSXT, including, without limitation, the movement, switching, exhibition or storage of the Carnival Train, the presence or activities of Carnival Personnel or the Carnival Company on, about, or in the vicinity of tracks or property of CSXT, its affiliates, or any other railroad, without regard to whether such injury, death, or property damage is caused by or attributable to, the fault, misconduct, failure, or negligence (regardless of its character or degree) of CSXT, its affiliates or their respective officers, agents, independent contractors, employees, guests or invitees. For the purposes of this Agreement, CSXT's affiliates shall include, without limitation, CSXT's parent corporation and the direct and indirect subsidiaries of CSXT and its parent corporation.

7. **INSURANCE**

The Carnival Company shall procure and maintain, during the term of this Agreement, Commercial General Liability Insurance which specifically covers liability imposed on the Carnival Company by law or assumed under this Agreement pursuant to Section 6 of this Agreement. Such insurance shall provide for available limits of not less than twenty-five million dollars ($25,000,000.00) per occurrence for:

Bodily Injury Liability
Property Damage Liability
Advertising Liability
Personal Injury
Pollution Clean-up Expenses
Passenger Liability
Employer's Liability (FELA)

This insurance shall name the Carnival Company and CSXT as Named Insured(s). In addition to CSXT's insured status the policy or policies shall provide contractual liability insurance covering all liabilities assumed by the Carnival Company under this Agreement. The policy shall include a Severability of Interests clause stating that, except for limits of liability, the policy applies separately to each insured against whom claim is made or suit is brought. The Insurer shall provide CSXT with a certified copy of such insurance policy or policies for CSXT's written approval prior to the initiation of any services by CSXT under this Agreement which policy shall be endorsed to provide for at least thirty (30) days prior notice of cancellation of the policy or change in coverage. The required certified copy must be sent to:

Risk Management Department
CSX Corporation
500 Water Street (J907)
Jacksonville, Florida 32202
ATTN: James G. Thibodeaux, Manager

The furnishing of said insurance shall not be deemed a limitation of the liability of the Carnival Company as provided in this Agreement. The Carnival Company shall also carry a statutory Workers' Compensation for all states involved in this service, and an Employer's Liability Policy with not less than $1,000,000 in limits. The Carnival Company shall cause its Liability, Property, and Workers' Compensation insurers to waive subrogation against CSXT, its affiliates, their respective officers, and/or employees by endorsement.

8. **SECURITY**

When the Carnival Train is in transit, CSXT will provide only its normal and usual security measures as it ordinarily provides for ordinary freight shipments. In no event shall CSXT be liable to any person by reason of not having provided security to the Carnival Train or Carnival Personnel. The Carnival Company shall be responsible for and shall furnish or cause to be furnished, all other security measures deemed necessary by the Carnival Company or CSXT to protect, secure, and provide for the safety of the Railcars and Carnival Personnel, including the proper packing, crating and handling of any and all supplies. The Carnival Company shall also be responsible for all security and crowd control during any performance of the Carnival Company on CSXT's premises.

9. **TERM AND TERMINATION**

A. This Agreement shall be effective as of 12:01 a.m. Eastern Standard Time (hereinafter, "EST") April 25, 2003, and shall remain in full force and effect until 11:59 p.m. EST, April 24, 2005 unless earlier terminated either by CSXT, for any reason, by delivery of fifteen (15) days prior written notice to the Carnival Company or as otherwise provided by Section 9.B of this Agreement.

B. Notwithstanding any other provision in this Agreement, this Agreement shall be subject to immediate termination, prior to the expiration of its term, by CSXT by delivery of notice to the Carnival Company upon the occurrence of any of the following:

1. The failure of the Carnival Company to pay when due any amounts billed pursuant to Section 5 and such failure continues for a period of ten (10) days after delivery of written notice by CSXT to the Carnival Company; or

2. The breach of any of the covenants or terms of Sections 2, 6, or 7 of this Agreement by the Carnival Company; or

3. The failure of the Carnival Company to perform or observe any other terms or conditions of the Agreement and such failure continues for more than thirty (30) days after delivery of written notice by CSXT to the Carnival Company.

C. Upon termination or expiration of this Agreement, the Carnival Company shall make all necessary arrangements to remove or cause to be removed, the Railcars and all of its other property from the tracks and property of CSXT. The Carnival Company's obligation to pay amount accrued pursuant to Section 5 and to indemnify CSXT under this Agreement shall survive the expiration or termination of this Agreement for any reason.

10. **FORCE MAJEURE**

CSXT will be excused from performance of any of its obligations hereunder where such nonperformance is occasioned by any event beyond its reasonable control, which shall include, without limitation, any order, rule, or regulation of any federal, state, or local government body, agent or instrumentality, work stoppage growing out of labor disputes, including strikes or a lock-out, accident, natural disaster or operating delays.

## 11. NO VIOLATION OF LABOR AGREEMENTS

Nothing contained in this Agreement will require CSXT to perform any service or to take any action which would violate any term or condition of any then current collective bargaining agreement between CSXT and any organization representing any of CSXT's employees or applicable to CSXT by reason of operation of law. CSXT will not be in default of this Agreement or any covenant or obligation contained herein by reason of any act or failure to act which is required by the terms of such agreements.

## 12. NOTICES AND LIAISON OFFICERS

A. Any request, demand, authorization, direction, notice, consent, waiver, or other document provided or permitted by this Agreement to be made upon, given or furnished to, or filed with one party by the other party will be in writing and will be delivered by hand or by mail, postage prepaid, to the addresses set forth below or such other address as a party may designate by delivery of prior notice to the other party:

If to CSXT:

Shayne Martin
CSX Transportation, Inc.
500 Water Street
Jacksonville, Florida 32202
Attention: Commodity Director – J887
With a copy to: Senior Vice President and General Counsel

If to the Carnival Company:

Strates Shows Incorporated
7120 Lake Ellenor Drive
Orlando, Florida 32809
Attention: W. E. Alford - Transportation Coordinator

B. Upon execution of this Agreement, the Carnival Company and CSXT shall each promptly designate one of its officials as liaison officer. Each party shall notify the other in writing of the name and effective date of appointment of the liaison officer and of any successor liaison officer.

13. ASSIGNMENT

This Agreement or any rights thereunder shall not be assigned or transferred by the Carnival Company without obtaining the prior written consent of CSXT.

14. GOVERNING LAW VENUE AND JURISDICTION

A. This Agreement shall be governed by and construed under the Laws of the State of Florida.

B. The parties consent to venue in Jacksonville, Florida, and to the jurisdiction of the United States District Court for the Middle District of Florida for all litigation which may be brought with respect to the terms of any transactions and operations contemplated by this Agreement.

15. CONFIDENTIALITY

The parties shall not disclose the terms of this Agreement to any third party except: (1) as required by law, regulation or this Agreement; (2) to a parent, subsidiary or affiliated company; or (3) to such other persons who need to know the contents of the Agreement for the purpose of assisting either of the parties in complying with the terms of this Agreement or auditing operations hereunder, such as insurance brokers, outside audit firms and other consultants, provided that the disclosing party shall ensure compliance by such third parties with the terms of this Section. If any party violates this Section, the adversely affected party may cancel this Agreement immediately upon notice to the other party.

16. SEVERABILITY

In the event that any provision of this Agreement is ruled unconstitutional, void or unenforceable by a body having competent jurisdiction, the remaining portions of the Agreement will remain in full force and effect. However, any party may cancel the Agreement upon written notice to the other party within thirty (30) days of the date of such ruling.

**17. AMENDMENTS**

This Agreement may be amended only by written instrument executed by both parties.

**18. ENTIRE AGREEMENT**

This Agreement constitutes the parties' entire agreement as to its subject matter and supersedes all prior or contemporaneous oral or written agreements and understandings.

**IN WITNESS WHEREOF** each party hereto has caused this Agreement to be executed on its behalf by a duly authorized officer as of the day and year first above written.

**STRATES SHOWS INCORPORATED**

By: James E Strates

Title: Pres.

Date: 5/16/03

**CSX TRANSPORTATION, INC.**

By: [signature]

Title: VP - Merchandise Transportation

Date: 5-16-03

## Amendment A

| Date | Move Segment | Quote |
|---|---|---|
| February 24, 2003 | Taft, FL - Sanford, FL | $6,300 |
| March 11, 2003 | Sanford, FL - West Palm Beach, FL | $14,500 |
| March 24, 2003 | West Palm Beach, FL - Taft, FL | $13,300 |
| May 03, 2003 | Taft, FL - N. Charleston, SC | $28,300 |
| May 19, 2003 | N. Charleston, SC - Gaithersburg, MD | $36,500 |
| June 02, 2003 | Gaithersburg, MD - Pittsfield, MA | $29,000 |
| July 08, 2003 | Pittsfield, MA - Selkirk, NY | $4,200 |
| August 19, 2003 | Buffalo, NY - Syracuse, NY | $11,200 |
| September 03, 2003 | Syracuse, NY - Buffalo, NY | $11,200 |
| November 15, 2003 | Jacksonville, FL - Pompano, FL | $26,000 |
| December 02, 2003 | Pompano, FL - Taft, FL | $16,000 |
| | Total | $196,500 |

***Note:***
***The Pompano, Florida movements assume that unloading/loading of the Carnival Train will occur on weekends to avoid interference with commuter train operating windows on the South Florida Rail Corridor.***

**EXHIBIT B**

**CONSIST**

**STRATES SHOWS INCORPORATED**

**Ten (10) Coaches**

**Forty (49) Flats**

**TOTAL: 59 cars**

** TOTAL PAGE.14 **

# STRATES SHOWS CONTRACT

THIS AGREEMENT is made this 15th day of May, 2005, by and between STRATES SHOWS INCORPORATED, a Delaware corporation, with its principal offices at10600 Orange Ave, Orlando, Florida 32824-7753 (the "Carnival Company"), and CSX TRANSPORTATION, INC, with its Corporate Headquarters at 500 Water Street, Jacksonville, Florida 32202 ("CSXT").

## EXPLANATORY STATEMENT

A. The Carnival Company is the owner and operator of a traveling carnival show, including equipment and other paraphernalia.

B. The Carnival Company is also the owner of railcars (consisting of converted passenger coaches and flat cars), which are specially designed to transport its property, and its employees, agents and invitees, and their personal property.

C. The Carnival Company wishes to retain CSXT, and CSXT is willing, to transport, as a contract carrier only and not a common carrier, the Carnival Company's railcars, including its employees, agents and invitees and their personal property, and its equipment, on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and obligations herein set forth, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, the parties agree as follows:

## 1. DEFINITIONS

The following capitalized terms shall have the meanings ascribed to them below:

"AAR" shall mean the Association of American Railroads.

"Agreement" shall mean this Agreement, as amended from time to time.

"Authorized Carnival Personnel" shall mean those particular Carnival Personnel authorized to ride the Carnival Train, as provided at Section 2.E.

"Carnival Company" shall mean Strates Shows Incorporated, a Delaware corporation.

"Carnival Personnel" shall mean the officers, directors, employees, agents, independent contractors, guests and invitees of the Carnival Company.

"Carnival Train" shall mean the unit train consisting only of the Railcars and the locomotives employed by CSXT in moving the Railcars.

"Carnival Trainmaster" shall mean the employee of the Carnival Company designated as such by the Carnival Company by written notice to CSXT.

"CSXT" shall mean CSX Transportation, Inc., a Virginia corporation.

"FRA" shall mean the Federal Railroad Administration.

"General Plan" shall mean the proposed schedule for the movement of the Carnival Train and the parking and switching of the Railcars, as set forth in Exhibit "A" to this Agreement, as amended from time to time.

"Railcars" shall mean the passenger coaches and flat cars which are described in Exhibit "B" to this Agreement, as modified or amended from time to time, to reflect substitutions or additions thereto.

2. CSXT SERVICES

A. General Scope of Services - Subject to the further terms and conditions of this Agreement, CSXT agrees to transport the Carnival Train, including its contents and, to the extent permitted by Section 2.E hereof, Authorized Carnival Personnel, over CSXT's railroad lines to and from various locations, as more particularly described by the General Plan. CSXT will provide the locomotive power, supplies and personnel necessary to such operations (including the initial switching and spotting of the Carnival Train for reloading and the reassembly of the Carnival Train as instructed by the Carnival Trainmaster for the movement of the Carnival Train to the next point designated by the General Plan). CSXT is providing its services under this Agreement as a contract carrier only and not as a common carrier.

B. Unscheduled Movements - Any movement of the Railcars in trains other than those described in the General Plan shall be made at CSXT's discretion, upon the request of the Carnival Company, at CSXT's applicable tariff rates.

C. Notice of Train Movement - The Carnival Company shall give CSXT written notice at least twenty (20) days prior to presenting Railcars to CSXT consistent with the General Plan. This notice shall be the Carnival Company's request for movements to be placed on the General Plan and amendments to the General Plan. CSXT and the Carnival Company shall agree on the schedule of movement and routing. The Carnival Company further agrees to give CSXT prior notice of the Carnival Company's performance times and locations.

MAY 18 2005 17:13

D. Adherence to General Plan - The operation of the Carnival Train will be subject at all times to the operating and safety rules and procedures of CSXT. CSXT will operate and assign the priority of the Carnival Train at its sole discretion. The priority granted to the Carnival Train may vary by individual movement and will be assigned in such a manner as to minimize the interruption of CSXT's freight operations. CSXT and the Carnival Company will endeavor to follow the schedule, routes, and interchange points in accordance with the General Plan. However, Carnival Train recognizes and agrees that CSXT makes no representations, warranties or promises of any kind regarding its ability to adhere to the General Plan. CSXT will endeavor to provide sufficient prior notice of any problems which it anticipates in moving, unloading, loading or storing the Carnival Train and will endeavor, with the Carnival Company, to arrange for an alternate date, movement or site in the event of the cancellation or modification of the original date, movement or site listed in the General Plan. In no event shall CSXT be liable to the Carnival Company or any other person for damages (whether direct, indirect, consequential or incidental) arising from its failure or refusal to operate the Carnival Train in accordance with the General Plan or alternate arrangements, and the Carnival Company hereby releases CSXT from, and indemnifies CSXT against, all liability for such damages.

E. Authorized Carnival Personnel

1. Only Authorized Carnival Personnel shall have permission to ride the Carnival Train. The Carnival Company covenants and warrants that no other Carnival Personnel shall be present upon the Carnival Train except as permitted by this Section 2.E.

2. Authorized Carnival Personnel shall be limited to the train crew who are qualified to inspect, monitor, and correct the loading and security of the cargo. Alternatively, the Carnival Company may remove Authorized Carnival Personnel from the train such that CSXT will perform such functions.

3. Carnival Personnel who are at least 18 years old shall be allowed reasonable access to the Carnival Train while parked on CSXT's property. The Carnival Company agrees that Carnival Personnel shall comply with CSXT's applicable safety and operating rules and instructions, as in effect from time to time (a copy of which shall be provided to the Carnival Company by CSXT), while on CSXT's property. The Carnival Company assumes full responsibility for the conduct of Carnival Personnel while on CSXT's property. The Carnival Trainmaster shall take immediate corrective action with respect to Carnival Personnel whose conduct violates CSXT's applicable rules or instructions, or may jeopardize the safe or efficient operation of the Carnival Train or the safety or comfort of others on or about CSXT's property. If the Carnival Trainmaster fails to do so, CSXT shall have the right to take corrective action, including exclusion of any Carnival Personnel from its property or the Carnival Train. The Carnival Trainmaster (or his designated alternate) shall be available at all times while the Carnival Train is on CSXT's property.

F. Carnival Company Operations - The Carnival Company is solely responsible for the loading and unloading of its property, and Carnival Personnel on and off the Railcars, in compliance with all applicable standards and practices of AAR, except to the extent otherwise agreed by the parties in writing. The Carnival Company further agrees to comply, and to cause Carnival Personnel to comply, with all laws and regulations and CSXT's then existing operating rules and regulations applicable to the Carnival Company's operations on or about CSXT's property and the Carnival Train while on CSXT's property.

G. CSXT Personnel - Personnel provided by CSXT for the movement of the Carnival Train shall be qualified over the territory and for the type of service which they are to provide in connection with the operation of the Carnival Train.

## 3. EQUIPMENT

A. Provision of Railcars - The Carnival Company is the owner of, and shall provide, the Railcars, for use in accordance with the General Plan.

B. Equipment Standards - All Railcars shall meet the standards of FRA and AAR. CSXT will reject any Railcars which do not meet FRA or AAR standards. The Carnival Train shall not include cars or equipment which exceed the width, height, weight or other restrictions or capacities of the subject trackage as published by AAR in Railway Line Clearances, and shall not contain cars or equipment which require speed restrictions or other movement restrictions below the maximum authorized freight speeds as provided by CSXT's then existing operating rules and regulations.

C. Equipment Inspection - Prior to movement of the Railcars, CSXT may, but is not required to, perform a mechanical inspection of the Railcars, except to the extent otherwise required by applicable law. In the event that any Railcars fail to meet the then current AAR or FRA standards applicable to such equipment, in the opinion of CSXT, CSXT may elect either to reject such Railcars (which may then be required by the Carnival Company) or to make necessary repairs to the Railcars, at the Carnival Company's sole expense under the direction of the Carnival Company Trainmaster and with personnel qualified to work on the type of equipment to be repaired. If the Carnival Company elects to repair the rejected Railcars, it may request the assistance of CSXT to effect such repairs at the Carnival Company's expense and CSXT shall endeavor to provide such assistance in a timely manner. If CSXT elects to repair the Railcars, it may do so, at the Carnival Company's expense, without prior notice to, or the consent of the Carnival Company, provided that the total estimated expense involved in making such repairs to any and/or all Railcars will not exceed $500.00. If CSXT estimates the expense involved will exceed $500.00, CSXT shall promptly notify the Carnival Company of any such repairs made and the estimated costs thereof, and CSXT will not perform such repairs unless the Carnival Company requests such repairs to be made and agrees to assume and pay all costs involved in such repairs. If CSXT determines that any Railcars are unsuitable for further movement, the Carnival Company agrees to make prompt arrangements for the repair of those Railcars by a third party contractor.

D. Storage of Railcars - CSXT will allow the parking of the Railcars and associated vehicles on its property to the extent of available parking capacity and tracks only in accordance with the General Plan and will allow access to such Railcars by Carnival Personnel over its property. The Carnival Company otherwise shall make all necessary arrangements to remove, or cause to be removed, the Railcars from tracks and property of CSXT.

E. Equipment Roster - The Carnival Company shall maintain, at its sole expense, with AAR, a complete and up to date consist roster of all equipment owned by the Carnival Company, which roster shall be accessible in AAR U.M.L.E.R. File (Universal Machine Language Equipment Register). CSXT shall provide, at the Carnival Company's request and sole expense, reasonable technical support or other assistance needed by the Carnival Company to maintain this U.M.L.E.R. file.

## 4. EMERGENCY TRANSPORTATION

In case of emergency whereby the operation of the Carnival Train is disrupted enroute due to equipment failure, conditions caused by work stoppage, track blockage, natural disasters, or other uncontrollable events, CSXT will endeavor to provide, but is not obligated to furnish, emergency service for the completion the trip. CSXT will notify Carnival Company of the emergency disruption of service and to the extent possible, coordinate the emergency transportation service with the Carnival Company. The Carnival Company shall reimburse CSXT for all expenses incurred by CSXT related to provision of emergency service and alternate transportation. Reimbursable expenses for alternate transportation shall be calculated on an actual mileage movement basis in accordance with Section 5, from the actual origin to the actual destination via the route used, and shall not be charged for the uncompleted portion of the disrupted movement.

## 5. COMPENSATION

A. Rates - In consideration for services provided in accordance with the General Plan, the Carnival Company shall pay to CSXT the sums set forth in Exhibit A for each movement. These charges include switching to make up the Carnival Train and doubling, switching and parking of the Carnival Train.

B. CSXT will not absorb the reciprocal switch charge of any railroad. Carnival Company recognizes and agrees that it will need to make all necessary arrangements with any other railroad for the billing and payment of these charges or with CSXT for the full reimbursement of all actual reciprocal switch charges incurred due to these movements.

