UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION ) ) ) ) ) This document relates to: ) ) ALL DIRECT PURCHASER CASES ) ) OXBOW CARBON & MINERALS LLC, et al., ) ) Plaintiffs, ) ) v. ) ) UNION PACIFIC RAILROAD CO., et al., ) ) Defendants. ) ) | MDL Docket No. 1869 Miscellaneous No. 07-0489 (PLF)  Civil Action No. 11-1049 (PLF) |

OPINION AND ORDER

Following the decision of the United States Court of Appeals for the District of Columbia Circuit, In re Rail Freight Fuel Surcharge Antitrust Litig., 34 F.4th 1 (D.C. Cir. 2022), the defendants in Rail Freight and the defendants in Oxbow again ask the Court pursuant to 49 U.S.C. § 10706 to exclude evidence of any discussion or agreement between or among rail carriers that concerned interline movements (and any rate or other action resulting from such discussion or agreement), and to enforce the statutory bar on inferring a conspiracy from specified evidence. See Defendants' Response Brief to the Court's Order on Section 10706

[Dkt. No. 1104].[1] Plaintiffs in Oxbow and direct purchaser plaintiffs in Rail Freight oppose these requests. See Plaintiffs' Supplemental Briefing Regarding Section 10706 In Response to the Court's Order of May 26, 2023 [Dkt. No. 1107]; see also Joint Status Report [Dkt. No. 1094]; Parties' Notice of Joint Status Report, Stipulation, and Proposed Order in Advance of July 19, 2022 Status Conference [Dkt. No. 1085].

The Court has considered the parties' written submissions, the relevant case law – including primarily the D.C. Circuit's decision interpreting Section 10706 – and the relevant portions of the record in this case. It has also personally reviewed every document at issue in this matter. The Court will grant in part and deny in part defendants' requests to exclude certain evidence.[2]

---

[1] All citations to docket entries, unless otherwise specified, will refer to the first above captioned matter, In re Rail Freight Fuel Surcharge Antitrust Litig., MDL No. 1869, Miscellaneous No. 07-0489.

[2] The documents considered in connection with the pending matter include: Defendants' Response Brief to the Court's Order on Section 10706 ("Defs. Supp.") [Dkt. No. 1104]; Supplemental Defendants' Appendix in Support of Defendants' Response Brief to the Court's Order on Section 10706 [Dkt. No. 1105]; Plaintiffs Supplemental Briefing Regarding Section 10706 In Response to the Court's Order of May 26, 2023 ("Pls. Supp.") [Dkt. No. 1107]; Declaration of Sami H. Rashid in Support of Plaintiffs' Supplemental Briefing Regarding Section 10706 in Response to the Court's Order of May 26, 2023 [Dkt. No. 1108]; Joint Status Report [1094]; Parties' Notice of Joint Status Report, Stipulation, and Proposed Order in Advance of July 19, 2022 Status Conference [Dkt. No. 1085]; Defendant BNSF Railway Company's Motion for Summary Judgment [Dkt. No. 1030]; CSX Transportation, Inc.'s Motion for Summary Judgment [Dkt. No. 1031]; Defendant Union Pacific Railroad Company's Motion for Summary Judgment [Dkt. No. 1032]; Norfolk Southern Railway Company's Motion for Summary Judgment [Dkt. No. 1033]; Plaintiffs' Memorandum in Opposition to Defendants' Joint and Individual Motions for Summary Judgment [Dkt. No. 1050]; Declaration of Alicia Cobb in Support of Plaintiffs' Opposition to Defendants' Joint and Individual Motions for Summary Judgment [Dkt. No. 1051]; Defendants' Motion to Exclude Interline-Related Communications from Consideration for Class Certification or Any Other Purpose Prohibited by 49 U.S.C. § 10706 [Dkt. No. 417]; Defendants' Memorandum in Support of Motion to Exclude Interline-Related Communications from Consideration for Class Certification or Any Other Purpose Prohibited by 49 U.S.C. § 10706 [Dkt. No. 420]; Plaintiffs' Memorandum in

