# Exhibit 5

University of Mississippi

eGrove

AICPA Committees

American Institute of Certified Public Accountants (AICPA) Historical Collection

2006

# Forensic procedures and specialists: useful tools and techniques

American Institute of Certified Public Accountants. Forensic & Litigation Services Committee. Fraud Task Force

Follow this and additional works at: https://egrove.olemiss.edu/aicpa_comm

Part of the Accounting Commons, and the Taxation Commons

Recommended Citation

American Institute of Certified Public Accountants. Forensic & Litigation Services Committee. Fraud Task Force, "Forensic procedures and specialists: useful tools and techniques" (2006). *AICPA Committees*. 95. https://egrove.olemiss.edu/aicpa_comm/95

This Article is brought to you for free and open access by the American Institute of Certified Public Accountants (AICPA) Historical Collection at eGrove. It has been accepted for inclusion in AICPA Committees by an authorized administrator of eGrove. For more information, please contact egrove@olemiss.edu.

EXHIBIT

4

SPECIAL REPORT

Business Valuation and
Forensic & Litigation Services Section



# Forensic Procedures and Specialists: Useful Tools and Techniques

American Institute of Certified Public Accountants

AICPA®

# Notice To Readers

This paper is intended to provide educational and reference material primarily for audit committee members and others who may want to use the work of a forensic specialist. The document is based on the application of current forensic procedures and techniques in investigating the potential that fraud exists when specific indicators or red flags of fraud are uncovered. It also recognizes the value of the use of forensic specialists in such instances.

This document was written by and represents the views of the members of the Forensic Procedures Task Force of the AICPA's Forensic & Litigation Services Committee regarding the use of forensic procedures, techniques, and specialists and how such use differs from that of an audit of historical financial statements. The guidance contained in this paper has not been reviewed or approved by any senior technical committee of the AICPA.

SPECIAL REPORT

Business Valuation and
Forensic & Litigation Services Section



# Forensic Procedures and Specialists: Useful Tools and Techniques

Prepared by the Fraud Task Force of Forensic & Litigation Services
Committee of the American Institute of Certified Public Accountants, Inc.

AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

AICPA®

0104H-384

*Copyright © 2006 by*
*American Institute of Certified Public Accountants, Inc.*
*New York, NY 10036-8775*

*All rights reserved. For information about the procedure for requesting permission to make copies of any part of this work, please visit www.copyright.com or call (978) 750-8400.*

*1 2 3 4 5 6 7 8 9 0 AAP 0 9 8 7 6*

## Forensic Procedures Task Force

Ronald L. Durkin, CPA, CFE, *Chair*
Timothy P. Hedley, PhD, CPA
Sandra K. Johnigan, CPA, CFE
Philip C. Levi, CPA, FCA, CFE
Michael G. Ueltzen, CPA, CFE
Mark F. Zimbelman, PhD, CPA

## AICPA Forensic and Litigation Services Committee 2005–2006

Thomas Burrage, *Chair*
Yvonne Craver
Michelle Gallagher
David Kast
Jeffrey Kinrich
Gregory Lawson
Richard Pollack
Patrice Schiano
Ruby Sharma
Ralph Summerford

## AICPA Staff

James C. Metzler, CPA, CITP
*Vice President, Small Firm Interests*

Steve Winters
*Director, Specialized Communications*

Robert Farrell, CFE, Editor
*Consultant, Financial Planning*

# Table of Contents

Introduction ........ 1

What Are Forensic Procedures? ........ 2

How Do Forensic Procedures Differ From Audit Procedures? ........ 6

Who Can Use Forensic Procedures and Specialists? ........ 10

Potential Uses of Forensic Procedures to Reduce Litigation, Business, and Audit Risk ........ 12

Concluding Comments ........ 15

**Appendix: A Comparison of GAAS Audit Evidence and Forensic Procedure Evidence ........ 17**

**References ........ 19**

# INTRODUCTION

In 2004, the AICPA Forensic & Litigation Services (FLS) Committee issued a discussion paper entitled *Forensic Services, Audits & Corporate Governance: Bridging the Gap* (2004 Discussion Memorandum). The 2004 Discussion Memorandum explored a number of questions about the use of forensic procedures and forensic specialists in the audit process. The goal of the 2004 Discussion Memorandum was to:

- Identify ways for CPAs with experience in the forensic services discipline to work effectively with financial statement auditors.
- Assist in developing guidance to assist forensic accountants, audit committees, financial statement audit teams, and others who use the services of the forensic accountant.
- Enhance the results of work performed by all of the above.

After consideration of comments received during a public roundtable on September 22, 2004, in Washington, D.C., and written submissions on the 2004 Discussion Memorandum, the AICPA FLS Committee concluded that there is a lack of understanding about how forensic procedures and forensic specialists can be utilized. As a result, the committee concluded that there is a need among audit committees and throughout the accounting community for a more thorough understanding of the nature of forensic procedures and the extent of their potential use.

