# Exhibit 6

University of Mississippi
eGrove

Newsletters

American Institute of Certified Public Accountants (AICPA) Historical Collection

2003

# Litigation services and applicable professional standards; Consulting services special report, 03-1

American Institute of Certified Public Accountants

Follow this and additional works at: https://egrove.olemiss.edu/aicpa_news

Part of the Accounting Commons, and the Taxation Commons

Recommended Citation
American Institute of Certified Public Accountants, "Litigation services and applicable professional standards; Consulting services special report, 03-1" (2003). *Newsletters*. 169.
https://egrove.olemiss.edu/aicpa_news/169

This Book is brought to you for free and open access by the American Institute of Certified Public Accountants (AICPA) Historical Collection at eGrove. It has been accepted for inclusion in Newsletters by an authorized administrator of eGrove. For more information, please contact egrove@olemiss.edu.

EXHIBIT

5

CONSULTING SERVICES
SPECIAL REPORT 03-1

AICPA

# Litigation Services and Applicable Professional Standards

*Member Innovation Team*

# NOTICE TO READERS

This special report is designed as educational and reference material for American Institute of Certified Public Accountants (AICPA) members and others who provide consulting services as defined in the Statement on Standards for Consulting Services issued by the AICPA. It does not establish standards; other approaches, methodologies, procedures, and presentations may be appropriate because of the widely varying nature of consulting services as well as specific or unique facts about the client and engagement.

The principal authors of this special report are the members of the AICPA Litigation Services and Professional Standards Task Force:

Michael G. Ueltzen, *Chair*
Ronald L. Durkin
Vincent J. Love
Roger B. Shlonsky
Dr. Laura Jane Tindall
Alan D. Westheimer

Members of the 2000-2001 and 2001-2002 AICPA Litigation and Dispute Resolution Services Subcommittees provided information and guidance for this special report and advised the authors and staff. The subcommittee members are listed below.

Ronald L. Durkin, *Chair 2001*
Book T. Evans, Jr.
Sandra K. Johnigan, *Chair 2002*
L. Elliott Leary
Sharyn Maggio
Grant W. Newton
D. Paul Regan
C. P. Schumann
Laura Jane Tindall
Michael G. Ueltzen
Charles L. Wilkins
Ann E. Wilson
Diane L. Womack

---

Anat Kendal, *Director*
*Financial Planning*

James Feldman, *Business Valuation and Litigation Services Manager*
*Financial Planning*

Margaret A. Jannucci, *Project Manager*
*Financial Planning*

CONSULTING SERVICES
SPECIAL REPORT 03-1

AICPA

AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

# Litigation Services and Applicable Professional Standards

Member Innovation Team

*Copyright © 2003 by*
*American Institute of Certified Public Accountants, Inc.*
*New York, NY 10036-8775*

*All rights reserved. For information about the procedure for requesting permission to make copies of any part of this work, please call the AICPA Copyright Permissions Hotline at (201) 938-3245. A Permissions Request Form for e-mailing requests is available at www.aicpa.org by clicking on the copyright notice on any page. Otherwise, requests should be written and mailed to the Permissions Department, AICPA, Harborside Financial Center, 201 Plaza Three, Jersey City, NJ 07311-3881.*

*1 2 3 4 5 6 7 8 9 0 MI 0 9 8 7 6 5 4 3*

## CONTENTS


INTRODUCTION ........ 1

Purpose of the Special Report ........ 1
Definition of Litigation Services ........ 1
Roles of the Practitioner ........ 1
Scope of Services ........ 1
Other Engagements of the Practitioner ........ 2
Consulting Services Provided by the CPA ........ 2

PROFESSIONAL STANDARDS APPLICABLE TO LITIGATION SERVICES ........ 2

The AICPA Code of Professional Conduct ........ 2
Rule 201, *General Standards* ........ 3
Consulting Standards ........ 6

RELATIONSHIP OF ATTESTATION AND OTHER PROFESSIONAL STANDARDS TO LITIGATION SERVICES ........ 8

Comparison to Other Services ........ 8
Reporting Standards ........ 10

OTHER GUIDANCE ........ 11

Federal and State Court Rules ........ 11
AICPA Special Reports and Practice Aids ........ 12

CONCLUSION ........ 12

APPENDIX A—Typical Litigation Services ........ 13

APPENDIX B—Decision Tree to Determine the Application of Professional Standards ........ 15

APPENDIX C—Working Papers and Documentation ........ 16

APPENDIX D—Comparison of AICPA Professional Standards and Federal Rule of Evidence 702 ..... 18

APPENDIX E—Testimony Pyramid ........ 19

APPENDIX F—AICPA Special Reports and Practice Aids ........ 20

APPENDIX G—Bankruptcy and Reorganization Services ........ 21

APPENDIX H—Professional Standards Case Studies ........ 24

# LITIGATION SERVICES AND APPLICABLE PROFESSIONAL STANDARDS

## INTRODUCTION

### Purpose of the Special Report

**1.** The purpose of this Special Report is to provide practitioners with additional guidance on the existing professional standards and the related responsibilities that affect the litigation services practitioner (the practitioner). This Special Report supersedes Consulting Services Special Report 93-1, *Application of Professional Standards in the Performance of Litigation Services*.

### Definition of Litigation Services

**2.** Litigation services are consulting services that ordinarily involve pending or potential formal legal or regulatory proceedings before a trier of fact in connection with the resolution of a dispute between two or more parties. A trier of fact may be a court, jury, regulatory body, or government authority or their agents; a grand jury; an arbitrator; or the mediator of a dispute.

### Roles of the Practitioner

**3.** The practitioner may be retained in a number of roles. These include the following:

*a.* *Expert witness*. A person designated to render an opinion before a trier of fact is an expert witness. If the practitioner is designated as an expert witness, all work the practitioner has performed related to the litigation is potentially discoverable.
*b.* *Consultant*. A person who is retained to advise about the facts, issues, and strategy of the matter is a consultant. The consultant does not testify about an expert opinion before a trier of fact, unless the consultant's role is changed to that of an expert witness at a later date. The consultant's work generally is protected from discovery by the attorney work-product privilege, which emanates by extension from the attorney-client privilege. CPA-client privilege is non-existent except in certain situations involving practice before the IRS. When engaged by a litigant, as opposed to the litigant's counsel, the consultant should confirm that the attorney's work product privilege remains intact.
*c.* *Other*. This can be a person who is retained in a number of different roles, including a trier of fact, special master, court-appointed expert, referee, arbitrator, or mediator.

The roles of the expert and consultant are different. The term *practitioner* is used when the CPA may be serving either as an expert or consultant. The terms *expert* and *consultant* are used in those instances to clarify the separate roles of the practitioner.

### Scope of Services

**4.** Litigation services may include fact-finding (including assistance in the discovery and analysis of data), damage calculations, business valuation, document management, expert testimony, and other professional services required by the client or counsel. Examples of typical litigation services engagements are provided in Appendix A, "Typical Litigation Services."

### Other Engagements of the Practitioner

**5.** Litigation services do not usually, but may, include the following engagements:

- Attest
- Audit
- Review
- Compilation

Separate professional standards apply to each of the above engagements.

A decision tree of the applicability of the various services is included as Appendix B, "Decision Tree to Determine the Application of Professional Standards."

### Consulting Services Provided by the CPA

**6.** As the practitioner providing litigation services, the certified public accountant (CPA) may be involved as an expert; consultant; or provider of other services including acting as a trier of fact, special master, court-appointed expert, referee, arbitrator, or mediator. The types of services or functions are varied and depend upon the practitioner's expertise. Such services may include the computation of economic damages, analysis of professional standards, valuation, fraud prevention, detection, and investigation, work in the bankruptcy court system, tax analyses, and more. The functions that can be performed include identifying issues, locating other experts, fact finding, analysis, assisting and managing discovery, etc. The scope and breadth of the services and functions provided by the practitioner may be varied. Refer to Appendix A.

