# Exhibit 13

Daily Journal Established in 1888 | California Lawyer








NEWS

## 10 Most Read

Newsom appoints 15 superior court judges
Jun. 18, 2024

Deal reached on PAGA reform
Jun. 18, 2024

What does the PAGA overhaul look like?
Jun. 19, 2024

California Supreme Court removes anti-tax initiative from ballot
Jun. 20, 2024

Underutilized CARE Courts, unfilled judgeships eyed in budget crunch
Jun. 18, 2024

'Almost every county is faster': Caseloads in LA nearly double in a decade
Jun. 20, 2024

Negotiations to toughen theft and drug penalties collapse
Jun. 25, 2024

Shant Karnikian assumes leadership at Kabateck LLP
Jun. 25, 2024

Managing The Double-Decker 'Sandwich Generation' In Law And At Home
Jun. 19, 2024

San Diego law firm honored for supporting Navy Reserve
Jun. 20, 2024

Law Office Management
Jun. 2, 2011

# The Numbers Tell a Story

**Forensic accountants appear in litigation with increasing frequency. Here's how their role has expanded.**

Accountants have come a long way since they inventoried the pharaoh's grain, gold, and other assets in ancient Egypt. And though the specialty of forensic accounting dates back hundreds of years, with references in 18th-century Scotland, the modern forensic accountant is a relatively new species. Indeed, the use of forensic accountants in complex litigation has exploded during the past two decades, so much so that in 2008 the American Institute of Certified Public Accountants introduced a new credential that CPAs can earn: Certified in Financial Forensics. (See www.aicpa.org.) Already more than 4,300 persons have qualified for the CFF credential.

The distinction between a forensic and a traditional accountant bears emphasis. A typical CPA prepares and analyzes debits and credits, reviews a company's ongoing internal control procedures, and audits financial statements and accounting books and records.

The modern forensic accountant studies and analyzes those items and more--in many instances also surveying and investigating complex financial, economic, and operational issues that affect a company. Studying competitors and the relevant marketplace may also be required.

But in addition to unraveling intricate business dealings, today's forensic accountant possesses another vital skill: the ability to decipher and clearly explain what to a layperson may seem like gobbledygook.

Indeed, in a given case, a forensic accountant may be asked to analyze liability, causation, and damages. Given this expanded role, the use of these experts in the courtroom has grown by leaps and bounds. A brief comparative look at the forensic accountant's role tells the story. While in years past, a forensic accountant's work was confined to searching for assets in a contested divorce or preparation of a delay claim in a construction dispute, today the list of matters where such experts appear is endless, including antitrust, intellectual property, securities, and professional negligence, just to name a few.

The expansion of the role of forensic accountants is linked to the massive changes in the business, regulatory, and political environment over the past 30 years. Not only has there been a substantial increase in fraud (and the desire to investigate it), but the complexity of laws and regulations that deal with fraud has grown significantly. One need only examine the work of Congress to get the point: The Sarbanes-Oxley Act of 2002 (Pub. L. No. 107-204), running 66 pages, is dwarfed by the whopping 849-page Dodd-Frank Wall Street Reform and Consumer Protection Act of 2009 (Pub. L. No. 111-203).

It is in this increasingly complex environment that forensic accounting experts help the trier of fact--whether judge or jury--to understand precisely the effect of a given crisis on the operations of a particular individual or company. To be effective, then, a forensic accountant must be a teacher who can help others unravel and understand complicated data. When done well, this work enables justice to be done, in the form of a reasoned and fair resolution of what otherwise would have been the tangled wreckage of financial dealings gone bad.

A forensic accountant comes upon a financial scene in much the way that a detective works to solve a mystery: looking for clues, interviewing witnesses, obtaining and analyzing evidence. He or she combs through it all, searching for anomalies and inconsistencies around a common thread that might explain the entire picture. A useful image is that of an investigator from the National Transportation Safety Board walking the scene of a plane crash, trying to explain how, why, and when the aircraft went down.

