**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION<br>This document relates to: ALL CASES | MDL Docket No. 1869<br>Misc. No. 07-0489 (BAH/GMH) |
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br>This document relates to: ALL CASES | MDL Docket No. 2925<br>Misc. No. 20-8 (BAH) |
| OXBOW CARBON & MINERALS LLC, et al.,<br>Plaintiffs,<br>v.<br>UNION PACIFIC RAILROAD COMPANY, et al.,<br>Defendants. | No. 11-cv-1049 (BAH/GMH)<br>**Public Version**<br>**Oral Argument Requested** |

**Plaintiffs' Memorandum of Law in Support of**
**Motion to Strike the Declarations of Eric Fanchiang and Kelsey Bryan**

**Table of Contents**

Introduction ........ 1
Argument ........ 2
I. The Fanchiang and Bryan Declarations Are Improper Lawyer Advocacy ........ 2
II. The Fanchiang and Bryan Declarations Go Beyond Mere Summarization ........ 3
III. The Fanchiang and Bryan Declarations Contain Factual Inaccuracies ........ 8
Conclusion ........ 20

## Table of Authorities

**Page(s)**

**Cases**

*Andean Life, LLC v. Barry Callebaut U.S.A. LLC*,
2021 WL 9563177 (S.D. Fla. Oct. 12, 2021) .......... 8

*Anderson v. Otis Elevator Co.*,
2012 WL 5493383 (E.D. Mich. Nov. 13, 2012) .......... 2, 9

*Auto Indus. Supplier ESOP v. Ford Motor Co.*,
435 F. App'x 430 (6th Cir. 2011) .......... 4

*Bluiett v. Pierre M. Sprey, Inc.*,
2009 WL 10685350 (D. Md. Jan. 27, 2009) .......... 2, 8

*Eichorn v. AT&T Corp.*,
484 F.3d 644 (3d Cir. 2007) .......... 4

**Fox v. Ritz-Carlton Hotel Co., LLC*,
2022 WL 2666450 (S.D. Fla. July 11, 2022) .......... 2, 3, 5, 8

*Peat, Inc. v. Vanguard Rsch., Inc.*,
378 F.3d 1154 (11th Cir. 2004) .......... 4

*Petrone v. Werner Enters., Inc.*,
42 F.4th 962 (8th Cir. 2022) .......... 7

*Route 21 Assocs. of Belleville, Inc. v. MHC, Inc.*,
486 B.R. 75 (S.D.N.Y. 2012) .......... 17

*Stafford v. United States*,
2013 WL 140605 (M.D. Tenn. Jan. 11, 2013) .......... 4

*Su v. E. Penn Mfg. Co.*,
2023 WL 2796120 (E.D. Pa. Apr. 5, 2023) .......... 4

*United States v. Fahnbulleh*,
752 F.3d 470 (D.D.C. 2014) .......... 9

**United States v. Grajales-Montoya*,
117 F.3d 356 (8th Cir. 1997) .......... 2

*United States v. Honeywell Int'l Inc.*,
337 F.R.D. 456 (D.D.C. 2020) .......... 7

*United States ex rel. Morsell v. NortonLifeLock, Inc.*,
651 F. Supp. 3d 95 (D.D.C. 2023) ....................................................................................3

*United States v. Solvay*,
2016 WL 1258401 (S.D. Tex. Mar. 31, 2016)..............................................................2

**Rules**

Fed. R. Evid. 1006 ..................................................................................................... *passim*

**Other Authorities**

8 Handbook of Fed. Evid. § 1006:1 (9th ed., Nov. 2023) ..............................................................3

2 McCormick On Evidence § 241 (8th ed., July 2022) ..................................................................9

*6 Weinstein's Federal Evidence §§ 1006.05, 1006.07 (2024)...................................................2, 9

31 Wright & Miller, Fed. Prac. & Proc. Evid. § 8044 (2d ed., June 2024) ....................................4

## Introduction

Defendants have submitted two declarations with their summary judgment papers—the Declaration of Eric Fanchiang in Support of Defendants' Motion for Summary Judgment on Plaintiffs' Time-Barred Damages Claims (DA25706) and its Appendices (together, the "Fanchiang Declaration") and the Declaration of Kelsey S. Bryan in Support of Defendants' Joint and Individual Motions for Summary Judgment (DA25412) and its Attachments (together, the "Bryan Declaration")—that purport to be summaries under Federal Rule of Evidence 1006.[1] They are not. The Fanchiang and Bryan Declarations are improper attorney-proffered declarations which function as an extension of Defendants' legal arguments that certain categories of Plaintiffs' damages are time-barred or otherwise not recoverable, not a mere summarization of the underlying evidence.

In effect, Defendants seek to leverage the Fanchiang and Bryan Declarations, ostensibly as part of Defendants' cross-case motions for summary judgment, to obtain case-specific rulings on thousands of individual price authorities. Fanchiang and Bryan also purport to set forth estimates of various plaintiffs' damages on those individual price authorities despite Fanchiang and Bryan being attorneys, not damages experts who will be subject to cross-examination. Further, while Fanchiang and Bryan imply that the information contained in their Appendices and Attachments is correct, referring to purported "Supporting Evidence" and claiming to have drawn from external sources like the parties' expert reports, there are portions that fail to cite any underlying documentation at all. And even where the two attorneys do cite documents, there are demonstrable factual inaccuracies.

---

[1] The *Oxbow* Plaintiffs join this motion solely with respect to the Bryan Declaration, as the Fanchiang Declaration was not filed in the *Oxbow* litigation.

The Fanchiang and Bryan Declarations, thus, fail to comport with the requirements of Rule 1006, and the Court should strike both as inadmissible in their entireties.

**Argument**

**I. The Fanchiang and Bryan Declarations Are Improper Lawyer Advocacy**

Federal Rule of Evidence 1006 is an exception to the best-evidence doctrine that permits a party to "use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court." It is not a license for two of Defendants' counsel—neither of whom are witnesses—to editorialize documentary evidence under the guise of allegedly simplifying the summary judgment record for the Court. Yet, that is precisely what the Fanchiang and Bryan Declarations do.

