**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION<br>This document relates to: ALL CASES | MDL Docket No. 1869<br>Misc. No. 07-0489 (BAH/GMH) |
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br>This document relates to: ALL CASES | MDL Docket No. 2925<br>Misc. No. 20-8 (BAH) |
| OXBOW CARBON & MINERALS LLC, et al.,<br>Plaintiffs,<br>v.<br>UNION PACIFIC RAILROAD COMPANY, et al.,<br>Defendants. | No. 11-cv-1049 (BAH/GMH)<br>**Public Version**<br>**Oral Argument Requested** |

**Plaintiffs' Reply Memorandum of Law in Further Support of Motion to Strike the Declarations of Eric Fanchiang and Kelsey Bryan**

# Table of Contents

**Contents**


**Table of Contents** ........ i

Introduction ........ 1

Argument ........ 2

I. The Fanchiang and Bryan Declarations Must Be Stricken as Improper Rule 1006 Summaries at the Summary Judgment Stage ........ 2

II. The Fanchiang and Bryan Declarations Are Not Proper Under Rule 1006 ........ 6

III. The Fanchiang and Bryan Declarations Contain Factual Inaccuracies ........ 10

A. The Parties' Disputes As to the Legal and Factual Categorization of Price Authorities Demonstrates the Impropriety of the Fanchiang and Bryan Declarations ........ 12

B. Plaintiffs Have Not Misrepresented the Record ........ 16

Conclusion ........ 19

## Table of Authorities

**Page(s)**

**Cases**

*Andean Life, LLC v. Barry Callebaut U.S.A. LLC*,
2021 WL 9563177 (S.D. Fla. Oct. 12, 2021)....8

*Anderson v. Otis Elevator Co.*,
2012 WL 5493383 (E.D. Mich. Nov. 13, 2012)....5

**Auto Indus. Supplier Emp. Stock Ownership Plan v. Snapp Sys., Inc*,
2008 WL 5383372 (E.D. Mich. Dec. 23, 2008)....4

*United States v. Cameron-Ehlen Group, Inc.*,
2023 WL 36174 (D. Minn. Jan. 4, 2023)....4

*Ctr. for Food Safety v. Perdue*,
2022 WL 4793438 (N.D. Cal. Sept. 30, 2022)....8

*Curran v. Aetna Life Ins. Co.*,
2016 WL 3843085 (S.D.N.Y. July 11, 2016)....16

*Dahlberg v. MCT Transp., LLC*,
571 Fed. App'x 641 (10th Cir. 2014)....10

*United States v. Fahnbulleh*,
752 F.3d 470 (D.D.C. 2014)....5

*Fed. Deposit Ins. Corp. v. Bank of Am., N.A.*,
2024 WL 1076741 (D.D.C. Mar. 8, 2024)....5

**First Fin. Bank, N.A. v. Bauknecht*,
71 F. Supp. 3d 819 (C.D. Ill. 2014)....8, 9

*Fox v. Ritz-Carlton Hotel Company, LLC*,
2022 WL 2666450 (S.D.Fla. Jul. 11, 2022)....7, 8

*Garside v. Osco Drug, Inc.*,
895 F.2d 46 (1st Cir.1990)....3

*United States v. Grajales-Montoya*,
117 F.3d 356 (8th Cir. 1997)....6

*United States ex. rel. Heller v. Guardian Pharm. of Atlanta, LLC*,
2023 WL 11909741 (N.D. Ga. Sept. 30, 2023)....4

*United States v. Hemphill*,
514 F.3d 1350 (D.C. Cir. 2008) .......... 9

*United States v. Honeywell Int'l Inc.*,
337 F.R.D. 456 (D.D.C. 2020) .......... 9

*Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Corp.*,
853 F. Supp. 2d 1094 (D. Colo. 2012) .......... 12

*Jankovic v. Int'l Crisis Grp.*,
72 F. Supp. 3d 284 (D.D.C. 2014) .......... 2

*United States v. Joseph*,
108 F.4th 1273 (10th Cir. 2024) .......... 9

*Londrigan v. Fed. Bureau of Investigation*,
670 F.2d 1164 (D.C. Cir. 1981) .......... 3

*United States v. Lynch*,
735 F. App'x 780 (3d Cir. 2018) .......... 4, 10

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
2006 WL 5242377 (D. Nev. Mar. 6, 2006), *aff'd*, 523 F.3d 1051 (9th Cir. 2008) .......... 3

*Nw. Env't Advocs. v. United States Env't Prot. Agency*,
2024 WL 3888695 (D. Or. Aug. 20, 2024) .......... 7

*Peat, Inc. v. Vanguard Rsch. Inc.*,
378 F.3d 1154 (11th Cir. 2004) .......... 4

*In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig.*,
624 F. Supp. 1212 (S.D. Ohio 1985) .......... 12

*Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Lab'ys*,
2013 WL 12140998 (N.D. Iowa Aug. 13, 2013) .......... 4

*Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.*,
153 F. Supp. 3d 363 (D.D.C. 2016) .......... 12

*United States v. Shulick*,
18 F.4th 91 (3d Cir. 2021) .......... 8

**Sims v. Lakeside Sch.*,
2008 WL 189674 (W.D. Wash. Jan. 17, 2008) .......... 7, 12

**Su v. E. Penn Mfg. Co.*,
2023 WL 2796120 (E.D. Pa. Apr. 5, 2023) .......... 10

*Wasserman v. Rodacker*,
2007 WL 274748 (D.D.C. Jan. 29, 2007) .......... 3

**Other Authorities**

Federal Rule of Civil Procedure 56 .......... 2, 5

Federal Rule of Civil Procedure 26 .......... 10

Federal Rule of Evidence 1006 .......... *passim*

## Introduction

Defendants' opposition (the "Opposition" or "Opp.") to Plaintiffs' Motion to Strike the Declarations of Eric Fanchiang and Kelsey Bryan[1] makes a host of admissions demonstrating that both declarations should be stricken. *First*, Defendants admit that the Fanchiang and Bryan Declarations are irrelevant because the Declarations "do not purport to present facts that are material to the resolution of the legal issues or relief sought in Defendants' motion for summary judgment." Opp. at 12. *Second*, Defendants admit that the Fanchiang and Bryan Declarations represent the output of voluminous data calculations prepared by an expert which Defendants seek to instead introduce through their attorneys. Defendants admit that this expert parsed through and categorized data, to produce the numbers that are reflected in the Fanchiang and Bryan Declarations, in consultation with other record evidence. But they have not identified this expert let alone offered them up for cross-examination on the bases and methodology for this unknown expert's calculations and conclusions. *Third*, Defendants make clear that the Fanchiang and Bryan Declarations do not represent, as Defendants have tried to claim, simple summaries of the price authorities cited therein, but rather they are based on Defendants' subjective interpretations of expert and fact testimony and documents, and represent Defendants' subjective conclusions as to which damages Plaintiffs may recoup. *Fourth*, Defendants admit the Fanchiang and Bryan Declarations are inaccurate—withdrawing various price authorities from both based on the limited exemplar inaccuracies set forth in the Motion.

In sum, the Fanchiang and Bryan Declaration are not summaries properly admissible under Rule 1006, and do not constitute record evidence establishing facts for purposes of summary

---

[1] *See* MDL I ECF No. 1197, MDL II ECF No. 1019, Oxbow ECF No. 328 (the "Motion" or "Mot."). All capitalized terms not define herein shall have the meaning ascribed to them in the Motion.

judgment. Therefore, they should be stricken.

## Argument

### I. The Fanchiang and Bryan Declarations Must Be Stricken as Improper Rule 1006 Summaries at the Summary Judgment Stage

Defendants first argue that the Fanchiang and Bryan Declarations cannot be stricken as impermissible Rule 1006 summaries, and should instead be found admissible under Federal Rule of Civil Procedure 56(c)(4). But Defendants have not shown the Declarations satisfy the requirements of Rule 56(c)(4), which include showing that the declaration is made on personal knowledge, and that the declarant is competent to testify. *See* Opp. at 2.