C. Payment - CSXT will issue, at the end of each move, a statement of charges pursuant to Section 5.A, and all other amounts due under this Agreement. Payment of such charges shall be due within fifteen (15) days of the Carnival Company's receipt of such statement. Delinquent payments shall bear interest at the rate of 12% per annum.

D. Payment Disputes - In the event that the Carnival Company shall disagree with a quarterly statement which has been submitted in accordance with Section 5.B, the Carnival Company shall promptly notify and provide to CSXT a written statement setting forth the nature and basis for the disagreement and amount, if any, which are in dispute. Notwithstanding such disagreement, the actual billing will be paid by the Carnival Company as provided for in Section 5.C. The parties will confer promptly for the purpose of resolving any disputed amounts.

## 6. INDEMNIFICATION

Carnival Company acknowledges CSXT's concerns regarding liability exposure associated with the operation of the Carnival Train, and further recognizes that CSXT would not have agreed to enter into this Agreement absent the express and unqualified commitment of Carnival Company to (a) assume all risks which would not have occurred but for the operation and presence of the Carnival Train on CSXT railroad facilities, (b) to fully and completely indemnify CSXT as provided herein, and (c) to procure and maintain certain insurance protection also as described herein. Therefore, and in accordance with this broad statement of the intention of the parties, the Carnival Company hereby covenants and agrees to be responsible for and to protect, defend, release, indemnify and hold harmless CSXT, its affiliates, and their respective officers, agents, and employees, from and against any and all liability, loss, costs, damage, expense, demands, and judgments, including, without limitation, punitive damages, and including attorneys' fees, for or in connection with injury or death of any person or persons whomsoever (including but not limited to, officers, agents, independent contractors, employees, guests and invitees of CSXT and/or the Carnival Company), and the destruction or damage to any property (including, but not limited to the property of CSXT and/or the Carnival Company and their officers, agents, independent contractors, employees, guests or invitees), caused by, arising out of, attributed to, resulting from, exacerbated by, or in any way connected with, the operation of the Carnival Train, or its presence on the rail facilities of CSXT, including, without limitation, the movement, switching, exhibition or storage of the Carnival Train, the presence or activities of Carnival Personnel or the Carnival Company on, about, or in the vicinity of tracks or property of CSXT, its affiliates, or any other railroad, without regard to whether such injury, death, or property damage is caused by or attributable to, the fault, misconduct, failure, or negligence (regardless of its character or degree) of CSXT, its affiliates or their respective officers, agents, independent contractors, employees, guests or invitees. For the purposes of this Agreement, CSXT's affiliates shall include, without limitation, CSXT's parent corporation and the direct and indirect subsidiaries of CSXT and its parent corporation.

## 7. INSURANCE

The Carnival Company shall procure and maintain, during the term of this Agreement, Commercial General Liability Insurance which specifically covers liability imposed on the Carnival Company by law or assumed under this Agreement pursuant to Section 6 of this Agreement. Such insurance shall provide for available limits of not less than Thirty – Five million dollars ($35,000,000) per occurrence for:

Bodily Injury Liability
Property Damage Liability including damage to CSXT property and property in it's care, custody and control (i.e. rolling stock)
Advertising Liability
Personal Injury
Pollution Clean-up Expenses
Passenger Liability
Employer's Liability (FELA)
Terrorism Coverage

This insurance shall name the Carnival Company named insured and CSXT as an additional Insured. In addition to CSXT's insured status the policy or policies shall provided contractual liability insurance covering all liabilities assumed by the Carnival Company under this Agreement. The policy shall include a Severability of Interests clause stating that, except for limits of liability, the policy applies separately to each insured against whom claim is made or suit is brought. The Insurer shall provide CSXT with a certified copy of such insurance policy or policies for CSXT's written approval prior to the initiation of any services by CSXT under this Agreement which policy shall be endorsed to provide for at least thirty (30) days prior notice of cancellation of the policy or change in coverage. Any deductible over $100,000 must have the approval of CSXT. The required certified copy must be sent to:

Insurance – Law Department
CSX Transportation
500 Water ST. (J150)
Jacksonville, Florida 32202

The furnishing of said insurance shall not be deemed a limitation of the liability of the Carnival Company as provided in this Agreement. The Carnival Company shall also carry a statutory Workers" Compensation for all states involved in this service, and an Employer's Liability Policy with not less than $1,000,000 in limits. The Carnival Company shall cause its Liability, Property, and Workers' Compensation insurers to waive subrogation against CSXT, its affiliates, their respective officers, and/or employees by endorsement and produce certificates indicating such to CSXT.

8. SECURITY

When the Carnival Train is in transit, CSXT will provide only its normal and usual security measures as it ordinarily provides for ordinary freight shipments. In no event shall CSXT be liable to any person by reason of not having provided security to the Carnival Train or Carnival Personnel. The Carnival Company shall be responsible for and shall furnish or cause to be furnished, all other security measures deemed necessary by the Carnival Company or CSXT to protect, secure, and provide for the safety of the Railcars and Carnival Personnel, including the proper packing, crating and handling of any and all supplies. The Carnival Company shall also be responsible for all security and crowd control during any performance of the Carnival Company on CSXT's premises.

9. TERM AND TERMINATION

A. This Agreement shall be effective as of 12:01 a.m. Eastern Standard Time (hereinafter, "EST") May 15, 2005, and shall remain in full force and effect until 11:59 p.m. EST, May 14, 2006 unless earlier terminated either by CSXT, for any reason, by delivery of fifteen (15) days prior written notice to the Carnival Company or as otherwise provided by Section 9.B of this Agreement.

B. Notwithstanding any other provision in this Agreement, this Agreement shall be subject to immediate termination, prior to the expiration of its term, by CSXT by delivery of notice to the Carnival Company upon the occurrence of any of the following:

1. The failure of the Carnival Company to pay when due any amounts billed pursuant to Section 5 and such failure continues for a period of ten (10) days after delivery of written notice by CSXT to the Carnival Company; or

2. The breach of any of the covenants or terms of Sections 2, 6, or 7 of this Agreement by the Carnival Company; or

3. The failure of the Carnival Company to perform or observe any other terms or conditions of the Agreement and such failure continues for more than thirty (30) days after delivery of written notice by CSXT to the Carnival Company.

C. Upon termination or expiration of this Agreement, the Carnival Company shall make all necessary arrangements to remove or cause to be removed, the Railcars and all of its other property from the tracks and property of CSXT. The Carnival Company's obligation to pay amount accrued pursuant to Section 5 and to indemnify CSXT under this Agreement shall survive the expiration or termination of this Agreement for any reason.

10. FORCE MAJEURE

CSXT will be excused from performance of any of its obligations hereunder where such nonperformance is occasioned by any event beyond its reasonable control, which shall include, without limitation, any order, rule, or regulation of any federal, state, or local government body, agent or instrumentality, work stoppage growing out of labor disputes, including strikes or a lock-out, accident, natural disaster or operating delays.

## 11. NO VIOLATION OF LABOR AGREEMENTS

Nothing contained in this Agreement will require CSXT to perform any service or to take any action which would violate any term or condition of any then current collective bargaining agreement between CSXT and any organization representing any of CSXT's employees or applicable to CSXT by reason of operation of law. CSXT will not be in default of this Agreement or any covenant or obligation contained herein by reason of any act or failure to act which is required by the terms of such agreements.

## 12. NOTICES AND LIAISON OFFICERS

A. Any request, demand, authorization, direction, notice, consent, waiver, or other document provided or permitted by this Agreement to be made upon, given or furnished to, or filed with one party by the other party will be in writing and will be delivered by hand or by mail, postage prepaid, to the addresses set forth below or such other address as a party may designate by delivery of prior notice to the other party:

If to CSXT:

CSX Transportation, Inc.
500 Water Street
Jacksonville, Florida 32202
Attention: Director Government & Machinery
With a copy to: Senior Vice President and General Counsel

If to the Carnival Company:

Strates Shows Incorporated
10600 Orange Ave
Orlando, Florida 32824-7753
Attention: W. E. Alford - Transportation Coordinator

B. Upon execution of this Agreement, the Carnival Company and CSXT shall each promptly designate one of its officials as liaison officer. Each party shall notify the other in writing of the name and effective date of appointment of the liaison officer and of any successor liaison officer.

## 13. ASSIGNMENT

This Agreement or any rights thereunder shall not be assigned or transferred by the Carnival Company without obtaining the prior written consent of CSXT.

## 14. GOVERNING LAW VENUE AND JURISDICTION

A. This Agreement shall be governed by and construed under the Laws of the State of Florida.

B. The parties consent to venue in Jacksonville, Florida, and to the jurisdiction of the United States District Court for the Middle District of Florida for all litigation which may be brought with respect to the terms of any transactions and operations contemplated by this Agreement.

## 15. CONFIDENTIALITY

The parties shall not disclose the terms of this Agreement to any third party except: (1) as required by law, regulation or this Agreement; (2) to a parent, subsidiary or affiliated company; or (3) to such other persons who need to know the contents of the Agreement for the purpose of assisting either of the parties in complying with the terms of this Agreement or auditing operations hereunder, such as insurance brokers, outside audit firms and other consultants, provided that the disclosing party shall ensure compliance by such third parties with the terms of this Section. If any party violates this Section, the adversely affected party may cancel this Agreement immediately upon notice to the other party.

## 16. SEVERABILITY

In the event that any provision of this Agreement is ruled unconstitutional, void or unenforceable by a body having competent jurisdiction, the remaining portions of the Agreement will remain in full force and effect. However, any party may cancel the Agreement upon written notice to the other party within thirty (30) days of the date of such ruling.

## 17. AMENDMENTS

This Agreement may be amended only by written instrument executed by both parties.

## 18. ENTIRE AGREEMENT

This Agreement constitutes the parties' entire agreement as to its subject matter and supersedes all prior or contemporaneous oral or written agreements and understandings.

IN WITNESS WHEREOF each party hereto has caused this Agreement to be executed on its behalf by a duly authorized officer as of the day and year first above written.

**STRATES SHOWS INCORPORATED**

By: W. E. Alford

Title: Trans. Coord.

Date: 18 May 05

**CSX TRANSPORTATION, INC.**

By: John Whiting Jr.

Title: VP Operations Research & Planning

Date: 5/19/05

# Amendment A

| Date | Move Segment | Price |
|---|---|---|
| May 19, 2005 | Taft, FL – Gaithersburg, MD | $77,500 |
| June 06, 2005 | Gaithersburg, MD – Pittsfield, MA | $35,500 |
| July 11, 2005 | Pittsfield, MA – Selkirk, NY | $6,250 |
| August 23, 2005 | Buffalo, NY – Syracuse, NY | $12,500 |
| September 07, 2005 | Syracuse, NY to Buffalo, NY | $12,500 |
| November 07, 2005 | Jacksonville, FL to Taft, FL | $12,800 |

AMENDMENT 1 TO CONTRACT CSXT 83477
PURSUANT TO 49 U.S.C. §10502 OR §10709

**STRATES SHOWS INCORPORATED**, (the **"Carnival Company")**, and **CSX TRANSPORTATION, INC.**, (Carrier or **CSXT**), agree to amend the aforementioned Contract, which has been in effect since May 15, 2005.

1. This Amendment will be effective on February 17, 2006.

2. The Contract is modified in the following manner:

**(A)** Paragraph 5, **COMPENSATION**, is amended by deleting the former **Exhibit A** in its entirety and replacing it with the attached **Exhibit A** with the addition of new rates as of the effective date of this Amendment.

3. All other provisions of the Contract are ratified and reaffirmed.

| **STRATES SHOWS INCORPORATED** | **CSX TRANSPORTATION, INC.** |
|---|---|
| Signature: James E Strates | Signature: |
| Print Name: JAMES E STRATES | Print Name: |
| Title: PRES | Title: |
| Date: 2/27/06 | Date: |

83477AM1-JBL/TSTOCKDALE-PC

# EXHIBIT A
## CSXT 83477

In conjunction with Amendment 1

| DATES | MOVE SEGMENT | PRICE |
|---|---|---|
| May 19, 2005 | Taft, FL - Gaithersburg, MD | $77,500 |
| June 06, 2005 | Gaithersburg, MD - Pittsfield, MA | $35,500 |
| July 11, 2005 | Pittsfield, MA - Selkirk, NY | $ 6,250 |
| August 23, 2005 | Buffalo, NY - Syracuse, NY | $12,500 |
| September 07, 2005 | Syracuse, NY to Buffalo, NY | $12,500 |
| November 07, 2005 | Jacksonville, FL to Taft, FL | $12,800 |

**NEW RATES ADDED TO EXHIBIT A AS OF FEBRUARY 17, 2006**

| MOVE SEGMENT | PRICE |
|---|---|
| Taft, FL to Sanford, FL | $ 8,263 |
| Sanford, FL to West Palm Beach, FL | $17,540 |
| West Palm Beach, FL to Taft, FL | $16,260 |

83477AM1-EXHIBIT A-JBL/STOCKDALE-FC

AMENDMENT 1 TO CONTRACT CSXT 83477
PURSUANT TO 49 U.S.C. §10502 OR §10709

**STRATES SHOWS INCORPORATED**, (the **"Carnival Company"**), and **CSX TRANSPORTATION, INC.**, (**Carrier** or **CSXT**), agree to amend the aforementioned Contract, which has been in effect since May 15, 2005.

1. This Amendment will be effective on February 17, 2006.

2. The Contract is modified in the following manner:

**(A)** Paragraph 5, **COMPENSATION**, is amended by deleting the former **Exhibit A** in its entirety and replacing it with the attached **Exhibit A** with the addition of new rates as of the effective date of this Amendment.

3. All other provisions of the Contract are ratified and reaffirmed.

| **STRATES SHOWS INCORPORATED** | **CSX TRANSPORTATION, INC.** |
|---|---|
| Signature:________ | Signature: Tracy A Stockdale |
| Print Name:________ | Print Name: Tracy A Stockdale |
| Title:________ | Title: Director Sales & MKTG |
| Date:________ | Date: 12/13/06 |

83477AM1-JBL/TSTOCKDALE-FC

AMENDMENT 2 TO CONTRACT CSXT 83477
PURSUANT TO 49 U.S.C. §10502 OR §10709

**STRATES SHOWS INCORPORATED, (the "Carnival Company"), and CSX TRANSPORTATION, INC., (Carrier or CSXT)**, agree to amend the aforementioned Contract, which has been in effect since May 15, 2005.

1. This Amendment will be effective on May 15, 2006.

2. The Contract is modified in the following manner:

**All former Terms and Conditions are deleted in their entirety and replaced with the following:**

THIS AGREEMENT is made this 15th day of May, 2006, by and between STRATES SHOWS INCORPORATED, a Delaware corporation, with its principal offices at10600 Orange Ave, Orlando, Florida 32824-7753 (the "Carnival Company"), and CSX TRANSPORTATION, INC, with its Corporate Headquarters at 500 Water Street, Jacksonville, Florida 32202 ("CSXT").

**EXPLANATORY STATEMENT**

A. The Carnival Company is the owner and operator of a traveling carnival show, including equipment and other paraphernalia.

B. The Carnival Company is also the owner of railcars (consisting of converted passenger coaches and flat cars), which are specially designed to transport its property, and its employees, agents and invitees, and their personal property.

C. The Carnival Company wishes to retain CSXT, and CSXT is willing, to transport, as a contract carrier only and not a common carrier, the Carnival Company's railcars, including its employees, agents and invitees and their personal property, and its equipment, on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and obligations herein set forth, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, the parties agree as follows:

**1. DEFINITIONS**

The following capitalized terms shall have the meanings ascribed to them below:

"AAR" shall mean the Association of American Railroads.

"Agreement" shall mean this Agreement, as amended from time to time.

"Authorized Carnival Personnel" shall mean those particular Carnival Personnel authorized to ride the Carnival Train, as provided at Section 2.E.

"Carnival Company" shall mean Strates Shows Incorporated, a Delaware corporation.

"Carnival Personnel" shall mean the officers, directors, employees, agents, independent contractors, guests and invitees of the Carnival Company.

"Carnival Train" shall mean the unit train consisting only of the Railcars and the locomotives employed by CSXT in moving the Railcars.

"Carnival Trainmaster" shall mean the employee of the Carnival Company designated as such by the Carnival Company by written notice to CSXT.

"CSXT" shall mean CSX Transportation, Inc., a Virginia corporation.

"FRA" shall mean the Federal Railroad Administration.

"General Plan" shall mean the proposed schedule for the movement of the Carnival Train and the parking and switching of the Railcars, as set forth in Exhibit "A" to this Agreement, as amended from time to time.

"Railcars" shall mean the passenger coaches and flat cars.

**2. CSXT SERVICES**

A. General Scope of Services - Subject to the further terms and conditions of this Agreement, CSXT agrees to transport the Carnival Train, including its contents and, to the extent permitted by Section 2.E hereof, Authorized Carnival Personnel, over CSXT's railroad lines to and from various locations, as more particularly described by the General Plan. CSXT will provide the locomotive power, supplies and personnel necessary to such operations (including the initial switching and spotting of the Carnival Train for reloading and the reassembly of the Carnival Train as instructed by the Carnival Trainmaster for the movement of the Carnival Train to the next point designated by the General Plan). CSXT is providing its services under this Agreement as a contract carrier only and not as a common carrier.

B. Unscheduled Movements - Any movement of the Railcars in trains other than those described in the General Plan shall be made at CSXT's discretion, upon the request of the Carnival Company, at CSXT's applicable tariff rates.

C. Notice of Train Movement - The Carnival Company shall give CSXT written notice at least twenty (20) days prior to presenting Railcars to CSXT consistent with the General Plan. This notice shall be the Carnival Company's request for movements to be placed on the General Plan and amendments to the General Plan. CSXT and the Carnival Company shall agree on the schedule of movement and routing. The Carnival Company further agrees to give CSXT prior notice of the Carnival Company's performance times and locations.

D. Adherence to General Plan - The operation of the Carnival Train will be subject at all times to the operating and safety rules and procedures of CSXT. CSXT will operate and assign the priority of the Carnival Train at its sole discretion. The priority granted to the Carnival Train may vary by individual movement and will be assigned in such a manner as to minimize the interruption of CSXT's freight operations. CSXT and the Carnival Company will endeavor to follow the schedule, routes, and interchange points in accordance with the General Plan. However, Carnival Train recognizes and agrees that CSXT makes no representations, warranties or promises of any kind regarding its ability to adhere to the General Plan. CSXT will endeavor to provide sufficient prior notice of any problems which it anticipates in moving, unloading, loading or storing the Carnival Train and will endeavor, with the Carnival Company, to arrange for an alternate date, movement or site in the event of the cancellation or modification of the original date, movement or site listed in the General Plan. In no event shall CSXT be liable to the Carnival Company or any other person for damages (whether direct, indirect, consequential or incidental) arising from its failure or refusal to operate the Carnival Train in accordance with the General Plan or alternate arrangements, and the Carnival Company hereby releases CSXT from, and indemnifies CSXT against, all liability for such damages.

E. Authorized Carnival Personnel

1. Only Authorized Carnival Personnel shall have permission to ride the Carnival Train. The Carnival Company covenants and warrants that no other Carnival Personnel shall be present upon the Carnival Train except as permitted by this Section 2.E.

2. Authorized Carnival Personnel shall be limited to the train crew who are qualified to inspect, monitor, and correct the loading and security of the cargo. Alternatively, the Carnival Company may remove Authorized Carnival Personnel from the train such that CSXT will perform such functions.

3. Carnival Personnel who are at least 18 years old shall be allowed reasonable access to the Carnival Train while parked on CSXT's property. The Carnival Company agrees that Carnival Personnel shall comply with CSXT's applicable safety and operating rules and instructions, as in effect from time to time (a copy of which shall be provided to the Carnival Company by CSXT), while on CSXT's property. The Carnival Company assumes full responsibility for the conduct of Carnival Personnel while on CSXT's property. The Carnival Trainmaster shall take immediate corrective action with respect to Carnival Personnel whose conduct violates CSXT's applicable rules or instructions, or may jeopardize the safe or efficient operation of the Carnival Train or the safety or comfort of others on or about CSXT's property. If the Carnival Trainmaster fails to do so, CSXT shall have the right to take corrective action, including exclusion of any Carnival Personnel from its property or the Carnival Train. The Carnival Trainmaster (or his designated alternate) shall be available at all times while the Carnival Train is on CSXT's property.