I. FACTUAL AND PROCEDURAL HISTORY

The Court has previously recounted at length the factual and procedural history of the Rail Freight and Oxbow litigation.  See In re Rail Freight Fuel Surcharge Antitrust Litig. ("Rail Freight I"), 587 F. Supp. 2d 27, 29-31 (D.D.C. 2008); In re Rail Freight Fuel Surcharge Antitrust Litig. ("Rail Freight II"), 593 F. Supp. 2d 29, 32, 34-35 (D.D.C. 2008), aff'd sub nom. Fayus Enters. v. BNSF Ry. Co., 602 F.3d 444, 445-46, 454 (D.C. Cir. 2010); In re Rail Freight Fuel Surcharge Antitrust Litig. ("Rail Freight III"), 287 F.R.D. 1, 11-20 (D.D.C. 2012), vacated sub nom. In re Rail Freight Fuel Surcharge Antitrust Litig. – MDL No. 1869, 725 F.3d 244 (D.C. Cir. 2013); In re Rail Freight Fuel Surcharge Antitrust Litig. ("Rail Freight IV"), 292 F. Supp. 3d 14, 33-38 (D.D.C. 2017), aff'd sub nom. In re Rail Freight Fuel Surcharge Antitrust Litig. – MDL No. 1869, 934 F.3d 619 (D.C. Cir. 2019); In re Rail Freight Fuel Surcharge Antitrust Litig. ("Rail Freight V"), 520 F. Supp. 3d 1, 8-10 (D.D.C. 2021); see also Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co. ("Oxbow I"), 926 F. Supp. 2d 36, 39-40 (D.D.C. 2013); Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co. ("Oxbow II"), 81 F. Supp. 3d 1, 5-6 (D.D.C. 2015).

These cases involve allegations of a conspiracy to fix prices in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  Plaintiffs in Rail Freight, purchasers of rail freight transportation services, allege that defendants, BNSF Railway Company, CSX Transportation, Inc., Norfolk Southern Railway Company, and Union Pacific Railroad Company, "engaged in a price-fixing conspiracy to coordinate their fuel surcharge programs as a means to impose supra-

---

Opposition to Defendants' Motion to Exclude Interline-Related Communications from Consideration for Class Certification or Any Other Purpose Prohibited by 49 U.S.C. § 10706 [Dkt. No. 438]; and Defendants' Reply Memorandum in Support of Motion to Exclude Interline-Related Communications from Consideration for Class Certification or Any Other Purpose Prohibited by 49 U.S.C. § 10706 [Dkt. No. 444].

competitive total price increases on their shipping customers." Rail Freight IV, 292 F. Supp. 3d at 34. Similarly, plaintiffs in Oxbow allege that defendants Union Pacific Railroad Company and BNSF Railway Company conspired to "fix prices above competitive levels through a uniform fuel surcharge." Oxbow II, 81 F. Supp. 3d at 5. Many of the allegations in Oxbow are "virtually identical" to the allegations in Rail Freight. Id. at 5 n.3.

Pending before the Court are the defendant railroads' motions for summary judgment as to whether they conspired to violate the antitrust laws. See Order of May 7, 2022 [Dkt. No. 1025]; Memorandum Opinion and Order of March 30, 2021 [Dkt. No. 1016]. With respect to the Court's consideration of these motions, the defendant railroads seek to exclude from consideration evidence of interline-related communications, or communications concerning shared traffic, under 49 U.S.C. § 10706(a)(3)(B)(ii) ("Section 10706"). As the D.C. Circuit has explained:

> Interline movements are shipments carried along two or more railroads' tracks under a common arrangement. Section 10706 states that "[i]n any proceeding" in which rail carriers are alleged to have violated antitrust laws, conspiracy "may not be inferred from evidence that two or more rail carriers acted together with respect to an interline rate or related matter and that a party to such action took similar action with respect to a rate or related matter on another route or traffic." 49 U.S.C. § 10706(a)(3)(B)(ii). The statute tellingly provides that "evidence of a discussion or agreement between or among" rail carriers "shall not be admissible if the discussion or agreement . . . *concerned an interline movement* of the rail carrier," and "would not, considered by itself, violate the [antitrust] laws." Id. § 10706(a)(3)(B)(ii)(II) (emphasis added).

In re Rail Freight Fuel Surcharge Antitrust Litigation – MDL No. 1869 ("Rail Freight VI"), 34 F.4th 1 at 5 (alterations in original).