The intent of this paper is to help answer the following questions that arose from the 2004 Discussion Memorandum:

- What are forensic procedures?
- How do forensic procedures differ from audit procedures?
- Who can use forensic procedures and specialists?
- What are the potential uses of forensic procedures to reduce litigation, business, and audit risk?

The paper begins to answer these questions by defining and describing the most widely recognized forensic procedures used by forensic specialists. Forensic examinations or investigations are performed to confirm the existence of fraud. The purposes and structures of financial statement audits and fraud or forensic examinations are different, and the two should not be confused.

The applicable professional standards that govern the work of CPAs performing forensic services are described in AICPA Consulting Services Special Report 03-1, *Litigation Services and Applicable Professional Standards*. Because auditors and forensic specialists follow different sets of professional standards in performing their work (i.e. generally accepted auditing standards [GAAS] versus consulting standards, respectively), special care must be taken to ensure that all applicable professional standards are followed. Furthermore, using forensic specialists in a set-

ting that calls for auditor independence should be carefully evaluated to rule out conflicts or the perception of conflicts. This paper does not provide guidance on these issues, but instead, focuses on the practical usage of forensic procedures.

## What Are Forensic Procedures?

*Black's Law Dictionary* defines *forensic* as "used in or suitable to courts of law or public debate." *Forensic procedures* involve the systematic gathering of evidentiary data through the use of recognized investigative techniques that can be presented in a court of law. A *forensic specialist,* though not specifically defined, is an individual having expertise and/or training and experience in one or more disciplines that could be used in a forensic environment. Disciplines commonly applicable to forensic environments include accounting, auditing, fraud examination, law, computer and other technologies. *Forensic accounting services* generally involve the application of special skills in accounting, auditing, finance, quantitative methods, certain areas of the law and research, and investigative skills to collect, analyze, and evaluate evidential matter and to interpret and communicate findings, and may involve either an attest or consulting engagement.[1] For purposes of this Discussion Paper, forensic accounting services consist of (1) litigation services and (2) investigative services.

*Litigation services* entail the role of the forensic specialist as an expert or consultant and consist of providing assistance for actual, pending, or potential legal or regulatory proceedings before a trier of fact[2] in connection with the resolution of disputes between parties. Litigation services generally consist of expert witness, consulting, and other services. These services are defined as follows:

1. *Expert witness services* are litigation services in which a member is designated to render an opinion before a trier of fact as to the matter(s) in dispute.

2. *Consulting services* are those litigation services in which a member provides advice about the facts, issues, and strategy of a matter. The consultant does not testify as an expert witness before a trier of fact unless the consultant's role subsequently changes to that of an expert witness.

3. Other services are *litigation services* in which a member serves as a trier of fact, special master, court-appointed expert, referee, arbitrator, or mediator on behalf of a client.

*Investigative services* include forensic services such as performing analyses or investigations, which, though not involved in litigation, may require the same skills used in litigation services. If a forensic specialist is utilized in a financial statement audit, questions may arise concerning the

[1] Definition adopted by the AICPA Business Valuation/Forensic and Litigation Services Executive Committee; January 2006.

[2] A *trier of fact* is a court, regulatory body, or government authority; their agents; a grand jury; or an arbitrator or mediator of the dispute.

definition of an *investigation* in the context of the use of the specialist, and at what point a financial statement audit becomes or leads to an investigation.

An *investigation* is defined as "a structured gathering of documentary evidence and testimony to resolve allegations of improper activity, including a reported fraud."[3] A financial statement audit may lead to an investigation if improper activity is suspected, discovered, and/or quantified regardless of the initial or apparent materiality of the suspected act. The financial statement auditor is not in a position to launch an investigation. The financial statement auditor has a responsibility to communicate any known or suspected fraud to those charged with governance (i.e., the audit committee or its equivalent). That body would then determine whether an investigation should be launched. That investigation may or may not include the financial statement auditor but would surely include a forensic specialist. The financial statement auditor would then be obliged to either obtain reasonable assurance to determine that the statements are not materially misstated, issue a qualified or adverse opinion without resigning, or resign from the engagement.

Forensic specialists are generally trained in and able to utilize differing components of seven recognized investigative techniques. These techniques are used to gather forensic evidence, and provide a framework for answering the question, "What are forensic procedures?"

## What Are the Seven Forensic Investigative Techniques?

The seven recognized forensic investigative techniques have been used by forensic specialists since Richard A. Nossen introduced the seventh technique, analysis of financial transactions, at the National Conference on Organized Crime in 1975. This technique had not been identified prior to Nossen's presentation. Since its adoption by practitioners, the seven techniques have been identified as described in the following subsections.

### *Public Document Reviews and Background Investigation*

At the onset of an investigation, the forensic specialist may conduct or engage another specialist to conduct a background investigation of the business; its owners, employees, related parties, competitors; and any potential targets of the investigation. The process continues as new information or new individuals are identified that warrant further investigation.