## PROFESSIONAL STANDARDS APPLICABLE TO LITIGATION SERVICES

**7.** Litigation services are consulting services provided by CPAs and their employees, and, therefore, adherence to the Statement on Standards for Consulting Services (SSCS) is required. The CPA engaged in litigation services must also comply with the general standards of the accounting profession contained in the American Institute of Certified Public Accountants (AICPA) Code of Professional Conduct, as well as relevant standards established by the state boards of accountancy or other licensing agencies and by other professional organizations to which the practitioner may belong. The appropriate AICPA standards that apply are discussed elsewhere in this report.

### The AICPA Code of Professional Conduct

**8.** The AICPA *Code of Professional Conduct and Bylaws* applies to all services rendered by AICPA members. The following sections of the Code of Professional Conduct have particular applicability to the practice of litigation services:

- Rule 102, *Integrity and Objectivity* (AICPA, *Professional Standards*, vol. 2, ET sec. 102.01)
- Rule 201, *General Standards* (AICPA, *Professional Standards*, vol. 2, ET sec. 201.01)
- Rule 202, *Compliance With Standards* (AICPA, *Professional Standards*, vol. 2, ET sec. 202.01)
- Rule 301, *Confidential Client Information* (AICPA, *Professional Standards*, vol. 2, ET sec. 301.01)

- Rule 302, *Contingent Fees* (AICPA, *Professional Standards*, vol. 2, ET sec. 302.01)
- Rule 501, *Acts Discreditable* (AICPA, *Professional Standards*, vol. 2, ET sec. 501.01)

In some instances, the following also apply:

- Rule 101, *Independence* (AICPA, *Professional Standards*, vol. 2, ET sec. 101.01)
- Rule 203, *Accounting Principles* (AICPA, *Professional Standards*, vol. 2, ET sec. 203.01)

An understanding and appreciation of the importance of all rules contained in the Code will assist practitioners in their efforts to provide opinions that are relevant and reliable, and that assist the trier of fact.

**9.** ***Rule 101,*** **Independence**. Independence, as set forth in the AICPA Code of Professional Conduct, is ordinarily not required when performing litigation service engagements. As a result of the Sarbanes–Oxley Act of 2002, the practitioner should be aware that, in some instances, if the practitioner provides audit services, statutes may preclude the provision of litigation services.

**10.** Lack of independence from the client may be used to question the expert's credibility and objectivity. The expert should carefully consider the potential difficulties inherent in serving as an expert witness for a party. If the practitioner lacks independence, or could appear to lack independence in relation to that party, the practitioner should discuss these issues with the client before accepting an engagement. In addition, independence notwithstanding, the practitioner's working paper files relating to other engagements for the same client may be subject to the discovery process.

**11.** ***Rule 102,*** **Integrity and Objectivity**. To maintain integrity is to adhere to an ethical code and be free from corrupting influences and motives. Service and public trust should not be subordinated to personal gain and advantage.

**12.** The roles of practitioners differ from attorneys in the litigation process, which is an adversarial proceeding in which the best case for each party is put before the trier of fact. The litigating attorney is the client's advocate.

**13.** The expert does not serve as an advocate for the client's position and, therefore, should not subordinate his or her judgment to the client. The expert is engaged as someone who has specialized knowledge, skills, training, and experience in a particular area and presents conclusions and judgments with integrity and objectivity. The expert's function is to assist the trier of fact in understanding complex or unfamiliar concepts after having applied reliable principles and methods to sufficient relevant data.

## Rule 201, *General Standards*

**14.** Rule 201, *General Standards*, of the AICPA Code of Professional Conduct applies to litigation services as well as to all other services rendered by CPAs to their clients. The general standards cover professional competence, due professional care, planning and supervision, and sufficient relevant data.

**15.** ***Professional Competence***. Practitioners should undertake only those litigation services that they reasonably can expect to complete with professional competence. Consequently, practitioners may be unprepared to meet client needs adequately in every area and in every phase of litigation engagements. To comply with this standard in providing litigation services, practitioners may need the assistance of other individuals with the required education and experience.

**16.** Professional competence includes, among other things, identifying client needs, applying an analytical approach, and being knowledgeable about the technical areas involved in the litigation engagement.

**17.** As a result of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Company, Ltd. v. Patrick Carmichael*, 526 U.S. 137 (1999), the practitioner should consider that the reliability and relevance of the expected testimony is likely to be subjected to careful judicial scrutiny before it will be allowed to be presented at trial. When deciding whether to accept a litigation services engagement, the practitioner should consider whether it is likely that he or she has the knowledge and skills necessary to provide a reasonable basis to present relevant and reliable testimony on the issues to be presented in the particular case.

**18.** ***Due Professional Care.*** A practitioner exercises due professional care in the performance of professional services. Due care requires diligence and critical analysis of all work performed. It also requires that all work be completed in accordance with the provisions of the applicable professional standards of the AICPA, including the Code of Professional Conduct.

**19.** In a litigation engagement, practitioners are often the only professionals capable of quantifying the impact of the events that led to the dispute. Their work product is therefore important in the litigation process. Each party to the proceedings may retain professionals to quantify and analyze the economic impact of events. Practitioners need to be able to evaluate and challenge the assumptions and calculations of other professionals as well as defend their own assumptions and calculations under rigorous cross-examination.

**20.** ***Planning and Supervision.*** A practitioner adequately plans and supervises the performance of professional services. Planning is essential in a litigation engagement. Planning consists of developing engagement objectives and translating them into the activities necessary for the CPA to form an opinion. Planning guides the conduct, supervision, control, and completion of the engagement.

**21.** The facts and circumstances of each litigation engagement are unique. Planning is essential to ensure the quality of the performance of professional services in each engagement. Planning includes obtaining information from the counsel of the client. Plans continually change in a litigation engagement and usually are not written because the litigation process is dynamic.

**22.** As with any professional services, the supervision of assistants helps to ensure quality performance. The extent of the supervision will vary according to the number of assistants, their experience, and the complexity of the engagement. Ultimately, the practitioner, as the potential expert witness or consultant, is responsible for the work performed.

**23.** ***Sufficient Relevant Data.*** A practitioner attempts to obtain relevant data that is sufficient to provide a reasonable basis for conclusions or recommendations for any professional services performed. In litigation, data are usually obtained through discovery, including depositions, interrogatories, and document production motions. In addition, the data-gathering process may include a review of relevant documents, research and analysis, and interviews. The nature and extent of the data will vary with each engagement and may include the practitioner's computations and analysis and other information-supporting conclusions.

**24.** The expert needs to base his or her conclusions and judgments on sufficient relevant data. The expert should rely on the attorney to comply with the applicable rules of evidence.

*a.* *Legal evidence.* The courts have established rules for the determination of admissible evidence and expert testimony.

The expert can generally rely on documents that have been authenticated by the parties to the proceeding, or that are acceptable to the court under the various rules of evidence. Each legal jurisdiction may have different rules governing what the expert may and must rely on. It is important to communicate to the attorney what evidence is necessary to properly support the expert's conclusions and judgments. Different rules of evidence may apply in different jurisdictions, and the practitioner is not expected to be a legal expert.

b. *Assumptions*. Experts can base opinion testimony on either facts or assumptions. Experts may base assumptions on facts, presumptions from facts, or assumptions provided by the client, other experts, or counsel. For example, some analyses require the use of assumptions about what would have happened if certain behavior or activities had been different. Counsel may provide the expert assumptions that may be proven from other evidence. In any case, the expert should identify the source of the information. The practitioner should consider analyzing key assumptions to determine whether they are reasonable. In several recent cases, experts had their testimony excluded because their opinions were based on assumptions that were deemed not reasonable. Ultimately, the trier of fact will determine the reasonableness of the assumptions.

c. *Documentation*. The practitioner should prepare and maintain documentation, the form and content of which should be designed to meet the circumstances of the particular engagement. Results of research and working paper documentation (including electronic mail, spreadsheets, and correspondence) are the principal records of the procedures applied, information obtained, and the conclusions reached by the practitioner in the engagement. The quantity, type, and content of documentation are determined by several factors, including the practitioner's professional judgment, the nature of the engagement and the directives of counsel.

The expert should understand that his or her conclusions and judgments are subject to discovery and cross-examination by the opposing counsel and evaluation by the trier of fact. The expert may have to defend these conclusions and judgments and in so doing maintain objectivity and integrity. Documentation that is fundamental to the expert's conclusions and judgments should be retained.