To do this work effectively, a forensic accountant must understand the general legal and regulatory environment that applies to the case. A good working knowledge of the relevant industry also is important.

Indeed, the admissibility of a forensic accountant's testimony may hinge on industry experience. The fact that a proffered expert has experience analyzing data, transactions, trends, and works in a given trade, business, or profession is often of great interest to the court, weighing heavily in its acceptance of that expert's opinion. (See *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and compare *Pac. Gas & Elec. Co. v. Howard P. Foley Co., Inc.*, 1993 WL 299219 (N.D. Cal. 1993) (expert accepted based on experience) with *United States v. Young Bros., Inc.*, 728 F.2d 682 (5th Cir.), cert. denied 469 U.S. 881 (1984) (expert testimony excluded due to lack of relevant experience).)

But the expert's most important trait of all may be the elusive quality of believability. The building blocks are threefold: preparation, preparation, and preparation. Only after complete immersion in the inner structure of a client's business and everyday operations can a forensic expert explain complicated issues concisely and understandably. And when the presentation is made, it must be in a neutral tone that is not condescending to the audience.

Challenges that require the expertise of a forensic accountant can emerge in a variety of contexts. In one fraudulent conveyance case, for example, a party asserted that a seller was insolvent at the time of the sale; did not receive reasonably equivalent value when the asset at issue was transferred to a related party; and hindered, delayed, or defrauded creditors. The forensic accountant's role in that case blended traditional skills with those of an experienced appraiser--assessing not only the fair market value of the transferred asset but of the purchaser itself. And when it came to the issue of fraud on creditors, the investigation centered on the self-dealing of the purchaser's principals. In short, the case called for more advanced skills than you could expect from a garden-variety CPA.

A professional negligence matter, involving an oil-spill clean-up contractor, presented a different problem. One party contended that the contractor's financial failure was the result of defective audit work; indeed, the company collapsed shortly after receiving a clean audit opinion. But a forensic accountant was able to explain that the company's demise stemmed not from the auditor's work product but from risky contracts, inopportune expansion, and severe management and cash-flow problems.

In a recent dispute between high-tech companies, a forensic accountant confronted an allegation that one party had fraudulently breached an agreement to jointly develop certain products. A major issue was whether the plaintiff had the financial capability to fulfill its end of the bargain. The expert was able to analyze the company's financial condition, its liquidity, and potential sources of additional capital. After a thorough look at the plaintiff's finances, creditworthiness, and attempts to obtain funding, the forensic accountant was able to credibly testify that the firm lacked the resources needed to perform its obligations.

And in a tax refund dispute, a forensic accounting expert was utilized to refute the IRS's primary allegation that almost $1 billion of proceeds from debt offerings were traceable to specific stock purchases. (See *OBH, Inc. v. United States*, 397 F. Supp. 2d 1148 (D. Neb. 2005).)

As these examples show, forensic accounting involves much more than ledger columns on a ruled sheet of paper. Knowledgeable litigators understand that forensic accountants can be among the most important witnesses to take the stand, especially in high-stakes, complex litigation.

*Avram S. ("Ave") Tucker, San Francisco–based cofounder of the national forensic accounting and consulting firm TM Financial Forensics, testifies in complex litigation cases and is a consulting professor at Stanford University.*

#273306

**Kari Machado**
Daily Journal Staff Writer

**For reprint rights or to order a copy of your photo:**
Email jeremy@reprintpros.com for prices.
Direct dial: 949-702-5390

**Send a letter to the editor:**
Email: letters@dailyjournal.com









People
Top Trade Secrets Lawyers
Top Under 40
Top Verdicts
Top Women
New Laws
Professional Responsibility
Special Coverage
White Collar
The Record Reporter (Phoenix, AZ)

© 2024 Daily Journal Corporation. All Rights Reserved. | Feedback | Advertise With Us | Printing Services | Privacy | User Agreement | SEC | About | Submit