Numerous federal courts recognize that Rule 1006 "does not allow for the admission of a summary . . . that was prepared by a lawyer trying the case," which is tantamount to "a written argument" by counsel. *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997); *see also*, *e.g.*, *Bluiett v. Pierre M. Sprey, Inc.*, 2009 WL 10685350, at *5 (D. Md. Jan. 27, 2009) (striking one of the declarations at issue as "inappropriate under Rule 1006 because it was prepared by the attorney litigating the case"); *United States v. Solvay*, 2016 WL 1258401, at *13 (S.D. Tex. Mar. 31, 2016) (summary charts are not admissible because they were apparently prepared by lead counsel, who cannot serve as the proponent of the charts at trial), *aff'd sub nom. United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318 (5th Cir. 2017). Indeed, "the Rule contemplates that any summary admitted will have been prepared by a witness available for cross-examination, not by the lawyers trying the case." *Fox v. Ritz-Carlton Hotel Co., LLC*, 2022 WL 2666450, at *5 (S.D. Fla. July 11, 2022) (citation omitted); *see also* 6 Weinstein's Federal Evidence § 1006.05 (2024) (same); *Anderson v. Otis Elevator Co.*, 2012 WL 5493383, at *5 (E.D. Mich. Nov. 13, 2012) (where attorney prepared a summary, attorney was "subject to cross examination" which in

turn placed attorney "squarely at risk of violating the advocate-witness rule, which bars a lawyer from acting as advocate at trial in which the lawyer is likely to be a necessary witness. . . . A summary . . . which is far from self-explanatory and would require significant testimony just to explain its preparation, when prepared by the [] lawyer who presumably will be trying the case, presents potential ethical questions as well.") (internal quotations omitted); 8 Handbook of Fed. Evid. § 1006:1 (9th ed., Nov. 2023) ("While Rule 1006 does not on its face require that an individual responsible for the preparation of the summary, chart, or calculation testify and thus become subject to cross-examination, it is unlikely that a sufficient foundation for accuracy of the exhibit can be laid other than by such a person. Even if possible in theory, introduction of a summary absent the opportunity to cross-examine with regard to its preparation should be prohibited under Rule 403 if not by operation of the rule against hearsay, Rule 802.").

This Court should apply these well-trodden rules here. Fanchiang and Bryan will not take the witness stand at trial to introduce their "summaries," and they will not be subject to cross-examination. The Fanchiang and Bryan Declarations, thus, are premised on an improper warping of Rule 1006. They should be stricken.

**II. The Fanchiang and Bryan Declarations Go Beyond Mere Summarization**

Even setting aside that the Fanchiang and Bryan Declarations are improper attempts to evade cross-examination, they should be stricken for another reason: they go miles beyond summarizing the underlying evidence.

Because "a Rule 1006 summary constitutes substantive evidence," courts reject summaries that "are more than mere summaries" and "replete with inferences, opinions, and arguments by counsel." *Fox*, 2022 WL 2666450, at *5; *see also*, *e.g.*, *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 651 F. Supp. 3d 95, 163 (D.D.C. 2023) ("That summary exhibits admitted

under Rule 1006 cannot contain conclusions or opinions is beyond dispute."); *Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1159-60 (11th Cir. 2004) (holding district court abused discretion in admitting summary under Rule 1006, in part because summary contained "conclusory allegations"; reasoning that "care must be taken to omit argumentative matter in [1006] preparation") (quoting *United States v. Smyth*, 556 F.2d 1179, 1184 n. 12 (5th Cir.1977)); *Stafford v. United States*, 2013 WL 140605, at *11 (M.D. Tenn. Jan. 11, 2013) (where "analysis served to draw inferences and conclusions from the underlying evidence, tying it all together" and included headings, for example, rather than simply summarizing, there was "at least a question of fact as to whether reasonable counsel would and should have objected to the inclusion of these exhibits as [Rule 1006] evidence"); 31 Wright & Miller, Fed. Prac. & Proc. Evid. § 8044 (2d ed., June 2024) ("While parties are permitted to provide a summary of favorable evidence, the summary should not include argumentative or otherwise unfairly prejudicial matter.").

Rule 1006 summaries also cannot include "data manipulations, adjustments, and calculations" without being subject to the standards governing opinion and expert testimony. *Auto Indus. Supplier ESOP v. Ford Motor Co.*, 435 F. App'x 430, 452 (6th Cir. 2011); *see also Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (rejecting the proffered damages calculations as a Rule 1006 summary because they "went beyond the data they summarized and included several assumptions, inferences, and projections about future events, which represent [the proponent's] opinion, rather than the underlying information" and, as such, the calculations were "subject to the rules governing opinion testimony and . . . properly held inadmissible"); *Su v. E. Penn Mfg. Co.*, 2023 WL 2796120, at *4 (E.D. Pa. Apr. 5, 2023) (where Rule 1006 witness made "several judgment calls in editing [a] chart presented . . . It is difficult to fathom how such subjective and scattershot 'methodology' in summarizing evidence is anything other than cherry-picking, and

leads to a conclusion that such restatement and distillation of other pieces of evidence is not a Rule 1006 summary, but rather 'a written argument.'") (quoting *Grajales-Montoya*, 117 F.3d at 361). The Fanchiang and Bryan Declarations violate these requirements.

*Fox* is instructive. There, the court excluded a pair of attorney declarations which purported to be Rule 1006 summaries in support of the plaintiff's motion for class certification. *See* 2022 WL 2666450, at *6. Rejecting the plaintiff's assertion that the attorney declarant did not require any expertise because the underlying documents "speak for themselves," the court found that the declarations in fact "[told the court] what the documents are saying (or, at least what [the attorney declarant] thinks they say)" and were "better characterized as additional arguments by [the plaintiff's] attorney." *Id.* at *5. Moreover, rather than presenting "mere summaries based on a simple review of documents," the attorney declarant "use[d] a specific methodology to come to his conclusions"; the court held that "[s]uch manipulation or use of information to draw conclusions or inferences is not a proper use of a Rule 1006 summary." *Id.* at *6. Accordingly, the attorney declarations were inadmissible. *See id.*

So too here. The Fanchiang and Bryan Declarations likewise go far beyond merely summarizing the underlying evidence—which is not appended to either declaration. Instead, both Declarations synthesize and interpret information in support of Defendants' contentions that certain categories of damages are time-barred and that no conspiracy existed involving fuel surcharges ("FSCs").

To create the Appendices to his Declaration and calculate the "Damages Claimed" in each Appendix, Fanchiang admits that he drew from at least seven sources of information, including expert reports and the (voluminous) backup data for those reports, transactional data, deposition transcripts, price authorities, and two declarations that were not submitted before the fact discovery

cutoff, *i.e.*, the July 8, 2024 Declaration of Brian Goodfriend and the July 15, 2024 Declaration of Matthew Bailey. DA25706 at -07 (Fanchiang Decl. ¶¶ 4-5). Similarly, to create the Attachments to her Declaration and calculate "Damages Claimed" therein, Bryan states she relied on at least six of the same sources of information as Fanchiang (*i.e.*, expert reports and their backup data, transactional data, deposition transcripts, price authorities, and the Goodfriend and Bailey Declarations). DA25422 at -22-23 (Bryan Decl. ¶¶ 4, 7).[2] Fanchiang and Bryan are not damages experts, nor do Defendants suggest that they are. Yet, in order to generate the "Damages Claimed" columns in the applicable Appendices and Attachments to their declarations, Fanchiang and Bryan made calculations based on those various sources to estimate a kind of economic loss to the plaintiffs.