Defendants rely on cases declining to strike declarations under Rule 56, but these cases all involved declarations or evidence that the proponent had proved were otherwise admissible. *See* Opp. at 2-3 (citing *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176, 180 (D.D.C. 2005) (relevant declaration was not improper Rule 1006 summary and was based on personal knowledge); *Ecological Rts. Found. v. U.S. Env't Prot. Agency*, 541 F. Supp. 3d 34, 51 (D.D.C. 2021) (same); *Jones v. United States*, 934 F. Supp. 2d 284, 289 (D.D.C. 2013) (defendant introduced trial transcript on summary judgment and demonstrated its authenticity)). The Fanchiang and Bryan Declarations are not otherwise admissible, and fail to comply with Rule 56(c)(4) in at least four respects, each of which is sufficient to support striking the Declarations.

First, as Defendants admit, the Fanchiang and Bryan Declarations "do not purport to present facts that are material to the resolution of the legal issues or relief sought in Defendants' motion for summary judgment." Opp. at 12. The Fanchiang and Bryan Declarations are thus *definitionally irrelevant* to Defendants' motions for summary judgment. This Court has no basis to consider, at the summary judgment stage, materials that Defendants have conceded are not material to their summary judgment motions. *See Jankovic v. Int'l Crisis Grp.*, 72 F. Supp. 3d

284, 318 (D.D.C. 2014) ("[T]he Court may strike declarations if they are irrelevant or unfairly prejudicial."); *Wasserman v. Rodacker*, 2007 WL 274748, at *2 (D.D.C. Jan. 29, 2007) ("Because defendants have shown no relevant purpose for using exhibits 3 through 8 at this stage in the litigation, those exhibits will be stricken.").

Next, the Fanchiang and Bryan Declarations are not made on personal knowledge. The "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented." *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981). Defendants cannot credibly claim that Mr. Fanchiang and Ms. Bryan have personal knowledge regarding the work performed by the unidentified experts. Instead, Defendants try a sleight of hand, suggesting that Mr. Fanchiang and Ms. Bryan have "personal knowledge" because they "*supervised* Defendants' expert's compiling of … information," Opp. at 10 (emphasis added)—which according to Defendants' Opposition involved "isolat[ing] specific categories of damages in Plaintiffs' experts' damages data," "for certain price authorities for certain time periods," *id.* at 10 & n.7, and "organiz[ing]" them "into categories," *id.* at 8. But Mr. Fanchiang and Ms. Bryan did not (and could not) do this work themselves—indeed, during meet and confers prior to the filing of this motion, Defendants admitted that Mr. Fanchiang and Ms. Bryan do not have the expertise that would allow them to run the computer programs necessary to perform the calculations necessary to produce the damage estimates reflected in the Appendices and Attachments.

Further, a lay witness cannot provide testimony in substitute of an expert. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990) ("A third party's description of an expert's supposed testimony is not suitable grist for the summary judgment mill."); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 2006 WL 5242377, at *9 (D. Nev. Mar. 6, 2006), *aff'd*, 523 F.3d 1051 (9th Cir. 2008) (finding lay witness did not know the underlying formulas supporting calculation

and therefore the "subject matter[] fail[ed] to be based on [his] perception" and was inadmissible). Mr. Fanchiang and Ms. Bryan's alleged supervision of the unidentified expert does not provide them with the personal knowledge of the summary's preparation, as needed under Rule 1006. To permit them to testify as to the personal knowledge of an expert would result in Mr. Fanchiang and Ms. Bryan serving as "summary witness[es] of a summary witness, a role that is not helpful to the litigation." *See Auto Indus. Supplier Emp. Stock Ownership Plan v. Snapp Sys., Inc.*, 2008 WL 5383372, at *5-6 (E.D. Mich. Dec. 23, 2008) (finding declarant who summarized findings of expert was not a proper summary witness as the declarant could not "explain how all the dollar figures [in the summary] were derived").

Third, and relatedly, neither Mr. Fanchiang nor Ms. Bryan is competent to testify on the matters in their respective declarations. As set forth in the Motion, both are attorneys and cannot testify as to facts in the case. *See* Mot. at 2-3.[2] Moreover, Mr. Fanchiang and Ms. Bryan cannot testify as to the conclusions and calculations made by an expert, let alone an expert that Defendants *have not even identified*. *See Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Lab'ys*, 2013 WL 12140998, at *22-23 (N.D. Iowa Aug. 13, 2013) (noting that requirement the Rule 1006 summary preparer be available for cross-examination and not be an attorney trying the case is "a critical requirement for fair application of the rule"); *see also Peat, Inc. v. Vanguard Rsch. Inc.*, 378 F.3d

[2] Defendants rely on *United States v. Cameron-Ehlen Group, Inc.*, 2023 WL 36174, at *18 (D. Minn. Jan. 4, 2023) for the proposition that a lawyer may be a declarant, but that case is distinguishable because there the declarant was actually involved in the preparation of the summaries. Here, Defendants admit that an outside expert, rather than Mr. Fanchiang or Ms. Bryan, prepared the summaries. Defendants' cites to *United States v. Lynch*, 735 F. App'x 780, 786 (3d Cir. 2018) and *United States ex. rel. Heller v. Guardian Pharm. of Atlanta, LLC*, 2023 WL 11909741, at *11 (N.D. Ga. Sept. 30, 2023) are distinguishable as in both cases separate witnesses were available to testify as to the relevant documents in the summaries. Defendants have not made such a proffer here, and any proffer would far too late at the tail end of the summary judgment process.

1154, 1160 (11th Cir. 2004) (finding summary based on statements made out of court by persons other than the declarant was not admissible due to hearsay concerns) (cited in Opp. at 8).[3] While Defendants argue that they need not make Mr. Fanchiang and Ms. Bryan available for cross-examination at the summary judgment stage, a purported Rule 1006 declaration may still be stricken at the summary judgment stage because the attorney-declarant would not be able to testify if the case were to proceed to the trial stage. *See Anderson v. Otis Elevator Co.*, 2012 WL 5493383, at *5 (E.D. Mich. Nov. 13, 2012). Defendants' admissions undercut any notion that Mr. Fanchiang or Ms. Bryan are competent to testify on the findings of an unidentified expert.

Finally, Defendants have not satisfied their burden to prove that they can introduce admissible versions of the Fanchiang and Bryan Declarations at trial. The 2010 commentary to Rule 56 clarifies that "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *See also Fed. Deposit Ins. Corp. v. Bank of Am., N.A.*, 2024 WL 1076741, at *2–3 (D.D.C. Mar. 8, 2024). As described *infra* at 6-10, the Fanchiang and Bryan Declarations are not admissible under Rule 1006, and therefore cannot be admissible at trial. Defendants argue that they "do not intend to introduce the [Fanchiang and Bryan] Declarations in this form at any trial" (Opp. at 6) and would instead rely on "underlying admissible evidence." Opp. at 6. However, Defendants have not explained what "form" they would introduce them in, nor identified what the specific "underlying evidence" is that Defendants would rely upon, and therefore have not satisfied their burden to explain the admissible form they

[3] Defendants rely on *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.D.C. 2014) as support for the proposition that a declarant can testify as to the work conducted by those under his or her supervision, but in *Fahnbulleh*, the declarant was a chief financial officer who supervised auditors under his control, rather than an attorney supervising an unidentified outside expert. Defendants have not and cannot offer any evidence suggesting that either Mr. Fanchiang or Ms. Bryan directed the expert in his work.

expect. Defendants do not identify the specific evidence they expect to rely on in the Opposition and, to the extent Defendants rely on the price authorities themselves, those documents are insufficient to support Defendants' classifications of price authorities or their unidentified expert's damages calculations.