F. Carnival Company Operations - The Carnival Company is solely responsible for the loading and unloading of its property, and Carnival Personnel on and off the Railcars, in compliance with all applicable standards and practices of AAR, except to the extent otherwise agreed by the parties in writing. The Carnival Company further agrees to comply, and to cause Carnival Personnel to comply, with all laws and regulations and CSXT's then existing operating rules and regulations applicable to the Carnival Company's operations on or about CSXT's property and the Carnival Train while on CSXT's property.

G. CSXT Personnel - Personnel provided by CSXT for the movement of the Carnival Train shall be qualified over the territory and for the type of service which they are to provide in connection with the operation of the Carnival Train.

## 3. EQUIPMENT

A. Provision of Railcars - The Carnival Company is the owner of, and shall provide, the Railcars, for use in accordance with the General Plan.

B. Equipment Standards - All Railcars shall meet the standards of FRA and AAR. CSXT will reject any Railcars which do not meet FRA or AAR standards. The Carnival Train shall not include cars or equipment which exceed the width, height, weight or other restrictions or capacities of the subject trackage as published by AAR in Railway Line Clearances, and shall not contain cars or equipment which require speed restrictions or other movement restrictions below the maximum authorized freight speeds as provided by CSXT's then existing operating rules and regulations.

C. Equipment Inspection - Prior to movement of the Railcars, CSXT may, but is not required to, perform a mechanical inspection of the Railcars, except to the extent otherwise required by applicable law. In the event that any Railcars fail to meet the then current AAR or FRA standards applicable to such equipment, in the opinion of CSXT, CSXT may elect either to reject such Railcars (which may then be required by the Carnival Company) or to make necessary repairs to the Railcars, at the Carnival Company's sole expense under the direction of the Carnival Company Trainmaster and with personnel qualified to work on the type of equipment to be repaired. If the Carnival Company elects to repair the rejected Railcars, it may request the assistance of CSXT to effect such repairs at the Carnival Company's expense and CSXT shall endeavor to provide such assistance in a timely manner. If CSXT elects to repair the Railcars, it may do so, at the Carnival Company's expense, without prior notice to, or the consent of the Carnival Company, provided that the total estimated expense involved in making such repairs to any and/or all Railcars will not exceed $500.00. If CSXT estimates the expense involved will exceed $500.00, CSXT shall promptly notify the Carnival Company of any such repairs made and the estimated costs thereof, and CSXT will not perform such repairs unless the Carnival Company requests such repairs to be made and agrees to assume and pay all costs involved in such repairs. If CSXT determines that any Railcars are unsuitable for further movement, the Carnival Company agrees to make prompt arrangements for the repair of those Railcars by a third party contractor.

D. Storage of Railcars - CSXT will allow the parking of the Railcars and associated vehicles on its property to the extent of available parking capacity and tracks only in accordance with the General Plan and will allow access to such Railcars by Carnival Personnel over its property. The Carnival Company otherwise shall make all necessary arrangements to remove, or cause to be removed, the Railcars from tracks and property of CSXT.

E. Equipment Roster - The Carnival Company shall maintain, at its sole expense, with AAR, a complete and up to date consist roster of all equipment owned by the Carnival Company, which roster shall be accessible in AAR U.M.L.E.R. File (Universal Machine Language Equipment Register). CSXT shall provide, at the Carnival Company's request and sole expense, reasonable technical support or other assistance needed by the Carnival Company to maintain this U.M.L.E.R. file.

## 4. EMERGENCY TRANSPORTATION

In case of emergency whereby the operation of the Carnival Train is disrupted enroute due to equipment failure, conditions caused by work stoppage, track blockage, natural disasters, or other uncontrollable events, CSXT will endeavor to provide, but is not obligated to furnish, emergency service for the completion the trip. CSXT will notify Carnival Company of the emergency disruption of service and to the extent possible, coordinate the emergency transportation service with the Carnival Company. The Carnival Company shall reimburse CSXT for all expenses incurred by CSXT related to provision of emergency service and alternate transportation. Reimbursable expenses for alternate transportation shall be calculated on an actual mileage movement basis in accordance with Section 5, from the actual origin to the actual destination via the route used, and shall not be charged for the uncompleted portion of the disrupted movement.

## 5. COMPENSATION

A. Rates - In consideration for services provided in accordance with the General Plan, the Carnival Company shall pay to CSXT the sums set forth in Exhibit A for each movement. These charges include switching to make up the Carnival Train and doubling, switching and parking of the Carnival Train.

B. CSXT will not absorb the reciprocal switch charge of any railroad. Carnival Company recognizes and agrees that it will need to make all necessary arrangements with any other railroad for the billing and payment of these charges or with CSXT for the full reimbursement of all actual reciprocal switch charges incurred due to these movements.

C. Payment - CSXT will issue, at the end of each move, a statement of charges pursuant to Section 5.A, and all other amounts due under this Agreement. Payment of such charges shall be due within fifteen (15) days of the Carnival Company's receipt of such statement. Delinquent payments shall bear interest at the rate of 12% per annum.

D. Payment Disputes - In the event that the Carnival Company shall disagree with a quarterly statement which has been submitted in accordance with Section 5.B, the Carnival Company shall promptly notify and provide to CSXT a written statement setting forth the nature and basis for the disagreement and amount, if any, which are in dispute. Notwithstanding such disagreement, the actual billing will be paid by the Carnival Company as provided for in Section 5.C. The parties will confer promptly for the purpose of resolving any disputed amounts.

## 6. INDEMNIFICATION

Carnival Company acknowledges CSXT's concerns regarding liability exposure associated with the operation of the Carnival Train, and further recognizes that CSXT would not have agreed to enter into this Agreement absent the express and unqualified commitment of Carnival Company to (a) assume all risks which would not have occurred but for the operation and presence of the Carnival Train on CSXT railroad facilities, (b) to fully and completely indemnify CSXT as provided herein, and (c) to procure and maintain certain insurance protection also as described herein. Therefore, and in accordance with this broad statement of the intention of the parties, the Carnival Company hereby covenants and agrees to be responsible for and to protect, defend, release, indemnify and hold harmless CSXT, its affiliates, and their respective officers, agents, and employees, from and against any and all liability, loss, costs, damage, expense, demands, and judgments, including, without limitation, punitive damages, and including attorneys' fees, for or in connection with injury or death of any person or persons whomsoever (including but not limited to, officers, agents, independent contractors, employees, guests and invitees of CSXT and/or the Carnival Company), and the destruction or damage to any property (including, but not limited to the property of CSXT and/or the Carnival Company and their officers, agents, independent contractors, employees, guests or invitees), caused by, arising out of, attributed to, resulting from, exacerbated by, or in any way connected with, the operation of the Carnival Train, or its presence on the rail facilities of CSXT, including, without limitation, the movement, switching, exhibition or storage of the Carnival Train, the presence or activities of Carnival Personnel or the Carnival Company on, about, or in the vicinity of tracks or property of CSXT, its affiliates, or any other railroad, without regard to whether such injury, death, or property damage is caused by or attributable to, the fault, misconduct, failure, or negligence (regardless of its character or degree) of CSXT, its affiliates or their respective officers, agents, independent contractors, employees, guests or invitees. For the purposes of this Agreement, CSXT's affiliates shall include, without limitation, CSXT's parent corporation and the direct and indirect subsidiaries of CSXT and its parent corporation.

7. **INSURANCE**

The Carnival Company shall procure and maintain, during the term of this Agreement, Commercial General Liability Insurance which specifically covers liability imposed on the Carnival Company by law or assumed under this Agreement pursuant to Section 6 of this Agreement. Such insurance shall provide for available limits of not less than Thirty – Five million dollars ($35,000,000) per occurrence for:

Bodily Injury Liability
Property Damage Liability including damage to CSXT property and property in it's care, custody and control (i.e. rolling stock)
Advertising Liability
Personal Injury
Pollution Clean-up Expenses
Passenger Liability
Employer's Liability (FELA)
Terrorism Coverage

This insurance shall name the Carnival Company named insured and CSXT as additional Named Insured(s). In addition to CSXT's insured status the policy or policies shall provided contractual liability insurance covering all liabilities assumed by the Carnival Company under this Agreement. The policy shall include a Severability of Interests clause stating that, except for limits of liability, the policy applies separately to each insured against whom claim is made or suit is brought. The Insurer shall provide CSXT with a certified copy of such insurance policy or policies for CSXT's written approval prior to the initiation of any services by CSXT under this Agreement which policy shall be endorsed to provide for at least thirty (30) days prior notice of cancellation of the policy or change in coverage. Any deductible over $100,000 must have the approval of CSXT. The required certified copy must be sent to:

Insurance – Law Department
CSX Transportation
500 Water ST. (J150)
Jacksonville, Florida 32202

The furnishing of said insurance shall not be deemed a limitation of the liability of the Carnival Company as provided in this Agreement. The Carnival Company shall also carry a statutory Workers" Compensation for all states involved in this service, and an Employer's Liability Policy with not less than $1,000,000 in limits. The Carnival Company shall cause its Liability, Property, and Workers' Compensation insurers to waive subrogation against CSXT, its affiliates, their respective officers, and/or employees by endorsement and produce certificates indicating such to CSXT.

## 8. SECURITY

When the Carnival Train is in transit, CSXT will provide only its normal and usual security measures as it ordinarily provides for ordinary freight shipments. In no event shall CSXT be liable to any person by reason of not having provided security to the Carnival Train or Carnival Personnel. The Carnival Company shall be responsible for and shall furnish or cause to be furnished, all other security measures deemed necessary by the Carnival Company or CSXT to protect, secure, and provide for the safety of the Railcars and Carnival Personnel, including the proper packing, crating and handling of any and all supplies. The Carnival Company shall also be responsible for all security and crowd control during any performance of the Carnival Company on CSXT's premises.

## 9. TERM AND TERMINATION

A. This Agreement shall be effective as of 12:01 a.m. Eastern Standard Time (hereinafter, "EST") May 15, 2006, and shall remain in full force and effect until 11:59 p.m. EST, May 14, 2007 unless earlier terminated either by CSXT, for any reason, by delivery of fifteen (15) days prior written notice to the Carnival Company or as otherwise provided by Section 9.B of this Agreement.

B. Notwithstanding any other provision in this Agreement, this Agreement shall be subject to immediate termination, prior to the expiration of its term, by CSXT by delivery of notice to the Carnival Company upon the occurrence of any of the following:

1. The failure of the Carnival Company to pay when due any amounts billed pursuant to Section 5 and such failure continues for a period of ten (10) days after delivery of written notice by CSXT to the Carnival Company; or

2. The breach of any of the covenants or terms of Sections 2, 6, or 7 of this Agreement by the Carnival Company; or

3. The failure of the Carnival Company to perform or observe any other terms or conditions of the Agreement and such failure continues for more than thirty (30) days after delivery of written notice by CSXT to the Carnival Company.

C. Upon termination or expiration of this Agreement, the Carnival Company shall make all necessary arrangements to remove or cause to be removed, the Railcars and all of its other property from the tracks and property of CSXT. The Carnival Company's obligation to pay amount accrued pursuant to Section 5 and to indemnify CSXT under this Agreement shall survive the expiration or termination of this Agreement for any reason.

## 10. FORCE MAJEURE

A party shall be excused from its performance if prevented or delayed by the following force majeure' conditions: Act of God; authority of law; weather impediments; fire; explosion; labor disputes; embargo; war; insurrection; threatened or actual act of terrorism; derailment or like causes beyond its control. A downturn in the economy is not a force majeure' condition. The Contract shall be suspended but not extended during the force majeure' period. The party claiming force majeure' shall notify all other parties as soon as practical upon the beginning and ending of the force majeure' period.

## 11. NO VIOLATION OF LABOR AGREEMENTS

Nothing contained in this Agreement will require CSXT to perform any service or to take any action which would violate any term or condition of any then current collective bargaining agreement between CSXT and any organization representing any of CSXT's employees or applicable to CSXT by reason of operation of law. CSXT will not be in default of this Agreement or any covenant or obligation contained herein by reason of any act or failure to act which is required by the terms of such agreements.

## 12. NOTICES AND LIAISON OFFICERS

A. Any request, demand, authorization, direction, notice, consent, waiver, or other document provided or permitted by this Agreement to be made upon, given or furnished to, or filed with one party by the other party will be in writing and will be delivered by hand or by mail, postage prepaid, to the addresses set forth below or such other address as a party may designate by delivery of prior notice to the other party:

If to CSXT:

CSX Transportation, Inc.
500 Water Street
Jacksonville, Florida 32202
Attention: Director Government & Machinery
With a copy to: Senior Vice President and General Counsel

If to the Carnival Company:

Strates Shows Incorporated
10600 Orange Ave
Orlando, Florida 32824-7753
Attention: W. E. Alford - Transportation Coordinator

B. Upon execution of this Agreement, the Carnival Company and CSXT shall each promptly designate one of its officials as liaison officer. Each party shall notify the other in writing of the name and effective date of appointment of the liaison officer and of any successor liaison officer.

## 13. ASSIGNMENT

This Agreement or any rights thereunder shall not be assigned or transferred by the Carnival Company without obtaining the prior written consent of CSXT.

## 14. GOVERNING LAW VENUE AND JURISDICTION

A. This Agreement shall be governed by and construed under the Laws of the State of Florida.

B. The parties consent to venue in Jacksonville, Florida, and to the jurisdiction of the United States District Court for the Middle District of Florida for all litigation which may be brought with respect to the terms of any transactions and operations contemplated by this Agreement.

## 15. CONFIDENTIALITY

The parties shall not disclose the terms of this Agreement to any third party except: (1) as required by law, regulation or this Agreement; (2) to a parent, subsidiary or affiliated company; or (3) to such other persons who need to know the contents of the Agreement for the purpose of assisting either of the parties in complying with the terms of this Agreement or auditing operations hereunder, such as insurance brokers, outside audit firms and other consultants, provided that the disclosing party shall ensure compliance by such third parties with the terms of this Section. If any party violates this Section, the adversely affected party may cancel this Agreement immediately upon notice to the other party.

## 16. SEVERABILITY

In the event that any provision of this Agreement is ruled unconstitutional, void or unenforceable by a body having competent jurisdiction, the remaining portions of the Agreement will remain in full force and effect. However, any party may cancel the Agreement upon written notice to the other party within thirty (30) days of the date of such ruling.

## 17. AMENDMENTS

This Agreement may be amended only by written instrument executed by both parties.

18. ENTIRE AGREEMENT

This Agreement constitutes the parties' entire agreement as to its subject matter and supersedes all prior or contemporaneous oral or written agreements and understandings.

IN WITNESS WHEREOF each party hereto has caused this Agreement to be executed on its behalf by a duly authorized officer as of the day and year first above written.

STRATES SHOWS INCORPORATED

Signature: James E Strates

Print Name: JAMES E. STRATES

Title: PRESIDENT

Date: 5/15/06

CSX TRANSPORTATION, INC.

Signature: Tracy A. Stockdale

Print Name: Tracy A Stockdale

Title: Director

Date: 6/1/06

# CSXT 83477
# Exhibit A

| Date | Move Segment | Price Per Train |
|---|---|---|
| May 19, 2006 | Taft, FL – Gaithersburg, MD | $83,700 |
| June 05, 2006 | Gaithersburg, MD – Pittsfield, MA | $39,500 |
| July 03, 2006 | Pittsfield, MA – Selkirk, NY | $7,350 |
| August 23, 2006 | Buffalo, NY – Syracuse, NY | $14,000 |
| September 06, 2006 | Syracuse, NY to Buffalo, NY | $14,000 |
| November 07, 2006 | Jacksonville, FL to Taft, FL | $14,300 |

AMENDMENT 3 TO CONTRACT CSXT 83477
PURSUANT TO 49 U.S.C. §10502 OR §10709

**STRATES SHOWS INCORPORATED**, (the "**Carnival Company**"), and **CSX TRANSPORTATION, INC.**, (**Carrier** or **CSXT**), agree to amend the aforementioned Contract, which has been in effect since May 15, 2005.

1. This Amendment will be effective on February 9, 2007.

2. The Contract is modified in the following manner:

(A) Paragraph 9, **TERM AND TERMINATION**, provides that the Contract is currently scheduled to expire on May 14, 2007. The parties now agree, however, to extend the term through and including December 31, 2007.

(B) **Exhibit A** is amended by deleting it in its entirety and replacing it with the attached **Exhibit A** in conjunction with Amendment 3 which provides prices for 2007.

(C) A new paragraph **FUEL RATE ADJUSTMENT** is added to the Contract as shown below as of the effective date of this Amendment.

**FUEL RATE ADJUSTMENT:** In the event that the average price of West Texas Intermediate Crude Oil (as defined below, the 'WTI Average Price'), calculated monthly based on prices published in the Wall Street Journal, exceeds $23.00 per barrel, Carrier will apply a fuel rate adjustment to line haul freight charges provided for in this Contract. The fuel rate adjustment will be applied to the line haul freight charge for each shipment having a bill of lading dated on or after the 1st day of the second calendar month following the calendar month of a given WTI Average Price calculation.

The fuel rate adjustment will be effected by increasing the line haul freight charge by 0.4% for every $1.00 per barrel, or portion thereof, by which the WTI Average Price for the applicable month exceeds $23.00. The WTI Average Price for a given calendar month will be determined by adding the daily West Texas Intermediate Crude Oil prices published in the Wall Street Journal during a calendar month, and dividing the result by the number of days so published. The result will be rounded to the nearest cent. If the Wall Street Journal ceases publication of the price of West Texas Intermediate Crude Oil, CSXT will employ a suitable substitute source of price or measure.

3. All other provisions of the Contract are ratified and reaffirmed.

**STRATES SHOWS INCORPORATED**

Signature: [signature] Title: Admin. w/C.O.O.

Print Name: W. E. Alford Date: 12 Mar 07

**CSX TRANSPORTATION, INC.**

Signature: [signature] Title: VP-Emerging Markets

Print Name: Derrick W. Smith Date: 3/13/07

# CSXT 83477
# Exhibit A

**In conjunction with Amendment 3**

| Shipment Dates * | Move Segment | | Price Per Train |
|---|---|---|---|
| 02/19/07 | Taft, FL – West Palm Beach, FL | | $17,900.00 |
| 03/19/07 | West Palm Beach, FL – Sanford, FL | | $19,250.00 |
| 04/09/07 | Sanford, FL – Taft, FL | | $9,300.00 |
| 06/02/07 | Taft, FL – Pittsfield, MA | | $124,260.00 |
| 07/08/07 | Pittsfield, MA – Newark, NJ | | $18,200.00 |
| 08/20/07 | Buffalo, NY – Syracuse, NY | | $15,400.00 |
| 09/04/07 | Syracuse, NY – Buffalo, NY | | $15,400.00 |
| 11/04/07 | Valdosta, GA – Tallahassee, FL | | $11,600.00 |
| 11/19/07 | Tallahassee, FL – Orlando, FL | | $29,260.00 |
| 11/24/07 | Orlando, FL – Taft, FL | (place in winter quarters) | $275.00/Per Car |

*** Shipment Dates are approximate.**

**Unless otherwise specified herein, prices are stated "per train".**

**Prices as stated do not include loading, unloading or Fuel Surcharge (Fuel Rate Adjustment).**

AMENDMENT 3 TO CONTRACT CSXT 83477
PURSUANT TO 49 U.S.C. §10502 OR §10709

**STRATES SHOWS INCORPORATED**, (the "**Carnival Company**"), and **CSX TRANSPORTATION, INC.**, (**Carrier** or **CSXT**), agree to amend the aforementioned Contract, which has been in effect since May 15, 2005.

1. This Amendment will be effective on February 9, 2007.

2. The Contract is modified in the following manner:

**(A)** Paragraph 9, **TERM AND TERMINATION**, provides that the Contract is currently scheduled to expire on May 14, 2007. The parties now agree, however, to extend the term through and including December 31, 2007.