On December 19, 2019, this Court invited plaintiffs and defendants in Rail Freight MDL No. 1869 and Oxbow, as well as the new plaintiffs in MDL No. 2952 before

4

Judge Beryl Howell, to file additional memoranda addressing defendants' still-pending motions concerning Section 10706.  Memorandum Opinion and Order of December 19, 2019 [Dkt. No. 918] at 3.  The Court also invited the United States to submit a Statement of Interest reflecting the views of the Department of Justice, the Federal Trade Commission, and the Surface Transportation Board.  Order of March 16, 2020 [Dkt. No. 947] at 2.  On August 26, 2020, the Court heard oral arguments on the interpretation and application of Section 10706 from defendants, named plaintiffs in Rail Freight MDL No. 1869, plaintiffs in MDL No. 2952, and the Department of Justice.  See Minute Entry of August 26, 2020.

On February 19, 2021, the Court issued an opinion and order interpreting Section 10706 and denying defendants' motions to exclude interline-related communications. See Rail Freight V, 520 F. Supp. 3d. at 15-38.  The Court held that "for a discussion or agreement to be inadmissible" under Section 10706, "the carriers must be discussing or agreeing upon identifiable interline movements which they share; but context and logic confirm that 'an interline movement' may refer to multiple interline movements." Id. at 29.  The Court said that protected discussions and agreements concern "an identifiable movement or movements with identifiable circumstances, such as a specific shipper, specific shipments, and specific destinations."  See id.  The Court rejected the defendants' arguments that an entire document must be excluded "if it is about interline traffic even if it also includes communications about local traffic or other subjects," id. at 25, noting that "there are more nuanced ways to read and apply the statute.  It need not be an all or nothing proposition."  Id.  As in all cases, the Court held, a document "may be admitted in part and excluded in part" through the use of redactions. Id.; see id. at 26.

The United States Court of Appeals for the D.C. Circuit affirmed in part and reversed in part. See Rail Freight VI, 34 F.4th 1. The D.C. Circuit explained that a discussion or agreement "concerns" an interline movement "only if Defendants meet their burden of showing that the movements at issue are the participating rail carriers' shared interline traffic." Id. at 9. Furthermore, disagreeing with this Court, it held that a discussion or agreement "need not identify a specific shipper, shipments, or destination to qualify for exclusion." Id. Discussions or agreements "about the formation of the participating railroads' interline agreements" and "anticipated shared traffic" are not admissible. Id.

By contrast, "evidence of discussions or agreements about single-line traffic or about rail freight generally is not excludable." Rail Freight VI, 34 F.4th at 9. When a discussion or agreement about interline movements contains references to other, non-excludable movements, that discussion or agreement may still be subject to exclusion so long as any reference to other movements "did not change the focus of the discussion or agreement away from the participating railroads' shared, identifiable interline movements." Id. at 10; see id. at 9 ("de minimis," "brief and insignificant," and "fleeting and inconsequential" references to non-interline movements "do[] not automatically disqualify evidence from exclusion"). The railroads have the burden of demonstrating "that the reference was either fleeting and inconsequential or appropriate to the advancement of the interline discussion itself." Id. at 10.

The D.C. Circuit also held that a rail carrier's internal documents "need not convey the substance of a discussion or agreement concerning interline movements to qualify for exclusion under the statute." Rail Freight VI 34 F.4th at 11-12. "[I]nternal documents prepared in advance of discussions or agreements with other carriers concerning shared interline movements" and internal documents that "reference[] only the existence of such a discussion or

agreement with another carrier" are not admissible. Id. at 12 (emphasis omitted). Because "[a] single document may reference more than one discussion or agreement, . . . [t]he court must consider each discussion and agreement separately in determining whether it should be excluded under Section 10706." Id. at 9. The Circuit therefore agreed with this Court that redactions may be employed "where segregable portions of documents contain protected evidence of discussions or agreements concerning interline movements," and the court may employ redactions to admit non-protected portions of documents. Id. at 13. The Circuit explained why limiting instructions would not work in the context of Section 10706, where the court is to be the gatekeeper shielding the jury from evidence that must be excluded. See Rail Freight VI, 34 F.4th at 13-14.