A background investigation may identify current, historical, and other relevant information that may be helpful to the forensic specialist. Such information may include real and personal property records, corporate and partnership records, civil and criminal records, and stock trading activities on the part of management or board members. Through a review of publicly available records, a forensic specialist may be able to determine or understand possible motives (incentives and pressures) for perpetrating fraud. For instance, a forensic specialist may identify insider trading ac-

[3] See *Glossary of Fraud Schemes and Terms*, published by the Heads Up Fraud Prevention Association, 2000.

tivities, related party transactions, or businesses owned or controlled by individuals under investigation, which could indicate a conflict of interest.

### *Interviews of Knowledgeable Persons*

The primary purpose of an interview is to gather evidence through facts and other information supplied by witnesses. Interviewing is performed throughout an investigation. With each successive interview, the forensic specialist should obtain background information about the witness, the subject matter of the investigation, and the target(s) of the investigation. As a result of the dynamic nature of the investigative process, evidence obtained from all of the investigative techniques employed can provide additional leads and areas to explore in interviews. With each successive interview, new records and additional witnesses may be identified. This progressive approach to the investigation allows peripheral witnesses to be interviewed with the purpose of having the target or targets of the investigation interviewed last.

Forensic specialists who perform attest or litigation services engagements normally do not interrogate individuals in order to obtain admissions of guilt. The primary reason forensic specialists do not normally get involved in interrogations is that legal counsel normally engages forensic specialists and controls the investigation. If a forensic specialist is working under the direction of counsel, one can argue that the target of an investigation may need to have his or her own counsel present. In addition, various legal issues may arise during the course of an interrogation that could complicate the investigation. Last, forensic specialists are fact-finders who may appear to lose their objectivity if they assume the role of interrogator seeking a confession. Although a confession may be elicited based on the evidence produced by the forensic specialist, interrogation is normally reserved for specialists such as polygraph examiners or law enforcement officers.

### *Confidential Sources*

In nearly every organization, there are people who are willing to share information if they can remain anonymous. In a number of cases, confidential sources provide information through employee hotlines and anonymous letters. Additionally, former employees may provide valuable information through letters of resignation and exit interviews.

A confidential source of information may have a hidden motive for providing information. Former spouses, business partners, employees, neighbors, and friends may know specific details, but their reasons for cooperating may be suspect. The confidential source may be providing information that is intended to discredit or embarrass the target. A forensic specialist should weigh the benefit of relying on the evidence against the risk of potential damage to the case if the information is later determined to be false. A prudent forensic specialist, in the interest of exercising professional skepticism, will always attempt to corroborate the information provided by an informant or confidential source.

In discussions with a witness, the forensic specialist should stress that there can be no assurances of absolute confidentiality. For example, in regulatory matters involving public companies, the audit committee of the board of directors may waive the confidentiality agreement previously given in order to comply with a government regulator's request for information. Additionally, a subpoena may be used to compel a forensic specialist to reveal the identity of a confidential source, which would force the source to come forward.

### *Laboratory Analysis of Physical and Electronic Evidence*

The forensic specialist has a variety of tools available for analyzing physical evidence. In addition to the laboratory analysis of physical evidence such as fingerprint analysis, forged signatures, and fictitious or altered documents, powerful computer software allows the specialist to perform procedures such as hard disk imaging, and the analysis of financial information and computer use or misuse.

These specialists have the ability to recover previously erased electronic files and documents, and search electronic mail for evidence of fraud. Furthermore, forensic specialists have expertise in using computer technology to analyze numerous transactions, extract statistical samples, format data to apply specific investigative routines, and examine journal entries looking for signs of attempted defalcation or misrepresentation of financial statement balances.

### *Physical and Electronic Surveillance*

Law enforcement agencies routinely conduct physical and electronic surveillance. Private investigators and other specialists also perform these techniques under limited circumstances. A forensic specialist may recommend physical or electronic surveillance and, if appropriate, that counsel consider using one or both of the above techniques. Surveillance is primarily used to monitor people; however, the forensic specialist may turn to similar techniques for observing places or objects, such as a loading dock after business hours to determine whether inventory or equipment is being removed without authorization. The forensic specialist may also recommend that a client install surveillance cameras to protect vulnerable areas of the company, such as inventory loading and storage areas and cashier's areas.

### *Undercover Operations*

Law enforcement agencies may use agents or officers to conduct undercover operations. Additionally, private investigators may use this technique in limited circumstances. By putting agents or private investigators in direct contact with alleged perpetrators, this technique can be an effective way to obtain first-hand knowledge of the details surrounding a fraud scheme. In most instances, forensic specialists would not participate in an undercover operation, but may recommend to the client that they consider employing this technique. Nevertheless, there have been in-

stances in which specialists, positioned inside organizations, were able to uncover sufficient evidence of fraudulent behavior by first gaining the trust of perpetrators.

### *Analysis of Financial Transactions*

The forensic specialist's knowledge of fraud schemes and indicia of fraud is invaluable in performing analytical procedures. Forensic specialists can use a variety of analytical procedures in conducting a fraud investigation. Examples include analyzing manual journal entries for improprieties, calculating comparative ratios to analyze trends in the business, or reviewing individual or group-related transactions to check for improprieties. Also, fictitious vendors and employees can be identified, indicating that improper payments were made. Finally, investigations of sales returns and allowances can indicate the padding of sales figures.