The practitioner should adopt a policy on the retention of records in litigation matters; the existence of subpoenas or agreements between litigant parties may affect the practitioner's retention policy.

Examples of the elements to be considered by the practitioner are included as Appendix C, "Working Papers and Documentation."

**25.** ***Rule 202,* Compliance With Standards.** This Rule requires all CPAs to comply with standards promulgated by bodies designated by the AICPA Council. For practitioners, that body is the Consulting Services Executive Committee. This committee issued SSCS No. 1, *Consulting Services: Definition and Standards* (AICPA, *Professional Standards*, vol. 2, CS sec. 100), and all practitioners are required to adhere to its standards.

**26.** ***Rule 203,* Accounting Principles.** To the extent that generally accepted accounting principles (GAAP) are applicable in a litigation services engagement, the practitioner shall apply the appropriate accounting principles.

**27.** ***Rule 301,* Confidential Client Information.** The practitioner may not disclose confidential client information without the client's consent. Due to the ethical obligation to preserve client confidences, practitioners may be confronted with the risk of breaching client confidentiality.

**28.** The expert brings to the courtroom prior experience and knowledge of clients and their practices, operations, and trade secrets. Although such experiences may enable the expert to

render expert opinions, confidential client information obtained in prior engagements for nonparty clients must be protected. Thus, the expert has the dual responsibility to be both truthful and honest while preserving past and present nonparty client confidences. If the expert relies on specific information obtained in an unrelated prior engagement and uses that information as the basis for his or her opinion, the trier of fact may require the expert to disclose the source. If the expert refuses, the trier of fact may preclude the testimony because discovery could not be taken as the basis of the expert's opinion. So, the expert should consider such a circumstance and either obtain the consent of the nonparty client to reveal its confidences or abandon any effort to use such information as the basis of his or her opinions.

29. The practitioner should evaluate any prior or existing relationship with the parties to a litigation matter before accepting the engagement. Assuming there is no conflict, the practitioner is free to be retained. There may be circumstances in which the very fact of a prior relationship may be confidential; the practitioner may be forced to reject an engagement without giving the attorney a specific reason because he or she may not disclose information gained from another client. The practitioner is required to adhere to the profession's confidentiality standards and to confidentiality agreements executed during the course of an engagement. During the course of an engagement, there is the potential for an unknown party to become an opposing party, so continuing sensitivity to newly arising conflicts is necessary, particularly in engagements that are lengthy or involve many parties.

**Consulting Standards**

**30.** In addition to the general standards, specific consulting standards apply to the consulting process and are established by the SSCS under Rule 202, *Compliance With Standards*, of the AICPA Code of Professional Conduct. These standards include serving the client's interest, entering into an understanding with the client, and communicating with the client.

**31.** The general standards are related to the quality of the performance of any professional service. The consulting standards apply specifically to the consulting process to guide practitioners in their relationships with consulting clients.

**32.** ***Defining the Client.*** Each of the consulting standards refers to the client. The practitioner needs to have an understanding of who the client is to comply with the consulting standards. ET sec. 92.03 of the AICPA Code of Professional Conduct (AICPA, *Professional Standards*, vol. 2, ET sec. 92.03) defines the client as:

> [A]ny person or entity, other than the member's employer, that engages a member or a member's firm to perform professional services or a person or entity with respect to which professional services are performed.

**33.** The client in a litigation services engagement may be the attorney, the attorney's client (litigant), or both. It is important to define who the client is in a litigation services engagement depending on the issue(s), given the requirements of the SSCS that the practitioner (*a*) define the client, (*b*) serve the client interest, (*c*) establish an understanding with the client and, (*d*) communicate with the client.[1] For example:

*a.* In determining conflicts and client interests, the litigant is generally deemed to be the client, although relationships with the attorneys for each party should be considered.

[1] For further discussion of conflicts, see the AICPA Consulting Services Special Report 93-2, *Conflicts of Interest in Litigation Services Engagements* (New York: AICPA, 1993).

*b.* The party with whom the practitioner obtains an understanding is dependent upon an assessment of the facts and circumstances of the engagement. This often leads to an understanding with either the attorney, or the litigant, or both. In addition, if the practitioner is to protect his or her status as a consultant to counsel, the practitioner should consider discussing with counsel how the understanding should be secured in order to protect any privilege that may be asserted.

*c.* The practitioner's responsibility to communicate with the client is generally viewed to extend only to the attorney. The SSCS are not intended to cause the practitioner to pierce the attorney-client relationship. In many litigation services engagements, the practitioner's contact with the litigant is minimal or nonexistent. To clarify the communication responsibility, the practitioner may determine that it is appropriate to advise the attorney that any communication with the attorney will be deemed communication with the litigant. The practitioner may also consider having the attorney's client cosign the engagement letter.

*d.* The SSCS calls for the practitioner to communicate significant engagement findings and events to the client. As noted above, the professional standards do not intend this to cause the practitioner to interfere with the unique attorney-client relationship. Therefore, the expert's communication with the client, unless otherwise required by the terms of the engagement, should be with the attorney. This is even more important when acting in a consulting capacity if there is usually a desire to maintain a privilege between the attorney-consultant communications.

**34.** ***Client Interest.*** Rule 102 of the AICPA Code of Professional Conduct states:

> In the performance of any professional service, a member shall maintain objectivity and integrity, shall be free of conflicts of interest, and shall not knowingly misrepresent facts or subordinate his or her judgment to others.

**35.** Under this standard, the practitioner in litigation engagements is required to maintain professional integrity and objectivity and to meet technical and ethical standards in performing services.

**36.** ***Understanding With the Client.*** The practitioner should establish a written or an oral understanding with the client, who may be the attorney representing the litigant, about the responsibilities of the parties and the nature of the services to be performed. The understanding (written or oral) could encompass the following:

*a.* The attorney's client
*b.* The attorney for the retaining litigant
*c.* The title of the litigation including the litigants' names and the court
*d.* A description of the nature of the litigation services to be provided or a statement that the services will be as the attorney may direct
*e.* The expert witness or the willingness of the person who will be the expert witness, if necessary
*f.* The absence of conflicts of interest
*g.* Restrictions on the use of the practitioner's work
*h.* The practitioner's right to withdraw from and terminate the engagement in certain circumstances
*i.* Administration and fee matters, including a description of fees, the fact that these are not contingent upon the successful resolution of the matter, and billing arrangements
*j.* A description of the practitioner's records retention policy

**37.** If circumstances require a significant change during the engagement, the understanding, whether written or oral, should be modified accordingly.

**38.** ***Communication With the Client.*** In compliance with Rule 102 of the AICPA's Code of Professional Conduct and Interpretations thereof, the practitioner informs the client of any conflicts of interest. A conflict of interest may occur if a *significant* relationship could be viewed as impairing the practitioner's objectivity in the performance of a professional service. The practitioner should carefully evaluate each engagement request with sensitivity to the possibility of such conflicts.

**39.** A conflict of interest might arise in the performance of litigation services if the practitioner has a relationship with one of the parties to the dispute, the court, attorneys, or witnesses, and thus may not be an impartial expert. The responsibility of the practitioner is to decline litigation engagements that involve a conflict of interest; otherwise, the practitioner might disclose confidential client information in the litigation process through discovery or testimony.

**40.** When the conflict is uncertain, the practitioner should disclose the possible conflict of interest, which allows the prospective client or counsel to consider the potential impact on the litigation.[2] Nothing in the professional standards requires a practitioner to accept any engagement, so the practitioner can, without stating specific reasons, refuse an engagement for any reason. On the other hand, a practitioner who wishes to accept an engagement, but is concerned about possible conflicts, should evaluate those possibilities before acceptance.

**41.** In addition to assessing possible conflicts of interest, practitioners consider whether it is otherwise in their best interest to accept the engagement. The goals and objectives of their practice might conflict with the performance of services in the proposed engagement. Although there may be no conflict with the attorneys or parties to the litigation, the issues in dispute may be areas that the practitioners are uncomfortable about pursuing or that may conflict with their philosophy, practice, or business interest.

**42.** Consistent with the SSCS, before accepting or during the engagement, the practitioner should communicate to the client any serious reservations concerning the scope or benefits of the engagement. During the performance of the engagement, communications, ordinarily oral, should include significant engagement findings and events.