Both Declarations claim their respective Appendices and Attachments are "primarily *derived* from Plaintiffs' expert reports and the supporting data and files." *See* DA25708-09, DA25424-25 (emphasis added). Fanchiang and Bryan provide no details on that derivation, but Plaintiffs' expert reports and the corresponding backup materials (including extensive raw data, statistical models, and regression analyses) reflect significant complex work requiring the retention of experts. Indeed, when Plaintiffs requested the supporting materials for the Fanchiang and Bryan Declarations, they were not provided with source documents or simple arithmetic calculations. Instead, Plaintiffs were provided with nine manually created spreadsheets with more than 6,500

[2] The very types of sources Fanchiang and Bryan claim to have relied upon reflect the inappropriateness of their purported Rule 1006 summaries. The Goodfriend and Bailey Declarations were effectively created for the purpose of supporting certain Fanchiang Appendices and Bryan Attachments. Fanchiang does not actually specify the deposition transcripts he allegedly relied upon for any of his Appendices, leaving Plaintiffs unable to verify any summary of such unidentified materials. Defendants also initially failed to provide any of the expert back-up information allegedly summarized in the Declarations and produced copies only upon Plaintiffs' request.

lines of information and no explanation of how such spreadsheets were compiled. Using these nine spreadsheets, the Fanchiang and Bryan Declaration "calculations" required 27 computer programs using the STATA statistical software used by experts to run regressions. Those 27 programs contained more than 3,200 lines of code which do not just add, subtract, multiply, or divide; they implement significant amounts of data manipulation and judgment on top of whatever judgment was exercised in compiling the spreadsheets that feed into them.[3] Even if Fanchiang and Bryan wrote that code themselves (which they do not contend),[4] as counsel they cannot be effectively cross-examined on it. And even if such submissions to the Court were permissible after the close of expert discovery (which Plaintiffs contend they are not), they must be submitted through a competent expert who can be cross-examined about their work. Expert work product masquerading as a summary is not the sort of calculation permitted by Rule 1006—particularly when done by someone who has not demonstrated any qualifications to render such calculations. *See United States v. Honeywell Int'l Inc.*, 337 F.R.D. 456, 459 (D.D.C. 2020) ("A summary witness is not an expert and is not permitted to express opinions or conclusions."); *Petrone v. Werner Enters., Inc.*, 42 F.4th 962, 969 (8th Cir. 2022) (finding admission of Rule 1006 summary "would not be appropriate" for evidence of damages that could not be calculated without the assistance of expert testimony).

[3] In addition, certain Plaintiffs' experts did not calculate individual damages on a price authority-by-price authority basis, which means that creating the "Damages Claimed" columns in Appendices A through H of the Fanchiang Declaration and Attachments B through E of the Bryan Declaration necessarily would have involved data manipulation beyond mere arithmetic (*i.e.*, allocating the total damages amounts calculated by Plaintiffs' experts to individual price authorities on a relative spend basis).

[4] Indeed, during a meet and confer leading up to this motion, counsel for Defendants admitted that Fanchiang and Bryan did not actually conduct the analyses themselves, nor did they have the specialized knowledge to do so; instead, they relied on expert work, which has not been included in any expert report or disclosure in this case, long after the close of expert discovery.

In addition, certain Appendices to the Fanchiang Declaration (*e.g.*, Appendices E, F, and G) and Attachments to the Bryan Declaration (*e.g.*, Attachments A and D) contain columns identifying allegedly supporting evidence. However, these are not neutral compilations of relevant record evidence. Instead, they reflect *Defendants' view* that the select documents they cited demonstrate that the price authority at issue had a particular characteristic and, thus, support their conclusion that the allegedly corresponding damages in question are not recoverable (even if, as discussed below, Defendants' representations are factually inaccurate). "That is argument, and it has no place in a Rule 1006 summary." *Fox*, 2022 WL 2666450, at *5; *see also Bluiett*, 2009 WL 10685350, at *5 (striking declaration for editorializing certain expenses as "overstated" instead of simply listing the totals of the summarized receipts); *Andean Life, LLC v. Barry Callebaut U.S.A. LLC*, 2021 WL 9563177, at *3 (S.D. Fla. Oct. 12, 2021) (finding declaration inadmissible because it "[made] argumentative conclusions about genuinely disputed issues in [the] matter").[5]

For each of these reasons, the Fanchiang and Bryan Declarations are not admissible Rule 1006 summaries.

## III. The Fanchiang and Bryan Declarations Contain Factual Inaccuracies

The Fanchiang and Bryan Declarations also both suffer from yet another fundamental problem: they do not even accurately reflect the evidence they claim to summarize. These inaccuracies constitute material disputes of fact rendering summary judgment inappropriate in any event. *See* Pls.' Resp. to Defs.' Stmt. of Facts in Supp. of Defs.' Mot. for Summ. Judg. on Pls.'

---

[5] In several instances in Fanchiang Appendix E, Defendants purport to identify certain price authorities, but generally refer to the Goodfriend and Bailey Declarations without providing Bates numbers or sufficient descriptions, making it impossible to ascertain the Plaintiff-specific price authority. *See, e.g.*, DA25838, DA25839, DA25841 (referring to NSRQ 54981, NSQ 73765, NSEC 4350, BNSFQ 111429). Plaintiffs should not have to guess; these references are inadequate and should be disregarded.

Time-Barred Damages Claims ("Pls.' Resp. to Defs.' Am. Pipe Stmt. Of Facts") ¶¶ 17-24; Pls.' Resp. to Defs.' Stmt. Of Facts ¶¶ 7, 10, 45-46, 55. But beyond that, a Rule 1006 summary that does not accurately reflect the underlying evidence is inadmissible. *See United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.D.C. 2014); 2 McCormick On Evidence § 241 (8th ed., July 2022) ("Since a summary admitted under [Rule 1006] is being introduced substantively in place of the matters summarized, the voluminous materials must themselves be shown to be admissible, and courts must be scrupulous in assuring that the summary accurately portrays the contents of the underlying material and that a summary is necessary. . . . [C]ourts guard against summaries that contain inferences and assumptions that are not fully supported by evidence in the record, as well as outright argument."). The proponent of the Rule 1006 summary bears the burden of demonstrating its accuracy. *See* 6 Weinstein's Federal Evidence § 1006.07; *Otis Elevator Co.*, 2012 WL 5493383, at *3.

Defendants fail to meet this burden. The Appendices to the Fanchiang Declaration are rife with factual inaccuracies. For example:

**Fanchiang Appendix A** purports to list price authorities with mileage-based FSCs, but in fact lists various contracts subject instead to a *rate-based* FSC. For instance:

- General Electric's price authority UPC 6406 is identified as having a mileage-based FSC. [redacted]. PX1191, Thrasher (UP) 30(b)(6) Dep., Nov. 30, 2022, at 190-92.