## II. The Fanchiang and Bryan Declarations Are Not Proper Summaries Under Rule 1006

Defendants' Opposition also makes clear that there is no valid argument for the admissibility of the Fanchiang and Bryan Declarations under Rule 1006. Defendants effectively concede in the Opposition that the Fanchiang and Bryan Declarations make legal conclusions and factual inferences, summarize work product outside of Mr. Fanchiang or Ms. Bryan's personal knowledge, and reflect the results of complex calculations beyond the scope of Rule 1006.

First, Defendants' Opposition lays bare the Fanchiang and Bryan Declarations' subjective interpretations of the record, rendering the Declarations inadmissible under Rule 1006. *See* Mot. at 3-4; *see also United States v. Grajales-Montoya*, 117 F.3d 356 (8th Cir. 1997) (finding purported Rule 1006 summary which was tantamount to "written argument" was inadmissible).[4] Defendants claim they categorized the price authorities based on "the face" of the documents (*see* Opp. at 5, 8, 11, 12, 17), but their arguments belie this position. For instance, Defendants argue that "Dr. Marx failed to substantiate the amendment date for the price authorities in Fanchiang Appendix D" to Defendants' satisfaction. Opp. at 20. In other words, Defendants included price authorities

[4] Defendants attempt to distinguish *United States v. Grajales-Montoya*, 117 F.3d 356 (8th Cir. 1997) on the basis that in *Grajales* the underlying documents were admitted and could be referred to while, here, Defendants have not submitted the documents underlying the Fanchiang and Bryan Declarations. However, Defendants' choice to refrain from submitting the underlying documents does not render the Fanchiang and Bryan Declarations admissible under Rule 1006. Indeed, by relying on inaccurate and admittedly irrelevant summaries of evidence that Defendants have chosen not to submit, Defendants are depriving the Court of the ability to evaluate their purported summaries.

on Fanchiang Appendix D, which purports to represent certain "legacy" contracts, based on Defendants' subjective interpretation of Dr. Marx's conclusions and whether Defendants agreed that Dr. Marx's conclusions were "substantiated," rather than anything on the face of a given price authority.[5] Similarly, Defendants admit that their classification of documents as "open offers" is premised on Defendants' interpretation of deposition testimony. *See* Opp. at 17-18.

Defendants claim that they offered the Declarations "*to demonstrate examples* based on the face of Plaintiffs' price authority documents from the discovery record that contradict Plaintiffs' unsupported allegations regarding the duration, scope, and contours of the alleged conspiracy." Opp. at 5 (emphasis added). But Defendants are incorrect in arguing that Rule 1006 lets them provide charts of illustrative "examples" that are cherry-picked from the record. *See* Opp. at 5. To the contrary, a Rule 1006 that "represent[s] [the party's] interpretation of the evidence and thus [is] part of [the party's] argument on the merits" is properly stricken. *Nw. Env't Advocs. v. United States Env't Prot. Agency*, 2024 WL 3888695, at *8 (D. Or. Aug. 20, 2024); *see also Sims v. Lakeside Sch.*, 2008 WL 189674, at *7 (W.D. Wash. Jan. 17, 2008) (dismissing at summary judgment stage a purported Rule 1006 summary that was "argumentative in nature" and should "appear in the body of a brief").

Defendants try to distinguish *Fox v. Ritz-Carlton Hotel Company, LLC*, 2022 WL 2666450, at *5 (S.D.Fla. Jul. 11, 2022), in which an attorney declaration was excluded because the declaration was more than a "mere summar[y,]" by arguing that the declarant admitted he prepared the purported summary based on "inferences he drew based on his review of information produced in discovery." Opp. at 11. *But this is precisely what Defendants did here*. Defendants reviewed

[5] This is further buttressed by the fact that Defendants agreed to withdraw certain price authorities (*see* Opp. at 20-21) because Defendants now concede that Plaintiffs "substantiated" Dr. Marx's report to Defendants' satisfaction.

deposition testimony and documents other than the price authorities, and prepared the Fanchiang and Bryan Declarations based on what conclusions they deemed were substantiated. For instance, Defendants interpreted testimony to determine what purportedly constituted an open offer for purposes of Fanchiang Appendix E and Bryan Attachment E. *See, e.g.* Opp. at 18. Defendants hired an unnamed expert to interpret data in support of the Fanchiang Appendices and Bryan Attachments B through E. *See* Opp. at 10. Just as in *Fox*, the Fanchiang and Bryan Declarations are based on Defendants' subjective interpretations and factual inferences and are not proper summaries under Rule 1006.

Second, contrary to the Defendants' characterization of the Declarations as "mere summarization[s,]" Defendants admit that the Fanchiang and Bryan Declarations represent an unidentified expert's effort to "filter," "isolate," and "categor[ize]" damage estimates from files that were produced as part of the backup data prepared by Plaintiffs' various experts. Opp. at 10. Such efforts are an exercise of discretion, which is improper for purposes of a Rule 1006 declaration. *See United States v. Shulick*, 18 F.4th 91, 106–07 (3d Cir. 2021) ("If a purported summary includes 'assumptions' and 'inferences' that 'represent [the witness's] opinion, rather than the underlying information,' it is actually expert testimony 'subject to the rules governing opinion testimony.'"). Indeed, courts have found that such data analysis is not admissible under Rule 1006, even where, unlike here, the declarant personally prepared the data analysis. *See, e.g.*, *Andean Life, LLC v. Barry Callebaut U.S.A. LLC*, 2021 WL 9563177, at *3 (S.D. Fla. Oct. 12, 2021) (attorney's use of Excel formula to "render data … useful" was inadmissible under Rule 1006); *Ctr. for Food Safety v. Perdue*, 2022 WL 4793438, at *7-8 (N.D. Cal. Sept. 30, 2022) (finding analysis of data in record was inadmissible, even though it "might assist the Court in understanding data"). In *First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 835–37 (C.D.

Ill. 2014), the court found that a spreadsheet calculating damages for a variety of loans was "inadmissible under Rule 1006 because it relies on a number of inferences that a jury could draw and that the Plaintiff has tacitly already made for the factfinder." So too here. The Fanchiang and Bryan Declarations rely on more than just the price authorities themselves, but interpret testimony (*see, e.g.* Opp. at 18; *see also, e.g.,* Fanchiang Appendices D, E (citing to deposition testimony and declarations as evidentiary support)), expert testimony (*see, e.g.*, Opp. at 20), and other documents other than the price authorities themselves (*see, e.g.*, Opp. at 20; *see also, e.g.,* Fanchiang Appendices D, E) in categorizing price authorities—thereby robbing the factfinder of the ability to interpret those documents.

Third, Defendants admit that the purported summaries in the Fanchiang and Bryan Declarations were complex enough that an unidentified expert needed to prepare the calculations and to "isolat[e] damages from Plaintiffs' experts' damages data." *See* Opp. at 10. The calculations required the use of 27 computer programs using the expert's STATA statistical software to run regressions. The use of these 27 computer programs was more than mere arithmetic: it entailed more than 3,200 lines of code, which Mr. Fanchiang and Ms. Bryan did not write, to manipulate data. While lay witnesses may testify as to "basic arithmetic," they cannot be declarants for calculations that "move[] beyond basic mathematics by considering advanced topics or by requiring the selection of a mathematic ideology." *See United States v. Joseph*, 108 F.4th 1273, 1283 (10th Cir. 2024) (finding expert was required to testify on calculations "analy[zing] thousands of transactions across several different bank accounts").[6] Defendants' decision to hide

[6] Defendants cite to *United States v. Honeywell Int'l Inc.*, 337 F.R.D. 456, 459 (D.D.C. 2020) for the proposition that an expert is not needed for a Rule 1006 summary, but in that case the calculation only entailed basic multiplication, which the court noted was "appropriate for a summary witness[.]" Defendants' cite to *United States v. Hemphill*, 514 F.3d 1350 (D.C. Cir. 2008) is additionally inapposite as the party who conducted the calculations was able to introduce

the choices made by the expert behind the guise of an attorney declaration robs Plaintiffs of the ability to cross-examine the party responsible for such choices in the calculation. Rule 1006 does not, however, open a back door for Defendants to rely on expert testimony never disclosed pursuant to Rule 26. *See Dahlberg v. MCT Transp., LLC*, 571 Fed. App'x 641, 647-48 (10th Cir. 2014) (affirming exclusion of demonstratives that reflected undisclosed expert opinions). The Fanchiang and Bryan Declarations could be struck on this basis alone.