**(B) Exhibit A** is amended by deleting it in its entirety and replacing it with the attached **Exhibit A** in conjunction with Amendment 3 which provides prices for 2007.

**(C)** A new paragraph **FUEL RATE ADJUSTMENT** is added to the Contract as shown below as of the effective date of this Amendment.

**FUEL RATE ADJUSTMENT:** In the event that the average price of West Texas Intermediate Crude Oil (as defined below, the 'WTI Average Price'), calculated monthly based on prices published in the Wall Street Journal, exceeds $23.00 per barrel, Carrier will apply a fuel rate adjustment to line haul freight charges provided for in this Contract. The fuel rate adjustment will be applied to the line haul freight charge for each shipment having a bill of lading dated on or after the 1st day of the second calendar month following the calendar month of a given WTI Average Price calculation.

The fuel rate adjustment will be effected by increasing the line haul freight charge by 0.4% for every $1.00 per barrel, or portion thereof, by which the WTI Average Price for the applicable month exceeds $23.00. The WTI Average Price for a given calendar month will be determined by adding the daily West Texas Intermediate Crude Oil prices published in the Wall Street Journal during a calendar month, and dividing the result by the number of days so published. The result will be rounded to the nearest cent. If the Wall Street Journal ceases publication of the price of West Texas Intermediate Crude Oil, CSXT will employ a suitable substitute source of price or measure.

3. All other provisions of the Contract are ratified and reaffirmed.

**STRATES SHOWS INCORPORATED**

Signature: [signature] Title: Administrator

Print Name: W. E. Alford Date: 12 Mar 07

**CSX TRANSPORTATION, INC.**

Signature: [signature] Title: VP-Emerging Markets

Print Name: Derrick W. Smith Date: 3/13/07

# CSXT 83477
## Exhibit A

**In conjunction with Amendment 3**

| Shipment Dates * | Move Segment | | Price Per Train |
|---|---|---|---|
| 02/19/07 | Taft, FL – West Palm Beach, FL | | $17,900.00 |
| 03/19/07 | West Palm Beach, FL – Sanford, FL | | $19,250.00 |
| 04/09/07 | Sanford, FL – Taft, FL | | $9,300.00 |
| 06/02/07 | Taft, FL – Pittsfield, MA | | $124,260.00 |
| 07/08/07 | Pittsfield, MA – Newark, NJ | | $18,200.00 |
| 08/20/07 | Buffalo, NY – Syracuse, NY | | $15,400.00 |
| 09/04/07 | Syracuse, NY – Buffalo, NY | | $15,400.00 |
| 11/04/07 | Valdosta, GA – Tallahassee, FL | | $11,600.00 |
| 11/19/07 | Tallahassee, FL – Orlando, FL | | $29,260.00 |
| 11/24/07 | Orlando, FL – Taft, FL | (place in winter quarters) | $275.00/Per Car |

*** Shipment Dates are approximate.**

**Unless otherwise specified herein, prices are stated "per train".**

**Prices as stated do not include loading, unloading or Fuel Surcharge (Fuel Rate Adjustment).**

# NORFOLK SOUTHERN CORPORATION

## CONFIDENTIAL TRANSMITTAL

Rec'd 28Aug01 Alford

Date: August 28, 2001
File: C2A-NS-C-18367

TO: William E. Alford
Transportation Coordinator
Strates Shows, Inc.
P. o. Box 174
Orlando, FL 32802
FAX (407) 859-7758

FROM: Mrs. L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S. E.
Roanoke, VA 24042-0041
FAX (540) 985-6103

NS 2001

Attachment: Fully executed Contract - final distribution.

Ancillary: _X_ NO; ___ YES - Intercarrier agreement - Railroad use only.

Contract No. NS-C-18367 Amendment No. N/A

Customer: Same

___ Cancels ___ Replaces:

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

**Questions or revisions? Call Lynn Ferris at 540-985-6119 or contact via Internet e-mail at lgferris@nscorp.com.**

cc:

- ___ Roanoke - Box 0037
- ___ Roanoke - Box 0041 (C1)
- ___ Roanoke - Box 0041 (R-9K-X-168349)
- ___ NAM - Jacksonville

EXHIBIT
PENGAD 800-631-6989
STRATES 5
4/16/10 mc

# CONFIDENTIAL

## TRANSPORTATION AGREEMENT
## NS-C-18367

**THIS AGREEMENT** is made by and between the Norfolk Southern Railway Company and Consolidated Subsidiaries, of the first part, hereinafter referred to as the "Railway" and Strates Shows, Inc. of the second part, hereinafter referred to as the "Show Company."

**WITNESSETH:**

**WHEREAS,** The Show Company is the owner of a circus, theatrical or other similar organization and has special cars designed for the carriage of paraphernalia, such as theatrical scenery, circus tents, horses, wild animals, and other property customarily used by such an organization, also certain coaches for the transportation of its performers, members, agents and employees;

**AND WHEREAS,** The Show Company represents that necessity exists for certain of its employees to be in and upon its cars other than passenger cars in order to tend and care for its animals and property in transit;

**AND WHEREAS,** It is not the regular business of the Railway to haul the special or private cars of organizations such as the Show Company, or to transport persons, animals and freight on such cars;

**AND WHEREAS,** The Show Company is desirous of entering into a special agreement with the Railway for the purpose of having its cars, equipment and employees moved from point to point;

**NOW THEREFORE,** In consideration of the increased risks attendant upon this form of transportation and in consideration of the lower rate hereinafter named, the parties have contracted as follows:

I. That the Show Company shall pay to the Railway for all services. Billing will be issued by Railway after each movement. Rates will be prescribed and agreed to by both Show Company and Railway in advance. Show Company shall pay all bills issued by Railway within fifteen (15) days of date of freight bill.

Payment to: Mr. J. Crandall Smith, Account Manager
Revenue Accounting - Customer Service, Dept. 154
Norfolk Southern Railway Company
125 Spring Street, S. W.
Atlanta, GA 30303

Plus additional charges provided in Articles V, VI, and VII below.

II. That the Railway shall haul said cars, equipment and employees of the Show Company in a train of (see Appendix "A") with the privilege of stopping for exhibition at the following places on the line of the Railway, to-wit:

See Appendix "A"

III. In the event of strikes or other causes beyond the control of Railway, by which the Railway is prevented from carrying out this agreement, the Railway will not be held liable to furnish the transportation herein contemplated.

IV. At locations where the Show Company has arranged to store their railroad cars on Railway's tracks during exhibition of their show, contract price includes the service of spotting cars on unloading track; switching cars to storage track; switching cars to loading track; switching and pulling cars for outbound movement.

V. Except as provided in Article IV, when service requires Railway to move cars from one location to another location for any reason while at the exhibition point, additional charges will be made for locomotive and crew at the rate of $285.00 per hour or fraction thereof.

VI. When it becomes necessary for Railway to provide water for circus or show cars, the charges for this special service at points on the rails of this company will be for water at actual cost, and for labor in supplying water at the rate of $19.00 per hour or fraction thereof.

VII. In the event it is necessary for Railway to clean track property where Show Company's rail cars and equipment are stopped and stored after Show Company's cars and equipment are moved from said track or tracks, Railway will in turn, bill Show Company at its cost for cleaning up property pursuant to Article VIII.

VIII. The Railway shall submit a bill to Show Company at the end of each month for all outstanding charges, if any, incurred under Articles V, VI, VII of this contract. Show Company agrees to make payment for each such bill to the Railway within 48 hours after receipt of such bill.

(NS-C-18367)

IX. The Show Company warrants that all of its rail cars and equipment ("Equipment") shall be in good condition and running order. The Equipment shall comply with the provisions of the Federal Safety Appliance Act, as amended, and with any other laws, statutes, rules, or regulations, federal or state, applicable to the condition of the Equipment. The Show Company shall be solely responsible for the consequences of the failure of the Equipment to fully comply with such laws, statutes, rules or regulations, and it shall indemnify and hold harmless Railway, its parent, subsidiaries and affiliates and all of their respective directors, officers, agents and employees from and against any and all liability, fines, penalties or costs of whatever nature which arise or result from the failure of the Show Company to comply with the provisions of this Article. The Railway shall have the right to refuse to accept from the Show Company any Equipment which does not meet the requirements of such laws, statutes, rules or regulations.

X. That the Show Company undertakes to keep all of its performers, members, agents and employees while on Railway premises in passenger cars, excepting only such employees as are necessarily on or about other cars actually engaged in tending or caring for animals and property of the Show Company.

XI. (a) Show Company agrees to indemnify and save Railway harmless from and against any and all loss, cost, expense, claim or liability whatsoever (including but not limited to attorneys' fees) resulting from the following:

(1) Any loss of life or personal injury incurred or sustained by the employees, performers, officers, members, agents, licensees, or invitees of Show Company and any loss of or damage to the property of any such persons arising from, incident to, or occurring as a result of the transportation services for which provision is made in this Agreement, or as a result of the presence of any such persons on or near the property or equipment of Railway, regardless of whether said loss of life or personal injury or property loss or damage is caused in whole or in part by the negligence, regardless of degree, of Railway.

(2) Any loss of life or injury incurred or sustained by any person not covered by Article XI (a) above (including but not limited to employees and officers of Railway) and any loss of or damage to any property not so covered, (including but not limited to the property of Railway) arising from, incident to, or occurring as a result of negligence of Show Company, or as a result of any defect in the cars or other equipment or inflammable or explosive articles, regardless of whether negligence, regardless of degree, on the part of Railway may have caused or contributed to said loss of life, personal injury or property loss or damage.

(b) In the event that any portion of the transportation services provided by Railway is to be performed in the State of Ohio, the Show Company, with respect to the indemnification provisions contained in Article XI, hereby expressly waives any immunity granted or afforded it pursuant to Section 35, Article II of the Ohio Constitution and Section 4123.74 of the Ohio Revised Code.

(NS-C-18367)

(c) If any provision of this agreement should become or be found to be invalid or unenforceable, the remaining provisions and parts hereof shall continue to be fully effective and enforceable.

(d) IN NO EVENT UNDER ANY THEORY OF LAW, WHETHER IN TORT, CONTRACT OR OTHERWISE, SHALL RAILWAY HAVE ANY RESPONSIBILITY TO SHOW COMPANY FOR INDIRECT, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, LOSS OF REVENUES, BUSINESS INTERRUPTION EXPENSES, OR COST OF CAPITAL.

XII. Show Company will also comply with the attached Insurance Schedule.

XIII. The parties hereto agree that this Agreement may be amended from time to time to add additional move segments by incorporation of an Addendum.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized respective representatives on the date written below.

NORFOLK SOUTHERN RAILWAY COMPANY
AND CONSOLIDATED SUBSIDIARIES

BY [signature]

TITLE Asst. Product Manager

DATE 8/28/01

STRATES SHOWS, INC.

BY [signature]

TITLE Trans. Coord

DATE 24 Aug 01

(NS-C-18367)

# INSURANCE SCHEDULE

At its sole cost and expense, said Show Company will procure and maintain the following insurance during the entire period of this contract:

1. Workmen's Compensation, Employer's Liability and Occupational Disease Insurance.

2. Comprehensive general liability insurance (including contractual liability covering the obligations being assumed under this contract) with a limit of not less than Five Million Dollars ( $5,000,000.00) single limit, bodily injury and/or property damage combined, for damage arising out of bodily injuries to, or death of all persons in any one occurrence and for damage to or destruction of property including the loss of use thereof, in any one occurrence.

3. All property insurance maintained by the Show Company covering exhibition cars, animals, birds, reptiles, musical instruments, uniforms, costumes, posters, tickets, food, feed, tools, apparatus, paraphernalia, equipment, explosives, and diverse other personal property of every kind and description shall carry a waiver of subrogation in favor of Norfolk Southern Railway Company.

Certificates indicating the above insurance coverage will be furnished for the files of Norfolk Southern Railway Company.

All insurance policies must be endorsed to provide that the Insurance Company shall give thirty days notice in writing to:

Mr. David W. Fries,
Risk Manager
Norfolk Southern Corporation
3 Commercial Place
Norfolk, VA. 23510

if the policies are to be terminated or if any changes are to be made in them which will affect in any way the insurance requirements of this Agreement.

Appendix A to
Contract NS-C-18367
Page 1 of 1

Equipment: Privately-owned or leased 43 flat cars and 10 passenger coaches

| Movement Date | Move Segment | Number of Cars | Quote | Storage | Total (per train) |
|---|---|---|---|---|---|
| 09/05/2001 | From: CSXT Interchange at Buffalo, NY<br>To: Storage on NS at Anderson, SC | 53 | $61,882 | $2,018 | $63,900 |
| 09/24/2001 | From: Storage on NS at Anderson, SC<br>To: Storage on NS at Winston-Salem, NC | 53 | $24,718 | $2,018 | $26,736 |
| 10/09/2001 | From: Storage on NS at Winston-Salem, NC<br>To: CSXT Interchange at Raleigh, NC | 53 | $15,761 | --------- | $15,761 |
| 10/23/2001 | From: CSXT Interchange at Raleigh, NC<br>To: Storage on NS at Albany, GA | 53 | $40,251 | $2,018 | $42,269 |
| 11/05/2001 | From: Storage on NS at Albany, GA<br>To: GFRR Interchange at Valdosta, GA<br><br>From: GFRR Interchange at Valdosta, GA<br>To: CSXT Interchange at Jacksonville, FL | 53 | $16,761 | --------- | $16,761 |

Mileage Allowance: Shipments moving under the terms of this Contract are not subject to mileage allowance payments by Railroad. If Railroad inadvertently pays mileage allowances to the car owner, Railroad will seek reimbursement of overpayment from car owner. If Railroad is unable to collect the overpayment from the car owner, Customer agrees to reimburse Railroad for overpayment.

Switching: Railroad will not absorb any switching charges of connecting carriers at Origin or Destination. Any applicable switching charges at Origin or Destination will be paid to Railroad in addition to the line haul charges under this Contract.

Fuel Surcharge: See attached addendum

C2A-LGF

Addendum to Contract
NS-C-18367
Page 1 of 1

In the event the price of West Texas Intermediate Crude Oil, as published in the Wall Street Journal, exceeds $28.00 per barrel for thirty (30) consecutive days, NS retains the right to apply a fuel surcharge to the freight charge(s) contained in this authority in effect on the date the fuel surcharge is applied, hereinafter referred to as the "Base Freight Charge(s)". If this option is exercised, the fuel surcharge shall be applied according to the following schedule:

| Texas Intermediate Crude Oil (Price per barrel) | Cumulative Fuel Surcharge (Percentage) |
|---|---|
| $28 | 2% |
| $33 | 4% |
| $38 | 6% |
| $43 | 8% |
| Each $5.00 per barrel increase thereafter | An additional 2% |

The price of West Texas Intermediate Crude Oil must exceed a given bracket for thirty (30) consecutive days for the surcharge under that bracket to be applicable. If the price of West Texas Intermediate Crude Oil ceases to be available from the Wall Street Journal or some other readily accessible source, a substitute to measure will be utilized.

Customers will receive notice of any fuel surcharge not less than ten (10) days prior to its application. Any fuel surcharge applied to the freight charge(s) in this authority will be removed or reduced when the price of West Texas Intermediate Crude Oil remains below the price which triggers a specific surcharge bracket for thirty (30) consecutive days. Reductions will be made promptly after they become applicable. In no case will the freight charge(s) be reduced below the Base Freight Charge(s) nor will the application or removal of the fuel surcharge be retroactive.

NOV 13 2002

**NORFOLK SOUTHERN CORPORATION**

**CONFIDENTIAL TRANSMITTAL**

Date: November 7, 2002
File: C2E-REG-NS-C-18367

TO: William E. Alford
Transportation Coordinator
Strates Shows, Inc.
P. O. Box 174
Orlando, FL 32802
FAX (407) 859-7758

FROM: Mrs. L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S. E.
Roanoke, VA 24042-0041
FAX (540) 985-6103

NS 2002

Attachment: Fully executed Contract/Amendment - final distribution.

Ancillary: X NO; ___ YES - Intercarrier agreement - Railroad use only.

Contract No.: REG-NS-C-18367 Amendment No. 2

Customer: Same

___ Cancels ___ Replaces: N/A

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions or revisions? Call **Lynn Ferris at 540-985-6119 or contact via Internet e-mail at lgferris@nscorp.com.**

cc :

___ Roanoke - Box 0037
___ Roanoke - Box 0041 (R-9M-X-168349)
___ Roanoke - Box 0041 (C1)
___ Atlanta - Box 154 (RACS - Crandall Smith)

<u>CONFIDENTIAL</u>

AMENDMENT NO. 2 TO

TRANSPORTATION AGREEMENT
NS-C-18367
(Contains all provisions)

**THIS AMENDMENT** is made by and between the Norfolk Southern Railway Company and Consolidated Subsidiaries, of the first part, hereinafter referred to as the "Railway" and Strates Shows, Inc. of the second part, hereinafter referred to as the "Show Company."

**WITNESSETH:**

**WHEREAS**, The Show Company is the owner of a circus, theatrical or other similar organization and has special cars designed for the carriage of paraphernalia, such as theatrical scenery, circus tents, horses, wild animals, and other property customarily used by such an organization, also certain coaches for the transportation of its performers, members, agents and employees;

**AND WHEREAS**, The Show Company represents that necessity exists for certain of its employees to be in and upon its cars other than passenger cars in order to tend and care for its animals and property in transit;

**AND WHEREAS**, It is not the regular business of the Railway to haul the special or private cars of organizations such as the Show Company, or to transport persons, animals and freight on such cars;

**AND WHEREAS**, The Show Company is desirous of entering into a special agreement with the Railway for the purpose of having its cars, equipment and employees moved from point to point;

**NOW THEREFORE**, In consideration of the increased risks attendant upon this form of transportation and in consideration of the lower rate hereinafter named, the parties have contracted as follows:

I. That the Show Company shall pay to the Railway for all services. Billing will be issued by Railway after each movement. Rates will be prescribed and agreed to by both Show Company and Railway in advance. Show Company shall pay all bills issued by Railway within fifteen (15) days of date of freight bill.

Payment to: Mr. J. Crandall Smith, Account Manager
Revenue Accounting - Customer Service, Dept. 154
Norfolk Southern Railway Company
125 Spring Street, S. W.
Atlanta, GA 30303

Plus additional charges provided in Articles V, VI, and VII below.

II. That the Railway shall haul said cars, equipment and employees of the Show Company in a train of (see Appendix "A") with the privilege of stopping for exhibition at the following places on the line of the Railway, to-wit:

See Appendix "A"

III. In the event of strikes or other causes beyond the control of Railway, by which the Railway is prevented from carrying out this agreement, the Railway will not be held liable to furnish the transportation herein contemplated.

IV. At locations where the Show Company has arranged to store their railroad cars on Railway's tracks during exhibition of their show, contract price includes the service of spotting cars on unloading track; switching cars to storage track; switching cars to loading track; switching and pulling cars for outbound movement.

V. Except as provided in Article IV, when service requires Railway to move cars from one location to another location for any reason while at the exhibition point, additional charges will be made for locomotive and crew at the rate of $285.00 per hour or fraction thereof.

VI. When it becomes necessary for Railway to provide water for circus or show cars, the charges for this special service at points on the rails of this company will be for water at actual cost, and for labor in supplying water at the rate of $19.00 per hour or fraction thereof.

VII. In the event it is necessary for Railway to clean track property where Show Company's rail cars and equipment are stopped and stored after Show Company's cars and equipment are moved from said track or tracks, Railway will in turn, bill Show Company at its cost for cleaning up property pursuant to Article VIII.

VIII. The Railway shall submit a bill to Show Company at the end of each month for all outstanding charges, if any, incurred under Articles V, VI, VII of this contract. Show Company agrees to make payment for each such bill to the Railway within 48 hours after receipt of such bill.