The court of appeals remanded the case for this Court "to reconsider the evidence at issue consistent with [its] interpretation of Section 10706." Rail Freight VI, 34 F.4th at 5.

## II.  DISCUSSION

Following the D.C. Circuit's decision, the parties conferred and submitted a list of exhibits that the defendant railroads argue should be excluded under Section 10706 for the purpose of resolving the summary judgment motions. See Joint Status Report [Dkt. No. 1094] at Ex. 1. Defendants listed twenty-five discussions reflected in what they believe are forty-three "key documents." Dkt. No. 1094 at 5. Subsequently, the plaintiffs withdrew their reliance on five of those documents, "in effect resolving 3 discussions." Id.; see also id. Exhibit 1.[3] The Court has carefully reviewed each of the disputed exhibits and has considered each exhibit within the context of the broader discussions identified by the defendants. See id. The Court has

---

[3] There is some confusion on this point. The parties in some places reference eight documents that plaintiffs have withdrawn from consideration, see Dkt. No. 1094 at 14, while in other places identify only five such documents. See id. at 2, 5.

also considered the parties' written submissions about specific discussions, agreements, and documents.  See Pls. Supp.; Defs. Supp.  The Court has reached the following conclusions:

| Discussion Number | Exhibit Number | Conclusion |
|---|---|---|
| 1 | PX0202 | This exhibit will be excluded in full.  The focus of this correspondence is clearly "the carriers' shared interline traffic."  Rail Freight VI, 34 F.4th at 9.  References to non-interline traffic within this exhibit do not "change the focus of the discussion or agreement away from the participating railroads' shared, identifiable interline movements."  Id. at 10. |
| 2 | PX0145 | This exhibit will be excluded in full.  The focus of the meeting was clearly "the carriers' shared interline traffic."  Rail Freight VI, 34 F.4th at 9.  References to non-interline traffic within this exhibit do not "change the focus of the discussion or agreement away from the participating railroads' shared, identifiable interline movements."  Id. at 10. |
| 2 | PX0610 | This exhibit is a deposition transcript.  During his testimony, the witness refers to various discussions and agreements concerning interline movements.  Portions of the deposition that reference such protected discussions and agreements shall be redacted.  See Rail Freight VI, 34 F.4th at 12-13 ("Section 10706 can be implemented through redactions of truly segregable portions or documents.").  The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |
| 2 | PX0596 | This exhibit is a deposition transcript.  During his testimony, the witness refers to various discussions and agreements concerning interline movements.  Portions of the deposition that reference such protected discussions and agreements shall be redacted.  See Rail Freight VI, 34 F.4th at 12-13 ("Section 10706 can be implemented through redactions of truly segregable portions or documents.").  The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |
| 2 | PX0237 | This exhibit may be admitted with redactions.  It contains a brief, segregable reference to a discussion that concerns interline movements between the two corresponding railroads.  The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |
| 3 and 4 | PX0595 | This exhibit is a deposition transcript.  During his testimony, the witness refers to various discussions and agreements concerning |

| Discussion Number | Exhibit Number | Conclusion |
|---|---|---|
| | | interline movements. Portions of the deposition that reference such protected discussions and agreements shall be redacted. See Rail Freight VI, 34 F.4th at 12-13 ("Section 10706 can be implemented through redactions of truly segregable portions or documents."). The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |
| 5 | PX0483 | This exhibit contains a public announcement made by one defendant railroad about its fuel surcharge program as applied to that railroad's traffic generally. This announcement is admissible and not protected under Section 10706. This exhibit also contains subsequent correspondence, the focus of which is the railroads' shared interline movements. The correspondence will be excluded. See Rail Freight VI, 34 F.4th at 9. |
| 5 | PX0467 | This exhibit will be excluded in full. This exhibit consists of correspondence regarding a fuel surcharge concurrence between two railroads. The focus of this correspondence is clearly "the carriers' shared interline traffic." Rail Freight VI, 34 F.4th at 9. |
| 5 | PX0468 | This exhibit will be excluded in full. This exhibit consists of correspondence and related attachments regarding a fuel surcharge concurrence between two railroads. The focus of this correspondence is clearly "the carriers' shared interline traffic." Rail Freight VI, 34 F.4th at 9. |
| 6 | PX0120 | This exhibit contains a meeting agenda for a meeting between two railroads and correspondence related to the meeting. Although the meeting agenda itself suggests that the railroads may have discussed general, joint-venture topics that are not specific to interline traffic, the supplement provided by the defendant railroads makes clear that the focus of this meeting was the railroads' shared interline traffic. See Defs. Supp. at 11; id. at SuppDA0153. The meeting agenda and related correspondence therefore will be excluded. The attachment to the meeting agenda (the "Monthly Digest Compilation") contains multiple, segregable entries related to a variety of topics, most of which are not related to interline traffic and are not protected under Section 10706. Some of the entries, however, do appear to concern identifiable interline movements and will be excluded. The defendant railroads shall propose redactions to the Monthly Digest Compilation consistent with this opinion and the order accompanying this opinion. |