## How Do Forensic Procedures Differ From Audit Procedures?

The systematic employment of forensic procedures, as defined by the seven investigative techniques, will often reveal evidence that is different from that obtained through the audit procedures outlined in the AICPA's Professional Standards. Audit evidence as outlined in AU Sections 326, *Evidential Matter* (AICPA, *Professional Standards,* vol. 1, AU sec. 326), and 329, *Analytical Procedures* (AICPA, *Professional Standards,* vol. 1, AU sec. 329), includes the following:

1. Documentation (e.g., examining invoices or bank statements)
2. Inquiry (e.g., querying client employees or management)
3. Confirmation (e.g., obtaining written representation from customers of amounts due client)
4. Physical examination (e.g., inspecting inventory or fixed assets)
5. Reperformance (e.g., recalculating depreciation expense)
6. Observation (e.g., watching how client follows specified control procedures)
7. Analytical procedures (e.g., calculating financial ratio and compare to a benchmark)

Forensic specialists have experience in gathering, presenting, and preserving evidence that may be presented in court. This experience includes specialized knowledge of procedures such as obtaining background information from public document sources, interviewing to detect deception, or using technological skills and tools to retrieve and analyze pertinent data. This expertise requires the forensic specialist to be familiar with the legal limitations on using these procedures that may be set by state or federal statute. A detailed comparison of audit evidence as required by GAAS with evidence obtained by forensic procedures is discussed below. The Appendix "A Comparison of GAAS Audit Evidence and Forensic Procedure Evidence," further illustrates the differences between the two.

## Documentation Versus Public Document Searches

Auditors examine numerous documents in the course of conducting a financial statement audit. Many times, these documents are obtained from and originated by the client in the ordinary course of business. For example, client invoices and shipping documents may be examined to ensure that accurate amounts were recorded in the sales transactions in the correct period. Also, documents that originate externally, such as bank statements or vendor invoices, are commonly examined during an audit. From these "third-party" documents, the auditor can ascertain that entries in the general ledger accounts appear correct to the extent that the sale, bank balance, or amounts payable or receivable are properly recorded.

Public document searches and background checks by the auditor can corroborate that an entity doing business with an auditee (e.g., a customer, bank, or vendor) exists. Failure to find the existence of an entity such as this may provide a basis for recommending that a fraud investigation be performed.

The forensic specialist, when performing a public records search with respect to a fraud target, is often searching for evidence regarding one or more dimensions of the fraud triangle (incentive, opportunity, rationalization),[4] indicating possible evidence of fraud. For example, a public records search may suggest that a member of senior management may have been aggressive or unethical in his or her current or prior business practices and, therefore, could be susceptible to rationalizing aggressive or unethical financial reporting. Also, an employee who has illicit or unreported sources of income may come under suspicion if it becomes clear that his or her earnings could not possibly provide the actual assets he or she owns. Because these documents are derived from public databases that are not under the control of senior management, they are more likely to have originated legitimately as opposed to being created fictitiously.

## Inquiry Versus Interviewing

Auditors inquire of management and accounting or other personnel on a continuous basis throughout an audit. Common inquiries include discussing unexpected fluctuations noted when performing analytical procedures; and determining whether controls and processes have been established in a given financial statement cycle; and ascertaining changes in the organization's structure, operations, accounting policies, or management philosophies.

Forensic specialists are normally trained in and have considerable experience in conducting interviews. The forensic specialist structures the interview based on the types of information that an interviewee may have, in order to extract the most useful facts the interviewee has to offer. The forensic specialist is skilled in both asking the right questions and observing the verbal and

[4] See Statement on Auditing Standards (SAS) No. 99, *Consideration of Fraud in a Financial Statement Audit,* paragraph 7 (AICPA, *Professional Standards,* vol. 1, AU sec. 316.07).

nonverbal responses of the interviewee. The reaction(s) of an interviewee can indicate that the individual is being deceptive, which calls into question his or her credibility and veracity.

Forensic specialists are trained to develop an interview plan that helps determine the sequence of the interviews to be conducted. Normally, clues to potential fraud indicators and alleged perpetrators of fraud are gathered while general background knowledge is sought from peripheral witnesses. As the interview progresses, the clues and information derived from prior interviews are used to target key individuals for specific questioning.

## Confirmation Versus Alternative Sources

Audit evidence, as required by GAAS, often involves written or verbal confirmations obtained from third parties regarding transactions or account balances. A number of the most common balances confirmed during the audit are the accounts receivable balances due from customers, and the cash and investment balances maintained at financial institutions. The auditor may also confirm additional information, such as the terms or conditions of sale. The primary purpose of the confirmation is to obtain evidence with respect to the existence and valuation of an account balance.