## RELATIONSHIP OF ATTESTATION AND OTHER PROFESSIONAL STANDARDS TO LITIGATION SERVICES

### Comparison to Other Services

**43.** Litigation services do not usually, but may, include the following engagements:

*a.* Attest
*b.* Audit
*c.* Review
*d.* Compilation

Separate professional standards apply to each of the above engagements.

---

[2] *Ibid.*

**44.** Litigation services are professional services rendered by a practitioner in accordance with the AICPA's SSCS. Litigation services differ in several ways from services provided in attestation engagements. In attestation engagements, the CPA assesses the fairness of the written assertions of others, which may be in the form of financial statements, parts of such statements, or information not of a financial nature. In litigation engagements, the practitioner typically renders an expert opinion or provides other consulting services based upon expert judgment, experience, education, training, and analysis in compliance with applicable professional standards. The foundation of and audience for this opinion are different from those addressed by the attestation standards.

**45.** In attestation engagements, the opinion expressed is that of the CPA firm. In litigation engagements, the practitioner is the person expressing an opinion, which is subject to extensive cross-examination of the bases and reasons. The litigation services practitioner is not exempt from professional standards but must comply with standards different from those that apply to attestation services. An understanding of the standards is essential to evaluate the performance of the practitioner. A decision tree to help practitioners determine which professional standards to comply with in an engagement is provided in Appendix B.

**46.** Attestation standards do not apply to litigation engagements when the practitioner does not issue a report expressing an opinion about the assertion of another party.[3] As part of a litigation services engagement, the practitioner may be asked to critique the written report of the opposing party's expert. This consulting service in and of itself does not constitute an attestation service. The practitioner is not subject to generally accepted auditing standards (GAAS), Statements on Standards for Attestation Engagements (SSAEs), or Statements on Standards for Accounting and Review Services (SSARSs) (unless specifically retained to provide such a service) when serving as a trier of fact or an expert witness, or developing a work product that is protected by the attorney work product privilege that is not intended to be used for any other purposes.[4]

**47.** When the Statements on Auditing Standards (SASs), SSAEs, or the SSARSs do not apply to litigation engagements, the work should be performed in compliance with the SSCS, as well as all the applicable provisions of the Code of Professional Conduct.

**48.** Other standards may be applicable to litigation services engagements under certain circumstances. For instance, the practitioner may be requested to perform certain litigation services that require compliance with attestation standards. To decide what standards to follow, the practitioner has to evaluate carefully the steps that will be taken to complete the engagement. The AICPA's SSAEs usually do not apply to litigation services engagements. They do apply, however, when the practitioner, as a part of a litigation services engagement, is engaged specifically to perform a service governed by those standards. [5]

---

[3] Attestation standards, according to the Interpretation of Statement on Standards for Attestation Engagements, "Attestation Standards: Attestation Engagements Interpretations of Section 100" (AICPA, *Professional Standards*, vol. 2, AT secs. 9101.34–.42), may apply if the practitioner "expresses a written conclusion about the reliability of a written assertion that is the responsibility of another party and that conclusion and assertion are for the use of others who, under the roles of the proceedings, do not have the opportunity to analyze and challenge such work.

[4] See Interpretation No. 3, "Applicability of Attestation Standards to Litigation Services," of Statement on Standards for Attestation Engagements (SSAE) No. 10, *Attestation Standards: Revision and Recodification* (AICPA, *Professional Standards*, vol. 1, AT secs. 9100.34–.42), and Interpretation No. 20, "Applicability of Statements on Standards for Accounting and Review Services to Litigation Services," of Statement on Standards for Accounting and Review Services (SSARS) No. 1, *Compilation and Review of Financial Statements* (AICPA, *Professional Standards*, vol. 2, AR sec. 9100.76–.79).

[5] The evaluation of statements contained in a written assertion of another party when providing a consulting service does not in and of itself constitute the performance of an attest service. See the "Standards of Reporting," in SSAE No. 1, *Attestation Standards* (AICPA, *Professional Standards*, vol. 1, AT sec. 10.74), for further explanation.

**49.** A difficult circumstance could exist if, during the course of a litigation services engagement, the CPA firm is required to perform an audit or review of financial records to support a litigation opinion or is retained to perform an audit or review of financial records to support a litigation opinion, or is retained to perform professional services that come under the SSAEs.

**50.** Normally, SSARSs do not apply to litigation services; however, these standards are applicable whenever the practitioner performs or is engaged to perform a compilation or a review engagement as part of an overall litigation services engagement. Therefore, unless services must be performed in accordance with the SSARSs, they do not apply and the consulting standards will govern the conduct of the engagement.

**51.** The identification of the applicable standards may be difficult in some circumstances. At the outset of the engagement, it may not be clear whether the practitioner's work product is subject to the other professional standards. If engaged, the practitioner should therefore attempt to foresee the outcome of the engagement and decide whether the other professional standards apply.

**Reporting Standards**

**52.** No specific reporting standards apply to consulting engagements, including litigation services engagements. However, the SSCS requires that the results of a consulting engagement be communicated to the client without specifying the nature of the communication. Whether the practitioner needs to provide a conclusion and written report at the end of the engagement depends upon the agreement between the client and the practitioner.

**53.** If a written report is provided, it must be worded carefully to avoid representing that the work was performed in conformance with the other professional standards if it was not. Accordingly, terms such as *examination*, *audit*, *review*, or *compiled* should be used carefully because they imply the use of other professional standards.

As discussed above, the practitioner generally fulfills the reporting requirements of the SSCS by communicating significant engagement (*a*) findings, (*b*) reservations, (*c*) events, and (*d*) conflicts. During the course of the engagement, these communications are with counsel for the litigant, unless the specifics of the engagement call for another arrangement. The timing of the reporting is also dependent upon the particular facts and circumstances of the engagement. This may be on a scheduled basis or on an "as-needed" basis, again at the discretion and judgment of the participants.

Any communication with persons of the opposing party, its counsel, or other representatives are generally determined by the counsel with whom the practitioner is working because any contact with the opposing party is normally prohibited. Usually, if the practitioner is to have contact with any representatives of the opposing party to the litigation, it is to occur only after arrangements have been made by the counsel to whom the practitioner is providing assistance. Any reports, working papers, or work product to be prepared or provided to the opposing parties should be scheduled, arranged, and coordinated with counsel that the practitioner is assisting. These communications, reports, and productions are dependent on the arrangements made in the particular cases by counsel and the authority under which the dispute is proceeding.

**54.** Certain litigation proceedings involve no direct oral testimony. In such cases, the practitioner may be asked to issue testimony in writing. Furthermore, given the diversity of litigation engagements, a standard reporting format for most engagements is impractical and unrealistic. In federal litigation, as well as in some state courts, there are prescribed formats for

written expert reports. A discussion of Rule 26 of the Federal Rules of Civil Procedure can be found in Consulting Service Practice Aid 96-3, *Communicating in Litigation Services: Reports.*

## OTHER GUIDANCE

### Federal and State Court Rules

**55.** Practitioners are called upon to assist triers of fact and clients in their deliberations by helping them understand complex or unfamiliar concepts. The practitioner in a litigation services engagement uses knowledge, skills, education, training, and experience to comply with professional standards. Since state and federal court standards may be different, at least to a degree, the practitioner must be aware that his or her services should meet professional standards as well as the applicable dispute resolution forum rules.

**56.** The U.S. Supreme Court has established the rule that the federal trial judge is the gatekeeper for the admissibility of expert scientific testimony and may look to several factors to ensure the testimony's reliability and relevancy to the matter at issue.

**57.** Additionally, the Supreme Court has concluded that the same concepts apply not just to experts providing scientific testimony, but also to all other experts providing testimony in federal courts, including financial experts (*Kumho Tire Company, Ltd. v. Patrick Carmichael*, 526 US 137 [1999]). Many state courts have established restrictions with regard to the admissibility of expert testimony that are consistent with the federal rulings.