**Fanchiang Appendix C** purports to identify "legacy" contracts entered between March and June 2003, under which certain Plaintiffs sought damages for shipments that occurred after July 1, 2003 (the class period). By way of background, the MDL I Plaintiffs moved to certify a

class made up of "All entities or persons that at any time from July 1, 2003 until December 31, 2008 (the 'Class Period') purchased rate-unregulated rail freight transportation services directly from one or more of the Defendants," and excluded from that proposed class "entities or persons that paid a Fuel Surcharge directly to any of the Defendants *solely pursuant to* a railroad-shipper contract that was (i) entered into before July 1, 2003, *and* (ii) provided for a stand-alone Fuel Surcharge to be paid under a predetermined formula specifically set forth in the contract." MDL I Class Cert. Mot., 3/30/10, Dkt. 339, at 1 (emphases added). Those exclusions are what Defendants purport to identify as "legacy" contracts. But many of the price authorities that Defendants identify in Fanchiang Appendix C were *not* "legacy" contracts within the scope of the proposed class definition exclusions, including because they were not entered before July 1, 2003, or because they do not contain a "stand-alone Fuel Surcharge to be paid under a predetermined formula specifically set forth in the contract." For example:

- Dominion's price authority CSXT 82096 was *not* "entered before July 1, 2003." [redacted] PX1050, P_DOMINION00000556 (R.R. Transp. Cont. CSXT-C-82096) at '556, '561. [redacted] *Id.* at '556 [redacted] PX1051, P_DOMINION00001067 [redacted] at '070-071, '077.
- Anheuser-Busch's price authority CSXT 82361 was also *not* "entered before July 1, 2003"; [redacted]

[redacted]. PX1041, CSXT_FSC_MDLII_00028474 (CSXT - Amendment 2 & Appendix A to Contract - DRAFT), at '474; PX1194, CSXT_FSC_MDLII_00028477 (R.R. Transp. Cont. CSXT-C-82361), at '477; PX1040, CSXFSC000273227 [redacted]

- Conagra's price authority CSXT-53367 [redacted] PX0967, CSXT_FSC_MDLII_00793025 (Amend. 15 to Cont. CSXT-53367), at '390-402 (1989 contract without FSC); *id.* at '171 (December 2001 amendment). CSXT Tariff 8100-Series [redacted]. *See, e.g.*, PX1142, CSXFSC000254436 (CSX Transportation Tariff 8100, Merchandise Fuel Surcharge – (Item 9100)); COF ¶ 210; PX0609 (CSX Resp. to Plaintiffs' First Interrog. and Fourth Req. for Prod. of Docs. Ex. C – Fuel Surcharge Key), at 1 [redacted] Accordingly, CSXT-53367 did not contain an FSC with a "predetermined formula specifically set forth in the contract" and, thus, was not a "legacy" contract.

- International Paper's UPLQ 90155, [redacted], was not a "legacy" contract. PX1191, Thrasher (UP) 30(b)(6) Dep., Dec. 1, 2022, at 433-34 [redacted] Prior to that bid, UP's practice was not to apply an FSC to IP's shipments. PX0938, UPFSC 0556366 (Int'l Paper 2002 Bid Strategy), at '367. [redacted]

[redacted] PX1195, UPFSC_II_00020969 (Int'l Paper Co. Nat'l Rail Bid), at '970. UP and IP negotiated the terms of UPLQ 90155 for months, with negotiations continuing after July 1, 2003; once agreement was reached, the rates went *retroactively* into effect on July 1, 2003. PX1190, UPFSC 0041104 [redacted] PX1053, UPFSC 0153654 [redacted]

*See also* Pls.' Resp. to Defs.' Am. Pipe Stmt. Of Facts ¶ 19.

**Fanchiang Appendix D** purports to list certain price authorities as "legacy" contracts that allegedly were not amended after July 1, 2003 on the dates that Plaintiffs have claimed.[6] However, some of the listed price authorities do not fit the definition of "legacy" contracts per the proposed class definition exclusions, and in other cases, the identified price authorities *were* in fact amended after July 1, 2003 on the date that the Plaintiffs at issue began seeking damages. For instance:

- International Paper's price authorities BNSFQ 111262, BNSFQ 106129, and BNSFQ 110007 were not "legacy" contracts because none of them contained an FSC with a "predetermined formula specifically set forth in the contract" but instead incorporated the FSC from the BNSF Rulebook Series-6100, which changed over time. *See* PX1038, BNSF_II_01373232 (Price Authority: BNSFQ 111262 Implementing Agreement: 66);

[6] Fanchiang Appendix D on its face is ambiguous and could be read to mean that Defendants are contending that Plaintiffs have claimed damages on "legacy" contracts that were *never* amended after July 1, 2003. In their brief, however, Defendants represent that Fanchiang Appendix D identifies supposed "legacy" contracts that were not "actually amended during the *MDL I* class period on the date on which Plaintiffs commence calculating damages." Mot. 13-14.

PX1032, BNSF_II_00987704 (Price Authority: BNSFQ 106129 Implementing Agreement: 20); PX1037, BNSF_II_01139204 (Price Authority: BNSFQ 110007).

- CSXT 42589, a contract between CSX and plaintiff Arkema Inc.'s predecessor company Atofina Chemicals Inc. was not a "legacy" contract because it did not contain a "predetermined formula specifically set forth in the contract." [redacted] PX0958, CSXT_FSC_MDLII_00788042 (CSXT-42589.1-CSXT-DS Division Sheet For Price List CSXT 42589.1), at '042. [redacted] PX0906, BNSF-0032325 (Tariff CSXT 8100 Section XII-B Miscellaneous Provisions), at '325. CSXT 45289 thus contained CSX's conspiratorial fuel surcharge as of June 1, 2003, [redacted]

- MOL price authority QTMOLPSW [redacted] *See* PX1187, P_MOL_000002514 [redacted] PX1184, BNSF-0800624 (Int'l Transp. Agreement MA64, Amendment 2 between BNSF Railway Co. and Mitsui OSK Lines, Limited, and MOL (America) Inc.).

- NYK price authorities XBCENTEX and QTMA 55 (*see* DA25830) [redacted] *See* PX1185, NYK-00000859 [redacted]

*See also* Pls.' Resp. to Defs.' Am. Pipe Stmt. Of Facts ¶ 20.

**Fanchiang Appendix E** erroneously identifies numerous price authorities for certain Plaintiffs as "open offers" extending beyond December 31, 2008, despite evidence to the contrary. For instance:

- Certain price authorities with the Cemex Plaintiffs identified in Fanchiang Appendix E have effective and termination dates that fall within the conspiracy period, and the Cemex Plaintiffs dispute these contracts or price authorities constitute open offers beyond December 31, 2008. *See* DA25833, DA25838, DA25839 (citing BNSF 80022, BNSFQ 112404, UPRR 14.1007, UPRR 3241.1122).

- Price authorities listed for Anheuser-Busch and Domtar were, on the face of such price authorities, confidential rate contracts, subject to a rate-based FSC, that existed only between a rail carrier and that particular shipper, with an effective date during the conspiracy period and an expiration date after the conspiracy period. *Compare* DA25832, DA25833 (citing Anheuser-Busch confidential price authorities BNSFQ 107923 and BNSFQ 109624 and Domtar confidential price authority BNSFQ 109308) *with* PX1033, BNSF_II_01114883 (Price Authority: BNSFQ 107923), PX1036, BNSF_II_01138291 (Price Authority: BNSFQ 109624), PX1035, BNSF_II_01131699 (Price Authority: BNSFQ 109308).

- International Paper's price authority BNSFQ 111262 [redacted] *See* PX1193, BNSF_II_03213061 (Price Authority: BNSFQ 111262 Implementing Agreement: 32).

*See also* Pls.' Resp. to Defs.' Am. Pipe Stmt. Of Facts ¶ 21.