## III. The Fanchiang and Bryan Declarations Contain Factual Inaccuracies

The Fanchiang and Bryan Declarations are also inadmissible Rule 1006 summaries because they fail to accurately summarize the facts that Defendants claim—indeed, as Defendants argue, a Rule 1006 must accurately represent the facts it purports to summarize. *See* Opp. at 9 (citing *Lynch*, 735 F. App'x at 786 ("[A] Rule 1006 summary … must accurately represent the facts that it purports to summarize.")); *see also See Su v. E. Penn Mfg. Co.*, 2023 WL 2796120, at *4 (E.D. Pa. Apr. 5, 2023) (granting motion to excluded purported Rule 1006 summary and finding proponent did not have "right to introduce inaccurate summaries of otherwise admissible evidence") (relied on in Opp. at 9).

Defendants argue that the exemplars of inaccuracies Plaintiffs identified in the Fanchiang and Bryan Declarations (*see* Mot. at 14-21) are too insignificant to merit striking the Fanchiang and Bryan Declarations. This argument fails. First, Plaintiffs do not claim that the inaccuracies they identified were an exhaustive list. *See* Mot. at 9, 17. Indeed, Defendants have listed *thousands* of individual price authorities across the various Attachments and Appendices, with as little as [redacted] in associated estimated damages, and it would hardly be an efficient use of this Court

the evidence. Here, as Defendants admit, an expert isolated the damages and conducted a calculation which was far beyond the basic arithmetic permitted under Rule 1006, and has not been made available, let alone identified, to testify as to those calculations.

or the parties' resources to respond individually as to every single one—particularly when Defendants admit here that the Declarations "do not purport to present facts that are material to the resolution of the legal issues or relief sought in Defendants' motion for summary judgment." Opp. at 12. Nevertheless, Defendants have agreed to withdraw five of the specific 59 inaccuracies identified across the Motion, the Response to Defendants' American Pipe Statement of Facts, and Response to Defendants' Statement of Facts (*see* Opp. at 12).[7] That is, Defendants have *admitted* to errors in 8% of Plaintiffs' illustrative examples,[8] even while they fail to respond to each inaccuracy identified by Plaintiffs, and only attempt to refute three (out of 59) by mistakenly claiming Plaintiffs misrepresent the record. *See* Opp. at 14-16.[9]

Defendants further argue that any inaccuracies merely go to the weight of the Rule 1006 summary rather than its admissibility (*see* Opp. at 13), but this argument only pertains to "relatively small deficiencies" and "[i]nsignificant discrepancies"—not systemic errors that fail to

[7] Defendants state in the Opposition that they agreed to withdraw three price authorities, but the Opposition identified five price authorities withdrawn. *See* Opp. at 21, *cf.* Opp. at 12.

[8] That cannot be called an insignificant inaccuracy, particularly when a similar error rate across the whole population of price authorities would amount to more than 1,000 factual inaccuracies. Second, even assuming the only inaccuracies are the five price authorities which Defendants agreed to withdraw (and these are far from the only inaccuracies), those inaccuracies can hardly be referred to as insignificant, considering they reflect Defendants' attempts to avoid [redacted] in damages. These sums are far from the trivial amounts Defendants paint them as.

[9] For instance, Defendants fail to respond to specific arguments about Dominion price authority 82096 (Mot. at 10), Conagra price authority CSXT-53367 (Mot. 11), International Paper price authority UPLQ 90155 (Mot. at 11), CSXT 42589 (Mot. at 13), NYK price authorities XBCENTEX and QTMA 55 (Mot. at 14), Cemex price authorities BNSF 80022, BNSFQ 112404, UPRR 14.1007 and UPRR 3241.1122 (Mot. at 14), Anheuser-Busch price authorities BNSFQ 107923 and BNSFQ 109624 (Mot. at 14, 19), and Domtar price authority BNSFQ 109308 (Mot. at 14), NSSC 89921 (Mot. at 16), KeyCon price authority NSC-9124 (Mot. at 17), and Atofina Petrochemicals' price authority CSXT-C-81763 (Mot. at 18).

fairly represent the source materials. 31 Fed. Prac. Proc. Evid. § 8044.[10] This argument further ignores the numerous other bases for striking the Fanchiang and Bryan Declarations, as set forth *supra* at 2-10. Even if the Fanchiang and Bryan Declarations otherwise admissible—which they are not—the Court should not give them any weight in considering Defendants' summary judgment motions. In addition to Defendants' admission that neither Declaration is material to their summary judgment motions, the Fanchiang and Bryan Declarations are not persuasive given the outstanding legal and factual disputes as to the categorization of the price authorities therein.

### A. The Parties' Disputes As to the Legal and Factual Categorization of Price Authorities Demonstrate the Impropriety of the Fanchiang and Bryan Declarations

Legal and factual conclusions regarding whether a particular contract falls within the scope of this Court's prior rulings are not properly included in a Rule 1006 declaration. *See Sims*, 2008 WL 189674, at *7 (striking Rule 1006 declaration on motion for summary judgment where the statements there were "argumentative in nature"); *see also supra* at 2-10. Defendants' Opposition makes clear that the Fanchiang and Bryan Declarations are based on disputed legal and factual conclusions, which are not properly asserted in a purported Rule 1006 summary.

First, Defendants do not seriously dispute that certain price authorities identified by Plaintiffs were inaccurately included in Fanchiang Appendix C (purporting to represent damages claims under "legacy" price authorities entered into before the start of the conspiracy) and

---

[10] In the cases Defendants rely on for this proposition, the preparer was subject to cross-examination as to the method of preparation, meaning the inaccuracies could be fully explored. *See, e.g.*, Opp. at 13 (citing *DL v. District of Columbia*, 2015 WL 6446087, at *7 (D.D.C. Oct. 23, 2015); *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.*, 153 F. Supp. 3d 363, 374-75 (D.D.C. 2016); *Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Corp.*, 853 F. Supp. 2d 1094, 1102 (D. Colo. 2012); *In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig.*, 624 F. Supp. 1212, 1225 (S.D. Ohio 1985). That is not the case here, and neither Mr. Fanchiang nor Ms. Bryan can testify as to how the expert prepared the Appendices and Attachments to their respective Declarations.

Fanchiang Appendix D (purporting to represent "legacy contracts" where Plaintiffs supposedly failed to establish an amendment during the relevant period). In fact, many of these price authorities were executed after the relevant cut-off date (July 1, 2003) for "legacy" price authorities—a fact that Defendants do not attempt to dispute. Instead, Defendants merely argue that these inaccuracies do not render the summaries as a whole inaccurate, because the Fanchiang and Bryan Declarations categorized these price authorities "*based on their term dates*, without requiring judgment calls based on other factors." *See* Opp. at 19-20 (emphasis added). But the class definition at issue did not define "legacy" price authorities by their "term dates"; as explained in detail in the brief, Mot. at 9-10, "legacy" contracts were defined by the date upon which the price authorities were "entered." Defendants do not bother to respond to the fact that they have wrongly included on these Appendices price authorities which were executed (or entered) months after the "legacy" cut-off. Defendants' methods are fundamentally flawed, and the resulting inaccurate "summaries" must be stricken.[11]

Second, Defendants do not dispute that many of what they have identified as "legacy" contracts in Fanchiang Appendices C and D in fact did not contain a "stand-alone Fuel Surcharge to be paid under a predetermined formula specifically set forth in the contract," as is required for a price authority to be considered a "legacy" under the class definition. *See* Mot. at 10-11. Instead, Defendants mistakenly argue that there is an inconsistency between Plaintiffs pointing out that Fanchiang Appendices C and D incorrectly label certain price authorities as "legacy" contracts, and one Plaintiffs' expert's methodology. Not so. As Dr. Marx explained in her deposition, [redacted]

[11] Nor do Defendants respond to Plaintiffs' explanation that Dominion's price authority CSXT 82096 [redacted] That can hardly be considered a "legacy" price authority "entered" before July 1, 2003 and containing an FSC. Defendants' Opposition says nothing about this.