(REG-NS-C-18367-02)

IX. The Show Company warrants that all of its rail cars and equipment ("Equipment") shall be in good condition and running order. The Equipment shall comply with the provisions of the Federal Safety Appliance Act, as amended, and with any other laws, statutes, rules, or regulations, federal or state, applicable to the condition of the Equipment. The Show Company shall be solely responsible for the consequences of the failure of the Equipment to fully comply with such laws, statutes, rules or regulations, and it shall indemnify and hold harmless Railway, its parent, subsidiaries and affiliates and all of their respective directors, officers, agents and employees from and against any and all liability, fines, penalties or costs of whatever nature which arise or result from the failure of the Show Company to comply with the provisions of this Article. The Railway shall have the right to refuse to accept from the Show Company any Equipment which does not meet the requirements of such laws, statutes, rules or regulations.

X. That the Show Company undertakes to keep all of its performers, members, agents and employees while on Railway premises in passenger cars, excepting only such employees as are necessarily on or about other cars actually engaged in tending or caring for animals and property of the Show Company.

XI. (a) Show Company agrees to indemnify and save Railway harmless from and against any and all loss, cost, expense, claim or liability whatsoever (including but not limited to attorneys' fees) resulting from the following:

(1) Any loss of life or personal injury incurred or sustained by the employees, performers, officers, members, agents, licensees, or invitees of Show Company and any loss of or damage to the property of any such persons arising from, incident to, or occurring as a result of the transportation services for which provision is made in this Agreement, or as a result of the presence of any such persons on or near the property or equipment of Railway, regardless of whether said loss of life or personal injury or property loss or damage is caused in whole or in part by the negligence, regardless of degree, of Railway.

(2) Any loss of life or injury incurred or sustained by any person not covered by Article XI (a) above (including but not limited to employees and officers of Railway) and any loss of or damage to any property not so covered, (including but not limited to the property of Railway) arising from, incident to, or occurring as a result of negligence of Show Company, or as a result of any defect in the cars or other equipment or inflammable or explosive articles, regardless of whether negligence, regardless of degree, on the part of Railway may have caused or contributed to said loss of life, personal injury or property loss or damage.

(b) In the event that any portion of the transportation services provided by Railway is to be performed in the State of Ohio, the Show Company, with respect to the indemnification provisions contained in Article XI, hereby expressly waives any immunity granted or afforded it pursuant to Section 35, Article II of the Ohio Constitution and Section 4123.74 of the Ohio Revised Code.

(REG-NS-C-18367-02)

(c) If any provision of this agreement should become or be found to be invalid or unenforceable, the remaining provisions and parts hereof shall continue to be fully effective and enforceable.

(d) IN NO EVENT UNDER ANY THEORY OF LAW, WHETHER IN TORT, CONTRACT OR OTHERWISE, SHALL RAILWAY HAVE ANY RESPONSIBILITY TO SHOW COMPANY FOR INDIRECT, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, LOSS OF REVENUES, BUSINESS INTERRUPTION EXPENSES, OR COST OF CAPITAL.

XII. Show Company will also comply with the attached Insurance Schedule.

XIII. The parties hereto agree that this Agreement may be amended from time to time to add additional move segments by incorporation of an Addendum.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized respective representatives on the date written below.

| STRATES SHOWS, INC. | NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES |
|---|---|
| BY W.E. Alford | BY Robt D Acoza |
| TITLE Admin/Trans. Coord. | TITLE Product Manager - Whet/Flour |
| DATE 07 Nov 02 | DATE 11/7/02 |

(REG-NS-C-18367-02)
C2E-SSE

## INSURANCE SCHEDULE

At its sole cost and expense, said Show Company will procure and maintain the following insurance during the entire period of this contract:

1. Workmen's Compensation, Employer's Liability and Occupational Disease Insurance.

2. Comprehensive general liability insurance (including contractual liability covering the obligations being assumed under this contract) with a limit of not less than Five Million Dollars ( $5,000,000.00) single limit, bodily injury and/or property damage combined, for damage arising out of bodily injuries to, or death of all persons in any one occurrence and for damage to or destruction of property including the loss of use thereof, in any one occurrence.

3. All property insurance maintained by the Show Company covering exhibition cars, animals, birds, reptiles, musical instruments, uniforms, costumes, posters, tickets, food, feed, tools, apparatus, paraphernalia, equipment, explosives, and diverse other personal property of every kind and description shall carry a waiver of subrogation in favor of Norfolk Southern Railway Company.

Certificates indicating the above insurance coverage will be furnished for the files of Norfolk Southern Railway Company.

All insurance policies must be endorsed to provide that the Insurance Company shall give thirty days notice in writing to:

Mr. David W. Fries,
Risk Manager
Norfolk Southern Corporation
3 Commercial Place
Norfolk, VA. 23510

if the policies are to be terminated or if any changes are to be made in them which will affect in any way the insurance requirements of this Agreement.

Effective Date: September 20, 2002
Expiration Date: December 31, 2002

Commodity: Circus Outfits (STCC 41-211-40)

Origin/Destination/Rate:

| Origin | Destination | Rate ($ per train) |
|---|---|---|
| ✓ Albany, GA | Jacksonville, FL | 16,361✓ |
| ✓ Valdosta, GA | Albany, GA | 14,300✓ |
| ✓ Winston-Salem, NC | Valdosta, GA | 32,482✓ |
| Binghamton, NY | Vestal, NY | 7,368 |
| ✓ Buffalo, NY | Anderson, SC | 64,000✓ |
| Vestal, NY | Binghamton, NY | 5,250 |
| ✓ Anderson, SC | Winston-Salem, NC | 26,836✓ |

Equipment: Privately-owned or leased cars

Switching: Railroad will not absorb any switching charges of connecting carriers at Origin or Destination. Any applicable switching charges at Origin or Destination will be paid to Railroad in addition to the line haul charges under this Contract.

Fuel Surcharge: In the event the price of West Texas Intermediate Crude Oil, as published in the Wall Street Journal, exceeds $28.00 per barrel for thirty (30) consecutive days, NS retains the right to apply a fuel surcharge to the freight charge(s) contained in this authority in effect on the date the fuel surcharge is applied, hereinafter referred to as the "Base Freight Charge(s)". If this option is exercised, the fuel surcharge shall be applied according to the following schedule:

| Texas Intermediate Crude Oil (Price per barrel) | Cumulative Fuel Surcharge (Percentage) |
|---|---|
| $28 | 2% |
| $33 | 4% |
| $38 | 6% |
| $43 | 8% |
| Each $5.00 per barrel increase thereafter | An additional 2% |

The price of West Texas Intermediate Crude Oil must exceed a given bracket for thirty (30) consecutive days for the surcharge under that bracket to be applicable. If the price of West Texas Intermediate Crude Oil ceases to be available from the Wall Street Journal or some other readily accessible source, a substitute to measure will be utilized.

Customers will receive notice of any fuel surcharge not less than ten (10) days prior to its application. Any fuel surcharge applied to the freight charge(s) in this authority will be removed or reduced when the price of West Texas Intermediate Crude Oil remains below the price which triggers a specific surcharge bracket for thirty (30) consecutive days. Reductions will be made promptly after they become applicable. In no case will the freight charge(s) be reduced below the Base Freight Charge(s) nor will the application or removal of the fuel surcharge be retroactive.

C2E-SSE

M/

**NORFOLK SOUTHERN CORPORATION**

**CONFIDENTIAL TRANSMITTAL**

MAY 1 2 2003

Date: May 7, 2003
File: C2A-REG-NS-C-18367

TO: William E. Alford
Transportation Coordinator
Strates Shows, Inc.
P. O. Box 174
Orlando, FL 32802

FROM: Mrs. L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S. E.
Roanoke, VA 24042-0041
FAX (540) 985-6103

Attachment: Fully executed Contract/Amendment - final distribution.

Ancillary: _X_ NO; ___ YES - Intercarrier agreement - Railroad use only.

Contract No.: REG-NS-C-18367 Amendment No. 1

Customer: Same

___ Cancels ___ Replaces: N/A

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions or revisions? Call **Bob George at (540) 985-6009.**

cc :

___ Roanoke - Box 0037
___ Roanoke - Box 0041 (R-9M-X-168349)
___ Roanoke - Box 0041 (C1)
___ Atlanta - Box 134 (Transportation - Attn: T. Heilig- AVP)
___ Atlanta - Box 153 (Clearance - Attn: Mary McCoy Smith - Mgr)
___ Atlanta - Box 154 (RACS - Crandall Smith)
___ Atlanta - Box 169 (Acctg. Operations - Attn: M. Sheets - AVP)
___ Atlanta - Box 184 (Mech - Attn: D. Vittur, Gen. Mgr-Car Maintenance)
___ Norfolk - Box 236 (David W. Fries - Risk Management)

**CONFIDENTIAL**

AMENDMENT NO. 3 TO

TRANSPORTATION AGREEMENT
NS-C-18367
(Contains all provisions)

**THIS AMENDMENT** is made by and between the Norfolk Southern Railway Company and Consolidated Subsidiaries, of the first part, hereinafter referred to as the "Railway" and Strates Shows, Inc. of the second part, hereinafter referred to as the "Show Company."

**WITNESSETH:**

**WHEREAS**, The Show Company is the owner of a circus, theatrical or other similar organization and has special cars designed for the carriage of paraphernalia, such as theatrical scenery, circus tents, horses, wild animals, and other property customarily used by such an organization, also certain coaches for the transportation of its performers, members, agents and employees;

**AND WHEREAS**, The Show Company represents that necessity exists for certain of its employees to be in and upon its cars other than passenger cars in order to tend and care for its animals and property in transit;

**AND WHEREAS**, It is not the regular business of the Railway to haul the special or private cars of organizations such as the Show Company, or to transport persons, animals and freight on such cars;

**AND WHEREAS**, The Show Company is desirous of entering into a special agreement with the Railway for the purpose of having its cars, equipment and employees moved from point to point;

**NOW THEREFORE**, In consideration of the increased risks attendant upon this form of transportation and in consideration of the lower rate hereinafter named, the parties have contracted as follows:

I. That the Show Company shall pay to the Railway for all services. Billing will be issued by Railway after each movement. Rates will be prescribed and agreed to by both Show Company and Railway in advance. Show Company shall pay all bills issued by Railway within fifteen (15) days of date of freight bill.

Payment to:

Mr. J. Crandall Smith, Account Manager
Revenue Accounting - Customer Service, Dept. 154
Norfolk Southern Railway Company
125 Spring Street, S. W.
Atlanta, GA 30303

Plus additional charges provided in Articles V, VI, and VII below.

II. That the Railway shall haul said cars, equipment and employees of the Show Company in a train of (see Appendix "A") with the privilege of stopping for exhibition at the following places on the line of the Railway, to-wit:

See Appendix "A"

III. In the event of strikes or other causes beyond the control of Railway, by which the Railway is prevented from carrying out this agreement, the Railway will not be held liable to furnish the transportation herein contemplated.

IV. At locations where the Show Company has arranged to store their railroad cars on Railway's tracks during exhibition of their show, contract price includes the service of spotting cars on unloading track; switching cars to storage track; switching cars to loading track; switching and pulling cars for outbound movement.

V. Except as provided in Article IV, when service requires Railway to move cars from one location to another location for any reason while at the exhibition point, additional charges will be made for locomotive and crew at the rate of $285.00 per hour or fraction thereof.

VI. Subject to pre-approval by Railway, Railway may provide water for circus or show cars. The charges for this special service at points on the rails of this company will be for water at actual cost, and for labor in supplying water.

VII. In the event it is necessary for Railway to clean track property where Show Company's rail cars and equipment are stopped and stored after Show Company's cars and equipment are moved from said track or tracks, Railway will in turn, bill Show Company at its cost for cleaning up property pursuant to Article VIII.

VIII. The Railway shall submit a bill to Show Company at the end of each month for all outstanding charges, if any, incurred under Articles V, VI, VII of this contract. Show Company agrees to make payment for each such bill to the Railway within 48 hours after receipt of such bill.

(REG-NS-C-18367-03)

IX. The Show Company warrants that all of its rail cars and equipment ("Equipment") shall be in good condition and running order. The Equipment shall comply with the provisions of the Federal Safety Appliance Act, as amended, and with any other laws, statutes, rules, or regulations, federal or state, applicable to the condition of the Equipment. The Show Company shall be solely responsible for the consequences of the failure of the Equipment to fully comply with such laws, statutes, rules or regulations, and it shall indemnify and hold harmless Railway, its parent, subsidiaries and affiliates and all of their respective directors, officers, agents and employees from and against any and all liability, fines, penalties or costs of whatever nature which arise or result from the failure of the Show Company to comply with the provisions of this Article. The Railway shall have the right to refuse to accept from the Show Company any Equipment which does not meet the requirements of such laws, statutes, rules or regulations.

X. That the Show Company undertakes to keep all of its performers, members, agents and employees while on Railway premises in passenger cars, excepting only such employees as are necessarily on or about other cars actually engaged in tending or caring for animals and property of the Show Company.

XI. (a) Show Company agrees to indemnify and save Railway harmless from and against any and all loss, cost, expense, claim or liability whatsoever (including but not limited to attorneys' fees) resulting from the following:

(1) Any loss of life or personal injury incurred or sustained by the employees, performers, officers, members, agents, licensees, or invitees of Show Company and any loss of or damage to the property of any such persons arising from, incident to, or occurring as a result of the transportation services for which provision is made in this Agreement, or as a result of the presence of any such persons on or near the property or equipment of Railway, regardless of whether said loss of life or personal injury or property loss or damage is caused in whole or in part by the negligence, regardless of degree, of Railway.

(2) Any loss of life or injury incurred or sustained by any person not covered by Article XI (a) above (including but not limited to employees and officers of Railway) and any loss of or damage to any property not so covered, (including but not limited to the property of Railway) arising from, incident to, or occurring as a result of negligence of Show Company, or as a result of any defect in the cars or other equipment or inflammable or explosive articles, regardless of whether negligence, regardless of degree, on the part of Railway may have caused or contributed to said loss of life, personal injury or property loss or damage.

(b) In the event that any portion of the transportation services provided by Railway is to be performed in the State of Ohio, the Show Company, with respect to the indemnification provisions contained in Article XI, hereby expressly waives any immunity granted or afforded it pursuant to Section 35, Article II of the Ohio Constitution and Section 4123.74 of the Ohio Revised Code.

(REG-NS-C-18367-03)

# INSURANCE SCHEDULE TO

# TRANSPORTATION AGREEMENT
# NS-C-18367

At its sole cost and expense, said Show Company will procure and maintain the following insurance during the entire period of this contract:

1. Workmen's Compensation, Employer's Liability and Occupational Disease Insurance.

2. Comprehensive general liability insurance (including contractual liability covering the obligations being assumed under this contract) with a limit of not less than Five Million Dollars ( $5,000,000.00) single limit, bodily injury and/or property damage combined, for damage arising out of bodily injuries to, or death of all persons in any one occurrence and for damage to or destruction of property including the loss of use thereof, in any one occurrence.

3. All property insurance maintained by the Show Company covering exhibition cars, animals, birds, reptiles, musical instruments, uniforms, costumes, posters, tickets, food, feed, tools, apparatus, paraphernalia, equipment, explosives, and diverse other personal property of every kind and description shall carry a waiver of subrogation in favor of Norfolk Southern Railway Company.

Certificates indicating the above insurance coverage will be furnished for the files of Norfolk Southern Railway Company.

All insurance policies must be endorsed to provide that the Insurance Company shall give thirty days notice in writing to:

Mr. David W. Fries,
Risk Manager
Norfolk Southern Corporation
3 Commercial Place
Norfolk, VA. 23510

if the policies are to be terminated or if any changes are to be made in them which will affect in any way the insurance requirements of this Agreement.

Appendix A to
Contract NS-C-18367
Amendment No. 3
Page 1 of 2

Effective Date: April 28, 2003
Expiration Date: December 31, 2003

Commodity: Circus Outfits (STCC 41-211-40)

Origin/Destination/
Rate:

| Origin | Destination | Rate ($ per train) |
|---|---|---|
| Albany, GA | Jacksonville, FL | 17,015 |
| Augusta, GA | Albany, GA | 26,088 |
| Winston-Salem, NC | Augusta, GA | 27,710 |
| Binghamton, NY | Vestal, NY | 7,578 |
| Buffalo, NY | Anderson, SC | 66,475 |
| Vestal, NY | Buffalo, NY | 18,410 |
| Anderson, SC | Winston-Salem, NC | 27,825 |
| Charleston, SC | N. Charleston, SC | 7,578 |
| N. Charleston, SC | Charleston, SC | 5,460 |

Equipment: Privately-owned or leased cars

Mileage Allowance: Shipments moving under the terms of this Contract are not subject to mileage allowance payments by Railroad. If Railroad inadvertently pays mileage allowances to the car owner, Railroad will seek reimbursement of overpayment from car owner. If Railroad is unable to collect the overpayment from the car owner, Customer agrees to reimburse Railroad for overpayment.

Switching: Railroad will not absorb any switching charges of connecting carriers at Origin or Destination. Any applicable switching charges at Origin or Destination will be paid to Railroad in addition to the line haul charges under this Contract.

Fuel Surcharge: In the event the price of West Texas Intermediate Crude Oil, as published in the Wall Street Journal, exceeds $28.00 per barrel for thirty (30) consecutive days, NS retains the right to apply a fuel surcharge to the freight charge(s) contained in this authority in effect on the date the fuel surcharge is applied, hereinafter referred to as the "Base Freight Charge(s)". If this option is exercised, the fuel surcharge shall be applied according to the following schedule:

(c) If any provision of this agreement should become or be found to be invalid or unenforceable, the remaining provisions and parts hereof shall continue to be fully effective and enforceable.

(d) IN NO EVENT UNDER ANY THEORY OF LAW, WHETHER IN TORT, CONTRACT OR OTHERWISE, SHALL RAILWAY HAVE ANY RESPONSIBILITY TO SHOW COMPANY FOR INDIRECT, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, LOSS OF REVENUES, BUSINESS INTERRUPTION EXPENSES, OR COST OF CAPITAL.

XII. Show Company will also comply with the attached Insurance Schedule.

XIII. The parties hereto agree that this Agreement may be amended from time to time to add additional move segments by incorporation of an Addendum.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized respective representatives on the date written below.

| STRATES SHOWS, INC. | NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES |
|---|---|
| BY E. James Strates | BY Robt D. [signature] |
| TITLE President | TITLE Product Manager - Wheat/Flour |
| DATE ~~4~~ 5/2/03 | DATE 5-5-03 |

(REG-NS-C-18367-03)
C2A-LGF

Appendix A to
Contract NS-C-18367
Amendment No. 3
Page 2 of 2

| Texas Intermediate Crude Oil (Price per barrel) | Cumulative Fuel Surcharge (Percentage) |
|---|---|
| $28 | 2% |
| $33 | 4% |
| $38 | 6% |
| $43 | 8% |
| Each $5.00 per barrel increase thereafter | An additional 2% |

The price of West Texas Intermediate Crude Oil must exceed a given bracket for thirty (30) consecutive days for the surcharge under that bracket to be applicable. If the price of West Texas Intermediate Crude Oil ceases to be available from the Wall Street Journal or some other readily accessible source, a substitute to measure will be utilized.

Customers will receive notice of any fuel surcharge not less than ten (10) days prior to its application. Any fuel surcharge applied to the freight charge(s) in this authority will be removed or reduced when the price of West Texas Intermediate Crude Oil remains below the price which triggers a specific surcharge bracket for thirty (30) consecutive days. Reductions will be made promptly after they become applicable. In no case will the freight charge(s) be reduced below the Base Freight Charge(s) nor will the application or removal of the fuel surcharge be retroactive.

C2A-LGF

2004

# NORFOLK SOUTHERN CORPORATION

## CONFIDENTIAL TRANSMITTAL

Date: February 3, 2004
File: C3B-REG-NS-C-18367 TWT

TO: William E. Alford
Transportation Coordinator
Strates Shows, Inc.
P. O. Box 174
Orlando, FL 32802

FROM: Mrs. L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S. E.
Roanoke, VA 24042-0041
FAX (540) 985-6103

2004 Contract

Attachment: Fully executed Contract/Amendment - final distribution.

Ancillary: _X_ NO; ___ YES - Intercarrier agreement - Railroad use only.

Contract No.: REG-NS-C-18367 Amendment No. 1

Customer: Strates Shows, Inc.