| Discussion Number | Exhibit Number | Conclusion |
|---|---|---|
| 6 | Oxbow 22 | This exhibit contains the same meeting agenda included in PX0120. It will be excluded for the reasons stated above. |
| 7 and 8 | PX0144 | This exhibit will be excluded in full. This exhibit consists of correspondence and related attachments regarding a fuel surcharge concurrence between two railroads. The focus of this correspondence is clearly "the carriers' shared interline traffic." Rail Freight VI, 34 F.4th at 9. |
| 9 | PX0253 | This exhibit may be admitted with redactions. The exhibit consists of correspondence between railroads as well as internal correspondence between officials within one railroad. The correspondence between railroads concerns a concurrence request and is protected under Section 10706. The plaintiffs agree to withdraw this correspondence. See Pls. Supp. at 5. As for the internal correspondence, it does not concern interline movements, as it relates to internal debates about the revision of a railroad's fuel surcharge program that is not specific to any interline movements. See Defs. Supp. at 17. The attachments to the internal correspondence are also not protected under Section 10706. The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |
| 9 | PX0242 | This exhibit contains some of the same correspondences as included in PX0253 and may be admitted with redactions for the reasons explained above. |
| 10 | PX0240 | This exhibit will be excluded in full. This exhibit consists of correspondence and related attachments regarding a fuel surcharge concurrence between two railroads. The focus of this correspondence is clearly "the carriers' shared interline traffic." Rail Freight VI, 34 F.4th at 9. |
| 13 | PX0167 | This exhibit consists of correspondence about a June 3, 2003 meeting between two railroads and includes the meeting agenda for that discussion. The defendants assert that the meeting agenda and correspondence are protected under Section 10706 because the relationship between these two railroads was "overwhelmingly one between interline connecting carriers." Defs. Supp. at 14. The Court finds that the defendant railroads have not carried their burden. See Rail Freight VI, 34 F.4th at 10. Although these railroads may have shared interline traffic, the mere fact that two railroads share interline traffic is insufficient. The meeting agenda suggests that the discussion primarily focused on general industry concerns, not on specific interline movements. The Court is not persuaded that the |

10

| Discussion Number | Exhibit Number | Conclusion |
|---|---|---|
| | | meeting focused on interline movements, although the agenda indicates in a very few places that certain sub-discussions focused on interline movements (e.g., discussions about specific gateways or gateway performance). Those sub-discussions are segregable and may be redacted. The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |
| 13 | PX0474 | This exhibit consists of handwritten notes from the June 3, 2003 meeting discussed in PX0167. This exhibit will be redacted consistent with the redactions for PX0167, for the reasons explained above. |
| 14 | PX0121 | This exhibit will be excluded in full. This exhibit consists of an itinerary and agenda for a December 16, 2003 meeting between two railroads. It is clear from the meeting agenda that the meeting constituted a discussion about interline movements. Any references to general, non-interline specific topics was fleeting and did not shift the focus away from the railroads' shared interline traffic. Rail Freight VI, 34 F.4th at 10. |
| 14 | PX0117 | This exhibit will be excluded in full. This exhibit consists of correspondence and related attachments regarding a May 17, 2004 meeting between two railroads. The focus of this correspondence is clearly "the carriers' shared interline traffic." Rail Freight VI, 34 F.4th at 9. One attachment is a PowerPoint slide deck, the title of which suggests that the railroads' shared interline movements are the exclusive focus of the discussion between the railroads. The other attachment is an excel sheet containing information about the railroads' shared traffic. The focus of both attachments is the railroads' shared interline movements and both attachments will be excluded. |
| 15 | PX0476 | This exhibit will be excluded in full. The exhibit consists of correspondence between representatives from two railroads about the railroads' shared interline traffic. Although the correspondence references one railroad's general policy, the discussion between the two railroad representatives is itself focused on the railroads' shared traffic. See Rail Freight VI, 34 F.4th at 12 (references to other traffic do not disqualify a document for exclusion if those references are "appropriate for the advancement of the interline discussion itself"). |
| 15 | Oxbow 28 | This exhibit is identical to PX0476. It will be excluded for the reasons stated above. |