In contrast, a forensic specialist uses numerous potential sources of information both within and outside of the audit client. For example, hotlines may facilitate the confidential reporting of all sorts of illegal or unethical behavior, including fraudulent business practices. Often, a number of parties are aware that fraud has been perpetrated, and they will share what they know if they are given encouragement or offered anonymity. In all cases in which information is furnished by alternative sources, the forensic specialist needs to assess the relevance and/or correctness of the information, and the facts that support or refute the issues raised. This information is often general in nature and may require forensic specialists to explore and corroborate claims through supporting records, account postings, or other electronic or documentary evidence.

## Physical Examination Versus Laboratory Analysis of Physical Evidence

Auditors perform inventory observations and counts in order to determine the existence, physical condition, and quantity of assets listed on the balance sheet.

If suspicious assets or documents are identified, forensic specialists may find it appropriate to conduct a laboratory analysis to identify forged or altered documents, or verify authenticity. The origin of documents may be ascertained by tests such as latent fingerprint analysis, ink sampling, or document dating. Forensic specialists trained to use software designed to recover or retrieve data can uncover evidence of altered or destroyed (electronic) records, files, accounting transactions, or potentially incriminating documents maintained in an electronic format.

## Reperformance Versus Analyzing Electronic Evidence

As part of their work, auditors may re-perform calculations of accounting entries to determine that they are mathematically correct. Additionally, auditors review manual journal entries to determine anything unusual that may indicate fraud. Key financial statistics and ratios are also reviewed to ensure that the financial data provided by management to shareholders, regulatory agencies, and the investing public are in line with expectations.

Forensic specialists exercise a high degree of professional skepticism similar to that mandated in Statement on Auditing Standards (SAS) No. 99, *Consideration of Fraud in a Financial Statement Audit* (AICPA, *Professional Standards,* vol. 1, AU sec. 316). Skilled fraudsters often manipulate financial data to make key ratios appear consistent. For this reason, nonfinancial data can be used to identify inconsistencies between financial and nonfinancial performance. Specialists who are trained in data-mining techniques can reperform calculations and statistically analyze thousands and even millions of transactions such as manual journal entries. These analyses utilize powerful software and statistical routines to identify unusual transactions or fraudulent patterns. These techniques can also be used to identify weaknesses or possible management override of internal controls.

## Observation Versus Surveillance

Auditors observe accounting and control processes and procedures to determine that they are properly performed. Examples of such processes or controls include the segregation of duties and the observation of inventory counts. For example, AU Section 326.26 includes the observation of inventory counts as an example of a substantive test to satisfy audit objectives that (1) inventories included in the balance sheet physically exist and (2) inventory quantities include all products, materials, and supplies on hand.

Forensic procedures include other techniques for obtaining firsthand knowledge of processes, procedures, and activities. A forensic specialist can help determine whether physical or electronic surveillance is appropriate, and, if circumstances dictate, may use one or both of these techniques. For instance, the specialist may perform physical surveillance by observing a loading dock after business hours to determine whether inventory or equipment is being removed without authorization. Vendor verification can be accomplished by driving to the vendor's address listed on an invoice and checking phone numbers to determine the vendor's existence and assess the legitimacy of the business.

The forensic specialist may also recommend that a client install surveillance cameras to protect vulnerable areas of the company, such as inventory loading and storage or cashier areas. In addition, the monitoring of computer usage (e.g., internet and electronic mail) is a method of surveillance that can confirm that computers are used in accordance with company controls.

### GAAS Analytical Procedures Versus Nontraditional Analyses

Auditors perform analytical procedures such as vertical, horizontal, and ratio analyses. They also validate and compare financial data with non-financial data to identify trends and highlight risks that various assertions may be misstated.

Forensic specialists may supplement the auditor's analytical procedures with other analyses, or evaluate data in differing modes as a means of identifying possible frauds. For example, the specialist may examine the stock trading activity of employees, officers, and board members. Additionally, the specialist can perform more in-depth analyses of higher fraud risk areas such as journal entries (e.g., the management override of controls); revenue recognition (e.g., schemes such as channel stuffing, extended dating provisions, or deep discounts); inventory valuation (e.g., the analysis of inventory in transit, bill-and-hold arrangements); asset classification (e.g., short-term leased assets included in fixed-asset records); and related party transactions (e.g., background checks, failure to disclose). Knowledge of recognized fraud risks within particular industries and prior fraud schemes provides a forensic specialist with expertise that can assist the audit team in developing creative approaches to detecting fraud that has been concealed. This experience may also be useful for evaluating possible management override of internal controls as well as the tone at the top of the organization.

## WHO CAN USE FORENSIC PROCEDURES AND SPECIALISTS?

The use of forensic specialists and their procedures is being incorporated in both internal and external audits as well as in other investigations and forensic procedures being performed by various professionals. The following sections provide a brief description of those who can and do use forensic specialists and forensic procedures.