**58.** The Federal Rules of Evidence provide the basis upon which a federal trial judge can disallow opinion testimony by lay witnesses, determine whether testimony by experts meets the minimum standards, and identify the bases of opinion testimony by experts. Rules relevant to CPAs providing litigation services include the following:

Rule 701, "Opinion Testimony by Lay Witnesses," states:

> If the witness is not testifying as an expert, the witness testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Rule 702, "Testimony by Experts," states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 703, "Bases of Opinion Testimony by Experts," states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the

hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. The proponent of the opinion or inference shall not disclose facts or data that are otherwise inadmissible to the jury unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

A comparison of AICPA Standards and Federal Rule of Evidence 702 is included herein as Appendix D, "Comparison of AICPA Professional Standards and Federal Rule of Evidence 702." A pyramid that reflects a testimony pyramid for an admissible opinion is included as Appendix E, "Testimony Pyramid."

**AICPA Special Reports and Practice Aids**

**59.** Other guidance in the form of nonauthoritative Special Reports and Practice Aids that are intended to provide guidance to the practitioner have been developed through the AICPA. Other materials included in this Special Report, which are intended to provide guidance to the practitioner include Appendix F, "AICPA Special Reports and Practice Aids;" Appendix G, "Bankruptcy and Reorganization Services;" and Appendix H, "Professional Standards Case Studies."

## CONCLUSION

**60.** Litigation services encompass a wide range of professional services that a practitioner may provide to clients. A partial list of engagement situations and the products, services, and functions associated with litigation services is provided in Appendix A. The practitioner should understand the professional standards that apply in a litigation services engagement. ET secs. 102, 201, 202, 301, 302, 501, and, in some cases, ET secs. 101 and 203 of the Code of Professional Conduct, as well as the SSCS apply to all services rendered by a practitioner. Additionally, the practitioner may accept and perform litigation assignments that require compliance with SASs, SSAEs, or the SSARSs.

## APPENDIX A

## TYPICAL LITIGATION SERVICES

*Practitioners* provide various types of services or functions. Some of the more common include the following:

- Computation of economic damages:
  - Lost profits
  - Lost value
  - Extra costs
  - Lost cash flow
  - Mitigation
  - Restitution

- Punitive damage studies

- Professional standards analysis

- Valuation of the following:
  - Business
  - Pensions
  - Intangibles

- Fraud, prevention, detection, and investigation

- Bankruptcy consultant, trustee, and examiner

- Tax analysis, including the following:
  - Tax basis
  - Cost allocation
  - Treatment of specific transactions

- Marital dissolution assessment and analysis

- Contract cost and claims analysis

- Historical results analysis

- Special accountings, tracing, reconstructions, and cash-flow analyses

- Antitrust analysis, including the following:
  - Price fixing
  - Market share
  - Market definition
  - Predatory conduct
  - Dumping
  - Price discrimination

- Business interruption and other insurance claims assessment and analysis

- Attest services, if specifically engaged to perform them in connection with litigation services

Any of the following functions may be performed:

- Issue identification
- Locating other experts
- Fact finding, including the following:
  - Asset searches
  - Market studies
  - System reviews
  - Interviewing of witnesses
  - Due diligence
  - Research
- Analysis
  - Investigative accounting
  - Computer modeling
  - Statistical
  - Actuarial
- Discovery assistance
- Document management
- Settlement assistance
- Expert testimony
- Trial and deposition assistance
- Posttrial support (such as bookkeeping services and funds administration)
- Negotiations
- Arbitration
- Mediation
- Training
- Case evaluation

## APPENDIX B

## DECISION TREE TO DETERMINE THE APPLICATION OF PROFESSIONAL STANDARDS

Practitioners can use the decision tree provided below to determine which professional standards apply in a litigation services engagement. The case studies in Appendix H, "Professional Standards Case Studies," illustrate the application of the decision tree to particular engagements.




* "Attestation Engagements: Attestation Engagements Interpretations of Section 100" (AICPA, *Professional Standards*, vol. I, AT sec. 9100.48).

# APPENDIX C

## WORKING PAPERS AND DOCUMENTATION

In most instances, the expert may be required to disclose all documents considered or relied upon in reaching his or her opinions. The form and content of working papers and the related documentation may also be subject to discovery depending upon the role of the practitioner.

The AICPA's Statement on Auditing Standards (SAS) No. 96, *Audit Documentation* (AICPA, *Professional Standards*, vol. 1, AU sec. 339), issued on May 15, 2002, is a SAS that requires auditors to prepare and maintain working papers. The requirements of SAS No. 96 normally do not apply to litigation services. This is supported by an Interpretation No. 3 titled "Applicability of Attestation Standards to Litigation Services" in AT sec. 9101, *Attest Engagements: Attest Engagements Interpretations of Section 101* (AICPA, *Professional Standards*, vol. 2, AT sec. 9101.34), of the Statement on Standards for Attestation Services. This Interpretation provides that:

> Attestation Standards "does not apply to litigation services that involve pending or potential formal legal or regulatory proceedings before a 'trier-of-fact' in connection with the resolution between two or more parties…"

### Form and Content of Working Papers

Working papers may assist the practitioner to form an opinion, as an aid to testimony, as well as to support consulting advice. Much of the following discussion is directed toward the working papers of the expert based on an assumption that the working papers will be subject to discovery. While the working papers of a consultant in litigation may not be subject to discovery, the consultant might consider many of the following suggestions in anticipation of a potential changed role to expert and resultant working paper discovery.

Working papers generated during the litigation process may differ substantially from audit and attestation engagement working papers, and do not follow a prescribed format. Working papers should be prepared under the assumption that they will be scrutinized and, therefore, should be prepared with consideration given to the following:

1. Working papers should contain information that is needed or relevant to the practitioner's analysis and/or final opinion, findings, or testimony. Working papers should not include extraneous information. Generally, unless prohibited by order or agreement, litigation working papers, like all working papers, should not include superseded schedules or other information not relied upon or considered as a basis for the opinion.
2. The practitioner should be able to explain the purpose of particular working papers, the working paper format, procedures performed, sources of information, and interrelationships within the working papers.
3. Some consultants label or stamp working papers as prepared in connection with litigation or under the direction of counsel and subject to the attorney-client privilege and/or attorney work-product rule. If the consultant changes roles to an expert and the working papers become subject to discovery, the asserted privileges may no longer be effective.
4. Annotations and markings, including highlighting, become part of the working papers.

5. During working paper preparation, a practitioner often is not yet familiar with all-important case facts. Remarks placed in working papers should be carefully considered, since such preliminary conclusions may become superseded by more appropriate findings.
6. Litigation tasks and objectives often change during the course of the engagement. Models and theories developed early in the process may not be those upon which the expert is called to opine. It is generally acceptable for the content of working papers to evolve during the process of the practitioner's analysis.
7. Documents subject to protective orders should be distinguished from other working papers and documents.

## APPENDIX D

## COMPARISON OF AICPA PROFESSIONAL STANDARDS AND FEDERAL RULE OF EVIDENCE 702

| AICPA Professional Standards | Federal Rules of Evidence Rule 702 |
|---|---|
| **CPA Scope of Expertise**<br>• Accounting, auditing, tax, consulting, and other services | **Scope**<br>• Scientific knowledge<br>• Technical knowledge<br>• Specialized knowledge |
| **CPA Qualifications**<br>• Education<br>• Examination<br>• Experience<br>• Ethics—AICPA Code of Professional Conduct | **Qualifications**<br>• Education<br>• Knowledge<br>• Experience<br>• Training<br>• Skill |
| **AICPA Code of Professional Conduct**<br>Rule 102, *Integrity and Objectivity*<br>Rule 201, *General Standards*<br>*a.* Professional competence<br>*b.* Due professional care<br>*c.* Planning and supervision<br>*d.* Sufficient relevant data<br>Rule 202, *Compliance With Standards* | **Basis of Testimony**<br>• Product of reliable principles and methods<br>• Applied the principles and methods reliably to the facts of the case<br>• Sufficient facts or data |

## APPENDIX E

## TESTIMONY PYRAMID

Consistent with AICPA professional standards, Rule 702 of the Federal Rules of Evidence requires that expert testimony be based upon sufficient facts or data, be the product of reliable principles and methods, and that the principles and methods be reliably applied to the facts of the case. Graphically presented, the testimony pyramid might be as follows:



## APPENDIX F

## AICPA SPECIAL REPORTS AND PRACTICE AIDS

Consulting Services Special Report 93-2, *Conflicts of Interest in Litigation Services Engagements*