**Fanchiang Appendix F** purports to identify price authorities that expired after December 31, 2008, on which Plaintiffs purportedly continue to seek lingering effects damages following that post-December 31, 2008 expiration. However, Appendix F identifies various price authorities which did not expire when Defendants claim they did. For example:

- Ford's price authority BNSFC 305098 [redacted], as Defendants claim, but rather, [redacted] PX1192, BNSF_II_00000395 (Ford-BNSF Confidential Rail Transp. Master Agreement BNSFC 305098).
- Anheuser-Busch's price authority UPC 38232 [redacted] as Defendants claim. [redacted] PX1196, UPFSC_II_C_00437820 (Union Pacific R.R. Co. - Amended Signed Cont., Amend. 01 To UP-C-38232).

*See also* Pls.' Resp. to Defs.' Am. Pipe Stmt. Of Facts ¶ 22.

**Fanchiang Appendix G** purports to identify price authorities that were amended after December 31, 2008, on which Plaintiffs purportedly continue to seek lingering effects damages following the post-December 31, 2008 amendment. However, Appendix G inaccurately reflects the dates of certain amendments. For example:

- Defendants contend that MOL's MA 64 contract (the contract associated with rate authority QTMOLPSW) [redacted] However, the document Defendants reference in Appendix G, PX1171, BNSF_MDLII_POST2008_000138 (Amend. 4 to Int'l Transp. Agreement MA64), [redacted] PX1172, BNSF-0800636 [redacted]
- Defendants claim that NSSC 89921, a contract between NS and plaintiff Lyondell Chemical Co.'s predecessor company Basell, [redacted] *See* DA25853. To support that claim, Defendants cite NS-MDLII-00029387, which Plaintiffs append as PX0979. [redacted] PX0979, NS-MDLII-00029387 [redacted] at '392–94. [redacted]

[redacted] *Id.* at '394. [redacted] *Id.* at '393. [redacted] *Id.* at '394; *see also id.* at '393 [redacted] indeed, Lyondell's bankruptcy plan was confirmed in 2010. *See Route 21 Assocs. of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75, 81 (S.D.N.Y. 2012) (recognizing Lyondell's bankruptcy plan became effective on April 30, 2010), *aff'd sub nom. In re Lyondell Chem. Co.*, 542 F. App'x 41 (2d Cir. 2013).

*See also* Pls.' Resp. to Defs.' Am. Pipe Stmt. Of Facts ¶ 23.

The Attachments to the Bryan Declaration likewise contain key factual errors and misleading categorizations, including the following:

**Bryan Attachment A** purports to identify price authorities that Defendants claim were entered prior to March 2003 but which nevertheless contained an FSC (which Defendants seek to use to argue that there was no change between their pre-conspiracy and conspiracy period application of FSCs). However, many of these price authorities actually did not have an FSC prior to March 2003, or to the extent one was reflected in the price authority, it was never charged, while others of the identified price authorities were not actually executed prior to March 2003. For example:

- KeyCon's price authority NSC-9124 is listed as being entered into on February 1, 2003, [redacted] PX0999, P_KEYCON00000191 [redacted]

[redacted] It is therefore not a price authority "entered into before March 2003" as Bryan Attachment A claims.

- Atofina Petrochemicals' (a predecessor to Plaintiff TotalEnergies Petrochemicals) price authority CSXT-C-81763 is listed as a pre-March 2003 contract with an FSC. *See* DA25480. However, the Bryan Declaration omits the "Refund Contract" that CSX agreed to, [redacted] *See* PX0910, TOTAL_083731 (Refund Contract, CSXT-C-82684); PX0911, TOTAL_083777 [redacted]

This column of Bryan Attachment A includes numerous other similar errors. *See* Pls.' Resp. to Defs. Stmt. Of Fact ¶ 7.

Bryan Attachment A also purports to identify price authorities that were entered into between July 1, 2003 and December 31, 2008 without an FSC, but in fact identifies many price authorities entered into *before* July 1, 2003 (without an FSC), and which were subject to later non-substantive amendments during the damages period. For example:

- Axiall/Westlake's price authority UP-C-8956 is listed as being purportedly effective during the conspiracy period without an FSC. This is misleading. [redacted] *See* PX1008, P_WESTLAKE00004440 [redacted] PX1009, P_WESTLAKE00004441 [redacted] PX1010, P_WESTLAKE00012703 [redacted]

[redacted] *See* PX1011, Spittler (Axiall/Westlake) Dep., Feb. 17, 2022, at 15-16; 77; 104-105. [redacted] *See* PX1008, P_WESTLAKE00004440 [redacted] PX1009, P_WESTLAKE00004441 [redacted] *See* PX1010, P_WESTLAKE00012703 [redacted], at '711; PX1012, Anderson (Axiall/Westlake) Dep., Sept. 9, 2022, at 237, 244, 247, 304-305 [redacted]

This column of Bryan Attachment A includes numerous other similar errors. *See* Pls.' Resp. to Defs. Stmt. Of Fact ¶ 10.

**Bryan Attachment E**, like Fanchiang Appendix E, purports to list certain price authorities as "open offers" despite evidence showing such price authorities were confidential price authorities offered to one particular shipper or price authorities with clear beginning and expiration dates. *See, e.g.*, DA25673, DA25678, DA25679 (citing Anheuser-Busch confidential price authorities BNSFQ 107923 and BNSFQ 109624 and Domtar confidential price authority BNSFQ 109308).

* * *

The foregoing is not an exhaustive list, and more examples can be found in Plaintiffs' Response to Defendants' Statement of Undisputed Fact at paragraphs 19-20, and in Plaintiffs' Response to Defendants' *American Pipe* Statement of Undisputed Fact at paragraphs 7, 10, 45 and 55. And each illustrates the inappropriateness of the Fanchiang and Bryan Declarations as admissible substantive evidence—particularly where there is no opportunity to cross-examine Fanchiang or Bryan. *See DL v. D.C.*, 2015 WL 6446087, at *5 (D.D.C. Oct. 23, 2015) (finding the defendants' concerns about the accuracy of the proffered Rule 1006 summary to be redressable through "an opportunity to cross-examine the [summary's] authors regarding their methods and the [summary's] alleged errors or contrivances"). Accordingly, the Fanchiang and Bryan Declarations should be stricken.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the Fanchiang Declaration and the Bryan Declaration in their entireties.