[redacted] *See* Declaration of Luna Barrington in Further Support of Plaintiffs' Motion to Strike Declarations of Eric Fanchiang and Kelsey Bryan ("Barrington Decl.") Ex. A (Marx Deposition, June 13, 2023, 390:3-7). [redacted] There is no "backtracking" or new definition of "legacy." *See* Opp. at 20. If anything, Dr. Marx's designations of PEPA and no longer PEPA are simply more descriptive and pertain to a process used to segregate legacy contracts from the rest; Defendants want to sow confusion where there is none. Moreover, as discussed *supra*, Defendants' decision to withdraw certain price authorities as now "substantiated" to Defendants' satisfaction suggests that Defendants' classification of price authorities in Fanchiang Appendix D is a factual conclusion by Defendants as to what amendment dates have been "substantiated" rather than a permissible classification under Rule 1006.

Third, Defendants agree there is a factual dispute regarding the accuracy of Fanchiang Appendix E (purporting to identify lingering effect damages for open offers) and Bryan Attachment E (purporting to identify damages claims for open offers), and whether the price authorities listed therein were actually so-called "open offers." *See* Opp. at 17-18. Defendants' Opposition indicates that, in classifying price authorities as open offers for purposes of Fanchiang Appendix E and Bryan Attachment E, Defendants relied on their interpretation of deposition testimony. *See* Opp. at 18 (citing to deposition testimony which informed inclusion of documents in Fanchiang Appendix E). Defendants cannot say that Fanchiang Appendix E and Bryan Attachment E are Rule 1006 summaries of price authorities' terms on their face (*see, e.g.* Opp. at

5) if the Fanchiang and Bryan Declaration rely on parsing and interpreting deposition testimony to compile these summaries, arriving at and presenting a summary of factual conclusions which Plaintiffs dispute the accuracy of. Such analysis is well beyond the scope of summaries permitted by Rule 1006. *See supra* at 6-8..

Fourth, with regard to Fanchiang Appendix F (purporting to represent price authorities that expired after December 31, 2008) Defendants argue Plaintiffs "misunderstand" this Court's prior decision in its May 12, 2021 Order in MDL II ("*Tolling II*") as applied to evergreen contracts, but premise this entire argument on one price authority: Anheuser-Busch price authority UPC 38232 in Fanchiang Appendix F. Defendants argue that this Court's rulings on "evergreen" contracts in *Tolling II* operates to disallow post-2008 lingering damages on that contract. It does not. *Tolling II* holds that "allegations related to agreements *entered into by December 31, 2008*, as to which the parties' obligations continued after that date, are tolled" and "Plaintiffs thus may recover lingering-effects damages for purchases made pursuant to an evergreen contract *that was renewed in 2008 until its expiration date one year later, in 2009*." (Emphasis added; *Tolling* II at 26-27). UPC 38232 [redacted] As this Court explained in *Tolling II*, "in such cases . . . the underlying conduct at issue, of forming the 2008–2009 agreement, occurred entirely during the class period," and lingering effects damages for purchases for the following one year term in 2009 "are tolled." (*Id.* at 27). Defendants do not challenge UPC 38232 as wholly "barred,"

and Anheuser-Busch [redacted] in accordance with this Court's prior rulings.[12]

Given that Defendants now admit in their Opposition that the Fanchiang and Bryan Declarations are not intended to present issues of fact "material to the resolution" of the issues before the Court on Defendants' summary judgment motions (Opp. at 12), then these lawyer declarations only serve to obfuscate the cross-case summary judgment record by prematurely, improperly, and (by Defendants' own admission in their Opposition) inaccurately raising client-specific pre-trial evidentiary issues that are for another day. The declarations can offer no guidance to the Court in its examination of the shared cross-case evidence of Defendants' liability.

B. <u>Plaintiffs Have Not Misrepresented the Record</u>

Defendants accuse Plaintiffs of misrepresenting the record with regard to three specific price authorities. These accusations are unfounded.

First, with regard to MOL price authority QTMOLPSW (associated with the BNSF MA 64 contract), Defendants ignore the facts and Plaintiffs' proffered evidence [redacted] The MA 64 contract between BNSF and MOL, [redacted]

[12] Defendants also attempt to raise a dispute as to whether Fanchiang Appendix G (purporting to represent "Lingering Effects Damages Claims Under Contracts Amended After December 31, 2008") is inaccurate because it includes contracts subject to non-substantive amendments after December 31, 2008, despite Plaintiffs never raising this argument in the Motion. *See* Opp. at 16-17. Plaintiffs raised this argument in their opposition to Plaintiff's American Pipe motion, *not* the Motion. Defendants cannot use their Opposition as a backdoor, to raise arguments applicable to a wholly different motion. *See Curran v. Aetna Life Ins. Co.*, 2016 WL 3843085, at *17-18 (S.D.N.Y. July 11, 2016) (barring attempt to use declaration to circumvent page limits on memorandum of law).

[redacted]. *See* PX1187, P_MOL_000002514 [redacted] Defendants' argument to the contrary—that an extension of an expired contract that materially changed its pricing terms is not an amendment—is illogical and inconsistent with the position Defendants take elsewhere, including in their *American Pipe* briefing. Moreover, Defendants' claim that "Plaintiffs acknowledge . . . . the price authority was not amended until [redacted] is false. Opp. at 15. [redacted]. At most, Defendants' argument reflects a factual dispute that is not appropriate for resolution at summary judgment.

Second, with regard to General Electric price authority UPC 6406, which Defendants include on Fanchiang Appendix A (purporting to represent price authorities with mileage-based FSCs), UP falsely asserts that "*it is undisputed* that Amendment I to UPC 6406, [redacted] Opp. at 14 (emphasis added). [redacted] *See* Barrington Decl. Ex. B (Thrasher Ex. 20; GE Interrogatory No. 2.) [redacted] *Id.* [redacted] *See* Barrington Decl. Ex. C (Thrasher Depo. 190:14 – 192:10). [redacted]

[redacted] *See* Barrington Decl. Ex. D (Amended Answer No. 2 [redacted] Because the amended answers were not served until after the deposition, GE had no opportunity to cross-examine UP's corporate representative about the purported Amendment I. [redacted] and are therefore not a proper correction of the witness's sworn deposition testimony. In any event, Defendants' proposed summary of the evidence is misleading in that it makes broad reference to "UPCQ 6406" (not just Amendment I) [redacted]

Third, Plaintiffs maintain that Bryan Attachment A (which purports to identify, *inter alia*, price authorities entered between July 1, 2003 and December 31, 2008 without an FSC) is misleading regarding Axiall/Westlake's price authority UP-C-8956. *Confra* Opp. at 15. [redacted] Defendants assert that [redacted] and Attachment A accurately summarizes that price authority" by representing that it had no FSC. [redacted]

[redacted] *See* PX1008, P_WESTLAKE00004440 [redacted] PX1009, P_WESTLAKE00004441 [redacted] PX1010, P_WESTLAKE00012703 [redacted] PX1011, Spittler (Axiall/Westlake) Dep., Feb. 17, 2022, at 25:10-25, 104:14-105:3; PX1012, Anderson (Axiall/Westlake) Dep., Sept. 9, 2022, at 237:6-9.

**Conclusion**

For the foregoing reasons and those laid out in the Motion, Plaintiffs respectfully request that the Court strike the Fanchiang Declaration and the Bryan Declaration in their entireties.