___ Cancels ___ Replaces: N/A

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions or revisions? Call **Bob George at (540) 985-6009.**

cc :

___ Roanoke - Box 0041 (R-9M-X-168349)
___ Roanoke - Box 0037
___ Roanoke - Box 0041 (C1)
___ Atlanta - Box 134 (Transportation - Attn: T. Heilig- AVP)
___ Atlanta - Box 153 (Clearance - Attn: Mary McCoy Smith - Mgr)
___ Atlanta - Box 154 (RACS - Crandall Smith)
___ Atlanta - Box 169 (Acctg. Operations - Attn: M. Sheets - AVP)
___ Atlanta - Box 184 (Mech - Attn: D. Vittur, Gen. Mgr-Car Maintenance)
___ Norfolk - Box 236 (David W. Fries - Risk Management)

(C3B-TWT)

CONFIDENTIAL

AMENDMENT NO. 4 TO

TRANSPORTATION AGREEMENT
NS-C-18367
(Contains all provisions)

**THIS AMENDMENT** is made by and between the Norfolk Southern Railway Company and Consolidated Subsidiaries, of the first part, hereinafter referred to as the "Railway" and Strates Shows, Inc. of the second part, hereinafter referred to as the "Show Company."

**WITNESSETH:**

**WHEREAS,** The Show Company is the owner of a circus, theatrical or other similar organization and has special cars designed for the carriage of paraphernalia, such as theatrical scenery, circus tents, horses, wild animals, and other property customarily used by such an organization, also certain coaches for the transportation of its performers, members, agents and employees;

**AND WHEREAS,** The Show Company represents that necessity exists for certain of its employees to be in and upon its cars other than passenger cars in order to tend and care for its animals and property in transit;

**AND WHEREAS,** It is not the regular business of the Railway to haul the special or private cars of organizations such as the Show Company, or to transport persons, animals and freight on such cars;

**AND WHEREAS,** The Show Company is desirous of entering into a special agreement with the Railway for the purpose of having its cars, equipment and employees moved from point to point;

**NOW THEREFORE,** In consideration of the increased risks attendant upon this form of transportation and in consideration of the lower rate hereinafter named, the parties have contracted as follows:

I. That the Show Company shall pay to the Railway for all services. Billing will be issued by Railway after each movement. Rates will be prescribed and agreed to by both Show Company and Railway in advance. Show Company shall pay all bills issued by Railway within fifteen (15) days of date of freight bill.

Payment to: Mr. J. Crandall Smith, Account Manager
Revenue Accounting - Customer Service, Dept. 154
Norfolk Southern Railway Company
125 Spring Street, S. W.
Atlanta, GA 30303

Plus additional charges provided in Articles V, VI, and VII below.

II. That the Railway shall haul said cars, equipment and employees of the Show Company in a train of (see Appendix "A") with the privilege of stopping for exhibition at the following places on the line of the Railway, to-wit:

See Appendix "A"

III. In the event of strikes or other causes beyond the control of Railway, by which the Railway is prevented from carrying out this agreement, the Railway will not be held liable to furnish the transportation herein contemplated.

IV. At locations where the Show Company has arranged to store their railroad cars on Railway's tracks during exhibition of their show, contract price includes the service of spotting cars on unloading track; switching cars to storage track; switching cars to loading track; switching and pulling cars for outbound movement.

V. Except as provided in Article IV, when service requires Railway to move cars from one location to another location for any reason while at the exhibition point, additional charges will be made for locomotive and crew at the rate of $285.00 per hour or fraction thereof.

VI. Subject to pre-approval by Railway, Railway may provide water for circus or show cars. The charges for this special service at points on the rails of this company will be for water at actual cost, and for labor in supplying water.

VII. In the event it is necessary for Railway to clean track property where Show Company's rail cars and equipment are stopped and stored after Show Company's cars and equipment are moved from said track or tracks, Railway will in turn, bill Show Company at its cost for cleaning up property pursuant to Article VIII.

VIII. The Railway shall submit a bill to Show Company at the end of each month for all outstanding charges, if any, incurred under Articles V, VI, VII of this contract. Show Company agrees to make payment for each such bill to the Railway within 48 hours after receipt of such bill.

(REG-NS-C-18367-03)

IX. The Show Company warrants that all of its rail cars and equipment ("Equipment") shall be in good condition and running order. The Equipment shall comply with the provisions of the Federal Safety Appliance Act, as amended, and with any other laws, statutes, rules, or regulations, federal or state, applicable to the condition of the Equipment. The Show Company shall be solely responsible for the consequences of the failure of the Equipment to fully comply with such laws, statutes, rules or regulations, and it shall indemnify and hold harmless Railway, its parent, subsidiaries and affiliates and all of their respective directors, officers, agents and employees from and against any and all liability, fines, penalties or costs of whatever nature which arise or result from the failure of the Show Company to comply with the provisions of this Article. The Railway shall have the right to refuse to accept from the Show Company any Equipment which does not meet the requirements of such laws, statutes, rules or regulations.

X. That the Show Company undertakes to keep all of its performers, members, agents and employees while on Railway premises in passenger cars, excepting only such employees as are necessarily on or about other cars actually engaged in tending or caring for animals and property of the Show Company.

XI. (a) Show Company agrees to indemnify and save Railway harmless from and against any and all loss, cost, expense, claim or liability whatsoever (including but not limited to attorneys' fees) resulting from the following:

(1) Any loss of life or personal injury incurred or sustained by the employees, performers, officers, members, agents, licensees, or invitees of Show Company and any loss of or damage to the property of any such persons arising from, incident to, or occurring as a result of the transportation services for which provision is made in this Agreement, or as a result of the presence of any such persons on or near the property or equipment of Railway, regardless of whether said loss of life or personal injury or property loss or damage is caused in whole or in part by the negligence, regardless of degree, of Railway.

(2) Any loss of life or injury incurred or sustained by any person not covered by Article XI (a) above (including but not limited to employees and officers of Railway) and any loss of or damage to any property not so covered, (including but not limited to the property of Railway) arising from, incident to, or occurring as a result of negligence of Show Company, or as a result of any defect in the cars or other equipment or inflammable or explosive articles, regardless of whether negligence, regardless of degree, on the part of Railway may have caused or contributed to said loss of life, personal injury or property loss or damage.

(b) In the event that any portion of the transportation services provided by Railway is to be performed in the State of Ohio, the Show Company, with respect to the indemnification provisions contained in Article XI, hereby expressly waives any immunity granted or afforded it pursuant to Section 35, Article II of the Ohio Constitution and Section 4123.74 of the Ohio Revised Code.

(REC-NS-C-18367-03)

(c) If any provision of this agreement should become or be found to be invalid or unenforceable, the remaining provisions and parts hereof shall continue to be fully effective and enforceable.

(d) IN NO EVENT UNDER ANY THEORY OF LAW, WHETHER IN TORT, CONTRACT OR OTHERWISE, SHALL RAILWAY HAVE ANY RESPONSIBILITY TO SHOW COMPANY FOR INDIRECT, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, LOSS OF REVENUES, BUSINESS INTERRUPTION EXPENSES, OR COST OF CAPITAL.

XII. Show Company will also comply with the attached Insurance Schedule.

XIII. The parties hereto agree that this Agreement may be amended from time to time to add additional move segments by incorporation of an Addendum.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by their duly authorized respective representatives on the date written below.

| STRATES SHOWS, INC. | NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED SUBSIDIARIES |
|---|---|
| BY W.E. Alford | BY Robt D Geor |
| TITLE Trans. Coord. | TITLE Product Manager |
| DATE 05 Jan 04 | DATE 1-27-04 |

(REG-NS-C-16367-03)
C3B-TWT

INSURANCE SCHEDULE TO

TRANSPORTATION AGREEMENT
NS-C-18367

At its sole cost and expense, said Show Company will procure and maintain the following insurance during the entire period of this contract:

1. Workmen's Compensation, Employer's Liability and Occupational Disease Insurance.

2. Comprehensive general liability insurance (including contractual liability covering the obligations being assumed under this contract) with a limit of not less than Five Million Dollars ( $5,000,000.00) single limit, bodily injury and/or property damage combined, for damage arising out of bodily injuries to, or death of all persons in any one occurrence and for damage to or destruction of property including the loss of use thereof, in any one occurrence.

3. All property insurance maintained by the Show Company covering exhibition cars, animals, birds, reptiles, musical instruments, uniforms, costumes, posters, tickets, food, feed, tools, apparatus, paraphernalia, equipment, explosives, and diverse other personal property of every kind and description shall carry a waiver of subrogation in favor of Norfolk Southern Railway Company.

Certificates indicating the above insurance coverage will be furnished for the files of Norfolk Southern Railway Company.

All insurance policies must be endorsed to provide that the Insurance Company shall give thirty days notice in writing to:

Mr. David W. Fries,
Risk Manager
Norfolk Southern Corporation
3 Commercial Place
Norfolk, VA 23510

if the policies are to be terminated or if any changes are to be made in them which will affect in any way the insurance requirements of this Agreement.

Appendix A to
Contract NS-C-18367
Amendment No. 3 4
Page 1 of 1

Effective Date: August 29, 2003
Expiration Date: December 31, 2003

Commodity: Circus Outfits (STCC 41-211-40)

Origin/Destination/
Rate:

| Origin | Destination | Rate ($ per train) |
|---|---|---|
| Albany, GA | Jacksonville, FL | 17,015 |
| ~~Augusta, GA~~ | ~~Albany, GA~~ | ~~26,088~~ |
| Raleigh, NC | Albany, GA | 43,960 |
| ~~Winston-Salem, NC~~ | ~~Augusta, GA~~ | ~~27,710~~ |
| Winston-Salem, NC | Raleigh, NC | 16,391 |
| Binghamton, NY | Vestal, NY | 7,578 |
| Buffalo, NY | Anderson, SC | 66,475 |
| Vestal, NY | Buffalo, NY | 18,410 |
| Anderson, SC | Winston-Salem, NC | 27,825 |
| 1 Charleston, SC | N. Charleston, SC | 7,578 |
| 2 N. Charleston, SC | Charleston, SC | 5,460 |

53,798

Items line out did not occur, we canceled.

RDB Alford

Equipment: Privately-owned or leased cars

Mileage Allowance: Shipments moving under the terms of this Contract are not subject to mileage allowance payments by Railroad. If Railroad inadvertently pays mileage allowances to the car owner, Railroad will seek reimbursement of overpayment from car owner. If Railroad is unable to collect the overpayment from the car owner, Customer agrees to reimburse Railroad for overpayment.

Switching: Railroad will not absorb any switching charges of connecting carriers at Origin or Destination. Any applicable switching charges at Origin or Destination will be paid to Railroad in addition to the line haul charges under this Contract.

Fuel Surcharge: Subject to the fuel surcharge provisions published in NS Conditions of Carriage No. 1-series or successor publication.

C3B-TWT

2005

AUG 30 2005

# NORFOLK SOUTHERN CORPORATION

## CONFIDENTIAL TRANSMITTAL

Date: August 15, 2005
File: C2A-REG-NS-C-19084-A

TO: William E. Alford
Transportation Coordinator
Strates Shows, Inc.
P. O. Box 174
Orlando, FL 32802
FAX (407) 859-7758

FROM: Mrs. L. G. Ferris
Manager Contract Publications
Norfolk Southern Corporation
110 Franklin Road, S. E.
Roanoke, VA 24042-0041
FAX (540) 981-4198

Attachment: Fully executed Contract/Amendment - final distribution.

Ancillary: _X_ NO; ___ YES - Intercarrier agreement - Railroad use only.

Contract No. REG-NS-C-19084-A Amendment No. N/A

Customer : Same

___ Cancels _X_ Replaces: N/A

Instructions: The attached fully executed Contract and/or Amendment should be retained for your records. If you received earlier drafts, please note if any revisions were made and replace those earlier drafts with this document.

Questions or revisions? Call Brooke Balbach at (757) 823-5438.

2005 Contract

cc :

___ Roanoke - Box 0037
___ Roanoke - Box 0041 (C1)
___ Atlanta - Box 134 (Transportation - T. Heilig- AVP)
___ Atlanta - Box 153 (Clearance - Mary McCoy Smith - Mgr)
___ Atlanta - Box 154 (RACS - Crandall Smith)
___ Atlanta - Box 169 (Acctg. Operations - M. Sheets - AVP)
___ Atlanta - Box 184 (Mech -Gen. Mgr-Car Maintenance)
___ Norfolk - Box 236 (Risk Management -David Fries)
___ Norfolk - Box 252 (Modalgistics – Brooke Balbach)

EXHIBIT
PENGAD 800-631-6989
STRATES 12
4-16-10 mc

CONFIDENTIAL

MASTER TRANSPORTATION AGREEMENT
REG-NS-C-19084-A

(REG-NS-C-19084 is reissued in its entirety as of the Effective Date shown herein)

**THIS CONTRACT** is made by and between Strates Shows, Inc., (Show Company) with business address at P. O. Box 174, Orlando, FL 32802; and Norfolk Southern Railway Company and Consolidated Subsidiaries (NS and/or Railroad), with business address at 110 Franklin Road, S. E., Roanoke, VA 24042-0041.

**WITNESSETH:**

**WHEREAS,** This Contract is made pursuant to (a) 49 U.S.C. §10709, if relating to transportation regulated under Subtitle IV, Part A of Title 49 U.S.C, or (b) 49 U.S.C. §10502, if relating to transportation which has been deregulated.

**WHEREAS,** Show Company is the owner of a circus, theatrical or other similar organization and has special cars designed for the carriage of miscellaneous items, such as theatrical scenery, circus tents, horses, wild animals, and other property customarily used by such an organization, as well as certain passenger cars for the transportation of its performers, members, agents and employees;

**AND WHEREAS,** Show Company represents that necessity exists for certain of its employees to be in and upon its cars other than passenger cars in order to tend and care for its animals and property in transit;

**AND WHEREAS,** It is not the regular business of the Railroad to haul the special or private cars of organizations such as the Show Company, or to transport persons, animals and freight on such cars;

**AND WHEREAS** Show Company is desirous of entering into a special agreement with the Railroad for the purpose of having its cars, equipment and employees moved from point to point;

**NOW THEREFORE,** in consideration of the premises and the mutual agreements herein contained, the parties agree as follows:

**SECTION 1 - TERM AND RENEWALS.** This Contract shall apply from the Effective Date through the Termination Date shown below. In addition, if Auto Renewals are indicated, this Contract shall automatically be extended for additional successive 12-month periods unless any party notifies the other parties at least 30 days prior to the end of a renewal Contract Period of its intention to terminate the Contract. If such notification is given, the Contract shall terminate at the end of the 12-month period in which notification was given.

| | |
|---|---|
| Effective Date: | July 1, 2005 |
| Termination Date: | December 31, 2005 |
| Automatic Renewals: | NO |

**SECTION 2 - TRANSPORTATION.** Railroad will transport "Commodity" from "Origin" to "Destination" via "Route" in accordance with the conditions described herein and in Appendix A.

**SECTION 3 – CONDITIONS.** The following conditions shall apply:

1. Railroad shall haul said cars, equipment and employees of Show Company in a train with the privilege of stopping for exhibition on the line of Railroad.

2. Show Company shall pay Railroad for all transportation services, as more specifically described on the applicable attached Appendix. Billing will be issued by Railroad after each movement, and payment will be made in accordance with the terms of the NS Conditions of Carriage in effect at the time the shipment is made. Rates must be agreed to by both Show Company and Railroad in advance.

   Payment to: Mr. J. Crandall Smith, Manager
   Revenue Accounting - Customer Service, Dept. 154
   Norfolk Southern Railway Company
   125 Spring Street, S. W.
   Atlanta, GA 30303

   There will be additional charges if services are provided as described in paragraphs numbered 4 and 5 below.

3. At locations where Show Company has arranged to store their railroad cars on Railroad's tracks during exhibition of their show, the price described in the attached Appendix includes the service of spotting cars on unloading track; switching cars to storage track; switching cars to loading track; switching and pulling cars for outbound movement. However, rates to a destination do not indicate the availability of storage track, nor do such rates include a charge for the use of the storage track. It is the responsibility of the Show Company to determine the availability of appropriate facilities.

4. Subject to pre-approval by Railroad, Railroad may provide water for circus or show cars. The charges for this special service will be for water at actual cost, and for labor in supplying water.

5. In the event it is necessary, in Railroad's judgment, for Railroad to clean track property where Show Company's rail cars and equipment are stopped and stored after Show Company's cars and equipment are moved from said track or tracks, Railroad will bill Show Company at its cost for cleaning up such property.

6. Railroad shall submit a bill to Show Company for all outstanding charges, if any, incurred under paragraphs numbered 4 and 5 of this Section of this Contract. Show Company agrees to make payment for each such bill to Railroad within 48 hours after receipt of such bill.

(REG-NS-C-19084-A)

7. Show Company warrants that all of its rail cars and equipment ("Equipment") shall be in good condition and running order. The Equipment shall comply with the provisions of the Federal Safety Appliance Act, as amended, and with any other laws, statutes, rules, or regulations, federal or state, applicable to the condition of the Equipment. Show Company shall be solely responsible for the consequences of the failure of the Equipment to fully comply with such laws, statutes, rules or regulations, and it shall indemnify and hold harmless Railroad, its parent, subsidiaries and affiliates and all of their respective directors, officers, agents and employees from and against any and all liability, fines, penalties or costs of whatever nature which arise or result from the failure of the Show Company to comply with the provisions of this paragraph. Railroad shall have the right to refuse to accept any Equipment which does not meet the requirements of such laws, statutes, rules or regulations.

8. Show Company undertakes to keep all of its performers, members, agents and employees while on Railroad premises in passenger cars, excepting only such individuals as are necessarily actually engaged in tending or caring for animals and property of the Show Company in the other cars.

<u>SECTION 4 – INDEMNIFICATION</u>. Show Company agrees to indemnify and save Railroad harmless from and against any and all loss, cost, expense, claim or liability whatsoever (including but not limited to attorneys' fees) resulting from the following:

1. Any loss of life or personal injury incurred or sustained by the employees, performers, officers, members, agents, licensees, or invitees of Show Company and any loss of or damage to the property of any such persons arising from, incident to, or occurring as a result of the transportation services for which provision is made in this Contract, or as a result of the presence of any such persons on or near the property or equipment of Railroad, regardless of whether said loss of life or personal injury or property loss or damage is caused in whole or in part by the negligence, regardless of degree, of Railroad.

2. Any loss of life or injury incurred or sustained by any person not covered by this Section (including but not limited to employees and officers of Railroad) and any loss of or damage to any property, (including but not limited to the property of Railroad) arising from, incident to, or occurring as a result of negligence of Show Company, or as a result of any defect in the cars or other equipment or inflammable or explosive articles, regardless of whether negligence, regardless of degree, on the part of Railroad may have caused or contributed to said loss of life, personal injury or property loss or damage.

3. In the event that any portion of the transportation services provided by Railroad is to be performed in the State of Ohio, Show Company, with respect to the indemnification provisions contained in this Section, hereby expressly waives any immunity granted or afforded it pursuant to Section 35, Article II of the Ohio Constitution and Section 4123.74 of the Ohio Revised Code.

(REG-NS-C-19084-A)

4. If any provision of this Contract should become or be found to be invalid or unenforceable, the remaining provisions and parts hereof shall continue to be fully effective and enforceable.

5. In no event under any theory of law, whether in tort, contract or otherwise, shall Railroad have any responsibility to Show Company for indirect, consequential, punitive or special damages, including but not limited to loss of profits, loss of revenues, business interruption expenses, or cost of capital.