11

| Discussion Number | Exhibit Number | Conclusion |
|---|---|---|
| 16 | PX0056 | This exhibit will be excluded in full.  This exhibit consists of internal correspondence within one railroad regarding the application of a fuel surcharge on interline traffic shared with another railroad, the focus of which is clearly "the carriers' shared interline traffic."  Rail Freight VI, 34 F.4th at 9. |
| 16 | PX0066 | This exhibit will be excluded in full.  This exhibit consists of correspondence between representatives of two railroads regarding the application of a fuel surcharge on interline traffic, the focus of which is clearly "the carriers' shared interline traffic."  Rail Freight VI, 34 F.4th at 9. |
| 16 | PX0147 | This exhibit will be excluded in full.  This exhibit consists of correspondence between representatives of two railroads regarding the application of a fuel surcharge on interline traffic, the focus of which is clearly "the carriers' shared interline traffic."  Rail Freight VI, 34 F.4th at 9. |
| 16 | PX0148 | This exhibit will be excluded in full.  This exhibit consists of correspondence between representatives of two railroads, and related attachments, regarding the application of a fuel surcharge on interline traffic, the focus of which is clearly "the carriers' shared interline traffic."  Rail Freight VI, 34 F.4th at 9. |
| 16 | PX0245 | This exhibit will be excluded in full.  This exhibit consists of a list of the "joint projects that arose from" a previous "jointline meeting" between two railroads.  See Rail Freight VI, 34 F.4th at 9 (Section 10706 protects "discussions or agreements about the formation of the participating railroads' interline agreements, as well as about their anticipated shared traffic"). |
| 16 | PX0246 | This exhibit will be excluded in full.  This exhibit consists of correspondence between representatives of two railroads, and related attachments, regarding the application of a fuel surcharge on interline traffic, the focus of which is clearly "the carriers' shared interline traffic."  Rail Freight VI, 34 F.4th at 9. |
| 16 | Oxbow 31 | This exhibit contains the same correspondence as PX0246, as well as related attachments.  It shall be excluded for the reasons explained above. |
| 16 | PX0247 | This exhibit will be excluded in full.  This exhibit consists of correspondence between representatives of two railroads regarding application of a fuel surcharge on interline traffic between those |

| Discussion Number | Exhibit Number | Conclusion |
|---|---|---|
|  |  | railroads and about the railroads' "anticipated shared traffic." Rail Freight VI, 34 F.4th at 9. |
| 16 | PX0248 | This exhibit will be excluded in full.  It contains correspondence between representatives from two railroads regarding the application of a fuel surcharge on interline traffic, the focus of which is clearly "the carriers' shared interline traffic." Rail Freight VI, 34 F.4th at 9. |
| 17 and 18 | PX0151 | This exhibit will be excluded.  It consists of internal correspondence about the discussions that one railroad representative had with his counterparts at other railroads about the railroads' shared interline traffic.  This correspondence both "references the existence" of interline discussions and "convey[s] the substance" of those discussions, as defendant railroads persuasively argue.  Rail Freight VI, 34 F.4th at 12; see Defs. Supp. at 6-7. |
| 17 and 18 | Oxbow 100 | This exhibit is identical to PX0151.  It will be excluded for the reasons explained above. |
| 17 and 18 | Oxbow 39 | This exhibit is identical to PX0151.  It will be excluded for the reasons explained above. |
| 17 and 18 | PX0067 | This exhibit may be admitted with redactions.  The exhibit contains correspondence (an initial email and a response to that initial email) internal to one railroad about potentially adopting a mileage-based fuel surcharge.  The response email references the existence of anticipated discussions concerning identifiable interline movements between rail carriers.  See Rail Freight VI, 34 F.4th at 12.  Admitting the response email "could cause a jury to see references to an interlining discussion's existence . . . inviting speculation about what the carriers discussed."  Id.  The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |
| 17 and 18 | PX0085 | This exhibit may be admitted with redactions.  The exhibit contains correspondence internal to one railroad about potentially adopting a mileage-based fuel surcharge.  The correspondence references the existence of anticipated discussions concerning identifiable interline movements between rail carriers.  See Rail Freight VI, 34 F.4th at 12.  Admitting the response email "could cause a jury to see references to an interlining discussion's existence . . . inviting speculation about what the carriers discussed."  Id.  The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |

13

| Discussion Number | Exhibit Number | Conclusion |
|---|---|---|
| 17 and 18 | Oxbow 24 | This exhibit may be admitted with redactions. A segregable portion of this exhibit references anticipated discussions about identifiable, interline movements. See Defs. Supp. at 10. The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |
| 17 and 18 | PX0095 | This exhibit contains correspondence that is identical to a portion of Oxbow Ex. 24. It shall be redacted consistently with Oxbow Ex. 24. |
| 19 | Oxbow 11 | This exhibit will be excluded in full. The exhibit consists of correspondence between representatives from two railroads about the railroads' shared interline traffic and the rates applicable to that traffic, as well as related attachments. The focus of this correspondence is the participating railroads' shared interline traffic, despite the fact that the correspondence contains references to broader, non-interline-specific initiatives. Those references are "appropriate to the advancement of the interline discussion itself." In re Rail Freight, 34 F.4th at 10. |
| 21 and 22 | PX0612 | This exhibit is a deposition transcript. During his testimony, the witness refers to various discussions and agreements concerning interline movements. Portions of the deposition that reference such protected discussions and agreements may be admitted with redactions. See Rail Freight VI, 34 F.4th at 12-13 ("Section 10706 can be implemented through redactions of truly segregable portions or documents."). The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |
| 23 | PX0479 | This exhibit will be excluded in full. This exhibit consists of correspondence regarding a fuel surcharge concurrence between two railroads. The focus of this correspondence is clearly "the carriers' shared interline traffic." Rail Freight VI, 34 F.4th at 9. |
| 23 | Oxbow 107 | This exhibit is identical to PX0479 and will be excluded for the reasons stated above. |
| 24 | PX0039 | This exhibit will be excluded in full. This exhibit consists of correspondence regarding a fuel surcharge concurrence between two railroads. The focus of this correspondence is clearly "the carriers' shared interline traffic." Rail Freight VI, 34 F.4th at 9. |
| 24 | PX0040 | This exhibit will be excluded in full. This exhibit consists of correspondence and related attachments regarding a fuel surcharge concurrence between two railroads. The focus of this |

| Discussion Number | Exhibit Number | Conclusion |
|---|---|---|
|  |  | correspondence is clearly "the carriers' shared interline traffic." Rail Freight VI, 34 F.4th at 9. |
| 24 | Oxbow 102 | This exhibit is identical to the correspondence contained in PX0040 and will be excluded for the reasons stated above. |
| 25 | Oxbow 8 | This exhibit is a deposition transcript. During his testimony, the witness refers to discussions and agreements concerning interline movements. Portions of the deposition that reference such protected discussions and agreements shall be redacted. See Rail Freight VI, 34 F.4th at 12-13 ("Section 10706 can be implemented through redactions of truly segregable portions or documents."). The defendant railroads shall propose redactions consistent with this opinion and the order accompanying this opinion. |

In view of the foregoing discussion and analysis, it is hereby

ORDERED that the exhibits shall be excluded or admitted consistent with the above discussion, analysis, and conclusions; and it is

FURTHER ORDERED that the defendants – operating in good faith and consistent with the analysis set forth in this opinion – shall submit proposed redactions for the following exhibits on or before March 18, 2024: PX0610, PX0596, PX0237, PX0595, PX0120, PX0253, PX0242, PX0167, PX0474, PX0067, PX0085, Oxbow 24, PX0095, PX0612, and Oxbow 8. The plaintiffs shall file any objections to the defendants' proposed redactions on or before April 1, 2024.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 3\4\24