### Audit Committees

The public is demanding greater vigilance from all parties involved in organizational governance, thus increasing the need to fight fraud. Audit committees are required to play a pivotal role in the prevention and deterrence of fraud, and to take appropriate action in the discovery of fraud. Independent public accountants, hired by audit committees, and internal auditors will continue to play an important part in the process. CPA forensic accounting consultants have recently been recognized as vital allies. Qualified forensic accounting consultants have the education, training, and experience to provide additional assistance to audit committees so they may better carry out their fiduciary responsibilities in the fight against fraud.[5]

[5] *The AICPA Audit Committee Toolkit*: 2004, page 73.

## External Auditors

SAS No. 99 includes guidance for forensic-type procedures that are expected to be part of an audit if there is no allegation of fraud. SAS No. 99 also directs the external auditor to modify audit procedures if a high risk of material misstatement due to fraud exists, and provides guidance with respect to modifications of the audit approach that may be considered in these circumstances.

In such an instance, the external auditor may undertake the performance of some or all of the seven forensic investigative techniques in their modified audit procedures, or may consider separately employing a forensic specialist to carry out the appropriate procedures. In the performance of the audit, the external auditor is required to exercise due professional care and professional judgment. The exercise of such professional judgment may lead the external auditor to conclude that certain forensic procedures should be performed.

## Internal Auditors

The internal audit function is commonly the method by which fraud is detected *within* an organization. Internal auditors who are forensic specialists may both proactively search for fraud and reactively investigate it once it is suspected. These individuals would use the seven investigative techniques in performing their investigation.

Whistleblower hotlines and anonymous tips can provide internal auditors with critical information regarding management override of internal controls, illicit activities, conflicts of interest, and other potential fraudulent acts. Brainstorming with others outside management, such as audit committee members or independent members of the board, as well as external auditors, may identify control weaknesses, pressures, or incentives that suggest areas in which more investigation is warranted.

Independent forensic specialists should be engaged if an internal audit department is asked to investigate allegations of fraud on behalf of in-house counsel, management, or members of the board of directors and/or the audit committee, but possesses insufficient expertise in forensic procedures to carry out the investigations.

## Regulators, Law Enforcement, and Other Government Groups

There are numerous agencies and/or individuals that investigate frauds. For instance, a bank fraud would possibly draw investigators from the Federal Deposit Insurance Corporation (FDIC). Frauds perpetrated against insurance companies would be investigated by representatives of the state insurance commission. Tax frauds are under the jurisdiction of the Internal Revenue Service (IRS). The Federal Bureau of Investigation (FBI), the U.S. Postal Inspection Service, or the U.S. Secret Service is normally involved in the investigation of large-scale money laundering schemes. Fraud in federal government entities typically falls under the aegis of the FBI and In-

spectors Generals (IGs). All of these agencies and others perform forensic procedures in the course of their investigations of reported or suspected frauds in their respective areas.

### Attorneys

Attorneys often lead special investigation teams and may add forensic specialists to the team if financial or accounting matters are involved. In these engagements, forensic specialists evaluate procedures performed by the special investigation team, and may recommend the performance of forensic procedures not otherwise utilized.

### Others

In addition to the above groups, there are others who use forensic procedures. Most notable are the law enforcement community and private investigators. Other interested parties who may use the tools and techniques include investors, investor "watchdog" organizations, academics, and industry professionals.

## Potential Uses of Forensic Procedures to Reduce Litigation, Business, and Audit Risk

### Litigation and Business Risks

As discussed above, there are situation in which forensic procedures or a forensic specialist may be used by the auditor. Client acceptance and continuance policies and procedures represent a key element in auditors mitigating their litigation and business risk. The integrity and reputation of a client's management could reflect on the reliability of the client's accounting records and financial representations, and therefore on an accounting firm's reputation or involvement in litigation.

During the client acceptance and continuance process, a forensic specialist may be asked by the auditor to conduct a public document review. Such a review could assist the auditor in determining whether management is likely to lack integrity such that the risk of fraud, and, therefore, the litigation and business risks, are high. If, for example, management has been involved in prior questionable business practices or appears to be selling unusual amounts of stock (indicating the potential for insider trading), internal controls involving any management assertion may be deemed unreliable as a result of the potential for management override.

The utilization of such forensic procedures could lead to a conclusion that the acceptance or continuance of the client or engagement would be outside of the acceptable parameters that have been set with respect to clients' conduct.

## Audit Risk

Audit risk is the risk that the auditor may unknowingly fail to appropriately modify his or her opinion on financial statements that are materially misstated.[6] As previously stated, the financial statement auditor's responsibility is to plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud. The financial statement auditor, as part of performing an assessment of fraud risks, may conclude that the risks of material misstatement due to fraud are exceptionally high.