Consulting Services Special Report 93-3, *Comparing Attest and Consulting Services: A Guide for the Practitioner*

Consulting Services Practice Aid 93-4, *Providing Litigation Services*

Consulting Services Practice Aid 95-2, *Communicating Understandings in Litigation Services: Engagement Letters*

Consulting Services Practice Aid 96-3, *Communicating in Litigation Services: Reports*

Consulting Services Practice Aid 97-1, *Fraud Investigations in Litigation and Dispute Resolution Services*

Consulting Services Practice Aid 98-1, *Providing Bankruptcy and Reorganization Services*

Consulting Services Practice Aid 98-2, *Calculation of Damages From Personal Injury, Wrongful Death, and Employment Discrimination*

Consulting Services Practice Aid 99-1, *Alternative Dispute Resolution Services*

Consulting Services Practice Aid 99-2, *Valuing Intellectual Property and Calculating Infringement Damages*

Consulting Services Practice Aid 02-1, *Business Valuation in Bankruptcy*

## APPENDIX G

## BANKRUPTCY AND REORGANIZATION SERVICES

### BANKRUPTCY AND REORGANIZATION SERVICES DEFINED

CPAs frequently provide accounting and financial advisory services, as well as unique bankruptcy services, such as acting as trustee-examiners and providing claims processing, to financially troubled companies that are considering or are in the process of reorganizing. The reorganization may be a formal proceeding in a bankruptcy court (for example, a Chapter 11 case) or an out-of-court restructuring. Such services may also be provided to creditors and other parties-in-interest of the restructuring company. Common characteristics of troubled companies that seek to restructure include underperformance, poor cash flow, overleveraging, weak management, extensive litigation involvement (for example, product liability cases and labor disputes), loss of market share, and so forth.

The delivery of reorganization services to such companies may include—

- Preparing or reviewing valuations of the debtor's business.
- Analyzing the profitability of the debtor's business.
- Preparing or reviewing the monthly operating reports required by the bankruptcy court.
- Reviewing disbursements and other transactions for possible preference payments and fraudulent conveyances.
- Preparing or reviewing the financial projections of the debtor.
- Performing financial advisory services associated with mergers, divestitures, capital adequacy, debt capacity, and so forth.
- Consulting on strategic alternatives and developing business plans.
- Providing assistance in developing or reviewing plans of reorganization or disclosure statements.[6]

Reorganization services are dynamic. Often the scope of the engagement is revised as the restructuring progresses and as negotiation strategies develop. Companies frequently begin a reorganization outside of bankruptcy, but when they cannot reach agreement with all the necessary parties, the reorganization is completed as a bankruptcy proceeding.

Out-of-court restructurings are generally undertaken with the aid of bankruptcy counsel and financial advisers. Each negotiating party, such as a borrower or a lender, enters the discussions with full knowledge of its rights should a bankruptcy filing result from the failure to reach a consensus on the restructuring.

### BANKRUPTCY AND RESTRUCTURING SERVICES AS LITIGATION SERVICES

Bankruptcy services provided by CPAs generally are accepted as a form of litigation services. This acceptance is due to the many fundamental and practical similarities between bankruptcy services and the consulting services associated with other forms of litigation. Bankruptcy law, as

---

[6] The words *review* and *reviewing* are not intended to have the same meaning as they do in the AICPA's SSARSs.

promulgated by the Bankruptcy Code and case law, is applied by bankruptcy judges and lawyers to resolve disputes between a debtor and its creditors (for example, distribution of the debtor's assets). Bankruptcy cases frequently include actions related to claims for preferential payments and fraudulent conveyances; negligence of officers, directors, or professionals engaged by the debtors; or other allegations common to commercial litigation. The bankruptcy court has the power and authority to value legal claims and resolve such common litigation as product liability, patent infringement, and breach of contract. The decisions of bankruptcy judges can be appealed as can the decisions of other courts.

From a practical standpoint, negotiation among the parties in bankruptcy cases is as important as it is in civil and criminal litigation (for example, settlement of commercial litigation and plea bargains in criminal trials). When the parties are unable to resolve the disputes themselves, the trier of fact determines the outcome.

There are similarities between the judicial process applied to bankruptcy and that used for other litigation (for example, discovery, expert testimony, and rules of evidence). It is reasonable to conclude, therefore, that bankruptcy services are a form of litigation services consistent with the type of services contemplated by the AICPA in developing the interpretation, "Applicability of Attestation Standards to Litigation Services" (AICPA, *Professional Standards*, vol. 1, AT sec. 9100.47–55).

Out-of-court restructuring holds the potential for litigation. Therefore, the settlement process is generally conducted with the same scrutiny, due diligence, and intense challenge as that of a formal court-administered process. Furthermore, bankruptcy services provided by CPAs are typically not three-party attest services (the three parties in attest services are the asserter, the attester, and the third party). Instead, affected parties have the opportunity to question, challenge, and provide input to the bankruptcy findings and process.

## WHEN OTHER PROFESSIONAL STANDARDS APPLY TO BANKRUPTCY AND REORGANIZATION SERVICES

CPAs regularly provide both consulting and attest services in connection with bankruptcy or restructuring. The CPA must evaluate the nature of the services carefully to determine if any are exempt from the Statements on Standards for Attestation Engagements (SSAEs) and the Statements on Standards for Accounting and Review Services (SSARSs). For the litigation services' exemption to apply, the service must be performed in connection with the litigation and the parties to the proceeding must have an opportunity to analyze and challenge the work of the CPA. Furthermore, the CPA must—

- Assess the services to be performed.
- Understand the intended use of the CPA's work product.
- Identify the parties that may rely on the work product.
- Decide whether the attestation standards apply.

It is quite possible that in a particular reorganization engagement, certain services will not be subject to attestation standards, but others will. If the attestation standards do not apply, the CPA should consider disclosing on the face of the documents, or in a separate report, the extent of service rendered and the responsibility assumed by the CPA, if any. Such disclosures may help the reader to understand the extent of the CPA's role and the intended use of the work product.

Both the SSAEs and SSARSs are applicable to litigation services and bankruptcy engagements when the practitioner—

*a.* Expresses a written conclusion about the reliability of a written assertion by another party, and the conclusion and assertion are for the use of others who, under the rules of the proceedings, cannot analyze and challenge the work.

*b.* In connection with litigation services, is specifically engaged to perform a service in accordance with the SSAEs or SSARSs.

Further, an essential part of many bankruptcies and restructurings is the development of prospective financial information (PFI). PFI often is used to negotiate with creditors or committees of creditors representing a group or class of creditors. PFI also may be included in disclosure statements to inform creditors and other parties of the financial condition of the company according to certain restructuring and operating instructions.

Parties-in-interest generally can challenge PFI and its assumptions during negotiations or during bankruptcy court hearings on the plan's feasibility and adequacy of disclosure. In situations in which the users of the PFI cannot challenge the CPA's work, the attestation standards may apply. Such situations may arise, for example, when exchange offers are made to creditors or shareholders with whom the company has not negotiated or who are not members of a creditor group represented by a committee.

The attestation standards (in Statement on Standards for Accountants' Services on Prospective Financial Information, *Financial Forecasts and Projections* [AICPA, *Professional Standards*, vol. 1, AT sec. 200.02]) generally provide that an examination, compilation, or agreed-upon procedures engagement should be performed whenever an accountant submits PFI to clients or others. However, AT section 200.03 does provide an exemption from the attestation standards when an engagement involves prospective financial statements used solely in connection with litigation support services. This exemption is provided because, among other things, the accountant's work in such proceedings is ordinarily subject to detailed analysis and challenge by each party to the dispute.

When attestation standards do not apply, CPAs may wish to state the extent of their association with any work product and the responsibility they have assumed. It may be appropriate for CPAs to explain both their association and their responsibility, if any, through a transmittal letter or a statement affixed to documents distributed to third parties. The following wording is suggested:

> The accompanying schedules (projected *financial information*; debt capacity analysis; liquidation analysis) were assembled for your analysis of the proposed restructuring and recapitalization of ABC Company. The aforementioned schedules were not examined or reviewed by independent accountants in accordance with standards promulgated by the AICPA. This information is limited to the sole use of the parties involved (management; creditors' committee; bank syndicate) and is not to be provided to other parties.