Respectfully submitted,

Dated: October 18, 2024

/s/ *Michael D. Hausfeld*
Michael D. Hausfeld
Brian A. Ratner
Sathya S. Gosselin
Melinda R. Coolidge
Swathi Bojedla
Theodore F. DiSalvo
James Hamilton

HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com
bratner@hausfeld.com
sgosselin@hausfeld.com
mcoolidge@hausfeld.com
sbojedla@hausfeld.com
tdisalvo@hausfeld.com
jhamilton@hausfeld.com

*Attorneys for Donnelly Commodities Incorporated, Strates Shows, Inc., American Honda Motor Co., Inc.; BMW Manufacturing Co., LLC and BMW of North America, LLC; Boise Cascade Company; Central Transport International, Inc., Central Transport, Inc., Logistics Insight Corp., and Transport Communications Systems II, L.L.C.; CONSOL Energy, Inc.; CRH Americas, Inc., Preferred Materials, Inc., Ash Grove Cement Company, The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Linde AG; Praxair, Inc.; Lotte Global Logistics (North America), Inc.; Louisiana-Pacific Corporation; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Newell*

/s/ *Sami H. Rashid*
Sami H. Rashid
Richard I. Werder, Jr.
Alexandre J. Tschumi
Alexandria ("Alexee") Deep Conroy
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
samirashid@quinnemanuel.com
rickwerder@quinnemanuel.com
alextschumi@quinnemanuel.com
alexeeconroy@quinnemanuel.com

Alicia Cobb
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Facsimile: (206) 905-7100
aliciacobb@quinnemanuel.com

Viola Trebicka
Jennifer English
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
violatrebicka@quinnemanuel.com
jenniferenglish@quinnemanuel.com

*Attorneys for Plaintiffs Dust Pro, Inc., Olin Corporation, U.S. Magnesium, Alcoa Corporation, Arconic, Inc.; Alcoa Fuels, Inc.; Alcoa Power Generating, Inc.; Eastalco Aluminum Company; Intalco Aluminum, LLC; Reynolds Metal Company; Alcoa*

*Recycling Southeast, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; American Land Holdings of Illinois, LLC; American Land Holdings of Indiana, LLC; Peabody Electricity, LLC; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc., Suzuki Motor USA, LLC; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

*/s/ William J. Blechman*
Richard Alan Arnold
William J. Blechman
Douglas H. Patton
Michael A. Ponzoli
Joshua B. Gray

*World Alumina, LLC; Alumax Mill Products, Inc.; The Amalgamated Sugar Company, LLC; American Rock Salt Company LLC; AP Møller – Mærsk A/S; Mærsk Inc.; Maersk Line UK Limited; Axiall Corporation; Axiall, LLC; Westlake Styrene LLC; Westlake Petrochemicals LLC; Westlake Polymers LLC; Westlake Vinyls Inc.; Westlake Vinyls Company LP; WPT LLC; Westlake Longview Corporation; Westlake Management Services, Inc.; BASF Corporation; BASF Catalysts LLC; Cognis USA LLC; ProCat Testing LLC; California Steel Industries, Inc.; Campbell Soup Supply Company L.L.C.; Campbell Company of Canada; Campbell FoodService Company; Joseph Campbell Company; CertainTeed LLC; Saint-Gobain Ceramics & Plastics, Inc.; Bird Incorporated' CertainTeed Canada, Inc.; CertainTeed Gypsum & Ceiling Manufacturing, Inc.; CertainTeed Gypsum Manufacturing, Inc.; CertainTeed Gypsum NC, Inc.; CertainTeed Gypsum West Virginia, Inc.; CertainTeed Gypsum, Inc.; CertainTeed Ceilings Corporation; CertainTeed Gypsum and Ceilings USA, Inc.; Coffeyville Resources Nitrogen Fertilizers, LLC; ConAgra Brands, Inc. f/k/a/ ConAgra Foods, Inc.; Virginia Electric and Power Company,; Dominion Energy Fuel Services, Inc.; Dominion Energy South Carolina, Inc.; Duke Energy Carolinas, LLC; Duke Energy Florida, LLC; Duke Energy Progress, LLC; Duke Energy Indiana, LLC; Duke Energy Kentucky, LLC; Duke Energy Ohio, LLC; Progress Fuels, LLC; DEGS of Narrows, LLC; Duke Energy Generation Services, Inc.; Eastman Chemical Company; Solutia Inc.; Taminco Corporation; Exxon Mobil Corporation; ExxonMobil Oil Corporation; ExxonMobil Global Services Company; Imperial Oil; Imperial Oil Limited; Canada Imperial Oil Limited; Grain Craft, Inc.; Southeastern Mills, Inc.; Hyundai Motor America, Inc.; IPSCO Tubulars Inc.; IPSCO Koppel Tubulars, LLC; IPSCO Tubulars*

KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
E-mail: raa@knpa.com
wblechman@knpa.com
dpatton@knpa.com
mponzoli@knpa.com
jgray@knpa.com

*Attorneys for Plaintiffs Cemex, Inc., Clearwater Paper Corporation, The Goodyear Tire & Rubber Company, Kraft Heinz Foods Company, Heidelberg Materials US, Inc. (f.k.a. Lehigh Hanson, Inc.), PotlatchDeltic Corporation, Rayonier Advanced Materials Inc., Sterling Steel Company LLC., UPM-Kymmene, Inc., and Unilever ASCC AG*

*/s/ Jason M. Powers*

Jason M. Powers
VINSON & ELKINS L.L.P.
845 Texas Avenue, Suite 4700
Houston, Texas 77002
(713) 758-2522
(713) 615-5809 (Facsimile)
jpowers@velaw.com

Craig P. Seebald (D.C. Bar No. 438968)
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500
(202) 639-6604 (Facsimile)
cseebald@velaw.com

*/s/ John H. LeSeur*

John H. LeSeur (D.C. Bar No. 293357)
Frank J. Pergolizzi (D.C. Bar No. 405174)
Peter A. Pfohl (D.C. Bar No. 456854) Daniel M. Jaffe (D.C. Bar No. 461185) SLOVER & LOFTUS LLP
1828 L Street, NW
Suite 1000

*(KY), LLC; TMK NSG, LLC; Keystone Fuels, LLC; Conemaugh Fuels, LLC; Kia Motors America, Inc.; Lafarge North America, Inc., Holcim (US) Inc.; Aggregate Industries Management, Inc.; Aggregate Industries - SWR, Inc.; Aggregate Industries Northeast Region, Inc.; Aggregate Industries - MWR, Inc.; Bardon, Inc. (dba Aggregate Industries Mid-Atlantic Region); Cement Transport, LTD; Geocycle LLC; Systech Environmental Corporation; Lafarge PNW, Inc.; Lattimore Materials Corp.; Mercedes-Benz USA, LLC; Motiva Enterprises LLC; NLMK USA, Inc.; NLMK Pennsylvania, LLC; Sharon Coating, LLC; NOVA Chemicals, Inc.; NOVA Chemicals Corporation; NOVA Chemicals (Canada) Ltd.; Old World Industries, LLC; PCS Sales (USA), Inc.; Agrium (U.S.), Inc.; PCS Phosphate Company, Inc.; White Springs Agricultural Chemicals, Inc; PCS Nitrogen, Inc.; Phillips 66 Company; Shell Chemical LP, Shell Chemicals Canada (f/k/a Shell Chemicals Canada Ltd.) by its managing partner Shell Canada Ltd.; Pennzoil-Quaker State Company (formerly d/b/a SOPUS Products); Shell Trading (US) Company; Equilon Enterprises LLC (d/b/a Shell Oil Products US or SOPUS); Talen Energy Supply, LLC f/k/a PPL Energy Supply, LLC, on behalf of itself and its subsidiaries and affiliates; Talen Energy Marketing, LLC f/k/a PPL EnergyPlus, LLC; Talen Generation, LLC f/k/a PPL Generation, LLC (successor in interest to PPL Coal Supply, LLC); Talen Montana, LLC f/k/a PPL Montana, LLC; Martins Creek, LLC f/k/a PPL Martins Creek, LLC; Brunner Island, LLC f/k/a PPL Brunner Island, LLC; Montour, LLC f/k/a PPL Montour, LLC; United Parcel Service, Inc., an Ohio Corporation; UPS Ground Freight, Inc.; Vulcan Materials Company; Legacy Vulcan, LLC; Florida Rock Industries, Inc.; Atlantic Granite LLC; CalMat Co.; Vulcan Aggregates Company, LLC; Vulcan Construction Materials, LLC; Fulton*