Dated: December 6, 2024

Respectfully submitted,

/s/ *Michael D. Hausfeld*
Michael D. Hausfeld
Brian A. Ratner
Sathya S. Gosselin
Melinda R. Coolidge
Swathi Bojedla
Theodore F. DiSalvo
James Hamilton

HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
(202) 540-7200
mhausfeld@hausfeld.com
bratner@hausfeld.com
sgosselin@hausfeld.com
mcoolidge@hausfeld.com
sbojedla@hausfeld.com
tdisalvo@hausfeld.com
jhamilton@hausfeld.com

*Attorneys for Donnelly Commodities Incorporated, Strates Shows, Inc., American Honda Motor Co., Inc.; BMW Manufacturing Co., LLC and BMW of North America, LLC; Boise Cascade Company; Central Transport International, Inc., Central Transport, Inc., Logistics Insight Corp., and Transport Communications Systems II, L.L.C.; CONSOL Energy, Inc.; CRH Americas, Inc., Preferred Materials, Inc., Ash Grove Cement Company, The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Linde AG; Praxair, Inc.; Lotte Global Logistics (North America), Inc.; Louisiana-Pacific Corporation; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Newell*

/s/ *Sami H. Rashid*
Sami H. Rashid
Richard I. Werder, Jr.
Alexandre J. Tschumi
Alexandria ("Alexee") Deep Conroy
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
samirashid@quinnemanuel.com
rickwerder@quinnemanuel.com
alextschumi@quinnemanuel.com
alexeeconroy@quinnemanuel.com

Alicia Cobb
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Facsimile: (206) 905-7100
aliciacobb@quinnemanuel.com

Viola Trebicka
Jennifer English
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
violatrebicka@quinnemanuel.com
jenniferenglish@quinnemanuel.com

*Attorneys for Plaintiffs Dust Pro, Inc., Olin Corporation, U.S. Magnesium, Alcoa Corporation, Arconic, Inc.; Alcoa Fuels, Inc.; Alcoa Power Generating, Inc.; Eastalco Aluminum Company; Intalco Aluminum, LLC; Reynolds Metal Company; Alcoa*

*Recycling Southeast, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; American Land Holdings of Illinois, LLC; American Land Holdings of Indiana, LLC; Peabody Electricity, LLC; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc., Suzuki Motor USA, LLC; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

*/s/ William J. Blechman*
Richard Alan Arnold
William J. Blechman
Douglas H. Patton
Michael A. Ponzoli
Joshua B. Gray

*World Alumina, LLC; Alumax Mill Products, Inc.; The Amalgamated Sugar Company, LLC; American Rock Salt Company LLC; AP Møller – Mærsk A/S; Mærsk Inc.; Maersk Line UK Limited; Axiall Corporation; Axiall, LLC; Westlake Styrene LLC; Westlake Petrochemicals LLC; Westlake Polymers LLC; Westlake Vinyls Inc.; Westlake Vinyls Company LP; WPT LLC; Westlake Longview Corporation; Westlake Management Services, Inc.; BASF Corporation; BASF Catalysts LLC; Cognis USA LLC; ProCat Testing LLC; California Steel Industries, Inc.; Campbell Soup Supply Company L.L.C.; Campbell Company of Canada; Campbell FoodService Company; Joseph Campbell Company; CertainTeed LLC; Saint-Gobain Ceramics & Plastics, Inc.; Bird Incorporated' CertainTeed Canada, Inc.; CertainTeed Gypsum & Ceiling Manufacturing, Inc.; CertainTeed Gypsum Manufacturing, Inc.; CertainTeed Gypsum NC, Inc.; CertainTeed Gypsum West Virginia, Inc.; CertainTeed Gypsum, Inc.; CertainTeed Ceilings Corporation; CertainTeed Gypsum and Ceilings USA, Inc.; Coffeyville Resources Nitrogen Fertilizers, LLC; ConAgra Brands, Inc. f/k/a/ ConAgra Foods, Inc.; Virginia Electric and Power Company,; Dominion Energy Fuel Services, Inc.; Dominion Energy South Carolina, Inc.; Duke Energy Carolinas, LLC; Duke Energy Florida, LLC; Duke Energy Progress, LLC; Duke Energy Indiana, LLC; Duke Energy Kentucky, LLC; Duke Energy Ohio, LLC; Progress Fuels, LLC; DEGS of Narrows, LLC; Duke Energy Generation Services, Inc.; Eastman Chemical Company; Solutia Inc.; Taminco Corporation; Exxon Mobil Corporation; ExxonMobil Oil Corporation; ExxonMobil Global Services Company; Imperial Oil; Imperial Oil Limited; Canada Imperial Oil Limited; Grain Craft, Inc.; Southeastern Mills, Inc.; Hyundai Motor America, Inc.; IPSCO Tubulars Inc.; IPSCO Koppel Tubulars, LLC; IPSCO Tubulars*

KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
E-mail: raa@knpa.com
wblechman@knpa.com
dpatton@knpa.com
mponzoli@knpa.com
jgray@knpa.com

*Attorneys for Plaintiffs Cemex, Inc., Clearwater Paper Corporation, The Goodyear Tire & Rubber Company, Kraft Heinz Foods Company, Heidelberg Materials US, Inc. (f.k.a. Lehigh Hanson, Inc.), PotlatchDeltic Corporation, Rayonier Advanced Materials Inc., Sterling Steel Company LLC., UPM-Kymmene, Inc., and Unilever ASCC AG*

/s/ *Jason M. Powers*
Jason M. Powers
VINSON & ELKINS L.L.P.
845 Texas Avenue, Suite 4700
Houston, Texas 77002
(713) 758-2522
(713) 615-5809 (Facsimile)
jpowers@velaw.com

Craig P. Seebald (D.C. Bar No. 438968)
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500
(202) 639-6604 (Facsimile)
cseebald@velaw.com

/s/ *John H. LeSeur*
John H. LeSeur (D.C. Bar No. 293357)
Frank J. Pergolizzi (D.C. Bar No. 405174)
Peter A. Pfohl (D.C. Bar No. 456854) Daniel M. Jaffe (D.C. Bar No. 461185) SLOVER & LOFTUS LLP
1828 L Street, NW
Suite 1000

*(KY), LLC; TMK NSG, LLC; Keystone Fuels, LLC; Conemaugh Fuels, LLC; Kia Motors America, Inc.; Lafarge North America, Inc., Holcim (US) Inc.; Aggregate Industries Management, Inc.; Aggregate Industries - SWR, Inc.; Aggregate Industries Northeast Region, Inc.; Aggregate Industries - MWR, Inc.; Bardon, Inc. (dba Aggregate Industries Mid-Atlantic Region); Cement Transport, LTD; Geocycle LLC; Systech Environmental Corporation; Lafarge PNW, Inc.; Lattimore Materials Corp.; Mercedes-Benz USA, LLC; Motiva Enterprises LLC; NLMK USA, Inc.; NLMK Pennsylvania, LLC; Sharon Coating, LLC; NOVA Chemicals, Inc.; NOVA Chemicals Corporation; NOVA Chemicals (Canada) Ltd.; Old World Industries, LLC; PCS Sales (USA), Inc.; Agrium (U.S.), Inc.; PCS Phosphate Company, Inc.; White Springs Agricultural Chemicals, Inc; PCS Nitrogen, Inc.; Phillips 66 Company; Shell Chemical LP, Shell Chemicals Canada (f/k/a Shell Chemicals Canada Ltd.) by its managing partner Shell Canada Ltd.; Pennzoil-Quaker State Company (formerly d/b/a SOPUS Products); Shell Trading (US) Company; Equilon Enterprises LLC (d/b/a Shell Oil Products US or SOPUS); Talen Energy Supply, LLC f/k/a PPL Energy Supply, LLC, on behalf of itself and its subsidiaries and affiliates; Talen Energy Marketing, LLC f/k/a PPL EnergyPlus, LLC; Talen Generation, LLC f/k/a PPL Generation, LLC (successor in interest to PPL Coal Supply, LLC); Talen Montana, LLC f/k/a PPL Montana, LLC; Martins Creek, LLC f/k/a PPL Martins Creek, LLC; Brunner Island, LLC f/k/a PPL Brunner Island, LLC; Montour, LLC f/k/a PPL Montour, LLC; United Parcel Service, Inc., an Ohio Corporation; UPS Ground Freight, Inc.; Vulcan Materials Company; Legacy Vulcan, LLC; Florida Rock Industries, Inc.; Atlantic Granite LLC; CalMat Co.; Vulcan Aggregates Company, LLC; Vulcan Construction Materials, LLC; Fulton*