**SECTION 5 - INSURANCE.** At its sole cost and expense, said Show Company will procure and maintain, in a form and with companies satisfactory to Railroad, the following insurance during the entire period of this Contract:

1. Workers' Compensation Insurance to meet fully the requirement of any compensation act, plan or legislative enactment applicable in connection with the death, disability or injury of Show's officers, agents, servants or employees arising directly or indirectly out of the performance of the services herein undertaken;

2. Employers' Liability Insurance with limits of not less than $1,000,000 each accident, $1,000,000 policy limit for disease, and $1,000,000 each employee for disease;

3. Comprehensive General Liability Insurance (including contractual liability covering the obligations being assumed under this contract) with a limit of not less than Five Million Dollars ($5,000,000) single limit, bodily injury and/or property damage combined, for damage arising out of bodily injuries to, or death of all persons in any one occurrence and for damage to or destruction of property including the loss of use thereof, in any one occurrence. Said policy shall name Norfolk Southern Railway Company as an additional insured;

4. All property insurance maintained by the Show Company covering exhibition cars, animals, birds, reptiles, musical instruments, uniforms, costumes, posters, tickets, food, feed, tools, apparatus, paraphernalia, equipment, explosives, and diverse other personal property of every kind and description shall carry a waiver of subrogation in favor of Norfolk Southern Railway Company;

5. Certificates indicating the above insurance coverage will be furnished for the files of Norfolk Southern Railway Company;

6. All insurance policies must be endorsed to provide that the Insurance Company shall give thirty days notice in writing to:

   Mr. David W. Fries,
   Director Risk Management
   Norfolk Southern Corporation
   3 Commercial Place
   Norfolk, VA 23510

   if the policies are to be terminated or if any changes are to be made in them which will affect in any way the insurance requirements of this Contract.

(REG-NS-C-19084-A)

**SECTION 6 - FORCE MAJEURE.** A party shall be excused from its contractual obligations to the extent it is prevented or delayed in such performance by any of the following conditions of force majeure: Act of God, act of the public enemy, authority of law, fire or explosion, lockout, strike, war, act of terrorism, insurrection, derailment or any like causes beyond their control. The party declaring force majeure shall promptly notify the other parties when the force majeure begins, the nature of the force majeure and when the condition is terminated.

**SECTION 7 - TENDER OF SHIPMENT.** Except as may be otherwise provided in this Contract, Railroad's duty as to transportation shall be subject to the terms and conditions of the Uniform Straight Bill of Lading as published in Uniform Freight Classification UFC 6000-series or successor publication, which are hereby incorporated into this Contract by reference. Alternative Uniform Bills of Lading may be used with the prior consent of Railroad.

Except to the extent inconsistent with any provisions herein, shipments made under the terms of this Contract are subject to all classifications, tariffs (for regulated commodities only), exempt circulars and circulars of other railroads participating in the transportation involved, government, AAR and carriers rules, regulations, and provisions, including, but not limited to NS Conditions of Carriage No. 1-series or successor publication, and such rules and regulations covering limitation of action, weighing, freight loss and damage claims, demurrage and switching, loading, car service and interchange that would apply if this Contract were not in effect.

In order to protect the confidentiality of this Contract and to permit computerized application, Show Company shall be responsible for having the contract number shown on the bill of lading in connection with shipments made under the terms of this Contract. While failure to so show the contract number shall not negate any terms of the contract, such failure will constitute sufficient reason for Railroad's refusal to bill the contract charges to any party other than Show Company without prior consent of Railroad.

**SECTION 8 - ACCESS.** Any party to this Contract may terminate the Contract as to the Origin and Destination affected and any volume guarantee applicable to such Origin and Destination shall be considered fulfilled if: 1) any railroad ceases service to, abandons or disposes of a line of railroad or track over which shipments covered by this Contract would move; 2) any railroad cancels a route or switching service necessary to complete a rail movement under this Contract; or 3) any railroad increases its charges for such switching service by more than 10% per annum.

**SECTION 9 - ASSIGNMENT.** No party hereto may assign this Contract, in whole or in part, without the prior written consent of the other parties. Any assignment of this Contract, without such consent in writing, shall be absolutely void, and at the option of the party or parties whose written consent should have been obtained, this Contract may be terminated. Subject to this Section, this Contract shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns.

(REG-NS-C-19084-A)

Commodity: Circus Outfits (STCC 41-211-40)

Origin/Destination/Rate:

| Origin | Destination | Rate ($ per train) |
|---|---|---|
| Albany, GA | Jacksonville, FL | 18405 |
| Winston-Salem, NC | Anderson, SC | 30095 |
| Binghamton, NY | Vestal, NY | 7900 |
| Buffalo, NY | Danville, VA | 49835 |
| Vestal, NY | Buffalo, NY | 19915 |
| Anderson, SC | Albany, GA | 31125 |
| Danville, VA | Winston-Salem, NC | 16635 |

Equipment: Privately-owned or leased cars

Mileage Allowance: Shipments moving under the terms of this Contract are not subject to mileage allowance payments by Railroad. If Railroad inadvertently pays mileage allowances to the car owner, Railroad will seek reimbursement of overpayment from car owner. If Railroad is unable to collect the overpayment from the car owner, Customer agrees to reimburse Railroad for overpayment.

Switching: Railroad will not absorb any switching charges of connecting carriers at Origin or Destination. Any applicable switching charges at Origin or Destination will be paid to Railroad in addition to the line haul charges under this Contract.

Fuel Surcharge: In the event the average monthly price of West Texas Intermediate Crude Oil exceeds $23.00 per barrel, calculated using the daily prices published in the Wall Street Journal, Norfolk Southern will assess a fuel surcharge on all linehaul freight charges (as set forth below, the "WTI Average Price").

The applicable fuel surcharge percentage shall be applied to each shipment having a bill of lading dated on or after the 1st day of the second calendar month following the calendar month of a given WTI Average Price Calculation. The fuel surcharge will change monthly per the table below:

| Calendar Month of WTI Average Price | Fuel Surcharge Applied | Calendar Month of WTI Average Price | Fuel Surcharge Applied | Calendar Month of WTI Average Price | Fuel Surcharge Applied |
|---|---|---|---|---|---|
| January | March 1 | May | July 1 | September | November 1 |
| February | April 1 | June | August 1 | October | December 1 |
| March | May 1 | July | September 1 | November | January 1 |
| April | June 1 | August | October 1 | December | February 1 |

The fuel surcharge will be 0.4% of the linehaul freight charge for every $1.00 per barrel, or portion thereof, by which the WTI Average Price exceeds $23.00. The WTI Average Price for a given calendar month will be determined by adding the daily West Texas Intermediate Crude Oil prices published in the Wall Street Journal during a calendar month, and dividing the result by the number of days so published in that given month. The result will be rounded to the nearest cent. If the Wall Street Journal ceases publication of the price of West Texas Intermediate Crude Oil, NS will employ a suitable substitute source of price or measure. The following schedule reflects the applicable fuel surcharge (FSC) within the WTI Average Price ranges noted below.

| WTI Average Price Per Barrel | FSC (%) | WTI Average Price Per Barrel | FSC (%) | WTI Average Price Per Barrel | FSC (%) |
|---|---|---|---|---|---|
| $23.00 and below | None | $31.01 - $32.00 | 3.6% | $42.01 - $43.00 | 8.0% |
| | | $32.01 - $33.00 | 4.0% | $43.01 - $44.00 | 8.4% |
| | | $33.01 - $34.00 | 4.4% | $44.01 - $45.00 | 8.8% |
| $23.01 - $24.00 | 0.4% | $34.01 - $35.00 | 4.8% | $45.01 - $46.00 | 9.2% |
| $24.01 - $25.00 | 0.8% | $35.01 - $36.00 | 5.2% | $46.01 - $47.00 | 9.6% |
| $25.01 - $26.00 | 1.2% | $36.01 - $37.00 | 5.6% | $47.01 - $48.00 | 10.0% |
| $26.01 - $27.00 | 1.6% | $37.01 - $38.00 | 6.0% | $48.01 - $49.00 | 10.4% |
| $27.01 - $28.00 | 2.0% | $38.01 - $39.00 | 6.4% | $49.01 - $50.00 | 10.8% |
| $28.01 - $29.00 | 2.4% | $39.01 - $40.00 | 6.8% | $50.00 and above | * |
| $29.01 - $30.00 | 2.8% | $40.01 - $41.00 | 7.2% | | |
| $30.01 - $31.00 | 3.2% | $41.01 - $42.00 | 7.6% | | |

* The fuel surcharge will be 10.8%, plus an additional 0.4% of the linehaul freight charge for every $1.00 per barrel, or portion thereof, by which the WTI Average Price Per Barrel exceeds $50.00.

# UNION PACIFIC RAILROAD

DETAIL FREIGHT BILL

MAIL: 0

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

For Assistance:
CALL: 1-800-925-6396

EMail:
RACUSTOMERS@UP.COM
FAX: (314)425-5421

| Account Number | Statement Date | Freight Bill Nbr | Amount Due | Payment Due |
|---|---|---|---|---|
| 21944 | 02/07/03 | 675792 | $2,544.00 | 02/22/03 |

Remit to:
UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS, TX 75284-3465

Shipper: USS POSCO INDUSTRIES, PITTSBURG, CA 94565

Consignee: US MAGNESIUM LLC, ROWLEY, UT 84029

Equipment ID: CNW 741012

Waybill Number: 675792

Revenue Origin: PITTSBURG, CA

Revenue Destination: ROWLEY, UT

Shipment Date: 02/06/03

Bill of Lading: SR-0806

Revenue Route: UP

Prepaid/Collect: COLLECT

Commodity: 4021125 - SCRAP, IRON OR

Equipment Characteristics: E530, 2244 CU-FT, 52′ 6″ LENGTH, 101 CAP

| Units | Weight | Rate | Rate Unit | Amount | Price Authority |
|---|---|---|---|---|---|
| | 165340 | 249400 | PC | $2,494.00 | UP 04021 - ITEM 003014 |
| | | 2 | PW | $50.00 | FUEL SURCHARGE |
| TOTALS: | 165340 | | | $2,544.00 | |

DESCRIPTION:
SCRAP IRON TARIFF AUTHORITY-ICC-UP-C-4021 ITEM 2156

OTHER PARTIES: ACCOUNT OF (ORIGIN - SIMSMETAL AMERICA

SPEC HANDLING: RECYCLING SHIPMENT CERTIFICATE LOADED TO FULL VISIBLE CAPY

FEB 12 2003

ORIGINAL

PENGAD 800-631-6989 Dr. Kaplan DEPOSITION EXHIBIT 3 3/10/10 CJ

# UNION PACIFIC RAILROAD

DETAIL FREIGHT BILL

MAIL: 0

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

For Assistance:
CALL: 1-800-925-6396

EMail:
RACUSTOMERS@UP.COM
FAX: (314)425-5421

| Account Number | Statement Date | Freight Bill Nbr | Amount Due | Payment Due |
|---|---|---|---|---|
| 21944 | 03/12/03 | 511925 | $2,544.00 | 03/27/03 |

Remit to:
UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS, TX 75284-3465

**Shipper:** USS POSCO INDUSTRIES, PITTSBURG, CA 94565

**Consignee:** US MAGNESIUM LLC, ROWLEY, UT 84029

**Equipment ID:** DRGW 340272

**Waybill Number:** 511925

**Revenue Origin:** PITTSBURG, CA

**Revenue Destination:** ROWLEY, UT

**Shipment Date:** 03/11/03

**Bill of Lading:** SR2012

**Revenue Route:** UP

**Prepaid/Collect:** COLLECT

**Commodity:** 4021125 - SCRAP, IRON OR

**Equipment Characteristics:** E530, 2494 CU-FT, 52′ 6″ LENGTH, 96 CAP

| Units | Weight | Rate | Rate Unit | Amount | Price Authority | |
|---|---|---|---|---|---|---|
| | 187600 | 249400 | PC | $2,494.00 | UP 04021 - ITEM 003014 | |
| | | 2 | PW | $50.00 | | FUEL SURCHARGE |
| TOTALS: | 187600 | | | $2,544.00 | | |

DESCRIPTION:
SCRAP IRON TARIFF AUTHORITY-ICC-UP-C-4021 ITEM 2156

OTHER PARTIES: ACCOUNT OF (ORIGIN - SIMSMETAL AMERICA

SPEC HANDLING: PUBLIC SCALE WEIGHT ON BEHALF RECYCLING SHIPMENT CERTIFICATE LOADED TO FULL VISIBLE CAPY

RECEIVED
MAR 17 2003
SLC ACCOUNTING DEPT.

ORIGINAL

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT

Page 1 of 1

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

RECEIVED
AUG 08 2003
SLC ACCOUNTING DEPT.

**Invoice Number**
**200500749**

| Account Number | Statement Date | Lead Equiptment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 21944 | 08/05/2003 | CTRN501247+2 | 349941 | 04/10/2003 | SR-0868 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| USS POSCO INDUSTRIES<br>PITTSBURG, CA 94565-2808 | US MAGNESIUM LLC<br>ROWLEY, UT 84029 | 4021125<br>SCRAP, IRON OR STEEL, NEC, NOT COPPER CLAD, HAVING VALUE FOR REMELTING PURPOSES |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| PITTSBURG, CA | ROWLEY, UT | UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 483960 | 249400 | PC | 7482.00 | |
| | | 200 | PW | 150.00 | UP 0004021 - ITEM 003014.000FUEL SURCHARGE |
| TOTALS: | 483960 | | | 7632.00 | |

**Additional Equipment, Equipment Characteristics, Net Wgt:**
CTRN 501247, E534 2743 218000 052ft 06in, 162480 GONX 310600, G516 2494 192000 052ft 06in, 170980
MP 641929, E534 2500 194000 052ft 06in, 150500

**Additional Information:**
Equipment Characteristics: CAR TYPE E534 CU FT 2743 CAP 218000 LENGTH 052ft 06in
Prepaid/Collect Indicator: COLLECT
Lading Description: SCRAP IRON TARIFF AUTHORITY-ICC-UP-C-4021 ITEM 215
6
Other Parties:
SIMSMETAL AMERICAACCOUNT OF (ORIGIN PARTY)
Movement Locations: RAIL ORIGIN: PITTSBURG, CA RAIL DEST: ROWLEY, UT
Special Handling: RECYCLING SHIPMENT CERTIFICATE
LOADED TO FULL VISIBLE CAPY

**For Assistance:**

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

| | |
|---|---|
| Original Billed Amount: | $7,632.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 08/20/2003 |
| **Amount To Pay:** | **$7,632.00** |

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS TX 75284-3465

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

Form DA-001 P Normal

# UNION PACIFIC RAILROAD

DETAIL FREIGHT BILL

MAIL: 0

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

For Assistance:
CALL: 1-800-925-6396

EMail:
RACUSTOMERS@UP.COM
FAX: (314)425-5421

| Account Number | Statement Date | Freight Bill Nbr | Amount Due | Payment Due |
|---|---|---|---|---|
| 21944 | 04/07/03 | 166907 | $10,176.00 | 04/22/03 |

Remit to:
UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS, TX 75284-3465

**Shipper:** USS POSCO INDUSTRIES, PITTSBURG, CA 94565

**Consignee:** US MAGNESIUM LLC, ROWLEY, UT 84029

**Equipment ID:** GONX 340157 + 3

**Waybill Number:** 166907

**Revenue Origin:** PITTSBURG, CA

**Revenue Destination:** ROWLEY, UT

**Shipment Date:** 02/13/03

**Bill of Lading:** SR0811

**Revenue Route:** UP

**Prepaid/Collect:** COLLECT

**Commodity:** 4021125 - SCRAP, IRON OR

**Equipment Characteristics:** G516, 2494 CU-FT, 52' 6" LENGTH, 96 CAP

| Units | Weight | Rate | Rate Unit | Amount | Price Authority | |
|---|---|---|---|---|---|---|
| | 545760 | 249400 | PC | $9,976.00 | UP 04021 - ITEM 003014 | |
| | | 2 | PW | $200.00 | | FUEL SURCHARGE |
| TOTALS: | 545760 | | | $10,176.00 | | |

DESCRIPTION:
SCRAP IRON TARIFF AUTHORITY-ICC-UP-C-4021 ITEM 2156

REFERENCES: UP - UPC 4021 2156

OTHER PARTIES: ACCOUNT OF (ORIGIN - SIMSMETAL AMERICA

SPEC HANDLING: PUBLIC SCALE WEIGHT ON BEHALF RECYCLING SHIPMENT CERTIFICATE LOADED TO FULL VISIBLE CAPY

EQUIPMENT,NET WGT: GONX 340157, 149000 GONX 310437, 108220 GONX 310070, 152160 CNW 340584, 136380

RECEIVED
APR 09 2003
SLC ACCOUNTING DEPT.

ORIGINAL

# UNION PACIFIC RAILROAD

DETAIL FREIGHT BILL

MAIL: 0

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

For Assistance:
CALL: 1-800-925-6396

EMail:
RACUSTOMERS@UP.COM
FAX: (314)425-5421

| Account Number | Statement Date | Freight Bill Nbr | Amount Due | Payment Due |
|---|---|---|---|---|
| 21944 | 05/01/03 | 609354 | $2,544.00 | 05/16/03 |

Remit to:
UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS, TX 75284-3465

Shipper: USS POSCO INDUSTRIES, PITTSBURG, CA 94565

Consignee: US MAGNESIUM LLC, ROWLEY, UT 84029

Equipment ID: GONX 310800

Waybill Number: 609354

Revenue Origin: PITTSBURG, CA

Revenue Destination: ROWLEY, UT

Shipment Date: 04/30/03

Bill of Lading: SR-0868

Revenue Route: UP

Prepaid/Collect: COLLECT

Commodity: 4021125 - SCRAP, IRON OR

Equipment Characteristics: G516, 2494 CU-FT, 52' 6" LENGTH, 96 CAP

| Units | Weight | Rate | Rate Unit | Amount | Price Authority | |
|---|---|---|---|---|---|---|
| | 170980 | 249400 | PC | $2,494.00 | UP 04021 - ITEM 003014 | |
| | | 2 | PW | $50.00 | | FUEL SURCHARGE |
| TOTALS: | 170980 | | | $2,544.00 | | |

DESCRIPTION:
SCRAP IRON ORIGINALLY BILLED ON-WB 349941 OF 4-9-03 AND MISHANDLED BY UP RR

OTHER PARTIES: ACCOUNT OF (ORIGIN - SIMSMETAL AMERICA

SPEC HANDLING: RECYCLING SHIPMENT CERTIFICATE LOADED TO FULL VISIBLE CAPY

RECEIVED
MAY - 5 2003
SLC ACCOUNTING DEPT.

ORIGINAL

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT

Page 1 of 1

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

RECEIVED
AUG 08 2003
SLC ACCOUNTING DEPT.