In such cases, SAS No. 99 requires that:

> [T]he auditor responds to the risks of material misstatement due to fraud in the following three ways:
>
> 1. A response that has an overall effect on how the audit is conducted—that is, a response involving more general considerations apart from the specific procedures otherwise planned.
> 2. A response to identified risks involving the nature, timing, and extent of the auditing procedures to be performed.
> 3. A response involving the performance of certain procedures to further address the risk of material misstatement due to fraud involving management override of controls, given the unpredictable ways in which such override could occur.
>
> The auditor may conclude that it would not be practicable to design auditing procedures that sufficiently address the risks of material misstatement due to fraud. In that case, withdrawal from the engagement with communication to the appropriate parties may be an appropriate course of action.[7]

In certain circumstances, although the risk of material misstatement due to fraud is exceptionally high, the auditor may determine that resigning from the engagement is not appropriate. In addition, during the course of an audit, evidence or information may come to the auditor's attention that fraud may have occurred. In both of these circumstances, the auditor maintains an obligation to perform sufficient audit work to obtain reasonable assurance that the financial statements are not materially misstated. When completed, it is possible that the firm may be engaged to perform an investigation. Even if not so engaged, the firm may find it necessary to engage a forensic specialist or perform forensic procedures in order to obtain the appropriate level of assurance with respect to the financial statements.

---

[6] This definition of audit risk does not include the risk that the auditor might erroneously conclude that the financial statements are materially misstated. In such a situation, the auditor would ordinarily reconsider or extend auditing procedures and request that the client perform specific tasks to reevaluate the appropriateness of the financial statements. These steps would ordinarily lead the auditor to the correct conclusion. The definition also excludes the risk of an inappropriate reporting decision unrelated to the detection and evaluation of misstatements in the financial statements, such as an inappropriate decision regarding the form of the auditor's report because of a limitation on the scope of the audit.

[7] See SAS No.99, paragraphs 48-49.

## Using Forensic Procedures in Mitigating Risk

In those cases in which the auditor determines that a forensic specialist should be employed in the financial statement audit, the forensic specialist's training and background allows the specialist to tailor specific forensic procedures to gather valuable evidence regarding controls in the organization, or to perform substantive tests of management's assertions in the financial statements. A number of forensic procedures lend themselves well to testing for pervasive control issues affecting multiple assertions. Additionally, e-mail searches, interviews, or the reliance on confidential sources, tools not normally employed in financial statement audits, could all be utilized to provide evidence of a weak control environment such as communications or signals from upper management to ignore or circumvent existing critical controls.

Interviews of purchasing, warehousing, and accounts payable personnel could also be conducted to determine whether significant purchases and receipts of materials were made near year-end but not recorded as liabilities. Furthermore, electronic accounting data could be analyzed to identify unusual transactions near year-end and an analysis of e-mail correspondence regarding these transactions might be used to test the validity of various balances or search for indications of side agreements that violate proper internal control.

Finally, many forensic procedures can be used to gather audit evidence useful for testing virtually any of the management assertions for a given account. For example, interviews or confidential sources could be used to determine whether any of the following have occurred:

- A specific account (e.g., accounts receivable) is presented and disclosed properly in the financial statements and notes thereto.
- The company has legal right to the asset or a legal obligation for the liability.
- The stated balance exists and is complete.
- Valuation principles have been properly applied.

In sum, the seven forensic procedures can be used to gather audit evidence that is aimed at testing general or specific controls or determining whether specific accounts and assertions are misstated by a material amount.

The forensic specialist can assist an auditor by bringing to the engagement an understanding of fraud schemes, the indicia of fraud, and knowledge of the legal process. In addition, the appropriate application of the seven basic investigative techniques allows the forensic specialist to provide value to the engagement by providing evidence useful to further substantiate management's assertions in the financial statements. For example, when inquiries are made regarding specific accounting treatment for suspect accounting transactions, manual journal entries or accounting judgments, the forensic specialist observes specific verbal and nonverbal cues of deception. The interview includes a careful observation of the body language and mannerisms of the witness.

Forensic specialists seek to answer the following questions when conducting these inquiries:

1. Do I believe the interviewee?
2. What motives does the interviewee have to tell or conceal the truth?
3. Do the interviewee's statements make sense and are they supported by other evidence?
4. Does the interviewee's body language suggest someone who is nervous, confident, arrogant, hostile, friendly, etc., and uncomfortable when sensitive issues are raised?
5. How does the interviewee react when asked for information or pushed for explanations?

Forensic specialists also have an understanding of the legal process and the potential pitfalls that may occur. For example, key areas that may arise in a legal proceeding relate to following applicable professional standards, properly documenting the audit or investigation, and maintaining a chain of custody for the evidence (where applicable) and knowledge of regulatory matters if applicable. Since forensic specialists anticipate that the work they perform will lead to litigation, it is critical to properly document the investigation. Even more critical, however, is the avoidance of spoliation[8] that could raise suspicions regarding the quality of the work performed. Issues relating to specific industries, such as healthcare and pharmaceuticals, oil and gas, utilities, telecommunications, and entertainment, may require subject matter expertise.

## CONCLUDING COMMENTS

Forensic procedures include a broad range of procedures that can be categorized in the framework of seven investigative techniques. These procedures include numerous third-party and external information sources, specialized interviewing techniques, and electronic evidence techniques that are designed to detect fraudulent behavior. It is clear that the mindset of the forensic specialist, and the procedures and techniques that have been discussed, differ significantly from the traditional approach of an auditor. Understanding these differences and the standards that exist will help audit committee members and others better understand the role of a forensic specialist.