## APPENDIX H

## PROFESSIONAL STANDARDS CASE STUDIES

### CASE STUDY I: FORENSIC ACCOUNTING

Mark Helm, CPA, has been requested by ABC Company to ascertain the extent of fraud allegedly perpetrated by one of the company's employees. The results of the investigation will be used to negotiate a settlement with PENN Bonding Company. Helm has been asked to perform the procedures that he considers necessary, and it is expected that he will issue a formal report.

The following questions and answers illustrate the process of determining which professional standards must be complied with in the engagement.

*Question*: What form of service is being requested?

*Answer*: The answer to the question can be determined by applying the decision tree in Appendix B, as follows:

| *Step* | *Criteria* | *Decision* |
|---|---|---|
| 1. | Does the engagement meet the definition of litigation services? | Yes. Forensic accounting is a litigation service. |
| 2. | Does the litigation services engagement encompass only those consulting services identified under the SSCS? | Yes. The practitioner is to perform a consulting service. |
| 3. | Does the litigation services engagement also contain elements that require adherence to the SSARSs, SSAEs, or SASs? | No. See below. |

Exemption from the SSARSs, SSAEs, and SASs requires a *no* answer to question *a* or a *yes* answer to any questions from *b* through *e*.

| | |
|---|---|
| *a.* Will the practitioner issue a written communication that expresses a conclusion about the reliability of a written assertion that is the responsibility of another party? | No. |
| *b.* Will the service comprise being an expert witness? | No. |
| *c.* Will the service comprise being a trier of fact or acting on behalf of one? | No. |

| *Step* | *Criteria* | *Decision* |
|---|---|---|
| | *d.* Is the practitioner's work, under the rules of the proceedings, subject to detailed analysis and challenge by each party to the dispute? | Yes.[7] |
| | *e.* Is the practitioner engaged by an attorney to do work that will be protected by the attorney's work product privilege, and is such work not intended to be used for other purposes? | No. |

4. Determine the nature of the elements not covered by the SSCS, SSARSs, SSAEs, or SASs, and adhere to appropriate standards or refer to available guidance.

5. Complete the engagement.

*Question*: Would the answer be different if no formal report was requested and the results were to be supported only by Helm's working papers?

*Answer*: No. The answer would be the same. The written report is not a criterion for distinguishing engagements.

*Question*: If Helm constructs the engagement as an agreed-upon procedures engagement, is he governed by SAS No. 35, *Special Reports Applying Agreed Upon Procedures to Specified Elements, Accounts, Items of a Financial Statement* (AICPA, *Professional Standards*, vol. 1, AU sec. 622), on agreed-upon procedures or by the attestation standards?

*Answer*: Neither. The answer would be the same. Agreed-upon procedures can be used in a consulting engagement and the practitioner can look to SAS No. 35 for guidance but should not indicate, imply, or construe the engagement as falling under the attestation standards or the auditing standards (including SAS No. 35).

---

[7] It is reasonable to presume that the adverse party will evaluate and challenge the company's position.

## CASE STUDY II: POTENTIAL LEGAL PROCEEDINGS

Barbara Matson, CPA, has been requested by XYZ Company, which is a defendant in a legal suit, to evaluate a damages study presented by the plaintiff Contractors, Inc. Matson has been requested to provide a report of her findings and an opinion regarding the reasonableness of the study. The following questions and answers illustrate the process of determining the professional standards with which Matson must comply in performing the engagement.

*Question*: What form of service is being requested?

*Answer*: The answer to the question can be determined by applying the decision tree in Appendix B, as follows:

| Step | Criteria | Decision |
|---|---|---|
| 1. | Does the engagement meet the definition of litigation services? | Yes. The case involves a client with potential formal legal or regulatory proceedings before a trier of fact. |
| 2. | Does the litigation services engagement encompass only the consulting services identified under the SSCS? | No. As stated in Statement on Standards for Attestation Engagements, *Attestation Standards* (AICPA, *Professional Standards*, vol. 1, AT sec. 100.75), "The evaluation of statements contained in a written assertion of another party when performing a management advisory service does not in and of itself constitute the performance of an attest service." |
| 3. | Does the litigation services engagement also contain elements that require adherence to the SSARSs, SSAEs, or SASs? | No. See below. |

Exemption from the SSARSs, SSAEs, and SASs requires a *no* answer to question *a* or a *yes* answer to any questions from *b* through *e*.

| | | |
|---|---|---|
| *a.* | Will the practitioner issue a written communication that expresses a conclusion about the reliability of a written assertion that is the responsibility of another party? | No. See response to question 2 above. |
| *b.* | Will the service comprise being an expert witness? | No. |

| *Step* | *Criteria* | *Decision* |
|---|---|---|
| | *c.* Will the service comprise being a trier of fact or acting on behalf of one? | No. |
| | *d.* Is the practitioner's work, under the rules of the proceedings, subject to detailed analysis and challenge by each party to the dispute? | No. |
| | *e.* Is the practitioner engaged by an attorney to do work that will be protected by the attorney's work product privilege, and is such work not intended to be used for other purposes? | No. |
| 4. | Determine the nature of the elements not covered by the SSCS, SSARSs, SSAEs, or SASs and adhere to appropriate standards or refer to available guidance. | |
| 5. | Complete the engagement. | |

*Question*: Under what circumstances would this become an attestation engagement?

*Answer*: If Matson was engaged to report to both parties as to the reliability of the damage study.

## CASE STUDY III: EXPERT WITNESS

John Lake, CPA, has been requested by the law firm of Smith & Miller to be an expert witness and provide a report critiquing a damage study prepared for the law firm by Ray Dante, another expert witness. The following questions and answers illustrate the process of determining which professional standards Lake must comply with in performing the engagement.

*Question*: What form of service is being requested?

*Answer*: The answer to the question can be determined by applying the decision tree in Appendix B, as follows:

| Step | Criteria | Decision |
|---|---|---|
| 1. | Does the engagement meet the definition of litigation services? | Yes. The practitioner is engaged to be an expert witness. |
| 2. | Does the litigation services engagement encompass only those consulting services identified under the SSCS? | Yes. The practitioner is to perform a consulting service. |
| 3. | Does the litigation services engagement also contain elements that require adherence to the SSARSs, SSAEs, or SASs? | No. See below. |

Exemption from the SSARSs, SSAEs, and SASs requires a *no* answer for question *a* or a *yes* answer to any question from *b* through *e*.

| | |
|---|---|
| *a.* Will the practitioner issue a written communication that expresses a conclusion about the reliability of a written assertion of another party? | No. As stated in Statement on Standards for Attestation Engagements, *Attestation Standards* (AICPA, *Professional Standards*, vol. 1, AT sec. 100.75), "The evaluation of statements contained in a written assertion of another party when performing a management advisory service does not in and of itself consitute the performance of an attest service." |
| *b.* Will the service comprise being an expert witness? | Yes. |
| *c.* Will the service comprise being a trier of fact or acting on behalf of one? | No. |

| *Step* | *Criteria* | *Decision* |
|---|---|---|
| | *d.* Is the practitioner's work, under the rules of the proceedings, subject to detailed analysis and challenge by each party to the dispute? | No. |
| | *e.* Is the practitioner engaged by an attorney to do work that will be protected by the attorney's work product privilege, and is such work not intended to be used for other purposes? | Yes. |
| 4. | Determine the nature of the elements not covered by the SSCSs, SSARSs, SSAEs, or SASs, and adhere to appropriate standards or refer to available guidance. | |
| 5. | Complete the engagement. | |

*Question*: Would the answer be different if John's conclusions were to be expressed in testimony to the court in a form that adheres to the SSAEs or SSARSs?

*Answer*: Yes, if Smith & Miller had requested Lake to issue a report in accordance with the SSAEs or SSARSs or if Lake had decided to do so.

## CASE STUDY IV: CLAIM EVALUATION

Judith Sauter, CPA, has been requested by Pawling Insurance Company to evaluate a claim by an insured for a business interruption that is in litigation. Sauter is requested to perform the procedures she considers necessary to evaluate the claim, supporting her conclusions in her working papers. The following questions and answers illustrate the process of determining which professional standards Sauter must comply with in performing the engagements.