Washington, D.C. 20036
(202) 347-7170
(202) 347-3619 (Facsimile)
jhl@sloverandloftus.com
fjp@sloverandloftus.com
pap@sloverandloftus.com
dmj@sloverandloftus.com

*Attorneys for Plaintiffs AK Steel Corporation; Bel-Ray Company, LLC; Calumet Branded Products, LLC; Calumet Cotton Valley Refining, LLC; Calumet Dickinson Refining, LLC; Calumet Karns City Refining, LLC; Calumet Montana Refining, LLC; Calumet Operating, LLC; Calumet Princeton Refining, LLC; Calumet Refining, LLC; Calumet Shreveport Refining, LLC; Calumet Specialty Products Partners, L.P.; CF Industries, Inc.; Dairyland Power Cooperative; Dyno Nobel, Inc.; Entergy Arkansas, LLC; Entergy Louisiana, LLC; Constellation Energy Generation, LLC, f/k/a Exelon Generation Company, LLC; Kurlin Company, LLC; NorFalco LLC; NorFalco Sales; North Star BlueScope Steel LLC; Steelscape, LLC; and Wisconsin Electric Power Company*

/s/ *David C. Eddy*
David C. Eddy (DC Bar No. 250712)
Dennis J. Lynch (admitted *pro hac vice*)
Travis C. Wheeler (DC Bar No. 484023)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, S.C. 29201
Tel: (803) 771-8900
deddy@nexsenpruet.com
dlynch@nexsenpruet.com
twheeler@nexsenpruet.com

*Attorneys for Plaintiffs Domtar Corporation; Ford Motor Company; South Carolina Public Service Authority; Anheuser-Busch, LLC; Anheuser-Busch Companies, LLC; Nestlé Purina PetCare Company; and Nestlé USA, Inc.*

*Concrete Company, LLC; McCartney Construction Company, Inc.; Calhoun Asphalt Company, Inc.; Harper Brothers, LLC; Virginia Concrete Company, LLC; Azusa Rock, LLC; Triangle Rock Products, LLC; Aggregates USA, LLC; Chem-Marine Corporation of South Carolina; DMG Equipment Company, LLC; R. C. Smith Companies, LLC; Aggregates USA (Macon), LLC; Aggregates USA (Savannah), LLC; Aggregates USA (Sparta), LLC; WestRock Company; WestRock Coated Board, LLC; WestRock Virginia, LLC; WestRock Texas, L.P.; WestRock CP, LLC; WestRock Southeast, LLC; WestRock Northwest, LLC; WestRock Mill Company, LLC; WestRock – Solvay, LLC; WestRock Minnesota Corporation; WestRock Kraft Paper, LLC; WestRock Container, LLC; WestRock Longview, LLC; Smurfit-Stone Container Canada Inc.; The J.M. Smucker Company; General Motors LLC; Kennecott Utah Copper LLC; and U.S. Borax Inc.*

/s/ *Joseph M. Vanek*
Joseph M. Vanek
David P. Germaine (admitted *pro hac vice*)
Martin Amaro (admitted *pro hac vice*)
SPERLING & SLATER, LLC
55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
jvanek@sperling-law.com
dgermaine@sperling-law.com
mamaro@sperling-law.com

*Attorneys for Plaintiff Mitsubishi Motors North America, Inc.*

/s/ *Raj Mathur*
Geoffrey L. Harrison
Shawn Raymond
Adam Carlis
Alexandra Foulkes Grafton
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
gharrison@susmangodfrey.com
sraymond@susmangodfrey.com
acarlis@susmangodfrey.com
afoulkesgrafton@susmangodfrey.com

Raj Mathur
Scott Glass
SUSMAN GODFREY, L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: 212-336-8330
rmathur@susmangodfrey.com
sglass@susmangodfrey.com

*Attorneys for Donnelly Commodities Incorporated, Strates Shows, Inc., Arkema Inc.; ArrMaz Products Inc.; Boise Cascade Company; CONSOL Energy, Inc.; CRH Americas, Inc., Preferred Materials, Inc., Ash Grove Cement Company, The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Lotte Global Logistics (North America), Inc.; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and*

/s/ *Sandra L. Brown*
Sandra L. Brown (D.C. Bar No. 452988)
David A. Wilson (D.C. Bar No. 430400)
David E. Benz (D.C. Bar No. 485868)
Joe Smith (D.C. Bar. No. 1010223)
THOMPSON HINE LLP
1919 M Street N.W. Suite 700
Washington, D.C. 20036
Tel: (202) 331-8800
Fax: (202) 331-8330
sandra.brown@thompsonhine.com
david.wilson@thompsonhine.com
david.benz@thompsonhine.com
joe.smith@thompsonhine.com

Robert F. Ware
Jennifer S. Roach
Caitlin R. Thomas
THOMPSON HINE LLP
127 Public Square, Suite 3900
Cleveland, Ohio 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
rob.ware@thompsonhine.com
jennifer.roach@thompsonhine.com
caitlin.thomas@thompsonhine.com

*Attorneys for Plaintiffs Alabama Power Company, Georgia Power Company and Mississippi Power Company; Northern Indiana Public Service Company LLC; and Union Electric Company d/b/a Ameren Missouri and Ameren Development Company*

/s/ *Kristopher S. Davis*
Kristopher S. Davis (CA #193452)
George T. Caplan (CA #043821)
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel: (310) 203-4000
Fax: (310) 229-1285
kristopher.davis@faegredrinker.com
george.caplan@faegredrinker.com

*Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; American Land Holdings of Illinois, LLC; American Land Holdings of Indiana, LLC; Peabody Electricity, LLC; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc., Suzuki Motor USA, LLC; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

William L. Roberts (MN # 0212763)
Jonathan W. Dettmann (MN # 0265032)
Craig S. Coleman (MN # 0325491)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Tel: (612) 766-7000
Fax: (612) 766-1600
william.roberts@faegredrinker.com
jon.dettmann@faegredrinker.com
craig.coleman@faegredrinker.com

*Attorneys for Plaintiffs American Zinc Recycling Corp., Ascend Performance Materials Operations LLC, Ingredion Incorporated, The Heritage Group dba Asphalt Refining Company, Asphalt Materials, Inc., Bituminous Materials and Supply, L.P., Emulsicoat, Inc., Laketon Refining Corporation, Heritage Environmental Services, LLC, Rineco Chemical Industries, LLC, Heritage Transport, LLC, Pizo Operating Company, LLC, and CHS Inc.*