Washington, D.C. 20036
(202) 347-7170
(202) 347-3619 (Facsimile)
jhl@sloverandloftus.com
fjp@sloverandloftus.com
pap@sloverandloftus.com
dmj@sloverandloftus.com

*Attorneys for Plaintiffs AK Steel Corporation; Bel-Ray Company, LLC; Calumet Branded Products, LLC; Calumet Cotton Valley Refining, LLC; Calumet Dickinson Refining, LLC; Calumet Karns City Refining, LLC; Calumet Montana Refining, LLC; Calumet Operating, LLC; Calumet Princeton Refining, LLC; Calumet Refining, LLC; Calumet Shreveport Refining, LLC; Calumet Specialty Products Partners, L.P.; CF Industries, Inc.; Dairyland Power Cooperative; Dyno Nobel, Inc.; Entergy Arkansas, LLC; Entergy Louisiana, LLC; Constellation Energy Generation, LLC, f/k/a Exelon Generation Company, LLC; Kurlin Company, LLC; NorFalco LLC; NorFalco Sales; North Star BlueScope Steel LLC; Steelscape, LLC; and Wisconsin Electric Power Company*

/s/ *David C. Eddy*
David C. Eddy (DC Bar No. 250712)
Dennis J. Lynch (admitted *pro hac vice*)
Travis C. Wheeler (DC Bar No. 484023)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, S.C. 29201
Tel: (803) 771-8900
deddy@maynardnexsen.com
dlynch@maynardnexsen.com
twheeler@maynardnexsen.com

*Attorneys for Plaintiffs Domtar Corporation; Ford Motor Company; South Carolina Public Service Authority; Anheuser-Busch, LLC; Anheuser-Busch Companies, LLC; Nestlé Purina PetCare Company; and Nestlé USA, Inc.*

*Concrete Company, LLC; McCartney Construction Company, Inc.; Calhoun Asphalt Company, Inc.; Harper Brothers, LLC; Virginia Concrete Company, LLC; Azusa Rock, LLC; Triangle Rock Products, LLC; Aggregates USA, LLC; Chem-Marine Corporation of South Carolina; DMG Equipment Company, LLC; R. C. Smith Companies, LLC; Aggregates USA (Macon), LLC; Aggregates USA (Savannah), LLC; Aggregates USA (Sparta), LLC; WestRock Company; WestRock Coated Board, LLC; WestRock Virginia, LLC; WestRock Texas, L.P.; WestRock CP, LLC; WestRock Southeast, LLC; WestRock Northwest, LLC; WestRock Mill Company, LLC; WestRock – Solvay, LLC; WestRock Minnesota Corporation; WestRock Kraft Paper, LLC; WestRock Container, LLC; WestRock Longview, LLC; Smurfit-Stone Container Canada Inc.; The J.M. Smucker Company; General Motors LLC; Kennecott Utah Copper LLC; and U.S. Borax Inc.*

/s/ *Joseph M. Vanek*
Joseph M. Vanek
David P. Germaine (admitted *pro hac vice*)
Martin Amaro (admitted *pro hac vice*)
SPERLING & SLATER, LLC
55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
jvanek@sperling-law.com
dgermaine@sperling-law.com
mamaro@sperling-law.com

*Attorneys for Plaintiff Mitsubishi Motors North America, Inc.*

/s/ *Raj Mathur*
Geoffrey L. Harrison
Shawn Raymond
Adam Carlis
Alexandra Foulkes Grafton
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
gharrison@susmangodfrey.com
sraymond@susmangodfrey.com
acarlis@susmangodfrey.com
afoulkesgrafton@susmangodfrey.com

Raj Mathur
Scott Glass
SUSMAN GODFREY, L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: 212-336-8330
rmathur@susmangodfrey.com
sglass@susmangodfrey.com

*Attorneys for Donnelly Commodities Incorporated, Strates Shows, Inc., Arkema Inc.; ArrMaz Products Inc.; Boise Cascade Company; CONSOL Energy, Inc.; CRH Americas, Inc., Preferred Materials, Inc., Ash Grove Cement Company, The Shelly Company, Big River Industries, Inc., Oldcastle APG West, Inc., and Pennsy Supply Inc.; Crowley Maritime Corporation, Crowley Logistics, Inc., and Crowley Liner Services, Inc.; Grand River Dam Authority; J.R. Simplot Co.; Lansing Board of Water & Light; Lotte Global Logistics (North America), Inc.; Lyondell Chemical Company; LyondellBasell Acetyls, LLC; Equistar Chemicals, LP; MillerCoors, LLC; Peabody Investments Corporation, Peabody Energy Corporation, Peabody Natural Resources Company, Peabody Midwest Mining LLC, Peabody Powder River Mining LLC, Peabody Coulterville Mining, LLC, Peabody Coalsales, LLC f/k/a Coalsales, LLC, Coalsales II, LLC f/k/a Peabody Coalsales Company, Peabody*

/s/ *Sandra L. Brown*
Sandra L. Brown (D.C. Bar No. 452988)
David A. Wilson (D.C. Bar No. 430400)
David E. Benz (D.C. Bar No. 485868)
Joe Smith (D.C. Bar. No. 1010223)
THOMPSON HINE LLP
1919 M Street N.W. Suite 700
Washington, D.C. 20036
Tel: (202) 331-8800
Fax: (202) 331-8330
sandra.brown@thompsonhine.com
david.wilson@thompsonhine.com
david.benz@thompsonhine.com
joe.smith@thompsonhine.com

Robert F. Ware
Jennifer S. Roach
Caitlin R. Thomas
THOMPSON HINE LLP
127 Public Square, Suite 3900
Cleveland, Ohio 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
rob.ware@thompsonhine.com
jennifer.roach@thompsonhine.com
caitlin.thomas@thompsonhine.com

*Attorneys for Plaintiffs Alabama Power Company, Georgia Power Company and Mississippi Power Company; Northern Indiana Public Service Company LLC; and Union Electric Company d/b/a Ameren Missouri and Ameren Development Company*

/s/ *Kristopher S. Davis*
Kristopher S. Davis (CA #193452)
George T. Caplan (CA #043821)
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel: (310) 203-4000
Fax: (310) 229-1285
kristopher.davis@faegredrinker.com

*Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc., Twentymile Coal, LLC f/k/a Twentymile Coal Company; American Land Holdings of Illinois, LLC; American Land Holdings of Indiana, LLC; Peabody Electricity, LLC; Roseburg Forest Products Co.; Sims Group USA Holdings Corporation (f/k/a Sims Hugo Neu Corporation), Metal Management, Inc., Simsmetal East LLC (f/k/a Sims Hugo Neu East LLC and Hugo Neu Schnitzer East), Metal Management Northeast, Inc., Metal Management Pittsburgh, Inc., SMM New England Corporation (f/k/a Metal Management Connecticut, Inc.), SMM Southeast LLC, Metal Management Midwest, Inc., Metal Management Indiana, Inc., Metal Management Ohio, Inc., Sims Southwest Corporation (f/k/a Proler Southwest LP and Proler Southwest Corporation), SMM South Corporation (f/k/a Metal Management Alabama, Inc.), Metal Management Memphis, L.L.C., Sims Group USA Corporation, Simsmetal West LLC (f/k/a Sims Hugo Neu West LLC), and Schiabo Larovo Corporation; Suzuki Motor of America, Inc., Suzuki Motor USA, LLC; TMS International, LLC; Total Petrochemicals & Refining USA, Inc.; Trammo, Inc.; Transrail, Inc.; Tropicana Products, Inc., Frito-Lay, Inc., and Bottling Group, LLC operating as Pepsi Beverages Company; U.S. Silica Co.*

george.caplan@faegredrinker.com

William L. Roberts (MN # 0212763)
Jonathan W. Dettmann (MN # 0265032)
Craig S. Coleman (MN # 0325491)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Tel: (612) 766-7000
Fax: (612) 766-1600
william.roberts@faegredrinker.com
jon.dettmann@faegredrinker.com
craig.coleman@faegredrinker.com