Invoice Number
200500731

| Account Number | Statement Date | Lead Equiptment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 21944 | 08/05/2003 | MP 641152+2 | 149050 | 05/08/2003 | SR-0891 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| USS POSCO INDUSTRIES<br>PITTSBURG, CA 94565-2808 | US MAGNESIUM LLC<br>ROWLEY, UT 84029 | 4021125<br>SCRAP, IRON OR STEEL, NEC, NOT COPPER CLAD, HAVING VALUE FOR REMELTING PURPOSES |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| PITTSBURG, CA | ROWLEY, UT | UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 551540 | 249400 | PC | 7482.00 | |
| | | 200 | PW | 150.00 | UP 0004021 - ITEM 003014.000FUEL SURCHARGE |
| TOTALS: | 551540 | | | 7632.00 | |

**Additional Equipment, Equipment Characteristics, Net Wgt:**

MP 641152, E534 2500 196000 052ft 06in, 186960
MP 641173, E534 2500 196000 052ft 06in, 181900
CHTT 286712, E534 2743 220000 052ft 06in, 182680

**Additional Information:**

Equipment Characteristics: CAR TYPE E534 CU FT 2500 CAP 196000 LENGTH 052ft 06in
Prepaid/Collect Indicator: COLLECT
Lading Description: SCRAP IRON ORDER#KPM-1704
Other Parties:
SIMSMETAL AMERICAACCOUNT OF (ORIGIN PARTY)
Movement Locations: RAIL ORIGIN: PITTSBURG, CA RAIL DEST: ROWLEY, UT
Special Handling: RECYCLING SHIPMENT CERTIFICATE
LOADED TO FULL VISIBLE CAPY

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS TX 75284-3465

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $7,632.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 08/20/2003 |
| **Amount To Pay:** | **$7,632.00** |

Form DA-001 P Normal

# UNION PACIFIC RAILROAD

DETAIL FREIGHT BILL

MAIL: 0

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

For Assistance:
CALL: 1-800-925-6396

EMail:
RACUSTOMERS@UP.COM
FAX: (314)425-5421

| Account Number | Statement Date | Freight Bill Nbr | Amount Due | Payment Due |
|---|---|---|---|---|
| 21944 | 05/21/03 | 313292 | $2,544.00 | 06/05/03 |

Remit to:
UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS, TX 75284-3465

**Shipper:** USS POSCO INDUSTRIES, PITTSBURG, CA 94565

**Consignee:** US MAGNESIUM LLC, ROWLEY, UT 84029

**Equipment ID:** HLMX 1246

**Waybill Number:** 313292

**Revenue Origin:** PITTSBURG, CA

**Revenue Destination:** ROWLEY, UT

**Shipment Date:** 05/20/03

**Bill of Lading:** SR-0901

**Revenue Route:** UP

**Prepaid/Collect:** COLLECT

**Commodity:** 4021125 - SCRAP, IRON OR

**Equipment Characteristics:** G519, 2744 CU-FT, 52' 6" LENGTH, 108 CAP

| Units | Weight | Rate | Rate Unit | Amount | Price Authority | |
|---|---|---|---|---|---|---|
| | 211940 | 249400 | PC | $2,494.00 | UP 04021 - ITEM 003014 | |
| | | 2 | PW | $50.00 | | FUEL SURCHARGE |
| TOTALS: | 211940 | | | $2,544.00 | | |

DESCRIPTION:
SCRAP IRON ORDER# KPM-1794-TARIFF AUTHORITY ICC-UP-C-4021 ITEM 2156

OTHER PARTIES: ACCOUNT OF (ORIGIN - SIMSMETAL AMERICA

SPEC HANDLING: PUBLIC SCALE WEIGHT ON BEHALF RECYCLING SHIPMENT CERTIFICATE LOADED TO FULL VISIBLE CAP

RECEIVED
JUN 17 2003
SLC ACCOUNTING DEPT

ORIGINAL

# UNION PACIFIC RAILROAD

DETAIL FREIGHT BILL

MAIL: 0

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

For Assistance:
CALL: 1-800-925-6396

EMail:
RACUSTOMERS@UP.COM
FAX: (314)425-5421

| Account Number | Statement Date | Freight Bill Nbr | Amount Due | Payment Due |
|---|---|---|---|---|
| 21944 | 06/04/03 | 502190 | $2,544.00 | 06/19/03 |

Remit to:
UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS, TX 75284-3465

Shipper: USS POSCO INDUSTRIES, PITTSBURG, CA 94565

Consignee: US MAGNESIUM LLC, ROWLEY, UT 84029

Equipment ID: SP 339109

Waybill Number: 502190

Revenue Origin: PITTSBURG, CA

Revenue Destination: ROWLEY, UT

Shipment Date: 06/03/03

Bill of Lading: SR0909

Revenue Route: UP

Prepaid/Collect: COLLECT

Commodity: 4021125 - SCRAP, IRON OR

Equipment Characteristics: E530, 2494 CU-FT, 52' 6" LENGTH, 99 GAP

| Units | Weight | Rate | Rate Unit | Amount | Price Authority | |
|---|---|---|---|---|---|---|
| | 112260 | 249400 | PC | $2,494.00 | UP 04021 - ITEM 003014 | |
| | | 2 | PW | $50.00 | | FUEL SURCHARGE |
| TOTALS: | 112260 | | | $2,544.00 | | |

DESCRIPTION:
SCRAP IRON TARIFF AUTHORITY-ICC-UP-C-4021 ITEM 2156

OTHER PARTIES: ACCOUNT OF (ORIGIN - SIMSMETAL AMERICA

SPEC HANDLING: PUBLIC SCALE WEIGHT ON BEHALF RECYCLING SHIPMENT CERTIFICATE LOADED TO FULL VISIBLE CAPY

RECEIVED
JUN 09 2003
SLC ACCOUNTING DEPT.

ORIGINAL

# UNION PACIFIC RAILROAD

DETAIL FREIGHT BILL

MAIL: 0

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

For Assistance:
CALL: 1-800-925-6396

EMail:
RACUSTOMERS@UP.COM
FAX: (314)425-5421

| Account Number | Statement Date | Freight Bill Nbr | Amount Due | Payment Due |
|---|---|---|---|---|
| 21944 | 06/19/03 | 126409 | $2,544.00 | 07/04/03 |

Remit to:
UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS, TX 75284-3465

Shipper: USS POSCO INDUSTRIES, PITTSBURG, CA 94565

Consignee: US MAGNESIUM LLC, ROWLEY, UT 84029

Equipment ID: GONX 310354

Waybill Number: 126409

Revenue Origin: PITTSBURG, CA

Revenue Destination: ROWLEY, UT

Shipment Date: 06/18/03

Bill of Lading: SR-0917

Revenue Route: UP

Prepaid/Collect: COLLECT

Commodity: 4021125 - SCRAP, IRON OR

Equipment Characteristics: G516, 2494 CU-FT, 52' 6" LENGTH, 95 CAP

| Units | Weight | Rate | Rate Unit | Amount | Price Authority | |
|---|---|---|---|---|---|---|
| | 180780 | 249400 | PC | $2,494.00 | UP 04021 - ITEM 003014 | |
| | | 2 | PW | $50.00 | | FUEL SURCHARGE |
| TOTALS: | 180780 | | | $2,544.00 | | |

DESCRIPTION:
SCRAP IRON ORDER# KPM-1794-TARIFF AUTHORITY ICC-UP-C-4021 ITEM 2156

OTHER PARTIES: ACCOUNT OF (ORIGIN - SIMSMETAL AMERICA

MOVEMENT LOCATIONS: PRIOR ORIGIN: ROWLEY, UT ULTIMATE DESTINATION:

SPEC HANDLING: RECYCLING SHIPMENT CERTIFICATE LOADED TO FULL VISIBLE CAPY

RECEIVED
JUN 24 2003
SLC ACCOUNTING DEPT.

ORIGINAL

# UNION PACIFIC RAILROAD

DETAIL FREIGHT BILL

MAIL: 0

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST
SALT LAKE CITY, UT 84116

For Assistance:
CALL: 1-800-925-6396

EMail:
RACUSTOMERS@UP.COM
FAX: (314)425-5421

| Account Number | Statement Date | Freight Bill Nbr | Amount Due | Payment Due |
|---|---|---|---|---|
| 21944 | 06/26/03 | 209593 | $7,632.00 | 07/11/03 |

Remit to:
UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS, TX 75284-3465

Shipper: USS POSCO INDUSTRIES, PITTSBURG, CA 94565

Consignee: US MAGNESIUM LLC, ROWLEY, UT 84029

Equipment ID: HLMX 1282+ 2

Waybill Number: 209593

Revenue Origin: PITTSBURG, CA

Revenue Destination: ROWLEY, UT

Shipment Date: 06/25/03

Bill of Lading: SR-0923

Revenue Route: UP.

Prepaid/Collect: COLLECT

Commodity: 4021125 - SCRAP, IRON OR

Equipment Characteristics: G519, 2744 CU-FT, 52' 6" LENGTH, 108 CAP

| Units | Weight | Rate | Rate Unit | Amount | Price Authority | |
|---|---|---|---|---|---|---|
| | 565700 | 249400 | PC | $7,482.00 | UP 04021 - ITEM 003014 | |
| | | 2 | PW | $150.00 | | FUEL SURCHARGE |
| TOTALS: | 565700 | | | $7,632.00 | | |

DESCRIPTION:
SCRAP IRON TARIFF AUTHORITY-ICC-UP-C-4021 ITEM 2156

OTHER PARTIES: ACCOUNT OF (ORIGIN - SIMSMETAL AMERICA

SPEC HANDLING: PUBLIC SCALE WEIGHT ON BEHALF RECYCLING SHIPMENT CERTIFICATE LOADED TO FULL VISIBLE CAPY

EQUIPMENT,NET WGT: MP 641420, 183700 HLMX 1282, 202780 DRGW 310700, 179220

ORIGINAL

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT



US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST

**Invoice Number**
**200407430**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 21944 | 07/30/2003 | SP 339149 | 679926 | 07/29/2003 | SR0950 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| USS POSCO INDUSTRIES<br>PITTSBURG, CA 94565-2808 | US MAGNESIUM LLC<br>ROWLEY, UT 84029 | 4021125<br>SCRAP, IRON OR STEEL, NEC, NOT COPPER CLAD, HAVING VALUE FOR REMELTING PURPOSES |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| PITTSBURG, CA | ROWLEY, UT | UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 158840 | 249400 | PC | 2494.00 | |
| | | 250 | PW | 62.00 | UP 0004021 - ITEM 003014.000FUEL SURCHARGE |
| TOTALS: | 158840 | | | 2556.00 | |

**Additional Information:**
Equipment Characteristics: CAR TYPE E530 CU FT 2494 CAP 196000 LENGTH 052ft 06in
Prepaid/Collect Indicator: COLLECT
Lading Description: SCRAP IRON ORD# KMP1888-TARIFF AUTHORITY ICC-UP-C-4021 ITEM 2156
Other Parties:
SIMSMETAL AMERICAACCOUNT OF (ORIGIN PARTY)
Movement Locations: RAIL ORIGIN: PITTSBURG, CA RAIL DEST: ROWLEY, UT
Special Handling: RECYCLING SHIPMENT CERTIFICATE
LOADED TO FULL VISIBLE CAPY

**For Assistance:**

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS TX 75284-3465

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $2,556.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 08/14/2003 |
| **Amount To Pay:** | **$2,556.00** |

Form DA-001 P Normal
1432-2-002

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT

Page 1 of 1

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST

**Invoice Number**
**200758517**

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 21944 | 08/20/2003 | GVSR323024+1 | 388864 | 08/19/2003 | SR-0971 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| USS POSCO INDUSTRIES<br>PITTSBURG, CA 94565-2808 | US MAGNESIUM LLC<br>ROWLEY, UT 84029 | 4021125<br>SCRAP, IRON OR STEEL, NEC, NOT COPPER CLAD, HAVING VALUE FOR REMELTING PURPOSES |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| PITTSBURG, CA | ROWLEY, UT | UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 277580 | 249400 | PC | 4988.00 | |
| | | 200 | PW | 100.00 | UP 0004021 - ITEM 003014.000FUEL SURCHARGE |
| TOTALS: | 277580 | | | 5088.00 | |

**Additional Equipment, Equipment Characteristics, Net Wgt:**
GVSR 323024, E530 2187 198000 052ft 06in, 138280 MP 643091, E534 2494 196000 052ft 06in, 139300

**Additional Information:**
Equipment Characteristics: CAR TYPE E530 CU FT 2187 CAP 198000 LENGTH 052ft 06in
Prepaid/Collect Indicator: COLLECT
Lading Description: SCRAP IRON TARIFF AUTHORITY
Other Parties:
SIMSMETAL AMERICAACCOUNT OF (ORIGIN PARTY)
Movement Locations: RAIL ORIGIN: PITTSBURG, CA RAIL DEST: ROWLEY, UT
Special Handling: RECYCLING SHIPMENT CERTIFICATE
LOADED TO FULL VISIBLE CAPY

RECEIVED
AUG 2 2 2003
SLC ACCOUNTING DEPT.

For Assistance:

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS TX 75284-3465

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $5,088.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 09/04/2003 |
| **Amount To Pay:** | **$5,088.00** |

Form DA-001 P Normal
517-5-006

9-45

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT

(3)

Page 1 of 1

**Invoice Number**
**201223473**

US MAGNESIUM LLC
MAGNESIUM CORP OF AMERICA
238 NORTH 2200 WEST

887077

| Account Number | Statement Date | Lead Equiptment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 21944 | 09/17/2003 | CTRN501120+1 | 195983 | 09/16/2003 | SR0997 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| USS POSCO INDUSTRIES<br>PITTSBURG, CA 94565 | US MAGNESIUM LLC<br>ROWLEY, UT 84029 | 4021125<br>SCRAP, IRON OR STEEL, NEC, NOT COPPER CLAD, HAVING VALUE FOR REMELTING PURPOSES |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| PITTSBURG, CA | ROWLEY, UT | UP |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 376580 | 249400 | PC | 4988.00 | |
| | | 200 | PW | 100.00 | UP 0004021 - ITEM 003014.000FUEL SURCHARGE |
| TOTALS: | 376580 | | | 5088.00 | |

**Additional Equipment, Equipment Characteristics, Net Wgt:**
CTRN 501120, E534 2743 218000 052ft 06in, 187660 HLMX 1160, G519 2744 216000 052ft 06in, 188920

**Additional Information:**
Equipment Characteristics: CAR TYPE E534 CU FT 2743 CAP 218000 LENGTH 052ft 06in
Prepaid/Collect Indicator: COLLECT
Lading Description: SCRAP IRON
Movement Locations: RAIL ORIGIN: PITTSBURG, CA RAIL DEST: ROWLEY, UT
Special Handling: RECYCLING SHIPMENT CERTIFICATE

EC03533
4511-02

RECEIVED
SEP 19 2003
SLC ACCOUNTING DEPT.

**For Assistance:**

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

| | |
|---|---|
| Original Billed Amount: | $5,088.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 10/02/2003 |
| **Amount To Pay:** | **$5,088.00** |

Remit Payment To:

UNION PACIFIC RAILROAD
P.O. BOX 843465
DALLAS TX 75284-3465

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

Form DA-001 P Normal
1534-2-002

10/03/2003 14:14 6618242482 KEMIRON PACIFIC PAGE 02

10-23

# UNION PACIFIC RAILROAD COMPANY

ORIGINAL BILL
FREIGHT

FAXED 10-3

Page 1 of 1

| Invoice Number |
|---|
| 201382305 |

KEMIRON PACIFIC
ACCOUNTS PAYABLE
18700 HIGHWAY 14

US Mag 887077

| Account Number | Statement Date | Lead Equipment ID | Waybill Number | Shipment Date | Customer Reference Number |
|---|---|---|---|---|---|
| 82057 | 09/29/2003 | GONX310770 | 342931 | 09/25/2003 | SR0004 |

| Shipper | Consignee | Commodity Code / Description |
|---|---|---|
| USS POSCO INDUSTRIES<br>PITTSBURG, CA 94565-2808 | US MAGNESIUM LLC<br>ROWLEY, UT 84029 | 4021125<br>SCRAP, IRON OR STEEL, NEC, NOT COPPER CLAD, HAVING VALUE FOR REMELTING PURPOSES |

| Revenue Origin | Revenue Destination | Revenue Route |
|---|---|---|
| PITTSBURG, CA | ROWLEY, UT | UP EC03533 4511-02 |

| Units | Weight | Rate | Rate Qlfr | Amount | Price Authority/Additional Charge Description |
|---|---|---|---|---|---|
| | 36260 | 249400 | PC | 2494.00 | |
| | | 200 | PW | 50.00 | UP 0004021 - ITEM 003014.000FUEL SURCHARGE |
| TOTALS: | 36260 | | | 2544.00 | |

**Additional Information:**

Equipment Characteristics: CAR TYPE G516 CU FT 2494 CAP 192000 LENGTH 052ft 06in
Prepaid/Collect Indicator: COLLECT
Lading Description: SCRAP IRON TARIFF AUTHORITY
Other Parties:
SIMSMETAL AMERICAACCOUNT OF (ORIGIN PARTY)
Movement Locations: RAIL ORIGIN: PITTSBURG, CA RAIL DEST: ROWLEY, UT
Special Handling: RECYCLING SHIPMENT CERTIFICATE
LOADED TO FULL VISIBLE CAPY

RECEIVED OCT - 7 2003

RECEIVED OCT 13 2003
SLC ACCOUNTING DEPT.

**For Assistance:**

Phone Number: (800) 925-6396
Email Address: RACUSTOMERS@UP.COM
Fax Number: (314) 425-5421

**Remit Payment To:**

UNION PACIFIC RAILROAD
5074 COLLECTIONS CENTER DRIVE
CHICAGO IL 60693

Invoices Remitted after the Due Date may be subject to a 1% Finance Charge

| | |
|---|---|
| Original Billed Amount: | $2,544.00 |
| Total Amount Paid to Date: | $0.00 |
| Last Payment ID: | - |
| Last Payment Date: | - |
| Due Date: | 10/14/2003 |
| **Amount To Pay:** | **$2,544.00** |

Form DA-001 P Normal
2132-3-003

From: John Gutkowski (Corp)
Sent: Friday, March 11, 2005 6:55:51 PM
To: 'lhjersted@kemiron.com'; 'Phil Farina'; 'Howard Kaplan'
Subject: RE: HCl

Yes I can, same concept ferrous to Rowley and HCL back? Also, similar volumes?

John

-----Original Message-----
From: Lawrence Hjersted [mailto:lhjersted@kemiron.com]
Sent: Friday, March 11, 2005 5:58 PM
To: Phil Farina; Howard Kaplan
Cc: John Gutkowski (Corp)
Subject: FW: HCl

We got a slight reduction but nothing much.

John – Can you also do this exercise for St. Louis Plant from Rowley and then back to Rowley?

———

From: John Gutkowski (Corp) [mailto:jgutkows@eaglebrk.com]
Sent: Friday, March 11, 2005 6:41 PM
To: lhjersted@kemiron.com
Subject: RE: HCl

Lawrence,

Here is where we stand with this move:

Freight: $6150

Rail Rent: $583

Transloading $400

Total $7133

The assumptions are the same as indicated below. At this time most of the class 1 carriers (NS,CSX,CN,UP) are pricing moves for SOME corridors at high rates due because their traffic volumes exceeding what the operations can handle. They are trading low margin traffic for high margin. The UP has been quite stubborn in this area. The rate listed above is $675 per car less than listed below.

-----Original Message-----
From: Lawrence Hjersted [mailto:lhjersted@kemiron.com]
Sent: Monday, February 21, 2005 12:40 PM
To: John Gutkowski (Corp)
Subject: RE: HCl

Generally speaking the rail road cuts the back haul in half not make it more expensive. Can you recheck this move?

———

PENGAD 800-631-6989
Dr. Kaplan
DEPOSITION EXHIBIT
21 3/10/10
DJ

From: John Gutkowski (Corp) [mailto:jgutkows@eaglebrk.com]
Sent: Monday, February 21, 2005 12:25 PM
To: lhjersted@kemiron.com
Subject: RE: HCl

Lawrence,

The combined rate from Rowley to EC and ferrous chloride back to Rowley would be $6825 per car plus fuel surcharge, when applicable. The rate from Rowley to Chicago is $3075 while the rate from Chicago back to Rowley is $3750. We can assume about 28 days for the total roundtrip transit time. We allocated three days at each site for loading/holding time. In order to compute overall shipping cost, I added transloading. I am not sure if any cost would be charged at Rowley.

| | |
|---|---|
| Freight | $6825 per car roundtrip |
| Rail Rent | $583 per car roundtrip |
| Transloading | $400 per car per roundtrip |
| Total | $7808 per car roundtrip |

We may need to consider truck costs of the ferrous chloride depending upon the supply origin.

John

-----Original Message-----
From: Lawrence Hjersted [mailto:lhjersted@kemiron.com]
Sent: Wednesday, February 16, 2005 5:13 PM
To: John Gutkowski (Corp)
Cc: Brian Wodetzki (Brian Wodetzki); Phil Farina
Subject: FW: HCl

John,

I need a freight rate for HCL from Rowley, Utah to EC with backhaul of spl from EC to Rowley. For budget purposes assume 14 million gallons per year. Brian has great UP contacts if this will hel.

Thanks, Lawrence

---

From: hkaplan [mailto:hkaplan@usmagnesium.com] On Behalf Of Howard Kaplan
Sent: Wednesday, February 16, 2005 5:48 PM
To: 'Lawrence Hjersted'
Subject: HCl

Just a reminder of our discussion:

You were going to get a rate for acid to Chicago and spent liquor back

I want to know what the potential volumes are of acid delivered and spent liquor back from the various locations-i.e. Kalama, Posco and Chicago, as well as the acid consumption at CSI.

I am trying to make a presentation for Ira before the board meeting in March.

We are looking forward to Phil's presentation on the 16th. I agree with you, that there is a great opportunity here to work together.

I will also talk to the plant regarding anhydrous acid possibilities.

Have a good trip

Howard