As discussed throughout this paper, the participation of the forensic specialist can include being a resource to or a member of an external or internal audit team. In that capacity, the forensic specialist can perform or suggest specific forensic procedures that may enhance the audit process. Typical assignments include the interviewing of management and others; gathering data about the company and its industry as part of preparing for brainstorming sessions; and contributing to the brainstorming sessions.

[8] "…the intentional, reckless, or negligent destruction, loss, material alteration or obstruction of evidence that is relevant to litigation," *Ortega v. Trevino*, 938 S.W.2d 219, 220 (Tex.App.-Corpus Christi 1997).

The forensic specialist's role is different from that of an auditor. The forensic specialist has certain skills in the detection of fraud. The fraud specialist can play an important role in assisting an audit committee, an external auditor, an internal auditor, attorneys, regulators, and others.

The Forensic Procedure Task Force anticipates utilizing this publication as an initial step in educating readers in forensic topics, and looks forward to providing future papers of similar interest to audit committee members and the accounting community.

# APPENDIX: A COMPARISON OF GAAS AUDIT EVIDENCE AND FORENSIC PROCEDURE EVIDENCE

| *GAAS Audit Evidence* | *Forensic Procedure Evidence* |
|---|---|
| Obtain *internal or external documents* supporting economic transactions generated in the normal course of business, e.g., checks, bank statements, or invoices. | Review *public document* sources and perform *background checks* for information about *key individuals* (e.g., owners and employees), *relationships* (e.g., related parties and competitors), *transactions* (e.g., stock trading activities and related party transactions), and *the company* (e.g., ownership, customers, and the industry). |
| *Inquire* regarding established control procedures or explanations for observed results. | *Interview knowledgeable persons* to discover or obtain evidence of questionable activities such as management override or evidence of a weak control environment. Although audit guidance includes interview requirements, the manner in which interviews are conducted is more in-depth and focused than interviews performed in a traditional GAAS audit. |
| Request *confirmation* from outside parties regarding specific transactions and balances, e.g., customer balances. | Develop relationships with informants and obtain *confidential and/or alternative information sources* both within the company and outside the company regarding control environment issues or legal or ethical improprieties by either the company or its employees. Information sources include whistleblower hotlines, former employees, customers, or vendors. |
| *Physically examine* tangible assets shown on the balance sheet in order to verify their existence or condition, e.g., inventory or fixed assets. | Perform *laboratory analysis* of physical evidence in order to validate credible evidence, e.g., altered documents or forgeries, computer intrusions, e-mails, and searches for erased files, etc. |
| *Reperform* the processes involved in accounting for the company's economic activity. | *Analyze electronic evidence* (both financial and non-financial) for signs of fraudulent activity by analyzing transactions such as manual journal entries (i.e., non-system generated), and examining processes for overriding controls and control weaknesses. |
| *Observe* accounting and control processes and procedures to determine they are properly performed as claimed, e.g., segregation of duties or inventory count. | Use physical or electronic *surveillance* or institute undercover operations to discover improper activities through the use of surveillance cameras, Internet surveillance, or physical surveillance (e.g., loading docks or mail rooms); also, verify the existence of key parties in transactions by authenticating addresses, phone numbers, or fax numbers. |
| Perform *analytical procedures* to identify areas of concern or validate relationships between financial and non-financial data, e.g., ratios, vertical, and horizontal analysis. | Supplement the auditor's analytical procedures with *other analyses* of financial transactions and data such (e.g., stock trading activity, sales returns and allowances, vendor, and employee verification, etc.) that are used to detect known fraud schemes. |

# REFERENCES

AICPA Forensic & Litigation Services (FLS) Committee. *Forensic Services, Audits & Corporate Governance: Bridging the Gap* (2004 Discussion Memorandum). New York: American Institute of Certified Public Accountants, Inc., 2004.

*The AICPA Audit Committee Toolkit.* New York: American Institute of Certified Public Accountants, Inc., 2004.

AICPA. Consulting Services Special Report 03-1, *Litigation Services and Applicable Professional Standards.* New York: American Institute of Certified Public Accountants, Inc., 2003.

AICPA, Statement on Auditing Standard (SAS) No. 99, *Consideration of Fraud in a Financial Statement Audit* in *Professional Standards*, vol. 1, AU sec. 316. New York: American Institute of Certified Public Accountants, Inc.

AICPA. Auditing Standards, AU Sections in *Professional Standards*, vol. 1. New York: American Institute of Certified Public Accountants, Inc.

*Black's Law Dictionary*, 8th Edition, 2004.

Richard A. Nossen. *The Detection, Investigation and Prosecution of Financial Crimes*, 1982.

Heads Up Fraud Prevention Association. *Glossary of Fraud Schemes and Terms*, 2000.

AICPA Member and
Public Information:
**www.aicpa.org**

AICPA Online Store:
**www.cpa2biz.com**

*ISO Certified*

055304