*Question*: What form of service is being requested?

*Answer*: The answer to the question can be determined by applying the decision tree in Appendix B, as follows:

| Step | Criteria | Decision |
|---|---|---|
| 1. | Does the engagement meet the definition of litigation services? | Yes. The practitioners is engaged to do work related to a claim in litigation. |
| 2. | Does the litigation engagement encompass only those consulting services identified under the SSCSs? | Yes. The engagement is a consulting service as contemplated by the SSCSs. |
| 3. | Does the litigation services engagement also contain elements that require adherence to the SSARSs, SSAEs, or SASs? | No. See below. |

Exemption from the SSARSs, SSAEs, and SASs requires a *no* answer to question *a* or a *yes* answer to any question from *b* through *e*.

| | Criteria | Decision |
|---|---|---|
| *a.* | Will the practitioner issue a written communication that expresses a conclusion about the reliability of a written assertion of another party? | No. The workpapers are not a written report on a third party assertion but are the practitioner's own assertions. |
| *b.* | Will the service comprise being an expert witness? | No. |
| *c.* | Will the service comprise being a trier of fact or acting on behalf of one? | No. |

| *Step* | *Criteria* | *Decision* |
|---|---|---|
| | *d.* Is the practitioner's work under the rules of the proceedings, subject to detailed analysis and challenge by each party to the dispute? | No. |
| | *e.* Is the practitioner engaged by an attorney to do work that will be protected by the attorney's work product privilege, and is such work not intended to be used for other purposes? | No. |
| 4. | Determine the nature of the element not covered by the SSCSs, SSARSs, SSAEs, or SASs and adhere to appropriate standards or refer to available guidance. | |
| 5. | Complete the engagement. | |

*Question*: Would the answer be different if a formal report was requested?

*Answer*: No. As stated in Statement on Standards for Attestation Engagements, *Attestation Standards* (AICPA, *Professional Standards*, vol. 1, AT sec. 100.75):

> The evaluation of statements contained in a written assertion of another party when performing a management advisory service does not in and of itself constitute the performance of an attest service.

## CASE STUDY V: BUSINESS VALUATION AND AUDIT

Paul Davis, CPA, has been requested by Bob Trep, managing partner of Able Law Services, a law firm in a partnership dissolution and whose partners are in litigation with one another, to perform a business valuation and to audit the practice's financial statements as of the date of the dissolution in accordance with the SSAEs. The following questions and answers illustrate the process of determining which professional standards Davis must comply with in performing the engagement.

*Question*: What form of service is being requested?

*Answer*: The answer to the question can be determined by applying the decision tree in Appendix B, as follows:

| *Step* | *Criteria* | *Decision* |
|---|---|---|
| 1. | Does the engagement meet the definition of litigation services? | Yes. The practitioner is performing a business valuation and the client situation involves pending formal legal or regulatory proceedings before a trier of fact. |
| 2. | Does the litigation services engagement encompass only those consulting services identified under the SSCS? | No. The practitioner is to perform an attestation service. |
| 3. | Does the litigation services engagement also contain elements that require adherence to the SSARSs, SSAEs, or SASs? | Yes. See below. |

Exemption from the SSARSs, SSAEs, and SASs require a *no* answer for question *a* or a *yes* answer to any question from *b* through *e*.

| | | |
|---|---|---|
| *a.* | Will the practitioners issue a written communication that expresses a conclusion about the reliability of a written assertion of another party? | Yes. |
| *b.* | Will the service comprise being an expert witness? | No. |
| *c.* | Will the service comprise being a trier of fact or acting on behalf of one? | No. |

| *Step* | *Criteria* | *Decision* |
|---|---|---|
| | *d.* Is the practitioner's work under the rules of the proceedings, subject to detailed analysis and challenge by each party to the dispute? | No. |
| | *e.* Is the practitioner engaged by an attorney to do work that will be protected by the attorney's work product privilege, and is such work not intended to be used for other purposes? | No. |
| 4. | Determine the nature of the elements not covered by the SSCS, SSARSs, SSAEs, or SASs and adhere to appropriate standards or refer to available guidance. | |
| 5. | Complete the engagement. | |

*Question*: Would adherence to the SSAEs be required if Paul was not specifically engaged to perform the service in accordance with the SSAEs?

*Answer*: No, if Paul's written communication, which expresses a conclusion about the reliability of the financial statements, is, under the proceedings, subject to detailed analysis and challenge by each party to the dispute.

# AICPA Consulting Engagement Practice Aids

You may obtain any of these publications by calling our Professional Member Satisfaction Department at **1-888-777-7077**. A Professional Member Satisfaction Representative will assist you with your product ordering, and thank you for looking to AICPA for your Consulting Services needs. If you have any CS Membership questions and would like to speak to the Membership Sections Coordinator, you can call our Membership Sections hotline at **212-596-6211**.

| ***Title*** | ***Series*** | ***Product*** |
|---|---|---|
| **Small Business Consulting Practice Aid Series** | | |
| Assessing Franchise Opportunities | No. 13 | 055361 |
| Assisting Professional Clients in Pricing Services Using Budgeting Techniques | No. 14 | 055376 |
| Developing and Improving Client's Recruitment, Selection and Orientation | No. 92-2 | 055133 |
| Assisting a Financially Troubled Business | No. 92-8 | 055140 |
| Assisting Clients to Establish an Outside Advisory Board | No. 93-2 | 055141 |
| Conducting a Valuation of a Closely Held Business | No. 93-3 | 055148 |
| Assisting Clients in Controlling Costs and Expenses | No. 93-7 | 055149 |
| Assisting Clients in Developing Credit and Collection Policies | No. 94-3 | 055154 |
| Providing Cash Management Consulting Services | No. 96-4 | 055002 |

**Consulting Services Practice Administration**

*This series of practice administration aids addresses the administrative matters related to providing CS for clients within the environment of a CPA practice. They are of particular interest and value to anyone with management responsibility for a CS practice. The aids are also useful to those who provide consulting services as a CPA, whether as a sole practitioner, partner or a staff person in a single or multiple practice CPA firm.*

| | | |
|---|---|---|
| Starting and Developing an MAS Practice | No. 4 | 055925 |
| Communicating With Clients About MAS Engagement Understandings | No. 5 | 055930 |
| Developing a Consulting Services Control and Management Program | No. 93-5 | 055143 |
| Communicating the Results of Consulting Services Engagements | No. 96-2 | 055911 |

**Technical Consulting Practice Aid Series**

| | | |
|---|---|---|
| Automating Small and Medium-Sized Businesses in Selected Industries | No. 92-5 | 055136 |
| Preparing Financial Models | No. 92-6 | 055137 |
| Providing Litigation Services | No. 93-4 | 055145 |
| Analyzing Financial Ratios | No. 94-4 | 055155 |
| Communicating Understandings in Litigation Services: Engagement Letters | No. 95-2 | 055163 |
| Communicating in Litigation Services: Reports, A Nonauthoritative Guide | No. 96-3 | 055000 |
| Fraud Investigations in Litigation and Dispute Resolution Services, A Nonauthoritative Guide | No. 97-1 | 055001 |
| Providing Bankruptcy and Reorganization Services | No. 98-1 | 055162 |
| Calculations of Damages From Personal Injury, Wrongful Death, and Employment Discrimination | No. 98-2 | 055293 |
| Alternative Dispute Resolution Services | No. 99-1 | 055294 |
| Valuing Intellectual Property and Calculating Infringement Damages | No. 99-2 | 055295 |
| Business Valuation in Bankruptcy | No. 02-1 | 055296 |

| *Title* | *Series* | *Product* |
|---|---|---|
| **Industry Consulting Practice Aid Series** | | |
| *This series of practice aids will help you provide consulting services to clients in specific industries.* | | |
| Nursing Homes | No. 94-2 | 055153 |
| **Special Reports** | | |
| Conflicts of Interest in Litigation Services Engagements | No. 93-2 | 048563 |
| Comparing Attest and Consulting Services: A Guide for the Practitioner | No. 93-3 | 048564 |
| **Software** | | |
| Consulting Engagement Letters and Checklists | | 055011 |

055297