*/s/ Kirk T. May*

Kirk T. May
William D. Beil
GM LAW PC
1201 Walnut, Suite 2000
Kansas City, Missouri 64106
PH: 816-471-7700
FX: 816-471-2221
Email: kirkm@ gmlawpc.com
Email: billb@ gmlawpc.com

*Attorneys for Plaintiffs Lansing Ethanol Services, LLC, et al.*

*/s/ David J. Lender*

David J. Lender (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*)
Luna Barrington (admitted *pro hac vice*)
Sarah Ryu (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Fax: (212) 310-8007
david.lender@weil.com
eric.hochstadt@weil.com

luna.barrington@weil.com
sarah.ryu@weil.com

*Attorneys for Plaintiffs Cleveland-Cliffs Steel LLC (f/k/a ArcelorMittal USA LLC) and ArcelorMittal Dofasco G.P.*

/s/ *Benjamin D. Brown*
Benjamin D. Brown (D.C. Bar. No. 495836)
Robert A. Braun (D.C. Bar No. 1023352)
Sabrina Merold (D.C. Bar No. 1738065)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue,
N.W. Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

*Attorneys for Plaintiffs Kawasaki Kisen Kaisha, Ltd., "K" Line America, Inc., Yang Ming Marine Transport Corp., Yang Ming (America) Corp., Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., Mitsui O.S.K. Lines, Ltd., and MOLAM Legacy, Inc.*

/s/ *James P. Denvir*
James P. Denvir (D.C. Bar No. 284554)
Scott E. Gant (D.C. Bar No. 455392)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Phone 202 237 2727
Fax 202 237 6131
jdenvir@bsfllp.com
sgant@bsfllp.com

Stuart H. Singer (*pro hac vice*)
James Grippando (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP

/s/ *Michael Schaper*
Edward D. Hassi (D.C. Bar No. 1026776)
Leah S. Martin (D.C. Bar No. 1029757)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383 8118
E-mail: thassi@debevoise.com
lmartin@debevoise.com

Michael Schaper
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Tel: (212) 909 6000
Fax: (212) 909 6836
mschaper@debevoise.com

*Attorneys for Plaintiffs Toyota Motor Sales, U.S.A., Inc. and Toyota Canada Inc.*

/s/ *Nathan P. Eimer*
Nathan P. Eimer (*pro hac vice*)
Daniel D. Birk (*pro hac vice*)
Susan Razzano (*pro hac vice*)
Benjamin Waldin (D.D.C. Bar No. IL0061)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com
dbirk@eimerstahl.com
srazzano@eimerstahl.com

401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
jgrippando@bsfllp.com

*Attorneys for Plaintiffs Domino Foods, Inc., E.I. du Pont de Nemours and Company, and The General Electric Company*

*/s/ Frank M. Lowrey IV*
Frank M. Lowrey IV (*pro hac vice*)
lowrey@bmelaw.com
Tiana S. Mykkeltvedt (*pro hac vice*)
mykkeltvedt@bmelaw.com
Matthew R. Sellers
sellers@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street, N.E., Suite 3900
Atlanta, Georgia 30309
Tel: (404) 881-4100
Fax: (404) 881-4111

*Attorneys for Plaintiff The General Electric Company*

*/s/ Michael C. Dell'Angelo*
Michael C. Dell'Angelo
Michael J. Kane
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bm.net
mkane@bm.net
mwallin@bm.net

Daniel J. Walker
BERGER MONTAGUE PC
1001 G Street, NW
Suite 400 East
Washington, D.C. 20001
(202) 559-9740
dwalker@bm.net

bwaldin@eimerstahl.com

Ryan J. Walsh (D.C. Bar No. 1029407)
EIMER STAHL LLP
10 East Doty Street
Suite 800
Madison, WI 53703
Telephone: (608) 441-5798
Fax: (608) 441-5707
Email: rwalsh@eimerstahl.com

*Attorneys for Plaintiffs The Dow Chemical Company, Union Carbide Corporation, Amerchol Corporation, Umetco Minerals Corporation, Gerdau Ameristeel Corporation, Gerdau Ameristeel US Inc., Gerdau Ameristeel Perth Amboy Inc., Gerdau Ameristeel Sayreville Inc., Chaparral Steel Company, Chaparral Steel Midlothian, LP, Chaparral (Virginia) Inc., Sheffield Steel Corporation, Gerdau Macsteel, Inc., International Paper Company, GenOn Energy Management, LLC, GenOn Power Midwest LP, and GenOn REMA, LLC*

*/s/ Daniel B. Goldman*
Daniel B. Goldman
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
dgoldman@kramerlevin.com

*Attorneys for Plaintiffs The Procter & Gamble Company, The Procter & Gamble Distributing LLC, The Procter & Gamble Manufacturing Company, The Procter & Gamble Paper Products Company*, *Tronox Inc., and Tronox US Holdings Inc.*

Sophia Rios
BERGER MONTAGUE PC
8241 La Mesa Blvd.
La Mesa, CA 91942
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

*Attorneys for Plaintiffs High Level Management Venturers, Century Aluminum Company, Century Aluminum of Kentucky, GP, NSA, GP, Century Aluminum of West Virginia, Inc., Century Aluminum of South Carolina, Inc., Andre M. Toffel, Trustee, on behalf of New Wei, Inc., et al., jointly administered bankruptcy estates, and ABF Freight System Inc.*

*/s/ Leo D. Caseria*
Leo D. Caseria (DC Bar No. 1655936)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1925
Fax (202) 747-1901
lcaseria@sheppardmullin.com

Helen C. Eckert
Joy O. Siu
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
heckert@sheppardmullin.com
jsiu@sheppardmullin.com

*Attorneys for Plaintiff CalPortland Company*

*/s/ Ronald J. Aranoff*
Ronald J. Aranoff
Fletcher W. Strong
William J. Hagan
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
raranoff@wmd-law.com
fstrong@wmd-law.com
whagan@wmd-law.com

*Attorneys for Plaintiff Air Products and Chemicals, Inc.*

*/s/ Conte C. Cicala*
Conte C. Cicala (CA Bar No. 173554)
Clyde & Co US LLP
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
conte.cicala@clydeco.us

*Attorneys for Plaintiff Mitsui O.S.K. Lines, Ltd. and MOLAM Legacy, Inc.*

/s/ Roman M. Silberfeld
Roman M. Silberfeld
D.D.C. Bar ID: CA00002
ROBINS KAPLAN LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Email: rsilberfeld@robinskaplan.com

Stephen P. Safranski (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
Email: ssafranski@robinskaplan.com

*Counsel for Plaintiffs Oxbow Carbon & Minerals LLC, Oxbow Mining, LLC, Oxbow Midwest Calcining LLC, Oxbow Calcining LLC, and Terror Creek LLC*

**Certificate of Service**

The undersigned certifies that on October 18, 2024, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic filing system and was served by secure transfer on all counsel of record in the above-captioned matters.

*/s/ Sarah Ryu*
Sarah Ryu