*Attorneys for Plaintiffs American Zinc Recycling Corp., Ascend Performance Materials Operations LLC, Ingredion Incorporated, The Heritage Group dba Asphalt Refining Company, Asphalt Materials, Inc., Bituminous Materials and Supply, L.P., Emulsicoat, Inc., Laketon Refining Corporation, Heritage Environmental Services, LLC, Rineco Chemical Industries, LLC, Heritage Transport, LLC, Pizo Operating Company, LLC, and CHS Inc.*

/s/ *Kirk T. May*
Kirk T. May
William D. Beil
GM LAW PC
1201 Walnut, Suite 2000
Kansas City, Missouri 64106
PH: 816-471-7700
FX: 816-471-2221
Email: kirkm@ gmlawpc.com
Email: billb@ gmlawpc.com

*Attorneys for Plaintiffs*
*Lansing Ethanol Services, LLC, et al.*

/s/ *David J. Lender*
David J. Lender (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*)
Luna Barrington (admitted *pro hac vice*)
Sarah Ryu (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Fax: (212) 310-8007
david.lender@weil.com
eric.hochstadt@weil.com

luna.barrington@weil.com
sarah.ryu@weil.com

*Attorneys for Plaintiffs Cleveland-Cliffs Steel LLC (f/k/a ArcelorMittal USA LLC) and ArcelorMittal Dofasco G.P.*

/s/ *Benjamin D. Brown*
Benjamin D. Brown (D.C. Bar. No. 495836)
Robert A. Braun (D.C. Bar No. 1023352)
Sabrina Merold (D.C. Bar No. 1738065)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue,
N.W. Fifth Floor
Washington, D.C. 20005
Tel: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

*Attorneys for Plaintiffs Kawasaki Kisen Kaisha, Ltd., "K" Line America, Inc., Yang Ming Marine Transport Corp., Yang Ming (America) Corp., Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., Mitsui O.S.K. Lines, Ltd., and MOLAM Legacy, Inc.*

/s/ *James P. Denvir*
James P. Denvir (D.C. Bar No. 284554)
Scott E. Gant (D.C. Bar No. 455392)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Phone 202 237 2727
Fax 202 237 6131
jdenvir@bsfllp.com
sgant@bsfllp.com

Stuart H. Singer (*pro hac vice*)
James Grippando (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP

/s/ *Michael Schaper*
Edward D. Hassi (D.C. Bar No. 1026776)
Leah S. Martin (D.C. Bar No. 1029757)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383 8118
E-mail: thassi@debevoise.com
lmartin@debevoise.com

Michael Schaper
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Tel: (212) 909 6000
Fax: (212) 909 6836
mschaper@debevoise.com

*Attorneys for Plaintiffs Toyota Motor Sales, U.S.A., Inc. and Toyota Canada Inc.*

/s/ *Nathan P. Eimer*
Nathan P. Eimer (*pro hac vice*)
Daniel D. Birk (*pro hac vice*)
Susan Razzano (*pro hac vice*)
Benjamin Waldin (D.D.C. Bar No. IL0061)
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com
dbirk@eimerstahl.com
srazzano@eimerstahl.com

401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
jgrippando@bsfllp.com

*Attorneys for Plaintiffs Domino Foods, Inc., E.I. du Pont de Nemours and Company, and The General Electric Company*

/s/ *Frank M. Lowrey IV*
Frank M. Lowrey IV (*pro hac vice*)
lowrey@bmelaw.com
Tiana S. Mykkeltvedt (*pro hac vice*)
mykkeltvedt@bmelaw.com
Matthew R. Sellers
sellers@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street, N.E., Suite 3900
Atlanta, Georgia 30309
Tel: (404) 881-4100
Fax: (404) 881-4111

*Attorneys for Plaintiff The General Electric Company*

/s/ *Michael C. Dell'Angelo*
Michael C. Dell'Angelo
Michael J. Kane
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bm.net
mkane@bm.net
mwallin@bm.net

Daniel J. Walker
BERGER MONTAGUE PC
1001 G Street, NW
Suite 400 East
Washington, D.C. 20001
(202) 559-9740
dwalker@bm.net

bwaldin@eimerstahl.com

Ryan J. Walsh (D.C. Bar No. 1029407)
EIMER STAHL LLP
10 East Doty Street
Suite 800
Madison, WI 53703
Telephone: (608) 441-5798
Fax: (608) 441-5707
Email: rwalsh@eimerstahl.com

*Attorneys for Plaintiffs The Dow Chemical Company, Union Carbide Corporation, Amerchol Corporation, Umetco Minerals Corporation, Gerdau Ameristeel Corporation, Gerdau Ameristeel US Inc., Gerdau Ameristeel Perth Amboy Inc., Gerdau Ameristeel Sayreville Inc., Chaparral Steel Company, Chaparral Steel Midlothian, LP, Chaparral (Virginia) Inc., Sheffield Steel Corporation, Gerdau Macsteel, Inc., International Paper Company, GenOn Energy Management, LLC, GenOn Power Midwest LP, and GenOn REMA, LLC*

/s/ *Daniel B. Goldman*
Daniel B. Goldman
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
dgoldman@kramerlevin.com

*Attorneys for Plaintiffs The Procter & Gamble Company, The Procter & Gamble Distributing LLC, The Procter & Gamble Manufacturing Company, The Procter & Gamble Paper Products Company, Tronox Inc., and Tronox US Holdings Inc.*

Sophia Rios
BERGER MONTAGUE PC
8241 La Mesa Blvd.
La Mesa, CA 91942
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

*Attorneys for Plaintiffs High Level Management Venturers, Century Aluminum Company, Century Aluminum of Kentucky, GP, NSA, GP, Century Aluminum of West Virginia, Inc., Century Aluminum of South Carolina, Inc., Andre M. Toffel, Trustee, on behalf of New Wei, Inc., et al., jointly administered bankruptcy estates, and ABF Freight System Inc.*

*/s/ Leo D. Caseria*
Leo D. Caseria (DC Bar No. 1655936)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1925
Fax (202) 747-1901
lcaseria@sheppardmullin.com

Helen C. Eckert
Joy O. Siu
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
heckert@sheppardmullin.com
jsiu@sheppardmullin.com

*Attorneys for Plaintiff CalPortland Company*

*/s/ Ronald J. Aranoff*
Ronald J. Aranoff
Fletcher W. Strong
William J. Hagan
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
raranoff@wmd-law.com
fstrong@wmd-law.com
whagan@wmd-law.com

*Attorneys for Plaintiff Air Products and Chemicals, Inc.*

*/s/ Conte C. Cicala*
Conte C. Cicala (CA Bar No. 173554)
Clyde & Co US LLP
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
conte.cicala@clydeco.us

*Attorneys for Plaintiff Mitsui O.S.K. Lines, Ltd. and MOLAM Legacy, Inc.*

*/s/ Roman M. Silberfeld*
Roman M. Silberfeld
D.D.C. Bar ID: CA00002
ROBINS KAPLAN LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Email: rsilberfeld@robinskaplan.com

Stephen P. Safranski (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
Email: ssafranski@robinskaplan.com

*Counsel for Plaintiffs Oxbow Carbon & Minerals LLC, Oxbow Mining, LLC, Oxbow Midwest Calcining LLC, Oxbow Calcining LLC, and Terror Creek LLC*

**Certificate of Service**

The undersigned certifies that on December 6, 2024, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic filing system and was served by secure transfer on all counsel of record in the above-captioned matters.

*/s/ Sami H. Rashid*
Sami H. Rashid